William N. Lobel, SBN 93202
PACHULSKI STANG ZIEHL & JONES LLP
650 Town Center Drive, Suite 1500
Costa Mesa, CA 92626
Tel: 714 384-4740
Fax: 714 384-4741
E-mail: wlobel@pszjlaw.com

[Proposed] Attorneys for Ruby's Diner, Inc., a California corporation, *et al.,* Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>RUBY'S DINERS, INC., a California corporation, *et al.,*[1]<br><br>    Debtors and Debtors-in-Possession,<br><br>Affects:<br><br>☐ All Debtors<br><br>☐ RUBY'S DINERS, INC., ONLY<br><br>☐ RUBY'S SOCAL DINERS, LLC, ONLY<br><br>☐ RUBY'S QUALITY DINERS, LLC, ONLY<br><br>☐ RUBY'S HUNTINGTON BEACH, LTD., ONLY<br><br>☐ RUBY'S LAGUNA HILLS, LTD. ONLY<br><br>☐ RUBY'S OCEANSIDE, LTD., ONLY<br><br>☐ RUBY'S PALM SPRINGS, LTD., ONLY | Case No. 8:18-bk-13311-CB<br><br>Chapter 11<br><br>Jointly Administered With Case Nos. 8:18-bk-13197-CB; 8:18-bk-13198-CB; 8:18-bk-13199-CB; 8:18-bk-13200-CB; 8:18-bk-13201-CB; 8:18-bk-13202-CB)<br><br>**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE DEBTOR TO HONOR CERTAIN PREPETITION GIFT CARD OBLIGATIONS TO CUSTOMERS AND TO OTHERWISE CONTINUE CERTAIN GIFT CARD PROGRAMS IN THE ORDINARY COURSE OF BUSINESS ON A POSTPETITION BASIS: AND TO CONTINUE HONORING QUALITY ASSURANCE CARDS FOR A LIMITED PERIOD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Douglas S. Cavanaugh in Support of First Day Motions filed concurrently herewith]<br><br>Date:     September 6, 2018<br>Time:     2:00 p.m.<br>Courtroom 5A<br>Address:  411 West Fourth Street<br>          Santa Ana, CA 92701 |

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Ruby's Diners, Inc. (8143); Ruby's SoCal Diners, LLC (9782); Ruby's Quality Diners, LLC 1539); Ruby's Huntington Beach, Ltd. (1331); Ruby's Laguna Hills, Ltd. (6603); Ruby's Oceanside, Ltd. (9104); and Ruby Palm Springs, Ltd. (9627).

DOCS_LA:316641.1 76135/001

Case 8:18-bk-13311-CB    Doc 9    Filed 09/05/18    Entered 09/05/18 13:46:36    Desc
Main Document    Page 2 of 19

**TABLE OF CONTENTS**

Page

I.   STATEMENT OF FACTS ................................................................................................. 6
    A.   Jurisdiction and Venue ............................................................................................6
    B.   Background .............................................................................................................6
    C.   General Description of the Debtors ........................................................................6
    D.   Overview of the Debtors and Their Affiliates' Business Operations .....................7
    E.   The Debtors and Their Affiliates' Corporate Structure ........... **Error! Bookmark not defined.**
    F.   The Customer Programs and Prepetition Obligations Arising Therefrom ..............8
II.   ARGUMENT .................................................................................................................... 11
    A.   Honoring Customer Commitments Falls Within the Ordinary Course of Business ................11
    B.   The Honoring of Certain Prepetition Customer Obligations Can Be Authorized Under Section 105(a) of the Bankruptcy Code ................................................................ 12
    C.   The Bankruptcy Code Does Not Prohibit Postpetition Satisfaction of Prepetition Obligations 14
    D.   Summary ...............................................................................................................15
    E.   Compliance with Fed. R. Bank. P. 6003(b) ..........................................................16
III.   CONCLUSION ................................................................................................................ 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

DOCS_LA:316641.1 76135/001

# TABLE OF AUTHORITIES

**Cases**

B&W Enters, Inc. v. Goodman Oil Co. (In re B&W Enters., Inc.),
   713 F.2d 534 (9th Cir. 1983) .................................................................................... 13, 14

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. La Salle St. P'ship,
   526 U.S. 434, 453 (1999).................................................................................................. 13

Burchinal v. Central Washington Bank
   (In re Adams Apple, Inc.) ................................................................................................ 14

Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),
   853 F.2d 700, 705 (9th Cir. 1988) ................................................................................... 11

