GARY E. KLAUSNER (SBN 69077)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: gek@lnbyb.com; kjm@lnbyb.com

TOM LALLAS (SBN 66512)
MARK D. HURWITZ (SBN 151159)
LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
815 Moraga Drive
Los Angeles, California 90049-1633
Telephone: (310) 471-3000; Facsimile: (310 471-7990
Email: tlallas@lsl-la.com; mhurwitz@lsl-la.com

Attorneys for Creditors Barry Beitler; Cannae Financial, LLC;
AFG Investment Fund 7, LLC; BAB 8 LLC; Beitler & Associates, Inc. dba
Beitler Commercial Realty Services; and Steward Financial LLC

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>JOHN JEAN BRAL<br><br>           Debtor and Debtor-<br>           in-Possession. | Case No. 8:17-bk-10706-SC<br><br>Chapter 11<br><br>**BEITLER CREDITORS' OPPOSITION TO MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EXTEND EXCLUSIVITY PURSUANT TO 11 U.S.C. § 1121(d); DECLARATION OF KRIKOR J. MESHEFEJIAN IN SUPPORT**<br><br>[Hearing requested and required] |

1

# TABLE OF CONTENTS

A.  Introduction ................................................................................................................2

B.  Background Information ...........................................................................................3

    1.  The Beitler Creditors Hold The Vast Amount of Claims Against the Debtor's Estate ................................................................................................3

    2.  The Debtor's Flawed Plan ...............................................................................4

C.  The Debtor Cannot Satisfy the Relevant Factors for Extension of Exclusivity .......6

    1.  The Size and Complexity of this Case ............................................................7

    2.  Sufficiency of Time To Negotiate a Plan .......................................................8

    3.  Existence Of Good Faith Progress Toward Reorganization ..........................8

    4.  Whether the Debtor is Paying His Bills as they Come Due ..........................8

    5.  Prospects for Confirming a Plan ....................................................................9

    6.  Progress in Negotiations with Creditors ......................................................10

    7.  Amount of Time which has Elapsed ............................................................10

    8.  Seeking an Extension to Pressure Creditors ................................................11

    9.  Whether an Unresolved Contingency Exists................................................11

D.  Conclusion ................................................................................................................12

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bank of America, etc. v. 203 North LaSalle Street Partnership*
    526 U.S. 434, 119 S.Ct. 1411, 143 L.ED.2d 607 (1999) ........................................................ 9

*In re Curry Corp.*
    148 B.R. 754 (Bankr. S.D.N.Y. 1992) ................................................................................... 7

*In re General Bearing Corp.*
    136 B.R. 361 (Bankr. S.D.N.Y. 1992) ......................................................................... 7, 9, 10

*In re GMG Capital Partners III, L.P.*
    503 B.R. 596 (Bankr. S.D. N.Y. 2014) ................................................................................. 9

*In re GMG Capital Partners III, L.P.*
    503 B.R. 598 (Bankr. S.D.N.Y. 2014) ...................................................................... 6, 7, 10

*In re Matter of All Seasons Indus., Inc.*
    121 B.R. 1002 (Bankr. N.D. Ind. 1990) ......................................................................... 7, 11

*In re R.G. Pharmacy, Inc.*
    374 B.R. 484 (Bankr. Conn. 2007) ........................................................................................ 8

*In re Sharon Steel Corp.*
    78 B.R. 762 (Bankr. W.D. Penn 1987) ................................................................................. 7

*In re Southwest Oil Co. of Jourdanton, Inc.*
    84 B.R. 448 (Bankr. W.D. Tex. 1987) .................................................................................. 9

*Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp.*
    282 B.R. 444 (B.A.P. 9th Cir. 2002) .................................................................................... 7

**FEDERAL STATUTES**

11 U.S.C. § 1121 .................................................................................................................... 2, 7

11 U.S.C. § 1121(b) .................................................................................................................... 6

11 U.S.C. § 1121(d) ............................................................................................................ 2, 6, 7

11 U.S.C. § 1129(b)(2)(B)(ii) ..................................................................................................... 9

**OTHER STATUTES**

Corporations Code § 17707.03(c) .............................................................................................. 5

Barry Beitler, Cannae Financial, LLC, AFG Investment Fund 7, LLC, BAB 8, LLC, Beitler & Associates, Inc. dba Beitler Commercial Realty Services, and Steward Financial LLC (collectively, the "Beitler Creditors") hereby file this Objection to that certain *Notice of Motion and Motion of Debtor and Debtor in Possession To Extend Exclusivity Pursuant To 11 U.S.C. § 1121(d)* (the "Motion") [Doc No. 105] filed by John Jean Bral (the "Debtor"). Any reply to this Opposition must be filed and served at least seven days prior to the hearing on the Motion.

