1  William N. Lobel, State Bar No. 93202
   wlobel@lwgfllp.com
2  Alan J. Friedman, State Bar No. 132580
   afriedman@lwgfllp.com
3  Beth E. Gaschen, State Bar No. 245894
   bgaschen@lwgfllp.com
4  **LOBEL WEILAND GOLDEN FRIEDMAN LLP**
   650 Town Center Drive, Suite 950
5  Costa Mesa, California 92626
   Telephone    714-966-1000
6  Facsimile    714-966-1002

7  Attorneys for Debtor and Debtor-in-Possession
   John Jean Bral

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                   **SANTA ANA DIVISION**

12  In re                              Case No. 8:17-bk-10706-SC

13  JOHN JEAN BRAL,                    Chapter 11

14          Debtor.                    **DEBTOR'S OBJECTION TO PROOF OF
                                       CLAIM FILED BY BEITLER &
15                                     ASSOCIATES, INC. dba BEITLER
                                       COMMERCIAL REALTY SERVICES
16                                     [CLAIM NO. 9]; AND MEMORANDUM OF
                                       POINTS AND AUTHORITIES IN SUPPORT
17                                     THEREOF**

18                                     **[DECLARATION OF JOHN JEAN BRAL IN
                                       SUPPORT THEREOF FILED
19                                     CONCURRENTLY HEREWITH]**

20                                     **DATE:    December 14, 2017
                                       TIME:    11:00 a.m.
21                                     Place:   Courtroom 5C
                                                411 West Fourth Street
22                                                Santa Ana, California 92701**

23

24

25

26

27

28

    1136060.1                                          OBJECTION

*Lobel Weiland Golden Friedman LLP*
*650 Town Center Drive, Suite 950*
*Costa Mesa, California 92626*
*Tel 714-966-1000 • Fax 714-966-1002*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................................. 3

II.   STATEMENT OF FACTS ................................................................................... 5

   A.   Jurisdiction and Venue........................................................................... 5

   B.   Relief Requested ................................................................................... 5

   C.   The Debtor and the Chapter 11 Filing ................................................... 6

   D.   The Bar Date and the Claim................................................................... 6

III.   ANALYSIS ........................................................................................................ 6

   A.   The Standard for Allowance of Claims................................................... 6

   B.   The Claim Does Not Satisfy the Standing Requirement ....................... 8

   C.   Any Claim Based on the Agreements is Barred by the Statutes
      of Limitations......................................................................................... 8

   D.   BCRS' Claims are Barred by the Doctrine of Laches............................ 9

   E.   If Not Disallowed, the Claim Should Be Determined on its
      Merits and Beitler's Allegations are False ........................................... 10

IV.   RESERVATION OF RIGHTS ........................................................................... 12

V.   CONCLUSION................................................................................................. 12

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Master Lease LLC v. Idanta Partners, Ltd.,
225 Cal. App. 4th 1451, 171 Cal. Rptr. 3d 548, 570 (2014), *as
modified* (May 27, 2014) ............................................................................ 8

Danjaq LLC v. Sony Corp.,
263 F.3d 942 (9th Cir. 2001).......................................................................... 9

Fuller v. First Franklin Financial Corp.,
216 Cal.App.4th 955, 163 Cal.Rptr.3d 44 (2013)....................................... 9

In re Allegheny Int'l, Inc.,
954 F.2d 167 (3d Cir. 1992)........................................................................... 7

In re Blixeth,
489 B.R. 154 (Bankr. D. Mo. 2013).............................................................. 7

In re Campbell,
336 B.R. 430 (B.A.P. 9th Cir. 2005)......................................................... 7, 8

In re Consol. Pioneer,
178 B.R. 222 (9th Cir. BAP 1995)................................................................. 7

In re Gray,
522 B.R. 619 (Bankr. D. Idaho 2014)........................................................... 7

*Latta v. Western Inv. Co.,*
173 F.2d 99 (1949) ......................................................................................... 9

Lundell v. Anchor Const. Specialists, Inc.,
223 F.3d 1035 (9th Cir. 2000)....................................................................... 7

Magic Kitchen LLC v. Good Things Int'l Ltd.,
153 Cal. App. 4th 1144, 63 Cal. Rptr. 3d 713 (2007)................................. 9

Miller v. Glenn Miller Productions, Inc.,
454 F.3d 975 (9th Cir.2006).......................................................................... 9

Pepper v. Litton,
308 U.S. 295, 304, 60 S.Ct. 244 (1939)........................................................ 7

*Spencer v. Pugh (In re Pugh),*
157 B.R. 898 (9th Cir. BAP 1993)................................................................. 7

Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,
Inc.,
454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ................................. 8

William L. Lyon & Associates, Inc. v. Superior Court,
204 Cal.App.4th 1294, 139 Cal.Rptr.3d 670 (2012)................................... 9

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

**Statutes**

11 U.S.C. § 502(a) ......................................................................................... 6

11 U.S.C. § 502(b)(1) .................................................................................... 6

Cal. Civ. Code § 3527 .................................................................................... 9

Cal. Code Civ. Proc. § 339 ............................................................................ 8

**Other Authorities**

3 L. King, COLLIER ON BANKRUPTCY § 502.02, at 502-22 (15th ed. 1991) .......................... 6

**Rules**

Fed. R. Bankr. P. 3001(f) ............................................................................... 6

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2  **JUDGE, BEITLER & ASSOCIATES, INC. dba BEITLER COMMERCIAL REALTY**

3  **SERVICES, AND ALL OTHER INTERESTED PARTIES:**

4       **PLEASE TAKE NOTICE** that, pursuant to 11 U.S.C. § 502, Federal Rule of

5  Bankruptcy Procedure 3007, and Local Bankruptcy Rule 3007-1, on December 14, 2017,

6  at 11:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 5C of the

7  United States Bankruptcy Court, located at 411 West Fourth Street, Santa Ana, California

8  92701, a hearing will be held concerning this objection (the "Objection") of John Jean Bral,

9  the debtor and debtor-in-possession in the above-captioned chapter 11 case (the

10 "Debtor"), to Proof of Claim No. 9 ("Claim No. 9") filed by Beitler & Associates, Inc., dba

11 Beitler Commercial Realty Services ("BCRS"), an entity wholly-owned by Barry Beitler

12 ("Beitler").[1]

13      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 3007-

14 1(b)(3)(A), any response to the Objection must be filed and served not later than fourteen

15 (14) days prior to the hearing on the Objection (as further set forth in the Notice served

16 concurrently herewith).

17      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 3007-

18 1(b)(3)(B), if a response is not timely filed and served, the Court may grant the relief

19 requested in the Objection without further notice or hearing.

20      **PLEASE TAKE FURTHER NOTICE** that the Objection is based on the Notice of

21 Hearing, the attached Memorandum of Points and Authorities, the concurrently filed

22 Declaration of John Jean Bral, the files and records of this Court related to the Debtor's

23 case, and upon such other oral and documentary evidence as may be presented to the

24 Court at or before the time of the hearing on the Objection.

25 _____

26      [1] Beitler has filed Claim No. 11, asserting substantially the same claims as asserted by BCRS
in Claim No. 9. Concurrently herewith, the Debtor has filed an objection to Claim No. 11 filed by
27 Beitler. Such objection is incorporated herein by reference.

28

1    **WHEREFORE**, the Debtor requests that the Court enter an Order (i) disallowing

2   Claim No. 9 in its entirety; or, alternatively, (ii) determining the amount of such unsecured

3   claim on the merits subject to proof in these proceedings and all defenses thereto; and

4   (iii) for such other and further relief as may be just and proper under the circumstances of

5   this case.

6                                          Respectfully submitted,

7   Dated:  October 13, 2017              LOBEL WEILAND GOLDEN FRIEDMAN LLP

8

9                                   By:  */s/ Beth E. Gaschen*

10                                       Beth E. Gaschen
                                         Attorneys for Debtor
11                                       and Debtor-in-Possession
                                         John Jean Bral

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1136060.1                              2                              OBJECTION

## I.    INTRODUCTION

John Jean Bral, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby submits this objection (the "Objection") to Claim No. 9 filed by Beitler & Associates, Inc., dba Beitler Commercial Realty Services ("BCRS"), an entity wholly-owned by Barry Beitler ("Beitler").  In support of the Objection, the Debtor relies on the following Memorandum of Points and Authorities and the Declaration of John Jean Bral filed concurrently herewith (the "Bral Declaration").

On June 16, 2017, BCRS filed a proof of claim ("Claim No. 9") as an unsecured claim in an undetermined amount.  A true and complete copy of Claim No. 9 is attached hereto as Exhibit "1" and incorporated herein by this reference.

Prior to 2007, Beitler and the Debtor formed a series of limited liability companies to acquire and manage commercial real estate projects in Southern California.  These limited liability companies include Westcliff Investors, LLC ("Westcliff"), Ocean View Medical Investors, LLC ("Ocean View"), Harbor Medical Investors, LLC ("Harbor") and Mission Medical Investors, LLC ("Mission").

The Debtor also formed Javaher Investors, LLC ("Javaher") and Eyestreet Medical Investors, LLC ("Eyestreet") which were entities that also owned and managed commercial real estate projects.  The Debtor is the co-manager of Javaher.  The Debtor does not own an interest in Javaher, but Westcliff is a member.  The Debtor is the co-manager of Eyestreet and owns a small membership interest in this entity.  Beitler did not hold an interest in either Javaher or Eyestreet.  Westcliff, Ocean View, Harbor, Mission, Javaher and Eyestreet are collectively referred to as the "SPEs" herein.  True and correct copies of the Operating Agreements that govern the affairs of the SPEs are attached to the Bral Declaration as Exhibits "1" through "6."

After the formation of the SPEs, these entities required management services, and brokerage services such as leasing and lease renewal.  In 2006, the Debtor formed Venture RE Group, a California corporation ("VREG"), which performed such services for the SPEs.  VREG is owned 50% by the Debtor and (contrary to the allegations in the

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

1  Claim) 50% by Beitler.  In October 2013, the Debtor formed Bral Realty Advisors, Inc., a

2  California corporation ("BRAI").  Beitler & Associates is a California corporation owned by

3  Beitler that operated under the dba BCRS.

4  　　　The Ocean, Javaher, Mission and Harbor operating agreements state that BCRS is

5  entitled to receive commissions for sales and leasing work performed for these entities.

