**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Attorneys for Debtor and Debtor-in-Possession
John Jean Bral

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:17-bk-10706-SC |
| JOHN JEAN BRAL, | Chapter 11 |
| Debtor. | **DEBTOR'S OBJECTION TO PROOF OF CLAIM FILED BY BETSY BOYD [CLAIM NO. 16]; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | **[DECLARATION OF JOHN JEAN BRAL IN SUPPORT THEREOF FILED CONCURRENTLY HEREWITH]** |
| | **DATE:    December 14, 2017**<br>**TIME:    11:00 a.m.**<br>**Place:    Courtroom 5C**<br>**411 West Fourth Street**<br>**Santa Ana, California 92701** |

*Lobel Weiland Golden Friedman LLP*
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1136093.1

OBJECTION

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 3

II.   STATEMENT OF FACTS ......................................................................... 4

    A.    Jurisdiction and Venue................................................................... 4

    B.    Relief Requested ............................................................................ 4

    C.    The Debtor and the Chapter 11 Filing........................................... 4

    D.    The Bar Date and the Claim........................................................... 5

    E.    Summary of Material Facts ............................................................ 5

III.  ANALYSIS ............................................................................................... 6

    A.    The Standard for Allowance of Claims.......................................... 6

    B.    The Claim is Too Vague to Satisfy the Standing Requirement .................. 7

    C.    The Claim Lacks Specificity and is Barred by the Statute of
          Limitations..................................................................................... 8

    D.    The Claim is Barred by the Doctrine of Laches............................. 9

    E.    If Not Disallowed, the Claim Should Be Determined on its
          Merits and Boyd's Allegations are False ................................... 10

IV.   RESERVATION OF RIGHTS ................................................................ 12

V.    CONCLUSION....................................................................................... 12

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

Am. Master Lease LLC v. Idanta Partners, Ltd.,
    225 Cal. App. 4th 1451, 171 Cal. Rptr. 3d 548 (2014), *as*

5

    *modified* (May 27, 2014) ........................................................................ 8

6

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir.2001)........................................................... 9

7

8

Fuller v. First Franklin Financial Corp.,
    216 Cal. App. 4th 955, 163 Cal. Rptr. 3d 44 (2013)............................... 8

9

In re Allegheny Int'l, Inc.,
    954 F.2d 167 (3d Cir.1992) ........................................................... 6

10

11

In re Blixeth,
    489 B.R. 154 (Bankr. D. Mo. 2013) ............................................... 6

12

In re Campbell,
    336 B.R. 430 (B.A.P. 9th Cir. 2005)............................................ 7

13

14

In re Consol. Pioneer,
    178 B.R. 222 (9th Cir. BAP 1995).................................................. 6

15

In re Gray,
    522 B.R. 619 (Bankr. D. Idaho 2014)................................................ 6

16

17

In re Holm,
    931 F.2d 620 (9th Cir. 1991) ......................................................... 6

18

In re Parrott Broadcasting Ltd. P'ship,
    492 B.R. 35 (Bankr. D. Idaho 2013)................................................ 6

19

20

Latta v. Western Inv. Co.,
    173 F.2d 99 (1949) ...................................................................... 9

21

Lennar Mare Island, LLC v. Steadfast Ins. Co.,
    139 F. Supp. 3d 1141 (E.D. Cal. 2015).......................................... 8

22

23

Lundell v. Anchor Const. Specialists, Inc.,
    223 F.3d 1035 (9th Cir. 2000)........................................................ 6

24

Magic Kitchen LLC v. Good Things Int'l Ltd.,
    153 Cal. App. 4th 1144, 63 Cal. Rptr. 3d 713 (2007)............................ 9

25

26

Miller v. Glenn Miller Productions, Inc.,
    454 F.3d 975 (9th Cir. 2006)....................................................... 9

27

N. Star Reins. Corp. v. Super. Ct.,
    10 Cal. App. 4th 1815, 13 Cal. Rptr. 2d 775 (1992)............................. 9

28

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

PacLink Commc'ns Int'l, Inc. v. Superior Court,
   90 Cal. App. 4th 958, 109 Cal. Rptr. 2d 436 (2001)................................................. 7

Pepper v. Litton,
   308 U.S. 295, 60 S.Ct. 244 (1939) ........................................................................... 7

Saterbak v. Nat'l Default Servicing Corp.,
   2016 WL 4430922 (S.D. Cal. Aug. 22, 2016) ........................................................... 9

Spencer v. Pugh (In re Pugh),
   157 B.R. 898 (9th Cir. BAP 1993)............................................................................. 6

Valley Forge [Christian College v. Americans United for Separation of
   Church & State, Inc.,
   454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ............................................... 7

William L. Lyon & Associates, Inc. v. Superior Court,
   204 Cal.App.4th 1294, 139 Cal. Rptr. 3d 670 (2012)................................................ 8

Zakaessian v. Zakaessian,
   70 Cal. App. 2d 721 (1945)........................................................................................ 9

**Statutes**

11 U.S.C. § 502(a) ........................................................................................................ 6

11 U.S.C. § 502(b)(1) .................................................................................................... 6

Cal. Civ. Code § 3527 ................................................................................................... 9

Corp. Code § 17300 ...................................................................................................... 8

**Other Authorities**

3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed. 1991)........................... 6

**Rules**

Fed. R. Bankr. P. 3001(f).............................................................................................. 6

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2  **JUDGE, BETSY BOYD, AND ALL OTHER INTERESTED PARTIES:**

3      **PLEASE TAKE NOTICE** that, pursuant to 11 U.S.C. § 502, Federal Rule of

4  Bankruptcy Procedure 3007, and Local Bankruptcy Rule 3007-1, on December 14, 2017,

5  at 11:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 5C of the

6  United States Bankruptcy Court, located at 411 West Fourth Street, Santa Ana, California

7  92701, a hearing will be held concerning this objection (the "Objection") of John Jean Bral,

8  the debtor and debtor-in-possession in the above-captioned chapter 11 case (the

9  "Debtor"), to Proof of Claim No. 16 ("Claim No. 16") filed by Betsy Boyd ("Boyd").

10      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 3007-

11  1(b)(3)(A), any response to the Objection must be filed and served not later than fourteen

12  (14) days prior to the hearing on the Objection (as further set forth in the Notice served

13  concurrently herewith).

14      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 3007-

15  1(b)(3)(B), if a response is not timely filed and served, the Court may grant the relief

16  requested in the Objection without further notice or hearing.

17      **PLEASE TAKE FURTHER NOTICE** that the Objection is based on the Notice of

18  Hearing, the attached Memorandum of Points and Authorities, the concurrently filed

19  Declaration of John Jean Bral, the files and records of this Court related to the Debtor's

20  case, and upon such other oral and documentary evidence as may be presented to the

21  Court at or before the time of the hearing on the Objection.

22  ///

23  ///

24  ///

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

OBJECTION

1     **WHEREFORE**, the Debtor requests that the Court enter an Order (i) disallowing

2 Claim No. 16 in its entirety; or, alternatively, (ii) determining the amount of such unsecured

3 claim on the merits subject to proof in these proceedings and defenses thereto; and (iii)

4 for such other and further relief as may be just and proper under the circumstances of this

5 case.

6                                                  Respectfully submitted,

7 Dated:  October 13, 2017                     LOBEL WEILAND GOLDEN FRIEDMAN LLP

8

9                                 By:  */s/ Beth E. Gaschen*

10                                     WILLIAM N. LOBEL
                                    ALAN J. FRIEDMAN

11                                     BETH E. GASCHEN
                                    Attorneys for Debtor

12                                     and Debtor-in-Possession
                                    John Jean Bral

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## I.   **INTRODUCTION**

John Jean Bral, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby submits this objection (the "Objection") to Claim No. 16 filed by Betsy Boyd ("Boyd").  Boyd is the sister of Barry Beitler ("Beitler") and, along with the Debtor and Beitler, holds a 5% membership interest in Westcliff Investors, LLC (defined herein as "Westcliff").[1]  In support of the Objection, the Debtor relies on the following Memorandum of Points and Authorities and the Declaration of John Jean Bral filed concurrently herewith (the "Bral Declaration").

On June 16, 2017, Boyd filed a proof of claim ("Claim No. 16") as an unsecured claim in an undetermined amount based on "Breach of Obligations of Debtor with respect to Westcliff Investors, LLC."  A true and complete copy of Claim No. 16 is attached hereto as Exhibit "1" and incorporated herein by this reference.

As discussed herein, Boyd has failed to establish a prima facie case for allowance of Claim No. 16, and such Claim should be disallowed in its entirety on the grounds that it is too vague and fails to satisfy the standing requirement.  In addition, such Claim is barred under the applicable statute of limitations and the doctrine of laches.  Moreover, even assuming that such Claim is not disallowed in its entirety based on the foregoing, and the merits of such Claim were to be considered by this Court, the Debtor denies the allegations underlying Claim No. 16.

