1  William N. Lobel, State Bar No. 93202
   wlobel@lwgfllp.com
2  Alan J. Friedman, State Bar No. 132580
   afriedman@lwgfllp.com
3  Beth E. Gaschen, State Bar No. 245894
   bgaschen@lwgfllp.com
4  **LOBEL WEILAND GOLDEN FRIEDMAN LLP**
   650 Town Center Drive, Suite 950
5  Costa Mesa, California 92626
   Telephone    714-966-1000
6  Facsimile    714-966-1002

7  Attorneys for Debtor and Debtor-in-Possession
   John Jean Bral

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                  **SANTA ANA DIVISION**

12  In re                              Case No. 8:17-bk-10706-SC

13  JOHN JEAN BRAL,                    Chapter 11

14          Debtor.                    **DEBTOR'S OBJECTION TO PROOF OF
                                       CLAIM FILED BY STEWARD FINANCIAL
15                                     LLC [CLAIM NO. 20]; AND
                                       MEMORANDUM OF POINTS AND
16                                     AUTHORITIES IN SUPPORT THEREOF**

17                                     **[DECLARATION OF JOHN JEAN BRAL IN
                                       SUPPORT THEREOF FILED
18                                     CONCURRENTLY HEREWITH]**

19                                     **DATE:    December 14, 2017
                                       TIME:    11:00 a.m.
20                                     Place:   Courtroom 5C
                                               411 West Fourth Street
21                                             Santa Ana, California 92701**

22

23

24

25

26

27

28

1136117.1                                              OBJECTION

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1

## <u>TABLE OF CONTENTS</u>

2                                                                                          <u>Page</u>

3    I.     INTRODUCTION ................................................................................ 3

4    II.    STATEMENT OF FACTS ................................................................... 4

5           A.    Jurisdiction and Venue.......................................................... 4

6           B.    Relief Requested ................................................................... 4

7           C.    The Debtor and the Chapter 11 Filing................................... 5

8           D.    The Bar Date and the Claim.................................................. 5

9    III.   ANALYSIS ......................................................................................... 5

10          A.    The Standard for Allowance of Claims.................................. 5

11          B.    The Obligations Under the Guaranty Were Secured By the
                  Property ................................................................................ 6

12
            C.    The Claim is Barred by Sections 726 and 580 of the California
13                Civil Code.............................................................................. 8

14          D.    The Waivers in the Guarantee Agreement are Ineffective ........ 10

15          E.    The Claim Fails to Comply with Section 580(a) of the California
                  Code of Civil Procedure ...................................................... 11
16
     IV.    RESERVATION OF RIGHTS .......................................................... 12
17
     V.     CONCLUSION................................................................................. 12
18

19

20

21

22

23

24

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alliance Mortgage Co. v. Rothwell,
  10 Cal.4th 1226, 44 Cal.Rptr.2d 352 (1995) ......................................................... 9

ASCG Inc. v. Coffman,
  234 F.3d 1276 (9th Cir. 2000) ................................................................................ 7

Brown v. Jensen,
  41 Cal.2d 193, 259 P.2d 425 (1953) ..................................................................... 9

Cathay Bank v. Lee,
  14 Cal. App. 4th 1533, 18 Cal. Rptr. 2d 420 (1993) ........................................... 11

Commonwealth Mortgage Assurance Co. v. Superior Court,
  221 Cal.App.3d 508, 259 Cal.Rptr. 425 (1989) ............................................... 9, 10

First Nat. Park Bank v. Johnson,
  553 F.2d 599 (9th Cir. 1977) .................................................................................. 8

Freedland v. Greco,
  45 Cal.2d 462, 289 P.2d 463 (1955) ..................................................................... 9

In re Allegheny Int'l, Inc.,
  954 F.2d 167 (3d Cir.1992) .................................................................................... 6

In re Blixeth,
  489 B.R. 154 (Bankr. D. Mo. 2013) ....................................................................... 6

In re Consol. Pioneer,
  178 B.R. 222 (9th Cir. BAP 1995) ......................................................................... 6

In re Gray,
  522 B.R. 619 (Bankr. D. Idaho 2014) .................................................................... 6

In re Holm,
  931 F.2d 620 (9th Cir. 1991) ................................................................................. 6

In re Parrott Broadcasting Ltd. P'ship,
  492 B.R. 35 (Bankr. D. Idaho 2013) ...................................................................... 6

In re Prestige Ltd. P'ship-Concord,
  223 B.R. 203 (Bankr. N.D. Cal. (1998), *subsequently aff'd*, 234 F.3d
  1108 (9th Cir. 2000) ........................................................................................... 8, 9

Indusco Mgmt Corp. v. Robertson,
  40 Cal.App.3d 456 (1974) ..................................................................................... 9

Lundell v. Anchor Const. Specialists, Inc.,
  223 F.3d 1035 (9th Cir. 2000) ............................................................................... 6

1

## TABLE OF AUTHORITIES (cont.)

2

**Page(s)**

3  Pepper v. Litton,
        308 U.S. 295, 60 S.Ct. 244 (1939) ......................................................... 6
4

   Security Pacific Nat'l Bank v. Wozab,
5       51 Cal.3d 991 (1990) ............................................................................ 9

6  Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,
        130 S.Ct. 1431 (2010) ......................................................................... 12
7

   Spencer v. Pugh (In re Pugh),
8       157 B.R. 898 (9th Cir. BAP 1993) ......................................................... 6

9  Torrey Pines Bank v. Hoffman,
        231 Cal.App.3d 308 (1991) ................................................................. 11
10

   Union Bank v. Gradsky,
11      265 Cal.App.2d 40 (1968) ................................................................... 10

12 Westinghouse Credit Corp. v. Barton,
        789 F.Supp. 1043 (1992) ..................................................................... 9
13

   Winklemen v. Sides,
14      31 Cal.App.2d 387 (1939) ................................................................... 10

15 **Statutes**

16 11 U.S.C. § 502(a) ..................................................................................... 5

17 11 U.S.C. § 502(b)(1) ................................................................................. 5

18 Cal. Civ. Code § 1654 ................................................................................ 8

19 Cal. Civ. Code § 2856 .............................................................................. 10

20 Cal. Civ. Proc. Code § 580a .................................................................... 12

21 Cal. Civ. Proc. Code § 580d ........................................................... 9, 10, 11

22 Cal. Code. Civ. Proc. § 726 ..................................................................... 8, 9

23 **Other Authorities**

24 3 L. King, COLLIER ON BANKRUPTCY § 502.02, at 502-22 (15th ed. 1991) ........... 5

25 Application of California Code of Civil Procedure Section 580d to a Guaranty
        Secured by Real Property, 28 Cal. W. L. Rev. 51, 56 ........................... 10
26
   Cal. Prac. Guide Real Prop. Trans., Ch.6-J, § 6:606 ................................ 10
27

28

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

**Rules**

Fed. R. Bankr. P. 3001(f)...................................................................... 5

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2  **JUDGE, STEWARD FINANCIAL LLC, AND ALL OTHER INTERESTED PARTIES:**

3      **PLEASE TAKE NOTICE** that, pursuant to 11 U.S.C. § 502, Federal Rule of

4  Bankruptcy Procedure 3007, and Local Bankruptcy Rule 3007-1, on December 14, 2017,

5  at 11:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 5C of the

6  United States Bankruptcy Court, located at 411 West Fourth Street, Santa Ana, California

7  92701, a hearing will be held concerning this objection (the "<u>Objection</u>") of John Jean Bral,

8  the debtor and debtor-in-possession in the above-captioned chapter 11 case (the

9  "<u>Debtor</u>"), to Proof of Claim No. 20 ("<u>Claim No. 20</u>") filed by Steward Financial, LLC

10  ("<u>Steward</u>"), an entity owned by Barry Beitler ("<u>Beitler</u>").

11      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 3007-

12  1(b)(3)(A), any response to the Objection must be filed and served not later than fourteen

13  (14) days prior to the hearing on the Objection (as further set forth in the Notice served

14  concurrently herewith).

15      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 3007-

16  1(b)(3)(B), if a response is not timely filed and served, the Court may grant the relief

17  requested in the Objection without further notice or hearing.

18      **PLEASE TAKE FURTHER NOTICE** that the Objection is based on the Notice of

19  Hearing, the attached Memorandum of Points and Authorities, the concurrently filed

20  Declaration of John Jean Bral, the files and records of this Court related to the Debtor's

21  case, and upon such other oral and documentary evidence as may be presented to the

22  Court at or before the time of the hearing on the Objection.

23  ///

24  ///

25  ///

26

27

28

1136117.1                                                                    OBJECTION

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000  Fax 714-966-1002

1     **WHEREFORE**, the Debtor requests that the Court enter an Order (i) disallowing

2 Claim No. 20 in its entirety; and (ii) for such other and further relief as may be just and

3 proper under the circumstances of this case.

4                                 Respectfully submitted,

5 Dated: October 13, 2017          LOBEL WEILAND GOLDEN FRIEDMAN LLP

6

7                        By:   */s/ Beth E. Gaschen*

8                            WILLIAM N. LOBEL
                         ALAN J. FRIEDMAN

9                          BETH E. GASCHEN
                         Attorneys for Debtor

10                          and Debtor-in-Possession
                         John Jean Bral

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1136117.1                           2                            OBJECTION

## I.      **INTRODUCTION**

John Jean Bral, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "<u>Debtor</u>"), hereby submits this objection (the "<u>Objection</u>") to Claim No. 20 filed by Steward Financial, LLC ("<u>Steward</u>"), an entity owned by Barry Beitler ("<u>Beitler</u>").  In support of the Objection, the Debtor relies on the following Memorandum of Points and Authorities and the Declaration of John Jean Bral filed concurrently herewith (the "<u>Bral Declaration</u>").

On June 16, 2017, Steward filed a proof of claim ("<u>Claim No. 20</u>") as an unsecured claim in the amount of $2,593,638.81, not including fees and costs, or post-petition interest.  A true and complete copy of Claim No. 20 is attached hereto as Exhibit "1" and incorporated herein by this reference.

Beitler and the Debtor formed Ocean View Medical Investors, LLC ("<u>Ocean View</u>") on June 10, 2005.  Beitler and the Debtor were designated as the co-managers of this entity in Ocean View's operating agreement.  Ocean View's sole asset was the office building commonly known as 441 Old Newport Road, Newport, California (the "<u>Property</u>").

On or about October 5, 2005, Ocean View and BAB 8, LLC (owned by Beitler), as borrowers (the "<u>Ocean View Borrowers</u>"), and First Regional Bank ("<u>First Regional</u>"), as lender, entered into that certain Construction Loan Agreement (the "<u>Loan Agreement</u>").  A true and correct copy of the Loan Agreement is attached to the Bral Declaration as Exhibit "10."  The Loan Agreement was secured by that certain Construction Deed of Trust (the "<u>Deed of Trust</u>").  A true and correct copy of the Deed of Trust is attached to the Bral Declaration as Exhibit "11."  Pursuant to the Loan Agreement, First Regional agreed to loan the Ocean View Borrowers up to $4,725,000.  The Deed of Trust was recorded against the Property to secure the obligations in the Loan Agreement.

Beitler and the Debtor guaranteed the obligations in the Loan Agreement pursuant to written guarantee agreements.  A true and correct copy of the guarantee executed by the Debtor is attached to the Bral Declaration as Exhibit "12" (the "<u>Guarantee</u>").

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    Rights in the Loan Agreement and Guarantee Agreement were later acquired by

2  First Citizens Bank & Trust Company ("<u>First Citizens</u>").

3    In 2012, the Ocean View Borrowers failed to make the payments due under the

4  terms of the Loan Agreement due to a lack of funds.  Beitler acquired First Citizen's

5  interest in the Loan Agreement and Deed of Trust through his alter-ego, Steward, and

6  then foreclosed upon the Property.

7    In Claim No. 20, Steward contends that it acquired the Property at a foreclosure

8  sale for a $4.1 million credit bid, leaving a balance owing of $2,593,638.81, including

9  interest and late charges, as of the February 24, 2017 petition date.  Steward's Claim fails,

10  *inter alia*, for the following reasons.  Unlike most commercial guarantees, the language in

11  the Deed of Trust makes it clear that the Guarantee Agreement was in fact secured by

12  this lien against the Property.  A guarantee that is secured by real property is extinguished

13  under California Code of Civil Procedure sections 726 and 580d if the holder of this

14  guarantee forecloses upon the property by a non-judicial foreclosure.

15    On the grounds set forth herein, Steward's Claim No. 20 should be disallowed in its

16  entirety as a matter of law.

17  II.    **STATEMENT OF FACTS**

18    A.    **Jurisdiction and Venue**

19    This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and

20  1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtor consents to the

21  entry of a final order by the Court in connection with this Objection to the extent it is later

22  determined that the Court, absent consent of the parties, cannot enter final orders or

23  judgments consistent with Article III of the United States Constitution.  Venue of this case

24  and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

25    B.    **Relief Requested**

26    By this Objection, the Debtor seeks entry of an order pursuant to section 502(b) of

27  the Bankruptcy Code and Bankruptcy Rule 3007 (i) disallowing Claim No. 20 in its

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  entirety; and (ii) for such other and further relief as may be just and proper under the
2  circumstances of this case.

3      **C.    The Debtor and the Chapter 11 Filing**

4      The Debtor commenced this case by filing a voluntary petition under chapter 11 of
5  title 11 of the United States Code on February 24, 2017 (the "Petition Date").  The Debtor
6  continues to manage his financial affairs and operate his bankruptcy estate as a debtor-in-
7  possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No request for
8  the appointment of a trustee or examiner has been made in this case.  No official
9  committee of unsecured creditors has been appointed in this case.

10      **D.    The Bar Date and the Claim**

11      This Court set a deadline of June 16, 2017 as the bar date for filing claims (the
12  "Claims Bar Date").  On April 21, 2017, the Debtor served all known creditors and parties-
13  in-interest with notice of the Claims Bar Date (the "Bar Date Notice") [Docket No. 47].
14  Pursuant to the Bar Date Notice, each creditor, subject to certain limited exceptions,
15  holding a claim against the Debtor was required to file a proof of claim on or before the
16  Claims Bar Date.  On June 16, 2017, Steward filed Claim No. 20 as an unsecured claim in
17  the amount of $2,593,638.81, not including fees and costs, or post-petition interest.

18  **III.    ANALYSIS**

19      **A.    The Standard for Allowance of Claims**

20      Pursuant to Federal Rule of Bankruptcy Procedure 3001(f) and section 502(a), a
21  timely filed and properly documented proof of claim is deemed prima facie valid.
22  Bankruptcy Code § 502(b)(1) provides that a claim will not be allowed to the extent that
23  the claim is for "an unenforceable debt against a debtor and property of the debtor, under
24  any agreement or applicable law for a reason other than because such claim is contingent
25  or unmatured . . ."

26      "[T]he burden of initially going forward with the evidence as to the validity and the
27  amount of the claim is that of the objector to that claim.  3 L. King, COLLIER ON
28  BANKRUPTCY § 502.02, at 502-22 (15th ed. 1991).  Once "the objector produces sufficient

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000  Fax 714-866-1002

1  evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts

2  to the claimant to prove the validity of the claim by a preponderance of the evidence." In

3  re Consol. Pioneer, 178 B.R. 222, 226 (9th Cir. BAP 1995) (quoting In re Allegheny Int'l,

4  Inc., 954 F.2d 167, 173-74 (3d Cir.1992)).  The ultimate burden of persuasion remains at

5  all times upon the claimant.  Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035,

6  1039 (9th Cir. 2000); In re Holm, 931 F.2d 620, 623 (9th Cir. 1991); In re Gray, 522 B.R.

7  619, 625 (Bankr. D. Idaho 2014) ("If the objector produces evidence sufficient to negate

8  the validity of the claim, the ultimate burden of persuasion remains on the claimant to

9  demonstrate by preponderance of the evidence that the claim deserves to share in the

10  distribution of the debtor's assets."); Spencer v. Pugh (In re Pugh), 157 B.R. 898, 901 (9th

11  Cir. BAP 1993); In re Parrott Broadcasting Ltd. P'ship, 492 B.R. 35, 38 (Bankr. D. Idaho

12  2013); In re Blixeth, 489 B.R. 154 (Bankr. D. Mo. 2013) (once objecting party succeeds in

13  overcoming prima facie effect of procedurally proper proof of claim, burden shifts to

14  claimant to prove validity of its claim, and claimant must satisfy that burden by

15  preponderance of evidence).  See also Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 244

16  (1939) (stating that the bankruptcy court has the power to shift the circumstances

17  surrounding any claim to see that injustice or unfairness is not done in administering the

18  bankruptcy estate).

19        In this case, the Claim is subject to disallowance as a matter of law.  Accordingly,

20  the Debtor seeks entry of an Order granting the Objection.

21        **B.      The Obligations Under the Guaranty Were Secured By the Property**

22        The Deed of Trust states that it secures the following obligations:

23        THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS
          AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL
24        PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF **THE
          INDEBTEDNESS** AND (B) PERFORMANCE OF ANY AND ALL
25        OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED
          DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST,
26        INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY
          INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO
27        GIVEN TO SECURE ANY AND ALL OF TRUSTOR'S OBLIGATIONS

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN TRUSTOR AND LENDER OF EVEN DATE HEREWITH.

(Ex. 11, Bral Decl.) (emphasis added).

The term "Indebtedness" in the above provision is defined in the Deed of Trust as follows:

> **Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note **or Related Documents**, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

(Ex. 11, Bral Decl.) (emphasis added).

The term "Related Documents" in the above provision is defined in the Deed of Trust as follows:

> **Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, **and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.**

(Ex. 11, Bral Decl.) (emphasis added).

When the foregoing definitions are read together, the import of the language is clear: The Deed of Trust secured "all…amounts, costs and expenses payable under…all agreements and documents…executed in connection with the Indebtedness." Since the Guarantee Agreement is unquestionably an "agreement" or "document" and since it was "executed in connection with the Indebtedness," the obligations therein are secured by the Deed of Trust.

Although Steward may not like the import of the foregoing language, it is crystal clear, and therefore binding. ASCG Inc. v. Coffman, 234 F.3d 1276 (9th Cir. 2000) ("If contract language is unambiguous, the meaning of the **contract** is decided as a matter of law."). Moreover, since Steward's assignor drafted this language, it is construed most

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  strongly against Steward.  *See* Cal. Civ. Code § 1654; <u>First Nat. Park Bank v. Johnson</u>,

2  553 F.2d 599, 603 (9th Cir. 1977) ("We note further that the guaranty agreement should

3  be construed most strongly against the bank, the party responsible for its drafting.").

4  **C.    <u>The Claim is Barred by Sections 726 and 580 of the California Civil Code</u>**

5  Section 726(a) of the California Code of Civil Procedure provides:

6  There can be but one form of action for the recovery of any debt or the
   enforcement of ***any right* secured by mortgage upon real property** or an
7  estate for years therein, which action shall be in accordance with the
   provisions of this chapter. In the action the court may, by its judgment,
8  direct the sale of the encumbered real property or estate for years therein
9  (or so much of the real property or estate for years as may be necessary),
   and the application of the proceeds of the sale to the payment of the costs
10 of court, the expenses of levy and sale, and the amount due plaintiff,
   including, where the mortgage provides for the payment of attorney's fees,
11 the sum for attorney's fees as the court shall find reasonable, not exceeding
12 the amount named in the mortgage.

13 Cal. Code. Civ. Proc. § 726. The words "any right" encompass a guaranty.  *See, e.g.,* <u>Cal.</u>

14 <u>Prac. Guide Real Prop. Trans.</u>, Ch.6-J, § 6:606 ("***[G]uarantors who pledge real property***

15 ***as security for their guaranty are themselves principal obligors entitled to the***

16 ***antideficiency protections of CCP §§ 580d*** and 726 with respect to foreclosure on the

17 property pledged to secure the guarantor") (emphasis added).

18 In the case of <u>In re Prestige Ltd. P'ship-Concord</u>, 223 B.R. 203, 210 (Bankr. N.D.

19 Cal. (1998), *subsequently aff'd*, 234 F.3d 1108 (9th Cir. 2000), the court succinctly

20 explained the operation and effect of Section 726:

21 CCP § 726, commonly referred to as the single action rule, mandates
   one form of action for the recovery of any debt secured by a mortgage or
22 deed of trust on real property. The single action must be a foreclosure.
   See *California Real Estate* § 9:104. In addition, if a creditor wants a
23 deficiency judgment, the rule contemplates a single action consisting of a
   two-stage judicial proceeding: the first stage orders the sale of the
24 property, determines the liability for a deficiency and culminates in a
25 foreclosure decree; the second stage establishes the amount of the
   deficiency. 3 *Witkin Summary of California Law,* Security Transactions in
26 Real Property § 155 (9th ed.1987) *citing United Calif. Bank v. Tijerina,* 25
   Cal.App.3d 963, 968, 102 Cal.Rptr. 234 (1972). *If the creditor elects a*
27 *non-judicial foreclosure, a trustee's sale, it cannot obtain a*

28

1

***deficiency judgment.***

2 <u>Id.</u> (emphasis added)

3    Section 580d provides as follows:

4    No judgment shall be rendered for any deficiency upon a note secured by
5    a deed of trust or mortgage upon real property or an estate for years
     therein hereafter executed in any case in which the real property or estate
6    for years therein has been sold by the mortgagee or trustee under power
     of sale contained in the mortgage or deed of trust.
7

8 Cal. Civ. Proc. Code § 580d. The effect of 580d is clear and unavoidable: once a lender

9 proceeds by non-judicial foreclosure, the statute bars any deficiency claim on the secured

10 obligations. <u>Westinghouse Credit Corp. v. Barton</u>, 789 F.Supp. 1043, 1045 (1992).

11    Where, as in this case, the obligations of a guaranty are defined as secured under

12 a deed of trust, the guarantor becomes entitled to the protection of the anti-deficiency

13 rules in his own right, and not derivatively of the rights of the related borrower. <u>See</u>

14 <u>Indusco Mgmt Corp. v. Robertson</u>, 40 Cal.App.3d 456, 462 (1974); <u>Security Pacific Nat'l</u>

15 <u>Bank v. Wozab</u>, 51 Cal.3d 991, 997 (1990) (where a deed of trust secures the obligations

16 of a guaranty, it brings the case within the one-action rule and the anti-deficiency

17 statutes).

18    The California Supreme Court has expressly recognized that the anti-deficiency

19 statutes embodied in Code of Civil Procedure sections 580 - 580d and 726 "indicate a

20 considered course on the part of the Legislature to limit strictly the right to recover

21 deficiency judgments, that is, to recover on the debt more than the value of the security."

22 <u>Freedland v. Greco</u>, 45 Cal.2d 462, 467, 289 P.2d 463 (1955) *quoting* <u>Brown v. Jensen</u>,

23 41 Cal.2d 193,197, 259 P.2d 425 (1953).  Accordingly, these statutes are to be "broadly

24 interpreted to protect the debtor." <u>Alliance Mortgage Co. v. Rothwell</u>, 10 Cal.4th 1226,

25 1237, 44 Cal.Rptr.2d 352 (1995).  Primary among those objectives is "to prevent creditors

26 in private sales from buying in at deflated prices and realizing double recovery by holding

27 debtors for large deficiencies."  <u>Id.</u> at 1236, quoting <u>Commonwealth Mortgage Assurance</u>

28 <u>Co. v. Superior Court</u>, 221 Cal.App.3d 508, 513, 259 Cal.Rptr. 425 (1989).

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1136117.1                                    9                                    OBJECTION

1    In light of the anti-deficiency statutes' unyielding policy, the bar of 580d must be

2  broadly construed, and the fact that the statute does not does not expressly reference

3  guaranties does not affect its applicability to this case.  Though no court has ruled directly

4  on this issue as it applies to 580d, commentators view 580d as applicable to the

5  obligations under a guaranty.  *See e.g.,* Cal. Prac. Guide Real Prop. Trans., Ch.6-J,

6  § 6:606 ("*[G]uarantors who pledge real property as security for their guaranty are*

7  *themselves principal obligors entitled to the antideficiency protections of CCP*

8  *§§ 580d* and 726 with respect to foreclosure on the property pledged to secure the

9  guarantor" (emphasis added); *see also* Application of California Code of Civil Procedure

10  Section 580d to a Guaranty Secured by Real Property, 28 Cal. W. L. Rev. 51, 56 ("courts

11  should not permit a creditor who forecloses nonjudicially on a deed of trust executed to

12  secure a guaranty to obtain a deficiency judgment against the guarantor.").

13  **D.    The Waivers in the Guarantee Agreement are Ineffective**

14    In an effort to evade the bar 580(d), Steward will cite the language in the

15  Guarantee Agreement that purports to waive the protections afforded by this statute.  This

16  argument fails for, *inter alia*, the following reasons.  First, the anti-deficiency "legislation

17  was established for a public reason and cannot be contravened by a private agreement

18  (citations omitted)."  Commonwealth Mortgage Assurance Co. v. Superior Court, 211

19  Cal.App.3d 508, 515, 259 Cal.Rptr. 425 (1989).  This is not a "Gradsky waiver" case. *See*

20  Union Bank v. Gradsky, 265 Cal.App.2d 40, 45 (1968).  Such waivers of antideficiency

21  protections are effective at the time the loan is made under California Civil Code Section

22  2856 *if they are in an* **unsecured** *guaranty the serves as surety for* **another's note**

23  *that is secured by real property*.  Cal. Civ. Code § 2856.  Here, in contrast, the

24  Guarantee Agreement itself secured by a deed of trust and so the protections afforded by

25  580d could not have been waived by the Debtor.  Winklemen v. Sides, 31 Cal.App.2d 387,

26  405 (1939).

27    As the California Supreme Court explained in Freedland:

28

1136117.1                              10                              OBJECTION

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  Moreover, those provisions may not be waived in advance by the debtor as
2  the courts have held with respect to *section 726 of the Code of Civil Procedure* [citation] and *section 580a* [citation]. Because of the strong
3  reasons of policy expressed in the Winklemen and California Bank cases
the same rules should apply to section 580d. ***The section would have***
4  ***little effect if the prospective creditor could compel the prospective***
***debtor to waive*** the parties to an agreement." ***it in advance*** [emphasis
5  added in last sentence].

6  Again, the anti-deficiency statute's protections are not waivable here, because the

7  obligations in the Guarantee Agreement were secured by the Deed of Trust. Torrey Pines

8  Bank v. Hoffman, 231 Cal.App.3d 308, 323-24 (1991) (recognizing that prior and

9  contemporaneous waivers of the anti-deficiency protections are null and void).

10  Second, the waivers in the Guarantee Agreement, even if they were not void,

11  would fail. These waivers states that the Debtor is waiving any defense he may have

12  based upon the fact that Ocean View's "***Note*** is or may be from time to time secured by

13  real estate...." If such waivers were possible, the waiver language in this case would

14  have to say that the Debtor was waiving the rights that ***he held*** under the antideficiency

15  statutes on account of the fact that the Guarantee Agreement "is or may be from time to

16  time secured by real estate." Cathay Bank v. Lee, 14 Cal. App. 4th 1533, 1539, 18 Cal.

17  Rptr. 2d 420, 423 (1993) ("To find a waiver of the *Gradsky* defense here one must go

18  beyond the actual words and imply into them two more ideas, namely: (1) that the

19  destruction of subrogation rights creates a defense to a deficiency judgment, and (2) the

20  guarantor is now waiving that *specific* defense."). Accordingly, there was not waiver of the

21  anti-deficiency protections.

22  **E.    The Claim Fails to Comply with Section 580(a) of the California Code of**

23  **Civil Procedure**

24  In addition to 580d, section 580a of California Code of Civil Procedure is also

25  applicable to bar Steward's Claim. California Code of Civil Procedure section 580a states:

26
27  ***Whenever a money judgment is sought for the balance due upon an***
***obligation for the payment of which a deed of trust or mortgage with***
28  ***power of sale upon real property or any interest therein was given as***

1  *security*, following the exercise of the power of sale in such deed of trust or
mortgage, ***the plaintiff shall set forth in his or her complaint the entire***
2  ***amount of the indebtedness which was secured by the deed of trust or***
***mortgage at the time of sale, the amount for which the real property or***
3  ***interest therein was sold and the fair market value thereof at the date of***
***sale and the date of that sale.***
4

5  Cal. Civ. Proc. Code § 580a (emphasis added).

6       Section 580a clearly applies to guaranties and the pleading of fair market value is

7  mandatory under that statute. As a result, the Claim is defective and this Objection should

8  be sustained. <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.</u>, 130 S.Ct.

9  1431, 1442-1444 (2010) (holding that state substantive and procedural laws that

10 significantly affect the result of a litigation must be applied in federal proceedings.)

11 **IV.    RESERVATION OF RIGHTS**

12      This Objection is limited to the grounds stated herein. Accordingly, it is without

13 prejudice to the right of the Debtor to object to Claim No. 20 on any other ground

14 whatsoever, and the Debtor expressly reserves all further substantive and/or procedural

15 objections he may have.

16 **V.    CONCLUSION**

17      The language in the Deed of Trust is clear and unequivocal: It states that the

18 "Indebtedness" is secured by the Deed of Trust. This term encompasses "all principal,

19 interest, and other amounts, costs and expenses" payable under "all agreements and

20 documents executed in connections with the Indebtedness." The Guarantee Agreement

21 was "executed in connection with the Indebtedness." Accordingly, it was a secured

22 instrument until Steward elected to foreclose upon the Property non-judicially, thereby

23 eliminating any possible deficiency judgment and hence mandating the disallowance of

24 the Claim.

25 ///

26 ///

27 ///

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    Accordingly, for the reasons stated herein, the Debtor moves this Court for an order

2    (i) disallowing Claim No. 20 in its entirety; and (ii) for such other and further relief as may

3    be just and proper under the circumstances of this case.