Gurney v. State of Arizona Dept. of Revenue (In re Gurney),
   192 B.R. 529, 537 (9th Cir. BAP 1996)........................................................................... 12

In re CoServ, L.L.C.,
   273 B.R. 487, 496-97 & n.17 (Bankr. N.D. Tex. 2002) ................................................... 12

In re Enron Corp.,
   274 B.R. 327, 348 (Bankr. S.D.N.Y. 2002) .................................................................... 13

In re Equalnet Commc'ns,
   258 B.R. 368, 369-70 (Bankr. S.D. Tex. 2000) ............................................................... 15

In re Ionosphere Clubs, Inc.,
   98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989)....................................................................... 12

In re Isis Foods, Inc.,
   37 B.R. 334, 336 n.3 (W.D. Mo. 1984) ........................................................................... 15

In re Just for Feet, Inc.,
   242 B.R. 821, 824 (D. Del. 1999).................................................................................... 12

In re Mercado,
   124 B.R. 799, 802 (Bankr. C.D. Cal. 1991)..................................................................... 12

In re Tropical Sportswear Int'l Corp.,
   320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ........................................................................ 12

In United States v. Energy Resources,
   495 U.S. at 549................................................................................................................ 11

Ionosphere Clubs, Inc.,
   98 B.R. at 175-76 (*citing* Miltenberger v. Logansport, C. & S. W. R. Co., 106 U.S. 286 (1882)) 13

<a>
</a><s>
</s>
NLRB v. Bildisco & Bildisco,
    465 U.S. 513, 527 (1984) .................................................................................................. 13

United States v. Energy Resources Co.,
    495 U.S. 545, 549 (1990) .................................................................................................. 11

Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLC),
    424 F.3d 963, 969 (9th Cir. 2005) .................................................................................... 14

**Statutes**
11 U.S.C. § 105 ............................................................................................................... 11, 12, 14
11 U.S.C. § 1107(a) ................................................................................................................... 6
11 U.S.C. § 1108 ....................................................................................................................... 6
11 U.S.C. § 330 ....................................................................................................................... 10
11 U.S.C. § 363 ............................................................................................................. 10, 12, 14
11 U.S.C. § 365 ....................................................................................................................... 15
11 U.S.C. § 507(a)(7) .............................................................................................................. 13
11 U.S.C. § 549(a) ................................................................................................................... 14
28 U.S.C. § 157(b)(2) ............................................................................................................... 6
28 U.S.C. §§ 1334 .................................................................................................................... 6
28 U.S.C. §§ 1408 .................................................................................................................... 6
28 U.S.C. §§ 1409 .................................................................................................................... 6
28 U.S.C. §§ 157 ...................................................................................................................... 6

**Rules**
Fed. R. Bankr. P. 6003 ............................................................................................................ 15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE 20 LARGEST UNSECURED CREDITORS, SECURED CREDITORS AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Ruby's Diner, Inc., a California corporation ("RDI" or the "Debtor"), hereby moves (the "Motion") the Court for entry of an order pursuant to sections 105, 345, 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") (a) authorizing, but not obligating, the Debtor to honor its prepetition obligations under certain customer-related and quality assurance programs as described in the Motion and to maintain and administer certain programs in the ordinary course of business and in a manner consistent with past practice in the Debtor's discretion, and (b) granting related relief.

In connection with the normal operation of its business and standard industry practice, the Debtor and its affiliates,[2] prior to the filing of this chapter 11 case (the "Case"), issued, and were paid for, gift cards to their customers that could be redeemed at Ruby's® restaurant locations (defined herein as the "Restaurants").  These gift cards (the "Gift Cards") were issued either (a) directly to customers by the Restaurants (the "Company Gift Card Program"), or (b) through arrangements with Costco Wholesale Corporation ("Costco"), as third party retailer (the "Costco Gift Card Program" and, together, the "Customer Programs").  Prior to the Petition Date, the Costco Gift Card Program was terminated on a going-forward basis, but the Debtor intends to maintain the Company Gift Card Program following the Petition Date.  In addition, prior to the Petition Date, the Debtor had issued "Quality Assurance Cards" to its noteholders that could be utilized at the Restaurants, which the Debtor seeks authority to continue to honor for a period of ten (10) days following the Petition Date (or as extended for a limited period of time thereafter in its discretion) (the "Quality Assurance Program").