**A.    Introduction.**

As set forth below, the Debtor has failed to establish cause sufficient to warrant the requested extension of plan exclusivity under 11 U.S.C. § 1121. The Beitler Creditors are the Debtor's largest creditors, the holders of approximately 75% of the amount of all claims against the Debtor's estate, which represents 90% of all general unsecured claims. While the Beitler Creditors look forward to engaging in mediation with the Debtor on August 28, 2017, and hope to resolve their disputes with the Debtor at that time, to the extent mediation is not successful, any extension of the now-expired plan exclusivity period would impede an efficient resolution of this case and unfairly disadvantage the Beitler Creditors.

The Beitler Creditors will not support a plan forced upon them by the Debtor through his exclusivity. It is highly improbable, if not impossible, that the Debtor can confirm his plan without the Beitler Creditors' support, and it is impossible that the Debtor can confirm any plan without the Beitler Creditors' support while, at the same time, precluding the Beitler Creditors from proposing a competing plan.

The Debtor has two realistic options: Option one is for the Debtor to settle with the Beitler Creditors at the August 28, 2017 mediation and proceed with a consensual plan. Under that circumstance, and subject to an actual settlement between the parties, the Beitler Creditors may support an extension of plan exclusivity. Option two is, if the parties do not reach a settlement, the Beitler Creditors will propose a competing plan for creditors to consider at the same time as the Debtor's plan. Under that circumstance, there would be no reason to wait until December 2017 to acknowledge the inevitable, which is that the Debtor cannot confirm a plan over the

Beitler Creditors' objection. Thus, in order for this case to be expeditiously administered, if the August 28, 2017 mediation is not successful, the Motion should be denied.

Additionally, retroactively extending the Debtor's plan exclusivity period (the exclusivity period has already expired subject to the outcome of the Motion) will provide to the Debtor an unfair, unnecessary, advantage over the Beitler Creditors. They will, in essence, be held hostage, with no right to file a plan, while the Debtor proceeds with a plan that is doomed to fail; and incurs substantial fees in the process.

Finally, even assuming that the Beitler Creditors' consent is not required in order to confirm a plan in this case, there are significant issues with the Debtor's current proposed plan which render it non-confirmable. Rather than wait until December 2017, when the Debtor's requested exclusivity would terminate, the Motion should be denied so that a plan proposed by the Beitler Creditors can track the same confirmation schedule as the Debtor's plan. In that regard, the Beitler Creditors are not requesting that the Court delay consideration of the Debtor's plan, but only that creditors and the Court be able to consider both plans on the same confirmation schedule.[1]

**B.    Background Information.**

*1.    The Beitler Creditors Hold The Vast Amount of Claims Against the Debtor's Estate.*

Collectively, the Beitler Creditors hold more than $9.1 million of claims based upon at least $3.6 million in judgments and fee awards obtained by the Beitler Creditors against the Debtor, and additional claims totaling approximately $6 million. That amount represents more than 75% of the amount of all claims against the Debtor's estate, and approximately 90% of all general unsecured claims. Attached hereto as Exhibit 1 is a chart setting forth all of the claims scheduled by the Debtor, and all of the proofs of claim filed in this case. As is demonstrated therein, the Beitler Creditors are the largest creditors in this case.

---

[1] The Beitler Creditors will utilize the Debtor's November 9, 2017 disclosure statement hearing date as the hearing date for the Beitler Creditors' Disclosure Statement if the Court denies the Motion.