6  The Westcliff operating agreement states that BCRS and the Debtor will split sales and

7  leasing commissions.  The Eyestreet operating agreement states that VREG will receive

8  sales and leasing commissions.

9  　　　In Claim No. 9, BCRS alleges that Beitler and the Debtor entered into the following

10  oral agreements relating to the management of the SPEs' business:

11  　　A.  VREG would provide management services to the SPEs and the

12  　　　　revenues would from these services would be split equally between

13  　　　　Beitler and the Debtor (the "VREG Management Agreement");

14  　　B.  Beitler would park his real estate license with VREG to enable VREG to

15  　　　　provide leasing services to the SPEs, and Beitler and the Debtor would

16  　　　　then split the commissions equally (the "VREG Broker Agreement");

17  　　　　and

18  　　C.  Beitler would allow the Debtor to take Beitler's share of the VREG's

19  　　　　revenues for a period of time and then the Debtor would repay these

20  　　　　deferred fees (the "Deferral Agreement") (collectively, the

21  　　　　"Agreements").

22  　　　According to the Claim, the Debtor breached the Agreements by either

23  appropriating or failing to repay Beitler's share of the management fees and commissions.

24  As set forth in the Bral Declaration and herein, the Debtor disputes these allegations.

25  　　　As a preliminary matter, however, BCRS has failed to establish a prima facie case

26  for allowance of Claim No. 9, and such Claim should be disallowed in its entirety on the

27  grounds that it is vague, ambiguous, contradictory and unsupported by evidence.  In

28  addition, BCRS has failed to demonstrate standing to bring the Claim, and the Claim is

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 barred by the statute of limitations and by the doctrine of laches.  Moreover, even

2 assuming that such Claim is not disallowed in its entirety based on the foregoing, and the

3 merits of such Claim were to be considered by this Court, the Debtor denies the

4 allegations underlying Claim No. 9.

5        To the extent that Claim No. 9 is not disallowed in its entirety for the reasons set

6 forth herein, and the merits of such Claim were to be considered, the Debtor believes that

7 he would be successful on the issue of liability on the merits by way of the proceeding on

8 this Objection.[2]  Claim No. 9 is filed in an undermined amount, subject to proof by BCRS

9 and is based solely on BCRS' assertions set forth in Claim No. 9 (which is without any

10 supporting specificity or evidence).  The Claim does not take into consideration any of the

11 Debtor's defenses to the asserted liability which, if the merits are to be considered, must

12 be considered in connection with the allowability of any such Claim.

13 **II.**    **STATEMENT OF FACTS**

14        **A.**    **Jurisdiction and Venue**

15        This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and

16 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtor consents to the

17 entry of a final order by the Court in connection with this Objection to the extent it is later

18 determined that the Court, absent consent of the parties, cannot enter final orders or

19 judgments consistent with Article III of the United States Constitution.  Venue of this case

20 and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

21        **B.**    **Relief Requested**

22        By this Objection, the Debtor seeks entry of an order pursuant to section 502(b) of

23 the Bankruptcy Code and Bankruptcy Rule 3007 (i) disallowing Claim No. 9 in its entirety;

24 or, alternatively, (ii) determining the amount of such unsecured claim on the merits subject

25

26 _____

27 [2] By filing Claim No. 9, BCRS has subjected itself to this Court's jurisdiction to determine the
amount and allowability of its asserted claim against the Debtor.

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

1  to proof in these proceedings and defenses thereto; and (iii) for such other and further

2  relief as may be just and proper under the circumstances of this case.

3  **C.    The Debtor and the Chapter 11 Filing**

4  The Debtor commenced this case by filing a voluntary petition under chapter 11 of

5  title 11 of the United States Code on February 24, 2017 (the "Petition Date"). The Debtor

6  continues to manage his financial affairs and operate his bankruptcy estate as a debtor-in-

7  possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No request for

8  the appointment of a trustee or examiner has been made in this case. No official

9  committee of unsecured creditors has been appointed in this case.

10  **D.    The Bar Date and the Claim**

11  This Court set a deadline of June 16, 2017 as the bar date for filing claims (the

12  "Claims Bar Date"). On April 21, 2017, the Debtor served all known creditors and parties-

13  in-interest with notice of the Claims Bar Date (the "Bar Date Notice") [Docket No. 47].

14  Pursuant to the Bar Date Notice, each creditor, subject to certain limited exceptions,

15  holding a claim against the Debtor was required to file a proof of claim on or before the

16  Claims Bar Date. On June 16, 2017, BCRS filed Claim No. 9 as an unsecured claim in an

17  undetermined amount.

18  **III.    ANALYSIS**

19  **A.    The Standard for Allowance of Claims**

20  Pursuant to Federal Rule of Bankruptcy Procedure 3001(f) and section 502(a), a

21  timely filed and properly documented proof of claim is deemed prima facie valid.

22  Bankruptcy Code § 502(b)(1) provides that a claim will not be allowed to the extent that

23  the claim is for "an unenforceable debt against a debtor and property of the debtor, under

24  any agreement or applicable law for a reason other than because such claim is contingent

25  or unmatured . . ."

26  "[T]he burden of initially going forward with the evidence as to the validity and the

27  amount of the claim is that of the objector to that claim. 3 L. King, COLLIER ON

28  BANKRUPTCY § 502.02, at 502-22 (15th ed. 1991). Once "the objector produces sufficient

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts

2 to the claimant to prove the validity of the claim by a preponderance of the evidence." In

3 re Consol. Pioneer, 178 B.R. 222, 226 (9th Cir. BAP 1995) (quoting In re Allegheny Int'l,

4 Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)).  The ultimate burden of persuasion remains at

5 all times upon the claimant.  Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035,

6 1039 (9th Cir. 2000); In re Holm, 931 F.2d 620, 623 (9th Cir. 1991); In re Gray, 522 B.R.

7 619, 625 (Bankr. D. Idaho 2014) ("If the objector produces evidence sufficient to negate

8 the validity of the claim, the ultimate burden of persuasion remains on the claimant to

9 demonstrate by preponderance of the evidence that the claim deserves to share in the

10 distribution of the debtor's assets."); Spencer v. Pugh (In re Pugh), 157 B.R. 898, 901 (9th

11 Cir. BAP 1993); In re Parrott Broadcasting Ltd. P'ship, 492 B.R. 35, 38 (Bankr. D. Idaho

12 2013); In re Blixeth, 489 B.R. 154 (Bankr. D. Mo. 2013) (once objecting party succeeds in

13 overcoming prima facie effect of procedurally proper proof of claim, burden shifts to

14 claimant to prove validity of its claim, and claimant must satisfy that burden by

15 preponderance of evidence).  See also Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 244

16 (1939) (stating that the bankruptcy court has the power to shift the circumstances

17 surrounding any claim to see that injustice or unfairness is not done in administering the

18 bankruptcy estate).

19         In this case, the Claim at issue is so vague, ambiguous, contradictory[3] and

20 unsupported by any evidence that it is not entitled to the presumption of validity.  See In re

21 Campbell, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005).  However, even if this presumption

22 was applicable, the Debtor would submit that it is has been overcome by the evidence and

23 legal authorities cited herein.  Accordingly, the Debtor seeks entry of an Order granting

24 the Objection.

25

26 _____

27         [3] For example, both BCRS and Beitler are asserting claims of damage for the same acts.

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## B.   The Claim Does Not Satisfy the Standing Requirement

In Claim No. 11, Beitler seeks recompense for the same purported damages alleged in the Claim filed by BCRS.  Since neither Beitler nor BCRS have alleged joint ownership of either claim, one of these parties is asserting a claim it does not hold.  This gives rise to a fatal standing defect.  Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 474-75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (holding that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").  To the extent that Beitler and BCRS have a rational basis for allocating ownership of the damages alleged in these claims, it has not been set forth in either claim, which justifies the disallowance of both.  See In re Campbell, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005).

## C.   Any Claim Based on the Agreements is Barred by the Statutes of Limitations

BCRS fails to specify in the Claim what commissions or fees were not paid to it as allegedly agreed, or when this supposedly occurred.  However, since all of the SPEs and VREG were formed before 2007,[4] the statute of limitation would have run at least by the end of the first year during which these payments were not made, which was presumably 2007.  Since the alleged Agreements were oral contracts, any claim thereunder is now barred by the two-year statute of limitations under Cal. Code Civ. Proc. § 339 (two-year statute of limitations).  To the extent the foregoing breach of contract claims were framed as breach of fiduciary duty claims, they would still be barred by the three or four-year statute of limitations applicable to such claims.  To the extent that the foregoing breach is framed as a breach of fiduciary duty claim, it would still be time barred.  Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1479, 171 Cal. Rptr. 3d 548, 570

_____

[4] Javaher was formed in 2005, Mission was formed in 2003, Harbor was formed in 2006, Eyestreet was formed in 2006, Ocean View was formed in 2006, and Westcliff was formed in 2003.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

1  (2014), *as modified* (May 27, 2014)

2  ("The statute of limitations for breach of fiduciary duty is three years or four years,

3  depending on whether the breach is fraudulent or nonfraudulent."); <u>Fuller v. First Franklin</u>

4  <u>Financial Corp.</u>, 216 Cal.App.4th 955, 963, 163 Cal.Rptr.3d 44 (2013) ("[L]imitations

5  period is three years ... for a cause of action for breach of fiduciary duty where the

6  gravamen of the claim is deceit, rather than the catchall four-year limitations period that

7  would otherwise apply"); <u>William L. Lyon & Associates, Inc. v. Superior Court</u>, 204

8  Cal.App.4th 1294, 1312, 139 Cal.Rptr.3d 670 (2012) ("Breach of fiduciary duty not

9  amounting to fraud or constructive fraud is subject to the four-year 'catch-all statute' of

10  Code of Civil Procedure section 343."). Such claims, therefore, are barred.

11      **D.**    **BCRS' Claims are Barred by the Doctrine of Laches**

12          The defense of laches is derived from the maxim that "[t]he law helps the vigilant,

13  before those who sleep on their rights." Cal. Civ. Code § 3527. Stated otherwise,

14  "[e]quity frowns upon stale demands [and] declines to aid those who have slept on their

15  rights." <u>Latta v. Western Inv. Co.</u>, 173 F.2d 99, 107 (1949). A defendant must

16  demonstrate three elements to successfully assert a laches defense: (1) delay in asserting

17  a right or a claim; (2) the delay was not reasonable or excusable; and (3) the prejudice

18  resulting from the delay. <u>Magic Kitchen LLC v. Good Things Int'l Ltd.</u>, 153 Cal. App. 4th

19  1144, 1157, 63 Cal. Rptr. 3d 713, 723–24 (2007); <u>Miller v. Glenn Miller Productions,</u>

20  <u>Inc.</u>, 454 F.3d 975, 997 (9th Cir.2006).