To the extent that Claim No. 16 is not disallowed in its entirety for the reasons set forth herein, and the merits of such Claim were to be considered, the Debtor believes that he would be successful on the issue of liability on the merits by way of the proceeding on

---

[1] Claim No. 16 filed by Boyd substantially mirrors the allegations in Claim No. 14 filed by Beitler as to Westcliff.  Concurrently herewith, the Debtor has filed an objection to Claim No. 14.  The Debtor incorporate such objection to Claim No. 14 in this objection, to the extent relevant, as though fully set forth herein.

1  this Objection.[2]  Claim No. 16 is filed in an undermined amount, subject to proof by Boyd,

2  and is based solely on Boyd's unsubstantiated assertions set forth in Claim No. 16 (which

3  itself attaches only the Westcliff Operating Agreement (as defined herein) as support).

4  The Claim does not take into consideration any of the Debtor's defenses to the asserted

5  liability which, if the merits are to be considered, must be considered in connection with

6  the allowability of any such Claim.  As further discussed herein, and in the Bral

7  Declaration filed concurrently herewith, the allegations underlying Claim No. 16 are false.

8  II.    **STATEMENT OF FACTS**

9        A.    **Jurisdiction and Venue**

10        This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and

11  1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtor consents to the

12  entry of a final order by the Court in connection with this Objection to the extent it is later

13  determined that the Court, absent consent of the parties, cannot enter final orders or

14  judgments consistent with Article III of the United States Constitution.  Venue of this case

15  and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

16        B.    **Relief Requested**

17        By this Objection, the Debtor seeks entry of an order pursuant to section 502(b) of

18  the Bankruptcy Code and Bankruptcy Rule 3007 (i) disallowing Claim No. 16 in its

19  entirety; or, alternatively, (ii) determining the amount of such unsecured claim on the

20  merits subject to proof in these proceedings; and (iii) for such other and further relief as

21  may be just and proper under the circumstances of this caser.

22        C.    **The Debtor and the Chapter 11 Filing**

23        The Debtor commenced this case by filing a voluntary petition under chapter 11 of

24  title 11 of the United States Code on February 24, 2017 (the "Petition Date").  The Debtor

25  continues to manage his financial affairs and operate his bankruptcy estate as a debtor-in-

26

27        [2] By filing Claim No. 16, Boyd has subjected herself to this Court's jurisdiction to determine the amount and allowability of her asserted claim against the Debtor.

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 | possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No request for

2 | the appointment of a trustee or examiner has been made in this case.  No official

3 | committee of unsecured creditors has been appointed in this case.

4 | **D.**    **The Bar Date and the Claim**

5 |         This Court set a deadline of June 16, 2017 as the bar date for filing claims (the

6 | "Claims Bar Date").  On April 21, 2017, the Debtor served all known creditors and parties-

7 | in-interest with notice of the Claims Bar Date (the "Bar Date Notice") [Docket No. 47].

8 | Pursuant to the Bar Date Notice, each creditor, subject to certain limited exceptions,

9 | holding a claim against the Debtor was required to file a proof of claim on or before the

10 | Claims Bar Date.  On June 16, 2017, Boyd filed Claim No. 16 as an unsecured claim in an

11 | undetermined amount.

12 | **E.**    **Summary of Material Facts**

13 |         In 2003, Beitler and the Debtor formed Westcliff Investors, LLC ("Westcliff") to own

14 | and manage a commercial center in Newport Beach, California.  Pursuant to Westcliff's

15 | Operating Agreement (the "Westcliff Operating Agreement"), Beitler and the Debtor were

16 | each vested with a forty-seven and one-half percent (47.5%) interest in this entity, and

17 | they were also designated co-managers.  Boyd, Beitler's sister, held a five percent (5%)

18 | membership interest in Westcliff.  Boyd did not make any capital contributions to Westcliff.

19 |         In Claim No. 16, Boyd alleges as follows:

20 |         Boyd is informed and believes that Bral, among other things, (a) did not
     properly account for capital contributions to Westcliff, (b) did not properly
21 |     account for additional capital contributions to Westcliff, (c) did not accord
     the full complement of Benefits to which members other than Bral were
22 |     entitled under the Westcliff OPA, (d) diverted payments from Westcliff to
     Bral and Bral's affiliates, Venture RE Group ("Venture") and Bral Realty
23 |     Advisors, Inc. ("BRAI"), for the payment of commissions for real estate
     brokerage services and property management services, and (e)
24 |     manipulated the books and records of Westcliff to not properly document
     and disclose capital contributions and percentage of Capital Membership,
25 |     resulting in Bral being credited with Capital Memberships in excess of the
     amounts to which Bral was entitled.
26 |
27 |         In addition, Boyd is informed and believes that Bral, as a manager of
28 |     Westcliff, (a) failed to distribute funds, and allocate other benefits, and (b)

1    instead wrongfully appropriated to himself, whether directly or through
2    Venture or BRAI, funds and benefits of Westcliff that otherwise would have
      been available for payment of distributions to other members.

3    The only document attached to Claim No. 16 is the Westcliff Operating Agreement,
4    which merely confirms the ownership interests stated above.  As the following analysis
5    establishes, Claim No. 16 should be disallowed in its entirety.

6    III.    **ANALYSIS**

7        A.    **The Standard for Allowance of Claims**

8    Pursuant to Federal Rule of Bankruptcy Procedure 3001(f) and section 502(a), a
9    timely filed and properly documented proof of claim is deemed prima facie valid.
10   Bankruptcy Code § 502(b)(1) provides that a claim will not be allowed to the extent that
11   the claim is for "an unenforceable debt against a debtor and property of the debtor, under
12   any agreement or applicable law for a reason other than because such claim is contingent
13   or unmatured . . ."

14   "[T]he burden of initially going forward with the evidence as to the validity and the
15   amount of the claim is that of the objector to that claim.  3 L. King, COLLIER ON
16   BANKRUPTCY § 502.02, at 502-22 (15th ed. 1991).  Once "the objector produces sufficient
17   evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts
18   to the claimant to prove the validity of the claim by a preponderance of the evidence."  In
19   re Consol. Pioneer, 178 B.R. 222, 226 (9th Cir. BAP 1995) (quoting In re Allegheny Int'l,
20   Inc., 954 F.2d 167, 173-74 (3d Cir.1992)).  The ultimate burden of persuasion remains at
21   all times upon the claimant.  Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035,
22   1039 (9th Cir. 2000); In re Holm, 931 F.2d 620, 623 (9th Cir. 1991); In re Gray, 522 B.R.
23   619, 625 (Bankr. D. Idaho 2014) ("If the objector produces evidence sufficient to negate
24   the validity of the claim, the ultimate burden of persuasion remains on the claimant to
25   demonstrate by preponderance of the evidence that the claim deserves to share in the
26   distribution of the debtor's assets."); Spencer v. Pugh (In re Pugh), 157 B.R. 898, 901 (9th
27   Cir. BAP 1993); In re Parrott Broadcasting Ltd. P'ship, 492 B.R. 35, 38 (Bankr. D. Idaho
28   2013); In re Blixeth, 489 B.R. 154 (Bankr. D. Mo. 2013) (once objecting party succeeds in

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  overcoming prima facie effect of procedurally proper proof of claim, burden shifts to

2  claimant to prove validity of its claim, and claimant must satisfy that burden by

3  preponderance of evidence). *See also* Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 244

4  (1939) (stating that the bankruptcy court has the power to shift the circumstances

5  surrounding any claim to see that injustice or unfairness is not done in administering the

6  bankruptcy estate).

7      In this case, the Claim at issue is so vague it is not entitled to the presumption of

8  validity. *See* In re Campbell, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005).  However, even if

9  this presumption was applicable, the Debtor would submit that it is has been overcome by

10  the evidence and legal authorities cited herein.  Accordingly, the Debtor seeks entry of an

11  Order granting the Objection.

12      **B.    The Claim is Too Vague to Satisfy the Standing Requirement**

13      In Claim No. 16, Boyd alleges that Bral failed to account for Westcliff's capital

14  contributions, failed to accord "members" their full benefits under the Westcliff Operating

15  Agreement, and improperly diverted Westcliff's funds to his own entities.  Notably, Boyd

16  fails to state that *her* capital contributions were not accounted for, and she fails to state

17  that *she* was denied any membership benefits.  These allegations fail to satisfy Article III's

18  standing requirement.  See Valley Forge [Christian College v. Americans United for

19  Separation of Church & State, Inc., 454 U.S. 464 at 472, 102 S.Ct. 752, 70 L.Ed.2d 700

20  (1982). To prove standing, a claimant must allege that the claimant will suffer actual or

21  threatened injury due to the alleged illegal conduct of the defendant, the injury must be

22  "fairly traceable" to the challenged actions, and there must be a substantial likelihood that

23  the relief requested will redress or prevent the plaintiff's injury.  Id.  These elements are

24  not satisfied by the Claim.