4                                      Respectfully submitted,

5    Dated: October 13, 2017           LOBEL WEILAND GOLDEN FRIEDMAN LLP

6

7                                      By:  */s/ Beth E. Gaschen*
                                            WILLIAM N. LOBEL
8                                           ALAN J. FRIEDMAN
                                            BETH E. GASCHEN
9                                           Attorneys for Debtor and
                                            Debtor-in-Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

# EXHIBIT "1"

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | JOHN JEAN BRAL |
| Debtor 2 (Spouse, if filing) | |

United States Bankruptcy Court for the:  Central District of California

Case number  8:17-BK-10706-SC

Official Form 410

# Proof of Claim

4/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.**

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

**Part 1:    Identify the Claim**

**1. Who is the current creditor?**

Steward Financial LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Gary E. Klausner, Esq.
Name

10250 Constellation Blvd., Suite 1700
Number      Street

Los Angeles          CA          90067
City                State          ZIP Code

Contact phone  (310) 229-1234

Contact email  GEK@LNBYB.COM

Where should payments to the creditor be sent? (if different)

Steward Financial LLC c/o Barry Beitler
Name

825 Barrington Avenue
Number      Street

Los Angeles          CA          90048
City                State          ZIP Code

Contact phone _____

Contact email  bbeitler@beitler.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

---

EXHIBIT 1
Page 15

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$ 2,593,638.81 as of the _____. petition date, not including fees and costs, or post-petition interest.

**Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Claims in Case No. BC 525778 in Los Angeles County Superior Court**

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                        $_____

Amount of the claim that is secured:     $_____

Amount of the claim that is unsecured:   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it.
FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/15/2017
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Barry Beitler | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Authorized Agent | | |
| Company | Steward Financial LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 825 Barrington Avenue | | |
| | Number      Street | | |
| | Los Angeles | CA | 90049 |
| | City | State | ZIP Code |
| Contact phone | | Email | bbeitler@beitler.com |

## ATTACHMENT TO PROOF OF CLAIM OF STEWARD FINANCIAL LLC BASED ON LOS ANGELES COUNTY SUPERIOR COURT CASE NO. BC 525778

On or about June 9, 2014, Steward Financial LLC ("Steward" or "Claimant") purchased from First-Citizens Bank & Trust Company ("First Citizens") all of First Citizens' rights with respect to a loan due and owing by Ocean View Medical Investors, LLC ("Ocean View") that had been in default for two years, and the associated loan documents, including without limitation (i) a deed of trust on Ocean View's real property securing the loan ("Ocean View Property") and (ii) a guaranty by John Bral ("Bral"). Following this purchase, Steward substituted in as plaintiff in place of First Citizens on the cause of action First Citizens had alleged against Bral for breach of guaranty in its action in Los Angeles County Superior Court, Case No. BC 525778. That action remains pending and has been stayed by the filing of this bankruptcy case.

The obligations under the loan and Bral's guaranty thereof included (i) principal in the sum of $4,161,520.23, (ii) interest, which amounted to $1,135,677.22 as of February 7, 2014 as calculated by First Citizens, and continued to accrue thereafter at the post-default rate of 18% per annum, or $2,184.80 per day, and (iii) a late charge, amounting to 5% of the principal debt, in the sum of $208,076.01.

A foreclosure sale of the Ocean View Property was held on March 20, 2015, at which Steward purchased the Ocean View Property for a credit bid of $4,100,000.00. The remaining obligation due and owing by Bral to Steward under Bral's guaranty of the Ocean View Loan is in the sum of at least $2,593,638.81, including interest and late charges, as of the February 24, 2017 petition date herein, plus recoverable attorney's fees and costs. Attached hereto as Exhibit "A" is a detailed breakdown of the claim amount, not including attorney's fees and costs, or post-petition interest. Attached hereto as Exhibit "B" is a copy of the complaint without exhibits. Attached hereto as Exhibit "C" are copies of relevant loan documents evidencing the claim. Attached hereto as Exhibit "D" is documentation evidencing the date of the foreclosure sale and the proceeds and costs of the foreclosure sale.

### Reservation of Rights

Claimant reserves the right to (i) amend, update and/or supplement this Proof of Claim at any time and in any respect, (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents or other liability or indebtedness of the Debtor to Claimant (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507.

In addition to the foregoing, Claimant reserves all rights with respect to (a) any indebtedness owed to Claimant by any non-debtor affiliate or other entity related to the Debtor, and (b) any other amounts that may be owing to Claimant in respect of interest, fees, indemnities, costs and expenses to the extent permitted by applicable law.

Nothing contained in this Proof of Claim shall be construed as limiting Claimants rights,

remedies and interests.

The filing of this proof of claim is not: (i) a waiver or release of Claimant's rights against any person, entity or property; (ii) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim; (iii) an election of remedy; or (iv) a waiver of any past, present or future defaults or events of default.  Claimant specifically preserves all of Claimant's procedural and substantive defenses and rights with respect to any claim that may be asserted against Claimant by the Debtor or any of its debtor or non-debtor affiliates, or by any trustee for this estate.

Case 8:17-bk-10706-SC    Claim 20    Filed 06/16/17    Desc Main Document    Page 6 of
106

# EXHIBIT "A"

**Pre-Auction Amount**

| | Principal Amount | Late Penalty 5% | Default Rate of Interest (1) | Attorneys' Fees Incurred | Date of Maturity | Number of Days thru 3/20/2015 (2) | Per Diem Interest Pre-Judgment | Total Interest Accrued | Total Amount |
|---|---|---|---|---|---|---|---|---|---|
| Steward (FCB Assignor) v. Bral (Case No.: BC525778) | $ 4,161,520.23 | $ 208,076.01 | 18% | | 3/1/2013 | 749 | $ 2,184.80 | $ 1,636,413.79 | $ 6,006,010.03 |

<u>Notes</u>

(1) Interest Calculated by Adding Principal Amount and Late Penalty

(2) Foreclosure auction date March 20, 2015

**Post Auction Amount**

| | |
|---|---|
| Principal and Interest | $ 6,006,010.03 |
| Auction Proceeds | $ (4,100,000.00) |
| Cost of Auction | $ 10,944.00 |
| Recasted Total Amount | $ 1,916,954.03 |

| | Recasted Principal Amount | | Default Rate of Interest | Attorneys' Fees Incurred | | Number of Days from 3/21/2015 thru 2/24/17 | Per Diem Interest Pre-Judgment | Total Interest Accrued | Total Amount |
|---|---|---|---|---|---|---|---|---|---|
| Steward (FCB Assignor) v. Bral (Case No.: BC525778) | $ 1,916,954.03 | | 18% | | | 706 | $ 958.48 | $ 676,684.77 | $ 2,593,638.81 |

# EXHIBIT "B"

1967.4934

Peter Csato (State Bar No. 089272)
pcsato@frandzel.com
Alan H. Fairley (State Bar No. 181068)
afairley@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Plaintiff First-Citizens Bank &
Trust Company

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

OCT 25 2013

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
BRANDA WESLEY

PLEASE CONFIRM

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina corporation, <br><br> Plaintiff, <br><br> v. <br><br> BARRY BEITLER, an individual; JOHN BRAL, an individual; JEFF HAYDEN, an individual; and DOES 1 through 75, inclusive, <br><br> Defendants. | CASE No. BC 5 2 5 7 7 8 <br><br> VERIFIED COMPLAINT FOR: <br><br> 1. BREACH OF GUARANTY <br> 2. BREACH OF GUARANTY <br> 3. BREACH OF GUARANTY <br> 4. BREACH OF GUARANTY <br> 5. BREACH OF GUARANTY |

1310668.1 | 100102-0150

VERIFIED COMPLAINT

1    Plaintiff First-Citizens Bank & Trust Company alleges and complains against the

2    Defendants, and each of them, as follows:

3    ### GENERAL ALLEGATIONS

4    1.    Plaintiff FIRST-CITIZENS BANK & TRUST COMPANY ("Plaintiff" or "First-

5    Citizens") is a corporation organized under the laws of the State of North Carolina and qualified

6    to conduct business in the State of California.  Plaintiff is exempt from the usury provisions of

7    Article XV, Section 1, of the California Constitution.

8    2.    Plaintiff is informed and believes, and on that basis alleges, that Defendant

9    BARRY BEITLER ("Beitler") is an individual residing in the County of Los Angeles.

10    3.    Plaintiff is informed and believes, and on that basis alleges, that Defendant JOHN

11    BRAL ("Bral") is an individual residing in the County of Orange.

12    4.    Plaintiff is informed and believes, and on that basis alleges, that Defendant JEFF

13    HAYDEN ("Hayden") is an individual residing in the County of Los Angeles.

14    5.    Plaintiff does not know the true names and capacities of Defendants DOES 1

15    through 75, inclusive, and sues these Defendants by such fictitious names.  Plaintiff is informed

16    and believes, and on that basis alleges, that each of the fictitiously named Defendants is

17    responsible for and caused the damages herein alleged, either contractually or tortiously.  When

18    Plaintiff ascertains the true names and capacities of DOES 1 through 75, it will amend this

19    Complaint accordingly.

20    6.    Plaintiff is informed and believes, and on that basis alleges, that at all relevant

21    times, each of the Defendants named in the caption of this Complaint was and is the agent,

22    servant and/or employee of each of the other Defendants, and that all of the things alleged to have

23    been done by each Defendant were done in the capacity of and as agent of the other Defendants.

24    7.    This Court is the proper venue for the trial of this action because several of the

25    Defendants reside and/or do business in the County of Los Angeles, and because this action arose

26    in the County of Los Angeles.

27    8.    The loan and insurance documents that are the subject of this action were

28    originated, and previously held, by First Regional Bank, a California commercial bank ("First

Los Angeles, California 90048-4920
(323) 852-1000

1 | Regional").  On January 29, 2010, First Regional was closed by the California Department of

2 | Institutions, and the Federal Deposit Insurance Corporation was appointed receiver.  Plaintiff

3 | acquired a majority of the assets and assumed a majority of the liabilities of First Regional,

4 | including the loan documents that are the subject of this action, pursuant to a Purchase and

5 | Assumption Agreement ("P&A Agreement") entered into between Plaintiff and the FDIC in its

6 | corporate capacity and as receiver for First Regional.  A true and correct copy of the P&A

7 | Agreement is attached hereto as Exhibit "1" and incorporated herein by this reference.  (As used

8 | herein, the term "Plaintiff" or "Bank" refers, at various times, to Plaintiff First-Citizens Bank &

9 | Trust Company and to its predecessor in interest with respect to the subject loan documents, First

10 | Regional).

11 |      9.     This action is not subject to the provisions of sections 1801 *et seq.* or sections

12 | 2981 *et seq.* of the California Civil Code.

## FIRST CAUSE OF ACTION

### (Breach of Guaranty against Beitler and Does 1-15)

### (Trax 11, LLC Loan)

16 |      10.     On or about May 30, 2007, Trax 11, LLC ("Trax") and First Regional entered into

17 | a Construction Loan Agreement (the "Trax CLA"), pursuant to which First Regional agreed to

18 | provide a loan to Trax in the principal amount of $8,621,000,000.00 (the "Trax Loan") to finance

19 | the construction of a mixed-use restaurant/retail center in Las Vegas, Nevada.  A true and correct

20 | copy of the Trax CLA is attached hereto as Exhibit "2" and incorporated herein by reference.

21 |      11.     In connection with the Loan Agreement and for value received, on or about May

22 | 30, 2007, Trax executed and delivered to First Regional a Promissory Note in the principal

23 | amount of $8,621,000.00 ("Trax Note").  A true and correct copy of the Trax Note is attached

24 | hereto as Exhibit "3" and is incorporated herein by this reference.

25 |      12.     The Trax Note provides that Trax will pay regular monthly payments of accrued

26 | unpaid interest beginning on July 1, 2007, with all outstanding principal and interest due on a

27 | maturity date of December 1, 2008.  The Note also provides that interest will accrue at the Wall

28 | Street Journal Prime Rate (the "Index") as that rate may change from time to time, resulting in an

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1 | initial rate of 8.250%, but that the interest rate would never be less than 8.250%. The Note

2 | further provides that in the event of default, the variable interest rate on the Note will

3 | immediately increase by adding a 7.000 percentage point margin (the "Default Rate Margin"),

4 | and further, that Borrower will be charged 10.000% of the unpaid portion of the regularly

5 | scheduled payment or $20.00, whichever is greater, if a payment is 10 or more days late ("Late

6 | Charge").

7 |      13.    The Trax Note provides that any default a guarantor of the Trax Note on any

8 | obligation of the guarantor will constitute an event of default under the Trax Note.

9 |      14.    In connection with the Trax Loan, Trax executed and delivered to First Regional a

10 | Construction Deed of Trust dated May 30, 2007, (the "Trax Deed of Trust"), against certain real

11 | property located in the State of Nevada described therein ("Nevada Property"), which was

12 | recorded in the Official Records of Clark County, Nevada, as Instrument No. 20070607-0001682

13 | on June 7, 2007. A true and correct copy of the Trax Deed of Trust is attached hereto as Exhibit

14 | "4" and is incorporated herein by reference.

15 |      15.    To induce First Regional to make the Trax Loan, on or about May 30, 2007,

16 | Beitler executed and delivered to First Regional a continuing unlimited Commercial Guaranty

17 | ("Trax Guaranty"). The Trax Guaranty provides, among other things, that "Guarantor's liability

18 | is unlimited and the obligations of Guarantor are continuing," and that the Trax Guaranty

19 | guarantees "any and all [of Trax's] liabilities, obligations and debts . . . now existing or hereafter

20 | arising." The Trax Guaranty further provides that Beitler will pay "all of Lender's costs and

21 | expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection

22 | with the enforcement of this Guaranty." The Trax Guaranty further provides, among other things,

23 | that "Lender may collect from Guarantor without first foreclosing on any real or personal

24 | property collateral pledged by [Trax]" and that First Regional may proceed against Beitler before

25 | proceeding against Trax or any other person. In reliance in part on the Trax Guaranty, First

26 | Regional extended credit and continued to extend credit to Trax under the Trax CLA and Trax

27 | Note and as alleged below. A true and correct copy of the Trax Guaranty is attached hereto as

28 | Exhibit "5" and incorporated herein by reference.

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

16.     On or about December 1, 2008, Trax entered into a Change in Terms Agreement which extended the maturity date of the Trax Loan to February 1, 2009 (Trax CTA 1). A true and correct copy of the Trax CTA 1 is attached hereto as Exhibit "6" and incorporated herein by reference.

17.     On or about February 1, 2009, Trax entered into a Change in Terms Agreement which, among other things, extended the maturity date of the Trax Loan to November 1, 2009, increased the interest rate to the Index plus 2.000%, and changed the floor rate to 6.000% ("Trax CTA 2"). A true and correct copy of the Trax CTA 2 is attached hereto as Exhibit "7" and incorporated herein by reference.

18.     Trax executed and delivered to First Regional a Modification of Deed of Trust dated February 1, 2009, (the "Trax DOT Modification"), which, among other things, modified the Trax Deed of Trust to also secure the Trax CTA 1 and Trax CTA 2. The Trax DOT Modification was recorded in the Official Records of Clark County, Nevada, as Instrument No. 20090619-0004961 on June 19, 2009. A true and correct copy of the Trax DOT Modification is attached hereto as Exhibit "8" and is incorporated herein by reference.

19.     On or about January 29, 2010, First-Citizens acquired First Regional's interest in the Trax Loan from the FDIC as receiver for First Regional by the Purchase and Assumption Agreement alleged above. On or about August 29, 2011, the FDIC executed an Assignment of Deed of Trust and Assignment of Rents ("Trax Assignment") which, among other things, assigned all interest in the Trax Guaranty to First-Citizens. The Trax Assignment was recorded in the Official Records of Clark County, Nevada, as Instrument No. 201109190000955 on September 19, 2011. A true and correct copy of the Trax Assignment is attached hereto as Exhibit "9" and is incorporated herein by reference.

20.     On or about February 28, 2011, Trax and the Bank entered into a Note Modification Agreement ("Trax Note Modification 1") which, among other things, extended the maturity date of the Trax Loan to July 1, 2011, changed the Late Charge to 5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater, if a payment is 11 or more days late, and provided that in the event of default, the Bank could increase the interest rate

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  on the Trax Loan up to 18%.  A true and correct copy of the Trax Note Modification 1 is

2  attached hereto as Exhibit "10" and is incorporated herein by reference.

3      21.  On or about February 27, 2012, Trax and the Bank entered into a Note

4  Modification Agreement ("Trax Note Modification 2") which, among other things, extended the

5  maturity date of the Trax Loan to September 1, 2012.  A true and correct copy of the Trax Note

6  Modification 2 is attached hereto as Exhibit "11" and is incorporated herein by reference.

7      22.  Trax defaulted on the Trax Loan by, among other things, failing to pay the Trax

8  Loan in full on the maturity date of September 1, 2012.

9      23.  On or about May 29, 2013, Trax, Beitler, and First-Citizens entered into a

10  Forbearance Agreement ("Forbearance").  The Forbearance recited, among other things, that

11  First-Citizens was the holder of all of First Regional's rights under the Trax Loan documents, the

12  Trax Loan matured and became immediately payable in full on September 1, 2012, and the Trax

13  Loan was and continued to be in default and was immediately payable in full.  The Forbearance

14  provided, among other things, that as long as no additional default existed and certain existing

15  defaults were remedied, First-Citizens agreed to forbear from exercising its rights and remedies

16  under the Trax Loan documents for a period continuing to December 31, 2013, as provided in the

17  Forbearance, but that such forbearance would terminate immediately on the occurrence of any

18  additional default, among other events.  The Forbearance also provides that during the

19  forbearance period, interest would accrue at the default rate of 18% (Default Rate"), but that if on

20  or before the end of the forbearance period Trax paid the amount owing on the Trax Loan in full

21  except for that amount of interest attributable to the imposition of the Default Rate, First-Citizens

22  would waive the Default Rate.  A true and correct copy of the Forbearance is attached hereto as

23  Exhibit "12" and is incorporated herein by reference.

24      24.  Trax defaulted under the Trax Loan documents and the Forbearance by, among

25  other things, failing to clear certain mechanics liens on the Nevada Property, and failing to pay

26  the full amount of the sum owing and due on August 1, 2013.  Accordingly the forbearance

27  period alleged above has terminated, with the consequence that an additional event default exists

28  by reason of Beitler's failure to repay certain other indebtedness Beitler has guaranteed, including

1310668.1 | 100102-0150  6
VERIFIED COMPLAINT

but not limited to the Ocean View and AFG Loans alleged below. Despite demand, Trax has
failed to pay all sums due and owing under the Trax Loan documents and the Forbearance.

25.     Despite demand, Beitler has paid no sums to the Bank as required pursuant to the
terms of the Trax Guaranty.

26.     As a result of Trax's default under the Trax Loan documents and the Forbearance,
as of August 21, 2013, the following amounts are now due and payable by Trax under the Trax
Loan documents and the Forbearance, and by Beitler under the Trax Guaranty:

  a.     Principal in an amount according to proof, but not less than the sum of
    $7,601,170.58;

  b.     Interest on the unpaid principal in the sum in an amount according to proof;
    and

  c.     Reasonable attorneys' fees and costs, in an amount according to proof.

27.     The Bank has duly performed all of the conditions precedent on its part required to
be performed under the Trax Loan documents, the Forbearance and the Trax Guaranty, except for
those covenants and conditions as to which the Bank is excused from performance due to
Defendants' conduct.

## SECOND CAUSE OF ACTION

### (Breach of Guaranty against Beitler and Does 16-30)

### (Ocean View Medical Investors, LLC, and BAB 8, LLC, Loan)

28.     Plaintiff incorporate by reference Paragraphs 1 through 9 above as though set forth
herein in full.

29.     On or about October 5, 2005, Ocean View Medical Investors, LLC, and BAB 8,
LLC Ocean View 11, LLC (collectively, "Ocean View") and First Regional entered into a
Construction Loan Agreement (the "Ocean View CLA"), pursuant to which First Regional agreed
to provide a loan to Ocean View in the principal amount of $4,725,000.00 (the "Ocean View
Loan") to finance the conversion of a medical building. A true and correct copy of the Ocean
View CLA is attached hereto as Exhibit "13" and incorporated herein by reference.

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

30.   In connection with the Loan Agreement and for value received, on or about October 5, 2005, Ocean View executed and delivered to First Regional a Promissory Note in the principal amount of $4,725,000.00 ("Ocean View Note").  A true and correct copy of the Ocean View Note is attached hereto as Exhibit "14" and is incorporated herein by this reference.

31.   The Ocean View Note provides that Ocean View will pay regular monthly payments of accrued unpaid interest beginning on November 1, 2005, with all outstanding principal and interest due on a maturity date of October 7, 2007.  The Note also provides that interest will accrue at the Wall Street Journal Prime Rate (the "Index") as that rate may change from time to time, plus 0.500%, resulting in an initial rate of 7.250%, but that the interest rate would never be less than 7.250%.  The Note further provides that in the event of default, the variable interest rate on the Note will immediately increase by adding a 7.500 percentage point margin (the "Default Rate Margin"), and further that, Borrower will be charged 10.000% of the unpaid portion of the regularly scheduled payment or $20.00, whichever is greater, if a payment is 10 or more days late ("Late Charge").

32.   The Ocean View Note provides that any default of a guarantor of the Ocean View Note on any obligation of the guarantor will constitute an event of default under the Ocean View Note.

33.   Ocean View executed and delivered to First Regional a Construction Deed of Trust dated October 5, 2005, (the "Ocean View Deed of Trust"), against certain real property located in the State of California described therein ("California Property"), which was recorded in the Official Records of Orange County, California, as Instrument No. 2005000821196 on October 12, 2005.  A true and correct copy of the Ocean View Deed of Trust is attached hereto as Exhibit "15" and is incorporated herein by reference.

34.   To induce First Regional to make the Ocean View Loan, on or about October 5, 2005, Beitler executed and delivered to First Regional a continuing unlimited Commercial Guaranty ("Beitler Ocean View Guaranty").  The Ocean View Guaranty provides, among other things, that "Guarantor's liability is unlimited and the obligations of Guarantor are continuing," and that the Beitler Ocean View Guaranty guarantees "any and all [of Ocean View's] liabilities,

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1 | obligations and debts . . . now existing or hereafter arising." The Beitler Ocean View Guaranty
2 | further provides that Beitler will pay "all of Lender's costs and expenses, including Lender's
3 | attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this
4 | Guaranty." The Beitler Ocean View Guaranty further provides, among other things, that "Lender
5 | may collect from Guarantor without first foreclosing on any real or personal property collateral
6 | pledged by [Ocean View]" and that First Regional may proceed against Beitler before proceeding
7 | against Ocean View or any other person. In reliance in part on the Beitler Ocean View Guaranty,
8 | First Regional extended credit and continued to extend credit to Ocean View under the Ocean
9 | View CLA and Ocean View Note and as alleged below. A true and correct copy of the Beitler
10 | Ocean View Guaranty is attached hereto as Exhibit "16" and incorporated herein by reference.

11 |      35.      On or about October 1, 2007, February 1, 2008, May 1, 2008, August 1, 2008,
12 | October 1, 2008, January 1, 2009, and June 26, 2009, Ocean View entered into a series of Change
13 | in Terms Agreements which, among other things, had the cumulative effect of extending the
14 | maturity date of the Ocean View Loan to November 1, 2009. True and correct copies of these
15 | Change in Terms Agreements are attached hereto as Exhibit "17" and incorporated herein by
16 | reference.

17 |      36.      On or about June 26, 2009, Ocean View and Ali and Floria Aryarad ("Aryarads"),
18 | (who had acquired a fractional interest in the California Property, and assumed Ocean View's
19 | obligations under the Ocean View Loan documents except for the Ocean View Note) executed a
20 | Modification of Deed of Trust ("Ocean View DOT Modification 1"), which, among other things,
21 | modified the Ocean View Deed of Trust to also secure the change in terms agreements alleged in
22 | the preceding paragraph. The Ocean View DOT Modification 1 was recorded in the Official
23 | Records of Orange County, California, as Instrument No. 2009000451254 on August 21, 2009.
24 | A true and correct copy of the Ocean View DOT Modification 1 is attached hereto as Exhibit
25 | "18" and is incorporated herein by reference.

26 |      37.      On or about December 15, 2009, Ocean View entered into a Change in Terms
27 | Agreement which, among other things, extended the maturity date of the Ocean View Loan to
28 | May 1, 2010, set the interest rate at the Index plus 2.000%, and set the floor rate at 6.000%

1  ("Ocean View CTA). A true and correct copy of the Ocean View CTA is attached hereto as

2  Exhibit "19" and incorporated herein by reference.

3      38.    In connection with the Ocean View CTA, on or about December 15, 2009, Ocean

4  View and the Aryarads executed a Modification of Deed of Trust ("Ocean View DOT

5  Modification 2"), which, among other things, modified the Ocean View Deed of Trust to also

6  secure the Ocean View CTA. A true and correct copy of the Ocean View DOT Modification 2 is

7  attached hereto as Exhibit "20" and is incorporated herein by reference.

8      39.    In connection with the Ocean View CTA, on or about December 19, 2009, Beitler

9  executed an Acknowledgement of Guarantor ("Acknowledgement") wherein he acknowledged

10  that the Ocean View Guaranty continued in full force and effect. A true and correct copy of the

11  Acknowledgement is attached hereto as Exhibit "21" and is incorporated herein by reference.

12      40.    On or about January 29, 2010, First-Citizens acquired First Regional's interest in

13  the Ocean View Loan from the FDIC as receiver for First Regional by the Purchase and

14  Assumption Agreement alleged above.   On or about September 3, 2010, the FDIC executed an

15  Assignment of Note and Security Instruments Without Recourse ("Ocean View Assignment")

16  which, among other things, assigned all interest in the Ocean View Guaranty to First-Citizens. A

17  true and correct copy of the Ocean View Assignment is attached hereto as Exhibit "22" and is

18  incorporated herein by reference. On or about September 21, 2010, the FDIC executed an

19  Assignment of Deed of Trust and Assignment of Rents which, among other things, assigned all

20  interest in the Ocean View Deed of Trust and the Ocean View Guaranty to First-Citizens.

21  ("Ocean View DOT Assignment"). The Ocean View DOT Assignment was recorded in the

22  Official Records of Orange County, California, as instrument number 2010000648425 on

23  December 2, 2010. A true and correct copy of the Ocean View DOT Assignment is attached

24  hereto as Exhibit "23" and is incorporated herein by reference.

25      41.    On or about February 22, 2011, Ocean View entered into a Note Modification

26  Agreement ("Ocean View Note Modification") which, among other things, extended the maturity

27  date of the Ocean View Loan to May 1, 2012, changed the Late Charge to 5.000% of the unpaid

28  portion of the regularly scheduled payment or $5.00, whichever is greater, if a payment is 11 or

LOS ANGELES, CALIFORNIA  90048-4920
(323) 852-1000

1    more days late, and provided that in the event of default, First-Citizens could increase the interest

2    rate on the Ocean View Loan up to 18%. A true and correct copy of the Ocean View Note

3    Modification is attached hereto as Exhibit "24" and is incorporated herein by reference.

4          42.    Ocean View defaulted on the Ocean View Loan by, among other things, failing to

5    pay the Ocean View Loan in full on the maturity date of May 1, 2012. Additionally, the Ocean

6    View Loan is in default by reason of Beitler's to failure repay certain other indebtedness

7    guaranteed by Beitler, including but not limited to the Trax Loan alleged above and the AFG

8    Loan alleged below. On or about November 30, 2012, the Bank gave written notice to Ocean

9    View and Beitler of said default. A true and correct copy of the Bank's letter is attached hereto as

10    Exhibit "25" and is incorporated herein by reference.

11          43.    Despite demand, Ocean View has failed to pay all sums due and owing under the

12    Ocean View Loan documents.

13          44.    Despite demand, Beitler has paid no sums to the Bank as required pursuant to the

14    terms of the Beitler Ocean View Guaranty.

15          45.    As a result of Ocean View's default under the Ocean View Loan documents, as of

16    September 26, 2013, the following amounts are now due and payable by Ocean View under the

17    Ocean View Loan documents, and by Beitler under the Beitler Ocean View Guaranty:

18            a.    Principal in an amount according to proof, but not less than the sum of

19                $4,161,520.23;

20            b.    Interest on the unpaid principal in the sum in an amount according to proof;

21                and

22            c.    Reasonable attorneys' fees and costs, in an amount according to proof.

23          46.    The Bank has duly performed all of the conditions precedent on its part required to

24    be performed under the Ocean View Loan documents and the Beitler Ocean View Guaranty,

25    except for those covenants and conditions as to which the Bank is excused from performance due

26    to Defendants' conduct.

27

28

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

# THIRD CAUSE OF ACTION

## (Breach of Guaranty against Bral and Does 31-45)

## (Ocean View Medical Investors, LLC, and BAB 8, LLC, Loan)

47. Plaintiff incorporates by reference Paragraphs 1 through 9, 29 through 33, and 35 through 42 above as though set forth herein in full.

48. To induce First-Citizens to enter into the Ocean View Note Modification, on or about February 22, 2011, Bral executed and delivered to First-Citizens a Note Guaranty ("Bral Ocean View Guaranty"). The Bral Ocean View Guaranty provides, among other things, that "Guarantor absolutely and unconditionally guarantees the payment to Lender . . . of all sums due on the [Ocean View] Note." The Bral Ocean View Guaranty further provides that in the event of litigation Plaintiff shall be entitled to recover its reasonable attorneys' fees and costs. The Bral Ocean View Guaranty further provides, among other things, that "Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by [Ocean View]" and that First-Citizens may proceed against Bral before proceeding against Ocean View or any other person. In reliance in part on the Bral Ocean View Guaranty, First-Citizens entered into the Ocean View Note Modification and continued to extend credit to Ocean View under the Ocean View CLA and Ocean View Note and as alleged above. A true and correct copy of the Bral Ocean View Guaranty is attached hereto as Exhibit "26" and incorporated herein by reference.

49. As alleged above, despite demand, Ocean View has failed to pay all sums due and owing under the Ocean View Loan documents.

50. Despite demand, Bral has paid no sums to the Bank as required pursuant to the terms of the Bral Ocean View Guaranty.

51. As alleged above, as a result of Ocean View's default under the Ocean View Loan documents, as of September 26, 2013, the following amounts are now due and payable by Ocean View under the Ocean View Loan documents, and by Bral under the Bral Ocean View Guaranty:

    a. Principal in an amount according to proof, but not less than the sum of $4,161,520.23;

Los Angeles, California 90048-4920
(323) 852-1000

b.    Interest on the unpaid principal in the sum in an amount according to proof; and

c.    Reasonable attorneys' fees and costs, in an amount according to proof.

52.    The Bank has duly performed all of the conditions precedent on its part required to be performed under the Ocean View Loan documents and the Bral Ocean View Guaranty, except for those covenants and conditions as to which the Bank is excused from performance due to Defendants' conduct.