---

[2] On August 28, 2018, the Debtor's affiliates, Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside, Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a California limited partnership ("Ruby's Palm Springs") (collectively, the "SoCal Debtors")., filed chapter 11 cases, which are pending in this Court.  In connection with the filing of the SoCal Debtors, the debtors therein requested authority to continue to honor the Programs (as defined herein), which request was approved by the Court.  By this Motion, the Debtor requests corresponding authority to honor such Programs, as set forth herein.

2

By this Motion, the Debtor seeks authority of this Court to continue to honor its pre-petition obligations to customers in connection with the Customer Programs and, for a limited period of time, honor the cards issued in connection with the Quality Assurance Program (together, the "Programs").  Absent authorization from the Court, the Debtor would be unable in the ordinary course of its business to honor or perform certain obligations that arose in connection with the Programs prior to the commencement of the Case.  Honoring the Gift Cards and Quality Assurance Cards is essential to the Debtor's and its affiliates business operations so that customer confidence and satisfaction is maintained – which in turn, maximizes the Debtor's ability to successfully reorganize for the benefit of all parties in interest.  A failure to continue to honor the Debtor's prepetition obligations in connection with the Gift Cards and Quality Assurance Cards would result in disruption to the Debtor's operations, deterioration in relationships with the Debtor's customers and would significantly harm the Debtor's standing in the competitive restaurant business and the public perception of the Ruby's® brand, thereby causing a material reduction in sales and jeopardizing the Debtor's ability to reorganize its business.

In addition, by this Motion, the Debtor seeks authority to continue to maintain post-petition the Company Gift Card Program, allowing it to continue to sell, and honor, Company Gift Cards following the Petition Date in the ordinary course of its business operations.

The Debtor requests that the relief sought herein be granted on an emergency basis due to the harm that would be caused were the Debtor's honoring of its obligations with respect to the gift card programs to be disrupted.  Further, because the Debtor is concurrently with this Motion filing other motions seeking relief in connection with other matters and will in all likelihood file various other motions during the first days of this Case (as defined below), the Debtor, pursuant to Rule 2081-1(a)(3) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, effective February 1, 2017 (the "Local Bankruptcy Rules"),[3] requests that this Motion be heard on an emergency basis.  Granting the relief requested in this Motion on an emergency basis will benefit the estate immediately as set forth above.

---

[3] Pursuant to Local Bankruptcy Rule 9075-1(a)(3), no separate motion for an expedited hearing is required.

3

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached Memorandum of Points and Authorities, the *Declaration of Douglas S. Cavanaugh in Support of First Day Motions* (the "Cavanaugh Declaration"), the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion. In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in this case and the cases of its affiliates, the SoCal Debtors.

**PLEASE TAKE FURTHER NOTICE** that any opposition or objection to the Motion must be filed with the Court and served on proposed counsel for the Debtor at the above address any time before the hearing or may be presented at the hearing on the Motion. Failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and Motion and the attached Memorandum of Points and Authorities, and the Cavanaugh Declaration, on: (1) the Office of the United States Trustee; (2) the creditors appearing on the list filed in accordance with Fed. R. Bankr. P. 1007(d) by the Debtor unless and until an official committee of unsecured creditors (the "Committee") is appointed, then in that event, to counsel to the Committee; (3) parties that file with the Court and serve upon the Debtor request for notice of all matters in accordance with Bankruptcy Rule 2002(i); (4) the United States of America; (5) the State of California, (6) the Steering Committee on behalf of the Debtor's unsecured noteholders, (7) Credit Managers Association on behalf of the Debtor's secured noteholders; (8) any other known secured creditors, (9) counsel to the Debtor's postpetition lender; (10) Costco Wholesale Corporation; and (11) Paytronix, the Debtor's gift card processing provider.

**PLEASE TAKE FURTHER NOTICE** that, to the extent necessary, the Debtor requests that the Court waive compliance with Local Bankruptcy Rule 9075-1(a)(1) and approve service (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight delivery or email. In the event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs. The Debtor submits that such notice is sufficient and that no other or further notice be given.

4

**WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that the Court enter an order providing that the Debtor has the authority, in its discretion, to continue to honor its pre-petition obligations under the Customer Programs in the ordinary course of business, to maintain and administer the Company Gift Card Program, and honor its obligations thereunder, on a post-petition basis, and, for a limited period of time, honor the cards issued in connection with the Quality Assurance Program, and for such other relief as is just.