### *2. The Debtor's Flawed Plan.*

The Debtor's "Chapter 11 Plan" (the "Debtor's Plan") is a liquidation plan. *See* Chapter 11 Plan [Docket No. 86], p. 1, l. 14. The Debtor's Plan provides that allowed claims will be paid from a "Distribution Fund" consisting of monies derived from: (1) the dissolution of Mission Medical Investors, LLC ("Mission") and Westcliff Investors, LLC ("Westcliff"), (2) the liquidation of his other real and personal property; and (3) potential recoveries from malpractice claims the Debtor holds against prior counsel. *See id.*, p. 1, ll. 16 – 25.

The Debtor's Plan is fatally flawed because, among other reasons, pursuant to applicable law and the provisions of the respective Mission and Westcliff operating agreements, the Debtor will not be able to effect dissolution of either entity.

Pursuant to Sections 1.12, 4.7(C)(viii), and 10.2 of the Mission operating agreement, dissolution of Mission without a judicial decree requires the unanimous consent of all of Mission's members. Barry Beitler ("Beitler"), who holds a membership interest in Mission that is at least equal to the Debtor's and far exceeds that of any other member, objects to dissolution. Furthermore, Article VIII of the Mission Operating Agreement provides for the right of other members to purchase the interest of a member who seeks dissolution. Beitler reserves all rights to purchase the Debtor's interest and thereby avoid dissolution of Mission. While the Debtor's Plan contemplates the purchase of the membership interests by a member, that outcome cannot be forced upon the Beitler Creditors.

While Section 9.1 of the Westcliff operating agreement permits dissolution, without a judicial decree, upon a vote of a majority of the membership, Beitler and Betsy Boyd ("Boyd") collectively hold a majority interest in Westcliff and oppose dissolution. Furthermore, Article VII of the Westcliff operating agreement, similar to the Mission operating agreement, provides for the right of other members to purchase the interest of a member who seeks to dissolve Westcliff. The Debtor therefore will not be able to dissolve Mission or Westcliff pursuant to their respective operating agreements, and the foundation of the Debtor's Plan is fatally flawed (whether the Debtor is liquidating the membership interests or the underlying real properties owned by Mission

4

and Westcliff, the Debtor relies upon dissolution of those entities to fund the Debtor's Plan, which, as demonstrated herein, is not feasible).

The Debtor also will not be able to obtain a judicial decree of dissolution. Pursuant to subdivisions (a) and (b) of California Corporations Code section 17707.03, the grounds for a judicial decree of dissolution of a limited liability company are:

(1) It is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.

(2) Dissolution is reasonably necessary for the protection of the rights or interests of the complaining members.

(3) The business of the limited liability company has been abandoned.

(4) The management of the limited liability company is deadlocked or subject to internal dissension.

(5) Those in control of the limited liability company have been guilty of, or have knowingly countenanced, persistent and pervasive fraud, mismanagement, or abuse of authority.

The very fact that Mission and Westcliff continue to operate, and thus to generate the bulk of the value of the Debtor's estate, effectively negates any purported grounds for judicial dissolution. While Beitler and Boyd certainly reserve all rights to plead and prove that *the Debtor* has been guilty of "persistent and pervasive fraud, mismanagement, or abuse of authority," the Debtor cannot be expected to cite his own misconduct as grounds for dissolution of Mission or Westcliff. Mission and Westcliff continue to operate their respective commercial real properties in accordance with their business purposes, and any disagreements between the Debtor and Beitler as co-managers do not support or require dissolution.

Moreover, even if, for instance, the Debtor were to cite a "deadlock" or "internal dissension" as between himself and Beitler as grounds for dissolution, Corporations Code section 17707.03(c), similar to Article VIII of the Mission operating agreement and Article VII of the Westcliff operating agreement, grants other members the right to purchase the interest of the member who seeks a judicial decree of dissolution. Again, Beitler reserves all rights to purchase

5

the Debtor's interests in Mission and Westcliff should the Debtor persist in seeking judicial dissolution, but he is not required to do so. The Debtor therefore will not be able to implement a plan premised on dissolution of Mission and Westcliff without the Beitler Creditors' consent.