21          The first element of laches is delay, as measured by the period "from when the

22  plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation

23  of the lawsuit in which the defendant seeks to counterpose the laches defense." <u>Magic</u>

24  <u>Kitchen</u>, 153 Cal. App. 4th 1144, 1157, *citing* <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942,

25  952 (9th Cir. 2001). Since Beitler (the owner of BCRS) was the co-managing member of

26  every SPE, except Javaher and Eyestreet, and since his personal accountant prepared

27  the tax returns for approximately 10 years, Beitler (and thereby BCRS) knew or should

28  have known that commissions and management fees were being paid and whether or not

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

1    it was receiving its appropriate share of these payments.  Given this knowledge, the delay

2    in this case was clearly not reasonable.  Failing to file an action after one year might be

3    "reasonable," but not after two or more years.

4         The prejudice element is also satisfied.  The Debtor was being paid for services

5    that he, not BCRS performed, and he was being paid what he believed he was owed.

6    Had BCRS raised its claim in a timely manner, the Debtor would have had the option of

7    declining to perform the services for "half price" and instead could have allocated his

8    resources to other more lucrative pursuits.  He also would not be facing the substantial

9    purported claim that BCRS (and Beitler) are now asserting.  On these facts, BRCS' claims

10    should be deemed barred.

11    **E.**    **If Not Disallowed, the Claim Should Be Determined on its Merits and**

12          **Beitler's Allegations are False**

13         Claim No. 9 is based solely on BCRS' assertions of damages, without any

14    consideration of the Debtor's defenses thereto.  To the extent not disallowed for the

15    reasons set forth hereinabove, Claim No. 9, should be determined by this Court in

16    accordance with proof.

17         In this regard, as set forth in the Bral Declaration filed concurrently herewith, the

18    allegations that form the basis of Claim No. 9 (and Claim No. 11 filed by Beitler) are false.

19         In the Claims, Beitler/BCRS alleges that the Debtor agreed that Beitler would

20    receive fifty percent (50%) of the top line revenues generated by VREG.  This is false.  In

21    fact, the Debtor and Beitler agreed that the Debtor, as VREG's active and working

22    corporate officer and the sales manager within VREG, would receive sixty percent (60%)

23    of every commission paid to VREG on transactions that the Debtor worked on as an

24    agent.  The remaining forty percent (40%) of the commission would be retained by VREG.

25    Beitler, as a fifty percent (50%) shareholder of VREG, would then receive fifty percent

26    (50%) of the year end profit generated by VREG and the Debtor, as the other fifty percent

27    (50%) shareholder, would receive the balance of the profit.

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

1    Contrary to Beitler/BCRS' allegations in the Claims, the management fees and

2  leasing commissions that were paid to VREG and BRAI by the SPEs (the "Service

3  Payments") were duly authorized, and they were payable for ordinary and necessary

4  services. These payments were reflected in the SPEs' books and records and in their tax

5  returns.

6    Pursuant to the Debtor's agreement with Beitler, VREG received one hundred

7  percent (100%) of the commissions generated from leasing activity performed for the

8  benefit of the SPEs, with the exception of Westcliff lease commissions.  In the case of

9  Westcliff, forty percent (40%) of the commissions were allocable to Beitler and were

10  retained by Westcliff.

11    As explained above, the Debtor was allocated sixty percent (60%) of the

12  commissions paid to VREG by the SPEs.  The remaining forty percent (40%) was retained

13  by VREG.  If, after paying corporate expenses, a profit was left over in the corporation,

14  Beitler, as a fifty percent (50%) shareholder of VREG, would receive half of this profit.

15  The Debtor never agreed to split the commissions with Beitler/BCRS fifty/fifty as alleged in

16  the Claims.

17    When property management fees were paid by the SPEs to VREG, these

18  payments would be used to pay ordinary course expenses and again, at the end of the

19  year, Beitler, as a fifty percent (50%) shareholder of VREG, would receive his half of the

20  profits.

21    In the Claim, BCRS (and in Claim No. 11, Beitler), generically allege that some of

22  the Service Payments were improper or, alternatively, and in contradiction of the prior

23  allegation, that they were proper, but Beitler/BCRS did not receive his/its "share" of these

24  payments as agreed.

25    It bears noting that the Service Payments were paid over a period of more than *ten*

26  *years*.  A general allegation that "some" of the payments were not proper or authorized is

27  difficult for the Debtor to respond to since these allegations encompass thousands of

28  payments that were made by eight separate entities.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000 · Fax 714-966-1002

1    Moreover, during the decade plus time frame Beitler encompassed by Beitler's and

2  BCRS' allegations, Beitler/BCRS were fully aware of the payments, and in fact such

3  issues were routinely discussed with Beitler.

4    Since Beitler/BCRS have failed to specify what payments during the past decade

5  were allegedly improper or unauthorized, the Debtor cannot specifically address these

6  allegations at this juncture.  However, as set forth in the Bral Declaration, to the best of

7  the Debtor's recollection and knowledge, however, such payments were in fact proper and

8  authorized, and Beitler was always aware that these payments were being made.

9    If and when either Beitler and/or BCRS specify what payments they are referring to,

10  and why they were improper or unauthorized, the Debtor will review the applicable books

11  and records and address and rebut these contentions in more detail.  The Debtor has

12  every confidence that these records will rebut these allegations.

13  **IV.    RESERVATION OF RIGHTS**

14    This Objection is limited to the grounds stated herein.  Accordingly, it is without

15  prejudice to the right of the Debtor to object to Claim No. 9 on any other ground

16  whatsoever, and the Debtor expressly reserves all further substantive and/or procedural

17  objections he may have.

18  **V.    CONCLUSION**

19    BCRS's Claim No. 9 is vague, ambiguous, contradictory and unsupported.  It

20  should be disallowed in its entirety on this basis alone.  To the extent that BCRS is

21  allowed to supplement its Claim to avoid disallowance, BCRS should be compelled to

22  specify the payments that it did not receive and which entity or individual is the purported

23  non-payor and why these claims are not barred by the statute of limitations and the

24  doctrine of laches.  If and when BCRS provides this minimum level of specificity, the

25  Debtor will review the claims, research the facts and fully respond thereto.

26    Accordingly, for the reasons stated herein, the Debtor moves this Court for an order

27  ((i) disallowing Claim No. 9 in its entirety; or, alternatively, (ii) determining the amount of

28  such unsecured claim on the merits subject to proof in these proceedings and defenses

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 | thereto; and (iii) for such other and further relief as may be just and proper under the

2 | circumstances of this case.

3 |                                          Respectfully submitted,

4 | Dated: October 13, 2017                  LOBEL WEILAND GOLDEN FRIEDMAN LLP

5 |

6 |                                          By:  /s/ Beth E. Gaschen
                                               WILLIAM N. LOBEL
7 |                                              ALAN J. FRIEDMAN
                                               BETH E. GASCHEN
8 |                                              Attorneys for Debtor and
                                               Debtor-in-Possession

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

# EXHIBIT "1"

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | JOHN JEAN BRAL |
| Debtor 2 (Spouse, if filing) | |

United States Bankruptcy Court for the:  Central District of California

Case number  8:17-BK-10706-SC

# Official Form 410
# Proof of Claim

4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Beitler & Associated, Inc. dba Beitler Commercial Realty Services |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| | |
|---|---|
| 2. Has this claim been acquired from someone else? | ☑ No |
| | ☐ Yes.  From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Gary E. Klausner, Esq.
Name

10250 Constellation Blvd., Suite 1700
Number      Street

Los Angeles          CA          90067
City                State          ZIP Code

Contact phone  (310) 229-1234

Contact email  GEK@LNBYB.COM

Where should payments to the creditor be sent? (if different)

Beitler & Associates, Inc. c/o Barry Beitler
Name

825 Barrington Avenue
Number      Street

Los Angeles          CA          90048
City                State          ZIP Code

Contact phone

Contact email  bbeitler@beitler.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No |
| | ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ___/___/___ <br> MM / DD / YYYY |

| | |
|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| | ☐ Yes.  Who made the earlier filing? |

EXHIBIT 1
Page 15

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

| | |
|---|---|
| 7. How much is the claim? | $ To be determined_____ . Does this amount include interest or other charges?<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Claims in Case No. BC 543410 in Los Angeles County Superior Court |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☑ No<br>☐ Yes.  The claim is secured by a lien on property.<br><br>Nature of property:<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>Basis for perfection: _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:  $_____<br>Amount of the claim that is secured:  $_____<br>Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:  $_____<br><br>Annual Interest Rate (when case was filed) _____%<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  06/15/2017
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Barry Beitler |
| | First name        Middle name        Last name |
| Title | Authorized Agent |
| Company | Beitler & Associates, Inc. dba Beitler Commercial Realty Services |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 825 Barrington Avenue |
| | Number    Street |
| | Los Angeles                          CA        90049 |
| | City                                 State     ZIP Code |
| Contact phone | _____  Email bbeitler@beitler.com |

**ATTACHMENT TO PROOF OF CLAIM OF BEITLER & ASSOCIATES, INC. dba BEITLER COMMERCIAL REALTY SERVICES BASED ON CLAIMS ALLEGED IN LOS ANGELES COUNTY SUPERIOR COURT CASE NO. BC 543410**

On April 21, 2014, Barry Beitler ("Beitler") and Beitler & Associates, Inc. dba Beitler Commercial Realty Services ("BCRS" or "Claimant") filed an action against, among others, John Bral ("Bral") in Los Angeles County Superior Court, Case No. BC 543410. A copy of the Complaint that Beitler filed in that action is attached hereto as Exhibit "A".