25      Moreover, Boyd's contention that Bral diverted *Westcliff's funds*, if true, gives rise

26  to a claim in favor of Westcliff, not Boyd.  Accordingly, the same standing deficiency

27  exists.  See PacLink Commc'ns Int'l, Inc. v. Superior Court, 90 Cal. App. 4th 958, 964,

28  109 Cal. Rptr. 2d 436, 440 (2001) ("In this case, the essence of plaintiffs' claim is that the

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   assets of PacLink–1 were fraudulently transferred without any compensation being paid to

2   the LLC.  This constitutes an injury to the company itself.  Because members of the LLC

3   hold no direct ownership interest in the company's assets (Corp. Code, § 17300), the

4   members cannot be directly injured when the company is improperly deprived of those

5   assets.  The injury was essentially a diminution in the value of their membership interest in

6   the LLC occasioned by the loss of the company's assets.  Consequently, any injury to

7   plaintiffs was incidental to the injury suffered by PacLink–1.") (internal citation omitted).

8        For these reasons, the Claim should be disallowed in its entirety as Boyd lacks

9   standing to assert any damage claim against the Debtor.

10       **C.    The Claim Lacks Specificity and is Barred by the Statute of Limitations**

11       In addition, Claim No. 16 fails to specify what commissions or fees were allegedly

12  diverted from Westcliff's coffers and when this occurred.  However, the statute of limitation

13  would have run as to all claims, whether they were based upon a breach of fiduciary duty

14  claim grounded in fraud or otherwise.  *See* Am. Master Lease LLC v. Idanta Partners,

15  Ltd., 225 Cal. App. 4th 1451, 1479, 171 Cal. Rptr. 3d 548, 570 (2014), *as modified* (May

16  27, 2014) ("The statute of limitations for breach of fiduciary duty is three years or four

17  years depending on whether the breach is fraudulent or nonfraudulent,"); Fuller v. First

18  Franklin Financial Corp., 216 Cal. App. 4th 955, 963, 163 Cal. Rptr. 3d 44 (2013)

19  ("[L]imitations period is three years ... for a cause of action for breach of fiduciary duty

20  where the gravamen of the claim is deceit, rather than the catchall four-year limitations

21  period that would otherwise apply"); William L. Lyon & Associates, Inc. v. Superior

22  Court, 204 Cal.App.4th 1294, 1312, 139 Cal. Rptr. 3d 670 (2012) ("Breach of fiduciary

23  duty not amounting to fraud or constructive fraud is subject to the four-year 'catch-all

24  statute' of Code of Civil Procedure section 343").  Likewise, if the Claim is based upon a

25  breach of contract contention, and the operative writing is the Westcliff Operating

26  Agreement (Westcliff was formed in 2003), such claims would also be barred.  *See*

27  Lennar Mare Island, LLC v. Steadfast Ins. Co., 139 F. Supp. 3d 1141, 1165 (E.D. Cal.

28  2015) ("The statute of limitations for a reformation claim is three years. Cal. Civ. Proc.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000   Fax 714-966-1002

1  Code § 338(d)"); N. Star Reins. Corp. v. Super. Ct., 10 Cal. App. 4th 1815, 1818, 13 Cal.

2  Rptr. 2d 775 (1992); Saterbak v. Nat'l Default Servicing Corp., 2016 WL 4430922, at 8

3  (S.D. Cal. Aug. 22, 2016) (Four-year statute of limitations in Section 343 of the California

4  Code of Civil Procedure requires applies to actions to set aside or avoid a contract);

5  Zakaessian v. Zakaessian, 70 Cal. App. 2d 721, 725 (1945).  The Claim is silent on when

6  such alleged breaches occurred, but any such breaches would be barred by the statute of

7  limitations and the Claim should be disallowed on these grounds.

8        **D.**    **The Claim is Barred by the Doctrine of Laches**

9        Claim No. 16 should also be barred by the doctrine of laches.  The defense of

10  laches is derived from the maxim that "[t]he law helps the vigilant, before those who sleep

11  on their rights."  Cal. Civ. Code § 3527.  Stated otherwise, "[e]quity frowns upon stale

12  demands [and] declines to aid those who have slept on their rights."  Latta v. Western Inv.

13  Co., 173 F.2d 99, 107 (1949).  A defendant must demonstrate three elements to

14  successfully assert a laches defense: (1) delay in asserting a right or a claim; (2) the delay

15  was not reasonable or excusable; and (3) the prejudice resulting from the delay.  Magic

16  Kitchen LLC v. Good Things Int'l Ltd., 153 Cal. App. 4th 1144, 1157, 63 Cal. Rptr. 3d 713,

17  723–24 (2007); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 997 (9th Cir. 2006).

18        The first element of laches is delay, as measured from the date the claimant knew

19  or should have known of the allegedly wrongful conduct.  Magic Kitchen, 153 Cal. App.

20  4th 1144, 1157, citing Danjaq LLC v. Sony Corp., 263 F.3d 942, 952 (9th Cir.2001).  Since

21  Boyd's brother, Beitler, was the co-manager of Westcliff, and since Beitler's accountant

22  prepared Westcliff's tax returns for over five years, Boyd surely knew or should have

23  known that commissions and management fees were being paid to the Debtor or his

24  entities, each and every year.  Moreover, since Boyd received a K-1 every year listing her

25  ownership interest, she clearly knew how her contributions were being accounted for by

26  the Debtor.  Given this knowledge, the delay in this case in bringing up such issues was

27  clearly not reasonable.  Failing to file an action within one year of discovering this course

28  of conduct might be "reasonable," but not after two or more years.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1     The prejudice element is also satisfied. Had Boyd raised her claim in a timely

2 manner, the Debtor, who believed, and continues to believe, that all of his actions were

3 authorized and proper, could have confronted these allegations years ago. These

4 disputes would then have been resolved and the purported claims against the Debtor,

5 assuming they were validated, would have been substantially lower.

6     Claim No. 16 therefore is properly disallowed under the doctrine of laches.

7     **E.**    **If Not Disallowed, the Claim Should Be Determined on its Merits and**

8         **Boyd's Allegations are False**

9     Claim No. 16 is based solely on Boyd's allegations, without any consideration of

10 the Debtor's defenses thereto. To the extent not disallowed for the reasons set forth

11 hereinabove, Claim No. 16, should be determined by this Court in accordance with proof.

12     As set forth in the Bral Declaration filed concurrently herewith, and as discussed

13 herein, the allegations that form the basis of Claim No. 16 are false.

14     In this regard, Beitler (Boyd's brother) and the Debtor own a 47.5% interest in the

15 entity and Boyd owns a 5% interest. The Westcliff Operating Agreement accurately

16 reflects the ownership interests of the members. Notably, Boyd never even made a

17 contribution for her interest in Westcliff.

18     Westcliff was co-managed by Beitler and the Debtor and Beitler and the Debtor

19 were the LLCs' tax partners. As co-manager, Beitler was jointly responsible for managing

20 the affairs of Westcliff, including the retention and maintenance of its books and records.

21 Indeed, Beitler was initially responsible for setting up the accounting systems of Westcliff,

22 which is still in use. Beitler's personal accountant, Robert Sargent, prepared Westcliff's

23 tax returns for approximately ten years, including the K-1 forms that were issued each

24 year to the members which accurately reflected the membership interests and capital

25 accounts. At no time did either Boyd (or Beitler) contact the Debtor to advise him that

26 they considered the tax filings (prepared by Beitler's accountant) to be in error.

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1    The vague allegations made by Boyd (and Beitler) in their Claims regarding the

2  Debtor's alleged failure to properly account for the membership interests or capital

3  contributions and are false.

4    Moreover, there is no support for the vague allegations that the Debtor diverted

5  funds from Westcliff (or from the other entitles defined in the Bral Declaration as the

6  "SPEs").[3]  To the extent that such allegations relate to management fees and

7  commissions paid to Venture RE Group and/or Bral Realty Advisors, Inc. (defined in the

8  Bral Declaration as "Service Payments"), such issues are discussed in detail in the Bral

9  Declaration and the Debtor's concurrently filed objection to Claims No. 9 and 11, filed by

10  Beitler and Beitler & Associates, Inc., dba Beitler Commercial Realty Services ("BCRS").

11  The Debtor's position with respect to the propriety of such Service Payments set forth in

12  such objections to Claims No. 9 and 11 are incorporated as though fully set forth herein.

13    It bears repeating that the SPEs were all formed prior to 2007.  Accordingly, the

14  vague allegations by Boyd (and Beitler) encompass a history of more than ten years.