## FOURTH CAUSE OF ACTION

### (Breach of Guaranty against Beitler and Does 46-60)

### (AFG Investment Fund 6, LLC Loan)

53.    Plaintiff incorporates by reference Paragraphs 1 through 9 above as though set forth herein in full.

54.    On or about October 23, 2006, AFG Investment Fund 6, LLC ("AFG") for value received, executed and delivered to First Regional a Promissory Note in the principal amount of $2,080,000.00 ("AFG Note"), evidencing a loan from First Regional to AFG in that amount ("AFG Loan").  A true and correct copy of the AFG Note is attached hereto as Exhibit "27" and is incorporated herein by this reference.

55.    The AFG Note provides that AFG will pay regular monthly payments of accrued unpaid interest beginning on December 1, 2006, with all outstanding principal and interest due on a maturity date of November 1, 2008.  The Note also provides that interest will accrue at the Wall Street Journal Prime Rate (the "Index") as that rate may change from time to time, resulting in an initial rate of 8.250%, but that the interest rate would never be less than 8.250%.  The Note further provides that in the event of default, the variable interest rate on the Note will immediately increase by adding a 7.000 percentage point margin (the "Default Rate Margin"), and further that, Borrower will be charged 10.000% of the unpaid portion of the regularly scheduled payment or $20.00, whichever is greater, if a payment is 10 or more days late ("Late Charge").

1       56.    The AFG Note provides that any default of a guarantor of the AFG Note on any

2  obligation of the guarantor will constitute an event of default under the AFG Note.

3       57.    In connection with the AFG Loan, AFG executed and delivered to First Regional a

4  Mortgage dated October 23, 2006, (the "AFG Mortgage"), against certain real property located in ·

5  the State of Iowa described therein ("Iowa Property"), which was recorded in the Official Records

6  of Pottawattamie County, Iowa, as Instrument No. 007044 on October 25, 2006. A true and

7  correct copy of the AFG Mortgage is attached hereto as Exhibit "28" and is incorporated herein

8  by reference.

9       58.    To induce First Regional to make the AFG Loan, on or about October 23, 2006,

10  Beitler executed and delivered to First Regional a continuing unlimited Commercial Guaranty

11  ("AFG Beitler Guaranty"). The AFG Beitler Guaranty provides, among other things, that

12  "Guarantor's liability is unlimited and the obligations of Guarantor are continuing," and that the

13  AFG Beitler Guaranty guarantees "any and all [of AFG's] liabilities, obligations and debts . . .

14  now existing or hereafter arising." The AFG Beitler Guaranty further provides that Beitler will

15  pay "all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal

16  expenses, incurred in connection with the enforcement of this Guaranty." The AFG Beitler

17  Guaranty further provides, among other things, that "Lender may collect from Guarantor without

18  first foreclosing on any real or personal property collateral pledged by [AFG]" and that First

19  Regional may proceed against Beitler before proceeding against AFG or any other person. In

20  reliance in part on the AFG Beitler Guaranty, First Regional extended credit and continued to

21  extend credit to AFG under the AFG Note and as alleged below. A true and correct copy of the

22  AFG Beitler Guaranty is attached hereto as Exhibit "29" and incorporated herein by reference.

23       59.    On or about November 1, 2008, AFG entered into a Change in Terms Agreement

24  (AFG CTA 1") which, among other things, extended the maturity date of the AFG Loan to

25  February 1, 2009, increased the interest rate to the Index plus 2.000%, and changed the floor to

26  6.000%. A true and correct copy of the AFG CTA 1 is attached hereto as Exhibit "30" and

27  incorporated herein by reference.

28

1310668.1 | 100102-0150               14
VERIFIED COMPLAINT                   EXHIBIT "1"
Page 36

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

60.     On or about February 1, 2009, AFG entered into a Change in Terms Agreement which, among other things, extended the maturity date of the AFG Loan to February 1, 2010 (AFG CTA 2"). A true and correct copy of the AFG CTA 2 is attached hereto as Exhibit "31" and incorporated herein by reference.

61.     AFG executed and delivered to First Regional a Modification of Mortgage dated February 1, 2009, (the "AFG Mortgage Modification"), which, among other things, modified the AFG Deed of Trust to also secure the AFG CTA 2. A true and correct copy of the AFG Mortgage Modification is attached hereto as Exhibit "32" and is incorporated herein by reference.

62.     On or about January 29, 2010, First-Citizens acquired First Regional's interest in the AFG Loan from the FDIC as receiver for First Regional by the Purchase and Assumption Agreement alleged above. On or about September 3, 2010, the FDIC executed an Assignment of Note and Security Instruments Without Recourse ("AFG Assignment") which, among other things, assigned all interest in the AFG Beitler Guaranty to First-Citizens. A true and correct copy of the AFG Assignment is attached hereto as Exhibit "33" and is incorporated herein by reference. On or about April 2, 2012, the FDIC executed and Assignment (Iowa) ("AFG Iowa Assignment") which, among other things, assigned all interest in the AFG Beitler Guaranty to First-Citizens, and which was recorded in the Official Records of Pottawattamie County, Iowa, as Instrument No. 2012-05596 on April 20, 2012. A true and correct copy of the AFG Iowa Assignment is attached hereto as Exhibit "34" and is incorporated herein by reference.

63.     On or about February 1, 2010, AFG entered into a Change in Terms Agreement which, among other things, extended the maturity date of the AFG Loan to July 1, 2010 and changed the interest rate to the Index plus 2.000%, with a floor of 6.000% (AFG CTA 2"). A true and correct copy of the AFG CTA 2 is attached hereto as Exhibit "35" and incorporated herein by reference.

64.     On or about January 20, 2011, AFG and the Bank entered into a Note Modification Agreement ("AFG Note Modification 1") which, among other things, extended the maturity date of the AFG Loan to May 1, 2011, changed the Late Charge to 5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater, if a payment is 11 or

VERIFIED COMPLAINT

EXHIBIT "1"
Page 37

more days late, and provided that in the event of default, First-Citizens could increase the interest rate on the AFG Loan up to 18%. A true and correct copy of the AFG Note Modification 1 is attached hereto as Exhibit "36" and is incorporated herein by reference.

65. On or about April 20, 2012, AFG entered into a Note Modification Agreement ("AFG Note Modification 2") which, among other things, extended the maturity date of the AFG Loan to June 6, 2012, changed the Late Charge to 5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater, if a payment is 11 or more days late, and provided that in the event of default, First-Citizens could increase the interest rate on the AFG Loan up to 18%. A true and correct copy of the AFG Note Modification 2 is attached hereto as Exhibit "37" and is incorporated herein by reference.

66. AFG defaulted on the AFG Loan by, among other things, failing to pay the AFG Loan in full on the maturity date of June 6, 2012. Additionally, the AFG Loan is in default by reason of Beitler's failure to repay certain other indebtedness guaranteed by Beitler, including but not limited to the Trax and Ocean View Loans alleged above. On or about November 30, 2012, the Bank gave written notice to AFG and Beitler of said default. A true and correct copy of the Bank's letter is attached hereto as Exhibit "38" and is incorporated herein by reference.

67. Despite demand, AFG has failed to pay all sums due and owing under the AFG Loan documents.

68. Despite demand, Beitler has paid no sums to the Bank as required pursuant to the terms of the AFG Beitler Guaranty.

69. As a result of AFG's default under the AFG Loan documents, as of September 26, 2013, the following amounts are now due and payable by AFG under the AFG Loan documents, and by Beitler under the AFG Beitler Guaranty:

        a.     Principal in an amount according to proof, but not less than the sum of $1,748,151.21;

        b.     Interest on the unpaid principal in the sum in an amount according to proof; and

        c.     Reasonable attorneys' fees and costs, in an amount according to proof.

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

70.     The Bank has duly performed all of the conditions precedent on its part required to be performed under the AFG Loan documents and the AFG Beitler Guaranty, except for those covenants and conditions as to which the Bank is excused from performance due to Defendants' conduct.

### FIFTH CAUSE OF ACTION

**(Breach of Guaranty against Hayden and Does 46-60)**

**(AFG Investment Fund 6, LLC Loan)**

71.     Plaintiff incorporate by reference Paragraphs 1 through 9, 54 through 57, and 59 through 66 above as though set forth herein in full.

72.     To induce First Regional to make the AFG Loan, on or about October 23, 2006, Hayden executed and delivered to First Regional a continuing unlimited Commercial Guaranty ("AFG Hayden Guaranty"). The AFG Hayden Guaranty provides, among other things, that "Guarantor's liability is unlimited and the obligations of Guarantor are continuing," and that the AFG Hayden Guaranty guarantees "any and all [of AFG's] liabilities, obligations and debts . . . now existing or hereafter arising." The AFG Hayden Guaranty further provides that Hayden will pay "all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty." The AFG Hayden Guaranty further provides, among other things, that "Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by [AFG]" and that First Regional may proceed against Hayden before proceeding against AFG or any other person. In reliance in part on the AFG Hayden Guaranty, First Regional extended credit and continued to extend credit to AFG under the AFG Note and as alleged below. A true and correct copy of the AFG Hayden Guaranty is attached hereto as Exhibit "39" and incorporated herein by reference.

73.     As alleged above, AFG defaulted on the AFG Loan by, among other things, failing to pay the AFG Loan in full on the maturity date of June 6, 2012. Additionally, the AFG Loan is in default by reason of Beitler's failure to repay certain other indebtedness guaranteed by Beitler, including but not limited to the Trax and Ocean View Loans alleged above. On or about

LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   November 30, 2012, the Bank gave written notice to AFG and Hayden of said default. Despite

2   demand, AFG has failed to pay all sums due and owing under the AFG Loan documents.

3       74.    Despite demand, Hayden has paid no sums to the Bank as required pursuant to the

4   terms of the AFG Hayden Guaranty.

5       75.    As a result of AFG's default under the AFG Loan documents, as of September 26,

6   2013, the following amounts are now due and payable by AFG under the AFG Loan documents,

7   and by Hayden under the AFG Hayden Guaranty:

8           a.    Principal in an amount according to proof, but not less than the sum of

9              $1,748,151.21;

10          b.    Interest on the unpaid principal in the sum in an amount according to proof;

11             and

12          c.    Reasonable attorneys' fees and costs, in an amount according to proof.

13      76.    The Bank has duly performed all of the conditions precedent on its part required to

14  be performed under the AFG Loan documents and the AFG Hayden Guaranty, except for those

15  covenants and conditions as to which the Bank is excused from performance due to Defendants'

16  conduct.

17

18      **WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

19      <u>**AS TO THE FIRST CAUSE OF ACTION:**</u>

20      1.    For a judgment against Beitler and Does 1 through 15, inclusive, and each of them,

21  for the following amounts:

22          a.    Principal in the amount according to proof, but not less than the sum

23             $7,601.170.58;

24          b.    Interest in an amount according to proof;

25          c.    Late fees in an amount according to proof; and

26          d.    Costs and reasonable attorneys' fees in an amount according to proof.

27      <u>**AS TO THE SECOND CAUSE OF ACTION:**</u>

28      2.    For a judgment against Beitler and Does 16 through 30, inclusive, and each of

*(left margin, vertical text)* LOS ANGELES, CALIFORNIA 90048-4920 (323) 852-1000

them, for the following amounts:

   a.    Principal in the amount according to proof, but not less than the sum
         $4,161,520.23;

   b.    Interest in an amount according to proof;

   c.    Late fees in an amount according to proof; and

   d.    Costs and reasonable attorneys' fees in an amount according to proof.

**AS TO THE THIRD CAUSE OF ACTION:**

2.    For a judgment against Bral and Does 31 through 45, inclusive, and each of them,
for the following amounts:

   a.    Principal in the amount according to proof, but not less than the sum
         $4,161,520.23;

   b.    Interest in an amount according to proof;

   c.    Late fees in an amount according to proof; and

   d.    Costs and reasonable attorneys' fees in an amount according to proof.

**AS TO THE FOURTH CAUSE OF ACTION:**

3.    For a judgment against Beitler and Does 46 through 60, inclusive, and each of
them, for the following amounts:

   a.    Principal in the amount according to proof, but not less than the sum
         $1,748,151.21;

   b.    Interest in an amount according to proof;

   c.    Late fees in an amount according to proof; and

   d.    Costs and reasonable attorneys' fees in an amount according to proof.

**AS TO THE FIFTH CAUSE OF ACTION:**

4.    For a judgment against Hayden and Does 61 through 75, inclusive, and each of
them, for the following amounts:

   a.    Principal in the amount according to proof, but not less than the sum
         $1,748,151.21;

   b.    Interest in an amount according to proof;

3333 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1        c.      Late fees in an amount according to proof; and

2        d.      Costs and reasonable attorneys' fees in an amount according to proof.

3      **AS TO ALL CAUSES OF ACTION:**

4     5.     For costs of suit incurred herein; and

5     6.     For such other and further relief as the Court deems just and proper.

6

7  DATED: October 24, 2013       FRANDZEL ROBINS BLOOM & CSATO, L.C.
                             PETER CSATO

8                             ALAN H. FAIRLEY

9

10                        By:

11                          PETER CSATO

12                          Attorneys for Plaintiff First-Citizens Bank & Trust
                          Company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1310668.1 | 100102-0150

20

**VERIFIED COMPLAINT**

1

## VERIFICATION

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3      I have read the foregoing VERIFIED COMPLAINT and know its contents.

4  ☐    I am a party to this action.  The matters stated in the foregoing document are true of my own
knowledge except as to those matters which are stated on information and belief, and as to those
5  matters I believe them to be true.

6  ☒    I am a Senior Commercial Resolution Officer of First-Citizens Bank & Trust Company, a
party to this action, and am authorized to make this verification for and on its behalf, and I make this
7  verification for that reason.

8      ☒    I am informed and believe and on that ground allege that the matters stated in the
foregoing document are true.

9

10      ☐    The matters stated in the foregoing document are true of my own knowledge except
as to those matters which are stated on information and belief, and as to those matters
I believe them to be true.

11

12  ☐    I am one of the attorneys for First Regional Bank, a party to this action.  Such party is absent
from the county where such attorneys have their offices, and I make this verification for and on
13  behalf of that party for that reason.  I am informed and believe and on that ground allege that the
matters stated in the foregoing document are true.

14      Executed on October 24, 2013, at Glendale, California.

15      I declare under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.

16

17

18    Bob Plavchak                        Signature
Print Name of Signatory

19

20

21

22

23

24

25

26

27

28

EXHIBIT "1"
Page 43

# EXHIBIT "C"

STEWART TITLE OF CALIFORNIA INC.
MAJOR ACCOUNTS DIVISION
01180-53257

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

HANKEY CAPITAL, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attention: Eugene M. Leydiker

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

2014000234587 8:56 am 06/16/14
105 409 A30 F13  4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

(space above this line for recorder's use only)

## ASSIGNMENT OF

## ASSIGNMENT OF DEED OF TRUST AND ASSIGNMENT OF RENTS

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HANKEY CAPITAL, LLC, a California limited liability company, all beneficial interest under that certain Assignment of Deed of Trust and Assignment of Rents dated June 13, 2014, executed by FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina commercial bank, Assignor, to STEWARD FINANCIAL LLC, a California limited liability company, Assignee, and recorded as Instrument No. 2014000234100 on June 13, 2014 in the Official Records in the County Recorder's office of Orange County, California, relating to Assignor's beneficial interest in (a) that certain Construction Deed of Trust executed by Ocean View Medical Investors, LLC, a California limited liability company, and BAB 8, LLC, a California limited liability company, collectively as Borrower and Trustor, to Lawyers Title Company, as Trustee, in favor of FIRST REGIONAL BANK, as beneficiary, dated as of October 5, 2005 and recorded on October 12, 2005 in the Official Records of Orange County, California, as Instrument No. 2005000821196 (the "Deed of Trust"), and (b) that certain Assignment of Rents executed by Borrower, dated October 5, 2005 and recorded on October 12, 2005 in the Official Records of Orange County, California as Instrument No. 2005000821197 (the "Assignment of Rents"), which encumber certain real property commonly known as 441 Old Newport Road, Newport Beach, California as more particularly described in the Deed of Trust and in the Assignment of Rents and Exhibit "A" attached hereto and incorporated herein by this reference.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

STEWARD FINANCIAL LLC,
a California limited liability company

Dated: _5-15-14_____

By:_____
Barry Beitler, Managing Member

State of California

County of _LOS ANGELES_

On _MAY 15, 2014_ before me, _M. KHONSARI_, a Notary
Public, personally appeared _BARRY BEITLER_, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

M. KHONSARI
COMM # 2051807
LOS ANGELES COUNTY
NOTARY PUBLIC-CALIFORNIA
MY COMMISSION EXPIRES
DEC. 12, 2017

EXHIBIT A

Legal Description

PARCEL 1 OF PARCEL MAP NO. 80-179, IN THE CITY OF NEWPORT BEACH,
COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP FILED
IN BOOK 163, PAGES 31 AND 32 OF PARCEL MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

APN: 425-271-12

## ALLONGE

This Allonge is affixed to and is hereby made a part of that certain that Promissory Note dated October 5, 2005, in the principal face amount of $4,725,000.00, executed by Ocean View Medical Investors, LLC, a California limited liability company, and BAB 8, LLC, a California limited liability company, originally in favor of First Regional Bank, a California banking corporation, and currently held by FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina commercial bank ("Seller"), and evidences the endorsement of the Note by Seller, as provided in that certain Non-Recourse Loan Sale Agreement dated June 9, 2014, between Seller and the endorsee hereon, to wit:

PAY TO THE ORDER OF STEWARD FINANCIAL LLC, a California limited liability company, without recourse or warranty.

Dated: June 13, 2014

SELLER:

FIRST-CITIZENS BANK & TRUST COMPANY,
a North Carolina commercial bank

By: _____
Name: _ROBERT J. PLANCHEK_
Title: _SENIOR VICE PRESIDENT_

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $4,725,000.00 | 10-05-2005 | 10-01-2007 | 9744781 | 1A / 74 | | RED | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Ocean View Medical Investors, LLC
BAB 8, LLC
825 S. Barrington Avenue
Los Angeles, CA 90049

**Lender:** FIRST REGIONAL BANK
South Bay Regional Office
990 West 190th Street, Suite 440
Torrance, CA 90502
(310) 538-1776

---

**Principal Amount: $4,725,000.00**    **Initial Rate: 7.250%**    **Date of Note: October 5, 2005**

**PROMISE TO PAY.** Ocean View Medical Investors, LLC; and BAB 8, LLC ("Borrower") jointly and severally promise to pay to FIRST REGIONAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Million Seven Hundred Twenty-five Thousand & 00/100 Dollars ($4,725,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on October 1, 2007. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning November 1, 2005, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 6.750%. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 0.500 percentage points over the Index, resulting in an initial rate of 7.250%. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 7.250% or more than the maximum rate allowed by applicable law.

**PREPAYMENT FEE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment fee: The principal amount due on this Note may be prepaid in full at any time on thirty (30) days' prior written notice. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST REGIONAL BANK, 1801 Century Park East Los Angeles, CA 90067.

**INTEREST RESERVES.** Borrower authorizes Lender to place $50,000.00 of the Principal Amount as an interest reserve, which is an estimate of the interest due on the Note ("Interest Reserve"). All interest payments shall be paid from the Interest Reserve. Lender may automatically deduct accrued unpaid interest from the Interest Reserve. Interest will accrue, as described in this Note, on amounts deducted from the Interest Reserve. In the event the interest due under this Note exceeds the Interest Reserve, Borrower will pay accrued unpaid interest when due according to the terms of this Note. Upon maturity, Lender will not advance or disburse the remaining Interest Reserve, if any, to Borrower. The principal due upon maturity will not include any remaining Interest Reserve.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $20.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase to 7.500 percentage points over the Index, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help,

# PROMISSORY NOTE
## (Continued)

repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Construction Deed of Trust dated October 5, 2005, to a trustee in favor of Lender on real property located in Orange County County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Construction Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract; contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Borrower. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in Orange County County, State of California.

(C) Inventory, chattel paper, accounts, equipment, general intangibles and fixtures described in a Commercial Security Agreement dated October 5, 2005.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**ADDITIONAL PRORATED LOAN FEE.** In the event, and if for any reason, the Loan is not paid by the maturity date of the Note and Lender allows the Loan to continue whether by formal or informal agreement, the Borrower agrees to pay a fee, which is to be established at maturity, for each consecutive thirty day period or any portion thereof the Loan is allowed to run, in addition to the interest provided in the Note, which fee shall be not less than the proportionate amount of the fee for the initial period of the Loan.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

EXHIBIT "1"
Page 51  **54**

Case 8:17-bk-10706-SC    Claim 20    Filed 06/18/17    Desc Main Document    Page 33 of
106    Page 57 of 127

**PROMISSORY NOTE**
**(Continued)**

Loan No: 9744781                                                                    Page 3

---

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

OCEAN VIEW MEDICAL INVESTORS, LLC

By: _____                By: _____
Barry Beitler, Managing Member of Ocean View           John Brar, Managing Member of Ocean View
Medical Investors, LLC                                 Medical Investors, LLC

BAB 8, LLC

By: _____
Barry Beitler, Managing Member of BAB 8, LLC

---

LASER PRO Lending, Ver. 5.29.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - CA  W:\LAPPROC\FALPL\D20.FC  TR-1840  PR-56

*1320190 — 2019479*

## ALLONGE
### To be attached to the following identified instrument

Loan No.:   9744781

Type of Instrument:   PROMISSORY NOTE

Date of Instrument:   10/5/2005          Original Principal Amount: $4,725,000.00

Original Borrower(s)/Maker(s):   OCEAN VIEW MEDICAL INVESTORS LLC

Original Lender/Payee:   First Regional Bank

This Allonge applies to the foregoing instrument and (i) all extensions, renewals, modifications, amendments, restatements, consolidations, and/or increases thereof, (ii) all changes in terms relating thereto, and (iii) all notes, credit agreements, and other instruments given in replacement of, in substitution for, to correct, or to refinance the foregoing instrument.

**PAY TO THE ORDER OF FIRST-CITIZENS BANK & TRUST COMPANY, WITHOUT RECOURSE.**

Date:   9/02/2010          **FEDERAL DEPOSIT INSURANCE CORPORATION**
                           **as Receiver for First Regional Bank**

                           By: _____
                           Name: Karen Ashe
                           Title: Attorney-In-Fact

**Background and Explanatory Note:** Great American Bank was chartered as a commercial bank under the laws of California in 1979. In 1987, it changed its name to First Regional Bank. On January 29, 2010, the California Department of Financial Institutions closed First Regional Bank and appointed the Federal Deposit Insurance Corporation as receiver. Immediately thereafter, First-Citizens Bank & Trust Company, a North Carolina-chartered commercial bank, acquired most of the assets and assumed most of the liabilities of First Regional Bank pursuant to a "Purchase and Assumption Agreement" between First-Citizens Bank & Trust Company, the Federal Deposit Insurance Corporation in its corporate capacity, and the Federal Deposit Insurance Corporation in its capacity as Receiver for First Regional Bank. The assets purchased by First-Citizens Bank & Trust Company include the instrument identified in this Allonge.

First Regional Bank Allonge (7-10)

1  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
2  TOM LALLAS (SBN 66512)
   815 Moraga Drive
3  Los Angeles, California 90049-1633
   Telephone:    (310) 471-3000
4  Facsimile:    (310) 471-7990

5  Attorneys for Assignees of Plaintiff

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 10 2014

Sherri R. Carter, Executive Officer/Clerk

By K. Tollack, Deputy

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

| | |
|---|---|
| 11  FIRST-CITIZENS BANK & TRUST<br>12  COMPANY, a North Carolina corporation,<br><br>13              Plaintiff,<br><br>     vs.<br>14<br>    BARRY BEITLER, an individual; JOHN BRAL,<br>15  an individual; JEFF HAYDEN, an individual;<br>    and DOES 1-75, inclusive,<br>16<br>17              Defendants. | Case No.    BC 525778<br><br>*[Hon. Holly E. Kendig; Dept. "42"]*<br><br><br>**STIPULATION FOR SUBSTITUTION<br>OF PLAINTIFF** |

18

19

20

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS

1507611.4

---

STIPULATION FOR SUBSTITUTION OF PLAINTIFF

EXHIBIT 3

1          Plaintiff First-Citizens Bank & Trust Company ("First-Citizens"), on the one hand, and

2  its assignees, Steward Financial LLC ("Steward") and AFG Investment Fund 7 LLC ("AFG 7"),

3  on the other hand, hereby enter into this Stipulation with reference to the following facts:

4                              **RECITALS**

5      A.    On October 25, 2013, First-Citizens filed its Verified Complaint ("Complaint") in

6              the above-captioned action.

7      B.    The First Cause of Action alleged in the Complaint is alleged against Barry

8              Beitler ("Beitler") for breach of guaranty with respect to a loan made to Trax 11,

9              LLC (the "Trax Loan").

10     C.    First-Citizens will promptly dismiss the First Cause of Action of the Complaint.

11     D.    The Second and Third Causes of Action alleged in the Complaint are alleged

12             against Beitler and John Bral ("Bral"), respectively, for breach of guaranty with

13             respect to a loan made to Ocean View Medical Investors, LLC, and BAB 8, LLC

14             (the "Ocean View Loan").

15     E.    Pursuant to a Non-Recourse Loan Sale Agreement dated June 9, 2014, First-

16             Citizens has sold and assigned to Steward the rights and interests of First-Citizens

17             in the Ocean View Loan, including without limitation the Second and Third

18             Causes of Action in the Complaint herein.

19     F.    The Fourth and Fifth Causes of Action alleged in the Complaint are alleged

20             against Beitler and Jeffrey Hayden ("Hayden"), respectively, for breach of

21             guaranty with respect to a loan to AFG Investment Fund 6, LLC ("AFG 6").

22     G.    Pursuant to a Non-Recourse Loan Sale Agreement dated June 9, 2014, First-

23             Citizens has sold and assigned to AFG 7 the rights and interests of First-Citizens

24             in the AFG 6 loan, including without limitation the Fourth and Fifth Causes of

25             Action in the Complaint herein.

26     H.    Hayden has filed for Chapter 11 bankruptcy in the United States Bankruptcy

27             Court, Central District of California, Case No. 1:14-bk-11187 MT (the

28             "Bankruptcy Case"). This Stipulation is not, and is not intended to be, an act to

1507611.3                  1
**STIPULATION FOR SUBSTITUTION OF PLAINTIFF**

EXHIBIT "1"
Page 55    **58**

1   pursue any claim against Hayden in violation of the automatic stay resulting from

2   the Bankruptcy Case, but is merely intended to reflect the assignment by First-

3   Citizens to AFG 7 of its claim against Hayden.

4   I.   First-Citizens, on the one hand, and Steward and AFG 7, on the other hand,

5   hereby enter into this Stipulation in order to effect the substitution of the parties

6   who now hold the rights to the respective causes of action alleged in the

7   Complaint herein.

## STIPULATION

9   IT IS HEREBY STIPULATED AND AGREED by and between First-Citizens, on the

10   one hand, and Steward and AFG 7, on the other hand, as follows:

11   1.   Steward shall be substituted in as plaintiff in place of First-Citizens with respect

12   to the Second and Third Causes of Action alleged in the Complaint herein.

13   2.   AFG 7 shall be substituted in as plaintiff in place of First-Citizens with respect to

14   the Fourth and Fifth Causes of Action alleged in the Complaint herein.

15   3.   To reflect the foregoing substitutions, the name and caption of this action shall be

16   changed to "STEWARD FINANCIAL LLC and AFG INVESTMENT FUND 7

17   LLC, Plaintiffs, vs. BARRY BEITLER, an individual; JOHN BRAL, an

18   individual; JEFF HAYDEN, an individual; and DOES 1-75, inclusive,

19   Defendants."

20   4.   Except for the foregoing substitution of AFG 7 in place of First-Citizens, the

21   automatic stay resulting from the Bankruptcy Case remains in effect with respect

1507611.4

2

STIPULATION FOR SUBSTITUTION OF PLAINTIFF

to the Fifth Cause of Action against Hayden in this action.

DATED: July 9, 2014

FIRST-CITIZENS BANK & TRUST
COMPANY

By: _____
ROBERT J. PLAVCHAK, SENIOR VICE PRESIDENT

DATED: July 9, 2014

STEWARD FINANCIAL LLC

By: _____
BARRY BEITLER, MANAGER

DATED: July 9, 2014

AFG INVESTMENT FUND 7 LLC

By: _____
BARRY BEITLER, MANAGER

APPROVED AS TO FORM:

DATED: July 9, 2014

FRANDZEL ROBINS BLOOM
& CSATO, L.C.
BOB BENJY

By: _____
BOB BENJY
Attorneys for Plaintiff
FIRST-CITIZENS BANK & TRUST
COMPANY

DATED: July 9, 2014

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS

By: _____
TOM LALLAS
Attorneys for Plaintiffs' Assignees
STEWARD FINANCIAL LLC and
AFG INVESTMENT FUND 7 LLC

30627

(507611).4

3

STIPULATION FOR SUBSTITUTION OF PLAINTIFF

## PROOF OF SERVICE

*STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:*

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles, California 90049.

    On July 10, 2014, I served the foregoing document, STIPULATION FOR SUBSTITUTION OF PLAINTIFF on the interested parties in this action by placing a true copy thereof in sealed envelope addressed as follows:

| | |
|---|---|
| Peter Csato, Esq.<br>Thomas Robins, Esq.<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>6500 Wilshire Blvd, 17th Floor<br>Los Angeles, CA 90048<br>Tel: (323) 852-1000<br>pcsato@frandzel.com<br>trobins@frandzel.com<br>*Attorneys for Plaintiff First-Citizens Bank & Trust Company* | David Seror, Esq.<br>Corey R. Weber, Esq.<br>EZRA BRUTZKUS GUBNER, LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Tel: (818) 827-9000<br>dseror@ebg-law.com<br>cweber@ebg-law.com<br>*Attorneys for Defendant Jeff Hayden* |
| Bobby Samini, Esq.<br>SAMINI SCHEINBERG, PC<br>949 South Coast Drive, Suite 420<br>Costa Mesa, CA 92626<br>Tel: (949) 724-0900<br>bsamini@saminilaw.com<br>*Attorneys for Defendant John Bral* | |

☒    **BY MAIL** [as noted above]

    ☒    I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with first class postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after date of deposit for mailing in this Proof of Service.

☒    **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July 10, 2014, at Los Angeles, California.