Dated:   September 5, 2018              PACHULSKI STANG ZIEHL & JONES LLP

                                        By   */s/ William N. Lobel*
                                             William N. Lobel
                                             [Proposed] Attorneys for Ruby's Diners,
                                             Inc., *et al.,* Debtors and Debtors-in-
                                             Possession

5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    Jurisdiction and Venue**

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    Background**

On September 5, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to operate its business and manage its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this chapter 11 case (the "Case").

On August 29, 2018, the Debtor's affiliates, SoCal Diners, LLC ("SoCal Diners"), Ruby's Quality Diners, LLC ("Quality"), Ruby's Huntington Beach, Ltd. ("Ruby's Huntington Beach"), Ruby's Laguna Hills, Ltd. ("Ruby's Laguna Hills"), Ruby's Oceanside, Ltd. ("Ruby's Oceanside"), and Ruby Palm Springs, Ltd. ("Ruby's Palm Springs"), filed chapter 11 cases, which are pending in this Court (the "SoCal Debtors").  Concurrently with the filing of the Debtor's chapter 11 Case, another affiliate of the Debtor, Ruby's Franchise Systems, Inc., a California corporation ("RFS"), intends to file for relief under chapter 11.

**C.    General Description of the Debtor**

A detailed description of the Debtor's background, structure, operations and recent financial history is detailed in the concurrently filed Declaration of Douglas S. Cavanaugh in Support of First Day Motions (the "Cavanaugh Declaration").

**D.     Overview of the Debtor and Its Affiliates' Business Operations**

The Debtor and its affiliates (referred to from time to time herein as the "Company") own, operate and manage restaurants under the trade names "Ruby's®," "Ruby's® Diner," "The Ruby Restaurant Group," "Ruby's® Dinette" and "Ruby's® Shake Shop." The Company has operated Ruby's® Diner restaurants since 1985 and is known as a purveyor of very popular burgers, fries and shakes.

**E.     The Debtor and Its Affiliates' Corporate Structure**

As set forth in the corporate chart (attached as **Exhibit "1"** to the Cavanaugh Declaration), the Debtor is the 100% owner of SoCal Diners. SoCal Diners is the 100% owner and sole and managing member of Quality. SoCal Diners is the general partner and 50% owner, and Quality is the limited partner and 50% owner, of the following California limited partnerships: (1) Ruby's Huntington Beach, which owns and operates a Ruby's® restaurant on the pier in Huntington Beach, California and is a SoCal Debtor; (2) Ruby's Oceanside, which owns and operates a Ruby's® restaurant in Oceanside, California and is a SoCal Debtor; (3) Ruby's Palm Springs, which owns and operates a Ruby's® restaurant in Palm Springs, California and is a SoCal Debtor; and (4) Ruby's Laguna Hills, which owns and operates a Ruby's® restaurant in the Laguna Hill Mall in Laguna Hills, California[1] and is a SoCal Debtor [2] (the restaurants owned by the SoCal Debtors are referred to as the "SoCal Restaurants").

In addition, the Debtor holds ownership interests in, and management roles in connection with, the following non-debtor joint venture entities: (1) the Debtor is the managing member and 70% owner of Ruby's Beach Ventures LLC, which owns and operates a Ruby's® restaurant in Long Beach, California; (2) the Debtor is the general partner and 50% owner of Ruby's Diner South Coast Plaza LP, which owns and operates a Ruby's® restaurant at South Coast Plaza Mall in Costa Mesa, California; (3) the Debtor is the managing member and sole owner of Ruby's Woodbridge LLC,

---

[1] The Debtor anticipates that, due to significant, continuing construction projects underway at the Laguna Hills Mall, the Laguna Hills restaurant will close following the Petition Date.

[2] SoCal and Quality also own Ruby's Mission Valley, Ltd., which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant in the Westfield Mission Valley Mall in San Diego, California. The Mission Valley restaurant was closed prior to the Petition Date, in April 2018. Ruby's Mission Valley, Ltd. is not a debtor entity.

7

which owns and operates a Ruby's® restaurant in Woodbridge in Irvine, California; and (4) the Debtor is the managing member and 50% owner of Ruby's Spectrum LLC, which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant at the Irvine Spectrum in Irvine, California (collectively, the "RDI Entities" and the restaurants owned by the RDI Entities, the "RDI Restaurants" and, together with the SoCal Restaurants, the "Company Restaurants")

As of the Petition Date, there also were twenty-four (24) Ruby's® Diner franchises (or licensed units) located in Southern California, Pennsylvania, New Jersey, Nevada and Texas that were owned and, with certain limited exceptions, operated by independent third parties (the "Franchise Restaurants" and, together with the Company Restaurants, the "Restaurants").