Finally, the Beitler Creditors believe that the Debtor knows that he cannot cause the dissolution of the LLCs and certainly not without protracted and expensive litigation, along with administrative tax claims which the Debtor estimates will cost his own estate approximately $3.3 million. *See* Debtor's Plan, p. 5, ll. 3 – 5. It appears that the Debtor is using the threat of dissolutions and the resulting tax consequences, and therefore, the Debtor's Plan and the Debtor's exclusivity period, as an improper hammer over the Beitler Creditors.

**C.    The Debtor Cannot Satisfy the Relevant Factors for Extension of Exclusivity.**

The Debtor cannot meet the requirements of Section 1121(b) of the Bankruptcy Code for an extension of exclusivity.

Pursuant to Section 1121(d) of the Bankruptcy Code, the exclusivity period may only be extended for "cause". 11 U.S.C. § 1121(d). The party seeking to change those periods bears the burden of proving cause. *In re GMG Capital Partners III, L.P.*, 503 B.R. 598, 601 (Bankr. S.D.N.Y. 2014). While the Bankruptcy Code does not define the term "cause," courts have developed a set of nine factors to consider in determining whether to extend a debtor's statutory period of exclusivity:

1. The size and complexity of the case;
2. The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
3. The existence of good faith progress toward reorganization;
4. The fact that the debtor is paying its bills as they become due;
5. Whether the debtor has demonstrated reasonable prospects for filing a viable plan;
6. Whether the debtor has made progress in negotiations with its creditors;
7. The amount of time which has elapsed in the case;
8. Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

9.      Whether an unresolved contingency exists.

*Id.* at 600 (internal citations omitted); *see Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp. (In re Henry Mayo Newhall Mem'l Hosp.),* 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002) ("A variety of matters probative to § 1121(d) 'cause' are standardly applied."). "The decision whether or not to extend the debtor's period of exclusivity rests within the discretion of the court." *In re Sharon Steel Corp.*, 78 B.R. 762, 763 (Bankr. W.D. Penn 1987). Thus, even if cause is shown, the court may refuse to extend the exclusivity period. *Id.* Moreover, in considering a change in the debtor's exclusivity period, the court must also consider the history and purpose of Section 1121, where the statute was enacted by Congress to "limit the delay that makes creditors the hostages of Chapter 11 debtors." *In re Matter of All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990) (internal citations omitted).

As demonstrated below, an application of the nine factors cited above demonstrates that the Debtor has not met his burden to establish cause for extending exclusivity, and additional factors weigh against the extension. The Motion should therefore be denied.

### *1.     The Size and Complexity of this Case.*

The Debtor's chapter 11 case is not large or complex; nor are there any unique issues or problems that require exclusivity to be extended. *See In re Curry Corp.*, 148 B.R. 754, 755 (Bankr. S.D.N.Y. 1992) (case did not appear to be complex even where debtor operated seven automobile dealerships in various states); *In re General Bearing Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y. 1992) (case not complex with only two secured claimants and case did not produce numerous and complex proceedings involving related cases).

The Debtor is an individual. His Debtor's Plan is a simple, albeit unconfirmable, liquidating plan. This case is, in reality, a two-party dispute between the Debtor and the Beitler Creditors. The Debtor admits as much in the Motion. *See* Motion, p. 6, fn. 2 (stating that "the

major factor leading up to this case was the pre-petition litigation commenced by the Beitler Creditors").[2] There are no case complexities which warrant an extension of exclusivity.

### 2. *Sufficiency of Time To Negotiate a Plan.*

The Debtor has had ample time to negotiate the terms of a consensual plan with the Beitler Creditors. Rather than immediately begin that process with the Beitler Creditors, the Debtor waited until one business day before the Court-imposed deadline to file the Debtor's Plan While it is true that the parties agreed to engage in a mediation to take place on August 28, 2017, and agreed to continue the hearing on the Disclosure Statement to November 9, 2017, to the extent the Debtor cannot settle his disputes with the Beitler Creditors on August 28, 2017, the additional passage of time will not benefit creditors, and will only delay the resolution of this case. The Debtor will have had a sufficient amount of time to negotiate a consensual plan at the conclusion of the August 28, 2017 mediation.