As set forth in the Complaint, BCRS alleged various claims for damages against Bral for unjust enrichment, intentional misrepresentation, negligent misrepresentation, breach of oral contract and breach of implied contract. These claims are based on, among other things, allegations that:

- Beitler and Bral formed several specific purpose entities as limited liability companies (collectively, "SPEs") to hold, operate and manage real property investments in which they each held a membership interest.
- The SPEs' operating agreements controlled whether, to whom and under what circumstances the SPEs could pay commissions and property management fees with respect to the real properties.
- Beitler and Bral agreed to form Venture RE Group ("Venture") to act as a development company for the SPEs, with Beitler and Bral holding equal ownership interests in Venture.
- Beitler and Bral also agreed that (i) Venture would provide property management services to the SPEs, (ii) Beitler and Bral would equally divide all of Venture's revenues, (iii) Beitler would place his real estate broker's license with Venture, (iv) Venture would operate as an affiliate of BCRS, which was the authorized broker named in the SPE operating agreements, and (v) while BCRS would remain the broker for the SPEs, commissions from lease and sale transactions brokered by Venture would be split equally between BCRS and Venture.
- Notwithstanding these agreements, Bral, among other things, (a) formed and operated Venture without providing for Beitler to receive his interest therein, (b) failed to share Venture's revenues with Beitler, (c) without Beitler's or the SPEs' authorization, diverted Venture's business to an entity Bral created, Bral Realty Advisors, Inc. ("BRAI"), and (d) retained, directly or through BRAI or Venture, management fees and commissions payable to Beitler and/or BCRS.
- Bral also breached his agreement to reimburse BCRS for advances that BCRS made to or on behalf of Bral, Venture or agents acting under Venture for their expenses, including without limitation payments for errors and omissions insurance.

The case remains pending in Los Angeles County Superior Court but has been stayed as a result of this bankruptcy case. BCRS' pending adversary action herein, Adversary No. 8:17-ap-01094, is based in part on allegations raised in the foregoing state court action.

The damages and other relief recoverable by BCRS in the state court case remain subject to proof, as Bral, Venture and BRAI control, among other things, the information concerning management fees and commissions they received that were payable to Beitler and BCRS. On February 23, 2017, the day before Bral filed this bankruptcy case, the discovery referee in the state court action issued a Report and Recommendation, a copy of which is attached hereto as Exhibit "B", recommending that the Superior Court order Bral to produce (a) QuickBooks data in native format and (b) tax returns for Venture and BRAI within 10 days, with the Court to consider imposing terminating sanctions if Bral does not timely comply. Due to the bankruptcy stay, the Superior Court has not yet entered an order on the referee's recommendation.

## Reservation of Rights

Claimant reserves the right to (i) amend, update and/or supplement this Proof of Claim at any time and in any respect, (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents or other liability or indebtedness of the Debtor to Claimant (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507.

In addition to the foregoing, Claimant reserves all rights with respect to (a) any indebtedness owed to Claimant by any non-debtor affiliate or other entity related to the Debtor, and (b) any other amounts that may be owing to Claimant in respect of interest, fees, indemnities, costs and expenses to the extent permitted by applicable law.

Nothing contained in this Proof of Claim shall be construed as limiting Claimants rights, remedies and interests.

The filing of this proof of claim is not: (i) a waiver or release of Claimant's rights against any person, entity or property; (ii) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim; (iii) an election of remedy; or (iv) a waiver of any past, present or future defaults or events of default. Claimant specifically preserves all of Claimant's procedural and substantive defenses and rights with respect to any claim that may be asserted against Claimant by the Debtor or any of its debtor or non-debtor affiliates, or by any trustee for this estate.

Case 8:17-bk-10706-SC    Claim 9-1    Filed 06/16/17    Desc Main Document    Page 6 of 38

# EXHIBIT A

1  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
2  TOM LALLAS (SBN 66512)
   815 Moraga Drive
3  Los Angeles, California 90049-1633
   Telephone:    (310) 471-3000
4  Facsimile:    (310) 471-7990

5  Attorneys for Plaintiffs
   BARRY A. BEITLER and
6  BEITLER & ASSOCIATES, INC.,
   doing business as
7  Beitler Commercial Realty Services

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 21 2014

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES     FILED BY FAX

10

11  BARRY A. BEITLER, an individual, and       Case No.    BC 543410
    BEITLER & ASSOCIATES, INC., a California
12  corporation doing business as Beitler Commercial
    Realty Services,                           COMPLAINT FOR:
13                                              1)  BREACH OF FIDUCIARY DUTY
                Plaintiffs,                     2)  ACCOUNTING
14                                              3)  UNJUST ENRICHMENT
         vs.                                    4)  INTENTIONAL
15                                                  MISREPRESENTATION
    JOHN BRAL, an individual; VENTURE RE        5)  NEGLIGENT
16  GROUP, a California corporation; BRAL           MISREPRESENTATION
    REALTY ADVISORS, INC., a California         6)  BREACH OF ORAL CONTRACT
17  corporation; and DOES 1 through 50, inclusive, 7)  BREACH OF IMPLIED
18                                                  CONTRACT
                Defendants.
19

20

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

                              COMPLAINT

Plaintiffs Barry A. Beitler, an individual ("Beitler") and Beitler & Associates, Inc., a California corporation doing business as Beitler Commercial Realty Services ("BCRS") [collectively, "Plaintiffs"], allege as follows:

## I.    PARTIES AND JURISDICTION.

1.    Beitler is now, and all times material hereto has been, a resident of, and doing business in, the County of Los Angeles, State of California.

2.    BCRS is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. BCRS's principal business office is now, and all times material hereto has been, located in the County of Los Angeles, State of California.

3.    Defendant John Bral ("Bral") is now, and at all times material hereto has been, an individual doing business in the County of Los Angeles, State of California.

4.    Defendant Venture RE Group ("VREG") is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. Plaintiffs are informed and believe, and based on such information and belief allege, that the Articles of Incorporation for VREG were filed with the Secretary of State of California on or about May 10, 2006. VREG's principal business office is now, and all times material hereto has been, located in the County of Orange, State of California.

5.    Defendant Bral Realty Advisors, Inc. ("BRAI") is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. Plaintiffs are informed and believe, and based on such information and belief allege, that the Articles of Incorporation for BRAI were filed with the Secretary of State of California on or about October 8, 2013. BRAI's principal business office is now, and all times material hereto has been, located in the County of Orange, State of California.

6.    Plaintiffs do not know the true names or capacities of the persons or entities sued herein as Does 1 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe, and upon such information and belief allege, that each of the Doe Defendants was in some manner legally responsible for the damages alleged

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1  below. Plaintiffs will amend this Complaint to set forth the true names of capacities of these

2  Defendants when they have been ascertained.

3      7.    Bral, VREG, BRAI and Does 1 – 50, inclusive, shall be collectively referred to as

4  "Defendants".

5      8.    Plaintiffs are informed and believes, and based on such information and belief

6  allege, that at all times herein mentioned, each Defendant was the agent, servant, or employee of

7  the other Defendants and in acting or omitting to act as alleged herein did so within the course

8  and scope of that agency or employment. Each Defendant is sued individually and as an agent

9  and representative of each of the Defendants.

10      9.    Plaintiffs are informed and believes, and based on such information and belief

11  allege, that all of the agreements at issue in this Action, whether written or oral, were made and

12  agreed by the respective parties thereto in the County of Los Angeles.

13  **II.    FACTS**

14      10.    Beitler and Bral formed several specific purpose entities as limited liability

15  companies (collectively, "SPEs") to hold, operate and manage real property investments in

16  which they each held a membership interest.

17      11.    The SPEs of Beitler and Bral included, among others, Mission Medical Investors,

18  LLC ("Mission"), Javaher Investors, LLC ("Javaher"), Ocean View Medical Investors, LLC

19  ("Ocean"), Harbor Medical Investors, LLC ("Harbor"), Eyestreet Medical Investors, LLC

20  ("Eye"), and Westcliff Investors, LLC ("Westcliff").

21      12.    Westcliff was formed in February 2003.

22      13.    Mission was formed in December 2003.

23      14.    Javaher was formed in May 2005.

24      15.    Ocean was formed in June 2005.

25      16.    Harbor was formed in May 2006.

26      17.    Eye was formed in October 2006.

27      18.    Plaintiffs are informed and believe, and based on such information and belief

28  allege, that Beitler and Bral have executed the operating agreements of each of the SPEs.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

Plaintiffs are further informed and believe and thereon allege that Bral has in his possession and control all of the executed operating agreements of Mission, Javaher, Ocean, Harbor and Eye.

19.    Beitler and Bral are managers of Ocean, Harbor and Mission.

20.    Bral and Dr. Hootan Daneshmand are managers of Javaher and Eye.

21.    Plaintiffs are informed and believe, and based on such information and belief thereon allege, that in each of the SPEs in which both Beitler and Bral are a manager or a managing member, neither Beitler nor Bral is permitted to act unilaterally or independently of each other as Manager or Managing Member, as the case may be, and that the operating agreements of those SPEs require the mutual consent of each manager or managing member.

22.    Section 5.9 C. of the Operating Agreements of Ocean, Mission, Javaher and Harbor provides for payment of property management fees:

"There shall be a four percent (4%) of gross income per month fee for property management to a management company chosen by Manager."

23.    Section 5.9 D. of the Operating Agreements of Ocean, Mission, Javaher, and Harbor provides for payment to BCRS of sale and leasing broker commissions:

"There shall be sales commission of four percent (4%) paid to Beitler Commercial Realty Services as a listing Broker upon sale .... and leasing commissions shall be paid to Beitler Commercial Realty Services...."

24.    Section 5.8 of the Eye Operating Agreement, which was executed after VREG was formed, provides for VREG to act as property manager and sales and leasing broker:

" ... The Company specifically acknowledges that JOHN BRAL is a Manager and is affiliated with Venture RE Group. The Company specifically acknowledges and hires Venture RE Group as leasing and/or listing Broker, when necessary to lease or sell the property, and will pay to Venture RE Group the "Sales Commission" and "Lease Commissions" ... Further, the Company hires Venture RE Group to act as property manager for the Company and its assets and will pay to Venture RE Group the "Property Management Fee"... The Company specifically

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1  acknowledges that Manager or Manager's affiliate shall manage and oversee the construction,

2  development and construction of the tenant improvements ... upon the Property, and the

3  Company shall pay to Manager or Manager's affiliate the "Development and Construction

4  Management Fee"..."

5

6      25.    Section 5.9 C of the Eye Operating Agreement provides for payment of property

7  management fees to VREG:

8      "There shall be a four percent (4%) of gross income per month fee ... for property

9  management paid to Venture RE Group...."