15    Since Boyd (and Beitler) have failed to specify what contributions, ownership

16  interests and payments over the past decade were allegedly improper or unaccounted for,

17  the Debtor cannot specifically address these allegations at this juncture.  However, as set

18  forth in the Bral Declaration, to the best of the Debtor's knowledge, all capital contributions

19  to the SPEs were in fact properly accounted for and that the ownership interests specified

20  annually in the K-1 Forms that were sent to Boyd and Beitler (and necessarily approved

21  by Beitler as a co-manager of all of the SPEs), were accurate, and the Service Payments

22  were in fact proper and authorized, and Beitler was always aware that these payments

23  were being made.

24    If and when Boyd (or Beitler) specify what contributions they allege were not

25  accounted for, what interest percentages are in error, or what payments were improper,

26

27    [3] The SPEs are Westcliff, Mission Medical Investors, LLC ("Mission"), Ocean View Medical Investors,
LLC, Harbor Medical Investors, LLC, Javaher Investors, LLC and Eyestreet Medical Investors, LLC.

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000 · Fax 714-866-1002

1  the Debtor will review the applicable books and records and address and rebut these

2  contentions in more detail.  The Debtor has every confidence that these records will rebut

3  these allegations.

4  **IV.    RESERVATION OF RIGHTS**

5       This Objection is limited to the grounds stated herein.  Accordingly, it is without

6  prejudice to the right of the Debtor to object to Claim No. 16 on any other ground

7  whatsoever, and the Debtor expressly reserves all further substantive and/or procedural

8  objections he may have.

9  **V.    CONCLUSION**

10       The Debtor objects to Claim No. 16 for the reasons stated herein, and the Debtor

11  moves this Court for an order (i) disallowing Claim No. 16 in its entirety; or alternatively,

12  (ii) determining the amount of such unsecured claim on its merits subject to proof in these

13  proceedings; and (iii) for such other and further relief as may be just and proper under the

14  circumstances of this case.

15      Respectfully submitted,

16  Dated: October 13, 2017    LOBEL WEILAND GOLDEN FRIEDMAN LLP

17

18      By:  */s/ Beth E. Gaschen*

19      WILLIAM N. LOBEL
ALAN J. FRIEDMAN

20      BETH E. GASCHEN
Attorneys for Debtor and

21      Debtor-in-Possession

22

23

24

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1136093.1    12    OBJECTION

# EXHIBIT "1"

Fill in this information to identify the case:

Debtor 1   JOHN JEAN BRAL

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Central District of California

Case number   8:17-BK-10706-SC

Official Form 410

# Proof of Claim

4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Betsy Boyd
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Betsy Boyd
Name

2 Park Plaza, Suite 100
Number      Street

Irvine          CA          92614
City              State        ZIP Code

Contact phone (949) 794-7216

Contact email bboyd@ocbc.org

Where should payments to the creditor be sent? (if different)

Betsy Boyd
Name

2 Park Plaza, Suite 100
Number      Street

Irvine          CA          92614
City              State        ZIP Code

Contact phone (949) 794-7216

Contact email bboyd@ocbc.org

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

EXHIBIT "1"
Page 14

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|---------|

| 6. | Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |
|----|----|----|

| 7. | How much is the claim? | $ _To be determined_____ . Does this amount include interest or other charges?<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|----|----|----|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>_Breach of Obligations of Debtor with respect to Westcliff Investors, LLC_ |
|----|----|----|

| 9. | Is all or part of the claim secured? | ☑ No<br>☐ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a _Mortgage Proof of Claim Attachment_ (Official Form 410-A) with this _Proof of Claim._<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:                              $_____<br>Amount of the claim that is secured:       $_____<br><br>Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:     $_____<br><br>Annual Interest Rate (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |
|----|----|----|

| 10. | Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.     $_____ |
|----|----|----|

| 11. | Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |
|----|----|----|

Official Form 410                                Proof of Claim                                page 2

EXHIBIT "1"
Page 15

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | **Check the appropriate box:** |
|---|---|
| | ☑ I am the creditor. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☐ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/15/2017
                   MM / DD / YYYY

*Betsy Boyd*
Signature

Print the name of the person who is completing and signing this claim:

Name    **Betsy Boyd**
        First name      Middle name      Last name

Title   _____

Company _____
        Identify the corporate servicer as the company if the authorized agent is a servicer.

Address **2 Park Plaza, Suite 100**
        Number      Street

        **Irvine**                      **CA**     **92614**
        City                            State      ZIP Code

Contact phone  **(949) 794-7216**        Email  bboyd@ocbc.org

---

EXHIBIT "1"
Page 16

## ATTACHMENT TO PROOF OF CLAIM OF BETSY BOYD BASED ON OBLIGATIONS OF JOHN BRAL WITH RESPECT TO WESTCLIFF MEDICAL INVESTORS, LLC

Betsy Boyd ("Boyd" or "Claimant") holds a 5% membership interest in Westcliff Medical Investors, LLC. John Bral ("Bral") purports to hold a 47.5% membership interest in Westcliff, with Barry Beitler ("Beitler") holding the remaining 47.5% membership interest in Westcliff. A true and correct copy of Westcliff's written operating agreement ("OPA") is attached hereto as Exhibit "1".

### Bral's Control of the Records Pertaining to Membership Interests, Capital Membership and Benefits

Except for the initial period, Bral controlled the record keeping, the day to day bookkeeping of financial transactions and banking of Westcliff, and among other things, recorded the capital contributions made by each member and maintained the capital accounts for each member. Thus, Bral was responsible for maintaining the records to determine each member's percentage of Capital Membership interest in Westcliff, and the corresponding Benefits to which Boyd, Beitler, and Bral were entitled based on their respective percentage interests of Capital Membership.

### Boyd's Claims

Boyd is informed and believes that Bral, among other things, (a) did not properly account for  capital contributions to Westcliff, (b) did not properly account for additional capital contributions to Westcliff, (c) did not accord the full complement of Benefits to which members other than Bral were entitled under the Westcliff OPA, (d) diverted payments from Westcliff to Bral and Bral's affiliates, Venture RE Group ("Venture") and Bral Realty Advisors, Inc. ("BRAI"), for the payment of commissions for real estate brokerage services and property management services, and (e) manipulated the books and records of Westcliff to not properly document and disclose capital contributions and percentage of Capital Membership, resulting in Bral being credited with Capital Memberships in excess of the amounts to which Bral was entitled.

In addition, Boyd is informed and believes that Bral, as a manager of Westcliff, (a) failed to distribute funds, and allocate other benefits, and (b) instead wrongfully appropriated to himself, whether directly or through Venture or BRAI, funds and benefits of Westcliff that otherwise would have been available for payment of distributions to other members.

Since, as discussed above, Bral controls Westcliff's books and records, Boyd cannot at this time state the amount of her claim. Boyd reserves the right to amend this proof of claim after she has received all of the information necessary to calculate the precise amount of her claim.

### Reservation of Rights

Claimant reserves the right to (i) amend, update and/or supplement this Proof of Claim at any time and in any respect, (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents or other liability or indebtedness of the Debtor to

Claimant (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507.

In addition to the foregoing, Claimant reserves all rights with respect to (a) any indebtedness owed to Claimant by any non-debtor affiliate or other entity related to the Debtor, and (b) any other amounts that may be owing to Claimant in respect of interest, fees, indemnities, costs and expenses to the extent permitted by applicable law.

Nothing contained in this Proof of Claim shall be construed as limiting Claimants rights, remedies and interests.

The filing of this proof of claim is not: (i) a waiver or release of Claimant's rights against any person, entity or property; (ii) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim; (iii) an election of remedy; or (iv) a waiver of any past, present or future defaults or events of default. Claimant specifically preserves all of Claimant's procedural and substantive defenses and rights with respect to any claim that may be asserted against Claimant by the Debtor or any of its debtor or non-debtor affiliates, or by any trustee for this estate.

**EXHIBIT 1**

OPERATING AGREEMENT
OF
WESTCLIFF INVESTORS, LLC,
a California Limited Liability Company


THIS OPERATING AGREEMENT (this "Agreement"), is made as of February 20, 2003, by and among BARRY BEITLER ("Beitler"), an individual, and JOHN BRAL ("Bral"), an individual and Betsy Boyd ("Boyd"), an individual, (collectively referred to as the "Members" or individually as a "Member"), with reference to the following facts:

A. Articles of Organization (the "Articles") for WESTCLIFF INVESTORS, LLC (the "Company"), a limited liability company organized under the laws of the State of California, were filed with the California Secretary of State on February 20, 2003 as Document No. 2003039 / 0037

B. The Members desire to adopt and approve an operating agreement for the Company under the Beverly-Killea Limited Liability Company Act (the "Act").

C. The above individuals and only these individuals, as of the formation of this Operating Agreement shall serve to form Westcliff Investors, LLC.