*[signature]*

Heidi Petrilli

---

**PROOF OF SERVICE**

1  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
2  TOM LALLAS (SBN 66512)
   815 Moraga Drive
3  Los Angeles, California 90049-1633
   Telephone:    (310) 471-3000
4  Facsimile:    (310) 471-7990

5  Attorneys for Assignees of Plaintiff

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 17 2014

Sherri R. Carter, Executive Officer/Clerk

By K. Tollack, Deputy

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11  FIRST-CITIZENS BANK & TRUST           Case No.       BC 525778
    COMPANY, a North Carolina corporation,
12                                         *[Hon. Holly E. Kendig; Dept. "42"]*
13                      Plaintiff,
                                           [~~PROPOSED~~] ORDER APPROVING
14        vs.                              STIPULATION FOR SUBSTITUTION
                                           OF PLAINTIFF
15  BARRY BEITLER, an individual; JOHN BRAL,
    an individual; JEFF HAYDEN, an individual;
16  and DOES 1-75, inclusive,

17                      Defendants.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

STIPULATION FOR SUBSTITUTION OF PLAINTIFF

EXHIBIT 1

The Court having considered the Stipulation for Substitution of Plaintiff between Plaintiff First-Citizens Bank & Trust Company ("First-Citizens"), on the one hand, and its assignees, Steward Financial LLC ("Steward") and AFG Investment Fund 7 LLC ("AFG 7"), on the other hand, and good cause appearing therefor,

IT IS HEREBY ORDERED as follows:

1.    Steward is hereby substituted in as plaintiff in place of First-Citizens with respect to the Second and Third Causes of Action alleged in the Complaint herein.

2.    AFG 7 is hereby substituted in as plaintiff in place of First-Citizens with respect to the Fourth and Fifth Causes of Action alleged in the Complaint herein.

3.    To reflect the foregoing substitutions, the name and caption of this action are hereby changed to "STEWARD FINANCIAL LLC and AFG INVESTMENT FUND 7 LLC, Plaintiffs, vs. BARRY BEITLER, an individual; JOHN BRAL, an individual; JEFF HAYDEN, an individual; and DOES 1-75, inclusive, Defendants."

4.    Except for the foregoing substitution of AFG 7 in place of First-Citizens, the automatic stay resulting from the Bankruptcy Case remains in effect with respect to the Fifth Cause of Action against Hayden in this action.

DATED: July 17, 2014

**HOLLY E. KENDIG**
_____
JUDGE OF THE SUPERIOR COURT

30628

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
235 MONTANA DRIVE
LOS ANGELES, CA 90049

1

STIPULATION FOR SUBSTITUTION OF PLAINTIFF

1
2

# PROOF OF SERVICE

3

*STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:*

4

     I am employed in the County of Los Angeles, State of California. I am over the age of 18

5

and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles, California 90049.

6

     On July 10, 2014, I served the foregoing document, [PROPOSED] ORDER

7

APPROVING STIPULATION FOR SUBSTITUTION OF PLAINTIFF on the interested parties in this action by placing a true copy thereof in sealed envelope addressed as follows:

8
9
10
11
12

| | |
|---|---|
| Peter Csato, Esq.<br>Thomas Robins, Esq.<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>6500 Wilshire Blvd, 17th Floor<br>Los Angeles, CA 90048<br>Tel: (323) 852-1000<br>pcsato@frandzel.com<br>trobins@frandzel.com<br>*Attorneys for Plaintiff First-Citizens Bank & Trust Company* | David Seror, Esq.<br>Corey R. Weber, Esq.<br>EZRA BRUTZKUS GUBNER, LLP<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Tel: (818) 827-9000<br>dseror@ebg-law.com<br>cweber@ebg-law.com<br>*Attorneys for Defendant Jeff Hayden* |
| Bobby Samini, Esq.<br>SAMINI SCHEINBERG, PC<br>949 South Coast Drive, Suite 420<br>Costa Mesa, CA 92626<br>Tel: (949) 724-0900<br>bsamini@saminilaw.com<br>*Attorneys for Defendant John Bral* | |

13
14
15
16

17

☒   **BY MAIL** [as noted above]

18
19
20

    ☒   I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with first class postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after date of deposit for mailing in this Proof of Service.

21

☒   **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

    Executed July 10, 2014, at Los Angeles, California.

23
24
25

                  Heidi Petrilli

26
27
28

---



# CONSTRUCTION LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|----------|-------------|---------|---------|----------|
| $4,725,000.00 | 10-05-2005 | 10-01-2007 | 974478 | 1A / A7 | | RED | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Ocean View Medical Investors, LLC  
BAB 6, LLC  
825 S. Barrington Avenue  
Los Angeles, CA 90049

**Lender:**  FIRST REGIONAL BANK  
South Bay Regional Office  
990 West 190th Street, Suite 440  
Torrance, CA 90502  
(310) 538-1776

THIS CONSTRUCTION LOAN AGREEMENT dated October 5, 2005, is made and executed between Ocean View Medical Investors, LLC; and BAB 6, LLC ("Borrower") and FIRST REGIONAL BANK ("Lender") on the following terms and conditions. Borrower has applied to Lender for one or more loans for purposes of constructing the Improvements on the Real Property described below. Lender is willing to lend the loan amount to Borrower solely under the terms and conditions specified in this Agreement and in the Related Documents, to each of which Borrower agrees. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of October 5, 2005, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**LOAN.** The Loan shall be in an amount not to exceed the principal sum of U.S. $4,725,000.00 and shall bear interest on so much of the principal sum as shall be advanced pursuant to the terms of this Agreement and the Related Documents. The Loan shall bear interest on each Advance from the date of the Advance in accordance with the terms of the Note. Borrower shall use the Loan Funds solely for the following specific purposes: Minimum advance of $20,000.00, no more than twice per month. The Loan amount shall be subject at all times to all maximum limits and conditions set forth in this Agreement or in any of the Related Documents, including without limitation, any limits relating to loan to value ratios and acquisition and Project costs.

**PROJECT DESCRIPTION.** The word "Project" as used in this Agreement means the construction and completion of all improvements contemplated by this Agreement, including without limitation the erection of the building or structure on the Real Property identified in this Agreement by Borrower and Lender, installation of equipment and fixtures, landscaping, and all other work necessary to make the Project usable and complete for the intended purposes. The Project includes the following work:

> To convert the medical building to support the Hoag Hospital and surrounding medical services.

The word "Property" as used in this Agreement means the Real Property together with all improvements, all equipment, fixtures, and other articles of personal property now or subsequently attached or affixed to the Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for any of such property, and all proceeds (including insurance proceeds and refunds of premiums) from any sale or other disposition of such property. The real estate described below constitutes the Real Property as used in this Agreement.

**FEES AND EXPENSES.** Whether or not the Project shall be consummated, Borrower shall assume and pay upon demand all out-of-pocket expenses incurred by Lender in connection with the preparation of loan documents and the making of the Loan, including without limitation the following: (A) all closing costs, loan fees, and disbursements; (B) all expenses of Lender's legal counsel; and (C) all title examination fees, title insurance premiums, appraisal fees, survey costs, required fees, and filing and recording fees.

**NO CONSTRUCTION PRIOR TO RECORDING OF SECURITY DOCUMENT.** Borrower will not permit any work or materials to be furnished in connection with the Project until (A) Borrower has signed the Related Documents; (B) Lender's mortgage or deed of trust and other Security Interests in the Property have been duly recorded and perfected; (C) Lender has been provided evidence, satisfactory to Lender, that Borrower has obtained all insurance required under this Agreement or any Related Documents and that Lender's liens on the Property and Improvements are valid perfected first liens, subject only to such exceptions, if any, acceptable to Lender.

**MULTIPLE BORROWERS.** This Agreement has been executed by multiple obligors who are referred to in this Agreement individually, collectively and interchangeably as "Borrower." Unless specifically stated to the contrary, the word "Borrower" as used in this Agreement, including without limitation all representations, warranties and covenants, shall include all Borrowers. Borrower understands and agrees that, with or without notice to any one Borrower, Lender may (A) make one or more additional secured or unsecured loans or otherwise extend additional credit with respect to any other Borrower; (B) with respect to any other Borrower alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (C) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (D) release, substitute, agree not to sue, or deal with any one or more of Borrower's or any other Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) determine how, when and what application of payments and credits shall be made on any indebtedness; (F) apply such security and direct the order or manner of sale of any Collateral, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) sell, transfer, assign or grant participations in all or any part of the Loan; (H) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (I) settle or compromise any indebtedness; and (J) subordinate the payment of all or any part of any of Borrower's indebtedness to Lender to the payment of any liabilities which may be due Lender or others.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any indebtedness exists:

> **Organization.** Ocean View Medical Investors, LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Ocean View Medical Investors, LLC is duly authorized to transact business in all other states in which Ocean View Medical Investors, LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Ocean View Medical Investors, LLC is doing business. Specifically, Ocean View Medical Investors, LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Ocean View Medical Investors, LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Ocean View Medical Investors, LLC maintains an office at 825 S. Barrington Avenue, Los Angeles, CA 90049. Unless Ocean View Medical Investors, LLC has designated otherwise in writing, the principal office is the office at which Ocean View Medical Investors, LLC keeps its books and records including its records concerning the Collateral. Ocean View Medical Investors, LLC will notify Lender prior to any change in the location of Ocean View Medical Investors, LLC's state of organization or any change in Ocean View Medical Investors, LLC's name. Ocean View Medical Investors, LLC shall do all things

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Loan No: 9744781                                                                                          Page 2

necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Ocean View Medical Investors, LLC and Ocean View Medical Investors, LLC's business activities.

BAB 8, LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. BAB 8, LLC is duly authorized to transact business in all other states in which BAB 8, LLC is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which BAB 8, LLC is doing business. Specifically, BAB 8, LLC is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. BAB 8, LLC has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. BAB 8, LLC maintains an office at 825 S. Barrington Avenue, Los Angeles, CA 90049. Unless BAB 8, LLC has designated otherwise in writing, the principal office is the office at which BAB 8, LLC keeps its books and records including its records concerning the Collateral. BAB 8, LLC will notify Lender prior to any change in the location of BAB 8, LLC's state of organization or any change in BAB 8, LLC's name. BAB 8, LLC shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to BAB 8, LLC and BAB 8, LLC's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3). Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, and all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**Title to Property.** Borrower has, or on the date of first disbursement of Loan proceeds will have, good and marketable title to the Collateral free and clear of all defects, liens, and encumbrances, excepting only liens for taxes, assessments, or governmental charges or levies not yet delinquent or payable without penalty or interest, and such liens and encumbrances as may be approved in writing by the Lender. The Collateral is contiguous to publicly dedicated streets, roads, or highways providing access to the Collateral.

**Project Costs.** The total cost for the Project shall not exceed $6,249,878.00. The Project costs are true and accurate estimates of the costs necessary to complete the Improvements in a good and workmanlike manner according to the Plans and Specifications presented by Borrower to Lender, and Borrower shall take all steps necessary to prevent the actual cost of the Improvements from exceeding the Project costs.

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Loan No: 9744781                                                                                                      Page 3

**Utility Services.** All utility services appropriate to the use of the Project after completion of construction are available at the boundaries of the Collateral.

**Assessment of Property.** The Collateral is and will continue to be assessed and taxed as an independent parcel by all governmental authorities.

**Compliance with Governing Authorities.** Borrower has examined and is familiar with all the easements, covenants, conditions, restrictions, reservations, building laws, regulations, zoning ordinances, and federal, state, and local requirements affecting the Project. The Project will at all times and in all respects conform to and comply with the requirements of such easements, covenants, conditions, restrictions, reservations, building laws, regulations, zoning ordinances, and federal, state, and local requirements.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement may be terminated in the manner provided above, whichever is the last to occur.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Equity Funds.** Borrower shall provide evidence of equity funds totaling $1,249,878.00 prior to the initial advance from the Loan Fund. Lender may, at Lender's option, require that the equity funds be deposited with Lender as a portion of the Loan Fund, which funds shall be disbursed prior to any Loan proceeds.

**Approval of Contractors, Subcontractors, and Materialmen.** Lender shall have approved a list of all contractors employed in connection with the construction of the Improvements, showing the name, address, and telephone number of each contractor, a general description of the nature of the work to be done, the labor and materials to be supplied, the names of materialmen, if known, and the approximate dollar value of the labor, work, or materials with respect to each contractor or materialman. Lender shall have the right to communicate with any person to verify the facts disclosed by the list or by any application for any Advance, or for any other purpose.

**Plans, Specifications, and Permits.** Lender shall have received and accepted a complete set of written Plans and Specifications setting forth all Improvements for the Project, and Borrower shall have furnished to Lender copies of all permits and requisite approvals of any governmental body necessary for the construction and use of the Project.

**Architect's and Construction Contracts.** Borrower shall have furnished in form and substance satisfactory to Lender an executed copy of the Architect's Contract and an executed copy of the Construction Contract.

**Related and Support Documents.** Borrower shall provide to Lender in form satisfactory to Lender the following support documents for the Loan: Assignment of Architect's Contract and Assignment of Construction Contract.

**Budget and Schedule of Estimated Advances.** Lender shall have approved detailed budget and cash flow projections of total Project costs and a schedule of the estimated amount and time of disbursements of each Advance.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the consummation of the Project and duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, in their sole discretion, may require.

**Bond.** If requested by Lender, Borrower shall have furnished a performance and payment bond in an amount equal to 100% of the amount of the Construction Contract, as well as a materialmen's and mechanics' payment bond, with such riders and supplements as Lender may require, each in form and substance satisfactory to Lender, naming the General Contractor as principal and Lender as an additional obligee. Any required bonds and the contracts which they cover must be duly recorded or filed in accordance with California Civil Code Section 3235, if required by Lender.

**Appraisal.** If required by Lender, an appraisal shall be prepared for the Property, at Borrower's expense, which in form and substance shall be satisfactory to Lender, in Lender's sole discretion, including applicable regulatory requirements.

**Plans and Specifications.** If requested by Lender, Borrower shall have assigned to Lender on Lender's forms the Plans and Specifications for the Project.

**Environmental Report.** If requested by Lender, Borrower shall have furnished to Lender, at Borrower's expense, an environmental report and certificate on the Property in form and substance satisfactory to Lender, prepared by an engineer or other expert satisfactory to Lender stating that the Property complies with all applicable provisions and requirements of the "Hazardous Substances" paragraph set forth in this Agreement.

**Soil Report.** If requested by Lender, Borrower shall have furnished to Lender, at Borrower's expense, a soil report for the Property in form and substance satisfactory to Lender, prepared by a registered engineer satisfactory to Lender stating that the Property is free from soil or other geological conditions that would preclude its use or development as contemplated without extra expense for precautionary, corrective or remedial measures.

**Survey.** If requested by Lender, Borrower shall have furnished to Lender a survey of recent date, prepared and certified by a qualified surveyor and providing that the Improvements, if constructed in accordance with the Plans and Specifications, shall lie wholly within the boundaries of the Collateral without encroachment or violation of any zoning ordinances, building codes or regulations, or setback requirements, together with such other information as Lender in its sole discretion may require.

**Zoning.** Borrower shall have furnished evidence satisfactory to Lender that the Collateral is duly and validly zoned for the construction, maintenance, and operation of the Project.

**Title Insurance.** Borrower shall have provided to Lender an ALTA Lender's extended coverage policy of title insurance with such endorsements as Lender may require, issued by a title insurance company acceptable to Lender and in a form, amount, and content satisfactory to Lender, insuring or agreeing to insure that Lender's security agreement or other security document on the Property is or will be upon recordation a valid first lien on the Property free and clear of all defects, liens, encumbrances, and exceptions except those as specifically accepted by Lender in writing. If requested by Lender, Borrower shall provide to Lender, at Borrower's expense, a foundation endorsement (CLTA 102.5 or its equivalent) to the title policy upon the completion of each foundation for the Improvements, showing no encroachments, and upon completion an endorsement which insures the lien-free completion of the Improvements (CLTA 101 series, as required by Lender). Specifically, Borrower shall provide to Lender the following title insurance endorsements: 100, 116, 102.5, 103.7, 111.5, 8.1.

**Insurance.** Unless waived by Lender in writing, Borrower shall have delivered to Lender the following insurance policies or evidence thereof: (a)

EXHIBIT "1"
Page 64    **99**

**Loan No: 9744781**

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Page 4

an all risks course of construction insurance policy (builder's risk), with extended coverage covering the Improvements issued in an amount and by a company acceptable to Lender, containing a loss payable or other endorsement satisfactory to Lender insuring Lender as mortgagee, together with such other endorsements as may be required by Lender, including stipulations that coverage will not be canceled or diminished without at least thirty (30) days prior written notice to Lender; (b) owners and General Contractor general liability insurance, public liability and workmen's compensation insurance; (c) flood insurance if required by Lender or applicable law; and, (d) all other insurance required by this Agreement or by the Related Documents.

**Workers' Compensation Coverage.** Provide to Lender proof of the General Contractor's compliance with all applicable workers' compensation laws and regulations which will all work performed on the Project.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Satisfactory Construction.** All work usually done at the stage of construction for which disbursement is requested shall have been done in a good and workmanlike manner and all materials and fixtures usually furnished and installed at that stage of construction shall have been furnished and installed, all in compliance with the Plans and Specifications. Borrower shall also have furnished to Lender such proofs as Lender may require to establish the progress of the work, compliance with applicable laws, freedom of the Property from liens, and the basis for the requested disbursement.

**Certification.** Borrower shall have furnished to Lender a certification by an engineer, architect, or other qualified inspector acceptable to Lender that the construction of the Improvements has complied and will continue to comply with all applicable statutes, ordinances, codes, regulations, and similar requirements.

**Lien Waivers.** Borrower shall have obtained and attached to each application for an Advance, including the Advance to cover final payment to the General Contractor, executed acknowledgments of payments of all sums due and releases of mechanic's liens, satisfactory to Lender, from any party having lien rights, which acknowledgments of payment and releases of liens shall cover all work, labor, equipment, materials done, supplied, performed, or furnished prior to such application for an Advance.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**DISBURSEMENT OF LOAN FUNDS.** The following provisions relate to the disbursement of funds from the Loan Fund.

**Application for Advances.** Each application shall be stated on a standard AIA payment request form or other form approved by Lender, executed by Borrower, and supported by such evidence as Lender shall reasonably require. Borrower shall apply only for disbursement with respect to work actually done by the General Contractor and for materials and equipment actually incorporated into the Project. Each application for an Advance shall be deemed a certification of Borrower that as of the date of such application, all representations and warranties contained in the Agreement are true and correct, and that Borrower is in compliance with all of the provisions of this Agreement. Under no circumstances shall Lender be required to make any Loan Advance in an amount less than 20,000.00.

**Loan to Value.** Unless waived by Lender in writing, the ratio of the amount of the Loan to the Value of the Property as completed shall not exceed 73.200%.

**Payments.** At the sole option of Lender, Advances may be paid in the joint names of Borrower and the General Contractor, subcontractor(s), or supplier(s) in payment of sums due under the Construction Contract. At its sole option, Lender may directly pay the General Contractor and any subcontractors or other parties the sums due under the Construction Contract. Borrower appoints Lender as its attorney-in-fact to make such payments. This power shall be deemed coupled with an interest, shall be irrevocable, and shall survive an Event of Default under this Agreement.

**Projected Cost Overruns.** If Lender at any time determines in its sole discretion that the amount in the Loan Fund is insufficient, or will be insufficient, to complete fully and to pay for the Project, then within ten (10) days after receipt of a written request from Lender, Borrower shall deposit in the Loan Fund an amount equal to the deficiency as determined by Lender. The judgment and determination of Lender under this section shall be final and conclusive. Any such amounts deposited by Borrower shall be disbursed prior to any Loan proceeds.

**Final Payment to General Contractor.** Upon completion of the Project and fulfillment of the Construction Contract to the satisfaction of Lender and provided sufficient Loan Funds are available, Lender shall make an Advance to cover the final payment due to the General Contractor upon delivery to Lender of endorsements to the ALTA title insurance policy following the posting of the completion notice, as provided under applicable law. Construction shall not be deemed complete for purposes of final disbursement unless and until Lender shall have received all of the following:

(1) Evidence satisfactory to Lender that all work under the Construction Contract requiring inspection by any governmental authority with jurisdiction has been duly inspected and approved by such authority, that a certificate of occupancy has been issued, and that all parties performing work have been paid, or will be paid, for such work;

(2) A certification by an engineer, architect, or other qualified inspector acceptable to Lender that the Improvements have been completed substantially in accordance with the Plans and Specifications and the Construction Contract, that direct connection has been made to all utilities set forth in the Plans and Specifications, and that the Project is ready for occupancy; and

(3) Acceptance of the completed Improvements by Lender and Borrower.

**Construction Default.** If Borrower fails in any respect to comply with the provisions of this Agreement or if construction ceases before completion, regardless of the reason, Lender, at its option, may refuse to make further Advances, may accelerate the indebtedness under the terms of the Note, and without thereby impairing any of its rights, powers, or privileges, may enter into possession of the construction site and perform or cause to be performed any and all work and labor necessary to complete the Improvements, substantially in accordance with the Plans and Specifications.

**Damage or Destruction.** If any of the Collateral or Improvements is damaged or destroyed by casualty of any nature, within sixty (60) days thereafter Borrower shall restore the Collateral and Improvements to the condition in which they were before such damage or destruction with funds other than those in the Loan Fund. Lender shall not be obligated to make disbursements under this Agreement until such restoration has been accomplished.

**Adequate Security.** When any event occurs that Lender determines may endanger completion of the Project or the fulfillment of any condition or covenant in this Agreement, Lender may require Borrower to furnish, within ten (10) days after delivery of a written request, adequate security to eliminate, reduce, or indemnify Lender against such danger. In addition, upon such occurrence, Lender in its sole discretion may advance funds or agree to undertake to advance funds to any party to eliminate, reduce, or indemnify Lender against, such danger or to complete the Project. All sums paid by Lender pursuant to such agreements or undertakings shall be for Borrower's account and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. All sums expended by Lender in the exercise of its option to complete the Project or protect Lender's interests shall be payable to Lender on demand together with interest from the date of the Advance at the rate

**Loan No: 9744781**

## CONSTRUCTION LOAN AGREEMENT
(Continued)

Page 5

applicable to the Loan. In addition, any Advance of funds under this Agreement, including without limitation direct disbursements to the General Contractor or other parties in payment of sums due under the Construction Contract, shall be deemed to have been expended by or on behalf of Borrower and to have been secured by Lender's Deed of Trust, if any, on the Collateral.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**LIMITATION OF RESPONSIBILITY.** The making of any Advance by Lender shall not constitute or be interpreted as either (A) an approval or acceptance by Lender of the work done through the date of the Advance, or (B) a representation or indemnity by Lender to any party against any deficiency or defect in the work or against any breach of any contract. Inspections and approvals of the Plans and Specifications, the improvements, the workmanship and materials used in the Improvements, and the exercise of any other right of inspection, approval, or inquiry granted to Lender in this Agreement are acknowledged to be solely for the protection of Lender's interests, and under no circumstances shall they be construed to impose any responsibility or liability of any nature whatsoever on Lender to any party. Neither Borrower nor any contractor, subcontractor, materialman, laborer, or any other person shall rely, or have any right to rely, upon Lender's determination of the appropriateness of any Advance. No disbursement or approval by Lender shall constitute a representation by Lender as to the nature of the Project, its construction, or its intended use for Borrower or for any other person, nor shall it constitute an indemnity by Lender to Borrower or to any other person against any deficiency or defects in the Project or against any breach of any contract.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, lists of assets and liabilities, agings of receivables and payables, inventory schedules, budgets, forecasts, tax returns, and other reports with respect to Borrower's financial condition and business operations as Lender may request from time to time.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Insurance.** Maintain fire and other risk insurance, hail, federal crop insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| Barry Beitler | Unlimited |

**Loan Fees, Charges and Expenses.** Whether or not the Project is completed, Borrower also shall pay upon demand all out-of-pocket expenses incurred by Lender in connection with the preparation of loan documents and the making of the Loan, including, without limitation, all closing costs, fees, and disbursements, all expenses of Lender's legal counsel, and all title examination fees, title insurance premiums, appraisal fees, survey costs, required fees, and filing and recording fees.

**Loan Proceeds.** Use all Loan proceeds solely for the following specific purposes: Minimum advance of $20,000.00, no more than twice per month.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

CONSTRUCTION LOAN AGREEMENT
(Continued)

Loan No: 9744781                                                                 Page 6

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender, at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Construction of the Project.** Commence construction of the Project no later than October 1, 2005, and cause the Improvements to be constructed and equipped in a diligent and orderly manner and in strict accordance with the Plans and Specifications approved by Lender, the Construction Contract, and all applicable laws, ordinances, codes, regulations, and rights of adjoining property owners. Borrower agrees to complete the Project for purposes of final payment to the General Contractor on or before October 5, 2005, regardless of the reason for any delay.

**Defects.** Upon demand of Lender, promptly correct any defect in the Improvements or any departure from the Plans and Specifications not approved by Lender in writing before further work shall be done upon the portion of the Improvements affected.

**Project Claims and Litigation.** Promptly inform Lender of (1) all material adverse changes in the financial condition of the General Contractor; (2) any litigation and claims, threatened, affecting the Project or the General Contractor, which could materially affect the successful completion of the Project or the ability of the General Contractor to complete the Project as agreed; and (3) any condition or event which constitutes a breach or default under any of the Related Documents or any contract related to the Project.

**Payment of Claims and Removal of Liens.** (1) Cause all claims for labor done and materials and services furnished in connection with the Improvements to be fully paid and discharged in a timely manner; (2) diligently file or procure the filing of a valid notice of completion of the Improvements, or such comparable document as may be permitted under applicable law, upon the happening of cessation of labor on the Improvements for a continuous period of thirty (30) days or more; (3) diligently file or procure the filing of a notice of cessation, or such comparable document as may be permitted under applicable law, upon the happening of a cessation of labor on the Improvements for a continuous period of thirty (30) days or more; and (4) take all reasonable steps necessary to remove all claims of liens against the Improvements or any part of the Collateral or any rights or interests appurtenant thereto. The provisions of this paragraph (for a continuous period of thirty (30) days or more) are in addition to any other rights or interests of Borrower under the laws of the State of California require diligent assertions of lien claim upon penalty of loss or waiver thereof. Borrower shall, within ten (10) days after the filing of any claim of lien that is disputed or contested by Borrower, record in the office of the General Contractor for the construction of the Improvements to record in the appropriate governmental office, a surety bond issued pursuant to California law sufficient to release the claim of lien, within five (5) days of Lender's demand, make suitable provision for deposit of funds with Lender in an amount satisfactory to Lender or the posting of the possibility of such claim. If Borrower fails to remove any lien on the Collateral or improvements or provide to a bond or deposit pursuant to this provision, Lender may pay such lien, or may contract the validity of other persons who have furnished or claim to have furnished labor, services, or materials in connection with the Improvements, subcontractors, or against persons that make such demands or assertions of lien claims upon penalty or against materialmen, against the Improvements or any part of the Collateral or any rights or interests appurtenant thereto.

**Taxes and Claims.** Pay and discharge when due all of Borrower's indebtedness, obligations, and claims that, if unpaid, might become a lien or charge upon the Collateral or Improvements; provided, however, that Borrower shall not be required to pay and discharge any such indebtedness, obligation, or claim so long as (1) its legality shall be contested in good faith by appropriate proceedings, (2) the indebtedness, obligation, or claim does not become a lien or charge upon the Collateral by foreclosure, and (3) Borrower shall have established on its books adequate reserves with respect to the amount contested in accordance with GAAP. If the indebtedness, obligation, or claim does become a lien or charge upon the Collateral or Improvements, Borrower shall remove the lien or charge as provided in the preceding paragraph.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property of any facility owned, leased or used by Borrower.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests in the Collateral and Improvements.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and Indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as a Permitted Lien), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Modification of Contract.** Make or permit to be made any modification of the Construction Contract.

**Liens.** Create or allow to be created or to arise upon the Collateral or the Improvements.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**GENERAL PROJECT PROVISIONS.** The following provisions relate to the construction and completion of the Project.

EXHIBIT "1".

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Loan No: 9747781            Page 7

**Change Orders.** All requests for changes to the Plans and Specifications that involve no extra cost, must be in writing, signed by Borrower and the architect, and delivered to Lender for its approval. Borrower will not permit the performance of any work pursuant to any change order or modification of the Construction Contract without the written approval of Lender. Borrower will obtain any required permits or authorizations from governmental authorities having jurisdiction before approving or requesting a new change order.

**Purchase of Materials; Conditional Sales Contracts.** No materials, fixtures, equipment, or articles of personal property placed in or incorporated into the Project shall be purchased or installed under any conditional sales agreement or other agreement whereby the seller reserves or purports to reserve title or the right of removal or repossession, or the right to consider such items as personal property after their incorporation into the Project, unless otherwise authorized by Lender in writing.

**Lender's Right of Entry and Inspection.** Lender and its agents shall have at all times the right of entry and free access to the Property and the right to inspect all records, labor performed, and materials furnished in and about the Project. Lender shall have unrestricted access to and the right to copy all records, accounting books, contracts, subcontracts, bids, statements, vouchers, and supporting documents of Borrower relating in any way to the Project.

**Lender's Right to Stop Work.** If Lender in good faith determines that any work or materials do not conform to the approved Plans and Specifications or sound building practices, or otherwise depart from any of the requirements of this Agreement, Lender may require the work to be stopped and withhold disbursements until the matter is corrected. In such event, Borrower will promptly correct the work to Lender's satisfaction. No delay by Lender in the exercise of this right to stop work will be construed as an approval by Lender of the work as completed. Lender has no duty to supervise or inspect the construction or examine any books and records. Any inspection by Lender is for the sole purpose of protecting Lender's security and preserving Lender's rights under this Agreement. No default of Borrower will be waived by any inspection by Lender. In no event will any inspection by Lender be a representation that there has been or will be compliance with the Plans and Specifications or that the construction is free from defective materials or workmanship.

**Indemnity.** Borrower shall indemnify and hold Lender harmless from any and all claims asserted against Lender or the Property by any person, entity, or governmental body, or arising out of or in connection with the Property, Improvements, or Project. Lender shall not be obligated to appear in any proceeding or to defend itself against such claims, and all such damages, expenses, attorneys' fees incurred by Lender in connection with such proceedings shall be paid by Borrower to Lender. Lender shall, in its sole discretion, be entitled to settle or compromise any asserted claims against it, and such settlement shall be binding upon Borrower for purposes of this indemnification. All amounts paid by Lender under this paragraph shall be secured by Lender's security agreement or Deed of Trust, if any, on the Property, shall be deemed an additional principal Advance under the Loan, payable upon demand, and shall bear interest at the rate applicable to the Loan.