## F.    The Customer Programs and Prepetition Obligations Arising Therefrom

Prior to the Petition Date, and in the ordinary course of business, the Company engaged in certain marketing, sales and promotional practices, targeted to develop and sustain positive results for the Restaurants, including the issuance of gift cards to customers. These gift cards (the "Gift Cards") were sold either (a) directly by the Restaurants (the "Company Gift Card Program") or (b) through arrangements with Costco Wholesale Corporation ("Costco"), a third party retailer (the "Costco Gift Card Program" and, together, the "Customer Programs"). The Customer Programs are designed to allow the Company to successfully compete in a highly competitive marketplace by ensuring customer satisfaction and generating loyalty and goodwill, thereby allowing the Company and the Restaurants to retain current customers, attract new ones, and ultimately enhance revenue and profitability.

(1)    The Company Gift Card Program

Gift cards can be purchased by the customer at the Restaurants, or on the internet, for the full face value of the goods to be purchased (the "Company Gift Cards"). The Debtor estimates that, based on the outstanding and unredeemed Company Gift Cards as of the Petition Date, there are pre-petition obligations to customers in connection with the Company Gift Card Program in the face amount of approximately $824,000. Of this amount, approximately $450,000 is related to Gift Cards bought at Company Restaurants, approximately $360,000 is related to Gift Cards bought at Franchise Restaurants and approximately $14,000 is related to Gift Cards purchased from the

Company over the internet.  Approximately $435,000 of the $824,000 total Company Gift Card liability relates to Gift Cards issued over five (5) years ago and is, therefore, significantly aged. Based on this aging, historic redemption rates and what the Debtor believes to be reasonable assumptions as to the Company Gift Card liability related to closed locations, the Debtor believes that the Company's total pre-petition liability under the Company Gift Card Program is not likely to exceed the amount of approximately $250,000.[3]

The Company utilizes the services of Paytronix, a gift card processing provider, to track and process the issuance and redemption of the Company Gift Cards.  In most instances, the Company Gift Cards are utilized by the customer at the location at which they are purchased.  In such event, there is no inter-Restaurant obligation incurred.  At times, however, the Company Gift Cards will be purchased at one Restaurant and utilized at another Restaurant.  In such circumstance, there is an inter-Restaurant obligation created.  On a monthly basis, Paytronix provides the Company with a monthly report reconciling these inter-Restaurant amounts.  For its services, Paytronix is paid a monthly fee in the amount of $4,178, which includes the Paytronix platform and Rules Engine, Mobile Processing, Monthly Gift, Loyalty & Comp Card hosting bundle, and eGift activation fee. As of the Petition Date, the Debtor estimates that there are *de minimis* amounts owing between the Restaurants related to the Company Gift Cards.

By this Motion, the Debtor seeks to honor such prepetition obligations to customers and the Restaurants, and also seek to continue to maintain and administer this Company Gift Card Program, and honor the obligations thereunder (including to Paytronix), following the Petition Date.

(2)    The Costco Gift Card Program

Prior to the Petition Date, the Debtor also had an arrangement with Costco, pursuant to which Costco would pay a percentage of the face amount of the Ruby's® gift card to Costco and would sell the gift cards to customers at a discount of their face value (the "Costco Gift Cards").  The customer

---

[3] In the event that a location is sold, it is customary for the purchaser to assume the gift card liability associated with that location, or for the seller to make allowances to provide for the satisfaction of this liability.  In such event, these obligations are unlikely to be asserted against the Company.  Even assuming that such liability were to be asserted against the Company, the Company's liability filed in connection with the Company Gift Card Program is not likely to exceed an additional approximately $200,000 (*i.e.*, the Debtor believes that the Company's maximum pre-petition liability in connection with the Company Gift Card Program is unlikely to exceed a total of approximately $450,000).

9

could then redeem the Costco Gift Card, at full value, at any of the Restaurants. Prior to the Petition Date, the Debtor terminated the Costco Gift Card Program as it was not a financially viable program because the Debtor was required to make up the differential between the amount paid to it by the third party retailer and the face amount of the Costco Gift Card following redemption, and was unable to reach acceptable arrangements with the Franchise Restaurants in terms of a reduced reimbursement rate. However, although the Debtor will no longer maintain the Costco Gift Card Program post-petition, the Debtor believe that it is imperative to honor the outstanding obligations to customers in connection with the Costco Gift Cards that have already been sold. Based on the face amount of the outstanding and unredeemed Costco Gift Cards as of the Petition Date, the Debtor's gross possible pre-petition obligations to customers in connection with the Costco Gift Cards is approximately $4.4 million. Based upon historic redemption practices, however, the Debtor estimates that customers will actually use Costco Gift Cards in the approximate aggregate amount of $1.6 million. The failure of the Debtor to honor the Costco Gift Cards would have a significant negative impact on the Debtor's business, the Restaurants and their relationship with their customers.