### 3. *Existence Of Good Faith Progress Toward Reorganization.*

While the Debtor has complied with bare-minimum administrative requirements, that is not a basis to extend exclusivity, particularly where, as here, without the consent of the Beitler Creditors, the Debtors' prospects of reorganization are extremely uncertain, if not altogether impossible. An unsuccessful mediation will signify, among other things, that: (1) the Debtor is not making progress toward reorganization; (2) the Debtor's Plan is unconfirmable without the Beitler Creditor's support and (3) it would be a waste of time and resources to extend exclusivity only to later make the inevitable discovery that the Debtor cannot confirm a plan absent creditor consent, which consent is effectively controlled by the Beitler Creditors.

### 4. *Whether the Debtor is Paying His Bills as they Come Due.*

Since the filing of this case, the Debtor's cash position has eroded, such that, his latest monthly operating report reflects that his cash position is negative. *See* July 2017 monthly operating report, Docket No. 102. While the Debtor may argue in response that he is unable to

---

[2] "Litigation with creditors is not an unusual circumstance, and the fact that litigation is pending with creditors is not sufficient cause to justify an extension of the exclusivity period." *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 488 (Bankr. Conn. 2007).

access distributions from certain entities as a result of charging orders obtained by the Beitler Creditors, that only further demonstrates that the Debtor's prospects in this case are hinged upon satisfaction of the Beitler Creditors' claims.

### 5. *Prospects for Confirming a Plan.*

As part of establishing cause sufficient to extend exclusivity, "[t]he debtor in a Chapter 11 case is also required to demonstrate that there is a reasonable probability that it will be able to propose a plan that will result in a successful reorganization plan within a reasonable time." *In re Southwest Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 451 (Bankr. W.D. Tex. 1987). "A reasonable probability cannot be grounded solely on speculation. The Code requires the debtor to prove that an effective reorganization is possible." *Id.* Where a debtor cannot demonstrate "that it has the financial ability to propose a confirmable Chapter 11 plan or that any further delay will enhance its prospects[,]" the playing field should be leveled to allow creditors to propose a plan. *See General Bearing Corp.*, *supra*, at 367.

For multiple reasons, the Debtor cannot show any reasonable prospect of proposing a confirmable plan absent the Beitler Creditors' consent. The Debtor's Plan seeks to impair the Beitler Creditors' secured claims, and general unsecured claims. The Beitler Creditors, by virtue of the amount of their claims, control the vote of the general unsecured creditor class under the Debtor's Plan. Thus, in order for the Debtor to obtain the consent of the general unsecured class, the Debtor requires the consent of the Beitler Creditors. Thus, the Debtor cannot demonstrate reasonable prospects for confirming a plan where he does not have the Beitler Creditors' support that is vital (absent a debilitating cramdown battle). *See In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 602 (Bankr. S.D. N.Y. 2014) (debtor did not demonstrate reasonable prospects for proposing viable plan that would be supported by creditor controlling 90% of unsecured debt, and creditor opposed exclusivity extension).

Additionally, any plan proposed by the Debtor that contemplates the Debtor's retention of assets post-confirmation, while paying unsecured creditors less than their full claims, will run afoul of the ruling of the United States Supreme Court in *Bank of America, etc. v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 119 S.Ct. 1411, 143 L.ED.2d 607 (1999), and 11

9

U.S.C. § 1129(b)(2)(B)(ii).  The Debtor's Plan is unclear on this point, suggesting that general unsecured creditors will only receive a pro rata share of the "Distribution Fund" without providing that the Debtor will not receive or retain any property until general unsecured creditors are paid in full.  Finally, if the Debtor believes that he can "cram down" the class of unsecured creditors, given the Debtor's manifest wrongdoing (which is the subject of three non-dischargeability complaints) the Debtor will not be able to demonstrate that his Plan is "fair and equitable".

In short, for several reasons, the Debtor cannot demonstrate a reasonable prospect of confirming a plan without the Beitler Creditors' consent.

### *6.    Progress in Negotiations with Creditors.*

The Debtor indicates that "the Debtor has worked together with his creditors in a cooperative manner" and that "[f]or any creditors who have requested it, the Debtor has provided and shared information with those creditors and discussed their proposed treatment under the Debtor's Plan." *See* Motion, p. 11, ll. 2 – 5.  However, the true measure of progress in negotiations with creditors will be the outcome of the mediation on August 28, 2017.  Tellingly, the Debtor has not reached an agreement with any other creditor with respect to a plan in this case – because any such agreement is virtually meaningless absent an agreement with the Beitler Creditors.