10

11     26.    Section 5.9 D of the Eye Operating Agreement provides for payment of sale and

12  leasing broker commissions to VREG:

13     "There shall be sales commission of four percent (4%) paid to Venture RE Group ... as a

14  listing Broker upon sale .... and leasing commissions shall be paid to Venture RE Group ...."

15

16     27.    Section 3.3 in the Westcliff Operating Agreement provides for BCRS to act as

17  broker and for sale and leasing commissions to be split equally between Beitler and Bral:

18     "At all times, whenever a vacancy in the property becomes available, Beitler Commercial

19  Realty Services shall be hired for the leasing at market commission rates. Bral and Beitler agreed

20  to split equally (50%/50%) any and all commissions for leasing paid if any. The same shall be

21  true of any commission on the future sale of the Property...."

22

23     28.    Plaintiffs are informed and believe, and based on such information and belief

24  allege, that the Westcliff Operating Agreement does not provide for the appointment of a

25  property manager.

26     29.    Notwithstanding that an operating agreement of any of the SPEs may have

27  granted to the manager or managing member the authority to select a property manager (Ocean,

28  Mission, Javaher and Harbor), or otherwise provided for the appointment of a property manager

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

4

COMPLAINT

EXHIBIT "1"
Page 25

1  (Eye), it was agreed to and understood between Beitler and Bral that in each of the SPEs

2  property management fees would be split between them and that the property management

3  would be conducted through an entity owned and controlled by both of them (the "SPE

4  Management Agreement"). Plaintiffs are informed and believe, and based on such information

5  and belief allege, that the SPE Management Agreement amended each respective SPE operating

6  agreement.

7      30.    In or around May 2006, Beitler and Bral formed VREG. Its business purpose was

8  to serve as a development company for their SPEs and any subsequently acquired real property

9  to be developed.

10     31.    At the time that they formed VREG, Beitler and Bral orally agreed to the

11  following material terms with regard to VREG (collectively, "Initial VREG Agreement"):

12     A.    Each would own an equal stock interest in VREG;

13     B.    There would be no other shareholders in VREG;

14     C.    Beitler and Bral would be the only officers and directors of VREG; and

15     D.    VREG would only be used for its intended business purpose.

16     32.    Subsequently, Beitler and Bral orally agreed to use VREG as a property

17  management company for their SPEs. Beitler and Bral orally agreed to add to their Initial VREG

18  Agreement the following additional terms (collectively, "VREG Property Management

19  Agreement"):

20     A.    Bral shall handle the day to day administrative management related to each of the

21          SPEs, but not supersede, conflict, or be delegated as property manager, any of the

22          authority of a Manager of any of the SPEs;

23     B.    Other than property management services and property development services,

24          VREG shall not provide any other service; and

25     C.    Beitler and Bral are to divide equally between them all revenues earned by

26          VREG.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

5

COMPLAINT

33.    The VREG Property Management Agreement was an extension of the Initial VREG Agreement, incorporating the terms of the Initial VREG Agreement between Beitler and Bral.

34.    Plaintiffs are informed and believe, and based on such information and belief allege, that Bral was the incorporator, or caused the incorporation, of VREG, and at all times material herein, Bral authored and controlled the corporate books, records, minutes of VREG, and filed with the State of California any compliance documents related to VREG.

35.    Plaintiffs are informed and believe, and based on such information and belief allege, that at no time did Bral issue and deliver to Beitler shares of stock in VREG in Beitler's name.

36.    Plaintiffs are informed and believe, and based on such information and belief allege, that Bral formed a de jure corporation by the filing of Articles of Incorporation for VREG, but failed to document Beitler's rights under VREG as an shareholder, officer and director of VREG as agreed to in the Initial VREG Agreement, including, but not limited to, the execution of bylaws, appointment of directors and officers, first meeting of shareholders and directors, and other corporate formalities establishing Beitler's rights in VRGE.    At all times material hereto Bral failed to disclose to Beitler any of the aforementioned acts or omissions.

37.    Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, without disclosure to and unbeknownst to Beitler, and in violation of the Initial VREG Agreement, prepared corporate documentation that reflected Bral as the sole director, officer and shareholder of VREG.

38.    Plaintiffs are informed and believe, and based on such information and belief allege, that Bral did not disclose or provide to Beitler documentation regarding the formation of VREG or documentation reflecting its annual compliance, if any, with corporate obligations, including meetings of its directors and shareholders.

39.    Sometime after the formation of VREG and after Bral and Beitler entered into the VREG Property Management Agreement, Bral asked Beitler to place Beitler's broker's license with VREG, so that VREG could operate as a corporate real estate brokerage, including handling

Levy, Small & Lallas
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 Moraga Drive
Los Angeles, CA 90049

the leasing and sales for the SPEs. Beitler agreed to place his real estate broker's license with VREG, subject to the following conditions to which Bral orally agreed ("Brokerage Agreement"):

A.   Observance of the laws of the State of California, including any administrative regulations or requirements of the California Bureau of Real Estate ("CBRE"), regarding such real estate brokerage matters;

B.   VREG is to be operated and managed as an affiliate of BCRS and regulated by BCRS;

C.   All commissions are to be split equally between broker and agent, with the broker commission to be paid to BCRS for use by VREG of Beitler's real estate broker's license;

D.   Nothing shall modify or affect the SPEs' respective Operating Agreements with regard to their provisions appointing BCRS as listing broker of the SPEs and the commission percentage payable to BCRS as provided therein;

E.   All leasing and sales transactions are to be managed and administrated by BCRS as the listing broker, consistent with the SPEs' respective Operating Agreements;

F.   Any signs or marketing material listing any of the SPEs are to name BCRS as the listing broker; and

G.   All payments and expenses advanced by BCRS to VREG, Bral or any of the agents acting under VREG ("Expense Advances"), including, but not limited to, for errors and omissions insurance, are to be reimbursed to BCRS.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

7

COMPLAINT

EXHIBIT "1"
Page 28

40.     Notwithstanding that BCRS had maintained an existing office in Orange County, California, VREG also located its office in Orange County, California The co-existence of both offices was not viewed as duplicative or overlapping, because, among other factors, VREG had already existed not as a brokerage but to provide property development and property management services to the SPEs.

41.     Subsequent to the formation of VREG, Bral indicated that he required the money earned from the SPEs, including, but not limited to, the property management fees and any commissions, for both the continued operation and management of VREG and his personal use. Bral orally proposed, and Beitler orally agreed, to defer receiving any money from VREG that would otherwise be distributed to Beitler and BCRS, and that Bral would subsequently account for, allocate and pay to Beitler and BCRS the excess money received by Bral that would otherwise have been paid to Beitler and/or BCRS ("Deferral Agreement").  Plaintiffs are informed and believe, and based on such information and belief allege, that the Deferral Agreement was restated and ratified periodically and annually by Beitler and Bral each year after the VREG Property Management Agreement, including calendar year 2013.

42.     The Initial VREG Agreement, the VREG Property Management Agreement, the Brokerage Agreement and the Deferral Agreement are hereinafter referred to collectively as the "VREG Agreements".

43.     At all times herein mentioned, Beitler was licensed by CBRE as a real estate broker.

44.     At all times herein mentioned, VREG listed Beitler as the "Licensed Officer". CBRE License Page – VREG it states Beitler as the Licensed Officer and listing Mariko C. Beaver ("Beaver") and Jon Capristo ("Capristo") as sales persons.  Bral is not named as a salesperson under VREG.  Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, prior to January 18, 2014, was not listed as salesperson under the VREG.

45.     Beaver and Capristo were individuals hired directly by Bral to work with Bral at VREG.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

COMPLAINT

46.     Plaintiffs are informed and believe, and based on such information and belief thereon allege, that at all times herein mentioned prior to June 5, 2013, Bral was licensed by the CBRE as a real estate agent.

47.     In or about June 5, 2013, Bral was licensed by the CBRE as a real estate broker.

48.     Bral, on or about October 8, 2013, formed BRAI; however, Plaintiffs are informed and believe, and based on such information and belief allege, that BRAI did not commence operations concurrent with its formation.

49.     On January 9, 2014, Beitler sent Bral an email ("January 9th Email").  The January 9th Email related, among other things, Beitler's requests and demands for: (i) an accounting of VREG management fees earned by VREG and particularly with regard to the SPEs; (ii) payment of BCRS's share of the management fees; (iii) an accounting of all brokerage fees earned by VREG and payment to BCRS of any brokerage fees; (iv) removal of signs posted on the SPE properties that stated VREG as the broker or representative of the SPEs and replacement of those signs with BCRS signs; (v) repayment of any money advanced by BCRS on behalf of VREG, including, but not limited to, premiums related to VREG for errors and omissions insurance; and (vi) the cessation of the continued use of BCRS's broker's license.

50.     Neither Bral nor VREG responded to the January 8th Email.

51.     On January 24, 2014, as a follow-up to the January 9th Email, Beitler sent Bral an email ("January 24th Email") that related and reiterated, among other things, Beitler's requests and demands for: (i) an accounting and tender of payment for management fees VREG received from the SPEs; (ii) an accounting of commissions VREG received through the use of BCRS's California real estate broker license; (iii) the removal of VREG broker signs and the replacement of such signs with BCRS signs as required under the SPE operating agreements; (iv) the cessation of VREG's use of BCRS's California real estate broker license; and (v) the repayment of fees and expenses that BCRS advanced for VREG.

52.     Bral did not respond to the January 24th Email.

53.     The license page for BRAI listed on the CBRE website, as of January 28, 2014, set forth Bral as the Licensed Officer and provided that the corporate license was issued on

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

9

COMPLAINT

EXHIBIT "1"
Page 30

1    January 28, 2014. The CBRE web page for BRAI does not list any salespersons. Plaintiffs are

2    informed and believe, and based on such information and belief allege, that BRAI commenced

3    business in or about January 2014 and that both Capristo and Beaver then started doing work for

4    BRAI.

5        54.    BRAI's own web page states that:

6        "BRAI offers services to cover all Commercial Real Estate, with a specialty in Medical

7    and Office. With over 25 years of experience in the industry and an inventory exceeding $100

8    million dollars ..."

9

10       55.    At no time did Bral announce his resignation, separation or disassociation from

11   VREG, or the formation of BRAI. On or about January 12, 2014, Plaintiffs discovered the

12   formation of BRAI through an internet search.

13       56.    At no time did Bral announce the termination or cessation of work by VREG.