NOW, THEREFORE, the Members by this Agreement set forth the operating agreement for the Company upon the terms and subject to the conditions of this Agreement.


ARTICLE I - ORGANIZATIONAL MATTERS


1.1  Name. The name of the Company shall be "WESTCLIFF INVESTORS, LLC." The Company may conduct business under that name or any other name approved by the Members.

1.2  Term. The term of the Company commenced as of the date of the filing of the Articles of Organization and unless dissolved as set forth in Article 9.1, shall terminate on December 31, 2025 or as soon as agreed by the majority of the parties, subject to the Major Decisions provisions herein.

1.3  Office and Agent. The Company shall continuously maintain an office and registered agent in the State of California as required by the Act. The principal office of the

BB ly WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

1

EXHIBIT "1"
Page 20

Company shall be at 825 So. Barrington Avenue, Los Angeles, California 90049, or such
location as the Members may determine. The registered agent shall by as stated in the Articles or
as otherwise determined by the Members.

       1.4 <u>Business of the Company</u>. Notwithstanding the purpose of the Company
which is described in the Articles, the Company shall not engage in any business other than the
following without the consent of all of the Members:

          (i)     the business of acquiring, owning, developing, operating,
managing and selling an office/medical building at 1901 Westcliff Drive,
Newport Beach, California and;

          (ii)    such other activities directly related to the foregoing business as
may be necessary or advisable in the reasonable opinion of the Members to
further such business.

## ARTICLE II - CAPITAL CONTRIBUTIONS

      2.1 <u>Capital Contributions</u>. Each Member shall make a cash contribution to the capital of
the Company in the amount shown opposite the Member's name on Exhibit "A" attached hereto,
other than for Betsy Boyd who shall have no initial or additional capital contribution obligations.
Except as expressly provided herein, each Member shall be required to make any additional
contributions to the capital of the Company, where necessary, other than for Betsy Boyd. Except
as provided in section 2.6, below, additional contributions to the capital of the Company shall be
made only with the unanimous written consent of the Members and shall be made by all
Members in proportion to the Membership Interests of the Members, where necessary, other than
for Betsy Boyd. In the event that a Member makes an additional capital contribution in excess of
his proportionate share as so determined, such excess of his proportionate share as so determined,
such excess portion shall be entitled to a preferred return of ten (10%) per annum, accruing and
compounding quarterly, from the date of such excess contribution until such excess amount is
distributed to such Member. Except as provided in this Agreement, no Member may withdraw
its capital contribution. A Member shall not be personally liable to any other Member for
repayment of any capital contribution made to the Company by such other Member.

      2.2 <u>Capital Accounts</u>.The Company shall establish an individual capital account (the
"Capital Account") for each Member. The Company shall determine and maintain each Capital
Account in accordance with Treasury Regulations Section 1.704-1(b) (2) (iv). Upon valid
transfer of a Member's interest in the Company (the "Membership Interest") in accordance with
Article VI, such Member's Capital Account shall carry over to the new owner.

      2.3 <u>No Interest</u>.   The Company shall not pay any interest on initial capital contributions.

BB bv WESTCLIFFINVESTORS-OPERATING AGREEMENT-final



However, any additional capital contributions, as provided herein, shall be entitled to a preferred return equal to ten percent (10%) per annum, accruing and compounding quarterly.

2.4 <u>Loans to The Company</u>. Any monies loaned to the LLC by Barry Beitler or John Bral are collectively referred to as the "Member Loans.") The Member Loans shall not bear interest and shall only be repaid through the cash flow of the Property or the sale or refinance of the Property. Any and all initial monies necessary for the purchase of the Property, classified as loans to the Company, shall be repaid first to Bral and Beitler in full prior to any distributions of sale or refinance proceeds to Betsy Boyd for her interest in said Property i.e. by way of example, if Bral and Beitler each put up $200,000 into the Property and the Property sells for a $500,000 profit, Bral and Beitler are to receive 100% of their contribution prior to any calculation for distribution to any Member, including Boyd.

2.5. <u>Additional Required Capital Contributions</u>.  Prior to commencement of construction of any addition to the Project by the Company or should any capital call be necessary amongst the Members, the Members shall make additional capital contributions to the Company.  Any additional capital contributions shall bear interest, as provided in Section 2.3 herein, and shall be made in the following proportions:

| | |
|---|---|
| Beitler | 50.0% |
| Bral | <u>50.0%</u> |
| Total | 100.0% |

Any additional capital contributions shall be made by the above Members who shall receive all additional contributions in full from future sale or refinance prior to any participation by Boyd in distributions as further outlined in 2.4 above.

## ARTICLE III - MEMBERS

3.1  <u>Admission of Additional Members</u>.  Additional Members may be admitted with the approval of all Members.  Additional Members will participate in "Net Profits," "Net Losses" (as such terms are defined in Paragraph 5.1), and distributions of the Company on such terms as are determined by the Members.  Exhibit "A" shall by amended upon the admission of an additional Member to set forth such Member's name and capital contribution.

3.2  <u>Withdrawal or Resignations</u>. Any Member may withdraw or resign as a Member at any time upon one hundred twenty (120) days prior written notice to the Company, without prejudice to the rights, if any, of the Company or the other Members under any contract to which the withdrawing Member is a party.  In the event of such withdrawal, such Member's Membership Interest shall be terminated, such Member shall thereafter only have the rights of a

transferee as described in Paragraph 6.3 and such Membership Interest shall be subject to purchase and sale as provided in Paragraph 7.2. (No other Member may withdraw, retire or resign from Company.)

3.3 <u>Payments to Members</u>. Except as specified in this Agreement or pursuant to a transaction permitted by Paragraph 4.6, no Member or person or entity controlled by, controlling or under common control with the Member (each such person or entity is defined as an "Affiliate"), is entitled to remuneration for services rendered or goods provided to the Company, except as specifically provided by the Company. However, the Company shall reimburse the Members and their Affiliates for organizational expenses (including, without limitation, legal and accounting fees and costs) incurred to form the Company, prepare the Articles and this Agreement and, as approved by the Members, for the actual cost of goods and materials used by the Company. At all times, whenever a vacancy in the Property becomes available, Beitler Commercial Realty Services shall be hired for the leasing at market commission rates. Bral and Beitler agree to split equally (50%/50%) any and all commissions for leasing paid if any. The same shall be true of any commission on the future sale of the Property. It is expressly agreed that payment of any real estate commission owing by the Company to Beitler Commercial Real Estate shall be paid if Company has sufficient cash flow to pay such commission without preventing the Company from meeting its other obligations.

## ARTICLE IV - MANAGEMENT AND CONTROL OF THE COMPANY

4.1 <u>Management and Powers</u>. In entering into this Agreement, the intent of each Member is to engage actively in the management of the Company, however, Barry Beitler shall be designated as the Company's Managing Member. Accordingly, unless otherwise limited by the Articles or this Agreement, Barry Beitler, shall have full, complete and exclusive authority, power, and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs.

4.2 <u>Limitations on Power of Members</u>. No Member shall have authority to cause the Company to engage in the following transactions without first obtaining the written approval of both John Bral or Barry Beitler:

(A) The sale, exchange or other disposition of all, or substantially all, of the Company's assets occurring as part of a single transaction or plan, or in multiple transactions over a twelve (12) month period, except in the orderly liquidation and winding up of the business of the Company upon its duly authorized dissolution.

EXHIBIT "1"
Page 23

(B) The refinance or financing of any kind or any transactions which may encumber the title of the Property.

(C) The merger of the Company with another limited liability company or corporation, general partnership, limited partnership or other entity (except that any act which would cause a Member to incur personal liability for the obligations of the Company or its successor shall also require the consent of such Member).

(D) An alteration of the authorized businesses of the Company as set forth in Paragraph 1.4.

(E) Any act which would make it impossible to carry on the ordinary business of the Company.

(F) The confession of a judgment against the Company.

(G) Any other transaction described in this Agreement as requiring the approval, consent or vote of the Members.

4.3  **Member Approval.**   No annual or regular meetings of the Members are required to be held.  However, if such meetings are held, such meetings shall be noticed as provided in this paragraph and shall be held and conducted pursuant to the Act.  In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Act.  Unless otherwise provided in this Agreement, approval of the Members shall mean the approval of Members who hold at least seventy-five percent (75%) of the Membership Interests.  All notices of meetings will be in writing and shall be deemed duly given: (i) if it is sent by telecopier to the Members at the telephone number provided by each Member for such purpose, in which case notice will be deemed to take place upon receipt; or (ii) if (and then three [3] business days after) it is sent by registered or certified mail, return receipt requested, postage prepaid and addressed to the intended recipient at the address set forth on Exhibit "A" to this Operating Agreement (as amended from time to time).  No meeting shall be held by the Members without (10) business days prior to notice, unless otherwise agreed in writing by all the Members.