**Publicity.** Lender may display a sign at the construction site informing the public that Lender is the construction lender for the Project. Lender may obtain other publicity in connection with the Project through press releases and participation in ground-breaking and opening ceremonies and similar events.

**Actions.** Lender shall have the right to commence, appear in, or defend any action or proceeding purporting to affect the rights, duties, or liabilities of the parties to this Agreement, or the disbursement of funds from the Loan Fund. In connection with this right, Lender may incur and pay reasonable costs, expenses and attorney' fees. Borrower covenants to pay to Lender on demand all such expenses, together with interest from the date Lender incurs the expense at the rate specified in the Note) and Lender is authorized to disburse funds from the Loan Fund for such purposes.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to perform or comply with any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Construction Contract.** The Improvements are not constructed in accordance with the Plans and Specifications or in accordance with the terms of the Construction Contract.

**Cessation of Construction.** Prior to the completion of construction of the Improvements, the construction of the Project is abandoned or work thereon ceases for a period of more than ten (10) days for any reason, or the Improvements are not completed for purposes of final payment by the General Contractor prior to October 6, 2006, regardless of the reason for the delay.

**Transfer of Property.** Sale, transfer, hypothecation, assignment, or conveyance of the Property or the Improvements or any portion thereof or interest therein by Borrower without Lender's prior written consent.

EXHIBIT "1"

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Loan No: 9744781                                                                                  Page 8

**Condemnation.** All or any material portion of the Collateral is condemned, seized, or appropriated without compensation, and Borrower does not within thirty (30) days after such condemnation, seizure, or appropriation, initiate and diligently prosecute appropriate action to contest in good faith the validity of such condemnation, seizure, or appropriation.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may, at its option, without notice to Borrower (a) Withhold further disbursement of Loan Funds to do so, and in addition to any other right Lender may have, do one or more of the following without further disbursement of Loan Funds: (a) Withhold further disbursement of Loan Funds; (b) Expend funds necessary to remedy the default; (c) Take possession of the Property and continue construction of the Project; (d) Accelerate maturity of the Note and/or Indebtedness and demand payment of all sums owing under the Note and/or Indebtedness; (e) Bring an action on the Note and/or Indebtedness; (f) Foreclose Lender's security agreement or Deed of Trust, if any, on the Property in any manner available under law; and (g) Exercise any other right or remedy which it has under the Deed of Trust, or which is otherwise available at law or in equity or by statute.

**COMPLETION OF IMPROVEMENTS BY LENDER.** If Lender takes possession of the Collateral, it may take any and all actions necessary in its judgment to complete construction of the Improvements, including but not limited to making changes in the Plans and Specifications, work, or materials and entering into, modifying or terminating any contractual arrangements, subject to Lender's right at any time to discontinue any work without liability. If Lender elects to complete the Improvements, it will not assume any liability to Borrower or to any other person for completing the Improvements or for the manner or quality of construction of the Improvements, and Borrower expressly waives any such liability. Borrower irrevocably appoints Lender as its attorney-in-fact, with full power of substitution, to complete the Improvements, at Lender's option, either in Lender's name or in Borrower's name. In any event, all sums expended by Lender in completing the construction of the Improvements will be considered to have been disbursed to Borrower and will be secured by the Collateral for the Loan. Any such sums that cause the total amount of the Loan to exceed the face amount of the Note will be considered to be an additional Loan to Borrower, bearing interest at the Note rate and being secured by the Collateral. For these purposes, Borrower assigns to Lender all of its right, title and interest in and to the Project Documents. However, Lender will not have any obligation under the Project Documents unless Lender expressly hereafter agrees to assume such obligations in writing. Lender will have the right to exercise any rights of Borrower under the Project Documents upon the occurrence of an Event of Default. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently.

**ADDITIONAL DOCUMENTS.** Borrower shall provide Lender with the following additional documents:

**Articles of Organization and Company Resolutions.** Ocean View Medical Investors, LLC has provided to Lender a certified copy of Articles of Organization, together with a certified copy of resolutions properly adopted by the members of Organization, under which the members authorized one or more designated members or employees to execute this Agreement, the Note and any and all Security Agreements directly or indirectly securing repayment of the same, and to consummate the borrowing evidenced by this Agreement and other transactions as contemplated under this Agreement, and to consent to the remedies following any default by Ocean View Medical Investors, LLC as provided in this Agreement and in any Security Agreements.

**Articles of Organization and Company Resolutions.** BAB & LLC has provided to Lender a certified copy of BAB & LLC's Articles of Organization, together with a certified copy of resolutions properly adopted by the members of the company, under which the members authorized one or more designated members or employees to execute this Agreement, the Note and any and all Security Agreements directly or indirectly securing repayment of the same, and to consummate the borrowing evidenced by this Agreement and other transactions as contemplated under this Agreement.

**Opinion of Counsel.** When required by Lender, Borrower has provided or will provide an opinion of Borrower's counsel satisfactory to Lender with respect to the remedies (following any default by BAB & LLC as provided in this Agreement in any Security Agreements) and that: (1) Borrower's Note, any Security Agreement and this Agreement are within Borrower's powers, have been duly authorized, and do not conflict with Borrower's part that are enforceable in accordance with their respective terms; (2) Borrower is validly existing and in good standing; (3) Borrower has authority to enter into this Agreement and to consummate the transactions contemplating under this Agreement, and (4) such other matters as may have been requested by Lender or by Lender's counsel.

**INTEREST RESERVE.** As part of the total Loan Fund, Lender and Borrower have agreed to set aside an Interest Reserve Fund for payment of interest. Lender will advance funds from this Interest Reserve Fund to keep interest payments current. Should the funds set aside in the Interest Reserve Fund be completely disbursed, Borrower agrees to maintain the interest payments current or to replenish the Interest Reserve Fund with sufficient funds as required by Lender. Borrower may not use any portion of the Interest Reserve Fund for the payment of the costs of constructing the Improvements or for developing the Project.

**ADVANCE AUTHORITY.** Any one (1) of the following persons currently are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of their authority:

X _____          X _____
Barry Beitler                                                      John Bral

**INDEMNITY.** If any work or materials are furnished on the project prior to Lender's Deed of Trust and other security interest in the property being duly recorded or perfected, before Lender will be obligated to make any loan proceeds, Borrower must make adequate indemnity arrangements with the title company insuring Lender's Deed of Trust including disclosure to the title company that the work of improvement has commenced prior to such recordation or perfection, and title company must issue its continuation of coverage prior to the work of improvement.

**COST BREAKDOWN.** All disbursements shall be based upon a detailed breakdown of the costs of construction of the improvements and any financing or development costs for which Borrower might request disbursement. The initial cost breakdown, as approved by Lender, is attached as Exhibit "B", notwithstanding such prior commencement of work or improvement.

Disbursements need not be made by Lender unless and until the revised cost breakdown is approved. Lender reserves the right to approve or

EXHIBIT "1"

**CONSTRUCTION LOAN AGREEMENT**
**(Continued)**

Loan No: 9744781                                                                 Page 9

disapprove any revised cost breakdown in its sole discretion.

**CONDITION FOR DISBURSEMENT.** Prior to any loan funds being disbursed FRB must receive signed Budget and Contract.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Authority to File Notices.** Borrower appoints and designates Lender as its attorney-in-fact to file for the record any notice that Lender deems necessary to protect its interest under this Agreement. This power shall be deemed coupled with an interest and shall be irrevocable while any sum or performance remains due and owing under any of the Related Documents.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**Indemnification of Lender.** Borrower agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's attorneys' fees, as well as Lender's architect's and engineering fees), demands, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder.

**Joint and Several Liability.** All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower. This means that each Borrower signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waiver Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated

EXHIBIT "1"

**CONSTRUCTION LOAN AGREEMENT**
**(Continued)**

**Loan No: 9744781**                                                                                      **Page 10**

to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Construction Loan Agreement, as this Construction Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Construction Loan Agreement from time to time.

**Architect's Contract.** The words "Architect's Contract" mean the architect's contract between Borrower and the architect for the Project.

**Borrower.** The word "Borrower" means Ocean View Medical Investors, LLC; and BAB 8, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Completion Date.** The words "Completion Date" mean October 5, 2005.

**Construction Contract.** The words "Construction Contract" mean the contract between Borrower and the general contractor for the Project, and any subcontracts with subcontractors, materialmen, laborers, or any other person or entity for performance of work on the Project or the delivery of materials to the Project.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan and any guarantor under a completion guaranty agreement.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future buildings, structures, facilities, fixtures, additions, and similar construction on the Collateral.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note and Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means FIRST REGIONAL BANK, its successors and assigns.

**Loan.** The word "Loan" means the loan or loans made to Borrower under this Agreement and the Related Documents as described .

**Loan Fund.** The words "Loan Fund" mean the undisbursed proceeds of the Loan under this Agreement together with any equity funds or other deposits required from Borrower under this Agreement.

**Note.** The word "Note" means the promissory note dated October 5, 2005, in the original principal amount of $4,725,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Plans and Specifications.** The words "Plans and Specifications" mean the plans and specifications for the Project which have been submitted to and initialed by Lender, together with such changes and additions as may be approved by Lender in writing.

**Project.** The word "Project" means the construction project as described in the "Project Description" section of this Agreement.

**Project Documents.** The words "Project Documents" mean the Plans and Specifications, all studies, data and drawings relating to the Project, whether prepared by or for Borrower, the Construction Contract, the Architect's Contract, and all other contracts and agreements relating to the



**Loan No: 9744781**

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

**Page 11**

Project or the construction of the Improvements.

**Property.** The word "Property" means the property as described in the "Project Description" section of this Agreement.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in the "Project Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**Value.** The word "Value" means such amount or worth as defined and determined by Lender in its sole discretion unless agreed to the contrary by Lender in writing.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS CONSTRUCTION LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS CONSTRUCTION LOAN AGREEMENT IS DATED OCTOBER 5, 2005.

**BORROWER:**

**OCEAN VIEW MEDICAL INVESTORS, LLC**

By: _____
Barry Bahler, Managing Member of Ocean View
Medical Investors, LLC

By: _____
John Lillo, Managing Member of Ocean View
Medical Investors, LLC

**BAB 8, LLC**

By: _____
Barry Bahler, Managing Member of BAB 8, LLC

**LENDER:**

**FIRST REGIONAL BANK**

By: _____
Authorized Officer

LASER PRO Lending, Ver. 5.26.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - CA  W:\CAPPROFL\PL\C40.FC  TR-1343  PR-99

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $4,725,000.00 | 10-05-2005 | 10-01-2007 | 9744761 | A / 74 | | RED | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| | |
|---|---|
| **Borrower:** Ocean View Medical Investors, LLC<br>BAB 8, LLC<br>825 S. Barrington Avenue<br>Los Angeles, CA 90049 | **Lender:** FIRST REGIONAL BANK<br>South Bay Regional Office<br>990 West 190th Street, Suite 440<br>Torrance, CA 90502<br>(310) 538-1776 |

**Principal Amount: $4,725,000.00**          **Initial Rate: 7.250%**          **Date of Note: October 5, 2005**

**PROMISE TO PAY.** Ocean View Medical Investors, LLC; and BAB 8, LLC ("Borrower") jointly and severally promise to pay to FIRST REGIONAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Million Seven Hundred Twenty-five Thousand & 00/100 Dollars ($4,725,000.00) or as much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on October 1, 2007. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning November 1, 2005, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The index currently is 6.750%. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 0.500 percentage points over the index, resulting in an initial rate of 7.250%. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 7.250% or more than the maximum rate allowed by applicable law.

**PREPAYMENT FEE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment fee: The principal amount due on this Note may be prepaid in full at any time on thirty (30) days' prior written notice. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST REGIONAL BANK, 1801 Century Park East Los Angeles, CA 90067.

**INTEREST RESERVES.** Borrower authorizes Lender to place $50,000.00 of the Principal Amount as an interest reserve, which is an estimate of the interest due on the Note ("Interest Reserve"). All interest payments shall be paid from the Interest Reserve. Lender may automatically deduct accrued unpaid interest from the Interest Reserve. Interest will accrue, as described in this Note, on amounts deducted from the Interest Reserve. In the event the interest due under this Note exceeds the Interest Reserve, Borrower will pay accrued interest amount when due according to the terms of this Note. Upon maturity, Lender will not advance or disburse the remaining Interest Reserve, if any, to Borrower. The principal due upon maturity will not include any remaining Interest Reserve.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $20.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase to 7.500 percentage points over the index, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help,

PROMISSORY NOTE
(Continued)

Loan No: 9744781                                                                                                                Page 2

repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Construction Deed of Trust dated October 5, 2005, to a trustee in favor of Lender on real property located in Orange County County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Construction Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Borrower. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in Orange County County, State of California.

(C) inventory, chattel paper, accounts, equipment, general intangibles and fixtures described in a Commercial Security Agreement dated October 5, 2005.

LINE OF CREDIT. This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

ADDITIONAL PRORATED LOAN FEE. In the event, and if for any reason, the Loan is not paid by the maturity date of the Note and Lender allows the Loan to continue whether by formal or informal agreement, the Borrower agrees to pay a fee, which is to be established at maturity, for each consecutive thirty day period or any portion thereof the Loan is allowed to run, in addition to the interest provided in the Note, which fee shall be not less than the proportionate amount of the fee for the initial period of the Loan.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 9744781                                                              Page 3

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

OCEAN VIEW MEDICAL INVESTORS, LLC

By: _____
Barry Beitler, Managing Member of Ocean View Medical Investors, LLC

By: _____
John Brai, Managing Member of Ocean View Medical Investors, LLC

BAB 8, LLC

By: _____
Barry Beitler, Managing Member of BAB 8, LLC

LASER PRO Lending, Ver. 6.36.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - CA  W:\LASERPRO\FLP\D20.FC  TR-1240  PR-36

*1320190 - 2019479*

**ALLONGE**
**To be attached to the following identified instrument**

Loan No.:    9744781

Type of Instrument:    PROMISSORY NOTE

Date of Instrument:    10/5/2005    Original Principal Amount: $4,725,000.00

Original Borrower(s)/Maker(s):    OCEAN VIEW MEDICAL INVESTORS LLC

Original Lender/Payee:    First Regional Bank

This Allonge applies to the foregoing instrument and (i) all extensions, renewals, modifications, amendments, restatements, consolidations, and/or increases thereof, (ii) all changes in terms relating thereto, and (iii) all notes, credit agreements, and other instruments given in replacement of, in substitution for, to correct, or to refinance the foregoing instrument.

**PAY TO THE ORDER OF FIRST-CITIZENS BANK & TRUST COMPANY, WITHOUT RECOURSE.**

Date:    9/02/2010    FEDERAL DEPOSIT INSURANCE CORPORATION
as Receiver for First Regional Bank

By: _____
Name: Karen Ashe
Title: Attorney-In-Fact

**Background and Explanatory Note:** Great American Bank was chartered as a commercial bank under the laws of California in 1979. In 1987, it changed its name to First Regional Bank. On January 29, 2010, the California Department of Financial Institutions closed First Regional Bank and appointed the Federal Deposit Insurance Corporation as receiver. Immediately thereafter, First-Citizens Bank & Trust Company, a North Carolina-chartered commercial bank, acquired most of the assets and assumed most of the liabilities of First Regional Bank pursuant to a "Purchase and Assumption Agreement" between First-Citizens Bank & Trust Company, the Federal Deposit Insurance Corporation in its corporate capacity, and the Federal Deposit Insurance Corporation in its capacity as Receiver for First Regional Bank. The assets purchased by First-Citizens Bank & Trust Company include the instrument identified in this Allonge.

First Regional Bank Allonge (7-10)

 

## CHANGE IN TERMS AGREEMENT

| Principal $4,725,000.00 | Loan Date 10-01-2007 | Maturity 02-01-2008 | Loan No 9744761 | Call / Coll 10 / 74 | Account | Officer RED | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Ocean View Medical Investors, LLC<br>BAB 8, LLC<br>825 S. Barrington Avenue<br>Los Angeles, CA 90049 | Lender: | FIRST REGIONAL BANK<br>South Bay Real Estate<br>970 W. 190th Street, Suite 400<br>Torrance, CA 90502<br>(310) 715-6776 |
|---|---|---|---|

**Principal Amount: $4,725,000.00**     **Initial Rate: 8.250%**     **Date of Agreement: October 1, 2007**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A Promissory Note in the original amount of $4,725,000.00 dated October 5, 2005 by and between Ocean View Medical Investors and Lender.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust dated October 5, 2005 for Real Property located at 441 Old Newport Boulevard, Newport Beach, CA 92663.

**DESCRIPTION OF CHANGE IN TERMS.** Maturity is hereby extended from October 1, 2007 to February 1, 2008.

All other terms and conditions remain the same.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

OCEAN VIEW MEDICAL INVESTORS, LLC

By: _____     By: _____
Barry Beitler, Managing Member of Ocean View          John Bral, Managing Member of Ocean View
Medical Investors, LLC                                             Medical Investors, LLC

BAB 8, LLC

By: _____
Barry Beitler, Managing Member of BAB 8, LLC

LASER PRO Lending, Ver. 5.36.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - CA F:\HARLAND\CFI\LPL\D20C.FC TR-2555 PR-17

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $4,725,000.00 | 02-01-2008 | 05-01-2008 | 17-471 | 10-74 | | RED | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

Borrower:  Ocean View Medical Investors, LLC
BAB 8, LLC
625 S. Barrington Avenue
Los Angeles, CA 90049

Lender:  FIRST REGIONAL BANK
South Bay Real Estate
970 W. 190th Street, Suite 400
Torrance, CA 90502
(310) 715-6776

Principal Amount:  $4,725,000.00          Initial Rate:  6.500%          Date of Agreement:  February 1, 2008

DESCRIPTION OF EXISTING INDEBTEDNESS.  A Promissory Note in the original amount of $4,725,000.00 dated October 5, 2005 and a Change in Terms Agreement dated October 1, 2007 by and between Ocean View Medical Investors and Lender.

DESCRIPTION OF COLLATERAL.  A Deed of Trust dated October 5, 2005 for Real Property located at 441 Old Newport Boulevard, Newport Beach, CA 92663.

DESCRIPTION OF CHANGE IN TERMS.
1. Maturity is hereby extended from February 1, 2008 to May 1, 2008.

2. Floor is hereby eliminated from this loan.

All other terms and conditions remain the same.

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

OCEAN VIEW MEDICAL INVESTORS, LLC

By: _____
Barry Beitler, Managing Member of Ocean View
Medical Investors, LLC

By: _____
John Brel, Managing Member of Ocean View
Medical Investors, LLC

BAB 8, LLC

By: _____
Barry Beitler, Managing Member of BAB 8, LLC

LASER PRO Lending, Ver. 5.18.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA F:\HPL\APPS\CFI\LPL\G20D.FC TR-5488 PR-37

EXHIBIT "1"
Page 78
115

*Aug - Aug on 7/1/08 Certian: from Abdelmessa via mix office*

# CHANGE IN TERMS AGREEMENT

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower | Lender |
|---|---|
| Ocean View Medical Investors, LLC | First Regional Bank<br>South Bay Real Estate<br>870 W. 190th Street, Suite 400<br>Torrance, CA 90502<br>(310) 715-6776 |
| 625 S. Barrington Avenue<br>Los Angeles, CA 90049 | |

**Principal Amount: $4,725,000.00    Initial Rate: 5.500%    Date of Agreement: May 1, 2008.**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A Promissory Note in the original amount of $4,725,000.00 dated October 5, 2005, a Change in Terms Agreement dated October 1, 2007 and a Change in Terms Agreement dated February 1, 2008 by and between Ocean View Medical Investors, BAB 8, LLC and Lender.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust dated October 5, 2005 for Real Property located at 441 Old Newport Boulevard, Newport Beach, CA 92663.

**DESCRIPTION OF CHANGE IN TERMS.** The Maturity Date is hereby extended from May 1, 2008 to August 1, 2008.

All other terms and conditions remain the same.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

**OCEAN VIEW MEDICAL INVESTORS, LLC**

By: _____    By: _____
Barry Beitler, Managing Member of Ocean View     John Beitler, Managing Member of Ocean View
Medical Investors, LLC                          Medical Investors, LLC

**BAB 8, LLC**

By: _____
Barry Beitler, Managing Member of BAB 8, LLC

LASER PRO Lending, Ver. 5.40.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA S:\FRB\HARLAND\CFI\LPL\D20.FC TR-3966 PR-57

# CHANGE IN TERMS AGREEMENT

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

| Borrower: | Ocean View Medical Investors, LLC<br>BAB 8, LLC<br>825 S. Barrington Avenue<br>Los Angeles, CA 90049 | Lender: | FIRST REGIONAL BANK<br>South Bay Real Estate<br>970 W. 190th Street, Suite 400<br>Torrance, CA 90502<br>(310) 715-6776 |

**Principal Amount: $4,725,000.00**       **Initial Rate: 5.500%**       **Date of Agreement: August 1, 2008**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A Promissory Note in the original amount of $4,725,000.00 dated October 5, 2005, a Change In Terms Agreement dated October 1, 2007, a Change In Terms Agreement dated February 1, 2008 and a Change In Terms Agreement dated May 1, 2008 by and between Ocean View Medical Investors, BAB 8, LLC and Lender.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust dated October 5, 2005 for Real Property located at 441 Old Newport Boulevard, Newport Beach, CA 92663.

**DESCRIPTION OF CHANGE IN TERMS.** The Maturity Date is hereby extended from August 1, 2008 to October 1, 2008.

All other terms and conditions remain the same.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

OCEAN VIEW MEDICAL INVESTORS, LLC

By: _____
Barry Beitler, Managing Member of Ocean View
Medical Investors, LLC

By: _____
John Bral, Managing Member of Ocean View
Medical Investors, LLC

BAB 8, LLC

By: _____
Barry Beitler, Managing Member of BAB 8, LLC

LASER PRO Lending, Ver. 6.46.00.001 Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - CA  P:\BANK\LASERPRO\CFI\LPL\D20C.FC  TR-2685  PR-43

*Sent to Michelle Deiner
on 10/8/08 via inter-office
mail.*

# CHANGE IN TERMS AGREEMENT

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Ocean View Medical Investors, LLC | Lender: | FIRST REGIONAL BANK |
|---|---|---|---|
| | BAB 8, LLC | | South Bay Real Estate |
| | 526 S. Barrington Avenue | | 970 W. 190th Street, Suite 400 |
| | Los Angeles, CA 90049 | | Torrance, CA 90502 |
| | | | (310) 715-6776 |

**Principal Amount: $4,725,000.00**   **Initial Rate: 6.500%**   **Date of Agreement: October 1, 2008**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A Promissory Note in the original amount of $4,725,000.00 dated October 5, 2005, a Change in Terms Agreement dated October 1, 2007, a Change in Terms Agreement dated February 1, 2008, a Change in Terms Agreement dated May 1, 2008 and a Change in Terms Agreement dated August 1, 2008 by and between Ocean View Medical Investors, BAB 8, LLC and Lender.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust dated October 5, 2005 for Real Property located at 441 Old Newport Boulevard, Newport Beach, CA 92683.

**DESCRIPTION OF CHANGE IN TERMS.**
1. The Maturity Date is hereby extended from October 1, 2008 to January 1, 2009.
2. Interest Rate is hereby amended from WSJP + 0.50% to WSJP + 1.50%.

All other terms and conditions remain the same.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

**OCEAN VIEW MEDICAL INVESTORS, LLC**

By: _____
Barry Beitler, Managing Member of Ocean View
Medical Investors, LLC

By: _____
John Bral, Managing Member of Ocean View
Medical Investors, LLC

**BAB 8, LLC**

By: _____
Barry Beitler, Managing Member of BAB 8, LLC

EXHIBIT "1"
Page 81

## CHANGE IN TERMS AGREEMENT

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   Ocean View Medical Investors, LLC
          BAB 8, LLC
          825 S. Barrington Avenue
          Los Angeles, CA 90049

**Lender:**   FIRST REGIONAL BANK
      South Bay Real Estate
      970 W. 190th Street, Suite 400
      Torrance, CA 90502
      (310) 716-6776

**Principal Amount: $4,725,000.00**                    **Date of Agreement: January 1, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A Promissory Note in the original amount of $4,725,000.00 dated October 5, 2005, Change in Terms Agreements dated October 1, 2007, February 1, 2008, May 1, 2008, August 1, 2008 and October 1, 2008 by and between Ocean View Medical Investors, LLC, BAB 8, LLC and Lender.

**DESCRIPTION OF COLLATERAL.** A Deed of Trust dated October 5, 2005 for Real Property located at 441 Old Newport Boulevard, Newport Beach, CA 92663.

**DESCRIPTION OF CHANGE IN TERMS.** The Maturity Date is hereby extended from January 1, 2009 to April 1, 2009.

The interest rate is hereby amended to reflect an increase from Wall Street Journal Prime plus 1.5% to Wall Street Journal Prime plus 2.0%.

The floor rate of 6.0% is hereby added.

All other terms and conditions remain the same.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

OCEAN VIEW MEDICAL INVESTORS, LLC

By: _____
   Barry Beitler, Managing Member of Ocean View
   Medical Investors, LLC

By: _____
   John Brul, Managing Member of Ocean View
   Medical Investors, LLC

BAB 8, LLC

By: _____
   Barry Beitler, Managing Member of BAB 8, LLC

LASER PRO Lending, Ver. 5.40.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA F:\CFI\LASERPRO\CFI\LPL\D20C3.FC TR-5991 PR-47

 

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $4,725,000.00 | 04-03-2009 | 11-01-2009 | 109744781 | 10/7/8 | | RED | JAX |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Ocean View Medical Investors, LLC, a California
limited liability company
BAB 8, LLC, a California limited liability company
825 S. Barrington Avenue
Los Angeles, CA 90049

**Lender:** FIRST REGIONAL BANK
Century City
1801 Century Park East, Suite #600
Los Angeles, CA 90067
(310) 552-1776

---

**Principal Amount: $4,725,000.00**                    **Date of Agreement: June 26, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** THE PROMISSORY NOTE DATED OCTOBER 05, 2005 AND FURTHER MODIFIED BY CHANGE IN TERMS AGREEMENTS DATED OCTOBER 01, 2007; FEBRUARY 01, 2008; MAY 01, 2008; AUGUST 01, 2008; OCTOBER 01, 2008 AND JANUARY 01, 2009 WITH A CURRENT MATURITY DATE OF APRIL 01, 2009 ("NOTE"), IN THE ORIGINAL PRINCIPAL AMOUNT OF $4,725,000.00 WITH A CURRENT DISBURSED PRINCIPAL BALANCE OF $4,251,115.37 AND $473,884.63 REMAINING IN UNDISBURSED LOAN FUNDS AS OF THE DATE OF THIS AGREEMENT.

**DESCRIPTION OF COLLATERAL.** THE EXISTING INDEBTEDNESS IS SECURED BY A FIRST DEED OF TRUST DATED OCTOBER 05, 2005 AND RECORDED ON OCTOBER 12, 2005 AS INSTRUMENT NO.: 2005000821196 IN THE RECORDER'S OFFICE OF ORANGE COUNTY, STATE OF CALIFORNIA, COVERING REAL PROPERTY COMMONLY KNOWN AS 441 OLD NEWPORT BLVD., NEWPORT BEACH, CA 92663.

**DESCRIPTION OF CHANGE IN TERMS.** BORROWER AND LENDER AGREE TO AMEND THE NOTE AS FOLLOWS:

(A) THE DATE ON WHICH THE ENTIRE REMAINING BALANCE OF UNPAID PRINCIPAL, INTEREST, AND OTHER COSTS DUE UNDER THE NOTE AND THE RELATED DOCUMENTS ("THE MATURITY DATE") IS EXTENDED FROM APRIL 01, 2009 TO NOVEMBER 01, 2009.

(B) THE MAXIMUM PRINCIPAL AMOUNT OF THE NOTE IS HEREBY REDUCED BY $473,884.63 (THE UNDISBURSED LOAN FUNDS). IN ADDITION, CONCURRENT WITH THE EXECUTION OF THIS AGREEMENT, BORROWER IS REQUIRED TO PAY DOWN THE CURRENT DISBURSED PRINCIPAL BALANCE BY THE SUM OF $86,115.37. AFTER THESE REDUCTIONS THE OUTSTANDING PRINCIPAL BALANCE AND MAXIMUM PRINCIPAL AMOUNT OF THE NOTE SHALL BE $4,165,000.00.

(C) THE SECTION TITLED "LINE OF CREDIT" IS HEREBY STRICKEN FROM THE NOTE IN ITS ENTIRETY. THE LINE OF CREDIT IS HEREBY TERMINATED, NO FURTHER ADVANCES SHALL BE PERMITTED AND THE NOTE SHALL BE REPAYABLE IN ACCORDANCE WITH ITS TERMS.

(D) THE MONTHLY PAYMENT SCHEDULE IS MODIFIED AS SET FORTH BELOW IN THE PAYMENT SECTION OF THIS AGREEMENT.

ALL OTHER TERMS AND CONDITIONS OF THE NOTE REMAIN UNCHANGED AND IN FULL FORCE AND EFFECT.

**PAYMENT.** Borrower will pay this loan in one principal payment of $4,165,000.00 plus interest on November 1, 2009. This payment due on November 1, 2009, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 1, 2009, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The interest rate currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this loan be less than 6.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.



Loan No: 09744781

# CHANGE IN TERMS AGREEMENT
## (Continued)

Page 2

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

OCEAN VIEW MEDICAL INVESTORS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____
Barry Beitler, Managing Member of Ocean View
Medical Investors, LLC, a California limited liability
company

By: _____
John Bral, Managing Member of Ocean View
Medical Investors, LLC, a California limited liability
Company

BAB 8, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____
Barry Beitler, Managing Member of BAB 8, LLC, a
California limited liability company

LASER PRO Lending, Ver. 5.43.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2009.  All Rights Reserved.  - CA  W:\CFI\LPL\D20CFE  TR-5623  PR-37

# CHANGE IN TERMS AGREEMENT

| | | | | | | |
|---|---|---|---|---|---|---|

Reference in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Ocean View Medical Investors, LLC, a California
limited liability company
BAB 8, LLC, a California limited liability company
825 S. Barrington Avenue
Los Angeles, CA 90049

**Lender:** FIRST REGIONAL BANK
Century City
1801 Century Park East, Suite #800
Los Angeles, CA 90067
(510) 552-1776

**Principal Amount: $4,165,000.00**                                     **Date of Agreement: December 15, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** THE PROMISSORY NOTE DATED OCTOBER 05, 2005 AND FURTHER MODIFIED BY CHANGE IN TERMS AGREEMENTS DATED OCTOBER 01, 2007; FEBRUARY 01, 2008; MAY 01, 2008; AUGUST 01, 2008; OCTOBER 01, 2008; JANUARY 01, 2009 AND JUNE 26, 2009 WITH A CURRENT MATURITY DATE OF NOVEMBER 01, 2009 ("NOTE"), IN THE ORIGINAL PRINCIPAL AMOUNT OF $4,725,000.00 WITH A CURRENT PRINCIPAL BALANCE OF $4,165,000.00 AS OF THE DATE OF THIS AGREEMENT.