(3)    The Quality Assurance Program

Prior to the Petition Date, the Debtor also had an arrangement with its unsecured noteholders, pursuant to which each noteholder received a Quality Assurance Program card (in the amount of $50 per month for each $10,000 in notes), which entitled the noteholder to dine at the Restaurants and, in return, offer feedback regarding their experiences. By this Motion, the Debtor requests authority for a period of ten (10) business days following the Petition Date (or for a limited period thereafter in the Debtor's discretion) to continue to honor the Quality Assurance Cards. The Debtor believes that honoring the Quality Assurance Cards, in its discretion, for a limited period of time will avoid disruption to the Debtor's and the Restaurant's operations.

The Debtor's Budget contemplates that the Debtor will honor its obligations to customers, the Restaurants and third-party service providers under the Customer Programs, and in connection with the Quality Assurance Program, as requested herein.

Accordingly, by this Motion, the Debtor seeks authority to continue to honor its pre-petition obligations under the Company Gift Card Program and Costco Gift Card Program, to continue to honor the Quality Assurance Program for a limited time, and to continue the Company Gift Card Program following the Petition Date, as requested herein. Failure to continue to honor and process these Programs would severely disrupt the Debtor's business, adversely affect sales and negatively impact loyal customers. Without this continued and uninterrupted ability to honor these obligations, the business reputation of Ruby's® would be severely damaged.

## II.

## ARGUMENT

### A. Honoring Customer Commitments Falls Within the Ordinary Course of Business

The Bankruptcy Code contemplates that, following the commencement of a chapter 11 case, debtors will continue to conduct their businesses as usual for their customers. Unless the Bankruptcy Court orders otherwise, section 1108 of the Bankruptcy Code authorizes a debtor in possession to "operate the debtor's business,"[4] and section 363 states that "[i]f the business of the debtor is authorized to be operated under section . . . 1108 . . . and unless the court orders otherwise, the [debtor in possession] may enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice and a hearing." 11 U.S.C. § 363(c)(1).

As the Ninth Circuit has recognized:

> The touchstone of "ordinariness" is . . . the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing . . . .

Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 705 (9th Cir. 1988) (citation omitted). There is nothing more in the "ordinary course of business" than

---

[4] 11 U.S.C. §§ 1107 ("Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."), and 1108 ("Unless the court, on request of a party in interest and after hearing and notice, orders otherwise, the trustee may operate the debtor's business.").

11

honoring customer commitments.

B. **The Honoring of Certain Prepetition Customer Obligations Can Be Authorized Under Section 105(a) of the Bankruptcy Code**

Although the Programs may be satisfied in the ordinary course of business, to the extent that court approval is required, this Court has broad equitable authority under section 105(a) of the Bankruptcy Code to approve the relief requested in this Motion. Pursuant to section 105(a), "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[5] In United States v. Energy Resources, 495 U.S. at 549, the Supreme Court held that Section 105(a) confers broad powers that are consistent with the "traditional understanding" that bankruptcy courts are courts of equity. "While Section 105(a) endows bankruptcy courts with broad equitable powers, Section 105(a) may be exercised only in a manner not inconsistent with the provisions of the Code." Gurney v. State of Arizona Dept. of Revenue (In re Gurney), 192 B.R. 529, 537 (9th Cir. BAP 1996).[6]

Some courts view section 363, as well as other provisions of the Bankruptcy Code, as a bridge to section 105(a), which may then authorize the payment of certain prepetition claims;[7] whereas other courts have interpreted section 105(a) to provide independent statutory authority for

---

[5] 11 U.S.C. § 105(a). Congress' choice of words in section 105 – "any", "necessary", "appropriate", "carry out", "provisions of this title" – all suggest that Congress intended an expansive interpretation of the section that would not limit the courts in addressing issues that may arise in bankruptcy cases. See United States v. Energy Resources Co., 495 U.S. 545, 549 (1990) ("The Code also states that bankruptcy courts may 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Code. [sic] § 105(a).") (citations omitted).