### *7.    Amount of Time which has Elapsed.*

After August 28, 2017, the Debtor will have had more than six months to negotiate a consensual plan with the Beitler Creditors.  If mediation is not successful, extending exclusivity will serve no purpose other than to delay the Beitler Creditors from proposing a plan that is in the best interest of creditors.

The Beitler Creditors also note that while this is the Debtor's first motion to extend exclusivity, "courts have not hesitated to deny a first motion to extend exclusivity where the circumstances warrant it." *GMG Capital Partners*, *supra* at 601.  Moreover, "[t]he fact that this is the debtor's first extension request does not of itself constitute cause." *General Bearing Corp.*, *supra* at 367.

### 8. *Seeking an Extension to Pressure Creditors.*

Where the debtor and his creditors are unable to arrive at a mutually satisfactory plan, an extension of exclusivity should not be permitted where it would result in continuing to hold creditors hostage and pressure "them into accepting a plan that they believe to be unsatisfactory." *In the Matter of All Seasons Indus., Inc.*, 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990). Even if the court does not make a finding as to the debtor's intent in filing a motion to extend exclusivity, it is sufficient that pressuring creditors to submit to the debtor's reorganization demands will or may be "one of the unintended consequences of granting the request." *Id.*

Here, retroactively extending the Debtor's plan exclusivity period (the exclusivity period has already expired subject to the outcome of the Motion) will provide to the Debtor an unfair, unnecessary, advantage over the Beitler Creditors. Moreover, it appears that the Debtor is using the threat of dissolutions and the resulting tax consequences, and therefore, the Debtor's Plan and the Debtor's exclusivity period, as an improper hammer over the Beitler Creditors.

### 9. *Whether an Unresolved Contingency Exists.*

There are no unresolved contingencies which exist and must be resolved during the exclusivity period. Mediation, while an unresolved contingency for the next few days, will be conducted on August 28, 2017, after which time it will be known whether the Debtor may proceed with a consensual plan. If the Debtor is unable to do so, the efficient administration of this case and fairness to creditors dictates that the Beitler Creditors should be allowed to propose their own plan in this case.

///
///
///
///
///
///
///
///

**D.     Conclusion.**

For the reasons set forth herein, unless the parties settle, the Motion should be denied.

Dated: August 25, 2017          LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


By: ___/s/ Krikor J. Meshefejian_____
    GARY E. KLAUSNER
    KRIKOR J. MESHEFEJIAN


Dated:  August 25, 2017         LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS
MARK D. HURWITZ

By: _____
    TOM LALLAS


Attorneys for Creditors Barry Beitler, Cannae Financial, LLC, AFG Investment Fund 7, LLC, BAB, 8 LLC, Beitler & Associates, Inc. dba Beitler Commercial Realty Services, and Steward Financial LLC

## DECLARATION OF KRIKOR J. MESHEFEJIAN

I, Krikor J. Meshefejian, declare as follows:

1. I am over 18 years of age. I have personal knowledge of the facts set forth below, and, if called to testify, could and would competently testify thereto.

2. I am an attorney licensed to practice law in the State of California, and before, among other courts, the United States District Court and the Bankruptcy Court for the Central District of California.

3. Attached hereto as Exhibit 1 is a claim analysis chart I prepared based on the claims scheduled by Mr. Bral in this case, as set forth in Mr. Bral's Schedules of Assets and Liabilities, and based on the proofs of claim filed in Mr. Bral's bankruptcy case.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of August, 2017, at Los Angeles, California.