14       57.    Plaintiffs are informed and believe, and based on such information and belief

15   allege, that BRAI now occupies the same business office as VREG and utilizes the same

16   telephone numbers.

17       58.    Plaintiffs are informed and believe, and based on such information and belief

18   allege, that Bral transferred to BRAI all of the business of VREG, including the brokerage,

19   property development, and property management.

20       59.    Plaintiffs are informed and believe, and based on such information and belief

21   allege, that Bral, Capristo and/or Beaver have ceased working for VREG.

22       60.    At no time did Bral, Capristo and/or Beaver indicate they resigned, terminated or

23   ceased doing work for VREG.

24       61.    At no time did Bral communicate to Beitler the status of VREG as an ongoing

25   operating entity, as it relates to BRAI and/or as it relates to the SPEs.

26       62.    Plaintiffs are informed and believe, and based on such information and belief

27   allege, that there is no agreement between VREG and BRAI regarding a transfer of business by

28   VREG to BRAI or the assumption by BRAI of VREG's work. Plaintiffs are further informed

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

10

COMPLAINT

EXHIBIT "1"
Page 31

and believe, and based on such information and belief allege, that all such actions by Bral with regard to the transfer of VREG assets were done without the required corporate approval, including Beitler's approval as a putative shareholder of VREG pursuant to the Initial VREG Agreement.

**FIRST CAUSE OF ACTION**

**FOR BREACH OF FIDUCIARY DUTY**

**(By Beitler Against Bral and Does 1 through 50)**

63.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

64.     Beitler is informed and believes, and based on such information and belief alleges, that at all times material hereto, Bral was a shareholder, corporate officer, and director of VREG.

65.     Beitler is informed and believes, and based on such information and belief alleges, that a fiduciary relationship existed between Beitler and Bral, which Bral established through the following: (A) the formation of VREG, in accordance with the Initial VREG Agreement; (B) each of the agreements, as herein alleged, that Bral entered into with Beitler in which he promised to faithfully and in good faith perform and in which as an officer and director of VREG he was obligated to perform in the best interests of VREG, including, but not limited to, the VREG Agreements; and (C) Bral's position as a director and corporate officer of VREG.

66.     Beitler is informed and believes, and based on such information and belief alleges, that Bral breached his fiduciary duties to Beitler by, among other things, the following: (A) failing to issue shares in VREG to Beitler; (B) failing to properly document VREG's corporate documents consistent with each of the VREG Agreements; (C) failing to account for VREG revenue; (D) failing to distribute VREG revenue; (E) failing to pay money owed to Beitler and/or to BCRS for Beitler's benefit; (F) misappropriating VREG revenue otherwise to be allocated to Beitler or to BCRS for Beitler's benefit; (G) failing to act in accordance with the State of California and CBRE laws and regulations regarding a California corporate real estate

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

11

COMPLAINT

EXHIBIT "1"
Page 32

1  brokerage; (H) failure to act in the best interests of and in loyalty to the SPEs and VREG and

2  failure to place those interests before his own self-interest; (I) diverting and misappropriating

3  VREG business and assets to BRAI in breach of the VREG Agreements, without authority as

4  provided in the SPEs' operating agreements and without consideration or value; and (J) failing to

5  act in accordance with his duties and obligations as a corporate officer and director of VREG.

6     67.    As a proximate results of Bral's breach of fiduciary duty as herein alleged, Beitler

7  has suffered damage in amount to be determined according to proof at the time of trial, but in no

8  event less than this Court's minimum amount for unlimited civil jurisdiction.

9     68.    Bral's breaches of his fiduciary duty to Beitler are continuing, willful and

10  wrongful, and malicious, and done in conscious disregard for Beitler's rights. Beitler is therefore

11  entitled to an award of punitive damages against Bral in amount according to proof.

12  ## SECOND CAUSE OF ACTION

13  ## FOR ACCOUNTING

14  **(By Plaintiffs Against Bral, VREG, BRAI and Does 1 through 50)**

15     69.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to

16  68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though

17  set forth in full herein.

18     70.    The amount of money due to Plaintiffs as result of Defendants' conduct as

19  aforesaid is not fully known to Plaintiffs, and cannot be precisely ascertained without an

20  accounting of the money and assets used and/or received by Defendants with regard to Plaintiffs,

21  and each of them.

22     71.    By reason of the facts herein alleged, Defendants have a duty to account to

23  Plaintiffs, among other things, for all money used and/or received by VREG, all money paid or

24  distributed to Bral by VREG, all assets and business diverted by VREG to BRAI, and all money

25  paid or distributed to Bral by BRAI that would otherwise be received or paid to VREG.

26

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

COMPLAINT

EXHIBIT "1"
Page 33

### THIRD CAUSE OF ACTION

### FOR UNJUST ENRICHMENT

### (By Plaintiffs Against Bral, VREG and BRAI and Does 1 – 50)

72.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

73.    By reason of the acts and conduct of Defendants as alleged herein, Defendants received a benefit and unjustly retained that benefit at the expense of Plaintiffs, and as a result thereof, Defendants have been unjustly enriched in an amount to be determined according to proof, together with interest thereon at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

### FOURTH CAUSE OF ACTION

### FOR INTENTIONAL MISREPRESENTATION

### (By Plaintiffs Against Bral and Does 1 – 50)

74.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by reference as though set forth in full herein.

75.    At all times material hereto, Bral made a series of representations to Plaintiffs. Plaintiffs are informed and believe, and based on such information and belief allege, that the purpose of such representations was to induce Plaintiffs to enter into the VREG Agreements with Bral.

76.    The representations made by Bral, included, among others, the following: (A) the VREG Agreements, and each of them, were binding, ongoing and would be faithfully performed by Bral; (B) VREG would equally divide the revenue between Beitler and Bral from the property management fees paid by the SPEs to VREG, and that Bral would not interfere with BCRS's right to be the real estate broker for the SPEs and its right to commissions therefrom; (C) Bral would not undertake any action with regard to the SPEs either as a manager, managing member or member without Beitler's agreement; (D) Bral would not do, or cause anything to be done,

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

that was in conflict with the requirement of prior approval of Beitler as broker of VREG and as otherwise required by CBRE and the laws and regulations of the State of California for corporate real estate brokerages; (E) Bral would not do, or cause anything to be done, whether directly or indirectly, that would interfere with BCRS's rights of broker representation and to commissions relative to any of the SPEs; (F) Bral would repay any money received by Bral in excess of his equal share; and (G) BCRS would receive its broker commission from any commission appropriately earned by VREG (collectively, the "Representations").

77.    Each of the Representations made by Bral was in fact false.

78.    Plaintiffs are informed and believe, and based on such information and belief allege, that Bral did not intend to, among other things: (A) divide the revenue from property management and commissions with Beitler, individually and on behalf of BCRS; (B) faithfully perform each of the VREG Agreements; (C) properly pay to Beitler his broker share of any commission related to non-BCRS commission matters; and (D) not interfere with BCRS's rights with regard to any of the SPEs, including the payment of any commissions.

79.    Plaintiffs are informed and believe, and based on such information and belief allege, that Bral's real intent was to use the revenue received by VREG to develop the infrastructure of VREG for his singular benefit as an ongoing real estate commercial brokerage without being licensed as a broker under the laws of California and without allocating to Beitler, whether individually or on behalf of BCRS, an equal distribution and/or other payments.

80.    Plaintiffs are informed and believe, and based on such information and belief allege, that Bral breached his duty in making the Representations, since Bral did not intend to reasonably perform under the terms of any of the VREG Agreements.  Plaintiffs are further informed and believe, and based on such information and belief allege, that Bral was aware that he acted contrary and/or in breach of the VREG Agreements notwithstanding that Bral reaffirmed and ratified each of the VREG Agreements and related to Plaintiffs his purported intent to faithfully perform each of the VREG Agreements and did so affirm and ratify each calendar year, through and including 2013.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

14
COMPLAINT

EXHIBIT "1"
Page 35

81.     Plaintiffs, and each of them, reasonably relied on Bral's Representations and such reliance was both reasonable and justified, since Bral was both a long standing business associate and friend of Beitler prior to the formation of VREG and, therefore, Plaintiffs had no reason to doubt Bral's Representations based on their past history of performance.  Plaintiffs had a pre-existing relationship with Bral that on its face and from past practice validated trust.  In addition, Bral reaffirmed at all times material hereto each of the VREG Agreements.

82.     Had Plaintiffs known the truth of Bral's Representations and his real intent they would not have entered into the VREG Agreements, Beitler would not have placed his real estate broker license with VREG for VREG's use, and BCRS would not have made Expense Advances for VREG or deferred collection of such advances.

83.     Plaintiffs did not discover, and were not on notice of, the falsity of Bral's Representations until in or about October 2013.

84.     Plaintiffs have been damaged by Bral's failure to perform under each of the VREG Agreements and his misuse of Beitler's real estate broker license.

85.     Plaintiffs' reliance on Bral's Representations was a substantial factor in and proximate cause of harm and damage to Plaintiffs.

86.     Plaintiffs seeks both general and special damages, including interest at the maximum legal rate, in an amount according to proof at time of trial, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

87.     Bral's Representations were false, willful and malicious, and done in conscious disregard for Plaintiffs' rights.  Plaintiffs are therefore entitled to an award of punitive damages against Bral in amount according to proof.

### FIFTH CAUSE OF ACTION

### FOR NEGLIGENT MISREPRESENTATION

### (By Plaintiffs Against Bral and Does 1 – 50)

88.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, and paragraphs 74 to 77, inclusive, and paragraphs 81 to 86, inclusive of this

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1   Complaint, and the same are incorporated herein by this reference as though set forth in full

2   herein.

3       89.    In making the Representations to Beitler, Bral had a duty to not make any

4   Representations that were false and did not reflect anything other than his real intent.

5       90.    Plaintiffs are informed and believe, and based on such information and belief

6   allege, that Bral made the Representations without any reasonable grounds or basis for believing

7   them to be true.

8       91.    As a direct and proximate result of Bral's Representations and Plaintiffs'

9   justifiable reliance thereon, Plaintiffs suffered general and special damages, including interest at

10  the maximum legal rate, in an amount according to proof at time of trial, but in no event less than

11  this Court's minimum amount for unlimited civil jurisdiction.