4.4  **Devotion of Time.**   Each Member shall devote whatever time or effort as he or she deems appropriate for the furtherance of the Company's business.

4.5  **Competing Activities.**   The Members and their Affiliates may engage or invest in any activity, including without limitation those that might be in direct or indirect competition with the Company.  Neither the Company nor any Member shall have any right in or to such other activities or to the income or proceeds derived therefrom.  No Member shall be obligated to

BB l/v WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

5

present any investment opportunity to the Company, even if the opportunity is of the character that, if presented to the Company could be taken by the Company. Each Member shall have the right to hold any investment opportunity for its own account of the recommend such opportunity to persons other than the Company. The Members acknowledge that certain Members and their Affiliates own and/or manage other businesses, including businesses that may compete with the company and for the Members' time. Each Member hereby waives any and all rights and claims which he or she may otherwise have against the other Members and their Affiliates as a result of any such activities.

4.6 <u>Transactions between the Company and the Members</u>.  Notwithstanding that it may constitute a conflict of interest, the Members and their Affiliates may engage in any transaction with the Company so long as such transaction is not expressly prohibited by this Agreement and so long as the terms and conditions of such transaction, or an overall basis, are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from persons capable of similarly performing them or if Members holding a majority of the Membership Interests held by the Members having no interest in such transaction (other than their interests as Members) approve the transaction in writing.

## ARTICLE V - ALLOCATIONS OF NET PROFITS AND NET LOSSES AND DISTRIBUTIONS

5.1 <u>Definitions</u>. When used in this Agreement, the following terms shall have the meanings set forth below:

"<u>Code</u>" shall mean the Internal Revenue Code of 1986, as amended from time to time, the provisions of succeeding law, and to the extent applicable, the Treasury Regulations.

"<u>Company Minimum Gain</u>" shall have the meaning given to the term "Partner Nonrecourse Debt" in Treasury Regulations Section 1.704-2 (d).

"<u>Member Nonrecourse Debt</u>" shall have the meaning given to the term "Partner Nonrecourse Debt" in Treasury Regulations Section 1.704-2 (b) (4).

"<u>Member Nonrecourse Deductions</u>" shall mean items or Company loss, deduction, or Code Section 705 (a) (2) (B) expenditures which are attributable to Member Nonrecourse Debt.

"<u>Net Profits</u>" and "<u>Net Losses</u>" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with the method of accounting at the close

of each fiscal year employed on the Company's information tax return filed for Federal income tax purposes.

"Nonrecourse Liability" shall have the meaning set forth in Treasury Regulation that have been issued by the U.S. Department of Treasury pursuant to its authority under the Code, and any successor regulations.

5.2 Allocations of Net Profit and Net Loss (subject to Paragraphs 2.4 and 2.5 herein which shall prevail).

(a) Net Loss. Net Loss shall be allocated among the Members in proportion to their respective Membership Interests as set forth in Exhibit "A".

(b) Net Profit. Net Profit shall be allocated among the Members in the following manner:

(i) First, in the event of sale or refinance, to repay 100% of all capital contributions or additional capital contributions made by any Member;

(ii) Second, to the Members to the extent of the distributions made pursuant to paragraph 5.5(a), below;

(iii) Thereafter, among the Members in proportion to their respective Membership Interests as set forth in Exhibit "A."

5.3 Special Allocations. Notwithstanding Paragraph 5.2:

(a) Minimum Gain Chargeback. If there is a net decrease in Company Minimum Gain during any fiscal year, each Member shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in Company Minimum Gain that is allocable to the disposition of Company property subject to a Nonrecourse Liability net decrease shall be determined in accordance with Treasury Regulations Section 1.704-2 (g) (2). Allocations pursuant to this Paragraph 5.3 (a) shall be made in proportion to the amounts required to be allocated to each Member under this Paragraph 5.3 (a). The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(f). This Paragraph 5.3 (a) is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations Section 1.704-2 (f) and shall be interpreted consistently therewith.

(b) Chargeback of Minimum Gain Attributable to Member Nonrecourse Debt. If there is a net decrease in Company Minimum Gain attributable to a Member Nonrecourse Debt, during

any fiscal year, each member who has a share of the Company Minimum Gain attributable to such Member Nonrecourse (which share shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (5)) shall be specifically allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to that portion of such Member's share of the net decrease in Company Minimum Gain attributable to such Member Nonrecourse Debt that is allocable to the disposition of company property subject to such Member Nonrecourse Debt (which share of such net decrease shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (5)).  Allocations pursuant to this Paragraph 5.3 (b) shall be made in proportion to the amounts required to be allocated to each Member under this Paragraph 5.3 (b). The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (4).  This Paragraph 5.3 (b) is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations Section 1.704-2 (i) (4) and shall be interpreted consistently therewith.

(c) Nonrecourse Deductions. Any nonrecourse deductions (as defined in Treasury Regulations Section 1.704-2 (b) (1)) for any fiscal year or other period shall be specially allocated to the Members in proportion to their Membership Interests.

(d) Member Nonrecourse Deductions. Those items of expenditures which are attributable to Member Nonrecourse Debt for any fiscal year or other period shall be specifically allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such items are attributable in accordance with Treasury Regulations Section 1.704-2 (i).

(e) Deficit Capital Account Restoration.  In the event the Company is "liquidated" within the meaning of Treasury Regulations Section 1.704-2 (b) (ii) (g), a Member whose Capital Account has a deficit balance (after giving effect to all contributions, distributions, and allocations for all Fiscal Years, including the Fiscal Year during which such liquidation occurs), such Member shall contribute to the capital of the Company the amount necessary to restore such deficit balance to 1.704-2 (b) (2) (ii) (b) (3).

5.4 Code Section 704(c) Allocations.  Notwithstanding any other provision in this Article V, in accordance with Code Section 704(c) and the Treasury Regulations promulgated thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for tax purposes, be allocated amount the Members so as to take account of any variation between the adjusted basis of such property to the Company for Federal income tax purposes and its fair market value on the date of contribution.  Allocations pursuant to this Paragraph 5.4 are solely for purposes of Federal, state and local taxes.  As such, they shall not affect Capital Account or share of profits, losses, or other items of distributions pursuant to any provision of this Agreement.

5.5 Distribution of Assets by the Company.  Subject to applicable law and any limitations contained elsewhere in this Agreement, the Members holding at least

EXHIBIT "1"
Page 27

seventy-five percent (75%) of the Membership Interests may elect from time to time to cause the Company to make distributions. Any payment by the Company with respect to Member Loans shall be credited first to interest then accrued, and the remainder, if any, to principal; and interest shall cease to accrue upon the principal so credited as of the date that such payment is actually made.

(a) Distribution from the sale or refinance of the Project shall be made in the following order and priority:

(i) First, one hundred percent (100%) to Beitler and Bral in an amount sufficient to repay Beitler and Bral their unreturned capital contributions; until each Member has recovered the amount of its initial and additional capital contributions; and

(ii) Thereafter, to the Members in proportion to their Membership Interests.

(b) Distributions from the cash flow resulting from the operation of the Project shall be made in the following order and priority:

(i) First, one hundred percent (100%) to Beitler and Bral in an amount sufficient to provide to each of the Members the priority return on such Member's additional capital contributions to the company if so designated by the Co-Managing Members;

(ii) Thereafter, to the Members in proportion to their Membership Interests;

## Article VI - TRANSFER AND ASSIGNMENT OF INTERESTS

6.1 Transfer and Assignment of Interests.    No Member shall be entitled to transfer, assign, convey, sell, encumber or in any way alienate all or any part of its Membership Interest (collectively, "transfer") except with the prior approval of all Members, which approval may be given or withheld in the sole discretion of the Members, other than for each Member's ability to put his or her respective interest in a Trust or other estate planning mechanism which shall not be considered a Transfer hereunder.

6.2 Transfers in Violation of this Agreement and Transfers of Partial Membership Interests.    Upon a transfer in violation of this Article VI, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member. Such transferee shall only be entitled to receive the share of the Company's Net Profits, Net Losses and distributions of the Company's assets to which the transferor would otherwise be entitled.  Notwithstanding the immediately preceding sentences, if, in the determination of the remaining Members, a transfer in violation of this Article VI would cause the termination of the Company under the Code, in the sole discretion of the remaining Members, the transfer shall be null and void.

BB w/ WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

9



EXHIBIT "1"
Page 28

6.3 <u>Transfers in Violation of this Agreement and Transfers of Partial Membership Interests.</u>  Upon a transfer in violation of this Article VI, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member. Such transferee shall only be entitled to receive the share of the Company's Net Profits, Net Losses and distributions of the Company's assets to which the transferor would otherwise be entitled.  Notwithstanding the immediately preceding sentences, if, in the determination of the remaining Members, a transfer in violation of this Article VI would cause the termination of the Company under the Code, in the sole discretion of the remaining Members, the transfer shall be null and void.