**DESCRIPTION OF COLLATERAL.** THE EXISTING INDEBTEDNESS IS SECURED BY A FIRST DEED OF TRUST DATED OCTOBER 05, 2005 AND RECORDED ON OCTOBER 12, 2005 AS INSTRUMENT NO. 2005000821198 AND FURTHER MODIFIED BY A MEMORANDUM OF ASSUMPTION AGREEMENT AND MODIFICATION OF DEED OF TRUST BOTH DATED JUNE 26, 2009 AS INSTRUMENT NO. 2009000451263 AND 2009000451264 RESPECTIVELY ALL IN THE RECORDER'S OFFICE OF ORANGE COUNTY, STATE OF CALIFORNIA, COVERING REAL PROPERTY COMMONLY KNOWN AS 441 OLD NEWPORT BLVD., NEWPORT BEACH, CA 92663.

**DESCRIPTION OF CHANGE IN TERMS.** BORROWER AND LENDER AGREE TO AMEND THE NOTE AS FOLLOWS:

(A) THE DATE ON WHICH THE ENTIRE REMAINING BALANCE OF UNPAID PRINCIPAL, INTEREST, AND OTHER COSTS DUE UNDER THE NOTE AND THE RELATED DOCUMENTS ("THE MATURITY DATE") IS EXTENDED FROM NOVEMBER 01, 2009 TO MAY 01, 2010.

(B) THE MONTHLY PAYMENT SCHEDULE IS MODIFIED AS SET FORTH BELOW IN THE PAYMENT SECTION OF THIS AGREEMENT.

ALL OTHER TERMS AND CONDITIONS OF THE NOTE REMAIN UNCHANGED AND IN FULL FORCE AND EFFECT.

**PAYMENT.** Borrower will pay this loan in one principal payment of $4,165,000.00 plus interest on May 1, 2010. This payment due on May 1, 2010, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 1, 2009, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.000%. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.



## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 09744781                                                                        Page 2

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT,
INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

OCEAN VIEW MEDICAL INVESTORS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____        By: _____
Barry Beitler, Managing Member of Ocean View        John Bral, Managing Member of Ocean View
Medical Investors, LLC, a California limited liability        Medical Investors, LLC, a California limited liability
company        company

BAB 8, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____
Barry Beitler, Managing Member of BAB 8, LLC, a
California limited liability company

LASER PRO Lending, Ver. 5.43.10.004  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - CA  W/CFI/PL/D40C/LFC  TR-2425  PR-27

EXHIBIT "1"
Page 86

Loan No: 09744781

### CHANGE IN TERMS AGREEMENT
### (Continued)

Page 2

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

OCEAN VIEW MEDICAL INVESTORS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____          By: _____
Barry Beitler, Managing Member of Ocean View              John Brel, Managing Member of Ocean View
Medical Investors, LLC, a California limited liability              Medical Investors, LLC, a California limited liability
company                                                            company


BAB 8, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____
Barry Beitler, Managing Member of BAB 8, LLC, a
California limited liability company

LASER PRO Lending, Ver. 5.48.00.004  Copr. Harland Financial Solutions, Inc. 1997, 1999.  All Rights Reserved.  - CA  K:\CFI\LPL\D20C.FC  TR-1944, PR-27

*1320190 - 2019479*

## ASSIGNMENT OF NOTE AND SECURITY INSTRUMENTS
### WITHOUT RECOURSE

**Date:**   9/03/2010                                    **Loan No.:** 9744781

For the purposes of this Assignment:

1.  The "Assignor" is the **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST REGIONAL BANK.**  As of the date of this Assignment, the Assignor is the owner and holder of the Note and the secured creditor under the Security Instruments identified below.  The mailing address of the Assignor is 40 Pacifica, Irvine, CA 92618.

2.  The "Assignee" is **FIRST-CITIZENS BANK & TRUST COMPANY.**  The mailing address of the Assignee is Mail Code FCC22, PO Box 27131, Raleigh, NC 27611-7131.

3.  The "Note" refers to the following promissory note, credit agreement, or other instrument:

      Date of Instrument: 10/5/2005               Original Principal Amount: $4,725,000.00

      Original Borrower(s)/Maker(s):   OCEAN VIEW MEDICAL INVESTORS LLC

      Original Lender/Payee:   First Regional Bank

4.  The "Security Instruments" include all of those instruments given to secure or guarantee repayment of the Note, including, but not limited to, security agreements, pledges, assignments, guaranty agreements, negative pledge agreements, financing statements, control agreements, agreements relating to hazardous substances, and indemnity agreements.

As used herein, the terms "Note" and "Security Instruments" include (i) all extensions, renewals, modifications, amendments, restatements, consolidations, and/or increases thereof, (ii) all changes in terms relating thereto, (iii) all notes, credit agreements, and other instruments given in replacement of, in substitution for, to correct, or to refinance the Note, and (iv) all instruments and other documents given in replacement of, in substitution for, or to correct the Security Instruments.

**Background and Explanatory Note:**  Great American Bank was chartered as a commercial bank under the laws of California in 1979.  In 1987, it changed its name to First Regional Bank.  On January 29, 2010, the California Department of Financial Institutions closed First Regional Bank and appointed the Federal Deposit Insurance Corporation as receiver.  Immediately thereafter, First-Citizens Bank & Trust Company, a North Carolina-chartered commercial bank, acquired most of the assets and assumed most of the liabilities of First Regional Bank pursuant to a "Purchase and Assumption Agreement" between First-Citizens Bank & Trust Company, the Federal Deposit Insurance Corporation in its corporate capacity, and the Federal Deposit Insurance Corporation in its capacity as Receiver for First Regional Bank.  The assets purchased by First-Citizens Bank & Trust Company include the Note and Security Instruments identified in this Assignment and all asset-based litigation and proceedings relating thereto.

**For value received,** Assignor hereby grants, sells, assigns, transfers, and conveys unto Assignee, its successors and assigns, all of Assignor's right, title and interest, both legal and equitable, in, to, and under (i) the Note, together with all amounts due and to become due thereon, including interest, and (ii) the Security Instruments.

1

First Regional Bank Generic Assignment (7-10)

This Assignment is made without recourse, representation or warranty, express or implied, by the Federal Deposit Insurance Corporation in its corporate capacity or as Receiver.

Assignor further authorizes and empowers Assignee, its successors and assigns, to exercise all rights, powers and privileges conferred upon Assignor by the Note and the Security Instruments, including, but not limited to, the rights and privileges of a secured party and the right of foreclosure and sale, in as full and ample a manner as Assignor is authorized and empowered to exercise the same.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the Note and the Security Instruments.

IN WITNESS WHEREOF, the Federal Deposit Insurance Corporation as Receiver for First Regional Bank has caused this Assignment to be signed in its name by its duly authorized attorney-in-fact, all as of the date of this Assignment.

FEDERAL DEPOSIT INSURANCE CORPORATION AS
RECEIVER FOR FIRST REGIONAL BANK

By:_____

Karen Ashe, as duly appointed
Attorney-In-Fact for the Federal Deposit Insurance
Corporation as Receiver for First Regional Bank

2

## NOTE MODIFICATION AGREEMENT
### (For California Business, Commercial and Agricultural Loans)

**February 22, 2011**
Date of this Agreement

**$ 4,165,000.00**
Outstanding Principal Balance
as of Date of this Agreement

Loan #:
Obligor #  1320190
Future Oblig. #
Current Oblig. #  2019479

FOR BANK USE ONLY:
Name In Which Loan is Booked:
Ocean View Medical Investors LLC
BAB 8 LLC

As used in this Note Modification Agreement (this "Agreement"), the "Note" refers to the following promissory note that evidences the loan identified above:

Date of Note: October 5, 2005      Original Principal Amount of Note:  $4,725,000.00

Original Payee(s): First Regional Bank

Original Maker(s): Ocean View Medical Investors LLC and BAB 8 LLC

The parties to this Agreement are (i) First-Citizens Bank & Trust Company ("Lender"), a North Carolina banking corporation, and (ii) the undersigned parties, each of whom is obligated either as an original maker of the Note or as one who has assumed the obligations of an original maker (collectively, "maker," whether one or more), or as a surety, guarantor, or endorser of the Note. Lender is the owner and holder of the Note. Maker has requested and Lender has agreed for the Note and other Loan Documents to be modified, subject to the terms and provisions of this Agreement.

**NOW, THEREFORE,** for and in consideration of the premises, the parties to this Agreement agree that the terms of the Note and the other Loan Documents are modified, amended, renewed, extended and supplemented as of the date of this Agreement (unless otherwise specified) to effect the following changes to the loan transaction: *(Complete Sections 1 and 2 entitled "Interest Rate" and "Payment Terms" in all cases. Subsections not completed are deleted. Sections 3, 4, 8, and 9 apply only if completed.)*

1.  **INTEREST RATE.** Unless and until a "default rate" described in section 9 below applies, interest shall accrue on the outstanding principal balance. *(Complete Section A or B. If neither is completed, refer to Note Addendum attached hereto and incorporated herein by reference.)*

    (A) At the simple, fixed interest rate of _____ percent.

    (B) At the variable interest rate of  2.000  percentage points above ( ☐ or below, if checked) the highest Prime Rate as published from time to time in the Money Rates table of *The Wall Street Journal* (the "Index Rate"). However, unless and until a default rate applies, the interest rate will not at any time exceed the maximum rate of _____ percent (or the maximum rate permitted by applicable law, whichever is less), or fall below the minimum rate of  6.000  percent. The interest rate as of the date of this Agreement stated in simple interest terms is  6.000  percent. The interest rate is subject to change on a daily basis with changes becoming effective on the calendar day the Index Rate changes unless the following box is checked ☒, in which case the interest rate is subject to change on a monthly basis with changes becoming effective on the first day of each calendar month based on the Index Rate as published on the last business day of the preceding calendar month. If the Index Rate becomes unavailable, Lender may designate a substitute index and/or margin after notice to maker to effect a comparable rate.

    All interest on the Note will be calculated on an "actual/360" daily simple interest basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. This interest calculation method results in a higher effective interest rate than the stated numeric interest rate. Accrued but unpaid interest may be added to the outstanding principal balance and accrue interest at the then current rate of interest due under the Note from time to time.

E14-95730 (10/10)

FEB 25 2011

2. **PAYMENT TERMS.** *(Complete Section A or B or C or check D.)*

(A) **Single Payment Loan.** The outstanding principal balance and all accrued interest shall be payable in one single payment on _____ (hereafter referred to as "Maturity").

(B) **Amortizing Payments.** The outstanding principal balance and accrued interest shall be payable in _____ equal consecutive _____ (monthly, quarterly, semi-annual, etc.) payments of $_____ each commencing on _____ (the "Regular Payment Commencement Date") and on the same day of each such calendar period thereafter and one final payment of the entire balance due on _____ (hereafter referred to as "Maturity"), unless sooner paid. The periodic payment amount specified includes principal and interest.

[ ] Prior to the Regular Payment Commencement Date, interest on the outstanding principal balance shall be payable _____ (monthly, quarterly, semi-annually, etc.) beginning _____, and consecutively on the same day of each such calendar period thereafter until the Regular Payment Commencement Date.

(C) **Principal Payment Terms.** The outstanding principal balance shall be: *(Complete Section 1 or 2 or check 3.)*

1. Payable in one single payment (exclusive of interest) on _____ May 1, 2012 _____ (hereafter referred to as "Maturity").

2. Payable in _____ equal consecutive _____ (monthly, quarterly, semi-annual, etc.) payments of $_____ each commencing on _____ and on the same day of each such calendar period thereafter and one final payment of the entire balance due on _____ (hereafter referred to as "Maturity"), unless sooner paid.

**Interest Payment Terms:** In addition to the principal payment(s) identified above, interest on the outstanding principal balance shall be: *(Check 1 or complete Section 2.)*

1. [ ] Payable in full on demand (if the Note contains a call provision or is payable on demand) or at Maturity, whichever first occurs.

2. Payable _____ Monthly _____ (monthly, quarterly, semi-annually, etc.) beginning _____ March 2011 _____ and consecutively on the same day of each such calendar period thereafter, with any accrued but unpaid interest due and payable in full on demand (if the Note contains a call provision or is payable on demand) or at Maturity, whichever first occurs.

(D) **Other.** [ ] See Exhibit A attached hereto and incorporated herein by reference for payment terms.

3. **RATE CALL PROVISION.** At any time after _____, Lender has the right and option to "call" the Note and demand payment of the Note in full if maker fails to agree in writing to such modifications of the interest rate and payment terms as Lender may request from time to time.

4. **FEES.** Loan fees and/or discount points in the aggregate amount of $500.00 are due and payable to Lender upon the signing of this Agreement.

5. **LATE CHARGE.** If a payment is 11 days or more late, maker will pay a late charge of 5% of the unpaid portion of the principal and interest payment past due or $5.00, whichever is greater.

2

6.  **RETURNED CHECK FEE.** Maker will pay a $25.00 processing fee to Lender each time a check, preauthorized charge, or other form of remittance given for payment on the Note is dishonored or returned unpaid.

7.  **ADDITIONAL COLLATERAL.** All collateral securing the Note shall remain as collateral for the Note unless and until expressly released by Lender. The following **ADDITIONAL** collateral and/or instruments is/are being given to secure repayment of the Note:



8.  **DUE ON SALE PROVISION IN DEED OF TRUST.** *[Note: This section should be completed and will apply only if (i) repayment of the Note is (or will be) secured at least in part by a deed of trust on California real property; (ii) the deed of trust contains a "due on sale" provision; and (iii) the text of the "due on sale" provision that currently applies or will apply was not stated or was inaccurately stated in the Note, an earlier renewal, modification, or amendment of or to the Note, an earlier change in terms agreement, or a substitute or replacement note.]*

This Note is secured, at least in part, by a deed of trust on California real property. The deed of trust contains the following "due on sale" provision:



9.  **OTHER MODIFICATIONS:**

10.  **INTEREST AFTER DEFAULT.** After an event of default occurs (including failure to pay at Maturity), Lender may, at its option and without notice to any obligor (except for any notice required by applicable law), increase the interest rate on the Note one or more times to a rate or rates (each a "default rate") to be determined by Lender in its sole discretion. However, (a) the default rate shall never exceed 18% per annum, and (b) Lender will not increase the interest rate to a default rate if doing so is prohibited by applicable law or if this loan is subject to the federal Truth-in-Lending Act and its implementing regulations. If the default is subsequently cured, Lender may, at its option and without notice to any obligor, reduce the interest rate on the Note to the rate that would then have applied had no event of default occurred. To the extent permitted by applicable law, the interest rate provided for herein (including any default rate then in effect) or the legal rate of interest on judgments, whichever is greater, shall apply to any indebtedness due following the entry of a judgment relating to the collection of this loan.

3

EXHIBIT "1"
Page 93
132

11. **VARIABLE RATE/NEGATIVE AMORTIZATION.** If the interest rate increases during the term of the Note and/or any fixed payment amount required to be paid by the terms of the Note is at any time insufficient to pay the periodic accruals of interest (and credit insurance premiums, if applicable), Lender may (a) increase the amount of the periodic payments to have the loan fully amortized at Maturity, (b) increase the amount of the periodic payments as necessary to pay all accruals of interest (and credit insurance premiums, if applicable) for the current period and from previous periods to avoid negative amortization and/or minimize the impact of negative amortization, (c) extend the Maturity and require additional supplemental periodic payments, (d) require the resulting increase to be paid at Maturity, or (e) select or designate any combination of the foregoing, all in Lender's discretion as determined from time to time by Lender. However, if this loan is subject to the federal Truth-in-Lending Act and its implementing regulations, the provisions of this section shall not be enforced in conflict with disclosures given pursuant thereto.

12. **MISCELLANEOUS.** The term "Note" refers to the original Note identified at the beginning of this Agreement. The term "Loan Documents" includes all documents signed and delivered in connection with the loan transaction evidenced by the Note (including the Note, each security instrument, any loan commitment letters, any loan agreements and all loan application documents), whether now existing or hereafter arising. The terms "Note" and "Loan Documents" include all amendments, modifications, extensions, renewals and increases thereof. All of the Loan Documents are hereby modified, amended, renewed, extended and supplemented to the extent necessary to effect the changes to the loan transaction specified in this Agreement. The Note, as modified by this Agreement, shall be the joint and several obligation of each maker, regardless of whether such maker was an original maker of the Note. This Agreement shall be binding upon, and inure to the benefit of, the parties to this Agreement and their respective successors-in-interest. This Agreement is not a novation; rather, it constitutes a modification to the terms of an existing contractual relationship between the parties and is not intended as a cancellation of the original debt or the creation of a new debt. The terms and provisions of the Note and other Loan Documents not expressly modified by this Agreement shall continue in full force and effect. The terms of the Note and Loan Documents, as modified by this Agreement, are in all respects ratified and confirmed and shall continue in full force and effect.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his or her hand or caused this Agreement to be signed in its name by a person or persons duly authorized, all as of the date of this Agreement.

**BUSINESS ENTITY MAKER:**

Ocean View Medical Investors LLC
_____
Name of Business Entity

By: _____

Print/Type Name: Barry Beitler

Title: Managing Member

By/Attest: _____

Print/Type Name: John Bral

Title: Managing Member

**INDIVIDUAL MAKER(S):**

_____
Signature

Print/Type name: _____

_____
Signature

Print/Type name: _____

_____
Signature

Print/Type name: _____

_____
Signature

Print/Type name: _____

Accepted: **FIRST-CITIZENS BANK & TRUST COMPANY**

By: _____

Sales Associate No. 43057   Cost Ctr. 982

[X] See Signature Addendum for signature(s)
of additional party(ies).

4

**SIGNATURE ADDENDUM**
For Note or Note Modification Agreement

For the purposes of this Signature Addendum, the term "Document" refers to the following promissory note or note modification agreement:

A.    Name or Title of Document:   Note Modification Agreement

B.    Dated:   February 22, 2011

C.    Maker(s)/Borrower(s):   Ocean View Medical Investors LLC
                              BAB'8 LLC

The Document has inadequate space for the signatures of all of the makers/borrowers. This Signature Addendum serves as a supplement to the Document. As indicated below, the signature lines appearing on the Document are supplemented by the signature lines contained in this Signature Addendum.

**ADDITIONAL SIGNATURES TO DOCUMENT**

The undersigned are additional makers/borrowers who sign below because of inadequate space for their signatures on the Document itself. By signing below, the undersigned shall be deemed to have signed the Document as makers/borrowers, and they acknowledge that they are jointly and severally liable as makers/borrowers to the same extent as if their signatures appeared on the Document itself.

| BUSINESS ENTITY: | INDIVIDUAL(S): |
|---|---|
| BAB'8 LLC _____ (SEAL) | _____ (SEAL) |
| Name of Business Entity | Type Name: |
| By: _____ (SEAL) | _____ (SEAL) |
| Title:  Barry Beitler - Managing Member | Type Name: |
| By/Attest: _____ (SEAL) | _____ (SEAL) |
| Title: _____ | Type Name: |
| | _____ (SEAL) |
| BUSINESS ENTITY: | Type Name: |
| _____ (SEAL) | _____ (SEAL) |
| Name of Business Entity | Type Name: |
| By: _____ (SEAL) | |
| Title: _____ | _____ (SEAL) |
| By/Attest: _____ (SEAL) | Type Name: |
| Title: _____ | _____ (SEAL) |
| | Type Name(S): |
| BUSINESS ENTITY: | _____ (SEAL) |
| _____ (SEAL) | Type Name: |
| Name of Business Entity | |
| By: _____ (SEAL) | |
| Title: _____ | |
| By/Attest: _____ (SEAL) | |
| Title: _____ | |

For Bank Audit Purposes Only:
Accepted:  IRONSTONE BANK

By: _____    Associate No.  43052    Cost Ctr. No. _____

**THE ORIGINAL OF THIS SIGNATURE ADDENDUM SHOULD BE ATTACHED TO THE DOCUMENT**

CLS-Signature Addendum (ISD) (10/10)

EXHIBIT "1"
Page 94
134

# FIRST-CITIZENS BANK & TRUST COMPANY
## NOTE GUARANTY
## CALIFORNIA

For Bank Use Only:

| Account # | | Obligor # 1320180 | | Future Obligation # | | Current Obligation # 20194079 |
| Account # | | Obligor # | | Future Obligation # | | Current Obligation # |

February 22, 2011
Date of Execution and Delivery

**GUARANTOR(S):**

Name: John Braj                                Name:

Address: 2601 Main St Ste 560                  Address:
         Irvine, CA 92614-4224

Soc.Sec./Tax ID No. 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                Soc.Sec./Tax ID No.

**LENDER:** First-Citizens Bank & Trust Company     Branch No. 981     State in which Branch is Located: California

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

Borrower. The word "Borrower" means each and every maker of the Note identified below and each and every person who at any time assumed, assumes, or otherwise became or becomes primarily liable on the Note identified below. If there is more than one Borrower, the word "Borrower" refers individually to each such Borrower and collectively to all such Borrowers.

Guarantor. The word "Guarantor" means the guarantor identified above. If there is only one guarantor, the word "Guarantor" refers individually to each such guarantor and collectively to all such guarantors.

Guaranty. The word "Guaranty" means this Note Guaranty.

Lender. The word "Lender" means First-Citizens Bank & Trust Company. The Lender's mailing address is: First-Citizens Bank & Trust Company, Loan Servicing Department-DAC20, P.O. Box 26592, Raleigh, NC 27611-6592. As of the date of this Guaranty, Lender is the owner and holder of the Note.

Note. The word "Note" refers to the following promissory note, credit agreement, instrument, agreement, obligation, or other evidence of debt:

Title of Instrument: Promissory Note

Dated: October 5, 2005                          Original Principal Amount:   $ 4,725,000.00

Original Borrower(s)/Obligor(s): Ocean View Medical Investors LLC and BAB 8 LLC

Original Creditor/Payee: First Regional Bank

together with all renewals, extensions, modifications, refinancings, consolidations, and substitutions thereof or therefor, and all increases therein. However, unless Guarantor otherwise agrees, the word "Note" does not include any modification, renewal, replacement or substitution of or for the promissory note, credit agreement, instrument, agreement, obligation, or other evidence of debt identified above signed after the date of this Guaranty that increases the face amount thereof for any reason other than to capitalize accrued interest and/or other sums that are then due and payable.

814-84010 (CA) (1/11)

**GUARANTY.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees the payment to Lender or its order of all sums due on the Note, in legal tender. This is an unconditional and continuing guaranty for the prompt and punctual payment as and when due of all principal, interest, and other sums due on the Note, whether the Note is due in part or in full, at maturity or earlier, or by reason of acceleration or otherwise. This is a guaranty of payment and not of collection. The liability of each Guarantor under this Guaranty shall be joint and several.

This Guaranty applies only to the Note and does not apply to any other debt now or hereafter owed to Lender. However, if Lender currently holds or hereafter receives one or more additional guaranties from Guarantor, the rights of Lender under all such guaranties shall be cumulative. This Guaranty shall not affect or lessen any of such other guaranties. The liability of Guarantor will be the aggregate liability of Guarantor under the terms of this Guaranty and all such other unterminated guaranties. Guarantor has not signed this Guaranty in reliance on the guaranty(ies) of any other guarantor(s). Guarantor's liability under this Guaranty shall be separate and independent of the liability of Borrower and of the liability of any other guarantor(s) of all or any portion of the Note, and Guarantor's liability under this Guaranty shall not be affected or lessened by the guaranty(ies) of any other guarantor(s), the termination or revocation of any other guaranty(ies), or the release of any Borrower or of any other guarantor(s).

If the Note is not paid as and when due, Lender may call upon Guarantor from time to time to pay without first pursuing its remedies against any collateral and without first attempting to collect from any Borrower or any other person or entity who may be liable for all or any portion of the Note.

**DURATION OF GUARANTY.** This Guaranty will take effect when signed by Guarantor and received by Lender without the necessity of any acceptance by Lender or any notice to Guarantor or to any Borrower. This Guaranty will continue in full force and effect until the Note has been fully and finally paid and satisfied, the rights of each Borrower to obtain further credit advances under the Note have been terminated, and all other obligations of Guarantor under this Guaranty have been performed in full. It is anticipated that sums owing on the Note and covered by this Guaranty may fluctuate from time to time. Guarantor specifically acknowledges and agrees that reductions in the sums owed on the Note from time to time, even to zero dollars ($0.00), shall not terminate this Guaranty. This Guaranty is binding on Guarantor even though the indebtedness guaranteed may from time to time be zero dollars ($0.00).

If Lender is required or agrees to pay, return or restore any amounts previously paid on the Note because of any bankruptcy or insolvency proceeding or for any other reason, the obligations of Guarantor shall be reinstated and revived and the rights of Lender shall continue with regard to such amounts, all as though they had never been paid.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice to or demand upon Guarantor, without Guarantor's knowledge or consent, and without affecting or lessening Guarantor's liability under this Guaranty, from time to time: (a) to advance and re-advance loan proceeds; (b) to modify, alter, increase, renew, extend, accelerate, compromise or otherwise change (without limit as to the number of times or of the periods thereof) the terms of the Note, including but not limited to extending the time for payment, modifying the repayment terms and increasing or decreasing the interest rate (provided, however, that unless Guarantor otherwise agrees, this Guaranty shall not extend to any modification of the Note or to any renewal, substitution or replacement of or for the Note subsequent to the date of this Guaranty that increases the face amount of the Note for any reason other than to capitalize accrued interest and/or other sums then due and payable); (c) to release, substitute, settle with, agree not to sue, or deal with any Borrower, surety, endorser, or other guarantor on any terms or in any manner Lender may choose; (d) to take and hold collateral for the payment of the Note and/or this Guaranty, and to exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such collateral, with or without the substitution of new collateral; (e) to direct the order and manner for the disposition of any collateral for the payment of the Note and/or this Guaranty; (f) to determine the order of application of payments and credits to the Note; (g) to consent to any assumption of the Note; (h) to sell, transfer, assign, or grant participations in all or any part of the Note, and in connection therewith to disclose information (including financial information) relating to Guarantor and/or Borrower; (i) to assign or transfer this Guaranty in whole or in part; and (j) to extend credit to any Borrower or lease equipment or other goods to any Borrower (provided, however, that this Guaranty shall not extend to any such additional credit or leases without Guarantor's consent).

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) Lender's financial accommodations to Borrower (including the loan evidenced by the Note) are adequate consideration for the giving of this Guaranty; (b) Guarantor will receive direct or indirect benefit from Lender's loan(s) to Borrower and/or Lender's business dealings with Borrower; (c) this Guaranty is executed at Borrower's request and not at the request of Lender; and (d) Guarantor has adequate means to obtain information regarding each Borrower's financial condition on a continuing basis. This Guaranty is based solely on Guarantor's independent evaluation of each Borrower's financial condition and not upon any representation or statements made by Lender or on

2

Lender's behalf. Guarantor assumes full responsibility for obtaining such additional information concerning each Borrower's financial condition as Guarantor deems material to Guarantor's obligations under this Guaranty. Absent Guarantor's written request for such information and Borrower's consent to disclose such information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with any Borrower. Guarantor knowingly accepts the full range of risk encompassed in this Guaranty resulting from the possibility that Borrower's financial condition and/or ability to pay debts as they mature may deteriorate.

**GUARANTOR'S OBLIGATION TO PROVIDE FINANCIAL INFORMATION.** For purposes of this section, "Financial Information" means information relating to Guarantor's finances. Guarantor covenants and agrees with Lender that, so long as this Guaranty remains in effect, Guarantor will furnish Lender with such Financial Information at such times and in such detail as Lender may reasonably request, including, but not limited to, the following: (i) Guarantor's personal financial statement (if Guarantor is an individual); (ii) Guarantor's quarterly and year-end balance sheet and profit and loss statements (if Guarantor is engaged in business activities); (iii) copies of Guarantor's federal and state tax returns and all schedules relating thereto, including Schedule K-1 (if applicable); and (iv) such additional information and statements, lists of assets and liabilities, aging of receivables and payables, inventory schedules, budgets, forecasts, tax returns, and other reports with respect to Guarantor's financial condition and business operations as Lender may reasonably request from time to time.

Guarantor warrants and represents that (i) all Financial Information Guarantor has provided and that has been provided on Guarantor's behalf to date is true and accurate in all material respects and fairly presents Guarantor's financial condition and business transactions as of the date of the Financial Information provided, and (ii) Financial Information Guarantor provides and that is provided on Guarantor's behalf in the future will be true and accurate in all material respects and will fairly present Guarantor's financial condition and business transactions as of the date of the Financial Information provided. Guarantor further warrants and represents that, except as specifically disclosed in the Financial Information, (i) Guarantor has no direct or contingent liabilities; (ii) title to all assets listed in the Financial Information is solely in Guarantor's name, and no other person or entity has an interest in such assets; (iii) there exist no liens, encumbrances, or defects in or upon the assets listed in the Financial Information; (iv) all taxes owed by Guarantor have been fully paid and discharged, except taxes not then due and payable without penalty; (v) there are no claims, actions, or proceedings pending or threatened against Guarantor or any of Guarantor's property; and (vi) there are no judgments or liens against Guarantor or any of Guarantor's property. With respect to each copy of Guarantor's tax returns given to Lender, Guarantor warrants and represents that (i) the copy is a true and accurate copy of the return, as filed; (ii) the original of the return was properly signed or electronically authenticated by Guarantor or on Guarantor's behalf and submitted to the appropriate tax authority; and (c) the return accurately states the Guarantor's income, deductions and tax liability for the period stated. Guarantor acknowledges that Lender has relied and will rely on Guarantor's Financial Information.