[6] See also In re Mercado, 124 B.R. 799, 802 (Bankr. C.D. Cal. 1991) ("*Energy Resources*, therefore, stands for the following principles: (1) the bankruptcy court has broad equitable power to resolve debtor/creditor matters; (2) its equitable power is limited by specific provisions in the Bankruptcy Code and other federal laws that should be considered before exercising this power; and (3) absent specific conflicts in the Bankruptcy Code and federal law, a debtor has broad discretion to deal with its creditors through the plan process, provided its actions are necessary for a successful reorganization, and the bankruptcy court has the equitable power to approve such plans.").

[7] See e.g., In re CoServ, L.L.C., 273 B.R. 487, 496-97 & n.17 (Bankr. N.D. Tex. 2002) ("To get from section 105(a) to the Doctrine of Necessity, the Court must find a bridge that makes application to the Doctrine of Necessity 'necessary or appropriate to carry out the provisions of' [section 105(a)]. The Court believes such a bridge exists in the debtor in possession's role as the equivalent of a trustee.") (citations omitted); In re Tropical Sportswear Int'l Corp., 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("This Court finds that a bankruptcy court may utilize sections 105(a) and 363 of the Bankruptcy Code to justify the grant of critical vendor status under appropriate circumstances. Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

12

the payment of such claims.[8]  Both schools of analysis generally reason that section 105 can be used to further the policy provisions of chapter 11, including (i) "to permit the successful rehabilitation of debtors," NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527 (1984), and (ii) to "preserv[e] going concerns and maximiz[e] property available to satisfy creditors," Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. La Salle St. P'ship, 526 U.S. 434, 453 (1999).[9]  Thus, section 105(a) empowers the bankruptcy court to authorize payment of prepetition claims when such payments are essential to ensure the survival of the debtor pending its reorganization and to maximize the estate's assets available to satisfy creditors.

In some instances, courts have labeled their equitable power to satisfy prepetition claims under section 105(a) the "Necessity of Payment Doctrine."  See, e.g., Ionosphere Clubs, Inc., 98 B.R. at 175-76 (citing Miltenberger v. Logansport, C. & S. W. R. Co., 106 U.S. 286 (1882)).  Although the Ninth Circuit refused to extend the Necessity of Payment Doctrine beyond railroad reorganization cases in B&W Enters, Inc. v. Goodman Oil Co. (In re B&W Enters., Inc.), 713 F.2d 534 (9th Cir. 1983),[10] subsequent Ninth Circuit decisions have acknowledged that payment of prepetition claims is appropriate in certain circumstances.  For instance, in Burchinal v. Central Washington Bank (In re Adams Apple, Inc.), the Ninth Circuit acknowledged the importance of paying certain prepetition claims in a reorganization case, even when the claimants are provided an advantage over other creditors:

> [A] "fundamental tenet" – rehabilitation of debtors . . . may supersede the policy of equal treatment.  Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key

---

[8] See e.g., In re Just for Feet, Inc., 242 B.R. 821, 824 (D. Del. 1999) (section 105 provides "a statutory basis for the payment of pre-petition claims"); In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[U]nder 11 U.S.C. § 105 the court can permit pre-plan payment of a prepetition obligation when it's essential to the continued operation of the debtor."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (same).

[9] See also In re Enron Corp., 274 B.R. 327, 348 (Bankr. S.D.N.Y. 2002) (the "ultimate purpose" of a chapter 11 bankruptcy case is to successfully reorganize).

[10] In re B&W Enters., Inc., where the debtor made unauthorized postpetition payments to trade suppliers on prepetition debts, is easily distinguishable because: (i) it involved ordinary trade debts and not obligations to customers, who, unlike vendors, do not generally expect to extend trade credit or take credit risk that vendors anticipate; (ii) the debtor did not seek prior court approval for the payments; and (iii) the case was in liquidation, thereby rendering the "necessity" of such payments moot.  713 F.2d at 535-36.

13

employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.