                                            */s/ Krikor J. Meshefejian*
                                            KRIKOR J. MESHEFEJIAN

# EXHIBIT "1"

| Creditor | Claim Nos. | FILED CLAIM Secured | Priority | General Unsecured | SCHEDULED CLAIM Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | CLAIM STATUS C/U/D | | Low Range Claim Amount | High Range Claim Amount | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AFG Investment Fund 7 LLC | | | | | | | Unk | D | | $0.00 | $0.00 | |
| American Honda Finance Corporation | 2 | $ 12,549.31 | | | | | | | | $12,549.31 | $12,549.31 | Filed as secured claim |
| Avalon Associates Ltd | | | | | | | $690,000.00 | D | | $0.00 | $0.00 | Claim scheduled as disputed, no proof of claim filed, so estimate is $0 |
| BAB8LLC | | | | | | | Unk | D | | $0.00 | $0.00 | |
| Bank of America | | | | | $98,000.00 | | | | | $98,000.00 | $98,000.00 | Potentially undersecured claim |
| Bank of America | | | | | | | $11,169.00 | | | $11,169.00 | $11,169.00 | |
| Bank of America/AAA | | | | | | | $20,356.00 | | | $20,356.00 | $20,356.00 | |
| Barry Beitler | 10 | | | $ 2,589,725.46 | | | $2,514,631.00 | U/D | | $2,589,725.46 | $2,589,725.46 | |
| Barry Beitler | 11 | | | TBD | | | $0.00 | | | TBD | TBD | |
| Barry Beitler | 12 | | | $ 71,705.68 | | | $64,576.00 | D | | $71,705.68 | $71,705.68 | |
| Barry Beitler | 13 | $ 788,798.91 | | | | | $753,610.29 | U/D | | $ 788,798.91 | $ 788,798.91 | |
| Barry Beitler | 14 | | | TBD | | | | | | TBD | TBD | |
| Barry Beitler | 15 | | | $ 40,663.33 | | | | | | $ 40,663.33 | $ 40,663.33 | |
| Barry Beitler | 21 | | | $ 198,065.35 | | | | | | $ 198,065.35 | $ 198,065.35 | |
| Bayview Loan Servicing LLC/The Bank Of New York Mellon | 8 | $ 806,489.01 | | | $798,932.00 | | | | | $798,932.00 | $ 806,489.01 | Potentially fully secured claim |
| Beitler & Associates, Inc. dba Beitler Comme | 9 | | | TBD | | | Unk | D | | TBD | TBD | |
| Betsy Boyd | 16 | | | TBD | | | Unk | D | | TBD | TBD | |
| BMW Financial Services NA, LLC | 6 | | | $ 10,414.16 | | | $9,133.53 | C | | $9,133.53 | $10,414.16 | |
| Cannae Financial LLC | 17 | $ 394,483.12 | | | | | $316,635.67 | D | | $ 394,483.12 | $ 394,483.12 | |
| Cannae Financial LLC | 18 | | | $ 1,421,510.01 | $1,213,114.00 | | $1,213,114.00 | D | | $ 1,421,510.01 | $ 1,421,510.01 | |
| Capital One Bank (USA), N.A. | 4 | | | $ 4,369.91 | | | | | | $4,369.91 | $4,369.91 | |
| Citibank, N.A. | 5 | $ 211,457.95 | | | $212,583.76 | | | | | $211,457.95 | $211,457.95 | Potentially fully secured claim |
| CitiMortgage | | | | | $0.00 | | | | for noticing purposes | $0.00 | $0.00 | |
| CitiMortgage, Inc. | | | | | $0.00 | | | | for noticing purposes | $0.00 | $0.00 | |
| CItIBank | | | | | | | $23,856.00 | | | $23,856.00 | $23,856.00 | |
| Cornerstone Law Corporation | | | | | | | $0.00 | | | $0.00 | $0.00 | |
| County of Orange | 1 | $ 5,765.99 | | | | | | | | $5,765.99 | $5,765.99 | Potentially fully secured claim |
| David Seror | | | | | | | $0.00 | | for noticing purposes | $0.00 | $0.00 | |
| First Citizens Bank & Trust Co | | | | | | | Unk | D | | $0.00 | $0.00 | |
| First Citizens Bank & Trust Company | | | | | | | $0.00 | | for noticing purposes | $0.00 | $0.00 | |
| Franchise Tax Board | | | | | $0.00 | | | | for noticing purposes | $0.00 | $0.00 | |
| Frandzel Robins Bloom & Castro LLC | | | | | | | $0.00 | | for noticing purposes | $0.00 | $0.00 | |