12                          **SIXTH CAUSE OF ACTION**

13                      **FOR BREACH OF ORAL CONTRACT**

14                  **(By Plaintiffs Against Bral and Does 1 – 50)**

15      92.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to

16  68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though

17  set forth in full herein.

18      93.    Each of the VREG Agreements is an oral contract.

19      94.    Plaintiffs have performed all of their obligations under the VREG Agreements

20  except those excused, waived, or discharged by Defendants' conduct.

21      95.    In or about November 2013, Bral breached the VREG Agreements, by among

22  other things, failing to perform those promises and undertake those actions as set forth in

23  paragraphs 31, 32, 39, 41, 75 and 76 herein.

24      96.    As a result of Bral's breach of the VREG Agreements, Plaintiffs have suffered

25  general and compensatory damages, and incidental and consequential damages, in an amount

26  according to proof, including interest at the maximum legal rate, but in no event less than this

27  Court's minimum amount for unlimited civil jurisdiction.

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

# SEVENTH CAUSE OF ACTION

## FOR BREACH OF ORAL CONTRACT

### (By BCRS Against Bral, VREG and Does 1 – 50)

97.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

98.     BCRS orally agreed to make Expense Advances on behalf of Bral, VREG and each of the agents acting under VREG, including, but not limited to, errors and omissions coverage, and Bral and VREG orally agreed to reimburse BCRS for all Expense Advances ("Expense Advance Agreement"). The Expense Advance Agreement is part of the Brokerage Agreement.

99.     BCRS made Expense Advances on behalf of Bral, VREG and each of the agents acting under VREG, and BCRS has performed all of its obligations under the Expense Advance Agreement except those excused, waived, or discharged by Defendants' conduct.

100.     Bral and VREG requested that BCRS defer collection of their repayment of the Expense Advances to a later date, since neither Bral nor VREG purportedly could afford to absorb such costs. BCRS agreed to defer collection of repayment of the Expense Advances.

101.     Notwithstanding that Bral and VREG did not pay BCRS for such Expense Advances, Bral and VREG, for each calendar year in which Expense Advances were made, ratified and affirmed their obligations to BCRS under the Expense Advance Agreement to repay all outstanding Expense Advances, including those from prior years. Bral and VREG in calendar year 2013 again ratified and reaffirmed their obligations to BCRS under the Expense Advance Agreement to repay all outstanding Expense Advances.

102.     In or about November 2013, Bral and VREG breached the Expense Advance Agreement by failing to repay to BCRS outstanding Expense Advances.

103.     As a result of Bral's and VREG's breach of the Expense Advance Agreement, BCRS has suffered general and compensatory damages, and incidental and consequential

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

17

COMPLAINT

EXHIBIT "1"
Page 38

Case 8:17-bk-10706-SC   Doc 151   Filed 04/03/17   Entered 04/03/17 17:56:48   Page 29 of
Case 8:17-bk-10706-SC   Claim 5-1   Part 2   Desc Main Document   Page 43 of 58
Main Document    Page 43 of 58

damages, in an amount according to proof, including interest at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

## EIGHTH CAUSE OF ACTION

## FOR BREACH OF IMPLIED CONTRACT

### (By Plaintiffs Against Bral and Does 1 – 50)

104.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 68, inclusive, paragraphs 75 and 76, and paragraphs 97 to 103, inclusive of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

105.    In doing the acts and things hereinabove alleged, Plaintiffs and Bral entered into an implied contract ("Implied Agreement"), on the terms and conditions as alleged herein, pursuant to which, among other things, (i) Beitler and Bral would equally share in the management fees from the SPEs, (ii) BCRS would receive its equal share of brokerage commissions from any non-SPE transactions by or through VREG, (iii) BCRS would be reimbursed by Bral for any fees, costs and other Expense Advances on behalf of VREG and Bral, and (iv) Plaintiffs and Bral would equally share in the commissions earned from the leasing and sale of the SPEs' properties.

106.    Plaintiffs performed all of their obligations under the Implied Agreement except those excused, waived, or discharged by Defendants' conduct.

107.    In or about November 2013, Bral breached the Implied Agreement by, among other things, failing to perform those promises and undertake those actions as set forth in paragraphs 31, 32, 39, 41, 75, 76, and 98 herein.

108.    As a result of Bral's breach of the Implied Agreement, Plaintiffs have suffered general and compensatory damages, and incidental and consequential damages, in an amount according to proof, including interest at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.  FIRST CAUSE OF ACTION

    a)    General and special damages in an amount according to proof;

    b)    Interest at the maximum legal rate; and

    c)    Punitive damages according to proof.

2.  SECOND CAUSE OF ACTION

    a)    For an accounting.

3.  THIRD CAUSE OF ACTION

    a)    General and compensatory damages in an amount according to proof;

    b)    Incidental and consequential damages according to proof; and

    c)    Interest at the maximum legal rate.

4.  FOURTH CAUSE OF ACTION

    a)    General and special damages in an amount according to proof;

    b)    Interest at the maximum legal rate; and

    c)    Punitive damages according to proof.

5.  FIFTH CAUSE OF ACTION

    a)    General and special damages in an amount according to proof; and

    b)    Interest at the maximum legal rate.

6.  SIXTH, SEVENTH and EIGHTH CAUSES OF ACTION

    a)  General and special damages in an amount according to proof; and

    b)    Incidental and consequential damages in an amount according to proof; and

    c)    Interest at the maximum legal rate.

7.  ALL CAUSES OF ACTION

    a)    For costs of suit incurred herein; and

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

b)      For such other and further relief as the court deems just and appropriate.

DATED: April 2, 2014

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS

By: _____
        TOM LALLAS
Attorneys for Plaintiffs
BARRY A. BEITLER and
BEITLER & ASSOCIATES, INC., doing
business as Beitler Commercial Realty Services

30488

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

20
COMPLAINT

EXHIBIT "1"
Page 41

# EXHIBIT B

Case 8:17-bk-10706-SC   Doc 151   Filed 10/13/17   Entered 10/13/17 17:56:48   Desc 29 of
Case 8:17-bk-10706-SC   Claim 1-1   Filed 06/16/17   Desc Main Document   Page 29 of
Main Document 38   Page 47 of 58

Honorable Stephen M. Lachs (Ret.)
ADR SERVICES, INC.
1900 Avenue of the Stars, Suite 250
Los Angeles, California 90067
(310) 201-0010 PH
(310) 201-0016 FAX

ADR SERVICES, INC.

| | |
|---|---|
| BARRY A. BEITLER and BEITLER & ASSOCIATES INC. dba BEITLER COMMERCIAL REALTY SERVICES, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN BRAL; VENTURE REAL ESTATE GROUP, a California Corporation; and BRAL REALTY ADVISORS, INC., <br><br> Defendants. | ADRS Case No. 16-6581-SML <br> LASC Case No. BC 543410 <br><br> **CORRECTED** <br> **REPORT AND RECOMMENDATION** <br> **ON MOTIONS 101, 201-207** <br><br> Stephen M. Lachs, <br> Judge of the Superior Court (Ret.) <br><br> Hon. Maureen Duff-Lewis <br> Dept. 38 |

On October 5, 2016, you appointed me to be a discovery referee in the above-entitled case. Since that time I have had two conference calls with counsel – one to discuss the case and set up a plan for the filing of various motions, and the second was the call that allowed counsel to argue their motions. In the end, Plaintiff filed one motion and Defendants filed three motions, though one of them consisted of four separate motions. However, we all treated it as one motion.

As you may remember, this case is one of a series of cases litigated between these parties. Mr. Beitler and Mr. Bral were once partners in various real estate businesses and have had a falling out, leading to this litigation.

1

EXHIBIT "1"
Page 43

The briefs and exhibits that I reviewed for these motions filled a bankers box. There are

references by both sides as to comments made by judges in the other cases, and actions taken by

other judges in those cases. I will spare you all of this since they are not really relevant to these

discovery motions. Either the parties are doing what they are required to do in this case, or they

are not.

The parties numbered their motions to make things easier. The plaintiff used the 100 series and

the defendants used the 200 series.

The second conference call, in which the motions were argued, occurred on December 15, 2016.

Messrs Lallas and Jordan appeared for the Plaintiff and Messrs Chapman and Hoesly appeared

for Defendants. Plaintiff had a court reporter present.

We began our conference call with argument concerning **Plaintiff's** motion, which was **Motion**
**#101.**

This motion seeks an order to compel Defendant Bral to produce certain documents, the

imposition of monetary sanctions, and an order that would lead to terminating sanctions as to all

defendants if there was a further failure to comply with discovery obligations.

This case involves allegations that Bral transferred money to entities which he controlled, which

money should have been shared with Beitler. Bral used QuickBooks for his basic accounting.

The information which you enter into QuickBooks and which shows up on your computer, is

called either raw data or native files. From that data, a person can produce various reports.

While Bral has produced reports for Beitler, he, Beitler, is seeking the raw data from the

computer. At this point there is no question that the raw data exists and that it is able be

produced.

///

2

1    Bral has taken the position that Beitler never requested the raw data in his discovery motions

2    and that the Court never ordered that they be produced.

4    On July 14, 2016, this Court ordered as follows:

6        "The court is informed that parties meet (sic) and conferred and agreed after deposition

7    of defendant John Bral that the following documents would be produced as reflected in exhibit

8    8 of declaration of Christian Jordan which is dated June 02, 2016 letter addressed to Mr.

9    Chapman.

11        Court orders compliance with production as reflected in exhibit 8 without objection by

12    July 26, 2016."

14    Thus we should look at the letter of June 2nd, which was Exhibit 8, to see what was ordered

15    produced by the Court.

17    In that exhibit, at the bottom of the first page, you find Request for Production No. 1. The

18    status, which is what the parties agreed to and which was ordered produced by the Court, says,

19    "Bral will produce all responsive documents not already produced, including, by way of

20    example and without limitation, general ledgers, QuickBooks reports, check registers, and cash

21    receipts and disbursement ledgers."

23    The language was clear – Bral was to produce all responsive documents and the brief list gave

24    examples but did not limit what was to be turned over to just those items. Clearly The

25    QuickBook native files would fall under this request.

27    At the July 14th hearing, the Court ordered Plaintiff to give notice.  Notice was personally

28    served and faxed on July 21, 2016. In addition, Plaintiff e-mailed a letter to counsel for

3

Defendants in which Plaintiff took pains to point out that the raw data, or native files, were

required to be produced. Obviously Mr. Jordan, for Plaintiff, had no obligation to spell out for

Defendant just what "all responsive documents" might include, but he did. And, in this letter, he

states that, "QuickBook files, including native files, were also repeatedly referenced in the

Application the Court granted today and in the Jordan Declaration in support thereof."