ARTICLE VII -   CONSEQUENCES OF DISSOLUTION EVENTS
AND TERMINATION OF MEMBERSHIP INTEREST

7.1 <u>Dissolution Event</u>  Upon the occurrence of the death, withdrawal, resignation, retirement, insanity, bankruptcy or dissolution of any Member (the "Dissolution Event"), the Company shall dissolve unless all of the remaining Members (the "Remaining Members") consent within ninety (90) days of the Dissolution Event to the continuation of the business of the Company.  If the Remaining Members so consent, the Company and/or the Remaining Members shall have the right to purchase and, if such right is exercised, the Member (or its legal representative) whose actions or conduct resulted in the Dissolution Event (the "Former Member") shall sell, the Former Member's Membership Interest (the "Former Member's Interest") as provided in this Article VII.

7.2 <u>Withdrawal.</u>  Notwithstanding Paragraph 7.1, upon the withdrawal by a Member in accordance with Paragraph 3.2 such Member shall be treated as a Former Member, and, unless the Company dissolves as a result of such withdrawal, the Company and/or the Remaining Members shall have the right to purchase and, if such right is exercised, the Former Member shall sell, the Former Member's Interest as provided in this Article VII.

7.3 <u>Purchase Price.</u>  The purchase price for the Former Member's Interest shall be the fair market value of the Former Member's Interest as determined by an independent appraiser jointly selected by the Former Member and Remaining Members holding a majority of the remaining Membership Interests.  The Company and the Former Member shall each pay one-half (1/2) if the cost of the appraisal.  Notwithstanding the foregoing, if the Dissolution Event results from a breach of this Agreement by the Former Member, the purchase price shall be reduced by an amount equal to the damages suffered by the Company or the Remaining Members as a result of such breach.

7.4 <u>Notice of Intent to Purchase.</u>  Within thirty (30) days after the fair market value of the Former Member's Interest has been determined in accordance with Paragraph 7.3, each Remaining Member shall notify the Members in writing of its desire to purchase a portion of the

BB lw WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

10

Former Member's Interest. The failure of any Remaining Member to submit a notice within the applicable period shall constitute an election on the part of the Member not to purchase any of the Former Member's Interest in the same proportion that the Membership Interest of the Remaining Member bears to the aggregate of the Membership Interests of all or the Remaining Members electing to purchase the Former Member's Interest.

7.5 Election to Purchase Less Than All of the Former Member's Interest. If any Remaining Member elects to purchase none or less than all of its pro rata share of the Former Member's Interest, then the Remaining Members can elect to purchase more than their pro rata share. If the Remaining Member fail to purchase the entire interest of the Former Member, the Company may purchase any remaining share of the Former Member's Interest.

7.6 Payment of Purchase Price. The Company or the Remaining Members, as the case may be, shall pay at the closing one-fifth (1/5) of the purchase price and the balance of the purchase price shall be paid in four (4) equal annual principal installments, plus accrued interest, and be payable each year on the anniversary date of the closing. The unpaid principal balance shall accrue interest at the current applicable Federal rate as provided in the Code for the month in which the initial payment is made, but the Company and the Remaining Members shall have the right to prepay in full or in part at any time without penalty. The obligation of each purchasing Remaining Member, and the Company, as applicable, to pay its portion of the balance due shall be evidenced by a separate promissory note executed by the respective purchasing Remaining Member or the Company, as applicable. Each such promissory note shall be in an original principal amount equal to the portion owed by the respective purchasing Remaining Member or the Company, as applicable. The promissory note executed by each purchasing Remaining Member shall be secured by a pledge of that portion of the Former Member's Interest purchased by such Remaining Member.

7.7 Closing of Purchase of Former Member's Interest. The closing for the sale of a Former Member's Interest pursuant to this Article VII shall be held at 10:00 A.M. at the principal office of Company no later than sixty (60) days after the determination of the purchase price, except that if the closing date falls on a Saturday, Sunday, or California legal holiday, then the closing shall be held on the next succeeding business day. At the closing, the Former Member shall deliver to the Company or the Remaining Members an instrument of transfer (containing warranties of title and no encumbrances) conveying the Former Member's Interest. The Former Member, the Company and the Remaining Members shall do all things and execute and deliver all papers as may be reasonably necessary fully to consummate such sale and purchase in accordance with the terms and provisions of this Agreement.

ARTICLE VIII - ACCOUNTING, RECORDS, REPORTING BY MEMBERS

8.1 Books and Records. The books and records of the Company shall be kept in accordance with the accounting methods followed for Federal income tax purposes. The Company shall maintain at its principal office in California all of the following:

BB ly WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

11

EXHIBIT "1"
Page 30

(a)  A current list of the full name and last known business or
residence address of each Member set forth in alphabetical order,
together with the capital contributions, capital account and
Membership Interest of each Member;

(b)  A copy of the Articles and any and all amendments thereto
together with executed copies of any powers of attorney pursuant
to which the Articles or any amendments thereto have been executed;

(c)  Copies of the Company's Federal, state, and local income tax or
information returns and reports, if any, for the six (6) most recent taxable
years;

(d)  A copy of this Agreement and any and all amendments thereto
together with executed copies of any powers of attorney pursuant to
which this Agreement or any amendments thereto have been executed;

(e)  Copies of the financial statements of the Company, if any, for the
six (6) most recent fiscal years; and

(f)  The Company's books and records as they relate to the internal affairs of the
Company for at least the current and past four (4) fiscal years.

8.2 <u>Reports</u>.    The Company shall cause to be filed, in accordance with the Act,
all reports and documents required to be filed with any governmental agency.  The Company
shall cause to be prepare at least annually information concerning the Company's operations
necessary for the completion of the Members' Federal and state income tax returns.  The
Company shall send or cause to be sent to each Member within ninety (90) days after the end of
each taxable year: (i) such information as is necessary to complete the Members' Federal and
state income tax or information returns and (ii) a copy of the Company's Federal, state, and local
income tax or information returns for the year.

8.3 <u>Bank Accounts</u>.  The Members shall maintain the funds of the Company in one    or
more separate bank accounts in the name of the Company, and shall not permit the funds of the
Company to be commingled in any fashion with the funds of any other person.  Any Member,
acting alone, is authorized to endorse checks, drafts, and other evidences of indebtedness made
payable to the order of the Company, but only for the purpose of deposit into the Company's
accounts.  All checks, drafts, and other instruments obligating the Company to pay money must
be signed by the Managing Member, acting alone up to $50,000.  Any obligation of the
Company over $50,000 shall require the Managing Member's signature with the written approval
of the Managing Member.

BB lw WESTCLIFFINVESTORS-OPERATING AGREEMENT

12





EXHIBIT 1
Page 31

8.4 Tax Matters for the Company. Beitler is designated as "Tax Matters Partner" (as defined in Code Section 6231), to represent the Company (at the Company's expense) in connection with all examination of the Company's affairs by tax authorities and to expend Company funds for professional services and costs associated therewith, subject to the limitations contained in Paragraph 4.2.

## ARTICLE IX  -  DISSOLUTION AND WINDING UP

9.1 <u>Conditions of Dissolution</u>.   The Company shall dissolve upon the occurrence of any of the following events:

    (a) Upon the happening of any event of dissolution specified in the Articles;

    (b) Upon the entry of a decree of judicial dissolution pursuant to Section 17351 of the California Corporations Code;

    (c) Upon the vote of a majority of the Membership;

    (d) The occurrence of a Dissolution Event and the failure of the Remaining Members to consent in accordance with Paragraph 7.1 to continue the business of the Company within ninety (90) days after the occurrence of such event; or

EXHIBIT "1"
Page 32

(e) The sale of all or substantially all of the assets of Company.

9.2 <u>Winding Up</u>.   Upon the dissolution of the Company, the Company's assets shall be disposed of and its affairs wound up.  The Company shall give written notice of the commencement of the dissolution to all of its known creditors.

9.3 <u>Order of Payment of Liabilities Upon Dissolution</u>.  After determining that all the known debts and liabilities of the Company have been paid or adequately provided for, the remaining assets shall be distributed to the Members in accordance with their positive Capital Account balances, after taking into account income and loss allocations for the Company's taxable year during which liquidation occurs.

9.4 <u>Limitations on Payments Made in Dissolution</u>.   Except as otherwise specifically provided in this Agreement, each Member shall be entitled to look only to the assets of the Company for the return of its capital contribution and/or share of Net Profits against any other Member except as provided in Article X.

9.5 <u>Certificates</u>.   The Company shall file with the California Secretary of State a Certificate of Dissolution upon the dissolution of the Company and a Certificate of Cancellation upon the completion of the winding up of the Company's affairs.