Guarantor covenants and agrees to send written notice to Lender within five (5) business days after the occurrence of any change that is both material and adverse in (a) Guarantor's financial condition or business transactions, (b) Guarantor's ability to perform Guarantor's obligations to Lender, or (c) Financial Information previously given.

Guarantor authorizes Lender and its affiliates to make such credit, employment, and investigative inquiries about Guarantor from time to time as Lender and its affiliates deem appropriate to evaluate Guarantor's financial strength, character, and credit history, to administer any loan(s) made to others guaranteed by Guarantor, and to collect any sums owing. Lender is authorized to verify information about Guarantor and obtain consumer report(s) about each individual who signs this Guaranty as a Guarantor or in a representative capacity on behalf of a Guarantor.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to notify Guarantor of any advance or re-advance of loan proceeds; (b) to notify Guarantor of any modification, alteration, renewal, extension, acceleration, compromise or other change in the Note; (c) to continue lending money or to extend other credit to any Borrower or to notify Guarantor of any such loan or extension of credit; (d) to make any presentment, protest, or demand for payment; (e) to give Guarantor notice of any kind, including notice of acceptance of this Guaranty, notice of change of any terms of repayment of the Note, notice of delinquency, notice of default by Borrower or any other guarantor or surety, notice of any action or non-action taken by Borrower, Lender, or any other guarantor or surety of Borrower, notice of intent to accelerate, notice of acceleration, notice of nonpayment, notice of dishonor or notice of protest; (f) to resort for payment or to proceed directly or at once against any person or entity, including any Borrower or any other guarantor, before proceeding against Guarantor, (g) to proceed directly against or exhaust any collateral given to secure payment of the Note and/or this Guaranty before proceeding against Guarantor; (h) to apply any payments or proceeds received against the Note in any order; (i) to disclose any information about the Note, the Borrower, the collateral, or any other guarantor or surety, or about any action or non-action of Lender; (j) to marshal assets or liabilities or to sell assets in inverse order of alienation; or (k) to pursue any other remedy or course of action within Lender's power.

3

Guarantor also waives any and all rights or defenses arising by reason of (a) the cessation from any cause whatsoever, other than payment in full, of the Note; (b) the application of proceeds of the Note by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (c) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Note or the loss or release of any collateral by operation of law or otherwise; (d) any statute of limitations in any action under this Guaranty or on the Note or (e) any modification or change in terms of the Note, including, without limitation, the renewal, extension, acceleration, or other change in the time payment the Note is due and any change in the interest rate. Guarantor waives any right to claim a discharge of this Guaranty on the basis of suretyship or unjustified impairment of any collateral.

Guarantor waives (a) any rights or defenses based on any claim that Guarantor's obligations exceed or are more burdensome than those of Borrower; (b) any right or defense Guarantor may have at law or in equity, including California Code of Civil Procedure § 580a, to a fair market value hearing or action to determine a deficiency after a foreclosure; (c) Guarantor's rights of subrogation, reimbursement, indemnification and contribution and any other rights and defenses that are or may become available to Guarantor by reason of Sections 2787 through 2855, inclusive, of the California Civil Code; (d) any rights and defenses Guarantor may have in respect of Guarantor's obligations as a guarantor or other surety by reason of any election of remedies by Lender; and (e) any rights or defenses Guarantor may have because the Note is or may be secured from time to time by real estate or an estate for years, including, without limitation, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure to the Note. To that end:

Guarantor waives all rights and defenses that Guarantor may have because all or any part of the Note is or may be secured from time to time by real property. This means, among other things:

(1) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower.

(2) If Lender forecloses on any real property collateral pledged by Borrower:

(a) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(b) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Note is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure. The obligations of Guarantor under this Guaranty shall survive any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of record of the Security Instrument.

Guarantor waives all rights and defenses arising out of an election of remedies by Lender even though that election of remedies, such as a non-judicial foreclosure with respect to security for the Note, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor also (a) waives any defense that arises because of any disability or any other defense any Borrower may assert; (b) waives any defense based on the assertion that the Note is invalid or unenforceable or that any Borrower never was or is no longer liable on the Note for any reason; (c) waives and agrees not to assert or claim at any time any deduction to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, recoupment or similar right, whether such claim or right may be asserted by Guarantor, by any Borrower, or by any other person or entity; (d) waives all homestead and other exemptions relating to any collateral that secures the payment of all or any part of the Note and/or this Guaranty; and (e) waives any and all rights (whether by subrogation, indemnity, reimbursement or otherwise) to recover from Borrower any amounts paid by Guarantor under this Guaranty unless and until the Note has been fully and finally paid and satisfied.

4

EXHIBIT "1"
Page 99

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until the Note is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Note now or hereafter held by Lender.

**USE OF PROCEEDS.** Guarantor agrees that Lender has no duty to monitor or verify any Borrower's use of the proceeds of any loan or to ensure or verify that any loan proceeds are used for the purposes described in any credit application, loan agreement or any other document. Guarantor waives and agrees not to assert against Lender any claim or defense based on (a) the actual use of any loan proceeds, (b) the failure of any loan proceeds to be used for any purpose described in any credit application, loan agreement, or any other document, and (c) Lender's knowledge that loan proceeds were not used for the purpose described in any credit application, loan agreement or any other document.

**LENDER'S RIGHT OF SETOFF.** Unless this Guaranty is secured by a mortgage or deed of trust on California real property, Lender has the right of setoff provided by law and/or as provided by any deposit account agreement or other agreement Guarantor has or may hereafter have with Lender. Lender may exercise its right of setoff against all deposits, monies, securities and other property of Guarantor now or hereafter in Lender's possession or on deposit with Lender, whether held in general or special accounts or deposits, whether held alone or jointly with others and whether held for safekeeping or otherwise. However, Lender may not exercise a right of setoff against IRA, Keogh, agency, fiduciary or trust accounts. Lender may exercise its right of setoff without demand upon or notice to Guarantor or anyone else.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Whether or not any Borrower becomes insolvent, any right or claim Guarantor has or may acquire against any Borrower or any Borrower's property shall be subordinate and subject in right of payment to Lender's right to the payment of the Note in full.

**AMENDMENTS.** This Guaranty constitutes the entire understanding and agreement of Guarantor and Lender as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**APPLICABLE LAW.** This Guaranty shall be deemed to have been made under and shall be governed and construed in accordance with federal law and, to the extent not preempted by federal law, the law of the State of California.

**MARRIED GUARANTOR.** If Guarantor is a married individual, Guarantor warrants and represents that this Guaranty is given for the benefit of the marital community. Each person named separately as a Guarantor on the first page of this Guaranty hereby binds the marital community and agrees that recourse under this Guaranty may be had against both his or her separate property and all community property. If the spouse of a Guarantor is not named separately as a Guarantor on the first page of this Guaranty but nonetheless signs this Guaranty, he or she thereby binds the marital community and all community property (but not his or her sole and separate property) to the payment of Guarantor's obligations under this Guaranty.

**COSTS AND EXPENSES.** If any lawsuit, reference or arbitration is commenced which arises out of or is related to the Note or this Guaranty, the prevailing party shall be entitled to recover from the other party such sums as the court, referee or arbitrator may adjudge to be reasonable attorneys' fees (including allocated costs of services of in-house counsel) in the action or proceeding, in addition to costs and expenses otherwise allowed by law. In all other situations, including any bankruptcy or insolvency proceeding, Guarantor agrees to pay all of Lender's costs and expenses, including reasonable attorneys' fees (including allocated costs for services of Lender's in-house counsel) which may be incurred in any effort to collect or enforce the Note or this Guaranty.

**NOTICES.** Unless otherwise required by law or this Guaranty, any notice given by either party to the other under this Guaranty shall be in writing and may be hand delivered, sent by any nationally recognized overnight courier service, mailed through the US Postal Service or sent by telefacsimile. Any such notice shall be effective when actually delivered (when sent by telefacsimile or hand delivered), when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

5

INTERPRETATION. This Guaranty shall be binding upon Guarantor and inure to the benefit of Lender. The words "Guarantor," "Borrower," and "Lender" include their respective heirs, legal representatives, successors, assigns (including, without limitation, any debtor in possession or trustee in bankruptcy for Guarantor), and transferees, as well as the successor trusts, corporations, limited liability companies, partnerships or other similar entities of each arising from mergers, consolidations, alterations, conversions, name changes, or changes to the identity of any trustees, officers, directors, members, managers, general partners, limited partners or other agents. Guarantor's liability under this Guaranty shall continue in full force and effect and shall not be affected or lessened by (a) any merger, consolidation, alteration, conversion or other change of form, name change or other change affecting Guarantor or any Borrower, or (b) changes in the identity of any trustee, officers, directors, members, managers, general partners, limited partners or other agents of Guarantor or any Borrower. Any successor business entity to Guarantor shall be fully liable as Guarantor under this Guaranty. If Guarantor or any Borrower is a trust, corporation, limited liability company, partnership or similar entity, it is not necessary for Lender to inquire into the powers of any Borrower or Guarantor or of the trustees, officers, directors, members, managers, general partners, limited partners or other agents acting or purporting to act on their behalf, and any obligation made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable.

WAIVER. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

MISCELLANEOUS. Any photocopy, microfilm, microfiche or optical image of this Guaranty may be presented as evidence in lieu of the original in any legal proceeding to enforce the terms of this Guaranty and shall have the same validity as the original.

*The remainder of this page has been left blank intentionally. The signature page follows.*

6

☐  If checked, this Guaranty is modified, amended and supplemented by that Addendum attached hereto and incorporated herein by reference.

### NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley)

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the contract that makes you liable for the debt.

### AVISO PARA EL FIADOR (Spanish Translation Required By Law)

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podrán usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumple con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le eché a usted la responsabilidad de la deuda.

IN WITNESS WHEREOF, each Guarantor has hereunto set his or her hand or caused this Guaranty to be signed in its name by a person or persons duly authorized, all as of the date of this Guaranty.

**BUSINESS ENTITY GUARANTOR:**                    **INDIVIDUAL GUARANTOR(S):**

_____                _____
*Name of Guarantor*                               Print or Type Name: John Bral

By:_____
*Name and Title*

By:_____                Print or Type Name:_____
*Name and Title*

7

EXHIBIT "1"
Page 106
142

 **First Citizens
Bank**

November 30, 2012

**VIA OVERNIGHT DELIVERY**

OCEAN VIEW MEDICAL
INVESTORS, LLC
825 South Barrington Avenue
Los Angeles, California 90049
Attention: Mr. Barry Beitler

BAB 8, LLC, LLC
825 South Barrington Avenue
Los Angeles, California 90049
Attention: Mr. Barry Beitler

MR. BARRY BEITLER
825 South Barrington Avenue
Los Angeles, California 90049

MR. AND MRS. ALI AND
FLORIA ARYARAD
81 Canyon Creek
Irvine, California 92603

Re:   **Notice of Default and Demand for Payment**

Dear Gentlepersons:

As you know, FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina commercial bank ("Bank"), is the holder of that certain loan (the "Loan") in the original principal amount of $4,725,000.00 originally made by First Regional Bank to OCEAN VIEW MEDICAL INVESTORS, LLC, a California limited liability company ("OVMI"), and BAB 8, LLC, a California limited liability company ("BAB 8", and together with OVMI, hereinafter referred to collectively as "Borrower"). Borrower's obligations and indebtedness to Bank in connection with the Loan is guaranteed by BARRY BEITLER, an individual ("Guarantor"). The Loan is evidenced and secured by certain promissory notes, deeds of trust, guarantees, security agreements, assumption agreements, and indemnities, which, together with any and all other agreements, instruments, and documents executed in connection with the Loan, and all modifications and amendments thereto, are hereinafter referred to individually and collectively as the "Loan Documents".

As you also know, Borrower's obligations to the Bank under all of the Loan Documents except for the promissory note evidencing the Loan (the "Note") were assumed by ARI ARYARAD, an individual, and FLORIA ARYARAD, an individual (collectively, the

1112143.1   Special Assets Group   655 North Central Avenue, Suite 1500, Glendale, CA 91203
Phone: (818)242-1788 Fax: (818)956-1007

EXHIBIT "1"
Page 10244

OCEAN VIEW MEDICAL INVESTORS, LLC, et. al.
November 30, 2012
Page 2

Re:    Notice of Default and Demand for Payment

"Aryarads"), and the Aryarads are co-obligors with Borrower under all of the Loan Documents
other than the Note.

As of November 27, 2012, the Loan has an outstanding  principal balance of
$4,164,305.82, plus accrued and unpaid interest in the sum of $18,045.33, plus such other fees,
costs, and expenses as may be owing to the Bank under or in connection with the Loan. The
Loan will continue to accrue interest, and the Bank will continue to incur fees and costs in
connection with enforcement of its rights and remedies, until the Loan is repaid in full.

### NOTICE OF DEFAULT AND DEMAND UNDER LOAN DOCUMENTS

NOTICE IS HEREBY GIVEN that an "Event of Default" has occurred under the Loan.
The Event of Default includes, without limitation, the failure by Borrower and Guarantor to
repay the Loan to the Bank, in full, by the maturity date of May 1, 2012. The entire Loan is now
immediately due and payable to the Bank.

DEMAND IS HEREBY MADE against Borrower and Guarantor for immediate payment
of the outstanding balance  of the Loan to the Bank. If Bank does not receive payment of the
Loan in full by December 7, 2012, then Bank may commence exercising all of its rights and
remedies with respect to the Loan, all of which the Bank expressly reserves.

Bank reserves the right, in its complete and sole discretion, to charge interest under the
Loan at the default interest rates set forth in the Loan Documents, as of the date of Event of
Default. Further, as a result of the Event of Default, any and all commitments and obligations of
Bank under the Loan Documents (including, without limitation, any obligation which Bank
might otherwise have to lend money or make other advances to, or for the benefit of, Borrower)
are hereby terminated pursuant to the terms and conditions of the Loan Documents.

Please be advised that, although Bank may currently be voluntarily and temporarily
refraining from exercising certain of the rights and/or remedies that may otherwise be available
to it, such action (or inaction) by Bank is absolutely and completely voluntary, gratuitous, and
temporary on the part of Bank, and Bank expressly reserves all of its rights to hereafter, from
time to time, exercise, invoke, implement, and/or avail itself of any and all of its rights and/or
remedies, without notification to Borrower, Guarantor, the Aryarads, or any other person or
entity (except as may be expressly required by the terms of the Loan Document(s) or applicable
law), and regardless of whether any discussions between Bank, on the one hand, and Borrower,
Guarantor, the Aryarads, or any other person or entity, on the other hand, are continuing, have
been discontinued, or otherwise. Nothing in this letter constitutes evidence of an agreement or
of an offer to enter into an agreement.

1112143.1

OCEAN VIEW MEDICAL INVESTORS, LLC, et. al.
November 30, 2012
Page 3

**Re:    Notice of Default and Demand for Payment**

Borrower, Guarantor, and the Aryarads acknowledge that any payments or partial payments made by Borrower, Guarantor and/or the Aryarads before, on, or after the date of this letter, may be applied by Bank in partial satisfaction of the obligations of Borrower and Guarantor under the Loan Documents; provided, however, that neither the acceptance nor application by Bank of any partial payment shall constitute a cure or waiver of any default under the Loan Documents, or constitute any extension or other modification of the Loan Documents. The acceptance of any payments by Bank was and is done with and under a reservation of all of its rights, and any contention made by Borrower, Guarantor, the Aryarads, or any other person or entity that the acceptance of such payment constitutes an agreement between Bank and Borrower, Guarantor and/or the Aryarads to reinstate the Loan or cure the defaults is factually inaccurate. Without limiting the generality of the foregoing, acceptance of payments under the Loan, from time to time, by Bank should not be construed as an express or implied agreement or promise to: (a) modify the Loan or any of the Loan Documents in any manner whatsoever; (b) make any concessions or grant any indulgences with respect to any of the Loan; or (c) waive, impair, modify, or diminish any rights and remedies Bank has under the Loan Documents, or under applicable law, all of which such rights and remedies are expressly reserved hereby.

This letter supersedes all prior correspondence and other communications from Bank, and its agents or representatives, with respect to the matters addressed herein. The description of the Loan Documents contained herein is for the information and convenience only of Borrower, Guarantor, and the Aryarads, and shall not be deemed to limit, amplify, or modify the terms or otherwise affect any of such Loan Documents.

In no event and under no circumstance shall this letter nor any past or future discussions with Bank and/or Bank's forbearance from exercising any of its rights or remedies under the Loan Documents: (i) cause a modification of any of the Loan Documents; (ii) establish a custom with respect to any of the other Loan Documents; (iii) operate as a waiver of any existing or future default(s) and/or Event(s) of Default under any of the other Loan Documents; (iv) entitle Borrower, Guarantor, or the Aryarads to any other or further notice or demand whatsoever; (v) in any way modify, change, impair, affect, diminish, or release any obligations or liability of Borrower, Guarantor, or the Aryarads under, or pursuant to, any of the other Loan Documents or any other liability any of such persons may have to Bank; or (vi) waive, limit, or condition the rights and remedies available to Bank under the Loan Documents, all of which rights and remedies are expressly reserved.

Again, we urge you to contact the undersigned immediately to resolve the Event of Default under the Loan Documents without the necessity of court action. If payment of the outstanding balance of the Loan is not received by Bank in full, or if another resolution satisfactory to the Bank is not achieved by December 7, 2012, then the Bank may exercise and enforce all of Bank's rights and remedies under the Loan Documents.

1112143.1

OCEAN VIEW MEDICAL INVESTORS, LLC, et. al.
November 30, 2012
Page 4

     Re:    <u>Notice of Default and Demand for Payment</u>

                  Very truly yours,

FIRST-CITIZENS BANK & TRUST COMPANY

By:

Name: L. KURT DEMOSS

Title: SENIOR VICE PRESIDENT

1112143.1

```
FIRST CITIZENS BANK          LOAN HISTORY RECORD    LN3650P
 10/05/05 to  6/11/10        --Request--          PAGE    1
OCEAN VIEW MEDICAL I
Loan#-        9744781 L Made-10/05/05. Amt-  4725000.00 Calrp-1E
Term-   6 Pmts-      .00 Rate-  6.000000 Dlr #-       Off- 043057
Type- MINI PERM      Next Due  5/01/10 DOLRTC-  2/02/09
 Accrued      35,263.63563 Dealer Interest       .00000
 Daily Accr.     694.16666 Secondary Acc.        .00000
 Other Charge        .00    Date paid off  0/00/00
PD10-  21 PD30-  12 PD60-   6 PD90-  1 Exten-    Renew-   8
PD120-  1 PD150-   1 PD180-
         C 441 OLD NEWPORT BLVD NEWPORT BCH CA/PURCH MEDICAL
         C BLDG
------------------------------------------------------------
OCEAN VIEW MEDICAL INVESTORS LLC         Cif Number- 0000574
BAB 8 LLC                          Home Phone 310-820-2955
ATTN: JOHN BRAL                    Bus. Phone
2601 MAIN ST SUITE 560
IRVINE CA 92614
------------------------------------------------------------
BARRY BEITLER                            Cif Number B001952
825 S BARRINGTON AVE               Home Phone 310-820-2955
LOS ANGELES CA  90049              Bus. Phone
                                   ****** Guarantor    ******
------------------------------------------------------------
BAB 8 LLC                                Cif Number B002296
825 S BARRINGTON AVE               Home Phone
LOS ANGELES CA 90049               Bus. Phone 310-820-2955
                                   ****** Joint       ******
------------------------------------------------------------
 Posted   T/C     Amount      Balance      Due For
10/11/05   15   3,598,088.00  3,598,088.00  11/01/05
10/11/05   15      35,625.00  3,633,713.00  11/01/05
10/11/05   15         750.00  3,634,463.00  11/01/05
10/11/05   15       5,200.00  3,639,663.00  11/01/05
10/11/05   15          16.00  3,639,679.00  11/01/05
10/11/05   15         289.00  3,639,968.00  11/01/05
10/11/05   15          20.00  3,639,988.00  11/01/05
10/11/05   15          12.00  3,640,000.00  11/01/05
11/02/05  919          25.27  3,640,000.00  11/01/05
11/02/05  889       7.250000      7.500000  Rate Change
11/14/05   10      15,394.16  3,640,000.00  11/01/05
11/14/05  912      15,394.16  3,640,000.00  11/01/05
12/12/05  804       2,275.00  3,640,000.00   0/00/00
12/14/05  919          25.27  3,640,000.00  12/01/05
12/14/05  889       7.500000      7.750000  Rate Change
12/30/05  288       2,275.00  3,640,000.00  12/01/05
```

EXHIBIT "1"
Page 106 149

```
FIRST CITIZENS BANK          LOAN HISTORY RECORD    LN3650P
  10/05/05 to  6/11/10          --Request--              PAGE    2
OCEAN VIEW MEDICAL I
Loan#-          9744781 L
--------------------------------------------------------------------
```

| Posted | T/C | Amount | Balance | Due For |
|--------|-----|--------|---------|---------|
| 1/04/06 | 10 | 22,749.99 | 3,640,000.00 | 12/01/05 |
| 1/04/06 | 912 | 22,749.99 | 3,640,000.00 | 12/01/05 |
| 1/05/06 | 10 | 23,988.61 | 3,640,000.00 | 1/01/06 |
| 1/05/06 | 912 | 23,988.61 | 3,640,000.00 | 1/01/06 |
| 2/01/06 | 919 | 25.27 | 3,640,000.00 | 2/01/06 |
| 2/01/06 | 889 | 7.750000 | 8.000000 | Rate Change |
| 2/06/06 | 10 | 24,291.94 | 3,640,000.00 | 2/01/06 |
| 2/06/06 | 912 | 24,291.94 | 3,640,000.00 | 2/01/06 |
| 3/07/06 | 10 | 22,674.16 | 3,640,000.00 | 3/01/06 |
| 3/07/06 | 912 | 22,674.16 | 3,640,000.00 | 3/01/06 |
| 3/29/06 | 919 | 25.27 | 3,640,000.00 | 4/01/06 |
| 3/29/06 | 889 | 8.000000 | 8.250000 | Rate Change |
| 4/04/06 | 10 | 25,075.56 | 3,640,000.00 | 4/01/06 |
| 4/04/06 | 912 | 25,075.56 | 3,640,000.00 | 4/01/06 |
| 5/11/06 | 919 | 25.27 | 3,640,000.00 | 5/01/06 |
| 5/11/06 | 10 | 25,126.10 | 3,640,000.00 | 5/01/06 |
| 5/11/06 | 912 | 25,126.10 | 3,640,000.00 | 5/01/06 |
| 5/11/06 | 889 | 8.250000 | 8.500000 | Rate Change |
| 5/15/06 | 15 | 45,139.33 | 3,685,139.33 | 6/01/06 |
| 6/12/06 | 804 | 2,659.65 | 0/00/00 | 0/00/00 |
| 6/13/06 | 10 | 26,596.45 | 3,685,139.33 | 6/01/06 |
| 6/13/06 | 912 | 26,596.45 | 3,685,139.33 | 6/01/06 |
| 6/30/06 | 919 | 25.59 | 3,685,139.33 | 7/01/06 |
| 6/30/06 | 889 | 8.500000 | 8.750000 | Rate Change |
| 7/05/06 | 288 | 2,659.65 | 3,685,139.33 | 7/01/06 |
| 7/10/06 | 15 | 26,103.07 | 3,711,242.40 | 7/01/06 |
| 7/10/06 | 10 | 26,103.07 | 3,711,242.40 | 7/01/06 |
| 7/10/06 | 912 | 26,103.07 | 3,711,242.40 | 7/01/06 |
| 8/14/06 | 804 | 2,795.73 | 3,711,242.40 | 0/00/00 |
| 8/23/06 | 15 | 8,502.77 | 3,719,745.17 | 8/01/06 |
| 8/23/06 | 10 | 8,502.77 | 3,719,745.17 | 8/01/06 |
| 8/23/06 | 912 | 8,502.77 | 3,719,745.17 | 8/01/06 |
| 8/23/06 | 10 | 19,454.50 | 3,719,745.17 | 8/01/06 |
| 8/23/06 | 912 | 19,454.50 | 3,719,745.17 | 8/01/06 |
| 9/12/06 | 804 | 2,796.32 | 3,719,745.17 | 0/00/00 |
| 9/25/06 | 8 | 27,963.18 | 3,719,745.17 | 9/01/06 |
| 9/25/06 | 8 | 27,141.74 | 3,719,745.17 | 9/01/06 |
| 10/31/06 | 10 | 28,027.24 | 3,719,745.17 | 11/01/06 |
| 10/31/06 | 912 | 28,027.24 | 3,719,745.17 | 11/01/06 |
| 12/08/06 | 10 | 27,123.15 | 3,719,745.17 | 12/01/06 |
| 12/08/06 | 912 | 27,123.15 | 3,719,745.17 | 12/01/06 |
| 1/09/07 | 10 | 28,027.24 | 3,719,745.17 | 1/01/07 |
| 1/09/07 | 912 | 28,027.24 | 3,719,745.17 | 1/01/07 |
| 2/12/07 | 804 | 2,802.73 | 3,719,745.17 | 0/00/00 |
| 2/14/07 | 10 | 28,027.25 | 3,719,745.17 | 2/01/07 |
| 2/14/07 | 912 | 28,027.25 | 3,719,745.17 | 2/01/07 |
| 3/12/07 | 804 | 2,531.49 | 3,719,745.17 | 0/00/00 |
| 3/15/07 | 288 | 2,802.73 | 3,719,745.17 | 3/01/07 |

EXHIBIT "1"
Page 107
750

```
FIRST CITIZENS BANK              LOAN HISTORY RECORD      LN3650P
10/05/05 to 6/11/10              --Request--              PAGE    3
OCEAN VIEW MEDICAL I .
Loan#-          9744781 L
---------------------------------------------------------------------
 Posted    T/C       Amount       Balance       Due For
3/15/07    288      2,531.49    3,719,745.17    3/01/07
3/15/07     10     25,314.93    3,719,745.17    3/01/07
3/15/07    912     25,314.93    3,719,745.17    3/01/07
4/11/07     10     28,027.25    3,719,745.17    4/01/07
4/11/07    912     28,027.25    3,719,745.17    4/01/07
5/10/07     10     27,123.14    3,719,745.17    5/01/07
5/10/07    912     27,123.14    3,719,745.17    5/01/07
5/23/07     15     15,394.16    3,735,139.33    6/01/07
6/12/07    804      2,802.73    3,735,139.33    0/00/00
6/13/07     10     28,027.25    3,735,139.33    6/01/07
6/13/07    912     28,027.25    3,735,139.33    6/01/07
7/02/07     15    104,970.87    3,840,110.20    7/01/07
7/10/07     10     27,269.06    3,840,110.20    7/01/07
7/10/07    912     27,269.06    3,840,110.20    7/01/07
8/13/07     10     28,908.65    3,840,110.20    8/01/07
8/13/07    912     28,908.65    3,840,110.20    8/01/07
9/04/07     15     28,934.17    3,869,044.37    9/01/07
9/04/07     10     28,934.17    3,869,044.37    9/01/07
9/04/07    912     28,934.17    3,869,044.37    9/01/07
9/05/07     15     25,115.60    3,894,159.97   10/01/07
9/18/07     15     20,950.65    3,915,110.62   10/01/07
9/19/07    918         54.37    3,915,110.62   10/01/07
9/19/07    889      8.750000        8.250000   Rate Change
10/01/07   891              1               3   Status Change
10/12/07   804      2,834.94    3,915,110.62    0/00/00
11/01/07   918         27.18    3,915,110.62   10/01/07
11/01/07   889      8.250000        8.000000   Rate Change
12/12/07   918         27.18    3,915,110.62   10/01/07
12/12/07   889      8.000000        7.750000   Rate Change
12/27/07   891              3               1   Status Change
12/27/07    15     82,595.87    3,997,706.49    1/01/08
12/27/07     8     81,595.87    3,997,706.49    1/01/08
12/27/07   802           .00    3,997,706.49    1/01/08
12/28/07   288      2,795.73    3,997,706.49    1/01/08
12/28/07   288      2,796.32    3,997,706.49    1/01/08
12/28/07   288      2,802.73    3,997,706.49    1/01/08
12/28/07   288      2,834.94    3,997,706.49    1/01/08
1/03/08     15     26,488.71    4,024,195.20    1/01/08
1/03/08     10     26,488.71    4,024,195.20    1/01/08
1/03/08    912     26,488.71    4,024,195.20    1/01/08
1/23/08    918         55.89    4,024,195.20    2/01/08
1/23/08    889      7.750000        7.250000   Rate Change
2/01/08    891              1               3   Status Change
2/12/08    804      2,684.45    4,024,195.20    0/00/00
3/19/08    889      7.250000        6.500000   Rate Change
3/19/08    891              3               1   Status Change
3/19/08     15     50,788.02    4,074,983.22    4/01/08
3/19/08    918      3,940.35    4,074,983.22    4/01/08
```