829 F.2d 1484, 1490 (9th Cir. 1987) (citation omitted).[11]  Similarly, other courts have acknowledged the appropriateness of allowing payment of certain prepetition claims.  As one bankruptcy court observed:

> This Court has previously noted that the payment of prepetition claims prior to confirmation of a plan in a Chapter 11 case has been proscribed by the 5th Circuit. . . . In certain cases, courts in this district have found exceptions to this general rule of nonpayment.  These exceptions arise primarily out of common sense and the presence of a legal or factual inevitability of payment. . . .  For instance, . . . certain cases involve business transactions which are at once individually minute but collectively immense and critical to the survival of the business of the debtor.  Examples include the redemption of prepetition retail coupons in a consumer products case, the honoring of credit card debits, credits and chargebacks in a retail department store case or, as in the case at bar, the issuance of billing credits to retail customers in connection with prepetition telephone services and invoices.  The impact of the failure to allow payment of these sorts of 'nuisance' items would be devastating to a proposed reorganization in the context of a retail market.  A quick corollary is that such a failure to pay and its consequent loss of customer base would impair value of the business on either a going concern or liquidation basis.  Further, the prepetition claims in some cases might be subject to offset or recoupment or both.

In re Equalnet Commc'ns, 258 B.R. 368, 369-70 (Bankr. S.D. Tex. 2000) (citation omitted).

Further, section 507(a)(7) of the Bankruptcy Code provides that a claim of any customer, not to exceed $2,850, that arises from a deposit with the debtor in connection with the purchase of property for the personal, family or household use of the individual is to be accorded priority. Unredeemed Company Gifts Cards, Costco Gift Cards, and Quality Assurance Program cards are in individual amounts of less than $2,850.  Therefore, such obligations would be priority claims entitled to be paid in full under any plan of reorganization.

**C.    The Bankruptcy Code Does Not Prohibit Postpetition Satisfaction of Prepetition Obligations**

Section 549(a) the Bankruptcy Code provides further support for the proposition that postpetition satisfaction of prepetition customer obligations is permissible.  Section 549(a) empowers the debtor in possession to avoid unauthorized postpetition transfers and provides that

---

[11] *See also* Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLC), 424 F.3d 963, 969 (9th Cir. 2005) (citing In re Adams Apple, Inc. for its rejection of the fundamental tenet of bankruptcy law that like creditors must always be treated alike).

14

"the trustee may avoid a transfer of property of the estate . . . made after the commencement of the case . . . that is not authorized . . . by the court." 11 U.S.C. § 549(a). By necessary implication of this provision, a bankruptcy court may authorize limited postpetition payments to satisfy prepetition obligations. In re Isis Foods, Inc., 37 B.R. 334, 336 n.3 (W.D. Mo. 1984) ("proposed transfers [to pay prepetition claims] may be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack").

**D.     Summary**

The Debtor submits that the Company's business operations and ability to retain going-concern value depends on the ability to honor the Gift Cards (and Quality Assurance Program cards for a period of time) pursuant to the Company's policies, and hence, the Debtor requests an order authorizing the Debtor to honor its prepetition obligations under the Programs and its postpetition obligations with respect to the Company Gift Card Program. The Court's authorization for the Debtor to continue honoring the Programs in the ordinary course of business or pursuant to section 105(a) of the Bankruptcy Code, in conjunction with either section 363 and other sections of the Bankruptcy Code *or* under the concept of the Necessity of Payment Doctrine, serves as a viable and equitable means for ensuring that the Debtor can continue its operations in the ordinary course, maximize the value of its estate for its creditors and reorganize its business for the benefit of all parties in interest.

The Debtor's ongoing operations depend on the continued loyalty and patronage of the Restaurant customers, and the relief requested herein is essential to business operations and customer confidence. The Debtor respectfully submits that honoring Programs would not drain the Debtor's estate of cash that would otherwise be available to general creditors. Indeed, the Debtor's ability to honor the Programs will enable it to maintain and potentially expand the existing customer base and the honoring of such obligations are contemplated by the Debtor's Budget. Honoring the Customer Programs will result in a higher net cash flow when compared to the alternative of reneging on Customer Programs, which would result in the loss of sales and customers to competitors.

Nothing contained herein is intended or should be construed as an admission as to the

validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under Section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

### E. Compliance with Fed. R. Bank. P. 6003(b)

Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). To the extent any of the above described Programs is determined to be a claim against the estate that arose before the Petition Date, for the reasons described herein and as supported by the Cavanaugh Declaration, the Debtor submits that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

### III.

### CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order granting the relief requested herein, and grant such further relief as is just and proper.

Dated:   September 5, 2018                PACHULSKI STANG ZIEHL & JONES LLP

                                          By    */s/ William N. Lobel*
                                                William N. Lobel
                                                [Proposed] Attorneys for Ruby's Diners,
                                                Inc., *et al.,* Debtors and Debtors-in-
                                                Possession