| Gary Salomons, Esq-Gabriel Salomons LLP | | | | | | | $12,600.00 | D | | $0.00 | $0.00 | |
| Honda Financial Services | | | | | | | Unk | C | | $0.00 | $0.00 | |
| IRS | | | | | $0.00 | | | | for noticing purposes | $0.00 | $0.00 | |
| James D Hornbuckle | | | | | | | $0.00 | | for noticing purposes | $0.00 | $0.00 | |
| Jeffrey L. Hayden | | | | | | | Unk | D | | $0.00 | $0.00 | |
| Jonathan Ahdoot | | | | | | | $365,000.00 | | | $365,000.00 | $365,000.00 | |
| Les Jakofsky Trustee of Jakofsky Trust Dtd | 7 | | | $ 432,500.00 | | | $432,500.00 | | | $ 432,500.00 | $ 432,500.00 | |
| Levinson Archonsky & Kurtz LLP | | | | | | | $0.00 | | for noticing purposes | $0.00 | $0.00 | |
| Lloyd K. Chapman | | | | | | | $0.00 | | for noticing purposes | $0.00 | $0.00 | |
| Michael S Kogan | | | | | | | $0.00 | | for noticing purposes | $0.00 | $0.00 | |
| Michelle Easton | | | | | $35,000.00 | | | | | $35,000.00 | $35,000.00 | |
| MTC Financial Inc dba Trustee Corps | | | | | | | $0.00 | | for noticing purposes | $0.00 | $0.00 | |
| Nuray DePriest | 3 | | | $ 88,750.00 | | | | | | $88,750.00 | $88,750.00 | |
| OC Treasurer\Tax Collector | | | | | $1,532.02 | | | | | $1,532.02 | $1,532.02 | |
| Samini Scheinberg PC | 22 | | | $ 467,991.02 | | | $50,000.00 | D | | $50,000.00 | $467,991.02 | |
| Steward Financial LLC | 19 | | | $ 1,100,000.00 | | | Unknown | D | | $ 1,100,000.00 | $ 1,100,000.00 | |
| Steward Financial LLC | 20 | | | $ 2,593,638.81 | | | Unknown | D | | $ 2,593,638.81 | $ 2,593,638.81 | |
| Suntrust Mortgage | | | | | $88,506.12 | | | | | $88,506.12 | $88,506.12 | Potentially fully secured claim |
| | | | | | | | | | TOTAL CLAIMS | $11,455,468.50 | $11,882,297.16 | |
| | | | | | | | | | TOTAL GENERAL UNSECURED CLAIMS (ESTIMATE) | $10,297,593.80 | $10,757,528.78 | |
| | | | | | | | | | BEITLER CLAIMS | $9,198,590.67 | $9,198,590.67 | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **BEITLER CREDITORS' OPPOSITION TO MOTION OF DEBTOR AND DEBTOR-INPOSSESSION TO EXTEND EXCLUSIVITY PURSUANT TO 11 U.S.C. § 1121(d); DECLARATION OF KRIKOR J. MESHEFEJIAN IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 25, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Thomas H Casey**  kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**  afriedman@lwgfllp.com, nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@lwgfllp.com;lgauthier@lwgfllp.com
- **Daniel K Fujimoto**  wdk@wolffirm.com
- **Beth Gaschen**  bgaschen@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com
- **Michael J Hauser**  michael.hauser@usdoj.gov
- **Mark D Hurwitz**  mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner**  gek@lnbyb.com
- **Kathleen J McCarthy**  kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**  Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**  kjm@lnbrb.com
- **Edward G Schloss**  egs2@ix.netcom.com
- **Valerie Smith**  claims@recoverycorp.com
- **Daniel B Spitzer**  dspitzer@spitzeresq.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**  ecfnotices@ascensioncapitalgroup.com

**2. SERVED BY UNITED STATES MAIL**: On **August 25, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 25, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                **F 9013-3.1.PROOF.SERVICE**

***Served via Overnight Mail***
Hon. Scott C. Clarkson
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 25, 2017 | Stephanie Reichert | */s/ Stephanie Reichert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**