There is no evidence that at any time after receipt of that letter, Defendant ever contended that

Jordan was wrong, and that native files were not required to be produced. That is, until

Defendant filed his opposition to Motion 101 in which he states on page 8, **"Importantly, there

was no mention of the raw data!** (his emphasis). It simply was never discussed or there would

have been a reference to it. Because it was not discussed, it need not be produced. Even the

Court noted that, including in the October 4 minute order "The 'issue' of "raw" QuickBooks

data appears to be new and not argued before."

I do not know the context of the Court's comment, but it was certainly not a statement that

Defendant need not produce the raw data. Had Defendant wanted to, in the discussions that

resulted in Exhibit 8, he could have insisted that production be limited to only those documents

listed. Instead, he agreed that the list was just a list of examples and that he was required to

produce everything, whether in the list of examples or not. And he certainly knew for months

that Plaintiff was seeking the raw data. At the least, after Mr. Jordan's August 12th e-mail, he

could have cleared this up with Mr. Jordan, or, at the most, sought the Court's ruling as to

whether it was required to be produced.

I would recommend that the Court order Mr. Bral to produce the raw data from QuickBooks.

In addition, as a safety precaution, Defendant should be ordered to provide a copy of the same

raw data under seal to the Court. That way there will be a copy available in the future if either

side contends that the other side manipulated the data.

4

1   Both the copy of the data for Plaintiff and that for the Court should be produced within 10 days

2   of the Court's order.

3

4   Plaintiff also requested tax returns for VREG and BRAI for the years 2012, 2013, 2014 and

5   2015. Defendant's position apparently is that he need only turn over documents that are

6   physically in his possession. The tax returns appear to be in the possession of his accountant.

7   Defendant need only instruct his accountant to provide those returns. He should be ordered to

8   produce the returns within 10 days of the date of the Court's order.

9

10  Plaintiff requests a triggering provision that would state that if Defendant failed to comply with

11  the Court's order, terminating sanctions would be imposed. Unfortunately too much can happen

12  in the world for this type of order. Rather, if Plaintiff feels there has been noncompliance, he

13  should be able to seek a date for a hearing on an ex parte motion and Defendant should be given

14  an opportunity at that hearing to explain why he has not complied with the Court's order. If the

15  Court is satisfied that there was noncompliance and there was no valid reason for it, then

16  terminating sanctions will be imposed.

17

18  Finally Plaintiff requests an award of monetary sanctions. It is my recommendation that the

19  Court award monetary sanctions to Plaintiff. This motion, in my opinion, was unnecessary and

20  Plaintiff should not have to pay his attorneys for all of the work involved.

21

22  **Defendant's Motion #201**

23

24  This is Defendant's motion to compel the deposition of Plaintiff along with documents

25  requested in the notice.

26

27  Plaintiff suspended the deposition of Defendant because of Defendant's failure to produce

28  documents that were requested of him. The deposition of Plaintiff was noticed after that

EXHIBIT "1"
Page 47

suspension. It is simply a matter of fairness that a party should not be able to depose the other

party while his own deposition has been suspended as the result of his failure to produce

documents.

I recommend that the Court deny Defendant's Motion #201. Further, within 10 days after

completion of Defendant's deposition, the parties shall mutually agree to a date for the

deposition of Plaintiff. If they cannot agree, Defendant will be able to give notice of an ex parte

hearing with the Court in order to set the date.

**Defendant's Motion #202 through #206**

These motions were handled as one motion.

Plaintiff had subpoenaed documents from various third parties who are accountants. These were

motions by Defendant to quash each of these document requests and/or for a protective order.

Defendant's position was that the parties had agreed to limit the production of these documents

to a certain year. Yet it is clear that while certain items were limited to a year, the bulk were not.

The motions to quash should be denied as to every category unless there was a written

agreement to limit a particular category to one year.

**Defendant's Motion #207**

This motion deals with amended responses to written discovery that was to be provided by

Plaintiff. Defendant says that Plaintiff refused to inform Defendant as to when the responses

would be provided and that Defendant was forced to file this motion to compel.

///

///

EXHIBIT "1"
Page 48

Case 8:17-bk-10706-SC    Claim 9-1    Filed 06/16/17    Desc Main Document    Page 35 of
38    Page 53 of 58

It is agreed by the parties that Plaintiff provided the amended responses three weeks before this motion was heard, and so it is now just Defendant's request for sanctions that needs be considered.

Apparently Plaintiff provided certain amended responses prior to the filing of this motion, but some were not provided. As indicated, the parties agree that all amended responses were provided three weeks prior to the hearing of this motion, but this was a date after the motion was filed. I accept that Plaintiff's attorney sought to reassure counsel for Defendant that the remainder of the amended responses would be provided, but no specific date was ever given. And it should be pointed out that counsel for Plaintiff kept in touch with Defendant during this time.

These parties are involved in some terribly contentious litigation. In such a case, it behooves counsel to be specific about such things as dates when discovery responses will be provided since counsel will be aware that the other side will jump on any opportunity to file a motion. In this instance, there was no way for Defendant to know when he would receive the amended responses that he was entitled to. It was Plaintiff's burden to provide a specific date and live up to that date, in order to prevent this very motion.

At the same time, it appears that this delay has in no way prejudiced Defendant except for having prepared the motion.

I would recommend that sanctions be awarded to Defendant in a sum to compensate for the preparation of this motion.

///

///

///

///

7

EXHIBIT "1"
Page 49

**In summary, I recommend to the Court as follows:**

As to Motion #101

1.  Defendant Bral be ordered to produce to the Plaintiff, the raw data from QuickBooks within 10 days of the date of the Court's order.

2.  Further, at the same time, Defendant is to provide the same raw data to the Court under seal.

3.  Defendant shall produce tax returns for Defendant VREG and Defendant BRAI for the years 2012, 2013, 2014 and 2015 within 10 days of the Court's order.

4.  The Court should order that at such time as Plaintiff believes that these orders have not been complied with, he may set a hearing on ex parte motion so that the Court can consider terminating sanctions if the Court finds that these orders have not been complied with.

5.  The Court should order monetary sanctions against Defendant.

As to Motion #201

1.  Defendant's motion should be denied.

2.  Within 10 days of the completion of Defendant's deposition, the parties shall mutually agree to a date for Plaintiff's deposition. If they cannot, Defendant may request a hearing upon ex parte notice, in order to have the Court set the date.

8

As to Motions #202 through #206:

    1.   The Defendant's motion to quash should be denied as to every category except those in which there was a written agreement to limit the discovery to one year.

As to Motion #207:

    1.   The only part of the motion that remains is the request for sanctions and sanctions should be awarded to Defendant to compensate for the cost of preparing the motion.

Counsel for Plaintiff should be ordered to prepare an order for the Court that encompasses these rulings.

RESPECTFULLY,

Hon. Stephen M. Lachs, Referee

Judge of the Superior Court, Ret.

Dated: 2/22/17

EXHIBIT "1"
Page 51

# PROOF OF SERVICE

**State of California**
**County of Los Angeles**

I certify that I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 250, Los Angeles, California 90067.

On February 23, 2017, I served the foregoing document described as the **CORRECTED REPORT AND RECOMMENDATION ON MOTIONS 101, 201-207** on the interested parties in this action as follows:

Tom P. Lallas, Esq.
Mark D. Hurwitz, Esq.
Christian A. Jordan, Esq.
LEVY SMALL & LALLAS
815 Moraga Drive
Los Angeles, California 90049
tlallas@lsl-la.com
mhurwitz@lsl-la.com
cjordan@lsl-la.com
cc: kfinn@lsl-la.com
(310) 471-3000
**VIA U.S. MAIL AND E-MAIL ONLY**

John M. Whelan, Esq.
Matthew M. Hoesly, Esq.
SAMINI SCHEINBERG
840 Newport Center Drive, Suite 700
Newport Beach, California 92660
jwhelan@saminilaw.com
mhoesly@saminilaw.com
cc: cthornton@saminilaw.com
(949) 724-0900
**VIA U.S. MAIL AND E-MAIL ONLY**

LLOYD K. CHAPMAN, ESQ.
4558 Sherman Oaks Avenue, 2nd Floor
Sherman Oaks, California 91403
(818) 304-8412
**VIA U.S. MAIL ONLY**

Hon. Maureen Duffy-Lewis
Dept. 38
LOS ANGELES SUPERIOR COURT
OF CALIFORNIA
111 North Hill Street
Los Angeles, California 90012
**VIA U.S. MAIL ONLY**

|     |     |
| --- | --- |
| __X__ | **BY U.S. MAIL,** I placed a true copy of the document described above in a sealed envelope and caused such envelope with postage thereon to be placed in the United States mail at Los Angeles, California. |
| __X__ | **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address *lara@adrservices.org* to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |
| __X__ | **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |

Executed on February 23, 2017 at Los Angeles, California

_____
Lara Weiss

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (specify): **DEBTOR'S OBJECTION TO PROOF OF CLAIM FILED BY BEITLER & ASSOCIATES, INC. DBA BEITLER COMMERCIAL REALTY SERVICES [CLAIM NO. 9]; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 13, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) October 13, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) October 13, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
SERVED VIA PERSONAL DELIVERY/ATTORNEY SERVICE
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130/Courtesy Bin
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/13/2017 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| Date | Printed Name | Signature |

.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

## SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

- **Thomas H Casey**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@lwgfllp.com;lgauthier@lwgfllp.c
  om
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **Beth Gaschen**    bgaschen@wgllp.com,
  kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner**    gek@lnbyb.com
- **William N Lobel**    wlobel@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Kathleen J McCarthy**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Edward G Schloss**    egs2@ix.netcom.com
- **Valerie Smith**    claims@recoverycorp.com
- **Daniel B Spitzer**    dspitzer@spitzeresq.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**    ecfnotices@ascensioncapitalgroup.com

## SERVED VIA FIRST-CLASS MAIL:

Beitler & Associates, Inc., dba Beitler Commercial Realty Services
c/o Gary E. Klausner, Esq.
Levene Neale Bender, et al
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

Office of the United States Trustee
411 West Fourth Street, Suite 7160
Santa Ana, CA 92701

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**