## ARTICLE X  -  INDEMNIFICATION

10.1   <u>Indemnification of Agents</u>.    The Company shall indemnify any Member and may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding arising out of or connected to the business of the company or that, being or having been such a Member, officer, employee or agent, he or she is or was serving at the request of the Company as a manager, director, officer, employee or other agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise to the fullest extent permitted by applicable law in effect on the date hereof and to such greater extent as applicable law may hereafter from time to time permit.  Further, any Member shall indemnify and hold harmless the Company and/or the other Members of the Company in the event that the Company and/or the other Members are made a party to any threatened or pending action, suit or proceeding between or by a Member and a third party or entity not arising out of or related to the business of Company.

## ARTICLE XI  -  INVESTMENT REPRESENTATIONS

Each Member hereby represents and warrants to, and agrees with, the Members and the Company as follows:

11.1  <u>Preexisting Relationship or Experience</u>.  It has a preexisting personal or business

BB b/ WESTCLIFF INVESTORS-OPERATING AGREEMENT- final

14

relationship with the Company or one or more of its officers or controlling persons, or by reason of its business or financial experience, or by reason of the business or financial experience of its financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by the Company or any affiliate or selling agent of the Company, it is capable or evaluating the risks and merits of an investment in the Company and of protecting its own interests in connection with this investment.

11.2   No Advertising.  It has not seen, received, been presented with, or been solicited by any leaflet, public promotional meeting, article or any other form of advertising or general solicitation with respect to the sale of the Membership Interest.

11.3   Investment Intent.   It is acquiring the Membership Interest for investment purposes for its own account only and not with a view to or for sale in connection with any distribution of all or any part of the Membership Interest.  No other person will have any direct or indirect beneficial interest in or right to the Membership interest.

## ARTICLE XII    -    MISCELLANEOUS

12.1   Counsel to the Company.   Counsel to the Company may also be counsel to any Member or any Affiliate of a Member.  The Members may execute on behalf of the Company and the Members any consent to the representation of the Company that counsel may request pursuant to the California Rules of Professional Conduct or similar rules in any other jurisdiction (the "Rules").  The Company has initially selected Jeff Katofsky of the Law Offices of Jeff Katofsky, LLP (the Company Counsel"), as legal counsel to the Company.  Each Member acknowledges that the Company Counsel does not represent any Member in the absence of a clear and explicit agreement to such effect between the Member and the Company Counsel, and that in the absence of any such written agreement the Company Counsel shall owe no duties directly to a Member.  Each Member further acknowledges: (i) that the Company Counsel has represented the interests of Beitler in connection with the formation of the Company and the preparation and negotiation of this Agreement, and John Bral has selected separate Counsel in connection with the formation of the Company and the preparation and negotiation of this Agreement, (ii) while communications with the Company Counsel concerning the formation of the Company and its Members may be confidential with respect to third parties, no Member has any expectation that such communications are confidential with respect to Members which are represented individually by the Company Counsel.

12.2    Complete Agreement.  This Agreement and the Articles constitute the complete and exclusive statement and agreement among the Members with respect to the subject matter herein and therein and replace and supersedes all prior written and oral agreements among the Member.  To the extent that any provision of the Articles conflict with any provision of this Agreement, the Articles shall control.

BB l/v WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

15

12.3    Binding Effect. Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and inure to the benefit of the Members, and their respective successors and assigns.

12.4    Interpretation. All pronouns shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the context in which they are used may require. All headings herein are inserted only for convenience and ease of reference and are not to be considered in the interpretation of any provision of this Agreement. Numbered or lettered articles, paragraphs and subparagraphs herein contained refer to articles, paragraphs and subparagraphs of this Agreement unless otherwise expressly stated. In the event any claim is made by any Member relating to any conflict, omission or ambiguity in this Agreement, no presumption or burden or proof or persuasion shall be implied by virtue of the fact that this Agreement was prepared by or at the request of a particular Member of its counsel.

12.5    Jurisdiction. Each Member hereby consents to the exclusive jurisdiction of the state and Federal courts sitting in California in any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement. Each Member further agrees that personal jurisdiction over it may be effected by service of process by registered or certified mail addressed as provided in Paragraph 12.8 of this Agreement, and that when so made shall be as if served upon it personally within the State of California.

12.6    Arbitration. Except as otherwise provided in this Agreement, any controversy between the parties arising out of this Agreement shall be submitted to the American Arbitration Association for arbitration in Los Angeles, California. The costs of the arbitration, including any American Arbitration Association administration fee, the arbitrator's fee, and costs for the use of facilities during the hearings, shall be borne equally by the parties to the arbitration. Attorneys' fees may be awarded to the prevailing or most prevailing party at the discretion of the arbitrator. The provisions of Sections 1282.6, 1283, and 1283.05 of the California Code of Civil Procedure apply to the arbitration. The arbitrator shall not have any power to alter, amend, modify or change any of the terms of this Agreement nor to grant any remedy which is either prohibited by the terms of this Agreement, or not available in a court of law. The decision of the arbitrator shall be final, binding and non-appealable.

12.7    Severability. If any provision of this Agreement or the application of such provision to any person or circumstance shall be held invalid, the remainder of this Agreement or the application of such provision to persons or circumstances other than those to which it is held invalid shall not be affected thereby.

12.8    Notices. Any notices to be given or to be served upon the Company or any party hereto in connection with this Agreement must be in writing (which may include facsimile) and will be deemed to have been given and received when delivered to the address specified by the party to receive the notice. Such notices will be given to a Member at the address specified in Exhibit "A" hereto. Any party may, at any time by giving five (5) days' prior written notice to the other Members, designate any other address in substitution of the foregoing address to which

BB by WESTCLIFF INVESTORS-OPERATING AGREEMENT-final

16

such notice will be given.

12.9    Amendments.  All amendments to this Agreement will be in writing and signed by all of the Members.

12.10    Multiple Counterparts.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

12.11    Attorney Fees.  In the event that any dispute between the Company and the Members or among the Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses of enforcing any right of the prevailing party, including without limitation, reasonable attorneys' fees and expenses, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment.  Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorney fees and costs incurred in enforcing such judgment and an award of prejudgment interest from the date of the breach at the maximum rate allowed by law. For the purposes of this Paragraph: (i) attorney fees shall include, without limitation, fees incurred in the following: (1) post-judgment motions; (2) contempt proceedings; (3) garnishment, levy and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation and (ii) the term "prevailing party" shall mean the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise.

12.12    Remedies Cumulative.  The remedies under this Agreement are cumulative and shall not exclude any other remedies to which any person may be lawfully entitled.



RR w/ WESTCLIFF INVESTORS-OPERATING AGREEMENT

17

EXHIBIT "1"
Page 36

IN WITNESS WHEREOF, all of the Members of WESTCLIFF INVESTORS, LLC, a California limited liability company, have executed this Agreement, consisting of pages, including this page, and Exhibit "A", effective as of the date written above.

_____

Barry Beitler

_____

John Bral

_____

Betsy Boyd

# EXHIBIT "A"

## CAPITAL CONTRIBUTIONS
## AND ADDRESSES OF MEMBERS

### OF

### WESTCLIFF INVESTORS, LLC
### a California limited liability company

| Member's Name | Member's Address | Member's Initial Capital | Member's Membership Interest |
|---|---|---|---|
| Barry Beitler | 825 S. Barrington<br>Los Angeles, CA 90049 | 50% of all required capital | 47.5% |
| John Bral | 64 Sandpiper<br>Irvine, CA 92604 | 50% of all required capital | 47.5% |
| Betsy Boyd | 3456 Summerset Circle<br>Costa Mesa, CA 92626 | -0- | 5.0% |
| TOTALS | | 100% of all required capital | 100.0% |

EXHIBIT "1"
Page 38

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OBJECTION TO PROOF OF CLAIM
FILED BY BETSY BOYD [CLAIM NO. 16]; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d);
and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On October
13, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) October 13, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 13, 2017, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
SERVED VIA PERSONAL DELIVERY/ATTORNEY SERVICE
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130/Courtesy Bin
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/13/2017 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Thomas H Casey**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@lwgfllp.com;lgauthier@lwgfllp.com
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **Beth Gaschen**    bgaschen@wgllp.com,
  kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner**    gek@lnbyb.com
- **William N Lobel**    wlobel@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Kathleen J McCarthy**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Edward G Schloss**    egs2@ix.netcom.com
- **Valerie Smith**    claims@recoverycorp.com
- **Daniel B Spitzer**    dspitzer@spitzeresq.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**    ecfnotices@ascensioncapitalgroup.com

**SERVED VIA FIRST-CLASS MAIL:**

Betsy Boyd
2 Park Plaza
Suite 100
Irvine, CA 92614


Office of the United States Trustee
411 West Fourth Street, Suite 7160
Santa Ana, CA 92701

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.