EXHIBIT "1"
Page 106
151

```
FIRST CITIZENS BANK          LOAN HISTORY RECORD    LN3650P
  10/05/05 to  6/11/10          --Request--          PAGE   4
OCEAN VIEW MEDICAL I
  Loan#-          9744781 L
-------------------------------------------------------------
  Posted    T/C       Amount        Balance        Due For
  3/19/08     8      49,788.02    4,074,983.22     4/01/08
  3/19/08   802          .00      4,074,983.22     4/01/08
  3/19/08   889       6.500000        5.750000     Rate Change
  4/10/08   288      2,684.45     4,074,983.22     4/01/08
  4/10/08    15     19,108.60     4,094,091.82     4/01/08
  4/10/08    10     19,108.60     4,094,091.82     4/01/08
  4/10/08   912     19,108.60     4,094,091.82     4/01/08
  5/01/08   918         28.43     4,094,091.82     5/01/08
  5/01/08   891          1             3           Status Change
  5/01/08   889       5.750000        5.500000     Rate Change
  5/12/08   804      1,959.01     4,094,091.82     0/00/00
  7/09/08   891          3             1           Status Change
  7/09/08   288      1,959.01     4,094,091.82     7/01/08
  7/09/08    15     39,951.71     4,134,043.53     7/01/08
  7/09/08     8     19,561.63     4,134,043.53     7/01/08
  7/09/08     8     19,390.08     4,134,043.53     7/01/08
  7/09/08   802          .00      4,134,043.53     7/01/08
  7/14/08   804      1,871.58     4,134,043.53     0/00/00
  7/18/08   921         48.60     4,134,043.53     7/01/08
  7/18/08    15     18,715.76     4,152,759.29     7/01/08
  7/18/08    10     18,715.76     4,152,759.29     7/01/08
  7/18/08   912     18,715.76     4,152,759.29     7/01/08
  8/10/08   891          1             3           Status Change
  8/12/08   804      1,966.79     4,152,759.29     0/00/00
 10/01/08   288      1,966.79     4,152,759.29    10/01/08
 10/01/08    15     40,335.85     4,193,095.14    10/01/08
 10/01/08     8     19,667.92     4,193,095.14    10/01/08
 10/01/08     8     19,667.93     4,193,095.14    10/01/08
 10/01/08   802          .00      4,193,095.14    10/01/08
 10/09/08   918         58.23     4,193,095.14    10/01/08
 10/09/08   889       5.500000        5.000000     Rate Change
 10/14/08   804      1,903.35     4,193,095.14     0/00/00
 10/31/08   918         58.23     4,193,095.14    10/01/08
 10/31/08   889       5.000000        4.500000     Rate Change
 12/17/08   889       4.500000        5.500000     Rate Change
 12/17/08   891          3             1           Status Change
 12/17/08   919      6,872.01     4,193,095.14    12/01/08
 12/17/08    15     19,033.50     4,212,128.64    12/01/08
 12/17/08    15     18,344.79     4,230,473.43    12/01/08
 12/17/08   918         87.35     4,230,473.43    12/01/08
 12/17/08     8     19,033.50     4,230,473.43    12/01/08
 12/17/08     8     18,344.79     4,230,473.43    12/01/08
 12/17/08   802          .00      4,230,473.43    12/01/08
 12/17/08   889       5.500000        4.750000     Rate Change
 12/19/08   288      1,871.58     4,230,473.43    12/01/08
 12/19/08   288      1,903.35     4,230,473.43    12/01/08
 12/31/08   921         88.15     4,230,473.43    12/01/08
 12/31/08    15     20,641.94     4,251,115.37    12/01/08
```

EXHIBIT "1"
Page 109

153

FIRST CITIZENS BANK                          LOAN HISTORY RECORD      LN3650P
10/05/05 to  6/11/10                         --Request--              PAGE   5
OCEAN VIEW MEDICAL I
Loan#—        9744781 L

| Posted | T/C | Amount | Balance | Due For |
|---|---|---|---|---|
| 12/31/08 | 10 | 20,641.94 | 4,251,115.37 | 12/01/08 |
| 12/31/08 | 912 | 20,641.94 | 4,251,115.37 | 12/01/08 |
| 1/01/09 | 891 | 1 | 3 | Status Change |
| 1/12/09 | 804 | 1,862.58 | 4,251,115.37 | 0/00/00 |
| 4/01/09 | 889 | 4.750000 | 6.000000 | Rate Change |
| 4/01/09 | 891 | 3 | 1 | Status Change |
| 4/01/09 | 919 | 13,284.73 | 4,251,115.37 | 3/01/09 |
| 4/01/09 | 8 | 18,716.71 | 4,251,115.37 | 3/01/09 |
| 4/01/09 | 8 | 21,964.10 | 4,251,115.37 | 3/01/09 |
| 4/01/09 | 210 | 1,862.58 | 4,251,115.37 | 3/01/09 |
| 4/01/09 | 802 | .00 | 4,251,115.37 | 3/01/09 |
| 4/01/09 | 891 | 1 | 3 | Status Change |
| 4/13/09 | 804 | 427,307.95 | 4,251,115.37 | 3/01/09 |
| 4/15/09 | 210 | 427,307.95 | 4,251,115.37 | 3/01/09 |
| 8/24/09 | 891 | 3 | 1 | Status Change |
| 8/24/09 | 8 | 19,838.53 | 4,251,115.37 | 9/01/09 |
| 8/24/09 | 8 | 21,964.09 | 4,251,115.37 | 9/01/09 |
| 8/24/09 | 8 | 21,255.58 | 4,251,115.37 | 9/01/09 |
| 8/24/09 | 8 | 21,964.09 | 4,251,115.37 | 9/01/09 |
| 8/24/09 | 8 | 21,255.58 | 4,251,115.37 | 9/01/09 |
| 8/24/09 | 8 | 21,964.10 | 4,251,115.37 | 9/01/09 |
| 8/24/09 | 802 | .00 | 4,251,115.37 | 9/01/09 |
| 8/24/09 | 920 | 43.06 | 4,251,115.37 | 9/01/09 |
| 8/24/09 | 7 | 86,115.37 | 4,165,000.00 | 9/01/09 |
| 9/11/09 | 10 | 21,806.21 | 4,165,000.00 | 9/01/09 |
| 9/11/09 | 912 | 21,806.21 | 4,165,000.00 | 9/01/09 |
| 10/13/09 | 10 | 20,825.00 | 4,165,000.00 | 10/01/09 |
| 10/13/09 | 912 | 20,825.00 | 4,165,000.00 | 10/01/09 |
| 10/30/09 | 891 | 3 | 3 | Status Change |
| 11/12/09 | 804 | 418,651.92 | 4,165,000.00 | 11/01/09 |
| 12/31/09 | 891 | 3 | 1 | Status Change |
| 12/31/09 | 8 | 21,519.17 | 4,165,000.00 | 1/01/10 |
| 12/31/09 | 8 | 20,825.00 | 4,165,000.00 | 1/01/10 |
| 12/31/09 | 210 | 418,651.92 | 4,165,000.00 | 1/01/10 |
| 12/31/09 | 802 | .00 | 4,165,000.00 | 1/01/10 |
| 1/06/10 | 922 | 20,825.00 | 4,165,000.00 | 1/01/10 |
| 1/07/10 | 10 | 20,825.00 | 4,165,000.00 | 12/01/09 |
| 1/07/10 | 912 | 20,825.00 | 4,165,000.00 | 12/01/09 |
| 1/12/10 | 804 | 2,151.92 | 4,165,000.00 | 1/01/10 |
| 2/11/10 | 10 | 21,519.16 | 4,165,000.00 | 1/01/10 |
| 2/11/10 | 912 | 21,519.16 | 4,165,000.00 | 1/01/10 |
| 2/12/10 | 804 | 2,151.92 | 4,165,000.00 | 2/01/10 |
| 3/01/10 | 10 | 21,588.60 | 4,165,000.00 | 2/01/10 |
| 3/01/10 | 912 | 21,519.16 | 4,165,000.00 | 2/01/10 |
| 3/01/10 | 911 | 69.44 | 4,165,000.00 | 2/01/10 |
| 3/12/10 | 804 | 1,943.67 | 4,165,000.00 | 3/01/10 |
| 4/05/10 | 10 | 19,436.66 | 4,165,000.00 | 4/01/10 |
| 4/05/10 | 912 | 19,436.66 | 4,165,000.00 | 4/01/10 |

```
FIRST CITIZENS BANK          LOAN HISTORY RECORD    LN3650P
  10/05/05 to  6/11/10          --Request--          PAGE    6
OCEAN VIEW MEDICAL I
Loan#-          9744781 L
----------------------------------------------------------------
   Posted    T/C      Amount        Balance       Due For
   4/12/10    804       208.25     4,165,000.00    4/01/10
   4/30/10    891         1             3        Status Change
   5/03/10     10     20,825.02     4,165,000.00    4/01/10
   5/03/10    912     20,825.02     4,165,000.00    4/01/10
   5/12/10    804    418,582.50     4,165,000.00    4/01/10
   6/01/10     10     20,825.02     4,165,000.00    4/01/10
   6/01/10    912        694.15     4,165,000.00    4/01/10
   6/01/10    911      4,026.15     4,165,000.00    4/01/10
   6/01/10    912     16,104.72     4,165,000.00    5/01/10
   6/02/10    210    420,942.67     4,165,000.00    5/01/10
           Current Balance          4,165,000.00
           ----Life/Period to Date---- ----Year/Period to Date----
Principal          86,115.37       1              .00
Interest        1,285,873.34      56       100,098.87      8
Advances        4,251,115.37      26              .00
Late Charges        4,095.59       2         4,095.59      2
Escrow                  .00                      .00
Other Debits            .00                      .00
Other Credits           .00                      .00
```

OBLIGOR: 00-0132019-0 OBLIGATION: 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-9

    OCEAN VIEW MEDICAL INVESTORS
    LLC
    ATTN JOHN BRAL
    2601 MAIN ST STE 960

OFFICER: 44562      ASSIGNMENT UNIT: 00982      ORIGINAL BALANCE:      4,165,000.00      CURRENT BALANCE:      4,161,520.23

HISTORY START DATE: 10/05/05

TRANSACTION DETAIL

| EFFECTIVE DATE | POSTED DATE | TRAN CODE | CHG CODE | DESCRIPTION | PRINCIPAL | INTEREST | INSURANCE | FEE | LATE CHARGE | BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | BEGINNING BALANCE: | | | 0.00 |
| 06/14/10 | 06/14/10 | 3502 | 001 | DISBURSEMENT | 4,165,000.00 | | | | | 4,165,000.00 |
| 02/22/11 | 02/28/11 | 3902 | 001 | RENEWAL ADVANCE | 4,165,000.00 | | | | | 8,330,000.00 |
| 02/22/11 | 02/28/11 | 4022 | 100 | INTEREST PAYMENT | | 206,861.65 | | | | |
| 02/22/11 | 02/28/11 | 4032 | 510 | FEE PAYMENT | | | | 500.00 | | |
| 02/22/11 | 02/28/11 | 4052 | 001 | RENEWAL PAYOFF | 4,165,000.00 | | | | | 4,165,000.00 |
| 03/10/11 | 03/15/11 | 4022 | 100 | INTEREST PAYMENT | | 4,859.17 | | | | |
| 04/08/11 | 04/14/11 | 4022 | 100 | INTEREST PAYMENT | | 21,519.17 | | | | |
| 05/10/11 | 05/10/11 | 4022 | 100 | INTEREST PAYMENT | | 20,824.99 | | | | |
| 05/10/11 | 05/10/11 | 4042 | 001 | PRINCIPAL PAYMENT | .01 | | | | | 4,164,999.99 |
| 06/10/11 | 06/10/11 | 4022 | 100 | INTEREST PAYMENT | | 21,519.17 | | | | |
| 07/08/11 | 07/08/11 | 4022 | 100 | INTEREST PAYMENT | | 20,825.00 | | | | |
| 08/10/11 | 08/11/11 | 4022 | 100 | INTEREST PAYMENT | | 21,519.16 | | | | |
| 09/09/11 | 09/09/11 | 4022 | 100 | INTEREST PAYMENT | | 21,519.17 | | | | |
| 10/07/11 | 10/07/11 | 4022 | 100 | INTEREST PAYMENT | | 20,825.00 | | | | |
| 11/10/11 | 11/10/11 | 4022 | 100 | INTEREST PAYMENT | | 21,519.17 | | | | |
| 12/09/11 | 12/12/11 | 4022 | 100 | INTEREST PAYMENT | | 20,825.00 | | | | |
| 01/10/12 | 01/10/12 | 4022 | 100 | INTEREST PAYMENT | | 21,519.16 | | | | |
| 02/10/12 | 02/13/12 | 4022 | 100 | INTEREST PAYMENT | | 21,519.17 | | | | |
| 03/09/12 | 03/09/12 | 4022 | 100 | INTEREST PAYMENT | | 20,130.83 | | | | |
| 04/10/12 | 04/10/12 | 4022 | 100 | INTEREST PAYMENT | | 21,519.17 | | | | |
| 05/09/12 | 05/09/12 | 4022 | 100 | INTEREST PAYMENT | | 20,825.00 | | | | |
| 05/09/12 | 05/09/12 | 4042 | 100 | PRINCIPAL PAYMENT | 694.17 | | | | | 4,164,305.82 |
| 06/08/12 | 06/12/12 | 4022 | 100 | INTEREST PAYMENT | | 21,516.51 | | | | |
| 06/08/12 | 06/08/12 | 4042 | 100 | PRINCIPAL PAYMENT | 21,516.51 | | | | | 4,142,789.31 |
| 06/08/12 | 06/12/12 | 4542 | 001 | PRINCIPAL REVERSAL | 21,516.51 | | | | | 4,164,305.82 |
| 07/10/12 | 07/10/12 | 4022 | 100 | INTEREST PAYMENT | | 20,739.04 | | | | |
| 07/10/12 | 07/10/12 | 4042 | 100 | PRINCIPAL PAYMENT | 20,739.04 | | | | | 4,143,566.78 |
| 07/10/12 | 07/11/12 | 4542 | 001 | PRINCIPAL REVERSAL | 20,739.04 | | | | | 4,164,305.82 |
| 08/10/12 | 08/13/12 | 4022 | 100 | INTEREST PAYMENT | | 21,598.06 | | | | |
| 09/10/12 | 09/11/12 | 4022 | 100 | INTEREST PAYMENT | | 21,515.58 | | | | |
| 09/10/12 | 09/11/12 | 4042 | 100 | PRINCIPAL PAYMENT | 21,515.58 | | | | | 4,142,790.24 |
| 09/10/12 | 09/11/12 | 4542 | 001 | PRINCIPAL REVERSAL | 21,515.58 | | | | | 4,164,305.82 |
| 10/10/12 | 10/11/12 | 4022 | 100 | INTEREST PAYMENT | | 20,821.53 | | | | |
| 10/10/12 | 10/10/12 | 4042 | 100 | PRINCIPAL PAYMENT | 20,821.53 | | | | | 4,143,484.29 |
| 10/10/12 | 10/11/12 | 4542 | 001 | PRINCIPAL REVERSAL | 20,821.53 | | | | | 4,164,305.82 |

EXHIBIT "1"
Page 112

OBLIGOR: 00-0132019-0 OBLIGATION: 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-9

OCEAN VIEW MEDICAL INVESTORS

| EFFECTIVE DATE | POSTED DATE | TRAN CODE | CHG CODE | DESCRIPTION | PRINCIPAL | INTEREST | INSURANCE | FEE | LATE CHARGE | BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/09/12 | 11/13/12 | 4022 | 100 | INTEREST PAYMENT | | 21,515.58 | | | | |
| 11/09/12 | 11/09/12 | 4042 | 001 | PRINCIPAL PAYMENT | 21,515.58 | | | | | 4,142,790.24 |
| 11/09/12 | 11/13/12 | 4542 | 001 | PRINCIPAL REVERSAL | 21,515.58 | | | | | 4,164,305.82 |
| 12/10/12 | 12/11/12 | 4022 | 100 | INTEREST PAYMENT | | 20,821.53 | | | | |
| 12/10/12 | 12/10/12 | 4042 | 001 | PRINCIPAL PAYMENT | 21,515.58 | | | | | 4,142,790.24 |
| 12/10/12 | 12/11/12 | 4042 | 001 | PRINCIPAL PAYMENT | 694.05 | | | | | 4,142,096.19 |
| 12/10/12 | 12/11/12 | 4542 | 001 | PRINCIPAL REVERSAL | 21,515.58 | | | | | 4,163,611.77 |
| 01/10/13 | 01/10/13 | 4022 | 100 | INTEREST PAYMENT | | 21,515.58 | | | | |
| 01/10/13 | 01/10/13 | 4042 | 001 | PRINCIPAL PAYMENT | 21,515.58 | | | | | 4,142,096.19 |
| 01/10/13 | 01/11/13 | 4542 | 001 | PRINCIPAL REVERSAL | 21,515.58 | | | | | 4,163,611.77 |
| 02/11/13 | 02/12/13 | 4022 | 100 | INTEREST PAYMENT | | 21,509.45 | | | | |
| 02/11/13 | 02/12/13 | 4042 | 001 | PRINCIPAL PAYMENT | 21,515.58 | | | | | 4,142,096.19 |
| 02/11/13 | 02/12/13 | 4042 | 001 | PRINCIPAL PAYMENT | 6.13 | | | | | 4,142,090.06 |
| 02/11/13 | 02/12/13 | 4542 | 001 | PRINCIPAL REVERSAL | 21,515.58 | | | | | 4,163,605.64 |
| 03/11/13 | 03/12/13 | 4022 | 100 | INTEREST PAYMENT | | 19,430.17 | | | | |
| 03/11/13 | 03/11/13 | 4042 | 001 | PRINCIPAL PAYMENT | 21,515.58 | | | | | 4,142,090.06 |
| 03/11/13 | 03/12/13 | 4042 | 001 | PRINCIPAL PAYMENT | 2,085.41 | | | | | 4,140,004.65 |
| 03/11/13 | 03/12/13 | 4542 | 001 | PRINCIPAL REVERSAL | 21,515.58 | | | | | 4,161,520.23 |

EXHIBIT "1"
Page 113

14:51:36 Friday, February 07, 20

```
LOAN REQ: 0112    MSG  CURRENT FINANCIAL/PAYOFF   02/06/14  PAGE 0001 OF 0001
BANK: 01    AP: 1    OBGOR: 0001320190   OBGAT: 0002019479   OCEAN VIEW MEDI
DATE: 020714    CHG CD:    INCLUDE ESCROW AMOUNT(Y/N):    PAGE:
           RATE        BASIS            DAILY EARNINGS         AMOUNT DUE
INT  100   6.00000000  4 ACT 360          693.58671          237,903.72
FEE  510    .00000000  4 ACT 360            .00000                  .00


PROC TYPE: 5151 CURRENT        BASIC OBLGN     NOT A TAKEDOWN
OBLN TYPE: 209          COLL TYPE: 510         SECURED    : 2    SECURED
EFF DATE : 06-14-10     MAT DATE : 05-01-12    DISC CODE : 0    NOT ENTERED
SVC UNIT : 00000        ASSN UNIT: 00982       STAT CODE : 7    PRIN RECAPTURE
CONT OFF : 44562        GL CODE  : 0000005                :
TKDWN OBR:              REDUCE RT: 0     NO                :
TKDWN OBN:                                                 :
                                                           :
LC FRMULA: 141                                             :
PN FRMULA: 000                                             :
                                       CURR BAL   :      4,161,520.23
                                       INT EARNED :        237,903.72
AMT TO BE CURR:    4,395,262.43                    :
                                                   -----------------------
                     PAYOFF AS OF 02-07-14 :         4,399,423.95
```

EXHIBIT "1"
Page 1159

**OCEAN VIEW MEDICAL INVESTORS, LLC - SCHEDULE 2**
**DEFAULT DIFFERENTIAL INTEREST CALCULATIONS FROM 5/1/12 (LOAN MATURITY DATE)**

| Borrower | Daily Default Differential | Currently Paid To | Calculate To | Number of Days | Loan Principal Balance | Default Differential | Default Differential |
|---|---|---|---|---|---|---|---|
| | 1,388.33333 | 5/1/12 | 5/8/12 | 8 | 4,164,999.99 | 12.00% | $11,106.67 |
| **Ocean View Medical Investors, LLC** | 1,388.10194 | 5/9/12 | 12/9/12 | 215 | 4,164,305.82 | 12.00% | $298,441.92 |
| **Loan Matured 5/1/12** | 1,387.87059 | 12/10/12 | 2/10/13 | 63 | 4,163,611.77 | 12.00% | $87,435.85 |
| | 1,387.86855 | 2/11/13 | 3/10/13 | 28 | 4,163,605.64 | 12.00% | $38,860.32 |
| | 1,387.17341 | 3/11/13 | 2/6/14 | 333 | 4,161,520.23 | 12.00% | $461,928.75 |

**Default Differential Interest**　　　　　　　　　　　　　　　　　　　　　　　　$897,773.50

161

EXHIBIT "1"
Page 115

Case 8:17-bk-10706-SC Claim 20 Filed 06/16/17 Desc Main Document Page 102 of 106

**First Citizens Bank**

Central Bank Operations - DAC02
P.O. Box 27131
Raleigh, NC 27611-7131

NC01

01055
OCEAN VIEW MEDICAL INVESTORS
LLC
ATTN JOHN BRAL
2601 MAIN ST STE 960
IRVINE CA 92614-4224

AFS
982

Invoice Number : 1310034364 Customer Number : 0001320190 Branch : 00982 Officer : 44562 DATE DUE 03-01-2013

| Loan Number | Effective Dates From | Thru | Principal Balance | Rate | Amount Due | Trans Type |
|---|---|---|---|---|---|---|
| 0002019479 | BILLING PERIOD FROM 02-01-13 TO 03-01-13 | | | | ** POST MATURITY ** | |
| | PAST DUE | | | | 4,142,090.06 | PRIN |
| | 03-01-13 | | | | 21,515.58 | PRIN |
| | 02-01-13 | 02-10-13 | 4,163,611.77 | 6.00000 | 6,939.35 | INT |
| | 02-11-13 | 02-28-13 | 4,163,605.64 | 6.00000 | 12,490.82 | INT |
| | | | | TOTAL | 4,183,035.81 | |

TRANSACTIONS SINCE LAST INVOICE

| | | |
|---|---|---|
| 02-11-13 | PRINCIPAL PAYMENT | 6.13 |
| 02-11-13 | PRINCIPAL PAYMENT | 21,515.58 |
| 02-11-13 | PRINCIPAL REVERSAL | 21,515.58- |
| 02-11-13 | INTEREST PAYMENT | 21,509.45 |

PRINCIPAL BALANCE AFTER LAST ACTIVITY 4,163,605.64

THIS STATEMENT DOES NOT REFLECT ANY ACTIVITY AFTER 02-14-13

Page 1 of 2

DETACH AND RETURN THIS STUB WITH YOUR PAYMENT.

Name: OCEAN VIEW MEDICAL INVESTORS

| | |
|---|---|
| Invoice Number | 1310034364 |
| Customer Number | 0001320190 |
| Principal Due | 21,515.58 |
| Interest Due | 19,430.17 |
| Insurance Due | 0.00 |
| Fees Due | 0.00 |
| Current Amount Due | 40,945.75 |
| Total Past Due | 4,142,090.06 |
| Late Charge Due | 0.00 |
| Total Amount Due | 4,183,035.81 |
| DATE DUE | 03-01-2013 |

LNS 11 500601006 LNS

$

Amount Enclosed

FIRST CITIZENS BANK
3033 N 44TH ST STE 190
PHOENIX AZ 85018-7255

Loan Number 0002019479

POST MATURITY INVOICE

⑈1310034364⑈⑆500601006⑆0001320190⑈

EXH - 2

EXHIBIT "1"
Page 116

| Invoice Number : 1310034364 | Customer Number : 0001320190 | Branch : 00982 | DATE DUE |
|---|---|---|---|
| | | Officer : 44562 | 03-01-2013 |

**Making Payments**
Payments should be made on or before the DATE DUE shown on your invoice. Late payments may result in additional charges and/or late fees. Please detach and return the bottom portion of your invoice with your check to insure prompt and accurate crediting of your payment. You may mail your payment using the enclosed return envelope, or you may present your payment to any of our branches. To receive credit for a payment on the date we receive the payment, we must receive your payment prior to 5:00 p.m. on a Bank business day (any day except Saturday, Sunday or a bank holiday). If paying at a branch or by mail, then payments must include the payment coupon. In addition, if paying by mail, payment must be mailed to the specific address furnished by the Bank. Payments received at any of our ATMs; payments received on a business day after 5:00 p.m.; payments received at a branch or by mail without a coupon; and, payments received on a day that is not a Bank business day, will be credited to your account no later than the next Bank business day.

Payments received will be applied to the following in the order specified: (i) unpaid interest accrued to the date of payment or the date payment is due (at Lender's option); (ii) the unpaid principal component of any payment then due; (iii) unpaid late charges, returned check fees, prepayment penalties, collection costs and other charges then due; and (iv) the unpaid principal balance. Applying payments in the foregoing manner, Lender may, at its option, satisfy sums owing in the order in which they were billed, assessed, charged, or accrued.

**"Adjustments" on Your Invoice**
Payments, principal advances and rate changes that occur after the billing date shown on this invoice will be reflected on your next invoice. Because your invoice is prepared prior to your due date, the charges that you are billed are "projections," based upon the assumption that the principal balance of your loan and the interest rate will not change between the date that the invoice is prepared and the due date. If such a change does occur, the previously billed charges will be adjusted upward or downward, depending on whether the balance or the rate went up or down. Occasionally, "manual" adjustments to the charges billed may be necessary on a particular invoice. Generally, this occurs when you were previously billed for more or less charges than were actually due during the current billing period. (e.g. in conjunction with a loan modification where a due date or a maturity date is extended). Any such adjustments will appear on your next invoice with one of the following ADJUSTMENT codes:

(1) Principal balance change(s) only

(2) Rate change(s) only

(3) Principal balance change(s) and rate change(s)

(4) Manual adjustment only

(5) Manual adjustment and principal balance change(s)

(6) Manual adjustment and rate change(s)

(7) Manual adjustment and principal balance change(s) and rate change(s)

**Other Items Which May Appear On Your Invoice**

NEG AMORTIZATION - CR (Negative Amortization - Credit)

When the amount is followed by "CR," the charges due for the current billing period exceed your regular payment amount. A credit for these "accrued but not billed" charges has been included to avoid billing you for more than your payment, and these charges will be billed on a future invoice.

NEG AMORTIZATION (Negative Amortization)

When the amount is NOT followed by "CR," the charges due for the current billing period are less than your regular payment amount. These previously "accrued but not billed" charges are being included to "catch up" or keep your paid-to-date charges current.

CREDIT

Indicates credit for an overpayment of a previously billed charge.

**Questions, Payoffs**
Should you wish to pay your loan in full, or if you have a question about your invoice, please contact your account officer.

Page 2 of 2

EXHIBIT "1"
Page 170

# EXHIBIT "D"

From: Lisa M. Rohrbacker lrohrbacker@specialdefaultservices.com
Subject: RE: Important
Date: March 20, 2015 at 9:16 AM
To: Donald Rezak donald.rezak@gmail.com
Cc: Barry Beitler bbeitler@beitler.com, Mike Henry mhenry@trusteecorps.com, Vini Amezcua vamezcua@trusteecorps.com

Hi Donald, as you are aware the property reverted back this morning:

Re: Sale Results
Priority No.: 1132839

Attn: Foreclosure Department
Your T.S. Number CA01000359-14 reverted back to the beneficiary on 03/20/2015 in the county of Orange at 09:00AM

Sale Conducted at: 09:06 AM

for the amount of $4,100,000.00.

No. of Witnesses Present: 6

Mike, please send the final invoice.

Thank you!


**SDS**
Lisa Rohrbacker
Special Default Services Inc.

17100 Gillette Ave.
Irvine, CA 92614
Phone: 949-225-5931 ext. 155
Fax: 949-752-7332
lrohrbacker@specialdefaultservices.com

Notice of Confidentiality
This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof, in addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message from your system


-----Original Message-----
From: Donald Rezak [mailto:donald.rezak@gmail.com]
Sent: Friday, March 20, 2015 8:23 AM
To: Lisa M. Rohrbacker; Lisa Rohrbacker

| Invoice Date | | Invoice Number |
|---|---|---|
| 03/20/2015 | | 264744 |

**Special Default Services**
17272 Red Hill Ave.
Irvine, CA 92614

STEWARD FINANCIAL LLC
825 SOUTH BARRINGTON AVENUE
LOS ANGELES, CA 90049

TS #: CA01000359-14-1
Loan #: 13-01432
Investor #: 13-01432
Homeowner: OCEAN VIEW MEDICAL INVESTORS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY AS TO AN
UNDIVIDED 80% INTEREST AND BAB 8, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY AS TO AN
UNDIVIDED 20% INTEREST
Address: 441 OLD NEWPORT BLVD., NEWPORT BEACH, CA 92663
Open Date: 02/18/2015
File Active

BILLING SUMMARY:

| COSTS | | |
|---|---|---|
| **DATE** | **COST DESCRIPTION** | **AMOUNT** |
| 06/18/2014 | PACER BK SEARCH | $20.00 |
| 07/03/2014 | Posting Notice of Sale | $125.00 |
| 07/03/2014 | Recording Notice of Sale | $18.00 |
| 07/07/2014 | Certified Mailing Cost - NOS | $220.00 |
| 07/09/2014 | Recording Substitution of Trustee | $9.00 |
| 07/11/2014 | Publication | $1,025.00 |
| 10/23/2014 | Certified Mailing Cost - NOS | $250.00 |
| 10/24/2014 | Publication | $250.00 |
| 10/29/2014 | Certified Mailing Cost - NOS | $250.00 |
| 10/31/2014 | Publication | $1,025.00 |
| 02/20/2015 | Posting Notice of Sale | $125.00 |
| 02/20/2015 | Recording Notice of Sale | $15.00 |
| 02/25/2015 | Cry Sale Fee | $100.00 |
| 03/20/2015 | Recording Trustee`s Deed | $12.00 |

| FEES | | |
|---|---|---|
| **DATE** | **FEE DESCRIPTION** | **AMOUNT** |
| 07/03/2014 | Trustees Fee 2 | $5,000.00 |
| 02/25/2015 | Trustees Fee 3 | $2,500.00 |

| TOTALS | |
|---|---|
| **DESCRIPTION** | **AMOUNT** |
| Total Costs Since Last Billing | $3444.00 |
| Total Fees Since Last Billing | $7500.00 |
| Total Amount Due | $10944.00 |

Thank you for the opportunity to be of service.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OBJECTION TO PROOF OF CLAIM FILED BY STEWARD FINANCIAL LLC [CLAIM NO. 20]; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On October 13, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) October 13, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 13, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
SERVED VIA PERSONAL DELIVERY/ATTORNEY SERVICE
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130/Courtesy Bin
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/13/2017 | Lori Gauthier | /s/ Lori Gauthier |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                        **F 9013-3.1.PROOF.SERVICE**

## SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

- **Thomas H Casey**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@lwgfllp.com;lgauthier@lwgfllp.c
  om
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **Beth Gaschen**    bgaschen@wgllp.com,
  kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner**    gek@lnbyb.com
- **William N Lobel**    wlobel@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Kathleen J McCarthy**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Edward G Schloss**    egs2@ix.netcom.com
- **Valerie Smith**    claims@recoverycorp.com
- **Daniel B Spitzer**    dspitzer@spitzeresq.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**    ecfnotices@ascensioncapitalgroup.com

## SERVED VIA FIRST-CLASS MAIL:

Steward Financial LLC
c/o Gary E. Klausner, Esq.
Levene Neale Bender, et al
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

Office of the United States Trustee
411 West Fourth Street, Suite 7160
Santa Ana, CA 92701

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                      F 9013-3.1.PROOF.SERVICE