1  William N. Lobel, State Bar No. 93202
   wlobel@lwgfllp.com
2  Alan J. Friedman, State Bar No. 132580
   afriedman@lwgfllp.com
3  Beth E. Gaschen, State Bar No. 245894
   bgaschen@lwgfllp.com
4  **LOBEL WEILAND GOLDEN FRIEDMAN LLP**
   650 Town Center Drive, Suite 950
5  Costa Mesa, California 92626
   Telephone: 714-966-1000
6  Facsimile: 714-966-1002

7  Attorneys for Debtor and
   Debtor-in-Possession, John Jean Bral
8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                  **SANTA ANA DIVISION**

12

13  IN RE:                          Case No. 8:17-bk-10706-SC

14  JOHN JEAN BRAL,                 **Chapter 11**

15            Debtor and Debtor-in-Possession.   **DECLARATION OF SEAN A. O'KEEFE
                                    IN SUPPORT OF MOTION SEEKING:**
16                                  **(1) DISALLOWANCE OF CLAIMS 14
                                    AND 16; AND (2) STRIKING CLAIMS**
17                                  **ALLEGED IN ADVERSARY NOS. 8:17-
                                    AP-01094 AND 8:17-AP-01092 ON THE**
18                                  **GROUNDS THE SAME WERE FILED
                                    BASED UPON FALSIFIED EVIDENCE**
19

20                                  **DATE:    December 14, 2017**
                                    **TIME:    11:00 a.m.**
21                                  **PLACE: Courtroom 5C**

22

23

24

25

26

27

28

1131661.3

## DECLARATION OF SEAN A. O'KEEFE

I, Sean A. O'Keefe, hereby declare and state as follows:

1.    I am over the age of eighteen years.

2.    The facts stated herein are within my personal knowledge and if called upon to testify to the same I could and would testify competently thereto.

3.    I am serving as Of Counsel to the firm of Lobel, Weiland, Golden & Friedman, LLP, in the above entitled case, and in the case pending in California Superior Court entitled <u>Bral v. Westcliff Investors, LLC</u>, Case BC553693 (the "Dissolution Case").

4.    Attached hereto as Exhibit "1" is a true and correct copy of that certain "Petition of Betsy Boyd To Compel Arbitration" (the "Boyd Petition") filed on August 18, 2014 in the Dissolution Case. The document attached to this petition as Exhibit "A" is entitled "Operating Agreement of Westcliff Investors, LLC, a California Limited Liability Company."

5.    Attached hereto as Exhibit "2" is a true and correct copy of that certain "Declaration of Tom Lallas In Opposition To Motion For Orders: (1) Appointing Arbitrator And Ordering Completion of Arbitration By March 15, 2016, or, In The Alternative, To Vacate The Order To Arbitrate And Set For Immediate Trial For Defendants' Failure To Proceed With Arbitration; And (2) Appointing Receiver To Sell Real Property Pending Arbitration And Dissolution of The LLC" (the "Lallas Declaration") filed in the Dissolution Case on February 11, 2016.

6.    A copy of the Declaration of Barry Beitler is attached to the Lallas Declaration (the "Beitler Declaration"). In this declaration Mr. Beitler testifies, under the penalty of the perjury that the document attached thereto entitled "Operating Agreement of Westcliff Investors, LLC, a California Limited Liability Company" is in fact the operating agreement for Westcliff.

7.    I have reviewed the operating agreements attached to the Boyd Petition and the Beitler Declaration. The documents are the same as the operating agreement attached to the concurrently filed Declaration of John J. Bral.

8.    On November 15, 2017, Mr. Bral was deposed by Thomas Lallas, counsel to Mr. Beitler. I attended this deposition on behalf of Mr. Bral. Mr. Beitler attended this deposition as well.

9.    During the above deposition, Mr. Lallas handed Mr. Bral a document entitled "Operating Agreement of Westcliff Investors, LLC, a California Limited Liability Company" and directed his attention to section 4.1 thereof on page 4. The foregoing section stated that Barry Beitler was the sole managing member of Westcliff. Mr. Bral was clearly confused by this language.

10.    Since I was involved in the Dissolution Case, and consequently I had read both the Boyd Petition and the Beitler Declaration referenced above, I knew that the writing presented to Mr. Bral for inspection and authentication was materially different from the version of the operating agreement previously submitted by Boyd and Beitler in the Dissolution Case.

11.    Given the foregoing issue, I asked Mr. Lallas and Gary Klausner (who was also attending the deposition on behalf of Mr. Beitler) to go off record for a conference and they agreed. During this conference, I pulled up the Boyd Petition on my laptop computer and directed Mr. Lallas and Mr. Klausner to section 4.1. In the authentic version of the operating agreement both Mr. Beitler and Mr. Bral are designated as the co-managing members of Westcliff. Thereafter, the incorrect version of the Westcliff operating agreement previously presented to Mr. Bral was set aside.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 21th day of November 2017, in Orange County, California.

Sean A. O'Keefe

3

# EXHIBIT "1"

1 | LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations

2 | TOM LALLAS (SBN: 66512)
815 Moraga Drive

3 | Los Angeles, California 90049-1633
Telephone: (310) 471-3000

4 | Facsimile: (310) 471-7990

5 | Attorneys for Defendant and Petitioner
BETSY BOYD

**ORIGINAL**

**FILED**
Superior Court of California
County of Los Angeles

AUG 18 2014

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Shaunya Bolden

---

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOHN BRAL, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>WESTCLIFF INVESTORS, LLC, a California limited liability company; BARRY BEITLER, an individual; BETSY BOYD, an individual; and DOES 1 through 50, inclusive,<br><br>    Defendants.<br><br>BETSY BOYD,<br><br>    Petitioner,<br><br>    v.<br><br>JOHN BRAL,<br><br>    Respondent. | Case No.     BC 553693<br><br>(formerly Orange County Superior Court Case No. 30-2013-00688658-CU-MC-CJC)<br><br>[Hon. Rolf M. Treu, Dept. 58]<br><br>**PETITION OF BETSY BOYD TO COMPEL ARBITRATION**<br><br>Date:        November 5, 2014<br>Time:        8:30 a.m.<br>Dept.:       58<br><br>Complaint Filed:    November 20, 2013<br>Trial Date:         None Set |

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

PETITION OF BETSY BOYD TO COMPEL ARBITRATION

EXHIBIT "1"
Page 5

Petitioner Betsy Boyd ("Petitioner") alleges as follows:

1.     This Petition relates to the above-captioned action pending in this Court. In addition, the arbitration agreement that Petitioner hereby seeks to enforce provides that the arbitration shall be held in Los Angeles, California. Accordingly, venue for this Petition properly lies in this Court.

2.     On or about February 20, 2003, Petitioner entered into a written agreement with Respondent John Bral ("Respondent") and Barry Beitler ("Beitler") entitled "Operating Agreement of Westcliff Investors, LLC, a California Limited Liability Company" (the "Agreement"). As reflected by the Agreement, Petitioner, Respondent and Beitler (collectively, the "Members") formed, and are the sole members of, Westcliff Investors, LLC ("Westcliff"). A copy of the Agreement is attached hereto as Exhibit "A" and is incorporated herein by reference.

3.     The Agreement concerns, among other things, (a) the operation, accounting, and potential dissolution of Westcliff and (b) the respective rights, duties and obligations of the Members with respect to Westcliff.

4.     Section 12.6 at page 16 of the Agreement sets forth the Members' agreement to binding arbitration of any dispute arising from the Agreement as follows [emphasis added]:

> <u>Arbitration</u>. Except as otherwise provided in this Agreement, <u>any controversy between the parties arising out of this Agreement shall be submitted to the American Arbitration Association for arbitration in Los Angeles, California.</u> The costs of the arbitration, including any American Arbitration Association administration fee, the arbitrator's fee, and costs for the use of facilities during the hearings, shall be borne equally by the parties to the arbitration. Attorneys' fees may be awarded to the prevailing or most prevailing party at the discretion of the arbitrator. The provisions of Sections 1282.6, 1283, and 1283.05 of the California Code of Civil Procedure apply to the arbitration. The arbitrator shall not have any power to alter, amend, modify or change any of the terms of this Agreement nor to grant any remedy which is either

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

2

**PETITION OF BETSY BOYD TO COMPEL ARBITRATION**   EXHIBIT "1"-

1            prohibited by the terms of this Agreement, or not available in a court of law.

2            The decision of the arbitrator shall be final, binding and non-appealable.

3           5.    On or about November 20, 2013, Respondent commenced the above-captioned

4    action in Orange County Superior Court.

5           6.    Petitioner was not served with the Summons and Complaint in this action until

6    June 2, 2014.

7           7.    Pursuant to an order dated June 16, 2014, before Petitioner was required to respond

8    to the Complaint, the Orange County Superior Court ordered the above-captioned action

9    transferred to this Court.  On August 7, 2014, Petitioner received the initial notice from this

10    Court of the case number and judicial assignment in this Court.

11           8.    On July 1, 2014, Petitioner informed Respondent that Petitioner intended to file a

12    petition to compel arbitration.  Having signed the Agreement, Respondent is aware of the

13    arbitration agreement therein, yet Respondent has not agreed to dismiss or stay this action and

14    proceed, if it all, in arbitration.

15           9.    On August 13, 2014, Petitioner demanded that Respondent submit his alleged

16    claims herein to arbitration.  Despite Petitioner's demand, Respondent has refused to submit his

17    alleged claims herein to arbitration as required by the Agreement.

18          10.    The claims alleged by Respondent against Petitioner in his Complaint herein are

19    within the scope of the mandatory arbitration provision of the Agreement and therefore must be

20    arbitrated.  The two causes of action alleged by Respondent against Petitioner in the Complaint

21    are for involuntary dissolution of Westcliff and for an accounting of Westcliff.  Whether or not

22    Respondent is entitled to any of the relief that he seeks, each of Respondent's alleged causes of

23    action against Petitioner is a dispute between Members that concerns Westcliff's operation, or

24    potential dissolution, and arises under the Agreement.

25          11.    Petitioner is informed and believes, and thereon alleges, that there is no party

26    necessary to the arbitration of the disputes between Respondent and Petitioner alleged herein that

27    is not a party to the Agreement or is not otherwise bound by the arbitration provisions therein.

28

LIVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

3

**PETITION OF BETSY BOYD TO COMPEL ARBITRATION**

1    Beitler and Westcliff, who are named as defendants in Respondent's above-captioned action and

2    are being served with a copy of this Petition, do not oppose the Petition.

3          12.    Code of Civil Procedure section 1281.2 provides:

4                 On petition of a party to an arbitration agreement alleging the existence of

5                 a written agreement to arbitrate a controversy and that a party thereto

6                 refuses to arbitrate such controversy, the court shall order the petitioner

7                 and the respondent to arbitrate the controversy if it determines that an

8                 agreement to arbitrate the controversy exists . . . .

9    Accordingly, Respondent must arbitrate all claims and causes of action that he has alleged

10    against Petitioner in the Complaint herein.

11

12          WHEREFORE, Petitioner prays for the following relief:

13          1.        That the Court order Respondent to arbitrate in the Pending Arbitration all

14                 claims and causes of action alleged by Respondent against Petitioner in

15                 the Complaint herein.

16          2.        That this action be dismissed in its entirety, or in the alternative, be stayed

17                 in its entirety pursuant to Code of Civil Procedure section 1281.4 pending

18                 arbitration.

19          3.        That Petitioner be awarded all attorneys' fees and costs herein as may be

20                 recoverable pursuant to the Agreement or by applicable law.

21          4.        For such other and further relief as the Court may deem just and proper.

22

23    DATED: August 18, 2014        LEVY, SMALL & LALLAS

24                              A Partnership Including Professional Corporations
                          TOM LALLAS

25

26                              By: _____
                          TOM LALLAS

27                              Attorneys for Defendant and Petitioner
                          BETSY BOYD

28    30670

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

4

EXHIBIT "1"
Page 8

Exhibit A

OPERATING AGREEMENT
OF
WESTCLIFF INVESTORS, LLC,
a California Limited Liability Company


THIS OPERATING AGREEMENT (this "Agreement"), is made as of February 20, 2003, by and among BARRY BEITLER ("Beitler"), an individual, and JOHN BRAL ("Bral"), an individual and Betsy Boyd ("Boyd"), an individual, (collectively referred to as the "Members" or individually as a "Member"), with reference to the following facts:

A. Articles of Organization (the "Articles") for WESTCLIFF INVESTORS, LLC (the "Company"), a limited liability company organized under the laws of the State of California, were filed with the California Secretary of State on February 20, 2003 as Document No. 200303910037.

B. The Members desire to adopt and approve an operating agreement for the Company under the Beverly-Killea Limited Liability Company Act (the "Act").

C. The above individuals and only these individuals, as of the formation of this Operating Agreement shall serve to form Westcliff Investors, LLC.

NOW, THEREFORE, the Members by this Agreement set forth the operating agreement for the Company upon the terms and subject to the conditions of this Agreement.


## ARTICLE I - ORGANIZATIONAL MATTERS

1.1 **Name.** The name of the Company shall be "WESTCLIFF INVESTORS, LLC." The Company may conduct business under that name or any other name approved by the Members.

1.2 **Term.** The term of the Company commenced as of the date of the filing of the Articles of Organization and unless dissolved as set forth in Article 9.1, shall terminate on December 31, 2025 or as soon as agreed by the majority of the parties, subject to the Major Decisions provisions herein.

1.3 **Office and Agent.** The Company shall continuously maintain an office and registered agent in the State of California as required by the Act. The principal office of the

BB lv\WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

1





**EXHIBIT**  _A_

Company shall be at 825 So. Barrington Avenue, Los Angeles, California 90049, or such location as the Members may determine. The registered agent shall by as stated in the Articles or as otherwise determined by the Members.

1.4 <u>Business of the Company</u>. Notwithstanding the purpose of the Company which is described in the Articles, the Company shall not engage in any business other than the following without the consent of all of the Members:

(i)    the business of acquiring, owning, developing, operating, managing and selling an office/medical building at 1901 Westcliff Drive, Newport Beach, California and;

(ii)    such other activities directly related to the foregoing business as may be necessary or advisable in the reasonable opinion of the Members to further such business.

## ARTICLE II - CAPITAL CONTRIBUTIONS

2.1 <u>Capital Contributions</u>.  Each Member shall make a cash contribution to the capital of the Company in the amount shown opposite the Member's name on Exhibit "A" attached hereto, other than for Betsy Boyd who shall have no initial or additional capital contribution obligations. Except as expressly provided herein, each Member shall be required to make any additional contributions to the capital of the Company, where necessary, other than for Betsy Boyd. Except as provided in section 2.6, below, additional contributions to the capital of the Company shall be made only with the unanimous written consent of the Members and shall be made by all Members in proportion to the Membership Interests of the Members, where necessary, other than for Betsy Boyd. In the event that a Member makes an additional capital contribution in excess of his proportionate share as so determined, such excess of his proportionate share as so determined, such excess portion shall be entitled to a preferred return of ten (10%) per annum, accruing and compounding quarterly, from the date of such excess contribution until such excess amount is distributed to such Member. Except as provided in this Agreement, no Member may withdraw its capital contribution. A Member shall not be personally liable to any other Member for repayment of any capital contribution made to the Company by such other Member.

2.2 <u>Capital Accounts</u>. The Company shall establish an individual capital account (the "Capital Account") for each Member. The Company shall determine and maintain each Capital Account in accordance with Treasury Regulations Section 1.704-1(b) (2) (iv). Upon valid transfer of a Member's interest in the Company (the "Membership Interest") in accordance with Article VI, such Member's Capital Account shall carry over to the new owner.

2.3 <u>No Interest</u>.  The Company shall not pay any interest on initial capital contributions.

BB lv WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

2




However, any additional capital contributions, as provided herein, shall be entitled to a preferred return equal to ten percent (10%) per annum, accruing and compounding quarterly.

2.4 <u>Loans to The Company</u>. Any monies loaned to the LLC by Barry Beitler or John Bral are collectively referred to as the "Member Loans." )  The Member Loans shall not bear interest and shall only be repaid through the cash flow of the Property or the sale or refinance of the Property.  Any and all initial monies necessary for the purchase of the Property, classified as loans to the Company, shall be repaid first to Bral and Beitler in full prior to any distributions of sale or refinance proceeds to Betsy Boyd for her interest in said Property i.e. by way of example, if Bral and Beitler each put up $200,000 into the Property and the Property sells for a $500,000 profit, Bral and Beitler are to receive 100% of their contribution prior to any calculation for distribution to any Member, including Boyd.

2.5. <u>Additional Required Capital Contributions</u>.  Prior to commencement of construction of any addition to the Project by the Company or should any capital call be necessary amongst the Members, the Members shall make additional capital contributions to the Company.  Any additional capital contributions shall bear interest, as provided in Section 2.3 herein, and shall be made in the following proportions:

| | |
|---|---|
| Beitler | 50.0% |
| Bral | <u>50.0%</u> |
| Total | 100.0% |

Any additional capital contributions shall be made by the above Members who shall receive all additional contributions in full from future sale or refinance prior to any participation by Boyd in distributions as further outlined in 2.4 above.

## ARTICLE III - MEMBERS

3.1 <u>Admission of Additional Members</u>.  Additional Members may be admitted with the approval of all Members.  Additional Members will participate in "Net Profits," "Net Losses" (as such terms are defined in Paragraph 5.1), and distributions of the Company on such terms as are determined by the Members.  Exhibit "A" shall by amended upon the admission of an additional Member to set forth such Member's name and capital contribution.

3.2 <u>Withdrawal or Resignations</u>. Any Member may withdraw or resign as a Member at any time upon one hundred twenty (120) days prior written notice to the Company, without prejudice to the rights, if any, of the Company or the other Members under any contract to which the withdrawing Member is a party.  In the event of such withdrawal, such Member's Membership Interest shall be terminated, such Member shall thereafter only have the rights of a

DB lv WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

3





EXHIBIT "1"
Page 12

transferee as described in Paragraph 6.3 and such Membership Interest shall be subject to purchase and sale as provided in Paragraph 7.2. (No other Member may withdraw, retire or resign from Company.)

3.3 Payments to Members. Except as specified in this Agreement or pursuant to a transaction permitted by Paragraph 4.6, no Member or person or entity controlled by, controlling or under common control with the Member (each such person or entity is defined as an "Affiliate"), is entitled to remuneration for services rendered or goods provided to the Company, except as specifically provided by the Company. However, the Company shall reimburse the Members and their Affiliates for organizational expenses (including, without limitation, legal and accounting fees and costs) incurred to form the Company, prepare the Articles and this Agreement and, as approved by the Members, for the actual cost of goods and materials used by the Company. At all times, whenever a vacancy in the Property becomes available, Beitler Commercial Realty Services shall be hired for the leasing at market commission rates. Bral and Beitler agree to split (60%/40%) any and all commissions for leasing paid if any. The same shall be true of any commission on the future sale of the Property. It is expressly agreed that payment of any real estate commission owing by the Company to Beitler Commercial Real Estate shall be paid if Company has sufficient cash flow to pay such commission without preventing the Company from meeting its other obligations.

## ARTICLE IV - MANAGEMENT AND CONTROL OF THE COMPANY

4.1 Management and Powers. In entering into this Agreement, the intent of each Member is to engage actively in the management of the Company, however, Barry Beitler and John Bral shall be designated as the Company's Co-Managing Members. Accordingly, unless otherwise limited by the Articles or this Agreement, Barry Beitler and John Bral, shall have full, complete and exclusive authority, power, and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters equally and to perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs.

4.2 Limitations on Power of Members. No Member shall have authority to cause the Company to engage in the following transactions without first obtaining the written approval of both John Bral or and Barry Beitler:

    (A) The sale, exchange or other disposition of all, or substantially all, of the Company's assets occurring as part of a single transaction or plan, or in multiple transactions over a twelve (12) month period, except in the orderly liquidation and winding up of the business of the Company upon its duly authorized dissolution.

BB W WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

4

(B) The refinance or financing of any kind or any transactions which may encumber the title of the Property.

(C) The merger of the Company with another limited liability company or corporation, general partnership, limited partnership or other entity (except that any act which would cause a Member to incur personal liability for the obligations of the Company or its successor shall also require the consent of such Member).

(D) An alteration of the authorized businesses of the Company as set forth in Paragraph 1.4.

(E) Any act which would make it impossible to carry on the ordinary business of the Company.

(F) The confession of a judgment against the Company.

(G) Any other transaction described in this Agreement as requiring the approval, consent or vote of the Members.

4.3  Member Approval.    No annual or regular meetings of the Members are required to be held. However, if such meetings are held, such meetings shall be noticed as provided in this paragraph and shall be held and conducted pursuant to the Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Act. Unless otherwise provided in this Agreement, approval of the Members shall mean the approval of Members who hold at least seventy-five percent (75%) of the Membership Interests. All notices of meetings will be in writing and shall be deemed duly given: (i) if it is sent by telecopier to the Members at the telephone number provided by each Member for such purpose, in which case notice will be deemed to take place upon receipt; or (ii) if (and then three [3] business days after) it is sent by registered or certified mail, return receipt requested, postage prepaid and addressed to the intended recipient at the address set forth on Exhibit "A" to this Operating Agreement (as amended from time to time). No meeting shall be held by the Members without (10) business days prior to notice, unless otherwise agreed in writing by all the Members.

4.4  Devotion of Time.    Each Member shall devote whatever time or effort as he or she deems appropriate for the furtherance of the Company's business.

4.5  Competing Activities.    The Members and their Affiliates may engage or invest in any activity, including without limitation those that might be in direct or indirect competition with the Company. Neither the Company nor any Member shall have any right in or to such other activities or to the income or proceeds derived therefrom. No Member shall be obligated to

BB IV WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

5

present any investment opportunity to the Company, even if the opportunity is of the character that, if presented to the Company could be taken by the Company. Each Member shall have the right to hold any investment opportunity for its own account of the recommend such opportunity to persons other than the Company. The Members acknowledge that certain Members and their Affiliates own and/or manage other businesses, including businesses that may compete with the company and for the Members' time. Each Member hereby waives any and all rights and claims which he or she may otherwise have against the other Members and their Affiliates as a result of any such activities.

4.6 <u>Transactions between the Company and the Members</u>.  Notwithstanding that it may constitute a conflict of interest, the Members and their Affiliates may engage in any transaction with the Company so long as such transaction is not expressly prohibited by this Agreement and so long as the terms and conditions of such transaction, or an overall basis, are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from persons capable of similarly performing them or if Members holding a majority of the Membership Interests held by the Members having no interest in such transaction (other than their interests as Members) approve the transaction in writing.

## ARTICLE V - ALLOCATIONS OF NET PROFITS AND NET LOSSES AND DISTRIBUTIONS

5.1 <u>Definitions</u>. When used in this Agreement, the following terms shall have the meanings set forth below:

"<u>Code</u>" shall mean the Internal Revenue Code of 1986, as amended from time to time, the provisions of succeeding law, and to the extent applicable, the Treasury Regulations.

"<u>Company Minimum Gain</u>" shall have the meaning given to the term "Partner Nonrecourse Debt" in Treasury Regulations Section 1.704-2 (d).

"<u>Member Nonrecourse Debt</u>" shall have the meaning given to the term "Partner Nonrecourse Debt" in Treasury Regulations Section 1.704-2 (b) (4).

"<u>Member Nonrecourse Deductions</u>" shall mean items or Company loss, deduction, or Code Section 705 (a) (2) (B) expenditures which are attributable to Member Nonrecourse Debt.

"<u>Net Profits</u>" and "<u>Net Losses</u>" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with the method of accounting at the close

BB W WESTCLIFF INVESTORS-OPERATING AGREEMENT-final

6

of each fiscal year employed on the Company's information tax return filed for Federal income tax purposes.

"Nonrecourse Liability" shall have the meaning set forth in Treasury Regulation that have been issued by the U.S. Department of Treasury pursuant to its authority under the Code, and any successor regulations.

5.2   Allocations of Net Profit and Net Loss (subject to Paragraphs 2.4 and 2.5 herein which shall prevail).

(a) Net Loss.  Net Loss shall be allocated among the Members in proportion to their respective Membership Interests as set forth in Exhibit "A".

(b) Net Profit. Net Profit shall be allocated among the Members in the following manner:

(i)   First, in the event of sale or refinance, to repay 100% of all capital contributions or additional capital contributions made by any Member;

(ii)  Second, to the Members to the extent of the distributions made pursuant to paragraph 5.5(a), below;

(iii)    Thereafter, among the Members in proportion to their respective Membership Interests as set forth in Exhibit "A."

5.3   Special Allocations.  Notwithstanding Paragraph 5.2:

(a) Minimum Gain Chargeback.  If there is a net decrease in Company Minimum Gain during any fiscal year, each Member shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in Company Minimum Gain that is allocable to the disposition of Company property subject to a Nonrecourse Liability net decrease shall be determined in accordance with Treasury Regulations Section 1.704-2 (g) (2). Allocations pursuant to this Paragraph 5.3 (a) shall be made in proportion to the amounts required to be allocated to each Member under this Paragraph 5.3 (a).  The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(f).  This Paragraph 5.3 (a) is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations Section 1.704-2 (f) and shall be interpreted consistently therewith.

(b) Chargeback of Minimum Gain Attributable to Member Nonrecourse Debt. If there is a net decrease in Company Minimum Gain attributable to a Member Nonrecourse Debt, during

DD ¼/ WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

7



any fiscal year, each member who has a share of the Company Minimum Gain attributable to such Member Nonrecourse (which share shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (5)) shall be specifically allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to that portion of such Member's share of the net decrease in Company Minimum Gain attributable to such Member Nonrecourse Debt that is allocable to the disposition of company property subject to such Member Nonrecourse Debt (which share of such net decrease shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (5)). Allocations pursuant to this Paragraph 5.3 (b) shall be made in proportion to the amounts required to be allocated to each Member under this Paragraph 5.3 (b). The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (4). This Paragraph 5.3 (b) is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations Section 1.704-2 (i) (4) and shall be interpreted consistently therewith.

(c) Nonrecourse Deductions. Any nonrecourse deductions (as defined in Treasury Regulations Section 1.704-2 (b) (1)) for any fiscal year or other period shall be specially allocated to the Members in proportion to their Membership Interests.

(d) Member Nonrecourse Deductions. Those items of expenditures which are attributable to Member Nonrecourse Debt for any fiscal year or other period shall be specifically allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such items are attributable in accordance with Treasury Regulations Section 1.704-2 (i).

(e) Deficit Capital Account Restoration. In the event the Company is "liquidated" within the meaning of Treasury Regulations Section 1.704-2 (b) (ii) (g), a Member whose Capital Account has a deficit balance (after giving effect to all contributions, distributions, and allocations for all Fiscal Years, including the Fiscal Year during which such liquidation occurs), such Member shall contribute to the capital of the Company the amount necessary to restore such deficit balance to 1.704-2 (b) (2) (ii) (b) (3).

5.4 Code Section 704(c) Allocations. Notwithstanding any other provision in this Article V, in accordance with Code Section 704(c) and the Treasury Regulations promulgated thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for tax purposes, be allocated amount the Members so as to take account of any variation between the adjusted basis of such property to the Company for Federal income tax purposes and its fair market value on the date of contribution. Allocations pursuant to this Paragraph 5.4 are solely for purposes of Federal, state and local taxes. As such, they shall not affect Capital Account or share of profits, losses, or other items of distributions pursuant to any provision of this Agreement.

5.5 Distribution of Assets by the Company. Subject to applicable law and any limitations contained elsewhere in this Agreement, the Co-Managing Members holding at least



BB iv WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

8

seventy-five percent (75%) of the Membership Interests may elect from time to time to cause the Company to make distributions. Any payment by the Company with respect to Member Loans shall be credited first to interest then accrued, and the remainder, if any, to principal; and interest shall cease to accrue upon the principal so credited as of the date that such payment is actually made.

(a) Distribution from the sale or refinance of the Project shall be made in the following order and priority:

(i) First, one hundred percent (100%) to Beitler and Bral in an amount sufficient to repay Beitler and Bral their unreturned capital contributions; until each Member has recovered the amount of its initial and additional capital contributions; and

(ii) Thereafter, to the Members in proportion to their Membership Interests.

(b) Distributions from the cash flow resulting from the operation of the Project shall be made in the following order and priority:

(i) First, one hundred percent (100%) to Beitler and Bral in an amount sufficient to provide to each of the Members the priority return on such Member's additional capital contributions to the company if so designated by the Co-Managing Members;

(ii) Thereafter, to the Members in proportion to their Membership Interests;

Article VI - TRANSFER AND ASSIGNMENT OF INTERESTS

6.1 Transfer and Assignment of Interests.    No Member shall be entitled to transfer, assign, convey, sell, encumber or in any way alienate all or any part of its Membership Interest (collectively, "transfer") except with the prior approval of all Members, which approval may be given or withheld in the sole discretion of the Members, other than for each Member's ability to put his or her respective interest in a Trust or other estate planning mechanism which shall not be considered a Transfer hereunder.

6.2 Transfers in Violation of this Agreement and Transfers of Partial Membership Interests.    Upon a transfer in violation of this Article VI, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member. Such transferee shall only be entitled to receive the share of the Company's Net Profits, Net Losses and distributions of the Company's assets to which the transferor would otherwise be entitled. Notwithstanding the immediately preceding sentences, if, in the determination of the remaining Members, a transfer in violation of this Article VI would cause the termination of the Company under the Code, in the sole discretion of the remaining Members, the transfer shall be null and void.

BB la WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

9



6.3 <u>Transfers in Violation of this Agreement and Transfers of Partial Membership Interests.</u>  Upon a transfer in violation of this Article VI, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member. Such transferee shall only be entitled to receive the share of the Company's Net Profits, Net Losses and distributions of the Company's assets to which the transferor would otherwise be entitled.  Notwithstanding the immediately preceding sentences, if, in the determination of the remaining Members, a transfer in violation of this Article VI would cause the termination of the Company under the Code, in the sole discretion of the remaining Members, the transfer shall be null and void.

<div align="center">

ARTICLE VII -    CONSEQUENCES OF DISSOLUTION EVENTS
AND TERMINATION OF MEMBERSHIP INTEREST

</div>

7.1 <u>Dissolution Event</u>  Upon the occurrence of the death, withdrawal, resignation, retirement, insanity, bankruptcy or dissolution of any Member (the "Dissolution Event"), the Company shall dissolve unless all of the remaining Members (the "Remaining Members") consent within ninety (90) days of the Dissolution Event to the continuation of the business of the Company.  If the Remaining Members so consent, the Company and/or the Remaining Members shall have the right to purchase and, if such right is exercised, the Member (or its legal representative) whose actions or conduct resulted in the Dissolution Event (the "Former Member") shall sell, the Former Member's Membership Interest (the "Former Member's Interest") as provided in this Article VII.

7.2 <u>Withdrawal.</u>   Notwithstanding Paragraph 7.1, upon the withdrawal by a Member in accordance with Paragraph 3.2 such Member shall be treated as a Former Member, and, unless the Company dissolves as a result of such withdrawal, the Company and/or the Remaining Members shall have the right to purchase and, if such right is exercised, the Former Member shall sell, the Former Member's Interest as provided in this Article VII.

7.3 <u>Purchase Price</u>.   The purchase price for the Former Member's Interest shall be the fair market value of the Former Member's Interest as determined by an independent appraiser jointly selected by the Former Member and Remaining Members holding a majority of the remaining Membership Interests.  The Company and the Former Member shall each pay one-half (1/2) if the cost of the appraisal.  Notwithstanding the foregoing, if the Dissolution Event results from a breach of this Agreement by the Former Member, the purchase price shall be reduced by an amount equal to the damages suffered by the Company or the Remaining Members as a result of such breach.

7.4 <u>Notice of Intent to Purchase.</u>   Within thirty (30) days after the fair market value of the Former Member's Interest has been determined in accordance with Paragraph 7.3, each Remaining Member shall notify the Members in writing of its desire to purchase a portion of the

BB.l/ WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

<div align="center">

10

</div>



Former Member's Interest. The failure of any Remaining Member to submit a notice within the applicable period shall constitute an election on the part of the Member not to purchase any of the Former Member's Interest in the same proportion that the Membership Interest of the Remaining Member bears to the aggregate of the Membership Interests of all or the Remaining Members electing to purchase the Former Member's Interest.

7.5 <u>Election to Purchase Less Than All of the Former Member's Interest</u>. If any Remaining Member elects to purchase none or less than all of its <u>pro rata</u> share of the Former Member's Interest, then the Remaining Members can elect to purchase more than their <u>pro rata</u> share. If the Remaining Member fail to purchase the entire interest of the Former Member, the Company may purchase any remaining share of the Former Member's Interest.

7.6 <u>Payment of Purchase Price</u>. The Company or the Remaining Members, as the case may be, shall pay at the closing one-fifth (1/5) of the purchase price and the balance of the purchase price shall be paid in four (4) equal annual principal installments, plus accrued interest, and be payable each year on the anniversary date of the closing. The unpaid principal balance shall accrue interest at the current applicable Federal rate as provided in the Code for the month in which the initial payment is made, but the Company and the Remaining Members shall have the right to prepay in full or in part at any time without penalty. The obligation of each purchasing Remaining Member, and the Company, as applicable, to pay its portion of the balance due shall be evidenced by a separate promissory note executed by the respective purchasing Remaining Member or the Company, as applicable. Each such promissory note shall be in an original principal amount equal to the portion owed by the respective purchasing Remaining Member or the Company, as applicable. The promissory note executed by each purchasing Remaining Member shall be secured by a pledge of that portion of the Former Member's Interest purchased by such Remaining Member.

7.7 <u>Closing of Purchase of Former Member's Interest</u>. The closing for the sale of a Former Member's Interest pursuant to this Article VII shall be held at 10:00 A.M. at the principal office of Company no later than sixty (60) days after the determination of the purchase price, except that if the closing date falls on a Saturday, Sunday, or California legal holiday, then the closing shall be held on the next succeeding business day.   At the closing, the Former Member shall deliver to the Company or the Remaining Members an instrument of transfer (containing warranties of title and no encumbrances) conveying the Former Member's Interest. The Former Member, the Company and the Remaining Members shall do all things and execute and deliver all papers as may be reasonably necessary fully to consummate such sale and purchase in accordance with the terms and provisions of this Agreement.

ARTICLE VIII - ACCOUNTING, RECORDS, REPORTING BY MEMBERS

8.1 <u>Books and Records</u>. The books and records of the Company shall be kept in accordance with the accounting methods followed for Federal income tax purposes. The Company shall maintain at its principal office in California all of the following:

DB 1\ WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

11

(a) A current list of the full name and last known business or residence address of each Member set forth in alphabetical order, together with the capital contributions, capital account and Membership Interest of each Member;

(b) A copy of the Articles and any and all amendments thereto together with executed copies of any powers of attorney pursuant to which the Articles or any amendments thereto have been executed;

(c) Copies of the Company's Federal, state, and local income tax or information returns and reports, if any, for the six (6) most recent taxable years;

(d) A copy of this Agreement and any and all amendments thereto together with executed copies of any powers of attorney pursuant to which this Agreement or any amendments thereto have been executed;

(e) Copies of the financial statements of the Company, if any, for the six (6) most recent fiscal years; and

(f) The Company's books and records as they relate to the internal affairs of the Company for at least the current and past four (4) fiscal years.

8.2 Reports.    The Company shall cause to be filed, in accordance with the Act, all reports and documents required to be filed with any governmental agency. The Company shall cause to be prepare at least annually information concerning the Company's operations necessary for the completion of the Members' Federal and state income tax returns. The Company shall send or cause to be sent to each Member within ninety (90) days after the end of each taxable year: (i) such information as is necessary to complete the Members' Federal and state income tax or information returns and (ii) a copy of the Company's Federal, state, and local income tax or information returns for the year.

8.3 Bank Accounts.    The Members shall maintain the funds of the Company in one    or more separate bank accounts in the name of the Company, and shall not permit the funds of the Company to be commingled in any fashion with the funds of any other person. Any Member, acting alone, is authorized to endorse checks, drafts, and other evidences of indebtedness made payable to the order of the Company, but only for the purpose of deposit into the Company's accounts. All checks, drafts, and other instruments obligating the Company to pay money may be signed by any Co-Managing Member, acting alone up to $10,000. Any obligation of the Company over $10,000 shall require both Co-Managing Member's signatures or the written approval of both Co-Managing Members.

BB b/ WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

12



8.4 Tax Matters for the Company.  Beitler is designated as "Tax Matters Partner" (as defined in Code Section 6231), to represent the Company (at the Company's expense) in connection with all examination of the Company's affairs by tax authorities and to expend Company funds for professional services and costs associated therewith, subject to the limitations contained in Paragraph 4.2.

## ARTICLE IX  -  DISSOLUTION AND WINDING UP

9.1 Conditions of Dissolution.  The Company shall dissolve upon the occurrence of any of the following events:

(a) Upon the happening of any event of dissolution specified in the Articles;

(b) Upon the entry of a decree of judicial dissolution pursuant to Section 17351 of the California Corporations Code;

(c) Upon the vote of both Co-Managing Members;

(d) The occurrence of a Dissolution Event and the failure of the Remaining Members to consent in accordance with Paragraph 7.1 to continue the business of the Company within ninety (90) days after the occurrence of such event; or

BD b/ WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

13

(e) The sale of all or substantially all of the assets of Company.

9.2 <u>Winding Up</u>.   Upon the dissolution of the Company, the Company's assets shall be disposed of and its affairs wound up.  The Company shall give written notice of the commencement of the dissolution to all of its known creditors.

9.3 <u>Order of Payment of Liabilities Upon Dissolution</u>.  After determining that all the known debts and liabilities of the Company have been paid or adequately provided for, the remaining assets shall be distributed to the Members in accordance with their positive Capital Account balances, after taking into account income and loss allocations for the Company's taxable year during which liquidation occurs.

9.4 <u>Limitations on Payments Made in Dissolution</u>.   Except as otherwise specifically provided in this Agreement, each Member shall be entitled to look only to the assets of the Company for the return of its capital contribution and/or share of Net Profits against any other Member except as provided in Article X.

9.5 <u>Certificates</u>.   The Company shall file with the California Secretary of State a Certificate of Dissolution upon the dissolution of the Company and a Certificate of Cancellation upon the completion of the winding up of the Company's affairs.

## ARTICLE X  -  INDEMNIFICATION

10.1    <u>Indemnification of Agents</u>.    The Company shall indemnify any Member and may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding arising out of or connected to the business of the company or that, being or having been such a Member, officer, employee or agent, he or she is or was serving at the request of the Company as a manager, director, officer, employee or other agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise to the fullest extent permitted by applicable law in effect on the date hereof and to such greater extent as applicable law may hereafter from time to time permit.  Further, any Member shall indemnify and hold harmless the Company and/or the other Members of the Company in the event that the Company and/or the other Members are made a party to any threatened or pending action, suit or proceeding between or by a Member and a third party or entity not arising out of or related to the business of Company.

## ARTICLE XI  - INVESTMENT REPRESENTATIONS

Each Member hereby represents and warrants to, and agrees with, the Members and the Company as follows:

11.1    <u>Preexisting Relationship or Experience</u>.   It has a preexisting personal or business

BB b/ WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

14

relationship with the Company or one or more of its officers or controlling persons, or by reason of its business or financial experience, or by reason of the business or financial experience of its financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by the Company or any affiliate or selling agent of the Company, it is capable or evaluating the risks and merits of an investment in the Company and of protecting its own interests in connection with this investment.

11.2  <u>No Advertising</u>.  It has not seen, received, been presented with, or been solicited by any leaflet, public promotional meeting, article or any other form of advertising or general solicitation with respect to the sale of the Membership Interest.

11.3  <u>Investment Intent</u>.  It is acquiring the Membership Interest for investment purposes for its own account only and not with a view to or for sale in connection with any distribution of all or any part of the Membership Interest.  No other person will have any direct or indirect beneficial interest in or right to the Membership interest.

### ARTICLE XII   -   MISCELLANEOUS

12.1  <u>Counsel to the Company</u>.   Counsel to the Company may also be counsel to any Member or any Affiliate of a Member.  The Members may execute on behalf of the Company and the Members any consent to the representation of the Company that counsel may request pursuant to the California Rules of Professional Conduct or similar rules in any other jurisdiction (the "Rules").  The Company has initially selected Jeff Katofsky of the Law Offices of Jeff Katofsky, LLP (the Company Counsel"), as legal counsel to the Company.  Each Member acknowledges that the Company Counsel does not represent any Member in the absence of a clear and explicit agreement to such effect between the Member and the Company Counsel, and that in the absence of any such written agreement the Company Counsel shall owe no duties directly to a Member.  Each Member further acknowledges: (i) that the Company Counsel has represented the interests of Beitler  in connection with the formation of the Company and the preparation and negotiation of this Agreement, and John Bral has selected separate Counsel in connection with the formation of the Company and the preparation and negotiation of this Agreement, (ii) while communications with the Company Counsel concerning the formation of the Company and its Members may be confidential with respect to third parties, no Member has any expectation that such communications are confidential with respect to Members which are represented individually by the Company Counsel.

12.2  <u>Complete Agreement</u>.  This Agreement and the Articles constitute the complete and exclusive statement and agreement among the Members with respect to the subject matter herein and therein and replace and supersedes all prior written and oral agreements among the Member.  To the extent that any provision of the Articles conflict with any provision of this Agreement, the Articles shall control.

BD hv WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

12.3   <u>Binding Effect</u>. Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and inure to the benefit of the Members, and their respective successors and assigns.

12.4   <u>Interpretation</u>. All pronouns shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the context in which they are used may require. All headings herein are inserted only for convenience and ease of reference and are not to be considered in the interpretation of any provision of this Agreement. Numbered or lettered articles, paragraphs and subparagraphs herein contained refer to articles, paragraphs and subparagraphs of this Agreement unless otherwise expressly stated. In the event any claim is made by any Member relating to any conflict, omission or ambiguity in this Agreement, no presumption or burden or proof or persuasion shall be implied by virtue of the fact that this Agreement was prepared by or at the request of a particular Member of its counsel.

12.5   <u>Jurisdiction</u>. Each Member hereby consents to the exclusive jurisdiction of the state and Federal courts sitting in California in any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement. Each Member further agrees that personal jurisdiction over it may be effected by service of process by registered or certified mail addressed as provided in Paragraph 12.8 of this Agreement, and that when so made shall be as if served upon it personally within the State of California.

12.6   <u>Arbitration</u>. Except as otherwise provided in this Agreement, any controversy between the parties arising out of this Agreement shall be submitted to the American Arbitration Association for arbitration in Los Angeles, California. The costs of the arbitration, including any American Arbitration Association administration fee, the arbitrator's fee, and costs for the use of facilities during the hearings, shall be borne equally by the parties to the arbitration. Attorneys' fees may be awarded to the prevailing or most prevailing party at the discretion of the arbitrator. The provisions of Sections 1282.6, 1283, and 1283.05 of the California Code of Civil Procedure apply to the arbitration. The arbitrator shall not have any power to alter, amend, modify or change any of the terms of this Agreement nor to grant any remedy which is either prohibited by the terms of this Agreement, or not available in a court of law. The decision of the arbitrator shall be final, binding and non-appealable.

12.7   <u>Severability</u>. If any provision of this Agreement or the application of such provision to any person or circumstance shall be held invalid, the remainder of this Agreement or the application of such provision to persons or circumstances other than those to which it is held invalid shall not be affected thereby.

12.8   <u>Notices</u>. Any notices to be given or to be served upon the Company or any party hereto in connection with this Agreement must be in writing (which may include facsimile) and will be deemed to have been given and received when delivered to the address specified by the party to receive the notice. Such notices will be given to a Member at the address specified in Exhibit "A" hereto. Any party may, at any time by giving five (5) days' prior written notice to the other Members, designate any other address in substitution of the foregoing address to which

BILLY WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

16

such notice will be given.

12.9   Amendments.   All amendments to this Agreement will be in writing and signed by all of the Members.

12.10   Multiple Counterparts.   This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

12.11   Attorney Fees.   In the event that any dispute between the Company and the Members or among the Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses of enforcing any right of the prevailing party, including without limitation, reasonable attorneys' fees and expenses, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment. Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorney fees and costs incurred in enforcing such judgment and an award of prejudgment interest from the date of the breach at the maximum rate allowed by law. For the purposes of this Paragraph: (i) attorney fees shall include, without limitation, fees incurred in the following: (1) post-judgment motions; (2) contempt proceedings; (3) garnishment, levy and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation and (ii) the term "prevailing party" shall mean the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise.

12.12   Remedies Cumulative.   The remedies under this Agreement are cumulative and shall not exclude any other remedies to which any person may be lawfully entitled.

12.13   Consent of Spouse.   Within ten (10) days after any individual becomes a Member or a Member marries, such Member shall have its spouse execute a consent substantially in the form attached to this Agreement.

BB to WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

17

IN WITNESS WHEREOF, all of the Members of WESTCLIFF INVESTORS, LLC, a California limited liability company, have executed this Agreement, consisting of pages, including this page, and Exhibit "A", effective as of the date written above.

_____
Barry Beitler

_____
John Bral

_____
Betsy Boyd

BB:lv/ WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

18

## EXHIBIT "A"

### CAPITAL CONTRIBUTIONS
### AND ADDRESSES OF MEMBERS

#### OF

#### WESTCLIFF INVESTORS, LLC
#### a California limited liability company

| Member's Name | Member's Address | Member's Initial Capital | Member's Membership Interest |
|---|---|---|---|
| Barry Beitler | 825 S. Barrington Los Angeles, CA 90049 | 50% of all required capital | 47.5% |
| John Bral | 64 Sandpiper Irvine, CA 92604 | 50% of all required capital | 47.5% |
| Betsy Boyd | 3456 Summerset Circle Costa Mesa, CA 92626 | -0- | 5.0% |
| TOTALS | | 100% of all required capital | 100.0% |



BB:lr WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

19



# PROOF OF SERVICE

### *John Bral v. Westcliff Investors, LLC, etc., et al*
Orange County Superior Court, Civil Compex Center
Case No. 30-2013-00688658-CU-MC-CJC

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles, California 90049.

On August 18, 2014, I served the foregoing document(s) described as: **PETITION OF BETSY BOYD TO COMPEL ARBITRATION** on all interested parties in this action in the manner indicated below:

| | |
|---|---|
| Babak (Bobby) Samini, Esq. | Attorneys for Plaintiff |
| Nicole C. Prado, Esq. | JOHN BRAL |
| SAMINI SCHEINBERG, PC | |
| 949 South Coast Drive, Suite 420 | |
| Costa Mesa, CA 92626 | |
| Email: bsamini@saminilaw.com | |
| nprado@saminilaw.com | |
| nprado@AsgLawFirm.com | |

☒ By Mail

☒ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 18, 2014, at Los Angeles, California.

_____
REBECCA SILVA

EXHIBIT "1"

# EXHIBIT "2"

1  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
2  TOM LALLAS (SBN: 66512)
   MARK D. HURWITZ (SBN 151159)
3  815 Moraga Drive
   Los Angeles, California 90049-1633
4  Telephone:    (310) 471-3000
   Facsimile:    (310) 471-7990
5
   Attorneys for Defendants
6  WESTCLIFF INVESTORS, LLC,
   BARRY BEITLER and BETSY BOYD
7

**FILED**
Superior Court of California
County of Los Angeles

FEB 11 2016

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Raul Sanchez

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

**FILED BY FAX**

10

11  JOHN BRAL, an individual,                | **CASE NO.:  BC 553693**
                                             | [Hon. Rolf M. Treu; Dept. "58"]
12            Plaintiff,                      |
                                             | *(Formerly Orange County Superior Court,*
13       v.                                   | *Case No. 30-2013-00688658-CU-MC-CJC)*
14  WESTCLIFF INVESTORS, LLC, a              |
    California limited liability company; BARRY | **DECLARATION OF TOM LALLAS IN**
15  BEITLER, an individual; BETSY BOYD, an   | **OPPOSITION TO MOTION FOR**
    individual; and DOES 1 through 50, inclusive, | **ORDERS: (1) APPOINTING ARBITRATOR**
16                                            | **AND ORDERING COMPLETION OF**
            Defendants.                       | **ARBITRATION BY MARCH 15, 2016, OR,**
17                                            | **IN THE ALTERNATIVE, TO VACATE THE**
                                             | **ORDER TO ARBITRATE AND SET FOR**
18                                            | **IMMEDIATE TRIAL FOR DEFENDANTS'**
                                             | **FAILURE TO PROCEED WITH**
19                                            | **ARBITRATION; AND (2) APPOINTING**
                                             | **RECEIVER TO SELL REAL PROPERTY**
20                                            | **PENDING ARBITRATION AND**
                                             | **DISSOLUTION OF THE LLC**
21
22
23                                            | Date:      February 19, 2016
                                             | Time:      8:30 a.m.
24                                            | Dept.:     58
25                                            | Trial Date:   None Set
26
27
28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

I, TOM LALLAS, declare as follows:

1.  I am an attorney at law admitted to practice before this Court and all of the Courts of the State of California and through my professional corporation, I am a member of Levy, Small & Lallas, A Partnership Including Professional Corporations, which represents Defendants Westcliff Investors, LLC ("Westcliff"), Barry Beitler ("Beitler"), and Betsy Boyd ("Boyd") (collectively the "Westcliff Group") in the above-captioned action filed by Plaintiff John Bral ("Bral").

2.  I know of my own personal knowledge that the facts set forth in this Declaration are true and correct, and if called upon to testify, I could and would testify competently thereto.

**A.  Beitler's Agreement to Appoint an Arbitrator Who Is Already Presiding Over a Pending Dispute Between Beitler and Bral with Respect to Westcliff.**

3.  On November 20, 2013, Bral filed in the Orange County Superior Court his Complaint in the above-captioned action.  For the convenience of the Court, a copy of the Complaint is attached hereto as Exhibit 1.

4.  Bral's allegations and claims in the Complaint concern, among other things, (i) a July 29, 2011 loan agreement between Beitler and Bral (the "July 2011 Agreement") and (ii) Bral's contention that, in lieu of collecting the amount due and owing by Bral to Beitler under the July 2011 Agreement, Beitler is required to accept an assignment of Bral's ownership interest in Westcliff [*see, e.g.*, Complaint at 5:11-6:15, 9:1-25, 10:20-24].

5.  On December 5, 2013, Beitler filed a Petition against Bral in this Court in the matter entitled <u>Barry A. Beitler v. John Bral</u>, Case No. BS 146302 (the "Petition Case"), whereby Beitler sought appointment of a private judge to preside over the trial of any and all disputes between Beitler and Bral under the July 2011 Agreement.  A copy of the Petition that Beitler filed in the Petition Case, including the copy of the July 2011 Agreement attached thereto, is attached hereto as Exhibit 2.

6.  As stated in the Petition, pursuant to Section 14 of the July 2011 Agreement, disputes related to, arising out of, or connected with the July 2011 Agreement are to be decided

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

DECLARATION OF TOM LALLAS IN OPPOSITION TO MOTION FOR ORDERS
APPOINTING ARBITRATOR AND RECEIVER

EXHIBIT 2
Page 32

1  by a private judge trial, before a retired Judge of this Court, to be appointed by this Court if the

2  parties could not agree to the selection of a particular private judge.

3        7.     Attached hereto as Exhibit 3 is a copy of the Order Appointing Referee entered on

4  January 13, 2015 in the Petition Case.  That order names Judge Joseph Biderman (Ret.), who

5  eventually declined his appointment.

6        8.     Attached hereto as Exhibit 4 is a copy of the Notice of Acceptance of

7  Appointment as All-Purpose Judge filed on August 26, 2015 in the Petition Case, which

8  confirmed that the Honorable Carl West, Judge of the Los Angeles County Superior Court (Ret.)

9  ("Judge West"), accepted appointment as private judge.

10        9.     Attached hereto as Exhibit 5 is a copy of the Minute Order entered on August 31,

11  2015 in the Petition Case recognizing that Judge West would serve as the private judge.

12        10.     The private judge proceedings have commenced before Judge West, including

13  without limitation a case management conference on December 14, 2015 in which both Beitler

14  and Bral participated through their respective counsel.  Attached hereto as Exhibit 6 is a copy of

15  the Report of Case Management Conference and Scheduling Order No. 1, which Judge West

16  issued on or about December 28, 2015.

17        11.     Since (a) Judge West has already been acting as the private judge for the disputes

18  between Beitler and Bral under the July 2011 Agreement, and (b) this action likewise concerns

19  the July 2011 Agreement and the effect, if any, on the respective membership interests of Beitler

20  and Bral in Westcliff, several months ago I proposed to Bral's counsel, Lloyd Chapman, Esq.,

21  that Judge West be appointed as the arbitrator in the above-captioned action.  Mr. Chapman has

22  nonetheless failed or refused to agree to Judge West's appointment in this action.

23    **B.**     **Bral's Delay of Arbitration and Inability to Prove Any Need for Immediate**

24                   **Relief.**

25        12.     Attached hereto as Exhibit 7 for the convenience of the Court is a copy of this

26  Court's November 5, 2014 Minute Order herein granting Boyd's petition to compel arbitration

27  and staying this action.

28

2

DECLARATION OF TOM LALLAS IN OPPOSITION TO MOTION FOR ORDERS
APPOINTING ARBITRATOR AND RECEIVER

EXHIBIT "2"
Page 33

13.    Although Bral has thus known for over 15 months that he must proceed, if at all, in arbitration to pursue his claims herein, Bral has yet to commence the arbitration, whether before Judge West or any other arbitrator acceptable to the Westcliff Group.

14.    Instead of agreeing to the appointment of Judge West as arbitrator or working with the Westcliff Group to appoint another arbitrator, Bral noticed and then canceled, or failed to appear for, a series of ex parte applications.

15.    First, on December 8, 2015, my office received telephonic notice from Mr. Chapman that he would appear in this Court on December 9, 2015 in this action to apply ex parte for an order to (a) appoint a receiver to accept and govern the sale of the Westcliff property pursuant to a purchase agreement and (b) appoint an arbitrator and require the parties to complete arbitration by February 1, 2016 (the "December 9 Application").

16.    I personally appeared in this Court on December 9, 2015 to oppose the December 9 Application noticed by Mr. Chapman on behalf of Bral.  However, neither Bral nor Mr. Chapman appeared on December 9, 2015, and the December 9 Application did not proceed.

17.    On January 8, 2016, I received from Mr. Chapman a written notice, a copy of which is attached hereto as Exhibit 8, that he would appear in this Court on January 11, 2016 in this action to apply ex parte for an order to (a) appoint an arbitrator and require that arbitration be completed by February 29, 2016, or else that the Court's Order compelling arbitration herein be vacated, and (b) appoint a receiver to accept a pending offer for sale of the Westcliff property or to market and sell the property pending dissolution of Westcliff (the "January 11 Application").

18.    The January 11 Application did not proceed.  As I was preparing to appear at the hearing on, and to present opposition to, the January 11 Application, I received a text message at 6:45 a.m. on Monday, January 11, 2016 from Mr. Chapman stating: "Mr. Lallas - - I am not able to appear this morning.  The ex parte noticed for this morning will not occur but will be reset for Friday.  I will sent you more formal notice but I wanted to alert you before you left."

19.    Mr. Chapman did not, however, reset the January 11 Application for that Friday (January 15, 2016).  In fact, I did not thereafter receive from Mr. Chapman, or from anyone else representing Bral, any further notice of any ex parte application in this action until January 27,

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

DECLARATION OF TOM LALLAS IN OPPOSITION TO MOTION FOR ORDERS
APPOINTING ARBITRATOR AND RECEIVER

EXHIBIT 2
Page 34

1    2016, when I received from Mr. Chapman the notice, a copy of which is attached hereto as

2    Exhibit 9, of an ex parte application to shorten time for the hearing of a motion for substantially

3    the same relief identified in Mr. Chapman's January 8, 2016 notice of the January 11

4    Application.

5        20.    Accordingly, Bral has now taken two months to request the relief he purportedly

6    needed on an immediate basis when he first noticed the December 9 Application.

7        21.    At any rate, Bral cannot now demand that, by March 15, 2016, within less than a

8    month after the hearing on his pending motion, (a) the Court appoint an arbitrator, (b) the

9    arbitrator accept the appointment, (c) the arbitrator schedule all pertinent dates and deadlines in

10    the arbitration, and (d) the arbitration be completed. It is within the arbitrator's jurisdiction,

11    among other things, to set the dates for the arbitration hearing and to set all deadlines for the

12    production of documents, written discovery, depositions, depositions of experts, and pre-

13    arbitration hearing conferences.

14        22.    Furthermore, the dispute between Beitler and Bral with respect to the Westcliff

15    property is nothing new. Not only is that dispute a subject of the Complaint Bral filed in this

16    action in November 2013 [Ex. 1], but Beitler set forth his views with respect to disposition of the

17    property in, among other things, the Declaration of Barry Beitler filed on January 28, 2015 in

18    this action, a copy of which, including the exhibits thereto, is attached hereto for the convenience

19    of the Court as Exhibit 10.

20        **C.**      **The Papers Served in Support of Bral's Motion.**

21        23.    On January 28, 2016, after 5:00 p.m., I received by email from Mr. Chapman two

22    .pdf documents, copies of which are attached hereto as Exhibits 11 and 12, respectively. The

23    first document [Ex. 11] is 42 pages long and includes a caption page, a notice of motion, a

24    memorandum of points and authorities, a Declaration of Lloyd K. Chapman, and Exhibits A and

25    B. The other document [Ex. 12] is 21 pages long but (a) it does not have any caption, (b) the

26    first three pages are blank, and (b) the remaining 18 pages purport to be Exhibits C through F.

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

DECLARATION OF TOM LALLAS IN OPPOSITION TO MOTION FOR ORDERS
APPOINTING ARBITRATOR AND RECEIVER

EXHIBIT 2
Page 35

1       I declare under penalty of perjury under the laws of the State of California that the

2   foregoing is true and correct.

3       Executed this 11th day of February, 2016, at Los Angeles, California.

4

5

6

7                                              TOM LALLAS

32075

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

5

DECLARATION OF TOM LALLAS IN OPPOSITION TO MOTION FOR ORDERS
APPOINTING ARBITRATOR AND RECEIVER

EXHIBIT 2
Page 36

**EXHIBIT 1**

# EXHIBIT 1

Bobby Samini, Esq. (SBN 181796)
Nicole C. Prado, Esq. (SBN 269833)
SAMINI SCHEINBERG, PC
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Telephone: (949) 724-0900
Facsimile: (949) 724-0901

Attorneys for Plaintiff,
JOHN BRAL

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
**11/20/2013** at 09:20:27 AM
Clerk of the Superior Court
By Diana Cuevas,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

| | |
|---|---|
| JOHN BRAL, an individual, | CASE NO.: 30-2013-00688658-CU-MC-CJC |
| Plaintiff, | Judge Ronald Bauer |
| vs. | COMPLAINT OF JOHN BRAL |
| WESTCLIFF INVESTORS, LLC, a California limited liability company; BARRY BEITLER, an individual; BETSY BOYD, an individual; and DOES 1 through 50, inclusive, | 1. Involuntary Dissolution of Limited Liability Company; 2. Accounting; 3. Breach of Fiduciary Duty; and 4. Declaratory Relief |
| Defendants. | DEMAND FOR JURY TRIAL |

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

- 1 -
COMPLAINT OF JOHN BRAL

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949) 724-0900

1       Plaintiff JOHN BRAL complains against Defendants, and each of them, as

2 follows:

3       <u>PREFATORY ALLEGATIONS</u>

4       1.      Plaintiff JOHN BRAL is now, and at all times relevant to this action was

5 an individual residing in Orange County, California.

6       2.      Plaintiff is informed and believes, and based upon such information and

7 belief alleges that Defendant WESTCLIFF INVESTORS, LLC ("WESTCLIFF"), at all

8 times relevant herein was and now is a California limited liability company conducting

9 business in the County of Orange, State of California.

10       3.      Plaintiff is a co-managing member of WESTCLIFF.

11

12       4.      Plaintiff is informed and believes, and based upon such information and

13 belief, allege that Defendant BARRY BEITLER ("BEITLER"), at all times relevant herein

14 was and now resides in Los Angeles, California. Plaintiff is informed and believes, and

15 based upon such information and belief alleges that BEITLER is the co-managing

16 member of WESTCLIFF.

17       5.      Plaintiff is informed and believes, and based upon such information and

18 belief, allege that Defendant BETSY BOYD ("BOYD"), at all times relevant herein was

19 and now resides in Los Angeles, California.

20       6.      Plaintiff is ignorant of the true names and capacities of Defendants sued

21 herein as DOES 1 - 50 INCLUSIVE and, therefore, sue these Defendants by such

22 fictitious names. Plaintiffs will amend this Complaint to allege their true names and

23 capacities when ascertained. Plaintiff is informed and believe and based thereon

24 alleges each of the fictitiously named Defendants are responsible in some manner for

25 the injuries to Plaintiff alleged herein, and that such injuries as herein alleged were

26 proximately caused by such Defendants.

27       7.      Plaintiff is informed and believes and thereon alleges that at all times

28 herein mentioned, that each of the Defendants were the agents, employees, partners,

EXHIBIT "2"
Page 40

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

1    joint venturers, successors or predecessors in interest, owners, principals, and

2    employers of the remaining Defendants, and in doing the things hereinafter alleged,

3    were acting within the course and scope of such agency, partnership, employment,

4    ownership, or joint venture.   Plaintiff is further informed and believes and based

5    thereon allege that the acts and conduct herein alleged of each such Defendants were

6    known to, authorized by, and/or ratified by the other Defendants, and each of them.

7         8.    Whenever in this Complaint an act or omission of a corporation or

8    business entity is alleged, the said allegation shall be deemed to mean and include an

9    allegation that the corporation or business entity acted or omitted to act through its

10   authorized officers, directors, agents, servants, and/or employees, acting within the

11   course and scope of their duties, that the act or omission was authorized by corporate

12   managerial officers or directors, and that the act or omission was ratified by the officers

13   and directors of the corporation or business entity.

14                      **VENUE & JURISDICTION**

15        9.    Venue is proper in this Court, as the tortious conduct giving rise to this

16   lawsuit occurred in the County of Orange, State of California.

17        10.    Plaintiff is informed and believes and, based on such information and

18   belief, alleges that this Court is the proper venue for trial because any and all causes of

19   action accrued here, Defendants are located and conduct business here and witnesses

20   are located here.

21        11.    The California Superior Court has jurisdiction over this action pursuant

22   to California Constitution Article VI section 10, which grants the Superior Court

23   "original jurisdiction in all causes except those given by statute to other trial courts."

24   No other basis of jurisdiction is implied in this case.

25        12.    Plaintiff is informed and believes and, based on such information and

26   belief, alleges that this Court is the proper jurisdiction for trial because any and all

27   causes of action accrued here, Defendants are located and conduct business here and

28   witnesses are located here.

-3-

**COMPLAINT OF JOHN BRAL**

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

13.    Plaintiff is informed and believes and, based on such information and belief, alleges the intentional acts occurred here and the remedies sought are within the jurisdiction of this Court.

## STATEMENT OF FACTS

13.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

14.    On or about February 7, 2003, WESTCLIFF was formed wherein Plaintiff, BEITLER, Plaintiff and BOYD were the sole members.

15.    On or about October 2013, WESTCLIFF received an offer to sell its sole asset, that certain real property located at 1901 Westcliff Drive, Newport Beach, California (the "Property") for the sum of $8,550,000. BEITLER agreed to the sale and participated in negotiating the terms thereof, but subsequently withdrew his consent and refuses to execute the Purchase Agreement on behalf of WESTCLIFF without any justification, all to the detriment of WESTCLIFF.

16.    BEITLER has endeavored to take a loan against the Property without business justification, thereby further encumbering it and diminishing WESTCLIFF's assets.

17.    On or about February 23, 2010, Plaintiff and BEITLER entered into that certain Agreement wherein BEITLER agreed to advance First Citizens Bank ("FCB") the sum of $105,180.82 (the "Advance") on behalf of Plaintiff in connection with payments due to FCB by Plaintiff and BEITLER equally on behalf of Ocean View Medical Investors, LLC ("Ocean") to bring current a loan between by FCB to Ocean (the "Agreement"). Section B of the Agreement provides that in exchange for BEITLER's advance on behalf of Plaintiff, BEITLER would receive a post-dated assignment of 10% of Plaintiff's 47.5% membership interest in WESTCLIFF to be effective in the event Plaintiff failed to repay the Advance plus interest on or before November 30, 2011.

-4-
COMPLAINT OF JOHN BRAL

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

18.    On or about April 11, 2011, Plaintiff and BEITLER entered into that certain First Amendment to Agreement wherein BEITLER agreed to advance the sum of $43,000 (the "Additional Advance") in addition to the Advance referenced in the Agreement (the "First Amendment to Agreement") for Plaintiff's capital contribution of property taxes and mortgage payments for the underlying properties held by Ocean, WESTCLIFF and Mineral King Investors, LLC ("Mineral"). Section B of the First Amendment to Agreement provides that in exchange for the Additional Advance, BEITLER would receive from Plaintiff a post-dated assignment of Plaintiff's 5% of his 47.5% membership interest in WESTCLIFF to be effective in the event Plaintiff failed to repay the Advance, Additional Advance and interest on or before March 1, 2012.

19.    On or about July 29, 2011, Plaintiff and BEITLER entered into that certain Loan Agreement wherein the parties agreed to, among other things: (i) consolidate the terms of the Agreement and the First Amendment to Agreement; (ii) cancel the Agreement and First Amendment to Agreement; and (iii) an additional advance by BEITLER on behalf of Plaintiff in the sum of $284,794.00 (the "Loan Agreement").

20.    Section 3 of the Loan Agreement provides in pertinent part, "[a]ll of the Advances, Additional Loans, and including any accrued and unpaid interest shall be paid in full by Bral to Beitler (collectively "Payment") on the thirty-first (31st) day of October, 2012, and no later[.]"

21.    Section 9.1 of the Loan Agreement provides the percentage of Plaintiff's membership interest in WESTCLIFF to be transferred to BEITLER in the event Plaintiff failed to pay the sums advanced "shall be determined by the fraction of which: (a) the numerator is the amount of the Advances, Additional Loans, if any, and accrued unpaid interest outstanding as of the Maturity Date less any payments made by Bral against Advances, Additional Loans and Interest; and (b) the denominator is the FMV less any Debt, as defined in Section 9.1.2 below, and said fraction shall be multiplied

EXHIBIT "2"
Page 43

against the FMV to determine the percentage from Bral's Westcliff Membership Interest to be transferred to Beitler."

22.     Section 9 of the Loan Agreement provides in pertinent part: "[i]n the event that a Default shall occur hereunder and said Default shall continue after any applicable Cure Period, Bral does hereby, as of the effective date of the Default, irrevocably grant, assign and convey to Beitler all right, title and interest in and to that percentage of Bral's Westcliff Membership Interest (as described in Section 9.1) equal to the obligation and liability by Bral to Beitler hereunder ("Assignment")."

23.     Approximately $500,000 remains due to BEITLER under the Loan Agreement.

24.     Accordingly, BEITLER is required to accept all right, title and interest in and to that percentage of Plaintiff's WESTCLIFF membership interest (as described in Section 9.1 of the Loan Agreement) in full satisfaction of the obligation and liability by Plaintiff to BEITLER under the Loan Agreement.

## FIRST CAUSE OF ACTION
### Involuntary Dissolution of Limited Liability Company
### (Against All Defendants)

25.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

26.     Plaintiff, BEITLER and BOYD are the sole members of WESTCLIFF.

27.     Dissolution of WESTCLIFF is reasonably necessary for the protection of the rights and interests of Plaintiff.

28.     The management of WESTCLIFF is deadlocked.

29.     BEITLER, who has co-managed WESTCLIFF, has persistently mismanaged and abused his authority as the co-managing member of WESTCLIFF. Specifically, BEITLER agreed to the sale of the Property, however, he has refused and continues to refuse to execute the purchase agreement to the detriment of WESTCLIFF.

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

- 6 –

**COMPLAINT OF JOHN BRAL**

EXHIBIT "2"
Page 44

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

Moreover, BEITLER seeks to further encumber the Property by taking a loan against it and diminishing WESTCLIFF's assets without any business justification.

30.     For the reasons set forth herein, Plaintiff is entitled to an order dissolving WESTCLIFF and winding up its affairs.

## SECOND CAUSE OF ACTION
### Accounting
### (Against All Defendants)

31.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

32.     As a member of WESTCLIFF, Plaintiff is entitled to an accounting of the company's business and in particular of all revenues and expenses of the company from its formation to the date of the accounting. Plaintiff is also entitled to an order that Defendants, and each of them, hold all assets of the company as constructive trustees for Plaintiff's benefit to the extent of Plaintiff's ownership interest in WESTCLIFF.

## THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against BEITLER)

33.     Plaintiff re-alleges and hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

34.     At all relevant times, BEITLER acted as the co-managing member of WESTCLIFF. As a member of WESTCLIFF and the co-manager, BEITLER owed and owes fiduciary duties of trust, loyalty, good faith and due care to Plaintiff, as a fellow member of WESTCLIFF, including the duty to avoid acting to obtain an advantage in the affairs of WESTCLIFF by any misconduct, misrepresentation, concealment, threat or adverse pressure of any kind.

35.     In or around October 2013, BEITLER breached his fiduciary duties to Plaintiff by: agreeing to the sale of WESTCLIFF's sole asset, yet refusing to execute the

EXHIBIT "2"
Page 45

purchase agreement; and seeking to further encumber WESTCLIFF's sole asset by taking a loan against the property and diminish WESTCLIFF's assets without any business justification.

36.     Plaintiff is informed and believes, and thereupon alleges that BEITLER intends to retain the proceeds of the proposed loan against the Property for himself and leave both WESTCLIFF and Plaintiff with a property for which little to no equity exists.

37.     As the co-managing member of WESTCLIFF, BEITLER owed to Plaintiff a fiduciary duty to make the fullest disclosure of all material facts concerning WESTCLIFF. BEITLER failed to act in the best interest of WESTCLIFF by refusing to execute the purchase agreement in connection with the Property and by attempting to further encumber the asset by taking a loan against the Property without any proper business justification.

38.     As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff has been damaged in that WESTCLIFF's will not benefit from the sale of the Property, and Plaintiff has and will incur substantial legal fees in connection with this action, all in amounts according to proof at trial.

39.     BEITLER's breaches of his fiduciary duties to Plaintiff were willful and malicious, done in conscious derogation of Plaintiff's rights, and done with the specific intention to damage Plaintiff. Plaintiff is therefore entitled to an award of punitive damages against BEITLER, in amounts sufficient to punish him and make an example of him.

<u>FOURTH CAUSE OF ACTION</u>
**Declaratory Relief**
**(Against BEITLER)**

40.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

///

- 8 -
**COMPLAINT OF JOHN BRAL**

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

41.    An actual controversy has arisen and now exists between Plaintiff and BEITLER concerning BEITLER's acceptance of Plaintiff's membership interest in WESTCLIFF pursuant to the Loan Agreement in full satisfaction of the obligations of Plaintiff to BEITLER thereunder.

42.    Under the Loan Agreement, the financial obligation and liability by Plaintiff to BEITLER became due and owing on October 31, 2012. As of this date, approximately $500,000 remains due to BEITLER under the Loan Agreement.

43.    Section 9 of the Loan Agreement provides in pertinent part: "[i]n the event that a Default shall occur hereunder and said Default shall continue after any applicable Cure Period, Bral does hereby, as of the effective date of the Default, irrevocably grant, assign and convey to Beitler all right, title and interest in and to that percentage of Bral's Westcliff Membership Interest (as described in Section 9.1) equal to the obligation and liability by Bral to Beitler hereunder ("Assignment")."

44.    Unless all of the respective rights, duties, and obligations of the parties arising out of the Loan Agreement are determined in a single proceeding, a multiplicity of actions will result, subjecting Plaintiff to multiple expenses and the risk of irreparable damage and injury from prosecuting or defending such multiple actions, with the attendant risk of mutually exclusive or inconsistent results.

45.    This Court should therefore determine those several rights, duties, and obligations of the parties concerning the Loan Agreement, and issue a declaration setting forth the obligation of BEITLER to accept all right, title and interest in and to that percentage of Plaintiff's WESTCLIFF membership interest (as described in Section 9.1 of the Loan Agreement) equal to the obligation and liability by Plaintiff to BEITLER under the Loan Agreement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a Trial by Jury on all Causes of Action and claims

-9-
**COMPLAINT OF JOHN BRAL**

EXHIBIT "2"
Page 47

asserted herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

**On the First Cause of Action:**

    1.    For a decree for the winding up and dissolution of WESTCLIFF;

    2.    That the court entertain such proceedings as may be necessary or proper for the involuntary winding up or dissolution of WESTCLIFF company and, in that regard, make such orders for winding up and dissolution of WESTCLIFF as justice and equity require;

**On the Second Cause of Action:**

    3.    An accounting of all WESTCLIFF's financial matters from its inception to the date of the accounting;

    4.    For the Imposition of a constructive trust on all assets of WESTCLIFF for Plaintiff's benefit to the extent of Plaintiff's ownership interest in WESTCLIFF;

**On the Third Cause of Action:**

    5.    For compensatory damages according to proof;

    6.    For punitive damages according to proof;

**On the Fourth Cause of Action:**

    7.    For an order declaring that Section 9 of the Loan Agreement is valid and enforceable and that BEITLER must accept all right, title and interest in and to that percentage of Plaintiff's WESTCLIFF membership interest (as described in Section 9.1 of the Loan Agreement) equal to the obligation and liability by Plaintiff to BEITLER under the Loan Agreement;

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

- 10 –
**COMPLAINT OF JOHN BRAL**

EXHIBIT "2"
Page 48

**On All Causes of Action:**

8. For attorney's fees and costs of suit incurred herein; and

9. For such other and further relief as the Court deems just and proper.

SAMINI SCHEINBERG, PC

Date: November 15, 2013

By: _____

Bobby Samini, Esq.
Nicole C. Prado, Esq.
Attorneys for Plaintiff,
JOHN BRAL

ASG SAMINI LAW GROUP, LLP
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

– 11 –
COMPLAINT OF JOHN BRAL



1 Bobby Samini, Esq. (SBN 181796)
2 Nicole C. Prado, Esq. (SBN 269833)
SAMINI SCHEINBERG, PC
3 949 South Coast Drive, Suite 420
4 Costa Mesa, California 92626
Telephone: (949) 724-0900
5 Facsimile: (949) 724-0901
6
7 Attorneys for Plaintiff,
JOHN BRAL
8

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
02/06/2014 at 11:30:00 AM
Clerk of the Superior Court
By James M Haines,Deputy Clerk

9 SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

11

12 JOHN BRAL, an individual,

13 Plaintiff,

CASE NO.: 30-201300688658-CU-MC-CJC

14 vs.

NOTICE OF CASE MANAGEMENT
CONFERENCE

15 WESTCLIFF INVESTORS, LLC, a
California limited liability company;
16 BARRY BEITLER, an individual; BETSY
BOYD, an individual; and DOES 1
17 through 50, inclusive,

Date: April 4, 2014
Time: 8:30 a.m.
Dept.: CX103

18 Defendants.

19

20

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

- 1 -
NOTICE OF CASE MANAGEMENT CONFERENCE

SAMINI SCHEINBERG, PC
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949) 724-0900

EXHIBIT "2"
Page 50

1    TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that the Court has set a Case Management Conference

3    in the above-entitled matter for April 4, 2014 at 8:30 a.m., in Department CX103 of the

4    Orange County Superior Court, Central Justice Center.

5                                        SAMINI SCHEINBERG, PC

6
Date: February 6, 2014          By:
7                                        Bobby Samini, Esq.
8                                        Nicole C. Prado, Esq.
                                         Attorneys for Plaintiff,
9                                        JOHN BRAL

10

11    4829-0230-4024, v. 1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SAMINI SCHEINBERG, PC**
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949) 724-0900

– 2 –
**NOTICE OF CASE MANAGEMENT CONFERENCE**

**PROOF OF SERVICE**

STATE OF CALIFORNIA        )
                           )   SS:
COUNTY OF LOS ANGELES      )

   I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 949 South Coast Drive, Suite 420, Costa Mesa, California 92626. On , February 6, 2014 I served the within **NOTICE OF CASE MANAGEMENT CONFERENCE**, on the interested parties in said action by placing ___ the original   **X**   a true copy thereof, enclosed in a sealed envelope and addressed as follows:

> Tom Lallas, Esq.
> Levy, Small & Lallas
> 815 Moraga Drive
> Los Angeles, CA  90049
> Telephone: 310-471-3000
> Fax: 310-471-7990
> tlallas@lsl-la.com

**X** BY UNITED STATES MAIL,  I am "readily familiar" with the practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited in a box or other facility regularly maintained by the United States Postal Service with First-Class postage thereon fully prepaid that same day at Newport Beach, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___ BY FACSIMILE TRANSMISSION, I caused the above-referenced document(s) to be transmitted to the above-listed addressee(s).

___ BY PERSONAL SERVICE, I caused to be delivered such envelope by hand to the offices of the addressee.

**X** State - I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

___ Federal - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Dated:  February 6, 2014

_Deborah Cartee_
Deborah Cartee

*Left margin:*
SAMINI SCHEINBER, PC
949 South Coast Drive, Suite 420
Costa Mesa, California 92626
Tel. (949)724-0900

-3-
**NOTICE OF CASE MANAGEMENT CONFERENCE**

**EXHIBIT 2**

# EXHIBIT 2

1  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
2  TOM LALLAS (SBN 66512)
   815 Moraga Drive
3  Los Angeles, California  90049-1633
   Telephone:    (310) 471-3000
4  Facsimile:    (310) 471-7990

5  Attorneys for Petitioner
   BARRY A. BEITLER

6

7

8                                           **FAX FILING**

9

10         SUPERIOR COURT OF THE STATE OF CALIFORNIA

11            FOR THE COUNTY OF LOS ANGELES

12                                    BS146302

13

14  BARRY A. BEITLER, an individual,        Case No. _____

15                       Petitioner,

        vs.
16                                           **PETITION TO DESIGNATE AND**
    JOHN BRAL, an individual,                **APPOINT A RETIRED PRIVATE**
17                                           **JUDGE FROM JAMS-LOS ANGELES**
                         Respondent.         **TO ADJUDICATE DISPUTE**
18

19

20

21

22

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

PETITION TO DESIGNATE AND APPOINT A RETIRED PRIVATE JUDGE
FROM JAMS-LOS ANGELES TO ADJUDICATE DISPUTE

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 05 2013

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

Petitioner Barry A. Beitler ("Petitioner") alleges as follows:

1.       Petitioner is now, and at all times material hereto has been, a resident of, and doing business in, the County of Los Angeles, State of California.

2.       Respondent John Bral ("Respondent") is now, and at all times material hereto has been, doing business in the county of Los Angeles, State of California.

3.       At various times, Petitioner and Respondent formed several specific purpose entities ("SPE") to hold, operate and manage real estate investments. From time to time, several of the SPEs required additional capital. Respondent was without sufficient funds to contribute additional capital. Accordingly, Petitioner, at Respondent's request, either loaned money to Respondent, or on Respondent's behalf made payments directly to the various SPE or to third parties on behalf of the SPEs (collectively "Loans"). The Loans by Petitioner to Respondent were memorialized in the written agreement between them dated July 29, 2011 ("July 2011 Agreement"), a true and correct copy of which is attached as Exhibit 1 hereto and incorporated herein by reference. The July 2011 Agreement documented Loans from Petitioner to Respondent, commencing on February 23, 2011, April 11, 2011, July 29, 2011 and prospectively for August and September of 2011. The principal amount of the Loans established by the July 2011 Agreement is in the amount $515,396.48, exclusive of interest.

4.       In or about September 2013, Petitioner demanded payment of the Loans from Respondent. Petitioner advised Respondent that he would not accept an assignment of Respondent's membership interest in Westcliff in lieu of payment. Moreover, the rate of interest for each of the Loans, originally stated in the July 2011 Agreement as eight percent (8%) was subject to the "Interest Conversion" to ten percent (10%) under Paragraph 4.1 of the July 2011 Agreement. Further, Respondent is required to contribute a proportionate share of any origination cost. Notwithstanding Petitioner's demand for payment and Respondent's promise to make payment, Respondent has not paid the Loans, or any part thereof, to Petitioner. Petitioner is informed and believes, and upon such information and belief alleges, that Respondent disputes the amount owed by virtue of the Loans and the application of the Interest Conversion. Moreover, the

PETITION TO DESIGNATE AND APPOINT A RETIRED PRIVATE JUDGE
FROM JAMS-LOS ANGELES TO ADJUDICATE DISPUTE

1  failure of Respondent to pay the sum owed to Petitioner has caused Petitioner other damages to

2  which Petitioner herein seeks indemnification for such damages.

3      5.      Paragraph 14 of the July 2011 Agreement provides that:

> 14. <u>Dispute</u>. In the event that there is any dispute demand, claim, charge or disagreement (collectively, "Dispute") between Bral and Beitler regarding any matter or thing related to, arising out of or connected to this Agreement, the Parties agree that such Dispute shall be fully and finally adjudicated and determined by a private judge trial, before a retired Los Angeles County Superior Judge mutually selected by Bral and Beitler and held in the County of Los Angeles. If Beitler and Bral cannot agree to the selection of a retired judge, either Beitler or Bral may petition the Los Angeles Superior Court to designate and appoint a retired private judge from JAMS-Los Angeles Offices to be the trial judge and the appointment by the Court of a retired private judge from JAMS-Los Angeles Offices shall be binding. Each Party shall equally share all costs of the retention of the retired judge, as and when such costs occur. Notwithstanding the foregoing, either Party may petition the Los Angeles Superior Court for any equitable or extraordinary relief in the event of any exigent circumstance related to this Agreement. Beitler and Bral agree that the prevailing party in any legal proceeding to enforce any of the terms and conditions of this Agreement, including from a private trial, shall be awarded reasonable attorneys' fees, costs and other expenses related to the legal proceeding.

6.      Paragraph 27 of the July 2011 Agreement provides that:

> 27. <u>Venue</u>. Each of the Parties hereto irrevocably submits to the exclusive jurisdiction of the courts of the State of California, Los Angeles County for the purposes of any law suit or legal proceeding seeking relief of any kind before a court to adjudicate or determine any issue or matter arising out of this Agreement ("Action"). Each of the Parties hereto irrevocably and unconditionally waives any objection to the laying of venue of any Action arising out of this Agreement or any transaction contemplated hereby in the courts of the State of California, Los Angeles County, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such Action brought in any such court has been brought in an inconvenient forum.

7.      The Loans, transactions, and events alleged in paragraphs 3 and 4 of this Petition constitute Disputes under the July 2011 Agreement.

8.      On or about November 20, 2013, Petitioner breached the July 2011 Agreement in that Petitioner filed a Superior Court Action in the Orange County Superior Court (the "OCSC Action") in violation of the July 2011 Agreement, and the subject matter of the OCSC Action is a

2

1   Dispute between Petitioner and Respondent regarding, related to, arising out of, or connected with,

2   the July 2011 Agreement, among other things.

3        9.      Petitioner and Respondent cannot agree to the selection of a retired judge as

4   required by Paragraph 14 of the July 2011 Agreement because Respondent has preemptively filed

5   the OCSC Action in violation of the July 2011 Agreement, in an attempt to prevent the

6   appointment of a retired judge affiliated with JAMS to adjudicate and preside at a trial of the

7   Disputes between Petitioner and Respondent under the July 2011 Agreement.

8        10.     Petitioner is entitled to an order from the Los Angeles County Superior Court

9   designating and appointing a retired private judge from JAMS-Los Angeles to be the trial judge

10  with respect to the Disputes.

11       11.     Paragraph 17 of the July 2011 Agreement provides that:

12          17. Indemnity and Expenses.  Bral shall indemnify, defend and save and
            hold harmless Beitler from and against any and all claims, damages,
13          losses, causes of action, demands, liabilities or judgments (including
            reasonable attorneys' fees, costs and expenses) which may be incurred or
14          sustained by Beitler arising out of or in connection with this Agreement,
            Bral's indemnification and holding harmless of Beitler shall not absolute
15          and in the event that Beitler is directly negligent or engages in intentional
            willful misconduct, Beitler shall be proportionally responsible for any
16          such negligent conduct and in the case of intentional conduct, Bral shall
            have no obligation under this Section.
17

18

19       12.     Petitioner is entitled to an award of attorney's fees incurred in the filing and

20  prosecution of this Petition pursuant to paragraphs 14 and 17 of the July 2011 Agreement.

21

22       WHEREFORE, Petitioner prays as follows:

23       1.      That the Los Angeles County Superior Court designate and appoint a retired private

24  judge from JAMS-Los Angeles to be the trial judge for the trial of any and all Disputes between

25  Petitioner and Respondent under the July 2011 Agreement.

26       2.      For reasonable attorneys' fees incurred by Petitioner in this matter.

27       3.      For costs of suit.

28

4.    For such other and further relief as the Court may deem just and appropriate.


DATED:  December 5, 2013                    LEVY, SMALL & LALLAS


                                            By: _____ /GS
                                                 TOM LALLAS
                                            Attorneys for Petitioner
                                            BARRY A. BEITLER

30097-1

4

**PETITION TO DESIGNATE AND APPOINT A RETIRED PRIVATE JUDGE
FROM JAMS-LOS ANGELES TO ADJUDICATE DISPUTE**

# EXHIBIT "1"

## Agreement

This Agreement ("Agreement") is made as of this 29th day of July, 2011, by and between Barry A. Beitler ("Beitler") and John Bral ("Bral"). The Bral and the Beitler shall sometimes be individually referred to as "Party" and collectively as "Parties".

Recitals:

A.      Bral owns all right, title and interest in and to forty-seven and one-half percent (47.5%) membership interest in and to Westcliff Investors, LLC, a California limited liability company ("Westcliff") ["Bral's Westcliff Membership Interest"].

B.      Beitler owns all right, title and interest in and to forty-seven and one-half percent (47.5%) membership interest in and to Westcliff ("Beitler's Westcliff Membership Interest").

C.      Westcliff is a single purpose entity and owns all right, title and interest in and to that certain real property commonly known as 1901 Westcliff Drive, Newport Beach, California 92660 ("Westcliff Property").

D.      On or about February 23, 2011, Beitler and Bral entered into an agreement ("February Agreement") where Beitler loaned to Bral the principal sum of One Hundred and Five Thousand One Hundred Eight Dollars and Eighty-Two Cents ($105,108.82) ["February Advance"] for Bral's share of his additional capital contribution to Ocean View Medical Investors, LLC, a California limited liability company ("Ocean") in order to bring current that certain loan between Ocean and First California Bank, otherwise known as loan number 0002019479 ("FCB Loan"). Under the February Agreement, Beitler made the February Advance for Bral by direct deposit to Ocean.

E.      On April 11, 2011, Beitler and Bral amended the February Agreement ("April Amendment") under which Beitler further loaned to Bral the principal sum of Forty-Three Thousand Dollars ($43,000.00) ["April Advance"] for Bral's capital contribution of property taxes and mortgage payments for the underlying properties held by Ocean, Westcliff, and Mineral King Investors, LLC, a California limited liability company ("Mineral"), respectively. Under the April Amendment, Beitler made the April Advance for Bral by direct deposit to Ocean, Westcliff and Mineral, respectively, as set forth in Schedule "1" in the April Amendment. A true and correct copy of the April Amendment, which includes as an exhibit thereto a true and correct copy of the February Agreement, is appended hereto as Exhibit "A".

F.      Beitler has now agreed to loan to Bral additional money respectively, for, among other things, Bral's share of additional capital contributions related to the business of Ocean, Westcliff and Harbor Medical Investors, LLC ("Harbor"), and Bral's individual obligation under Mineral, or otherwise. The additional amount that Beitler has agreed to loan to Bral under this Agreement is as follows:

(i)      Twenty-Eight Thousand Four Hundred and Ninety Three Dollars ($28,493.00) for payment to Les Jakofsky regarding Mineral ("Jakofsky Obligation");

(ii)     Seventy-Five Thousand Dollars ($75,000.00) for payment to First California Bank credit line regarding Ocean (which Bral acknowledges having occured on June 17, 2011);

Page 1 of 11

*JB*      *BB*

**EXHIBIT** _____

EXHIBIT "2"
Page 61

(iii).    Nine Thousand Dollars ($9,000.00), previously paid by Beitler, for the estimated accrued interest paid on First California Bank credit line regarding Ocean dated on or about July 22, 2009; provided, however, this amount shall be adjusted to the actual amount of accrued interest paid by Beitler;

(iv)    Twenty-two Thousand Dollars ($22,000.00) for Bral's share of the monthly loan payment to First Citizens Bank regarding Ocean made on June 1, 2011 and July 1, 2011, which matches Beitler's exact contribution made to Ocean;

(v)    Nineteen Thousand Dollars ($19,000.00) for Bral's share of the monthly loan payment to Commercial Bank regarding Mineral made on June 1, 2011 and July 1, 2011, which matches Beitler's exact contribution made to Ocean;

(vi)    Fifty Thousand Dollars ($50,000) for Bral's contribution for the commencement of construction on the property held by Ocean;

(vii)    Sixty One Thousand Dollars ($61,301.00) for Bral's contribution for Ware Malcomb obligation regarding Harbor; and

(viii)    Twenty Thousand Dollars ($20,000) to Siegel & Co for Bral's share of contribution to Mineral's common area maintenance charge.

The aforementioned in Recital F (i) – (viii), inclusive, is in the aggregate the principal sum of Two Hundred and Eighty Four Thousand Seven Hundred and Ninety Four Dollars ($284,794.00) ["July Advance"] subject to paragraphs (iii) and (vii) above for any adjustments.

G.    Beitler shall advance on behalf of Ocean in August and September 2012, the amount of the monthly loan payment due to First Citizens Bank as and when due ("Ocean Loan Payments"), and one-half (½) of the amount of the Ocean Loan Payments shall be an Additional Loan (as defined by the capitalized term in Recital H below) from Beitler to Bral, which Bral agrees shall be subject to all of the terms and conditions of this Agreement as an Additional Loan.

H.    Beitler shall advance on behalf of Mineral in August and September 2012, the amount of the monthly loan payment due to Commercial Bank as and when due ("Mineral Loan Payments"), and one-half (½) of the amount of the Mineral Loan Payments shall be an Additional Loan (as defined by the capitalized term in Recital H below) hereunder from Beitler to Bral, which Bral agrees shall be subject to all of the terms and conditions of this Agreement as an Additional Loan.

I.    Beitler and Bral desire to consolidate all of the terms and conditions of the February Advance, April Advance and the July Advance (collectively, the "Advances") under a single integrated agreement and to provide terms and conditions for any additional money that Beitler may subsequently loan to Bral regarding Ocean, Westcliff, Mineral and Harbor, or otherwise ("Additional Loan" or "Additional Loans"), which shall be subject to the terms and conditions of this Agreement.

Now, Therefore, in consideration of the above premises and the mutual covenants herein, and for good and other valuable consideration, the receipt and sufficiency of which is herein acknowledged, the Parties hereto hereby agrees as follows:

1.    Recitals.  The above Recitals A through I, inclusive, are hereby incorporated by this

JB      BB

reference in full and made part of this Agreement as if set forth herein.

2.    **Cancelation.** The Parties, and each of them, agree that upon execution of this Agreement both the February Agreement and the April Amendment shall be cancelled and rendered irretrievably and absolutely void ab initio, and all obligations and liabilities related to, arising under or connected to both the February Agreement and April Amendment shall be exclusively controlled, determined and totally subsumed under and by this Agreement.

3.    **Maturity Date of Advances.** All of the Advances, Additional Loans, and including any accrued and unpaid interest shall be paid in full by Bral to Beitler (collectively "Payment") on the thirty-first (31st) day of October, 2012, and no later ("Maturity Date"). The Parties acknowledge and agree that time is of the essence.

4.    **Interest on Advances and Additional Loans.** Each of the loans consisting of the Advances and Additional Loans, as may be the case, shall accrue interest as follows: (i) from the date each loan was made interest shall accrue at the fixed rate of eight percent (8%) per annum, non-compounding ("Interest") until each loan consisting of each of the Advances is paid in full, unless otherwise expressly provided for herein; and (ii) Interest shall be calculated based upon a 365-day year.

    4.1    **Adjustment to Interest Rate.** At any time prior to the Maturity Date, if any circumstances shall occur that will require Beitler to borrow funds ("Unrelated Beitler Loan") and if the rate of interest resulting from an Unrelated Beitler Loan is higher than the Interest under this Agreement, Beitler shall give written notice to Bral of the interest rate under the Unrelated Beitler Loan accompanied by the Unrelated Beitler Loan documents as an evidence and the Interest hereunder shall change to the corresponding rate under the Unrelated Beitler Loan, commencing from the date of the Unrelated Beitler Loan ("Interest Conversion"). The Interest Conversion shall be concurrently adjusted as the interest of the Unrelated Beitler Loan is adjusted and shall continue during the term of the Unrelated Beitler Loan until payment in full of: (i) the Advances, Additional Loans, including Interest or otherwise; or (ii) the Unrelated Beitler Loan, whichever is first to occur. Bral agrees and acknowledges that the Interest Conversion is intended to be an indemnification by Bral of Beitler for any change in the rate of interest that Beitler may incur because of the unavailability of personal funds related to Beitler's commitment to Bral hereunder. Notwithstanding anything to the contrary herein, the Interest Conversion shall not exceed ten percent (10%) and actual points and costs arising out of the Unrelated Beitler Loan.

    4.2    **Usury Limitation.** Bral agrees and acknowledges to pay, and has contracted with Beitler to pay under this Agreement, an effective rate of interest, subject to Section 4.1 above. Nothing in this Agreement will be construed as a violation of any usury laws that may be enacted from time to time in the State of California. If Beitler receives an amount that would exceed any usury limits, all amounts that would be excessive interest will be applied as a reduction in the unpaid principal balance and, if a surplus still remains, all amounts will be remitted by Beitler to Bral. To the extent that Bral is legally capable of doing so, Bral agrees that the only relevant usury laws are the laws of the State of California in effect on the date of this Agreement. To the extent permitted by law, Bral irrevocably waives any claim or defense of usury related to this Agreement.

    4.3    **Payment of Interest.** Notwithstanding anything to the contrary hereunder, Bral shall not be obligated to pay Beitler any Interest until the Maturity Date, provided, however, in the event that Ocean, Westcliff, Mineral and Harbor, or any of them (collectively, "LLC Entities"), shall cause a cash distribution to be issued to Bral as a result of his membership in any

Page 3 of 11



JB          BB

EXHIBIT "2"
Page 63

of the LLC Entities, each such cash distribution shall be assigned in full by Bral to Beitler, and applied against interest owed, starting with interest on the oldest outstanding loan made by Beitler to Bral among the Advances and Additional Loans, and once all of the interest is paid in full, then applied to principal against the Advances and Additional Loans.

5.   **Preferential Payment.**  Bral agrees that to the extent that he makes, or causes to be made, any payment to Beitler, which shall also include and mean any assignment of Bral's Westcliff Membership Interest as provided for under this Agreement, as the case may be, and such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, or required to be repaid by Beitler, or person or entity to whom such payment was made on behalf of Bral, or paid over to a trustee, receiver, or any other entity, whether under any bankruptcy act or otherwise (collectively, "Preferential Payment"), any payment made hereunder, which is set aside as a Preferential Payment will be reinstated, or revived as if not made in the first instance and the underlying obligation or liability related to such payment shall be due and owing, and continued in full force and effect.

6.   **Default.**  Bral shall be deemed to be in default under this Agreement if any of the following shall occur:  (i) Bral fails to make payment in full, including the amount of the Advances, Additional Loans, Interest or other charges, as may be the case, as of the Maturity Date; (ii) if Bral at any time files a voluntary bankruptcy or is subject to any involuntary insolvency proceeding, whether under Federal or State law; (iii) any transfer of assets by Bral to prejudgment writ of attachment, protective order, writ of attachment, levy, garnishment, any seizure of Bral's assets, and/or appointment of receiver involving any right, title and interest in or to any property of any kind of Bral's in excess of Twenty Thousand Dollars ($20,000.00); and/or (v) the dissolution, merger, consolidation or reorganization of Westcliff (collectively, "Default").

6.1   **Cure of Default.**  Except for a monetary default under Section 7(i), Bral shall have thirty (30) calendar days in which to cure any Default ("Cure Period"). There shall be no Cure Period in the event of a monetary Default. No notice by Beitler to Bral shall be required in order to trigger the Cure Period. The Cure Period shall immediately commence upon the occurrence of a Default.

6.2   **Acceleration.**  In the event of any uncured Default, any or all of the Advances, Additional Loans, including any accrued and unpaid Interest due under this Agreement shall, at the sole, absolute and unfettered discretion of Beitler, become immediately due and payable without any notice of any kind required by the Beitler. Further, if Beitler shall elect to exercise his rights under the Assignment in Section 10 hereunder, such rights shall also immediately accelerate and that percentage of Bral's Westcliff Membership Interest due Beitler shall be assigned and transferred to Beitler as provided in Section 10.

6.3   **Application of Payments.**  All payments made by Bral under this Agreement will be applied: (i) first, to interest that is due and payable against the oldest of the outstanding loans constituting the Advances, and Additional Loans as may be the case, made by Bral to the most current; and (ii) second, against the aggregate principal amount of the Advances and Additional Loans as may be the case.

7.   **Mutual of Omaha Bank Appraisal and Loan.**  The Parties are currently arranging take out financing of Westcliff's current loan through Mutual of Omaha Bank ("MOB"). MOB, through Colliers International, is conducting an independent appraisal of the Westcliff Property in underwriting its loan ("Appraisal").  Notwithstanding whether or not the MOB loan is made,

Page 4 of 11

EXHIBIT "2"
Page 64

Beitler and Bral agree that the Appraisal shall determine the value of the Westcliff Property under this Agreement. If the Appraisal provides for a specific summary or single valuation including credit for the excess land and future development, then such valuation shall serve as the fair market value ("FMV") of Westcliff. If the Appraisal shall provide multiple alternative valuations of the Westcliff Property, and no specific value is elected by the Appraiser, then in the case of alternative valuations, the highest valuation shall serve as the FMV.

8.      **Take Out Financing By MOB.** In the event that MOB or any substitute lender shall underwrite a loan for Westcliff and that loan shall allow for excess funding after payoff of the Citizens Business Bank loan ("Excess Cash"), then Bral and Beitler agree to use the Excess Cash in order of priority as follows: (i) for the development of Westcliff, if required; and (ii) subject to the mutual agreement of Beitler and Bral. Notwithstanding anything to the contrary, it is agreed by Bral and Beitler that a portion of the Excess Cash will be used to pay the Ocean Loan Payments and Mineral Loan Payments.

9.      **Assignment.** In the event that a Default shall occur hereunder and said Default shall continue after any applicable Cure Period, Bral does hereby, as of the effective date of the Default, irrevocably grant, assign and convey to Beitler all right, title and interest in and to that percentage of Bral's Westcliff Membership Interest (as described in Section 9.1) equal to the obligation and liability by Bral to Beitler hereunder ("Assignment"). The Assignment shall be effective immediately on the first to occur: (i) any monetary default; (ii) any non-monetary default after the Cure Period; or (iii) the Maturity Date. No further act or condition of any kind or type is required by Beitler, should Bral not pay in full to Beitler the Advance, any Additional Loans and Interest.

9.1      **Calculation of Percentage of Bral's Westcliff Membership Interest Transferred.** The percentage of Bral's Westcliff Membership Interest to be transferred to Beitler shall be shall be determined by the fraction of which: (a) the numerator is the amount of the Advances, Additional Loans, if any, and accrued unpaid Interest outstanding as of the Maturity Date less any payments made by Bral against Advances, Additional Loans and Interest; and (b) the denominator is the FMV less any Debt, as defined in Section 9.1.2 below, and said fraction shall be multiplied against the FMV to determine the percentage from Bral's Westcliff Membership Interest to be transferred to Beitler. For example, if (a) is equal to $100,000 (assuming Advances and Interest in such amount) and (b) is equal to $500,000 (assuming a FMV of $700,000 less debt of $200,000), the fraction of 1/5th of all the membership interest in Westcliff is transferred from Bral's Westcliff Membership Interest to Beitler. Accordingly, under the hypothetical the following will occur:

         (i) 1/5th of all the membership interest in Westcliff is equal to $100,000;

         (ii) Bral's Westcliff Membership Interest is equal to $237,500, which is the product of 47.5% multiplied by $500,000;

         (iii) Bral shall assign and transfer to Beitler the fraction of which (a) the numerator is $100,000; and (b) the denominator is $237,500, which shall result in the percentage of membership interests in Westcliff to be transferred and assigned from Bral's Westcliff Membership Interest to Beitler;

         (iv) the percentage of $100,000 of $237,500, or $100,000 divided by $237,500 is 0.4210%, and .4210% from Bral's Westcliff Membership Interest will be assigned and transferred to Beitler;

<div align="center">Page 5 of 11</div>



JB          BB

(v)  accordingly, .4210 x 47.50% results in a transfer of 20% of the membership interest in Westcliff from Bral's Westcliff Membership Interest to Beitler and, therefore, Beitler's membership interest in all of the membership interest in Westcliff shall be increased by 20%, and Bral's remaining membership interest in Westcliff will be reduced from 47.50% to 27.50% of all of the membership interest in Westcliff, which is achieved by multiplying .5789 x 47.50%; and

(vi)  in summary Bral's remaining membership interest in Westcliff after the assignment and transfer to Beitler hereunder is 27.50% and Beitler's membership interest in Westcliff is increased from 47.50% to 67.50%.

9.1.1  Payment by Bral.  Any payment made by Bral against the Advances, Additional Loans, and Interest shall be expressly designated by Bral as a payment and delivered to Beitler.

9.1.2  Debt.  "Debt" shall mean that certain promissory note(s) made by Westcliff together with all indebtedness and liability secured by any existing or successor first deed of trust against the Westcliff Property. Beitler and Bral agree that Westcliff shall not incur any other debt against the Westcliff Property or Westcliff, unless mutually agreed to by Beitler and Bral.

9.2  Payment and/or Assignment to Beitler.  Notwithstanding anything to the contrary hereunder, any payment and/or the Assignment due Beitler, or any obligation or liability related to or arising under this Agreement, shall be made by Bral without any right of offset, reduction, counterclaim or recoupment regarding any other matter or thing between Beitler and Bral with regard to Bral's Westcliff Membership Interest.

9.3  Proceeds from Sale of Other Beitler/Bral Assets.  In the event that any of the LLC Entities or any other limited liability company in which Beitler and Bral are members has sold their assets, then any distribution made to Bral from the proceeds of each such sale shall be delivered to Beitler and applied as a payment as provided hereunder against the Advances, Additional Loans, and Interest, as may be the case.

9.4  [Intentionally Omitted].

10.  Conflict with Westcliff Operating Agreement.  To the extent that this Agreement shall in any way conflict with the terms and conditions of the Westcliff Operating Agreement, both Beitler and Bral agree that this Agreement shall serve as a written modification of the Westcliff Operating Agreement to permit the full performance of the intended purpose and actions provided for and contemplated by this Agreement.

11.  Ware Malcomb Payment.  As a condition for Beitler's transfer of the money included in the July Advance for the Ware Malcomb payment in Recital F(vii) hereunder, Bral agrees to obtain for the payment made to Ware Malcomb on behalf of Harbor, a promissory note by Harbor in favor of Bral providing for a rate of interest of eight percent (8%) and a maturity date no later than six (6) months from the date hereof and secured by a trust deed ("Bral Deed of Trust") granted and conveyed by Harbor to Bral securing full performance of the promissory note.  Bral agrees to immediately record the Bral Deed of Trust and should Bral be required to foreclose the Bral Deed of Trust, Beitler shall receive payment from the proceeds against the Advances and any accrued interest thereunder.

Page 6 of 11



JB              BB

EXHIBIT "2"
Page 66

12.    Beitler Appointed Attorney-in Fact. Bral's hereby irrevocably appoints Beitler as Bral's attorney-in-fact ("Attorney"), which appointment is coupled with an interest, with full authority in place and stead of Bral and in the name of Bral, to take the following action in Section 12.1 herein in the event that Bral fails to assign and transfer to Beitler that percentage of Bral's Westcliff Membership Interest as provided in Section 9.1 of this Agreement on or before the 35th day after which the Default has occurred ("Effective Date").

12.1    Power of Attorney. As of the Effective Date and subject to the condition that Bral has not assigned and transferred to Beitler that percentage of Bral's Westcliff Membership Interest as provided in Section 9.1 of this Agreement, Beitler shall have full authority and power under the Attorney to assign and transfer that percentage of Bral's Westcliff Membership Interest to Beitler as provided in Section 9.1 of this Agreement under the assignment form appended hereto as Exhibit "B" ("Assignment Form"). The percentage of membership interest to be transferred and assigned to Beitler under the Attorney shall not exceed that which is expressly permitted under Section 9.1. Notwithstanding anything to the contrary in this Agreement, the effective date of the assignment and transfer shall be the date of Default first occurring and not any subsequent date ("Assignment Date").

12.1.1    Termination of Power of Attorney. Beitler's power of Attorney shall terminate upon the first to occur:  (i) Payment in full by Bral to Beitler on or before the Maturity Date; (ii) the assignment and transfer from Bral to Beitler of the percentage of Bral's Westcliff Membership Interest to Beitler as provided in Section 9.1 of this Agreement; or (iii) December 31, 2011, unless otherwise extended in writing by mutal agreement of Beitler and Bral.

12.2    Assignment Form. Bral acknowledges, affirms and agrees that the Assignment Form shall be a sufficient form in which to fully and completely assign and transfer to Beitler that percentage of Bral's Westcliff Membership Interest from Bral to Beitler, and Beitler is authorized to sign Bral's name to the Assignment Form as his Attorney and to insert the Assignment Date. Bral further acknowledges and agrees that Assignment Form shall be in compliance with the transfer of a membership interest in Westcliff under the Westcliff Operating Agreement, or as amended ("Westcliff Operating Agreement"), and to the extent there is any conflict in the Westcliff Operating Agreement with this Agreement, this Agreement shall supersede and control between Bral and Beitler. Further, Bral hereby waives any right, claim or defense to object to the Assignment Form as being ineffective under the Westwood Operating Agreement in transferring and assigning to Beitler the Westcliff membership interests in this Agreement. Bral also acknowledges, affirms and agrees, that after any assignment and transfer to Beitler under this Section 12, Beitler shall enjoy all privileges and benefits of membership in Westcliff as of the Assignment Date with regard to the percentage membership interest transferred and assigned to Beitler under Section 9.1.

13.    Jakofsky.  Bral acknowledges and agrees that Beitler has no liability or obligation to Jakofsky and that the payment to Jakofsky is a separate and private matter between Bral and Jakofsky.

14.    Dispute.  In the event that there is any dispute demand, claim, charge or disagreement (collectively, "Dispute") between Bral and Beitler regarding any matter or thing related to, arising out of or connected to this Agreement, the Parties agree that such Dispute shall be fully and finally adjudicated and determined by a private judge trial, before a retired Los Angeles County Superior Judge mutually selected by Bral and Beitler and held in the County of Los Angeles.  If Beitler and Bral cannot agree to the selection of a retired judge, either Beitler or Bral may petition the Los Angeles Superior Court to designate and appoint a retired private judge from JAMS – Los

Page 7 of 11

EXHIBIT "2"
Page 67

Angeles Offices to be the trial judge and the appointment by the Court of a retired private judge from JAMS – Los Angeles Offices shall be binding. Each Party shall equally share all costs of the retention of the retired judge, as and when such costs occur. Notwithstanding the foregoing, either Party may petition the Los Angeles Superior Court for any equitable or extraordinary relief in the event of any exigent circumstance related to this Agreement. Beitler and Bral agree that the prevailing party in any legal proceeding to enforce any of the terms and conditions of this Agreement, including from a private trial, shall be awarded reasonable attorneys' fees, costs and other expenses related to the legal proceeding.

15.    Bral's Representations and Warranties. Bral represents and warrants as follows:

(a)    Bral is the legal and beneficial owner of all right, title and interest in and to the Pledged Shares, free and clear of any lien, security interest, option or other charge, encumbrance or restriction on the Bral Westcliff Membership Interest;

(b)    The Assignment creates a valid and perfected transfer of all right, title and interest to the Bral Westcliff Membership Interest; and

(c)    Bral has not entered into any agreement or promise to enter into any agreement granting any right, title or interest in and to the Bral Westcliff Membership Interest, including the right to create any lien, security interest, option, other charge, encumbrance, right to purchase or option to purchase the Bral Westcliff Membership Interest, or any part thereof, or the like.

16.    Restriction. Bral's Westcliff Membership Interest are hereby restricted and Bral has agreed that he shall not enter into any agreement regarding the sale, assignment or transfer of any right, title and/or interest in or to Bral's Westcliff Membership Interest, including any agreement or promise to enter into any agreement granting any right, title or interest in and to the Bral's Westcliff Membership Interest, including the right to create any lien, security interest, option, other charge, encumbrance, right to purchase or option to purchase the Bral's Westcliff Membership Interest, or any part therof, or the like.

17.    Indemnity and Expenses. Bral shall indemnify, defend and save and hold harmless Beitler from and against any and all claims, damages, losses, causes of action, demands, liabilities or judgments (including reasonable attorneys' fees, costs and expenses) which may be incurred or sustained by Beitler arising out of or in connection with this Agreement. Bral's indemnification and holding harmless of Beitler shall not be absolute and in the event that Beitler is directly negligent or engages in intentional willful misconduct, Beitler shall be proportionally responsible for any such negligent conduct and in the case of intentional conduct, Bral shall have no obligation under this Section.

18.    Authorization; Careful Consideration. Bral and Beitler do hereby represent and warrant the following: (i) they have independently and of their own free will executed this Agreement; (ii) that they have carefully and thoughtfully read this Agreement and understand the terms and conditions of said Agreement; (iii) that they have been granted sufficient time to consider and reconsider the execution of this Agreement; (iv) that they have been provided sufficient opportunity to withdraw from this Agreement; (v) that they are fully aware of the contents and legal effect of this Agreement; and (vi) that they have received legal advice from their respective counsel and no other with regard to any matter, thing or kind related to this Agreement; and (vii) that each of them have authority to execute this Agreement.

19.    Entire Agreement; Integration. This Agreement constitutes an integration of the entire

Page 8 of 11

JB        BB

understanding and agreement of the Parties with respect to the matters referred to in this Agreement. Any representation, promise or condition, whether written or oral, between the Parties with respect to the matters referred to in this Agreement which is not specifically incorporated into this Agreement, shall not be binding upon any of the Parties hereto and the Parties acknowledge that they have not relied, in entering in this Agreement, upon any representations, promises or conditions not specifically set forth in this Agreement. No prior oral or written understanding, or agreement between the Parties, with respect to the matters referred to in this Agreement, shall survive the execution of this Agreement. This Agreement represents the entire agreement and understanding of the Parties and no separate written or oral agreements exist. Finally, this Agreement is the product of negotiation among the Parties and shall not be construed adversely against any one Party, notwithstanding that any one Party shall be predominantly responsible for the drafting of this Agreement.

20.    **Rights Cumulative.** Except as set forth herein, all rights, powers and remedies herein are cumulative and not alternative, and are in addition to all statutes, rules of law; any forbearance or delay by any Party in exercising the same shall not be deemed to be a waiver thereof, and the exercise of any right or partial exercise thereof shall not preclude the further exercise thereof, and the same shall continue in full force and effect until specifically waived by an instrument in writing executed by such Party or Parties. Further, if there is a breach of this Agreement the delivery of Bral's Westcliff Membership Interest shall not be the exclusive remedy. For example only, since Beitler as the prevailing party may be entitled to a monetary award, the assignment and transfer to Beitler of Bral's Westcliff Membership Interest for any of the Advances, Additional Loans, and Interest shall not foreclose, waive or preempt Beitler from securing a monetary award for any attorneys' fees, costs and expenses in securing Bral's performance of this Agreement.

21.    **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

22.    **Severability.** If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, arbitrator shall modify this Agreement so as to affect the original intent of the parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the greatest extent possible.

23.    **Governing Law.** This Agreement is executed and delivered in Los Angeles and Irvine, California and shall be governed by and construed in accordance with the laws of the State of California.

24.    **Amendments; Modifications; Construction.** No amendment, modification or waiver of any provision of this Agreement shall be effective unless the same shall be set forth in a writing signed by all of the Parties hereto, and then only to the extent specifically set forth therein. This Agreement shall not be construed more strictly against one Party than the other by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that all of the Parties have contributed substantially and materially to the preparation of this Agreement.

25.    **Successors and Assigns.** Bral shall not assign or delegate any of their duties, obligations or liabilities under this Agreement. Any such assignment or delegation shall be null and void ab

Page 9 of 11



JB    BB

Beitler Bral Reconciliation Final 07 29 11
9:27 AM

initio. Beitler shall not assign or pledge this Agreement. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of each Party and their respective assigns, heirs and successors.

26.    **No Waivers by Implication.** No course of dealing on the part of any Party, or their respective agents, nor any failure or delay by any Party with respect to exercising any of their respective rights, powers or privileges under this Agreement or law shall operate as a waiver thereof. No waiver by any Party of any condition or the breach of any term, representation or warranty contained in this Agreement, whether by conduct or otherwise, in any one or more instances shall be deemed a further or continuing waiver of any condition or representation or warranty of this Agreement.

27.    **Venue.** Each of the Parties hereto irrevocably submits to the exclusive jurisdiction of the courts of the State of California, Los Angeles County for the purposes of any law suit or legal proceeding seeking relief of any kind before a court to adjudicate or determine any issue or matter arising out of this Agreement ("Action"). Each of the Parties hereto irrevocably and unconditionally waives any objection to the laying of venue of any Action arising out of this Agreement or any transaction contemplated hereby in the courts of the State of California, Los Angeles County, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such Action brought in any such court has been brought in an inconvenient forum.

28.    **Exclusion of Eye Street Medical Investors, LLC ("Eye Street") and Javahar Investors, LLC ("Java").** It is the intent of Beitler and Bral that the Assignment shall apply only to the that real property held by Westcliff commonly known as 1901 Westcliff, Newport Beach, California ("Westcliff Property"). Beitler and Bral agree that the Eye Street and Java shall be assigned from Westcliff to Beitler and Bral, individually.

28.    **Notices.** All notices, requests, demands, waivers and other communications required or permitted to be given under this Agreement will be in writing and will be deemed to have been duly given: (a) if delivered personally, on the date received, (b) if delivered by overnight courier or express mail, on the next business day after mailing, and (c) if certified mailed, postage prepaid, five days after mailing.,. Notice may be provided only if personally served, United States mail, or overnight courier or express mail. Any such notice will be sent as follows:

>      To:    Barry A. Beitler
>             Beitler Commercial Realty Service
>             825 South Barrington Avenue
>             Los Angeles, CA  90049
>
>             John Bral
>             Venture RE Group
>             2601 Main Street, Suite 560
>             Irvine, CA 92614

29.    **Exhibits; Schedules.** The Exhibits and schedules attached to this Agreement are incorporated herein and shall be considered a part of this Agreement for the purposes stated herein.

30.    **Further Assurance.** Each of the Parties shall, whenever and as often as shall be requested

Page 10 of 11



JB          BB

EXHIBIT "2"
Page 70

to do so by the others, cause to be executed, acknowledged or delivered any and all such further instruments and documents as may be necessary or proper, in the reasonable opinion of the requesting Party, to carry out the intent and purpose of this Agreement.

31.     Proper Construction.

(a)     The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties.

(b)     As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

(c)     The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions thereof.

Executed by the undersigned on the date first above written at Los Angeles, California.

Barry A. Beitler

7-27-2011

John Bral

Page 11 of 11

JB          BB

Beitler Bral Reconciliation Final 07 29 11
9:27 AM

**EXHIBIT 3**

# EXHIBIT 3

ADR-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Tom Lallas, Esq. (SBN 66512)<br>LEVY, SMALL & LALLAS<br>815 Moraga Drive<br><br>Los Angeles, CA 90049<br>TELEPHONE NO.: 310-471-3000   FAX NO. *(Optional):* 310-471-7990<br>E-MAIL ADDRESS *(Optional):* tlallas@lsl-la.com<br>ATTORNEY FOR *(Name):* Barry A. Beitler | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br>JAN 13 2015<br>Sherri R. Carter, Executive Officer/Clerk<br>By E. Garcia, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

STREET ADDRESS: 111 N. Hill Street

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles, CA 90012

BRANCH NAME: Central District

PETITIONER/PLAINTIFF: Barry A. Beitler, an individual

RESPONDENT/DEFENDANT: John Bral

| ORDER APPOINTING REFEREE | CASE NUMBER:<br>BS 146302 |
|---|---|

**THE COURT FINDS:**

FILED BY FAX

1. [X]   **Section 638 appointment.** A referee is properly appointed under Code of Civil Procedure section 638 because *(check one):*

   a. [ ]   all parties to the action have agreed to the appointment of a referee under section 638.

   b. [X]   the parties entered into a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee.

2. [ ]   **Section 639 appointment.** A referee is properly appointed under Code of Civil Procedure section 639 because *(check and complete a or b):*

   a. [ ]   **Discovery reference.** It is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation. *(Code Civ. Proc., § 639(a)(5). State the exceptional circumstances specific to the particular case that require the discovery reference, below or in Attachment 2a.)*

   b. [ ]   **Other reference.** *(Check one or more of the following statutory grounds and state the reason for the appointment below or in Attachment 2b.)*

      (1) [ ]   The trial of an issue of fact requires the examination of a long account. *(Code Civ. Proc., § 639(a)(1).)*

      (2) [ ]   The taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect. *(Code Civ. Proc,. § 639(a)(2).)*

      (3) [ ]   A question of fact, other than on the pleadings, has arisen by motion or otherwise. *(Code Civ. Proc., § 639(a)(3).)*

      (4) [ ]   It is necessary for the information of the court in a special proceeding. *(Code Civ. Proc., § 639(a)(4).)*

   c.   **Economic inability to pay.** *(Check one.)*

      (1) [ ]   No party has established an economic inability to pay a pro rata share of the referee's fees.

      (2) [ ]   One or more parties has established an economic inability to pay a pro rata share of the referee's fees and another party has agreed voluntarily to pay that additional share of the referee's fees. *(Complete item 5c(3)(b).)*

         (a) The following party has established an economic inability to pay a pro rata share of the referee's fee *(name each):*

         (b) The following party has agreed voluntarily to pay an additional share of the referee's fee *(name each):*

      (3) [ ]   The referee is being appointed at no cost to the parties.

Page 1 of 3

Form Approved for Optional Use<br>Judicial Council of California<br>ADR-110 [Rev. July 1, 2011]

**ORDER APPOINTING REFEREE**
**(Alternative Dispute Resolution)**

Legal Solutions Plus

Code of Civil Procedure, § 638 et seq.;
Cal. Rules of Court, rules 3.900–3.910,
3.920–3.927

**ADR-110**

| | |
|---|---|
| PETITIONER/PLAINTIFF: Barry A. Beitler, an individual | CASE NUMBER: |
| RESPONDENT/DEFENDANT: John Bral | BS 146302 |

## THE COURT ORDERS:

3. **Referee.** The following person is appointed as referee. *(The referee's signature indicating consent to serve and certification that he or she is aware of and will comply with the applicable provisions of canon 6 of the Code of Judicial Ethics and the California Rules of Court must be included in the proposed order appointing a referee under Code of Civil Procedure section 638 or attached to the order appointing a referee under section 639. See item 9.)*

   a. Name: *Hon. Joseph Biderman (Ret.)*

   b. Business address:

   c. Telephone number:

   d. [X] The referee is a member of the State Bar of California. *(Rules 3.903 and 3.923 of the California Rules of Court provide that a referee who is a former judicial officer must be an active or inactive member of the State Bar.)*

      (1) [ ] The referee's State Bar number is:

      (2) [ ] The referee's State Bar membership status is *(check one)*:

         (a) [ ] Active

         (b) [ ] Inactive

         (c) [ ] Other *(specify)*:

4. **Scope and subject matter of reference.** The referee is appointed as follows *(check and complete a or b)*:

   a. [X] **Section 638 appointment.** The referee is appointed under Code of Civil Procedure section 638 *(check and complete one)*:

      (1) [X] to hear and determine any or all of the issues in the action or proceeding, whether of fact or of law, and to report a statement of decision.that shall be final.

      (2) [ ] to ascertain the following facts necessary to enable the court to determine the action or proceeding *(state facts to be ascertained by referee below or in Attachment 4a)*:

   b. [ ] **Section 639 appointment.**

      (1) [ ] The following subject matter or matters are included in the reference *(describe the matter or matters the referee is ordered to consider below or in Attachment 4b)*:

      (2) [ ] **Section 639 discovery reference.**

         (a) [ ] The discovery referee is appointed for *(check one)*:

            (i) [ ] The discovery matters identified in (1) above.

            (ii) [ ] All discovery purposes in the action.

         (b) The referee is authorized to set the date, time, and place for all hearings determined by the referee to be necessary; direct the issuance of subpoenas; preside over hearings; take evidence; and rule on objections, motions, and other requests made during the course of the hearing.

5. **Referee's compensation.** *(Check and complete one of the following.)*

   a. [ ] **Uncompensated referee.** The referee will not be privately compensated by the parties.

   b. [X] **Compensation of section 638 referee.**

      (1) [X] The referee's fees will be paid as agreed by the parties.★

      (2) [ ] The parties have not agreed on the payment of the referee's fees and have requested that the matter be resolved by the court. The court orders that the referee's fees be paid as follows *(state the manner of payment determined by the court to be fair and reasonable below or in Attachment 5b)*:

★As provided in the parties' contract, the parties shall equally share all costs of the retention of the private judge, as and when such costs occur, subject to an award of costs to the prevailing party.

EXHIBIT "2"
Page 75

ADR-110

| PETITIONER/PLAINTIFF: Barry A. Beitler, an individual | CASE NUMBER: |
|---|---|
| RESPONDENT/DEFENDANT: John Bral | BS 146302 |

5. c. ☐  **Compensation of section 639 referee.**

    (1)  The maximum hourly rate that the referee may charge is *(specify):*

    (2)  ☐  The maximum number of hours for which the referee may charge is *(at the request of any party, state the maximum number of hours for which referee may charge):*

    (3)  ☐  The court orders that the referee's fees be paid or apportioned as follows and reserves jurisdiction to modify this order *(state fair and reasonable apportionment of reference costs below or in Attachment 5c):*

        (a)  ☐  All parties shall pay equal shares of the referee's fees.

        (b)  ☐  The parties shall pay equal shares of the referee's fees except that, based on the finding of economic inability set forth in item 2c(2):

            (i)  The following party is not required to pay any portion of the referee's fees *(name of each party excused from paying referee's fees):*

            (ii)  The following party shall pay the pro rata share of the referee's of the party identified in (i), in addition to his or her own share of the referee's fees *(name of each party who has agreed to pay an additional share of the referee's fees):*

        (c)  ☐  The referee's fees shall be paid as set forth in Attachment 5c.

    (4)  ☐  The court will subsequently determine how the referee's fees will be paid, under Code of Civil Procedure section 645.1(b). *(If the issue of economic hardship is raised before the services of a referee appointed under section 639 begin, the court must make a fair and reasonable apportionment of reference costs.)*

6. **Use of court facilities and court personnel.** Court facilities and court personnel *(check and complete one):*

    a.  ☒  may not be used without an order of the presiding judge. *(Court facilities and personnel may be used in proceedings before a privately compensated section 638 referee only upon a finding of the presiding judge that the use would further the interest of justice.)*

    b.  ☐  may be used as follows *(describe any authorized use of court facilities or court personnel if referee will not be privately compensated or is appointed under section 639):*

7. ☒  The reference will be conducted in a private facility. The clerk must post notice that the following person may be contacted to arrange attendance at any proceeding that is open to the public *(complete all of the following):*

    a.  Name:  Tom Lallas
    b.  Address:  815 Moraga Drive, Los Angeles, CA 90049
    c.  Telephone:  (310) 471-3000

8. **Referee's report.**

    a.  **Time of report.** The referee must report *(check and complete one):*

        (1)  ☒  In writing to the court within 20 days after the hearing, if any, has been concluded and the matter submitted.

        (2)  ☐  as follows *(specify other time and manner of reporting directed by the court):*

    b.  **Manner and contents of report.**

        (1)  ☒  **Section 638 referees.** The referee must report in the following manner agreed by the parties and approved by the court *(describe):*  The private judge shall submit a statement of decision setting forth the final adjudication and determination of the dispute and the grounds for the decision.

        (2)  ☐  **Section 639 referees.** The referee must file with the court a report that includes a recommendation on the merits of any disputed issue, a statement of the hours spent and the total fees charged by the referee, and the referee's recommended allocation of payment. The referee must serve the report on all parties.

9. **Certification of referee.** The undersigned consents to serve as referee as provided above and certifies that he or she is aware of and will comply with the applicable provisions of canon 6 of the Code of Judicial Ethics and the California Rules of Court.

_____
(TYPE OR PRINT NAME OF PROPOSED REFEREE)

Date:  Jan. 13, 2015

_____
(SIGNATURE OF PROPOSED REFEREE)

           _____
           JUDICIAL OFFICER

ADR-110 [Rev. July 1, 2011]                 **ORDER APPOINTING REFEREE**                 Page 3 of 3
                                            **(Alternative Dispute Resolution)**

## PROOF OF SERVICE

*Barry A. Beitler v. John Bral*
Los Angeles Superior Court, Case No. BS 146302

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles, California 90049.

On December 12, 2014, I served the foregoing document entitled: **ORDER APPOINTING REFEREE** on the interested parties in this action by placing a true copy thereof in sealed envelopes addressed as stated in the attached service/mailing list:

☒   **(BY FIRST CLASS MAIL)**

☒   I am "readily familiar" with the firm's practice for collection and processing of correspondence for mailing with the U.S. Postal Service. Per that practice the within correspondence will be deposited with the U.S. Postal Service on the same day shown on this affidavit in a sealed envelope with postage fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after date of deposit for mailing in this affidavit.

☒   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 12, 2014, at Los Angeles, California.

*Katie Finn*
Katie Finn

EXHIBIT "2"
Page 77

## SERVICE/MAILING LIST

*Barry A. Beitler v. John Bral*
Los Angeles Superior Court, Case No. BS 146302

Babak (Bobby) Samini, Esq.
Nicole C. Prado, Esq.
SAMINI SCHEINBERG, PC
949 South Coast Drive, Suite 420
Costa Mesa, CA 92626
Tel:    (949) 724-0900
Fax:    (949) 724-0901
Email: bsamini@saminilaw.com

Attorneys for Respondent
**JOHN BRAL**

SERVICE/MAILING LIST

EXHIBIT 4

# EXHIBIT 4

1 | LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
2 | TOM LALLAS (SBN 66512)
MARK D. HURWITZ (SBN 151159)
3 | 815 Moraga Drive
Los Angeles, California  90049-1633
4 | Telephone:    (310) 471-3000
Facsimile:    (310) 471-7990
5 |
Attorneys for Petitioner
6 | BARRY A. BEITLER

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 2 6 2015

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

FILED BY FAX

7

8 |    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |    FOR THE COUNTY OF LOS ANGELES

10

11 | BARRY A. BEITLER, an individual,

12 |                    Petitioner,

13 |    vs.

14 | JOHN BRAL, an individual, and DOES 1-
50, Inclusive

15

16 |                    Respondent.

17

Case No.     BS 146302

**NOTICE OF ACCEPTANCE OF
APPOINTMENT AS ALL PURPOSE
JUDGE**

Date:     August 31, 2015
Time:     8:30 a.m.
Dept.:     15

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF ACCEPTANCE OF APPOINTMENT AS ALL PURPOSE JUDGE

EXHIBIT "2"
Page 81

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS (SBN 66512)
MARK D. HURWITZ (SBN 151159)
815 Moraga Drive
Los Angeles, California 90049-1633
Telephone:     (310) 471-3000
Facsimile:      (310) 471-7990

Attorneys for Petitioner
BARRY A. BEITLER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| BARRY A. BEITLER, an individual,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>JOHN BRAL, an individual, and DOES 1-50, Inclusive<br><br>　　　　Respondent. | Case No.　　BS 146302<br><br>**NOTICE OF ACCEPTANCE OF APPOINTMENT AS ALL PURPOSE JUDGE**<br><br>Date:　　August 31, 2015<br>Time:　　8:30 a.m.<br>Dept.:　　15 |

**NOTICE OF ACCEPTANCE OF APPOINTMENT AS ALL PURPOSE JUDGE**

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that on Wednesday, August 26, 2015, the Honorable Carl

3    West, Los Angeles County Superior Court Judge (Ret.) accepted his appointment as an all

4    purpose Judge in the above-captioned matter ("Acceptance") pursuant to an email from his

5    senior case manager, Ms. Kathryn Cisneros, to counsel and the parties in this matter dated

6    August 26, 2015, a true and correct copy of which is attached as Exhibit 1 and incorporated

7    herein by reference as though set forth in full herein.  As a result of the Acceptance by Judge

8    West, the continued hearing on the OSC re Private Judge presently set for August 31, 2015,

9    should be taken off calendar.

10   DATED:  August 26, 2015                    LEVY, SMALL & LALLAS
                                               A Partnership Including Professional Corporations
11                                             TOM LALLAS
                                               MARK D. HORWITZ
12

13                                             By: _____
                                                        TOM LALLAS
14                                             Attorneys for Petitioner
                                               BARRY A. BEITLER
15

16   31664

17

18

19

20

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
Los Angeles, CA 90049

I

**NOTICE OF ACCEPTANCE OF APPOINTMENT AS ALL PURPOSE JUDGE**

# EXHIBIT 1

## Tom Lallas

| | |
|---|---|
| **From:** | Kathryn Cisneros <kcisneros@jamsadr.com> |
| **Sent:** | Wednesday, August 26, 2015 8:23 AM |
| **To:** | Katie Finn; lkchapmanlaw@gmail.com; Barry Beitler; donald.rezak@gmail.com; Tom Lallas; Mark D. Hurwitz |
| **Subject:** | RE: Barry A. Beitler, Petitioner vs. John Bral, Respondent; Case No. BS 146302 |

Dear Counsel –

Judge West is in receipt of your letter concerning his recent appointment as all-purpose judge in the above referenced matter. Judge West is available to accept this assignment and is available for trial the weeks of February 22-26 and March 7-11.

Please forward me a copy of the order appointing Judge West. Also, please confirm the fee split for this matter. JAMS will open its file and send formal correspondence to the parties shortly.

We look forward to working with you.

Regards,
Kathryn



**Kathryn Cisneros**
Senior Case Manager

JAMS
Gas Company Tower
555 West 5th Street
32nd Floor
Los Angeles, CA 90013
kcisneros@jamsadr.com
Direct Dial: 213-253-9718
Fax: 213-620-0100



**Experience the JAMS difference and
submit your case today.**

---

**From:** Katie Finn [mailto:kfinn@lsl-la.com]
**Sent:** Tuesday, August 25, 2015 4:49 PM
**To:** Kathryn Cisneros
**Cc:** lkchapmanlaw@gmail.com; Barry Beitler; donald.rezak@gmail.com; Tom Lallas; Mark D. Hurwitz; Katie Finn
**Subject:** Barry A. Beitler, Petitioner vs. John Bral, Respondent; Case No. BS 146302

**THIS E-MAIL IS BEING SENT TO YOU AT THE REQUEST OF TOM LALLAS:**

(i)     Please see the attached. Thank you.

*Hard copy to follow via First Class Mail.*

Katie Finn, Assistant to Tom Lallas
Levy, Small & Lallas
815 Moraga Drive

1

Los Angeles, California  90049
Tel. (310) 471-3000
Fax (310) 471-7990
Email: kflinn@lsl-la.com

Confidentiality Note: This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

EXHIBIT "2"
Page 86

## PROOF OF SERVICE
*Barry A. Beitler v. John Bral*
Los Angeles Superior Court Case No. BS 146302

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles, California 90049.

On August 26, 2015, I served the foregoing document(s) described as: **NOTICE OF ACCEPTANCE OF APPOINTMENT AS ALL PURPOSE JUDGE** on all interested parties in this action ☒ by placing a true copy ☐ by placing true copies thereof enclosed in sealed envelopes addressed as shown on the attached service/mailing list in the manner indicated below:

☒     **(BY U.S. MAIL)**: I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with first class postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in this proof of service.

☒     **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 26, 2015, at Los Angeles, California.

*Katie Finn*
Katie Finn

**PROOF OF SERVICE**

EXHIBIT "2"
Page 87

# SERVICE/MAILING LIST

*Barry A. Beitler v. John Bral*
Los Angeles Superior Court, Case No. BS 146302

Babak (Bobby) Samini, Esq.                    Attorneys for Respondent
SAMINI SCHEINBERG, PC                         **JOHN BRAL**
840 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel:    (949) 724-0900
Fax:    (949) 724-0901
Email: bsamini@saminilaw.com

Lloyd K. Chapman, Esq.                        Co-Counsel for Respondent
LAW OFFICE OF LLOYD K. CHAPMAN                **JOHN BRAL**
4558 Sherman Oaks Avenue, Second Floor
Sherman Oaks, CA 91403
Tel:    (818) 304-8412
Fax:    (818) 990-1477
Email: lkchapmanlaw@gmail.com

**SERVICE/MAILING LIST**

EXHIBIT "2"
EXHIBIT 5

# EXHIBIT 5

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/31/15                                                    **DEPT. 15**

HONORABLE RICHARD FRUIN          JUDGE | E. GARCIA              DEPUTY CLERK

HONORABLE                        JUDGE PRO TEM                  ELECTRONIC RECORDING MONITOR
#9
        P. BARRERAS, C.A.    Deputy Sheriff | NONE              Reporter

---

8:30 am | BS146302

BARRY A BEITLER
VS
JOHN BRAL

*NOTICE OF RELATED CASES

Plaintiff
Counsel    TOM LALLAS (X)

Defendant
Counsel   NO APPEARANCES

---

**NATURE OF PROCEEDINGS:**

ORDER TO SHOW CAUSE RE: APPOINTMENT AND AVAILABILITY
OF JUDGE WEST;

Matter is called for hearing.

The Court finds that Judge West is available, and
Counsel for the Plaintiff requests that this matter
be placed off calendar.

Accordingly, the matter is continued to 4/29/16, at
8:30 a.m., in this Department for an Order to Show
Cause RE Dismissal After Judicial Reference Trial
before Judge West.

Notice by Plaintiff.

Page    1 of   1    DEPT. 15

MINUTES ENTERED
08/31/15
COUNTY CLERK

**EXHIBIT 6**

# EXHIBIT 6

1  HON. CARL J. WEST, RET.
   JAMS
2  555 W. 5th Street
3  32nd Floor
   Los Angeles, CA 90013
4  Tel: 213-620-1133
   Fax: 213-620-0100
5

6  Referee

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF LOS ANGELES

10

11

12  BARRY A. BEITLER, an individual        )    CASE NO. BS146302
                                           )
13              Petitioner,                )    JAMS REF #: 1220051902
                                           )
14  v.                                     )
                                           )
15  JOHN BRAL, an individual, and DOES 1-50, )  **REPORT OF CASE MANAGEMENT**
16  Inclusive                              )    **CONFERENCE AND SCHEDULING**
                                           )    **ORDER NO. 1**
17              Respondent.                )
                                           )
18                                         )
                                           )
19  _____)

20

21       A case management conference was conducted in this matter on December 14, 2015,

22  pursuant to written notice.  The Referee and counsel for the parties participated in the call. The

23  following order is made respecting the conduct of this proceeding:

24

25  1.  Parties and Counsel

26      Counsel for Petitioner Barry A. Beitler

27      Tom Lallas, Esq.
28      Mark D. Hurwitz, Esq.

                                        1

Levy, Small & Lallas
815 Moraga Drive
Los Angeles, CA 90049
P: 310-471-3000 / F: 310-471-7990
E: tlallas@lsl-la.com
E: mhurwitz@lsl-la.com

Counsel for Respondent John Bral

Babak Samini, Esq.
Nicole C. Prado, Esq.
Samini Scheinberg PC
840 Newport Center Drive, Suite 700
Newport Beach, CA 92660
P: 949-724-0900 / F: 949-724-0901
E: bsamini@saminilaw.com
E: nprado@saminilaw.com

Lloyd K. Chapman, Esq.
L/O Lloyd K. Chapman
4558 Sherman Oaks Ave.
Second Floor, Suite D
Sherman Oaks, CA 91403
P: 818-304-8412 / F: 818-990-1477
E: lkchapmanlaw@gmail.com

2.  Referee:
Hon. Carl J. West (Ret.)
JAMS
555 W. 5th Street, 32nd Floor
Los Angeles, CA 90013
P: 213-620-1133 / F: 213-620-0100
E: cwest@jamsadr.com

3.  Case Manager

Kathryn Cisneros
JAMS
555 W. 5th Street, 32nd Floor
Los Angeles, CA 90013
P: 213-253-9718 / F: 213-620-0100
E: kcisneros@jamsadr.com

4.      Authority for Reference.  The appointment of the referee and the conduct of this

reference proceeding is pursuant to the provisions of the Operating Agreement dated July 2011,

EXHIBIT "2"
Page 95

and specifically paragraph 14 of the Operating Agreement, which provides:

> 14. Dispute. In the event that there is any dispute demand, claim, charge or disagreement (collectively, "Dispute") between Bral and Beitler regarding any matter or thing related to, arising out of or connected to this Agreement, the Parties agree that such Dispute shall be fully and finally adjudicated and determined by a private judge trial, before a retired Los Angeles County Superior Judge mutually selected by Bral and Beitler and held in the County of Los Angeles. If Beitler and Bral cannot agree to the selection of a retired judge, either Beitler or Bral may petition the Los Angeles Superior Court to designate and appoint a retired private judge from JAMS-Los Angeles Offices to be the trial judge and the appointment by the Court of a retired private judge from JAMS-Los Angeles Offices shall be binding. Each Party shall equally share all costs of the retention of the retired judge, as and when such costs occur. Notwithstanding the foregoing, either Party may petition the Los Angeles Superior Court for any equitable or extraordinary relief in the event of any exigent circumstance related to this Agreement. Beitler and Bral agree that the prevailing party in any legal proceeding to enforce any of the terms and conditions of this Agreement, including from a private trial, shall be awarded reasonable attorneys' fees, costs and other expenses related to the legal proceeding.

5.    <u>Applicable Law and Rules</u>.  The substantive and procedural law of California shall be applied in this reference proceeding, subject to the provisions of this Order.

6. <u>Schedule</u>.  Proceedings in this case, including discovery, shall be completed/conducted on the following schedule:

- o  All fact discovery, including written discovery and depositions shall be completed by March 31, 2016.

- o  All document productions shall be completed by February 28, 2016.

- o  Expert discovery, if any, including expert depositions, shall be completed by April 15, 2016.

- o  The Early Trial Readiness Conference shall be held via conference call on April 11, 2016 at 9:00 AM.

EXHIBIT "2"
Page 96

7. <u>Discovery and Exchange of Information</u>.

(a)    The parties shall work out a discovery plan cooperatively.  The Referee shall supervise all discovery to the extent necessary and in accordance with the California Discovery Act.  All discovery, including expert discovery, shall be completed on the schedule set forth in this Order.  Any disputes regarding discovery shall be submitted to the Referee by way of joint statements served on Case Anywhere.  Motions relating to discovery matters shall only be filed and briefed on order of the Referee after review of the parties' joint statements.

(b)    To the extent the parties agree, they may engage in a voluntary exchange of documents and electronically stored information as an alternative to formal document productions under the Code of Civil Procedure.

(c)    Counsel shall identify all non-rebuttal percipient and expert witnesses expected to testify at the Trial not later than five (5) days prior to the Early Trial Readiness Conference.  Witnesses not so identified shall not be permitted to testify at the trial.

(d)    The parties shall cooperate in the scheduling of expert discovery.  Expert designations shall be completed on the schedule set forth in this Order.  All experts shall be required to prepare written reports; expert reports shall be exchanged not less than ten days prior to the first expert deposition scheduled by the parties.

8.    <u>Trial Procedure</u>.

(a)    The Trial shall commence on June 14, 2016 at the JAMS Los Angeles Resolution Center, and shall continue day to day through June 17, 2016 and on June 21, 2016.  Hearing

EXHIBIT "2"
Page 97

hours shall be 9:00 a.m. to 5:00 p.m. with a one (1) hour recess at noon and two fifteen (15) minute breaks.

(b)      Counsel shall submit Trial Briefs containing written statements of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought five (5) days prior to the Early Trial Readiness Conference.

(c)      Trial exhibits shall be pre-marked with consecutive Arabic numerals (without any indication of the party offering same) and a joint exhibit list shall be prepared not later than five (5) days prior to the Early Trial Readiness Conference.  The parties shall indicate any objection to the introduction of any exhibit on the joint exhibit list.  The joint exhibit list and objections shall be furnished to the Referee at the Early Trial Readiness Conference.  Exhibits not objected to shall be deemed admitted at the commencement of the hearing. One set of exhibits shall be prepared for the Referee and one for the witnesses in addition to copies for counsel.  All exhibits will be discarded 30 days after the issuance of the Referee's Statement of Decision unless a party requests, in writing, that the exhibits be retained or returned.  All exhibits shall be provided to the Referee in electronic format prior to commencement of the Hearing.

(d)      A Joint Witness List shall be prepared by the parties and submitted to the Referee five (5) days prior to the Early Trial Readiness Conference.  Objections to the testimony of designated witnesses shall be noted on the Joint Witness List and shall be addressed at the Early Trial Readiness Conference.

5.

(e)     The parties are encouraged to execute a stipulation of undisputed facts and to submit that document to the Referee in advance of commencement of the trial.

(f)     If any party intends to utilize the services of a court reporter, notice thereof shall be given to the other side by fourteen (14) days prior to commencement of the Trial.  The parties are encouraged to agree on any division of cost with respect to the reporter they desire, and to agree that such costs shall or shall not be an allocable cost of this proceeding.

(g)     The Statement of Decision shall state the reasons on which the decision of the Referee is based.

9.     <u>Miscellaneous.</u>

(a)     All Documents shall be served on JAMS and the Referee through Case Anywhere.

(b)     Cancellation fee of the Referee.  The parties will be requested to deposit fees sufficient to compensate the Referee for the scheduled hearing days sixty (60) days in advance of the commencement of the trial.  If the trial is cancelled or continued for any reason within sixty (60) days of the commencement of the trial, the deposit for the cancelled day(s) shall be deemed a cancellation fee and shall be immediately payable to JAMS.  JAMS shall refund fees for any trial day which is rebooked to the extent of fees earned on that day.

(c)     All deadlines herein shall be strictly enforced.  This Order shall continue in effect

EXHIBIT "2"
Page 99

unless and until amended by subsequent order of the Referee.

    (d)    The Early Trial Readiness Conference shall be held on April 11, 2016, at 8:00 AM, via conference call.  The following documents shall be provided to the Referee via Case Anywhere five (5) days prior to the Early Trial Readiness Conference:

    a.   Joint Exhibit List identifying all exhibits intended to be offered at the trial, and noting any objections to exhibits offered by either party;

    b.   Joint Witness List identifying all witnesses intended to be called at the trial, and estimating the time of each witness's direct testimony;

    c.   A Joint Statement identifying any *in limine* motions intended to be filed by either party and a brief statement of the each party's position with respect to any proposed *in limine* motions;

    d.   A Joint Statement addressing any issues with respect to the technology intended to be used for evidence presentation.

Dated: December 28, 2015

                                       _____
                                      CARL J. WEST
                                      Judge of the Superior Court (Ret.)
                                      Referee

## PROOF OF SERVICE BY U.S. MAIL

Re: Beitler, Barry A. vs. Bral, John
Reference No. 1220051902

I, Kathryn Cisneros, not a party to the within action, hereby declare that on December 28, 2015, I served the attached **REPORT OF CASE MANAGEMENT CONFERENCE AND SCHEDULING ORDER NO. 1** on the parties in the within action by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, Los Angeles, CALIFORNIA, addressed as follows:

Tom Lallas Esq.
Mark D. Hurwitz Esq.
Levy, Small & Lallas
815 Moraga Drive
Los Angeles, CA  90049-1633
   Parties Represented:
    Barry A. Beitler

Babak Samini Esq.
Nicole C. Prado Esq.
Samini Scheinberg PC
840 Newport Center Dr.
Suite 700
Newport Beach, CA  92660
    Parties Represented:
    John Bral

Hon. Richard L. Fruin
Los Angeles County Superior Court
111 N. Hill Street
Dept. 15
Los Angeles, CA  90012

Lloyd K. Chapman Esq.
L/O Lloyd K. Chapman
4558 Sherman Oaks Ave.
Second Floor (Ste. D)
Sherman Oaks, CA  91403
    Parties Represented:
    John Bral

I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles, CALIFORNIA, on December 28, 2015.

_Kathryn Cisneros_
Kathryn Cisneros

**EXHIBIT 7**

# EXHIBIT 7

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 11/05/14 | DEPT. 58 |
| HONORABLE ROLF M. TREU          JUDGE | K. MASON          DEPUTY CLERK |
| HONORABLE                        JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #9          R.E. LEE      CA     Deputy Sheriff | DINA CURRADO, 10908 PRO TEM          Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC553693 | Plaintiff Counsel | MATTHEW HOESLY (x) Court Call |
| | JOHN BRAL | | |
| | VS | Defendant Counsel | TOM LALLAS (x) |
| | WESTCLIFF INVESTORS, LLC | | |

**NATURE OF PROCEEDINGS:**

ORDER TO SHOW CAUSE RE FAILURE TO FILE PROOF OF
SERVICE;

CASE MANAGEMENT CONFERENCE

PETITION OF BETSY BOYD TO COMPEL ARBITRATION;

DEMURRER OF DEFENDANT BARRY BEITLER TO PLAINTIFF'S
COMPLAINT;

Case called.

The Order Appointing Court Approved Reporter as
Official Reporter Pro Tempore is signed and filed
this date.

Motion/s above called for hearing. All sides
represent that they have seen the Tentative
Ruling, and the matters are submitted.

The Tentative Ruling shall stand on grounds
fully set forth therein, and is adopted as the
order of the Court, and incorporated herein by
reference. To wit:

(1) PETITION TO COMPEL ARBITRATION IS GRANTED. MOTION
    TO STAY ACTION PENDING ARBITRATION IS GRANTED.

(2) THE 4TH CAUSE OF ACTION IS STAYED PURSUANT TO THE
    RULE OF EXCLUSIVE CONCURRENT JURISDICTION.

Page   1 of   2   DEPT. 58

```
MINUTES ENTERED
11/05/14
COUNTY CLERK
```

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 11/05/14

DEPT. 58

HONORABLE ROLF M. TREU          JUDGE    K. MASON          DEPUTY CLERK

HONORABLE
#9                              JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
          R.E. LEE          CA   Deputy Sheriff   DINA CURRADO, 10908
                                                  PRO TEM          Reporter

| 8:30 am | BC553693 | | |
|---|---|---|---|
| | JOHN BRAL | Plaintiff Counsel | MATTHEW HOESLY (x) Court Call |
| | VS WESTCLIFF INVESTORS, LLC | Defendant Counsel | TOM LALLAS (x) |

**NATURE OF PROCEEDINGS:**

Status Conference Re Arbitration set: MAY 5, 2015
at 8:30AM in this department.

Parties ordered to proceed to arbitration
expeditiously.

(Above CMC, Demurrer and OSC deemed off-calendar.)

Notice waived.

MINUTES ENTERED
11/05/14
COUNTY CLERK

**EXHIBIT 8**

# EXHIBIT 8

LAW OFFICE OF
# LLOYD K. CHAPMAN
4558 SHERMAN OAKS AVENUE, SECOND FLOOR
SHERMAN OAKS, CALIFORNIA 91403
(818) 304-8412
FAX: (818) 990-1599

January 8, 2016

# NOTICE OF EX PARTE APPLICATION

**Via Facsimile to (310) 471-7990
and U.S. Mail**

Tom Lallas, Esq.
Levy, Small & Lallas
815 Moraga Drive
Los Angeles, California 90049-1633

    Re:  *Bral v. Westcliff Investors*
       Los Angeles Superior Court No. BC553693

Dear Mr. Lallas:

After being declined my request to speak with you, your assistant, and Mr. Hurwitz, and having your telephone receptionist state that she is not permitted to take ex parte notices, I left notice on your voicemail that I will be making an ex parte application as follows:

        Date: Monday, January 11, 2016
        Time: 8:30 a.m.
        Dept: 58 LA Superior Court at 111 North Hill Street, Los Angeles

**Orders Sought:**    1.  Appoint an arbitrator and order that arbitration be completed by February 29, 2016, or, in alternative, to vacate the order to arbitrate and return the matter to the Department 58 civil active list as a consequence of defendants' failure to proceed with arbitration;

        2.  Appoint a receiver to accept one of the pending offers for the sale of the Westcliff property, or, in the alternative, to market and sale the property pending dissolution of the LLC;

        Or, in the alternative, to shorten time for hearing on these requests.

Please let me know whether you oppose any of the requests.

                       Lloyd K. Chapman

**EXHIBIT 9**

# EXHIBIT 9

LAW OFFICE OF
# LLOYD K. CHAPMAN
4558 SHERMAN OAKS AVENUE, SECOND FLOOR
SHERMAN OAKS, CALIFORNIA  91403
(818) 304-8412
FAX: (818) 990-1599

January 27, 2016

# NOTICE OF EX PARTE APPLICATION

**Via Facsimile to (310) 471-7990**
**and U.S. Mail**

Tom Lallas, Esq.
Levy, Small & Lallas
815 Moraga Drive
Los Angeles, California 90049-1633

      Re:  *Bral v. Westcliff Investors*
          Los Angeles Superior Court No. BC553693

Dear Mr. Lallas:

After being declined my request to speak with you, your assistant, and Mr. Hurwitz, and having your telephone receptionist state that she is not permitted to take ex parte notices, I left notice on your voicemail that I will be making an ex parte application as follows:

      Date: Thursday, January 28, 2016
      Time: 8:30 a.m.
      Dept: 58 LA Superior Court at 111 North Hill Street, Los Angeles

**Order Sought:**      **Shorten Time to a date between February 8-10** for hearing on Motion
        to:

          1. Appoint an arbitrator and order that arbitration be completed by March 5, 2016, or, in alternative, to vacate the order to arbitrate and return the matter to the Department 58 civil active list as a consequence of defendants' failure to proceed with arbitration; and

          2. Appoint a receiver to accept one of the pending offers for the sale of the Westcliff property, or, in the alternative, to market and sale the property pending dissolution of the LLC.

Please let me know whether you oppose any of the requests.

Lloyd K. Chapman

EXHIBIT "2"
EXHIBIT 10

# EXHIBIT 10

1

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations

2

TOM LALLAS (SBN: 66512)
815 Moraga Drive

3

Los Angeles, California 90049-1633
Telephone:     (310) 471-3000

4

Facsimile:     (310) 471-7990

5

Attorneys for Defendants

6

WESTCLIFF INVESTORS, LLC,
BARRY BEITLER and BETSY BOYD

7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JAN 28 2015

Sherri R. Carter, Executive Officer/Clerk
By Raul Sanchez, Deputy

8

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

### FOR THE COUNTY OF LOS ANGELES   FILED BY FAX

10

11

JOHN BRAL, an individual,

12

Plaintiff,

13

v.

14

WESTCLIFF INVESTORS, LLC, a
California limited liability company; BARRY

15

BEITLER, an individual; BETSY BOYD, an
individual; and DOES 1 through 50, inclusive,

16

17

Defendants.

CASE NO.:   BC 553693
[Hon. Rolf M. Treu; Dept. "58"]

*(Formerly Orange County Superior Court,
Case No. 30-2013-00688658-CU-MC-CJC)*

DECLARATION OF BARRY BEITLER IN
OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

| | |
|---|---|
| **Date:** | **February 10, 2015** |
| **Time:** | **8:30 a.m.** |
| **Dept.:** | **58** |

18

19

20

Complaint Filed:   November 20, 2013
Trial Date:   None Set

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 Moraga Drive
Los Angeles, CA 90049

1

DECLARATION OF BARRY BEITLER IN OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

1   LEVY, SMALL & LALLAS
    A Partnership Including Professional Corporations
2   TOM LALLAS (SBN: 66512)
    815 Moraga Drive
3   Los Angeles, California 90049-1633
    Telephone:    (310) 471-3000
4   Facsimile:    (310) 471-7990

5   Attorneys for Defendants
    WESTCLIFF INVESTORS, LLC,
6   BARRY BEITLER and BETSY BOYD

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

| 11 | JOHN BRAL, an individual, | **CASE NO.:   BC 553693**<br>[Hon. Rolf M. Treu; Dept. "58"] |
|----|---------------------------|-------------------------------|
| 12 | Plaintiff, | |
| 13 | v. | *(Formerly Orange County Superior Court, Case No. 30-2013-00688658-CU-MC-CJC)* |
| 14 | WESTCLIFF INVESTORS, LLC, a | DECLARATION OF BARRY BEITLER IN |
| 15 | California limited liability company; BARRY BEITLER, an individual; BETSY BOYD, an individual; and DOES 1 through 50, inclusive, | OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION |
| 16 | | |
| 17 | Defendants. | **Date:       February 10, 2015**<br>**Time:       8:30 a.m.**<br>**Dept.:       58** |
| 18 | | |
| 19 | | Complaint Filed:    November 20, 2013 |
| 20 | | Trial Date:          None Set |

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

DECLARATION OF BARRY BEITLER IN OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

<div align="center">Declaration of Barry Beitler</div>

I, Barry Beitler, declare as follows:

    1.  Except for the statements expressly made on information and belief, I have personal knowledge of the facts contained in this Declaration, and if called upon to testify, I could and would so competently testify thereto.

    2.  Since 1979, I have been a licensed real estate broker in the State of California.

    3.  Westcliff Investors, LLC ("Westcliff") is a single asset limited liability company. It owns that commercial real property located at 1901 Westcliff Drive, Newport Beach, California ("Westcliff Property").

    4.  Mr. Bral and I are listed in the Westcliff Operating Agreement as each owning 47.5% of all of the membership interests in Westcliff, and Betsy Boyd ("Ms. Boyd") is listed as owning the remaining 5% of all of the membership interests in the Westcliff Operating Agreement. A copy of the Westcliff Operating Agreement, which I signed, is attached hereto as Exhibit "1".

    5.  On or about November 11, 2013, I received an email from Mr. Bral indicating that he had a purchase offer for the Westcliff Property ("November 11[th] Email").  Attached to the November 11th Email was the offer from ACS Development Group, Inc. ("ACS Purchase Offer"). A true and correct copy of the November 11th Email and ACS Purchase Offer are attached hereto as Exhibits "2" and "3", respectively, and are incorporated in full herein by this reference.

    6.  I had neither expressly nor implicitly authorized the listing or prospecting of the Westcliff Property for sale, whether as a co-managing member or as a member of Westcliff. Nor had Ms. Boyd been consulted regarding a sale of the Westcliff Property.

    7.  The ACS Purchase Offer was presented to me by Mr. Bral as a means to address partial repayment of money owed by Mr. Bral to me concerning Westcliff and other transactions.

<div align="center">**DECLARATION OF BARRY BEITLER**

1</div>

8.  I instructed Donald Rezak ("Mr. Rezak") in my office to discuss the potential sale of the Westcliff Property with Mr. Bral.  Among the points I instructed Mr. Rezak to convey is that I would not pay a commission to any insider regarding any sale transaction, as well as the necessary structure to any potential sale.

9.  While considering the sale of the Westcliff Property, I subsequently discussed the possible purchase of the Westcliff Property with Scott Dobbins of Hankey Capital, LLC ("Hankey").  Hankey indicated its interest in purchasing the Westcliff Property, at a purchase price in excess of the purchase offer made by the ACS Purchase Offer, which would not require the payment of a commission.

10. Mr. Rezak communicated the Hankey proposal to Mr. Bral in an email dated December 9, 2013 at 10:20 AM ("December 9th Email"), which provided some of the other conditions I required in considering a sale of the Westcliff Property.  The December 9th Email provided in pertinent part that:

> ".... Fourth, as for Westcliff,  Hankey ... proposal consisting of $8.6mm net ... will be subject to Barry and you separating your interests, with Barry retaining Westcliff to complete a 1031 exchange and you TICing your membership in Westcliff to a new entity, with both you and the new entity confirming that any existing agreements between the parties will not be affected by the TIC and that the new entity will be subject to any agreements as if it was your membership interest in Westcliff in the agreements in the first instance."

A true and correct copy of the December 9th Email is attached hereto as Exhibit "4" and incorporated in full herein by this reference.

11. The purpose of Mr. Rezak's December 9th Email was to communicate to Mr. Bral that I did not wish, among other things, to enter into any transaction regarding Westcliff that could not be structured as a tax deferred exchange under Section 1031 of the Internal Revenue Code ("Section 1031"), that the Hankey Proposal was superior to Mr. Bral's proposal, and I did not

**DECLARATION OF BARRY BEITLER**

2

want any transaction to conflict with or be adverse to any of my rights concerning Mr. Bral or with regard to Mr. Bral's obligations owed to me in other agreements and circumstances.

12. Mr. Bral responded to the December 9th Email with an email of same date at 10:37 AM requesting a copy of the Hankey Proposal, to which Mr. Rezak responding by email on the same date at 11:02 AM stating:

> "... no purchase offer in writing. Barry would write a PSA, subject to approval of the following: (i) loan for First Citizens; (ii) purchase price for the Westcliff Property; (iii) TIC arrangement; and (iv) approval re non-trade funds or blocked account. this ironically takes us back to the memorandum."

A true and correct copy of the above December 9th email exchange at 10:37 AM and 11:02 AM is attached hereto as Exhibit "5" and is incorporated in full herein by this reference.

13. The memorandum referred to in Mr. Rezak's December 9th email at 11:02 AM was a global memorandum that Mr. Bral and Mr. Rezak, on my behalf, were negotiating to address the debt owed by Mr. Bral to me, and our business relationship in other entities.

14. On December 11, 2013, Mr. Rezak, on my instruction, sent Mr. Bral another email ("December 11[th] Email"). The December 11th email reiterated my position concerning a tenancy in common ("TIC") structure to any transaction concerning the Westcliff Property, that any transaction would be subject to other conditions, which were not limited to the TIC component, and an agreement regarding the use of sales proceeds. A true and correct copy of the above December 11th Email is attached hereto as Exhibit "6" and is incorporated in full herein by this reference.

15. The December 11th Email also expressly noted that I had "... no desire to sell Westcliff," and noted that Mr. Bral had failed to discuss the memorandum concerning our over-all circumstances, notwithstanding his representations to do so to the contrary.

16. Mr. Bral, in an email dated January 21, 2014 resent the original November 11th purchase offer for the Westcliff Property, which I did not sign ("January 21[st] Email"). A true and

**DECLARATION OF BARRY BEITLER**

3

1  correct copy of the above January 21st Email is attached hereto as Exhibit "7" and is incorporated

2  in full herein by this reference.

3      17. At no time did I authorize Mr. Bral to accept any purchase offer regarding Westcliff

4  or enter into any agreement concerning the purchase and sale of the Westcliff Property. At no

5  time did I execute any document agreeing to a sale of the Westcliff Property or provide my

6  consent to the terms of any purchase and sale agreement concerning the sale of the Westcliff

7  Property.

8      18. In addition to the matters noted above, Mr. Bral and I had used the Westcliff Property

9  to secure a debt related to a sister company, Ocean View Medical Investors, LLC ("OVMI"). The

10  debt was established by a loan from Premier Business Bank ("PBB") in the principal amount of

11  $250,000.00 to OVMI ("OVMI Loan"). Westcliff granted a second priority deed of trust on the

12  Westcliff Property to secure performance by OVMI of the PBB Loan. Both Mr. Bral and I

13  executed on behalf of Westcliff a second priority deed of trust on the Westcliff Property, among

14  other documents. We also executed joint and several co-guarantees in favor of PBB with regard

15  to the OVMI Loan, copies of which are attached hereto as Exhibits "8" and "9".

16      19. On February 5, 2014, I learned that the monthly payment owed to PBB serviced by

17  Mr. Bral from one of the sister companies managed by Mr. Bral was returned for insufficient

18  funds ("NSF Payment"). Upon discovering the NSF Payment, I sent Mr. Bral an email on

19  February 5, 2014 inquiring out he intended to address this matter and stating that I was prepared

20  to pay my share of the obligation ("February 5th Email"). A true and correct copy of the February

21  5th Email is attached hereto as Exhibit "10" and is incorporated in full herein by this reference.

22      20. The NSF Payment of the OVMI Loan was particularly untimely because I had hoped

23  to discuss an extension of its then current maturity date of January 30, 2014.

**DECLARATION OF BARRY BEITLER**

· 4

21. On February 14, 2014, Mr. Bral and I received a Notice of Default letter from PBB ("NOD Letter"). A true and correct copy of the NOD Letter is attached hereto as Exhibit "11" and incorporated in full herein by this reference.

22. On February 14, 2014 I sent Mr. Bral another email asking him how he intended to address the PBB Loan, which had matured and was now all due and owing ("February 14th Email"). A true and correct copy of the February 14th Email is attached hereto as Exhibit "12" and is incorporated in full herein by this reference.

23. Mr. Bral did not substantively respond to my February 14th Email regarding payment of the matured OVMI Loan.

24. On February 24, 2014, I sent Mr. Bral another email ("February 24th Email") stating that we needed to pay PBB and that his "… prompt response is needed." A true and correct copy of the February 24th Email is attached hereto as Exhibit "13" and is incorporated in full herein by this reference.

25. On February 25, 2014, I sent Mr. Bral another email ("February 25th Email"), which documented that payment regarding the OVMI Loan to PBB is " … due in full …" and that "… I am now, and have been, ready to pay my half of the obligation," pursuant to my guaranty. A true and correct copy of the February 25th Email is attached hereto as Exhibit "14" and is incorporated in full herein by this reference.

26. Also, on February 25, 2014 at 10:49 AM, I send Mr. Bral another email ("10:49 AM Email") requesting a response regarding several of our joint obligations, including PBB. A true and correct copy of the 10:49 AM Email is attached hereto as Exhibit "15" and is incorporated in full herein by this reference.

**DECLARATION OF BARRY BEITLER**

5

27. Mr. Bral failed to substantively discuss the February 5th Email, February 14th Email,

February 24th Email, February 25th Email and the 10:49 AM Email, nor did Mr. Bral offer any

payment towards the payment of our personal guaranty obligations to PBB for the OVMI Loan.

I declare under penalty of perjury under the laws of the State of California that the foregoing

is true and correct.

Executed on this 27th day of January, 2015 at Los Angeles, California.

_____

Barry Beitler

**DECLARATION OF BARRY BEITLER**

6

OPERATING AGREEMENT
OF
WESTCLIFF INVESTORS, LLC,
a California Limited Liability Company

THIS OPERATING AGREEMENT (this "Agreement"), is made as of February 20, 2003, by and among BARRY BEITLER ("Beitler"), an individual, and JOHN BRAL ("Bral"), an individual and Betsy Boyd ("Boyd"), an individual, (collectively referred to as the "Members" or individually as a "Member"), with reference to the following facts:

A.   Articles of Organization (the "Articles") for WESTCLIFF INVESTORS, LLC (the "Company"), a limited liability company organized under the laws of the State of California, were filed with the California Secretary of State on February 20, 2003 as Document No. 200303910037

B.   The Members desire to adopt and approve an operating agreement for the Company under the Beverly-Killea Limited Liability Company Act (the "Act").

C.   The above individuals and only these individuals, as of the formation of this Operating Agreement shall serve to form Westcliff Investors, LLC.

NOW, THEREFORE, the Members by this Agreement set forth the operating agreement for the Company upon the terms and subject to the conditions of this Agreement.

## ARTICLE I - ORGANIZATIONAL MATTERS

1.1   Name. The name of the Company shall be "WESTCLIFF INVESTORS, LLC." The Company may conduct business under that name or any other name approved by the Members.

1.2   Term. The term of the Company commenced as of the date of the filing of the Articles of Organization and unless dissolved as set forth in Article 9.1, shall terminate on December 31, 2025 or as soon as agreed by the majority of the parties, subject to the Major Decisions provisions herein.

1.3   Office and Agent. The Company shall continuously maintain an office and registered agent in the State of California as required by the Act. The principal office of the

BU ir/WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

1

EXHIBIT 1

Company shall be at 825 So. Barrington Avenue, Los Angeles, California 90049, or such location as the Members may determine. The registered agent shall by as stated in the Articles or as otherwise determined by the Members.

     1.4 Business of the Company. Notwithstanding the purpose of the Company which is described in the Articles, the Company shall not engage in any business other than the following without the consent of all of the Members:

       (i)    the business of acquiring, owning, developing, operating, managing and selling an office/medical building at 1901 Westcliff Drive, Newport Beach, California and;

       (ii)    such other activities directly related to the foregoing business as may be necessary or advisable in the reasonable opinion of the Members to further such business.

## ARTICLE II - CAPITAL CONTRIBUTIONS

     2.1 Capital Contributions. Each Member shall make a cash contribution to the capital of the Company in the amount shown opposite the Member's name on Exhibit "A" attached hereto, other than for Betsy Boyd who shall have no initial or additional capital contribution obligations. Except as expressly provided herein, each Member shall be required to make any additional contributions to the capital of the Company, where necessary, other than for Betsy Boyd. Except as provided in section 2.6, below, additional contributions to the capital of the Company shall be made only with the unanimous written consent of the Members and shall be made by all Members in proportion to the Membership Interests of the Members, where necessary, other than for Betsy Boyd. In the event that a Member makes an additional capital contribution in excess of his proportionate share as so determined, such excess of his proportionate share as so determined, such excess portion shall be entitled to a preferred return of ten (10%) per annum, accruing and compounding quarterly, from the date of such excess contribution until such excess amount is distributed to such Member. Except as provided in this Agreement, no Member may withdraw its capital contribution. A Member shall not be personally liable to any other Member for repayment of any capital contribution made to the Company by such other Member.

     2.2 Capital Accounts. The Company shall establish an individual capital account (the "Capital Account") for each Member. The Company shall determine and maintain each Capital Account in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv). Upon valid transfer of a Member's interest in the Company (the "Membership Interest") in accordance with Article VI, such Member's Capital Account shall carry over to the new owner.

     2.3 No Interest. The Company shall not pay any interest on initial capital contributions.

However, any additional capital contributions, as provided herein, shall be entitled to a preferred return equal to ten percent (10%) per annum, accruing and compounding quarterly.

2.4 <u>Loans to The Company</u>. Any monies loaned to the LLC by Barry Beitler or John Bral are collectively referred to as the "Member Loans.") The Member Loans shall not bear interest and shall only be repaid through the cash flow of the Property or the sale or refinance of the Property. Any and all initial monies necessary for the purchase of the Property, classified as loans to the Company, shall be repaid first to Bral and Beitler in full prior to any distributions of sale or refinance proceeds to Betsy Boyd for her interest in said Property i.e. by way of example, if Bral and Beitler each put up $200,000 into the Property and the Property sells for a $500,000 profit, Bral and Beitler are to receive 100% of their contribution prior to any calculation for distribution to any Member, including Boyd.

2.5. <u>Additional Required Capital Contributions</u>. Prior to commencement of construction of any addition to the Project by the Company or should any capital call be necessary amongst the Members, the Members shall make additional capital contributions to the Company. Any additional capital contributions shall bear interest, as provided in Section 2.3 herein, and shall be made in the following proportions:

| | |
|---|---|
| Beitler | 50.0% |
| Bral | <u>50.0%</u> |
| Total | 100.0% |

Any additional capital contributions shall be made by the above Members who shall receive all additional contributions in full from future sale or refinance prior to any participation by Boyd in distributions as further outlined in 2.4 above.

## ARTICLE III - MEMBERS

3.1 <u>Admission of Additional Members</u>. Additional Members may be admitted with the approval of all Members. Additional Members will participate in "Net Profits," "Net Losses" (as such terms are defined in Paragraph 5.1), and distributions of the Company on such terms as are determined by the Members. Exhibit "A" shall by amended upon the admission of an additional Member to set forth such Member's name and capital contribution.

3.2 <u>Withdrawal or Resignations</u>. Any Member may withdraw or resign as a Member at any time upon one hundred twenty (120) days prior written notice to the Company, without prejudice to the rights, if any, of the Company or the other Members under any contract to which the withdrawing Member is a party. In the event of such withdrawal, such Member's Membership Interest shall be terminated, such Member shall thereafter only have the rights of a

DB IV WESTCLIFF INVESTORS-OPERATING AGREEMENT-final

3





EXHIBIT "2"
Page 124

transferee as described in Paragraph 6.3 and such Membership Interest shall be subject to purchase and sale as provided in Paragraph 7.2. (No other Member may withdraw, retire or resign from Company.)

3.3 Payments to Members. Except as specified in this Agreement or pursuant to a transaction permitted by Paragraph 4.6, no Member or person or entity controlled by, controlling or under common control with the Member (each such person or entity is defined as an "Affiliate"), is entitled to remuneration for services rendered or goods provided to the Company, except as specifically provided by the Company. However, the Company shall reimburse the Members and their Affiliates for organizational expenses (including, without limitation, legal and accounting fees and costs) incurred to form the Company, prepare the Articles and this Agreement and, as approved by the Members, for the actual cost of goods and materials used by the Company. At all times, whenever a vacancy in the Property becomes available, Beitler Commercial Realty Services shall be hired for the leasing at market commission rates. Bral and Beitler agree to split (60%/40%) any and all commissions for leasing paid if any. The same shall be true of any commission on the future sale of the Property. It is expressly agreed that payment of any real estate commission owing by the Company to Beitler Commercial Real Estate shall be paid if Company has sufficient cash flow to pay such commission without preventing the Company from meeting its other obligations.

## ARTICLE IV - MANAGEMENT AND CONTROL OF THE COMPANY

4.1 Management and Powers. In entering into this Agreement, the intent of each Member is to engage actively in the management of the Company, however, Barry Beitler and John Bral shall be designated as the Company's Co-Managing Members. Accordingly, unless otherwise limited by the Articles or this Agreement, Barry Beitler and John Bral, shall have full, complete and exclusive authority, power, and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters equally and to perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs.

4.2 Limitations on Power of Members. No Member shall have authority to cause the Company to engage in the following transactions without first obtaining the written approval of both John Bral or and Barry Beitler:

(A) The sale, exchange or other disposition of all, or substantially all, of the Company's assets occurring as part of a single transaction or plan, or in multiple transactions over a twelve (12) month period, except in the orderly liquidation and winding up of the business of the Company upon its duly authorized dissolution.

BB 10 WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

4

(B) The refinance or financing of any kind or any transactions which may encumber the title of the Property.

(C) The merger of the Company with another limited liability company or corporation, general partnership, limited partnership or other entity (except that any act which would cause a Member to incur personal liability for the obligations of the Company or its successor shall also require the consent of such Member).

(D) An alteration of the authorized businesses of the Company as set forth in Paragraph 1.4.

(E) Any act which would make it impossible to carry on the ordinary business of the Company.

(F) The confession of a judgment against the Company.

(G) Any other transaction described in this Agreement as requiring the approval, consent or vote of the Members.

4.3 <u>Member Approval</u>.    No annual or regular meetings of the Members are required to be held.  However, if such meetings are held, such meetings shall be noticed as provided in this paragraph and shall be held and conducted pursuant to the Act.  In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Act.  Unless otherwise provided in this Agreement, approval of the Members shall mean the approval of Members who hold at least seventy-five percent (75%) of the Membership Interests.  All notices of meetings will be in writing and shall be deemed duly given: (i) if it is sent by telecopier to the Members at the telephone number provided by each Member for such purpose, in which case notice will be deemed to take place upon receipt; or (ii) if (and then three [3] business days after) it is sent by registered or certified mail, return receipt requested, postage prepaid and addressed to the intended recipient at the address set forth on Exhibit "A" to this Operating Agreement (as amended from time to time).  No meeting shall be held by the Members without (10) business days prior to notice, unless otherwise agreed in writing by all the Members.

4.4 <u>Devotion of Time</u>.    Each Member shall devote whatever time or effort as he or she deems appropriate for the furtherance of the Company's business.

4.5 <u>Competing Activities</u>.    The Members and their Affiliates may engage or invest in any activity, including without limitation those that might be in direct or indirect competition with the Company.  Neither the Company nor any Member shall have any right in or to such other activities or to the income or proceeds derived therefrom.  No Member shall be obligated to

BB\WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

5

present any investment opportunity to the Company, even if the opportunity is of the character that, if presented to the Company could be taken by the Company. Each Member shall have the right to hold any investment opportunity for its own account of the recommend such opportunity to persons other than the Company. The Members acknowledge that certain Members and their Affiliates own and/or manage other businesses, including businesses that may compete with the company and for the Members' time. Each Member hereby waives any and all rights and claims which he or she may otherwise have against the other Members and their Affiliates as a result of any such activities.

    4.6 <u>Transactions between the Company and the Members</u>. Notwithstanding that it may constitute a conflict of interest, the Members and their Affiliates may engage in any transaction with the Company so long as such transaction is not expressly prohibited by this Agreement and so long as the terms and conditions of such transaction, or an overall basis, are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from persons capable of similarly performing them or if Members holding a majority of the Membership Interests held by the Members having no interest in such transaction (other than their interests as Members) approve the transaction in writing.

## ARTICLE V - ALLOCATIONS OF NET PROFITS AND NET LOSSES AND DISTRIBUTIONS

    5.1 <u>Definitions</u>. When used in this Agreement, the following terms shall have the meanings set forth below:

        "<u>Code</u>" shall mean the Internal Revenue Code of 1986, as amended from time to time, the provisions of succeeding law, and to the extent applicable, the Treasury Regulations.

        "<u>Company Minimum Gain</u>" shall have the meaning given to the term "Partner Nonrecourse Debt" in Treasury Regulations Section 1.704-2 (d).

        "<u>Member Nonrecourse Debt</u>" shall have the meaning given to the term "Partner Nonrecourse Debt" in Treasury Regulations Section 1.704-2 (b) (4).

        "<u>Member Nonrecourse Deductions</u>" shall mean items or Company loss, deduction, or Code Section 705 (a) (2) (B) expenditures which are attributable to Member Nonrecourse Debt.

        "<u>Net Profits</u>" and "<u>Net Losses</u>" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with the method of accounting at the close

BB\W WESTCLIFF INVESTORS OPERATING AGREEMENT (fin)

6

of each fiscal year employed on the Company's information tax return filed for Federal income tax purposes.

"Nonrecourse Liability" shall have the meaning set forth in Treasury Regulation that have been issued by the U.S. Department of Treasury pursuant to its authority under the Code, and any successor regulations.

5.2  Allocations of Net Profit and Net Loss (subject to Paragraphs 2.4 and 2.5 herein which shall prevail).

(a) Net Loss.  Net Loss shall be allocated among the Members in proportion to their respective Membership Interests as set forth in Exhibit "A".

(b) Net Profit.  Net Profit shall be allocated among the Members in the following manner:

(i)  First, in the event of sale or refinance, to repay 100% of all capital contributions or additional capital contributions made by any Member;

(ii)  Second, to the Members to the extent of the distributions made pursuant to paragraph 5.5(a), below;

(iii)  Thereafter, among the Members in proportion to their respective Membership Interests as set forth in Exhibit "A."

5.3  Special Allocations.  Notwithstanding Paragraph 5.2:

(a) Minimum Gain Chargeback.  If there is a net decrease in Company Minimum Gain during any fiscal year, each Member shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in Company Minimum Gain that is allocable to the disposition of Company property subject to a Nonrecourse Liability net decrease shall be determined in accordance with Treasury Regulations Section 1.704-2 (g) (2). Allocations pursuant to this Paragraph 5.3 (a) shall be made in proportion to the amounts required to be allocated to each Member under this Paragraph 5.3 (a).  The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(f). This Paragraph 5.3 (a) is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations Section 1.704-2 (f) and shall be interpreted consistently therewith.

(b) Chargeback of Minimum Gain Attributable to Member Nonrecourse Debt.  If there is a net decrease in Company Minimum Gain attributable to a Member Nonrecourse Debt, during

7

any fiscal year, each member who has a share of the Company Minimum Gain attributable to such Member Nonrecourse (which share shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (5)) shall be specifically allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to that portion of such Member's share of the net decrease in Company Minimum Gain attributable to such Member Nonrecourse Debt that is allocable to the disposition of company property subject to such Member Nonrecourse Debt (which share of such net decrease shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (5)).  Allocations pursuant to this Paragraph 5.3 (b) shall be made in proportion to the amounts required to be allocated to each Member under this Paragraph 5.3 (b). The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2 (i) (4).  This Paragraph 5.3 (b) is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations Section 1.704-2 (i) (4) and shall be interpreted consistently therewith.

(c) Nonrecourse Deductions. Any nonrecourse deductions (as defined in Treasury Regulations Section 1.704-2 (b) (1)) for any fiscal year or other period shall be specially allocated to the Members in proportion to their Membership Interests.

(d) Member Nonrecourse Deductions. Those items of expenditures which are attributable to Member Nonrecourse Debt for any fiscal year or other period shall be specifically allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such items are attributable in accordance with Treasury Regulations Section 1.704-2 (i).

(e) Deficit Capital Account Restoration.  In the event the Company is "liquidated" within the meaning of Treasury Regulations Section 1.704-2 (b) (ii) (g), a Member whose Capital Account has a deficit balance (after giving effect to all contributions, distributions, and allocations for all Fiscal Years, including the Fiscal Year during which such liquidation occurs), such Member shall contribute to the capital of the Company the amount necessary to restore such deficit balance to 1.704-2 (b) (2) (ii) (b) (3).

5.4 Code Section 704(c) Allocations.  Notwithstanding any other provision in this Article V, in accordance with Code Section 704(c) and the Treasury Regulations promulgated thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for tax purposes, be allocated amount the Members so as to take account of any variation between the adjusted basis of such property to the Company for Federal income tax purposes and its fair market value on the date of contribution.  Allocations pursuant to this Paragraph 5.4 are solely for purposes of Federal, state and local taxes. As such, they shall not affect Capital Account or share of profits, losses, or other items of distributions pursuant to any provision of this Agreement.

5.5 Distribution of Assets by the Company.  Subject to applicable law and any limitations contained elsewhere in this Agreement, the Co-Managing Members holding at least

DD hv WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

8

seventy-five percent (75%) of the Membership Interests may elect from time to time to cause the Company to make distributions. Any payment by the Company with respect to Member Loans shall be credited first to interest then accrued, and the remainder, if any, to principal; and interest shall cease to accrue upon the principal so credited as of the date that such payment is actually made.

(a) Distribution from the sale or refinance of the Project shall be made in the following order and priority:

(i) First, one hundred percent (100%) to Beitler and Bral in an amount sufficient to repay Beitler and Bral their unreturned capital contributions; until each Member has recovered the amount of its initial and additional capital contributions; and

(ii) Thereafter, to the Members in proportion to their Membership Interests.

(b) Distributions from the cash flow resulting from the operation of the Project shall be made in the following order and priority:

(i) First, one hundred percent (100%) to Beitler and Bral in an amount sufficient to provide to each of the Members the priority return on such Member's additional capital contributions to the company if so designated by the Co-Managing Members;

(ii) Thereafter, to the Members in proportion to their Membership Interests;

### Article VI - TRANSFER AND ASSIGNMENT OF INTERESTS

6.1 Transfer and Assignment of Interests.   No Member shall be entitled to transfer, assign, convey, sell, encumber or in any way alienate all or any part of its Membership Interest (collectively, "transfer") except with the prior approval of all Members, which approval may be given or withheld in the sole discretion of the Members, other than for each Member's ability to put his or her respective interest in a Trust or other estate planning mechanism which shall not be considered a Transfer hereunder.

6.2 Transfers in Violation of this Agreement and Transfers of Partial Membership Interests.   Upon a transfer in violation of this Article VI, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member. Such transferee shall only be entitled to receive the share of the Company's Net Profits, Net Losses and distributions of the Company's assets to which the transferor would otherwise be entitled.   Notwithstanding the immediately preceding sentences, if, in the determination of the remaining Members, a transfer in violation of this Article VI would cause the termination of the Company under the Code, in the sole discretion of the remaining Members, the transfer shall be null and void.

DB1V WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

9

6.3 <u>Transfers in Violation of this Agreement and Transfers of Partial Membership Interests.</u>  Upon a transfer in violation of this Article VI, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member.  Such transferee shall only be entitled to receive the share of the Company's Net Profits, Net Losses and distributions of the Company's assets to which the transferor would otherwise be entitled.  Notwithstanding the immediately preceding sentences, if, in the determination of the remaining Members, a transfer in violation of this Article VI would cause the termination of the Company under the Code, in the sole discretion of the remaining Members, the transfer shall be null and void.

<div align="center">

ARTICLE VII -    CONSEQUENCES OF DISSOLUTION EVENTS
AND TERMINATION OF MEMBERSHIP INTEREST

</div>

7.1 <u>Dissolution Event</u>  Upon the occurrence of the death, withdrawal, resignation, retirement, insanity, bankruptcy or dissolution of any Member (the "Dissolution Event"), the Company shall dissolve unless all of the remaining Members (the "Remaining Members") consent within ninety (90) days of the Dissolution Event to the continuation of the business of the Company.  If the Remaining Members so consent, the Company and/or the Remaining Members shall have the right to purchase and, if such right is exercised, the Member (or its legal representative) whose actions or conduct resulted in the Dissolution Event (the "Former Member") shall sell, the Former Member's Membership Interest (the "Former Member's Interest") as provided in this Article VII.

7.2 <u>Withdrawal.</u>    Notwithstanding Paragraph 7.1, upon the withdrawal by a Member in accordance with Paragraph 3.2 such Member shall be treated as a Former Member, and, unless the Company dissolves as a result of such withdrawal, the Company and/or the Remaining Members shall have the right to purchase and, if such right is exercised, the Former Member shall sell, the Former Member's Interest as provided in this Article VII.

7.3 <u>Purchase Price.</u>    The purchase price for the Former Member's Interest shall be the fair market value of the Former Member's Interest as determined by an independent appraiser jointly selected by the Former Member and Remaining Members holding a majority of the remaining Membership Interests.  The Company and the Former Member shall each pay one-half (1/2) if the cost of the appraisal.  Notwithstanding the foregoing, if the Dissolution Event results from a breach of this Agreement by the Former Member, the purchase price shall be reduced by an amount equal to the damages suffered by the Company or the Remaining Members as a result of such breach.

7.4 <u>Notice of Intent to Purchase.</u>    Within thirty (30) days after the fair market value of the Former Member's Interest has been determined in accordance with Paragraph 7.3, each Remaining Member shall notify the Members in writing of its desire to purchase a portion of the

EXHIBIT "2"
Page 131

Former Member's Interest. The failure of any Remaining Member to submit a notice within the applicable period shall constitute an election on the part of the Member not to purchase any of the Former Member's Interest in the same proportion that the Membership Interest of the Remaining Member bears to the aggregate of the Membership Interests of all or the Remaining Members electing to purchase the Former Member's Interest.

7.5 Election to Purchase Less Than All of the Former Member's Interest. If any Remaining Member elects to purchase none or less than all of its pro rata share of the Former Member's Interest, then the Remaining Members can elect to purchase more than their pro rata share. If the Remaining Member fail to purchase the entire interest of the Former Member, the Company may purchase any remaining share of the Former Member's Interest.

7.6 Payment of Purchase Price. The Company or the Remaining Members, as the case may be, shall pay at the closing one-fifth (1/5) of the purchase price and the balance of the purchase price shall be paid in four (4) equal annual principal installments, plus accrued interest, and be payable each year on the anniversary date of the closing. The unpaid principal balance shall accrue interest at the current applicable Federal rate as provided in the Code for the month in which the initial payment is made, but the Company and the Remaining Members shall have the right to prepay in full or in part at any time without penalty. The obligation of each purchasing Remaining Member, and the Company, as applicable, to pay its portion of the balance due shall be evidenced by a separate promissory note executed by the respective purchasing Remaining Member or the Company, as applicable. Each such promissory note shall be in an original principal amount equal to the portion owed by the respective purchasing Remaining Member or the Company, as applicable. The promissory note executed by each purchasing Remaining Member shall be secured by a pledge of that portion of the Former Member's Interest purchased by such Remaining Member.

7.7 Closing of Purchase of Former Member's Interest. The closing for the sale of a Former Member's Interest pursuant to this Article VII shall be held at 10:00 A.M. at the principal office of Company no later than sixty (60) days after the determination of the purchase price, except that if the closing date falls on a Saturday, Sunday, or California legal holiday, then the closing shall be held on the next succeeding business day. At the closing, the Former Member shall deliver to the Company or the Remaining Members an instrument of transfer (containing warranties of title and no encumbrances) conveying the Former Member's Interest. The Former Member, the Company and the Remaining Members shall do all things and execute and deliver all papers as may be reasonably necessary fully to consummate such sale and purchase in accordance with the terms and provisions of this Agreement.

ARTICLE VIII - ACCOUNTING, RECORDS, REPORTING BY MEMBERS

8.1 Books and Records. The books and records of the Company shall be kept in accordance with the accounting methods followed for Federal income tax purposes. The Company shall maintain at its principal office in California all of the following:

DD I. WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

11

EXHIBIT "2"
Page 132

(a) A current list of the full name and last known business or
residence address of each Member set forth in alphabetical order,
together with the capital contributions, capital account and
Membership Interest of each Member;

(b) A copy of the Articles and any and all amendments thereto
together with executed copies of any powers of attorney pursuant
to which the Articles or any amendments thereto have been executed;

(c) Copies of the Company's Federal, state, and local income tax or
information returns and reports, if any, for the six (6) most recent taxable
years;

(d) A copy of this Agreement and any and all amendments thereto
together with executed copies of any powers of attorney pursuant to
which this Agreement or any amendments thereto have been executed;

(e) Copies of the financial statements of the Company, if any, for the
six (6) most recent fiscal years; and

(f) The Company's books and records as they relate to the internal affairs of the
Company for at least the current and past four (4) fiscal years.

8.2 <u>Reports</u>.   The Company shall cause to be filed, in accordance with the Act,
all reports and documents required to be filed with any governmental agency. The Company
shall cause to be prepare at least annually information concerning the Company's operations
necessary for the completion of the Members' Federal and state income tax returns. The
Company shall send or cause to be sent to each Member within ninety (90) days after the end of
each taxable year: (i) such information as is necessary to complete the Members' Federal and
state income tax or information returns and (ii) a copy of the Company's Federal, state, and local
income tax or information returns for the year.

8.3 <u>Bank Accounts</u>.   The Members shall maintain the funds of the Company in one   or
more separate bank accounts in the name of the Company, and shall not permit the funds of the
Company to be commingled in any fashion with the funds of any other person.  Any Member,
acting alone, is authorized to endorse checks, drafts, and other evidences of indebtedness made
payable to the order of the Company, but only for the purpose of deposit into the Company's
accounts. All checks, drafts, and other instruments obligating the Company to pay money may
be signed by any Co-Managing Member, acting alone up to $10,000. Any obligation of the
Company over $10,000 shall require both Co-Managing Member's signatures or the written
approval of both Co-Managing Members.

BB M\WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

12





EXHIBIT "2"
Page 133

8.4 Tax Matters for the Company.  Beitler is designated as "Tax Matters Partner" (as defined in Code Section 6231), to represent the Company (at the Company's expense) in connection with all examination of the Company's affairs by tax authorities and to expend Company funds for professional services and costs associated therewith, subject to the limitations contained in Paragraph 4.2.

## ARTICLE IX  -  DISSOLUTION AND WINDING UP

9.1 Conditions of Dissolution.   The Company shall dissolve upon the occurrence of any of the following events:

(a)  Upon the happening of any event of dissolution specified in the Articles;

(b)  Upon the entry of a decree of judicial dissolution pursuant to Section 17351 of the California Corporations Code;

(c)  Upon the vote of both Co-Managing Members;

(d)  The occurrence of a Dissolution Event and the failure of the Remaining Members to consent in accordance with Paragraph 7.1 to continue the business of the Company within ninety (90) days after the occurrence of such event; or

EXHIBIT "2"
Page 134

(c) The sale of all or substantially all of the assets of Company.

**9.2 Winding Up.** Upon the dissolution of the Company, the Company's assets shall be disposed of and its affairs wound up. The Company shall give written notice of the commencement of the dissolution to all of its known creditors.

**9.3 Order of Payment of Liabilities Upon Dissolution.** After determining that all the known debts and liabilities of the Company have been paid or adequately provided for, the remaining assets shall be distributed to the Members in accordance with their positive Capital Account balances, after taking into account income and loss allocations for the Company's taxable year during which liquidation occurs.

**9.4 Limitations on Payments Made in Dissolution.** Except as otherwise specifically provided in this Agreement, each Member shall be entitled to look only to the assets of the Company for the return of its capital contribution and/or share of Net Profits against any other Member except as provided in Article X.

**9.5 Certificates.** The Company shall file with the California Secretary of State a Certificate of Dissolution upon the dissolution of the Company and a Certificate of Cancellation upon the completion of the winding up of the Company's affairs.

## ARTICLE X - INDEMNIFICATION

**10.1 Indemnification of Agents.** The Company shall indemnify any Member and may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding arising out of or connected to the business of the company or that, being or having been such a Member, officer, employee or agent, he or she is or was serving at the request of the Company as a manager, director, officer, employee or other agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise to the fullest extent permitted by applicable law in effect on the date hereof and to such greater extent as applicable law may hereafter from time to time permit. Further, any Member shall indemnify and hold harmless the Company and/or the other Members of the Company in the event that the Company and/or the other Members are made a party to any threatened or pending action, suit or proceeding between or by a Member and a third party or entity not arising out of or related to the business of Company.

## ARTICLE XI - INVESTMENT REPRESENTATIONS

Each Member hereby represents and warrants to, and agrees with, the Members and the Company as follows:

**11.1 Preexisting Relationship or Experience.** It has a preexisting personal or business

00 lv WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

14

relationship with the Company or one or more of its officers or controlling persons, or by reason of its business or financial experience, or by reason of the business or financial experience of its financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by the Company or any affiliate or selling agent of the Company, it is capable or evaluating the risks and merits of an investment in the Company and of protecting its own interests in connection with this investment.

11.2   No Advertising.   It has not seen, received, been presented with, or been solicited by any leaflet, public promotional meeting, article or any other form of advertising or general solicitation with respect to the sale of the Membership Interest.

11.3   Investment Intent.   It is acquiring the Membership Interest for investment purposes for its own account only and not with a view to or for sale in connection with any distribution of all or any part of the Membership Interest.  No other person will have any direct or indirect beneficial interest in or right to the Membership interest.

ARTICLE XII   -   MISCELLANEOUS

12.1   Counsel to the Company.   Counsel to the Company may also be counsel to any Member or any Affiliate of a Member.  The Members may execute on behalf of the Company and the Members any consent to the representation of the Company that counsel may request pursuant to the California Rules of Professional Conduct or similar rules in any other jurisdiction (the "Rules").  The Company has initially selected Jeff Katofsky of the Law Offices of Jeff Katofsky, LLP (the Company Counsel"), as legal counsel to the Company.  Each Member acknowledges that the Company Counsel does not represent any Member in the absence of a clear and explicit agreement to such effect between the Member and the Company Counsel, and that in the absence of any such written agreement the Company Counsel shall owe no duties directly to a Member.  Each Member further acknowledges: (i) that the Company Counsel has represented the interests of Beitler  in connection with the formation of the Company and the preparation and negotiation of this Agreement, and John Bral has selected separate Counsel in connection with the formation of the Company and the preparation and negotiation of this Agreement, (ii) while communications with the Company Counsel concerning the formation of the Company and its Members may be confidential with respect to third parties, no Member has any expectation that such communications are confidential with respect to Members which are represented individually by the Company Counsel.

12.2   Complete Agreement.   This Agreement and the Articles constitute the complete and exclusive statement and agreement among the Members with respect to the subject matter herein and therein and replace and supersedes all prior written and oral agreements among the Member.  To the extent that any provision of the Articles conflict with any provision of this Agreement, the Articles shall control.

DB1v WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

15



12.3  <u>Binding Effect</u>.  Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and inure to the benefit of the Members, and their respective successors and assigns.

12.4  <u>Interpretation</u>.  All pronouns shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the context in which they are used may require.  All headings herein are inserted only for convenience and ease of reference and are not to be considered in the interpretation of any provision of this Agreement.  Numbered or lettered articles, paragraphs and subparagraphs herein contained refer to articles, paragraphs and subparagraphs of this Agreement unless otherwise expressly stated.  In the event any claim is made by any Member relating to any conflict, omission or ambiguity in this Agreement, no presumption or burden or proof or persuasion shall be implied by virtue of the fact that this Agreement was prepared by or at the request of a particular Member of its counsel.

12.5  <u>Jurisdiction</u>.  Each Member hereby consents to the exclusive jurisdiction of the state and Federal courts sitting in California in any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement.  Each Member further agrees that personal jurisdiction over it may be effected by service of process by registered or certified mail addressed as provided in Paragraph 12.8 of this Agreement, and that when so made shall be as if served upon it personally within the State of California.

12.6  <u>Arbitration</u>.  Except as otherwise provided in this Agreement, any controversy between the parties arising out of this Agreement shall be submitted to the American Arbitration Association for arbitration in Los Angeles, California.  The costs of the arbitration, including any American Arbitration Association administration fee, the arbitrator's fee, and costs for the use of facilities during the hearings, shall be borne equally by the parties to the arbitration.  Attorneys' fees may be awarded to the prevailing or most prevailing party at the discretion of the arbitrator.  The provisions of Sections 1282.6, 1283, and 1283.05 of the California Code of Civil Procedure apply to the arbitration.  The arbitrator shall not have any power to alter, amend, modify or change any of the terms of this Agreement nor to grant any remedy which is either prohibited by the terms of this Agreement, or not available in a court of law.  The decision of the arbitrator shall be final, binding and non-appealable.

12.7  <u>Severability</u>.  If any provision of this Agreement or the application of such provision to any person or circumstance shall be held invalid, the remainder of this Agreement or the application of such provision to persons or circumstances other than those to which it is held invalid shall not be affected thereby.

12.8  <u>Notices</u>.  Any notices to be given or to be served upon the Company or any party hereto in connection with this Agreement must be in writing (which may include facsimile) and will be deemed to have been given and received when delivered to the address specified by the party to receive the notice.  Such notices will be given to a Member at the address specified in Exhibit "A" hereto.  Any party may, at any time by giving five (5) days' prior written notice to the other Members, designate any other address in substitution of the foregoing address to which

BB to WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

16

such notice will be given.

12.9   Amendments.  All amendments to this Agreement will be in writing and signed by all of the Members.

12.10  Multiple Counterparts.   This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

12.11  Attorney Fees.  In the event that any dispute between the Company and the Members or among the Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses of enforcing any right of the prevailing party, including without limitation, reasonable attorneys' fees and expenses, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment. Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorney fees and costs incurred in enforcing such judgment and an award of prejudgment interest from the date of the breach at the maximum rate allowed by law. For the purposes of this Paragraph: (i) attorney fees shall include, without limitation, fees incurred in the following: (1) post-judgment motions; (2) contempt proceedings; (3) garnishment, levy and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation and (ii) the term "prevailing party" shall mean the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise.

12.12  Remedies Cumulative.  The remedies under this Agreement are cumulative and shall not exclude any other remedies to which any person may be lawfully entitled.

12.13  Consent of Spouse.  Within ten (10) days after any individual becomes a Member or a Member marries, such Member shall have its spouse execute a consent substantially in the form attached to this Agreement.

BB tv WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

17

IN WITNESS WHEREOF, all of the Members of WESTCLIFF INVESTORS, LLC, a California limited liability company, have executed this Agreement, consisting of pages, including this page, and Exhibit "A", effective as of the date written above.

_____
Barry Beitler

_____
John Bral

_____
Betsy Boyd

0RIV WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

18

## EXHIBIT "A"

### CAPITAL CONTRIBUTIONS
### AND ADDRESSES OF MEMBERS

#### OF

### WESTCLIFF INVESTORS, LLC
#### a California limited liability company

| Member's Name | Member's Address | Member's Initial Capital | Member's Membership Interest |
|---|---|---|---|
| Barry Beitler | 825 S. Barrington<br>Los Angeles, CA 90049 | 50% of all required capital | 47.5% |
| John Bral | 64 Sandpiper<br>Irvine, CA 92604 | 50% of all required capital | 47.5% |
| Betsy Boyd | 3456 Summerset Circle<br>Costa Mesa, CA 92626 | -0- | 5.0% |
| TOTALS | | 100% of all required capital | 100.0% |

DB1ic WESTCLIFFINVESTORS-OPERATING AGREEMENT-final

19



**From:** **John Bral** jbral@ventureregroup.com
**Subject:** FW: WESTCLIFF
**Date:** November 11, 2013 at 2:56 PM
**To:** donald.rezak@gmail.com
**Cc:** bbeitler@beitler.com

Hi Donald,

This is the offer that I talked to you about. We will talk at 4pm.

Thank you.
John

---

**From:** F. Alaghband [mailto:falaghband@acsirvine.com]
**Sent:** Monday, November 11, 2013 11:36 AM
**To:** John Bral
**Subject:** Re: WESTCLIFF

Hi John,

Attached is the offer.  Thanks, Fred

---

**From:** John Bral <jbral@ventureregroup.com>
**Date:** Mon, 11 Nov 2013 10:48:47 -0800
**To:** Fred Alaghband <falaghband@acsirvine.com>, Raquel Gillen <marketing@ventureregroup.com>
**Subject:** WESTCLIFF

Here it is.

Raquel.

Best Regards,

# John

John Bral



**Venture RE Group**
2601 Main Street, Suite 960
Irvine, CA 92614
P: 949.721.8600
F: 949.752.2583
C: 714.719.8577

DRE Broker # 01523188
DRE  # 01035461

Venture RE Group Confidentiality Statement: The information contained in this transmission is privileged and confidential. It is intended only for the recipient(s) named above. If you are not the intended recipient, please forward this to the intended recipient immediately. Anyone other than the intended recipient is strictly prohibited from any dissemination, distribution or copying of this transmission. If you have received this in error, please contact the sender immediately and destroy the transmission.



EXHIBIT  2



**DEVELOPMENT GROUP INC.**

November 11, 2013

**Mr. John Bral**
Venture Real Estate Group
*Via Email*

**RE:  OFFER TO PURCHASE 1901 Westcliff, Newport Beach**

Dear John:

Thank you for the opportunity to submit this offer to purchase the 1901 Westcliff property.  ACS would be willing to proceed and enter into a purchase and sale agreement under the following terms:

1.  BUYER:                              ACS Development Group, Inc. and or assignee.

2.  SELLER:                             Westcliff Investors, LLC

3.  PROPERTY:                        Fee interest in 1901 Westcliff Drive, Newport Beach

4.  PURCHASE PRICE:            Eight Million Six Hundred Thousand Dollar ($8,600,000)

5.  DEPOSIT:                           Fifty Thousand Dollars ($50,000), which is applicable to the Purchase Price at close of escrow.

6.  CONDITION OF PROPERTY:  As is.

7.  DUE DILIGENCE PERIOD:    Fifteen (15) business days from opening of escrow. Buyer shall have the right to enter onto the property for inspection purposes.  Upon completion of the due diligence Buyer shall increase the deposit to $100,000 which shall become non-refundable and applicable to the purchase price.

8.  DOCUMENTS PROVIDED BY SELLER:  Seller shall provide Buyer with all the relevant documents in its possession to assist Buyer's due diligence, including the following:

   a.  Preliminary Title Report
   b.  As-built and proposed site and building plans

16148 Sand Canyon Avenue   Suite 100   Irvine, CA 92618-3715   949 263 1920   Fax 949 263 1921
REAL ESTATE DEVELOPMENT ▪ ASSET MANAGEMENT
www.acsirvine.com

EXHIBIT 3

November 11, 2013
Page 2 of 2

      c.  Environmental Report/Soils Report
      d.  Copy of existing leases
      e.  Copy of new lease LOI's
      f.  ALTA survey
      g.  Cost estimates and plans for the elevator and
        other building improvements

9.  CLOSE OF ESCROW:     Sixty (60) days from the expiration of Buyer's due
               diligence period.

10.  CONTINGENCY:      Buyer's due diligence

11.  BROKERAGE:       Buyer is not represented by a broker. However, Buyer's
               principal is a licensed real estate broker.

12.  EXPIRATION:       This proposal shall remain in effect until 5:00 PM on
               Friday, November 15, 2013.

13.  NON-BINDING:      This is a non-binding offer for discussion of the outline
               of a deal prior to preparation of a formal purchase and
               sale agreement on an AIR form. Only a fully executed
               PSA will be binding on parties.

I look forward to your positive response to the above terms. Please call with any questions you may have.

Sincerely,

ACS Development Group, Inc.

Fred Alaghband
President

Seller's Approval:

_____   Date: _____

_____   Date: _____

From: **rezak donald** donald.rezak@gmail.com
Subject: Miscellaneous and Westcliff Investors, LLC
Date: December 9, 2013 at 10:20 AM
To: John Bral jbral@venturergroup.com
Cc: Barry Beitler bbeitler@beitler.com, donald.rezak@gmail.com Rezak donald.rezak@gmail.com

John:

the following is based on our telephone conversation.

first, i would dearly like to move this matter beyond its current stagnant circumstance. you have had a memorandum, which essentially provides for the handling of all matters and those matters that are not specifically resolved in the memorandum are subject to binding arbitration, which I believe is the operative provision in the operating agreements. the biggest impediment is that you have had the memorandum for the past three weeks and we have no response other than a response will be forthcoming, which challenges credulity. On Friday you stated that you would be meeting with your attorney on Saturday and would have a response to the memorandum. As of this morning no response has been delivered and as you know, time is of the essence.

second, as for the service of the petition to compel arbitration, it was filed after we received notice of your filing. your filing was the precipitous cause. you may assert that you did not serve your action and it was done before you received your memorandum. however, we had no prior notice from you and the same could be said for the petition. you still have not responded to the memorandum so i am unclear how one would find a responsive action to be offensive. if you look at the petition it is pretty vanilla.

third, your suggestion that you want Bob to do the accounting first before signing the memorandum is not acceptable. bob is going to do an accounting in the first instance because it benefits both parties, whether we include it the memorandum or not. the entire purpose of the memorandum is outline those matters the parties have reached an agreement in principle and leave the open matters to binding arbitration. those matters to which have been in principle agreed to are largely terms you have demanded.

fourth, as for Westcliff, Hankey has made a proposal consisting of $8.6mm net, closing in five weeks. the proposal will be subject to Barry and you separating your interests, with Barry retaining Westcliff to complete a 1031 exchange and you TICing your membership in Westcliff to a new entity, with both you and the new entity confirming that any existing agreements between the parties will not be affected by the TIC and that the new entity will be subject to any agreements as if it was your membership interest in Westcliff in the agreements in the first instance.

in addition, the purchase offer comes with a loan to take out First Citizens Bank/OVMI at 4.6mm, which is currently running at default interest and reimbursement of attorneys fees and costs. please advise if you were served and who your counsel is with regard to this matter. i am attaching the loan proposal, with terms, by Hankey Investment Company.

accordingly, i need a response to the purchase offer by Hankey and loan by Hankey.

please advise.

donald



EXHIBIT 2

From: **rezak donald** donald.rezak@gmail.com
Subject: Re: Miscellaneous and Westcliff Investors, LLC
Date: December 9, 2013 at 11:02 AM
To: John Bral jbral@venturaregroup.com
Cc: Barry Beitler bbeitler@beitler.com, donald.rezak@gmail.com Rezak donald.rezak@gmail.com

no purchase offer in writing. barry would write a PSA, subject to approval of the following: (i) loan for First Citizens; (ii) purchase price for the Westcliff Property; (iii) TIC arrangement; and (iv) approval re non-trade funds or blocked account. this ironically takes us back to the memorandum.

Donald
On Dec 9, 2013, at 10:37 AM, John Bral <jbral@venturaregroup.com> wrote:

Hi Donald,
I will review your email and attached document and get back to you. In addition, I have not received a copy of any Purchase Offer from Hankey so please forward it so I can respond.

Best Regards,

# John

John Bral

**Venture RE Group**
2601 Main Street, Suite 960
Irvine, CA 92614
P: 949.721.8600
F: 949.752.2583
C: 714.719.8577

<image001.jpg>

DRE Broker # 01523188
DRE # 01035461

Venture RE Group Confidentiality Statement: The information contained in this transmission is privileged and confidential. It is intended only for the recipient(s) named above. If you are not the intended recipient, please forward this to the intended recipient immediately. Anyone other than the intended recipient is strictly prohibited from any dissemination, distribution or copying of this transmission. If you have received this in error, please contact the sender immediately and destroy the transmission.

---

**From:** rezak donald [mailto:donald.rezak@gmail.com]
**Sent:** Monday, December 09, 2013 10:20 AM
**To:** John Bral
**Cc:** Barry Beitler; donald.rezak@gmail.com Rezak
**Subject:** Miscellaneous and Westcliff Investors, LLC
**Importance:** High

John:

the following is based on our telephone conversation.

first, i would dearly like to move this matter beyond its current stagnant circumstance. you have had a memorandum, which essentially provides for the handling of all matters and those matters that are not specifically resolved in the memorandum are subject to binding arbitration, which I believe is the operative provision in the operating agreements. the biggest impediment is that you have had the memorandum for the past three weeks and we have no response other than a response will be forthcoming. which challenges credulity. On Friday you stated that you would be meeting with your attorney on Saturday and would have a response to the memorandum. As of this morning no response has been delivered and as you know, time is of the essence.

second, as for the service of the petition to compel arbitration, it was filed after we received notice of your filing. your filing was the precipitous cause. you may assert that you did not serve your action and it was done before you received your memorandum. however, we had no prior notice from you and the same could be said for the petition. you still have not responded to the memorandum so i am unclear how one would find a responsive action to be offensive. if you look at the petition it is pretty vanilla.

third, your suggestion that you want Bob to do the accounting first before signing the memorandum is not acceptable. bob is

EXHIBIT 5

EXHIBIT "2"
Page 145

going to do an accounting in the first instance because it benefits both parties. whether we include it the memorandum or not. the entire purpose of the memorandum is outline those matters the parties have reached an agreement in principle and leave the open matters to binding arbitration. those matters to which have been in principle agreed to are largely terms you have demanded.

fourth, as for Westcliff. Hankey has made a proposal consisting of $8.6mm net, closing in five weeks. the proposal will be subject to Barry and you separating your interests, with Barry retaining Westcliff to complete a 1031 exchange and you TICing your membership in Westcliff to a new entity. with both you and the new entity confirming that any existing agreements between the parties will not be affected by the TIC and that the new entity will be subject to any agreements as if it was your membership interest in Westcliff in the agreements in the first instance.

in addition, the purchase offer comes with a loan to take out First Citizens Bank/OVMI at 4.6mm, which is currently running at default interest and reimbursement of attorneys fees and costs. please advise if you were served and who your counsel is with regard to this matter. i am attaching the loan proposal. with terms. by Hankey Investment Company.

accordingly, i need a response to the purchase offer by Hankey and loan by Hankey.

please advise.

donald

**From:** rezak donald donald.rezak@gmail.com
**Subject:** Westcliff/Ocean
**Date:** December 11, 2013 at 9:02 AM
**To:** John Bral jbral@ventureregroup.com
**Cc:** Barry Beitler bbeitler@beitler.com, donald.rezak@gmail.com Rezak donald.rezak@gmail.com

John:

Unless circumstances allow for another alternative, the following is submitted for your consideration.

1.  Agreement is reached to sell Westcliff, under the TIC arrangement previously referenced in correspondence, to Hankey Investments, who will provide financing for the take-out for the First Citizens Bank loan on Ocean.

2.  The conditions referred to, include, but are not limited to, TIC entity affirming obligations of each of the outstanding agreements so that neither party is prejudiced by the structure of the transaction.

3.  We will need to discuss the use of the sales proceeds.

As you know, Barry has no desire to sell Westcliff.  The state of your relationship has changed circumstances.  Since you have not provided any response to Memorandum proposal, I am assuming that your representations of a response to be forthcoming to not, nor ever intended to be, the case. Please advise as to the above.

Donald



EXHIBIT 

**Barry Beitler**

| | |
|---|---|
| **From:** | John Bral <jbral@ventureregroup.com> |
| **Sent:** | Tuesday, January 21, 2014 8:52 AM |
| **To:** | Barry Beitler |
| **Cc:** | rezak donald |
| **Subject:** | 1901 Westcliff - Offer |
| **Attachments:** | westcliff offer.pdf |

Barry,
I am resending the Offer from ACS Development Group for you review and comments.

Best Regards,

*John*

John Bral

**Venture RE Group**
2601 Main Street, Suite 960
Irvine, CA 92614
P: 949.721.8600
F: 949.752.2583
C: 714.719.8577

DRE Broker # 01523188
DRE # 01035461

Venture RE Group Confidentiality Statement: The information contained in this transmission is privileged and confidential.
It is intended only for the recipient(s) named above. If you are not the intended recipient, please forward this to the intended
recipient immediately. Anyone other than the intended recipient is strictly prohibited from any dissemination, distribution or
copying of this transmission. If you have received this in error, please contact the sender immediately and destroy the
transmission.

Time: 8:55 AM
Date: 1/27/2015 8:55 AM



EXHIBIT ____



'000000004012700000022002262013'



**PREMIER**
BUSINESS BANK

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | 0042 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations

**Borrower:** OCEAN VIEW MEDICAL INVESTORS LLC
825 S. BARRINGTON AVENUE
LOS ANGELES, CA 90049

**Lender:** PREMIER BUSINESS BANK
700 S. FLOWER STREET, SUITE 2000
LOS ANGELES, CA 90017
(213) 689-4800

**Guarantor:** JOHN J. BRAL
64 SANDPIPER
IRVINE, CA 92604

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from any and all debts; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. Guarantor's obligations under this Guaranty shall be in addition to any of Guarantor's obligations, or any of them, under any other guaranties of the Indebtedness or any other person heretofore or hereafter given to Lender unless such other guaranties are modified or revoked in writing; and this Guarantor shall not, unless provided in this Guaranty, affect, invalidate, or supersede any such other guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness

**EXHIBIT** 2

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 4012700000

remains unpaid and even though the indebtedness may from time to time be zero dollar ($0.00).

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the indebtedness or any part of the indebtedness, including increases and decreases of the rate of interest on the indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional indebtedness; (B) proceed against any person, including Borrower, before proceeding against Guarantor; (C) proceed against any collateral for the indebtedness, including Borrower's collateral, before proceeding against Guarantor; (D) apply any payments or proceeds received against the indebtedness in any order; (E) give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person; (I) the cessation from any cause whatsoever, other than payment in full, of the indebtedness; (J) the application of proceeds of the indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the indebtedness, or the loss or release of any collateral by operation of law or otherwise; (L) any statute of limitations in any action under this Guaranty or on the indebtedness; or (M) any modification or change in terms of the indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the indebtedness is due and any change in the interest rate, and including any such modification or change in terms after revocation of this Guaranty on the indebtedness incurred prior to such revocation.

Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because Borrower's obligation is secured by real property. This means among other things: (N) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower. (O) If Lender forecloses on any real property collateral pledged by Borrower. (1) the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (2) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all of the indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the indebtedness now or hereafter held by Lender.

Guarantor's Understanding With Respect To Waivers. Guarantor warrants and agrees that each of the waivers set forth above is made with

(h)

# COMMERCIAL GUARANTY
## (Continued)

Loan No: 4012700000

Page 3

Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**Subordination of Borrower's Debts to Guarantor.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Guaranty:

**AMENDMENTS.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**ATTORNEYS' FEES; EXPENSES.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**CAPTION HEADINGS.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.

**CHOICE OF VENUE.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of LOS ANGELES County, State of California.

**INTEGRATION.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**INTERPRETATION.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**NOTICES.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**BORROWER.** The word "Borrower" means OCEAN VIEW MEDICAL INVESTORS LLC and includes all co-signers and co-makers signing the Note

Loan No: 4012700000

**COMMERCIAL GUARANTY**
**(Continued)**

Page 4

and all their successors and assigns.

**GUARANTOR.** The word "Guarantor" means everyone signing this Guaranty, including without limitation JOHN J. BRAL, and in each case, any signer's successors and assigns.

**GUARANTY.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**INDEBTEDNESS.** The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

**LENDER.** The word "Lender" means PREMIER BUSINESS BANK, its successors and assigns.

**NOTE.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED FEBRUARY 25, 2013.**

GUARANTOR:

X
JOHN J. BRAL

*000000004012700000022002252013*



**PREMIER**
BUSINESS BANK

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
|           |           |          |         |             |         | 0042    |          |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * " has been omitted due to text length limitations.

**Borrower:**  OCEAN VIEW MEDICAL INVESTORS LLC
826 S. BARRINGTON AVENUE
LOS ANGELES, CA 90049

**Lender:**  PREMIER BUSINESS BANK
700 S. FLOWER STREET, SUITE 2000
LOS ANGELES, CA 90017
(213) 689-4800

**Guarantor:**  BARRY BEITLER
13040 EVANSTON STREET
LOS ANGELES, CA 90049

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include any Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. Guarantor's obligations under this Guaranty shall be in addition to any of Guarantor's obligations, or any of them, under any other guaranties of the Indebtedness or any other person heretofore or hereafter given to Lender unless such other guaranties are modified or revoked in writing; and this Guarantor shall not, unless provided in this Guaranty, affect, invalidate, or supersede any such other guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness

EXHIBIT 9

EXHIBIT "2"
Page 153

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 4012700000                                                    Page 2

remains unpaid and even though the indebtedness may from time to time be zero dollars ($0.00).

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the indebtedness or any part of the indebtedness, including increases and decreases of the rate of interest on the indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that: (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional indebtedness; (B) proceed against any person, including Borrower, before proceeding against Guarantor; (C) proceed against any collateral for the indebtedness, including Borrower's collateral, before proceeding against Guarantor; (D) apply any payments or proceeds received against the indebtedness in any order; (E) give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person; (I) the cessation from any cause whatsoever, other than payment in full, of the indebtedness; (J) the application of proceeds of the indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the indebtedness, or the loss or release of any collateral by operation of law or otherwise; (L) any statute of limitations in any action under this Guaranty or on the indebtedness; or (M) any modification or change in terms of the indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the indebtedness is due and any change in the interest rate, and including any such modification or change in terms after revocation of this Guaranty on the indebtedness incurred prior to such revocation.

Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because Borrower's obligation is secured by real property. This means among other things: (N) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower. (O) If Lender forecloses on any real property collateral pledged by Borrower: (1) the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (2) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all of the indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the indebtedness now or hereafter held by Lender.

**Guarantor's Understanding With Respect To Waivers.** Guarantor warrants and agrees that each of the waivers set forth above is made with

(ii)

EXHIBIT "2"
Page 154

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 4012700000                                                         Page 3

Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**Subordination of Borrower's Debts to Guarantor.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Guaranty:

**AMENDMENTS.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**ATTORNEYS' FEES; EXPENSES.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**CAPTION HEADINGS.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.

**CHOICE OF VENUE.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of LOS ANGELES County, State of California.

**INTEGRATION.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**INTERPRETATION.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when the this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or of Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**NOTICES.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**BORROWER.** The word "Borrower" means OCEAN VIEW MEDICAL INVESTORS LLC and includes all co-signers and co-makers signing the Note

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 4012700000                                                      Page 4

and all their successors and assigns.

**GUARANTOR.** The word "Guarantor" means everyone signing this Guaranty, including without limitation BARRY BEITLER, and in each case, any signer's successors and assigns.

**GUARANTY.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**INDEBTEDNESS.** The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

**LENDER.** The word "Lender" means PREMIER BUSINESS BANK, its successors and assigns.

**NOTE.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED FEBRUARY 25, 2013.**

**GUARANTOR:**

X _____
  BARRY BEITLER

LASER PRO Lending, Ver. 17.4.10.003 Copr. Harland Financial Solutions, Inc. 1997, 2013. All Rights Reserved.  - CA  G:\LASERPRO\CFI\LPL\E30.FC  TR-434  PR-5

## Barry Beitler

| | |
|---|---|
| **From:** | Barry Beitler <bbeitler@beitler.com> |
| **Sent:** | Wednesday, February 05, 2014 3:31 PM |
| **To:** | 'John Bral' |
| **Subject:** | Charlin - Premier Bank |

John:

I just learned that last monthly payments to Charlin and Premier Bank have been returned. As you know both the Charlin Loan and Premier Loan have both matured. How do you expect to make the last payment and pay-off these matters. I am prepared to do my share of the obligation. Please advise how you plan to address your share. Moreover, you have a significant amount of money in Mission's bank account for no apparent purpose. My suggestion is that you distribute it to the members and, you and I, from our individual proceeds pay the past monthly payment to Charlin and Premier Bank with the remainder applying toward interest.

Pease let me know.

Barry

Time: 4:07 PM
Date: 1/26/2015 4:07 PM

EXHIBIT  10



**PREMIER**
BUSINESS BANK

February 14, 2014

Mr. John J. Bral                                                      **VIA FEDEX**
Mr. Barry Beitler
RE: Ocean View Medical Investors LLC
825 BARRINGTON AVENUE
LOS ANGELES, CA  90049

Re:    NOTICE OF INTENTION TO FORECLOSE

Gentlemen:

Please be advised that the above note for Ocean View Medical Investors matured on January 30, 2014 and is now in default. The default rate of 6% has been added to your interest rate. The amount of $251,786.46 is due as of February 14, 2014.

Premier Business Bank will record a "Notice of Default" on February 28th, 2014. Please contact the undersigned as soon as possible to avoid foreclosure and additional costs of collection.

Sincerely,

Edward J. Longo
SVP, Chief Credit Officer
PREMIER BUSINESS BANK
700 S. Flower Street, Suite 2000
Los Angeles, CA 90017
(213) 443-4845 (Direct)
(213) 443-4849 (Fax)
edward.longo@pbbla.com

cc: John J. Bral, Guarantor
cc: Barry Beitler, Guarantor

MCI Center 700 S. Flower Street Suite 2000, Los Angeles, California 90017          www.ibankpremier.com
Telephone:  (213) 689-4800    Fax: (213) 443-4899

EXHIBIT _11_

# Barry Beitler

| | |
|---|---|
| **From:** | Farah Schureman [Farah.Schureman@pbbla.com] |
| **Sent:** | Friday, February 14, 2014 3:58 PM |
| **To:** | John Bral (jbral@venturereqroup.com); bbeitler@beitler.com |
| **Subject:** | Notice of Intention to Foreclose |
| **Attachments:** | Notice of Intention to Foreclose.pdf |

Gentlemen,

Please see attached.

Best regards,

Farah Schureman
Senior Vice President / Corporate Banking
PREMIER BUSINESS BANK
700 S. Flower Street, Suite 2000
Los Angeles, CA 90017
213-443-4842 Office
626-676-4366 Cell
213-443-4898 Fax
farah.schureman@pbbla.com

"This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited."

2/18/2014

## Barry Beitler

| | |
|---|---|
| **From:** | Barry Beitler <bbeitler@beitler.com> |
| **Sent:** | Friday, February 14, 2014 12:53 PM |
| **To:** | 'John Bral' |
| **Subject:** | Outstanding Matters |

John -

We have many outstanding matters.  Please respond to the following:

1. I have previously asked you to advise me of the status of the 3rd floor lease in Ocean and whether you have documents reflecting a current and operative agreement.
2. Do you have any current proposals regarding Ocean and First Citizens?
3. Do you have any proposal to satisfy the Charlin obligation, which is now all due?
4. Do you have any proposal to satisfy the Premier Bank obligation, which is now all due?
5. I have asked for an explanation for regarding the amount of money be kept in Mission's account and why it has not been distributed and for an accounting as to which members have received a distribution and whether any distributions are owing.  The working capital of the company does not require it.  However, you control the books and accounts.

Lastly, this shall serve as authorization for you to issue my Mission distribution and apply it to my portion of the payment of the $12,406 due on Feb 6th, re Commercial Bank.  It will be deemed late if not paid today.  Please confirm

Barry

Time: 4:06 PM
Date: 1/26/2015 4:06 PM

EXHIBIT  12

Total Pgs: 1
Page#: 1

**Barry Beitler**

| | |
|---|---|
| **From:** | John Bral <john@bralrealtyadvisors.com> |
| **Sent:** | Monday, February 24, 2014 1:14 PM |
| **To:** | bbeitler@beitler.com |
| **Subject:** | OV Payments |

Barry,
We need to pay Charlin, Premier and various payments for February and need your contribution of $3,900 (a check for $3900) to be mailed to our office by Tuesday February 25th.  **Your prompt response is needed!**

EXHIBIT _13_

Time: 4:47 PM
Date: 1/26/2015 4:47 PM

Total Pgs: 1
Page#: 1

EXHIBIT "2"
Page 161

## Barry Beitler

| | |
|---|---|
| **From:** | Barry Beitler <bbeitler@beitler.com> |
| **Sent:** | Tuesday, February 25, 2014 10:53 AM |
| **To:** | 'John Bral' |
| **Subject:** | Charlin and Premier |

John:

I received your email of 2/14/14 concerning the Charlin and Premier notes.  It is out of date.  The Charlin and Premier notes are now, and have been due in full.  Recently, I sent an email to you on how you plan to pay in full the obligations and your email, if in response to my request, is irrational.  You assume an interest payment will satisfy the Lender when they are demanding payment in full.  As you know, the Charlin Trust has filed suit against us.  The Premier note is in default, a letter notice of default has been issued and they are proceeding to a NOD.  The California Commercial Bank will be due in full in the next 30 days.  I am now, and have been, ready to pay my half of the obligation.  I am waiting to hear from you how you plan to address your half of each of the above obligations.

Further, your email addresses other "various payments for February" without stating or listing what those payments constitute. Please immediately advise.

Barry

Barry Beitler
Beitler Commercial Realty Services
825 S. Barrington Avenue
Los Angeles, CA  90049
Phone (310) 820-2955
Fax   (310) 820-7224
Broker # 00808850
License # 00499329

Time:  4:05 PM
Date:  1/26/2015 4:05 PM

EXHIBIT 

Total Pgs:  1
Page#:  1

## Barry Beitler

**From:** Barry Beitler <bbeitler@beitler.com>
**Sent:** Tuesday, February 25, 2014 10:49 AM
**To:** 'John Bral'
**Subject:** Open Items

John

On February 14, 2014, I sent you an email at 12:53 requesting specific items, to which you responded by stating you would have a response shortly.  It is now 11 days later and I've received no response.

To repeat, the open items are as follows:

1. 3rd floor lease at Ocean

2. 3rd floor purchase agreement at Ocean

3. Status of the condo map

4. Status of any proposal you may have with regard to your joint responsibility of the First Citizens Bank and Ocean loan

5. Status of any proposal you may have with regard to your joint responsibility of the Charlin loan

6. Status of any proposal you may have with regard to your joint responsibility of the Premier loan

7. Proposal for California Commercial Bank which is coming due in the next 30 days (as you know, Mineral will not support the loan)

8. Explanation to the holding of funds in Mission

9. Response to my instruction as a managing member not to withhold funds and allow for distributions

10. You have not tendered a letter to Citizens Business Bank explaining your impermissible membership transfer to J. Ahdoot re Ocean

11. Documentation as to the second floor status of Ocean.

Please advise when I will finally obtain an explanation with regard to the foregoing.  Please note that while I was compelled to pay off the California Commercial Bank Line on our behalf, I will not do so in any of the above instances. Moreover, I have no immediate desire to sell assets to finance your obligation to third parties at the expense of my investment in each of the properties.

Barry

Barry Beitler
Beitler Commercial Realty Services
825 S. Barrington Avenue
Los Angeles, CA  90049
Phone (310) 820-2955

Time: 4:06 PM
Date: 1/26/2015 4:06 PM

EXHIBIT _15_

Total Pgs: 2
Page#: 1

EXHIBIT "2"
Page 163

**Fax   (310) 820-7224**
**Broker # 00808850**
**License # 00499329**

Total Pgs:  2
Page#:  2

EXHIBIT "2"
Page 164

## PROOF OF SERVICE

*John Bral v. Westcliff Investors, LLC, etc., et al.*
**Los Angeles County Superior Court**
**Central District Case, No. BC 553693**
[Formerly OCSC, Complex, Case No. 30-2013-00688658-CU-MC-CJC]

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles, California 90049.

On January 28, 2015, I served the foregoing document(s) described as:
**DECLARATION OF BARRY BEITLER IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** on all interested parties in this action ☒ by placing a true copy ☐ by placing true copies thereof enclosed in sealed envelopes addressed as shown on the attached service/mailing list in the manner indicated below:

☒      **(BY OVERNIGHT DELIVERY):** I deposited said document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered said document(s) to a courier or driver authorized by the overnight service carrier to receive said document(s), in a sealed envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) listed on the attached service/mailing list.

☒      **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 28, 2015, at Los Angeles, California.

*Katie Finn*
Katie Finn

---

**PROOF OF SERVICE**

EXHIBIT "2"
Page 165

## SERVICE/MAILING LIST

*John Bral v. Westcliff Investors, LLC, etc., et al.*
**Los Angeles County Superior Court, Case, No. BC 553693**
*[Formerly OCSC, Complex, Case No. 30-2013-00688658-CU-MC-CJC]*

Babak (Bobby) Samini, Esq.                   Attorneys for Plaintiff
SAMINI SCHEINBERG, PC                        JOHN BRAL
840 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel:    (949) 724-0900
Fax:    (949) 724-0901
Email: bsamini@saminilaw.com

---

**SERVICE/MAILING LIST**

**EXHIBIT 11**

# EXHIBIT 11

1  Bobby Samini, Esq. (SBN 181796)
   SAMINI SCHEINBERG, PC
2  949 South Coast Drive, Suite 420
   Costa Mesa, California 92626
3  Telephone: (949) 724-0900
   Facsimile: (949) 724-0901
4
   Law Office of
5  Lloyd K. Chapman (SBN 123016)
   4558 Sherman Oaks Avenue
6  Sherman Oaks, California 91403-3017
   Telephone: (818) 304-8412
7  Facsimile: (818) 990-1599
8  Attorneys for Plaintiff
   JOHN BRAL
9
10          SUPERIOR COURT OF THE STATE OF CALIFORNIA
11          FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT
12

| | |
|---|---|
| JOHN BRAL, an individual, | **CASE NO. BC553693** |
| Plaintiff, | (formerly Orange County Superior Court No. 30-2013-00688658-CU-BC-CJC) |
| vs. | (Assigned to Honorable Rolf M. Treu, Dept. 58) |
| WESTCLIFF INVESTORS, LLC, a California limited liability company; BARRY BEITLER, an individual; BETSY BOYD, an individual; and DOES 1 through 50, inclusive, | **NOTICE OF MOTION AND MOTION FOR ORDERS:** **(1) APPOINTING ARBITRATOR AND ORDERING COMPLETION OF ARBITRATION BY MARCH 15, 2016, OR, IN THE ALTERNATIVE, TO VACATE THE ORDER TO ARBITRATE AND SET FOR IMMEDIATE TRIAL FOR DEFENDANTS' FAILURE TO PROCEED WITH ARBITRATION; AND** |
| Defendants. | **(2) APPOINTING RECEIVER TO SELL REAL PROPERTY PENDING ARBITRATION AND DISSOLUTION OF THE LLC** |

**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF LLOYD K. CHAPMAN AND JOHN BRAL**

DATE: February 19, 2016
TIME: 8:30 a.m.
DEPT.: 58
Reservation ID: 160111095681

Trial Date:          Not Set

---

1

**MOTION TO APPOINT ARBITRATOR AND RECEIVER**

1   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on February 19, 2016, at 8:30 a.m. or as soon thereafter as

3 the matter may be heard, in Department 58 of the Court located at 111 North Hill Street, Los

4 Angeles, California, plaintiff John Bral will and hereby does move the court for the following orders:

5         1a. Appointing an arbitrator of this matter;

6         1b. Requiring arbitration to be completed no later than March 15, 2016Orderiand order

7 that arbitration be completed by March 5, 2016;

8         1c. In the alternative to appointing an arbitrator, vacating the order to arbitrate this matter,

9 returning the matter to the Department 58 civil active list, and setting it for immediate trial as a

10 consequence of defendants' failure to proceed with arbitration;

11         2. Appointing a receiver to accept one of the pending offers for the sale of the Westcliff

12 property, or, in the alternative, to market and sale the property pending arbitration and dissolution of

13 the LLC.

14         This motion is made pursuant to Code of Civil Procedures sections 1281 *et seq.,* 564 *et*

15 *seq.,* Rules of Court, rules 3.1175 *et seq.* and on the grounds that Defendants refuse to abide by the

16 terms of the operating agreement for selection of an arbitrator, that defendants have done so to gain

17 an unfair advantage, that resolution of this dispute must be completed within three months to avoid

18 permanent and catastrophic injury to plaintiff and to his interest in the LLC, that Defendant Beitler

19 has agreed to sell the LLC property but refuses to accept any offer other than one he is affiliated

20 with, that the LLC property is in imminent danger of being lost as a loan will shortly become due

21 that cannot be paid without a sale of the LLC real property, that the LLC is subject to dissolution and

22 winding up, and that the ends of justice so require.

23         This motion is based upon this Notice of Motion and Motion, upon the memorandum of

24 points and authorities, declarations and exhibits attached hereto, as upon such further evidence of

25 which the court is entitled to take judicial notice.

26

27 DATED: January 28, 2016

28                                    Lloyd K. Chapman
                                      Co-Counsel for Plaintiff John Bral

**MOTION TO APPOINT ARBITRATOR AND RECEIVER**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY

This case is 18 months old.  Defendants moved to compel arbitration, and not only have not taken any steps to arrange arbitration, they refuse to consent to an arbitrator.  Defendants agreed to sell the LLC's real property, but refuses to accept either of two purchase offers for the real property and insists only that a lower offer Defendant solicited be accepted.  One offer has since been withdrawn.  The other offeror has stated he will soon withdraw his offer.

This property had a junior loan for $250,000 that could not be paid.  Both plaintiff and Defendant Beitler guaranteed that loan.  When it became due, Beitler, through his solely owned, funded and managed LLC paid off the note and had the bank "assign" it to his alter ego company.  He then sued Bral for 100% of the amount, has obtained a charging order to sell Bral's interest for a fraction of its $1 million plus value, and has taken steps to force the sheriff's sale.  Defendant Beitler refuses to credit his portion of the debt.

There is an additional junior loan on the property for $400,000 that becomes due in July, 2016.  There are not sufficient funds to pay this note without a sale of the LLC property and the lender has a reputation for aggressiveness.

Finally, the LLC is at a deadlock, since Beitler and Bral – co-managers with equal voting powers – cannot agree.  Dissolution and/or buy-out of Bral is a required certainty of this action.

Consequently, plaintiff seeks to have the court appoint an arbitrator, to have the parties ordered to arbitrate within 30 days, or, in the alternative, to return the mater to Department 58 and set for an immediate trial.

Plaintiff also seeks to have a receiver appointed for the specific purpose of selling the LLC property at the best price, whether that be to one of the current open offers or at his discretion to market and sell the property so that the property does not again go into default.

### II. FACTS

John Bral, Barry Beitler, and Betsy Boyd (Mr. Beitler's sister) are the only members of defendant Westcliff Investors, LLC.  Ms. Boyd owns 5%; Mr. Bral and Mr. Beitler the remaining

1   interest.  Westcliff owns a parcel of real estate in Newport Beach worth approximately $9 million (a

2   purchase offer for that amount was tendered to and rejected by Mr. Beitler).  Liens on the property

3   currently total about $4.6 million, meaning that there is approximately $4.4 million in equity.

4          In November, 2013, Mr. Bral initiated this suit seeking dissolution of the LLC and sale and

5   distribution of its asset (real property and improvements in Newport Beach, California) and breach of

6   fiduciary duty claims against Mr. Beitler.  After some procedural maneuvering, this lawsuit was

7   transferred from Orange County where the property was located to here.  Defendants then moved to

8   compel binding arbitration, which was granted in November of **2014**.  Since that time, defendants

9   have done nothing to move this matter to arbitration, and further have refused to cooperate in

10  plaintiff's attempts to select an arbitrator.  Plaintiff has made nearly a dozen requests for defendant to

11  select or propose an arbitrator, and defendants continue to ignore the requests. Consequently,

12  plaintiff seeks the appointment of an arbitrator who can hear and adjudicate this matter by March 15,

13  2016.  Lists of eleven retired judges from two different services, all of whom are available within the

14  next 50 days to hear this matter, are attached.

15         In addition, Mr. Beitler previously consented to the sale of the real property held by the

16  LLC – property which would be sold upon dissolution in any event.  For reasons unrelated to the

17  conduct of the business of the LLC, Mr. Beitler refuses to consent to a sale, instead continuing to

18  encumber the property with additional short term loans that the LLC cannot pay without a sale.  Mr.

19  Beitler has already personally purchased one such loan and then he himself began foreclosure

20  proceedings against the real property so that he could grab the equity in the property for himself at

21  the expense of his fellow members and particularly plaintiff Bral. When that foreclosure proceeding

22  was stopped, Beitler adopted a new tactic.

23         As he did here, Mr. Beitler, a guarantor with Bral on a note for LLC property, purchased the

24  note through Cannae Financial when it became due and there were not funds in the LLC to pay the

25  note.  Rather than cancel the note and seek contribution from Mr. Bral, Mr. Beitler instead had the

26  note assigned to Cannae, and then he sought 100% of the note from Bral.  On December 7, 2015 he

27  received a charging order to sell his interest in Westcliff to satisfy that debt.  He is currently

28  proceeding with attempts to sell the interest at a Sheriff's sale.

---

<div align="center">3</div>

<div align="center">**MOTION TO APPOINT ARBITRATOR AND RECEIVER**</div>

1        In July, 2015, the Westcliff property was encumbered with a one year loan in the amount of

2    $400,000.  The LLC does not generate enough income to pay-off the note and the beneficiary of the

3    note has a reputation for aggressiveness in his loans.  It is highly likely that the property will be

4    foreclosed upon to satisfy the note if it is not sold in advance.

5        As has been shown previously to this court, Mr. Beitler agreed to sell the property, but

6    when presented with a full market price offer, he then insisted that it be sold to someone he is

7    connected with – at a substantially lower price – so that he could obtain personal benefits, including

8    a commission (omitted from the other higher offers) and tax benefits.  One offer – at $9 million with

9    no commission and an agreement to structure a 1031 exchange, was lost just a few weeks ago

10   because the buyer had his own 1031 exchange deadline.

11       The property is at risk; it will be sold upon dissolution, but prior to that time the lender may

12   foreclose upon the property, causing a loss of $4 million in equity to the LLC.  Consequently,

13   appointment of a receiver to negotiate and conduct an immediate sale is appropriate.

14

15   **III. COURT APPOINTMENT OF AN ARBITRATOR IS APPROPRIATE WHERE THE**

16   **PARTIES CANNOT AGREE.**

17       More than a year ago, defendants sought to compel arbitration. They did nothing to further

18   it along.  Defendant made suggestions for arbitrators in July, August, October, November and

19   December.  Requests were made via letter, by email, and personally to defendants' counsel.  Each

20   time, the request was either ignored or defendants responded that they would "get back" to plaintiff

21   but then did not.  Even now, defendants have neither agreed to any one of the dozen arbitrators

22   offered nor offered one of their own choosing.  This matter is appropriate for the court to appoint.

23       Code of Civil Procedure section 1281.6 states, in pertinent part, "In the absence of an

24   agreed method [in the operating agreement], or if the agreed method fails or for any reason cannot be

25   followed, . . . the court, on petition of a party to the arbitration agreement, shall appoint the

26   arbitrator."

27       The parties cannot agree.  Plaintiff therefore requests the court to appoint an arbitrator.

28   //

**MOTION TO APPOINT ARBITRATOR AND RECEIVER**

## IV.  THE ARBITRATION SHOULD BE ORDERED COMPLETED BY MARCH 15.

This litigation has been pending for 18 months. The parties were ordered to arbitrate in November, 2014.  There is no justification for defendants' continued delay. Each of the proposed arbitrators can accommodate this schedule.

Plaintiff requests an order that arbitration be completed no later than March 15.

## V.  A RECEIVER SHOULD BE APPOINTED TO SELL THE PROPERTY

A loan is coming due that cannot be paid.  Mr. Beitler is using his superior wealth to foreclose Mr. Bral's interest, by buying a loan he guaranteed and then enforcing it only against plaintiff without any offset for the amount he legally owes.  A Sheriff's sale of Mr. Bral's interest in Westcliff pursuant to a charging order is imminent, and will be financially disastrous to Mr. Bral. An at market offer with no commission is pending, but will be lost soon.

Finally, sale of the propoerty upon dissolution is appropriate, and as that ending is imminent, the receiver should be appointed now to sell the propoerty pending the formal order of dissolution and winding up.

Code of Civil Procedure 564 gives the court authority to appoint a receiver to sell the LLC assets:

> (a) A receiver may be appointed, in the manner provided in this
> chapter, by the court in which an action or proceeding is pending in
> any case in which the court is empowered by law to appoint a receiver.
>
> (b) A receiver may be appointed by the court in which an action or
> proceeding is pending, or by a judge thereof, in the following cases:
>
> . ...
>
> (1) In an action . . . between partners or others jointly owning or
> interested in any property or fund, on the application of the plaintiff, or
> of any party whose right to or interest in the property or fund, or the
> proceeds thereof, is probable, and where it is shown that the property
> or fund is in danger of being lost, removed, or materially injured.

5

**MOTION TO APPOINT ARBITRATOR AND RECEIVER**

1      . . .

2           (9) In all other cases where necessary to preserve the property or rights

3           of any party.

4      Code of Civil Procedure section 565 also authorizes the court to appoint a receiver:

5           Upon the dissolution of any corporation, the Superior Court of the

6           county in which the corporation carries on its business or has its

7           principal place of business, on application of any creditor of the

8           corporation, or of any stockholder or member thereof, may appoint one

9           or more persons to be receivers or trustees of the corporation, to take

10          charge of the estate and effects thereof, and to collect the debts and

11          property due and belonging to the corporation, and to pay the

12          outstanding debts thereof, and to divide the moneys and other property

13          that shall remain over among the stockholders or members.

14

15          Here, plaintiff has shown the likelihood of imminent harm to the LLC property if a slae of

16     the property is not completed and funds distributed prior to July, 2016.  Further, as dissolution will

17     soon be ordered, sale now of the LLC property will ensure that there are no defaults and no more

18     self-dealing.

19

20          For all of these reasons, plaintiff requests this court to appoint an arbitrator, to order the

21     parties to complete arbitration by March 15, and to appoint a receiver for the specific purpose of

22     selling the LLC property to one of the current offers or any higher and better offer the receiver can

23     obtain as long as escrow closes prior to July, 2016.

24

25     DATED:  January 28, 2016

26                                             _____
                                               Lloyd K. Chapman
                                               Co-Counsel to Plaintiff John Bral

27

28

<div align="center">6</div>

**MOTION TO APPOINT ARBITRATOR AND RECEIVER**

## DECLARATION OF LLOYD K. CHAPMAN

I, LLOYD K. CHAPMAN, declare:

1. I am an attorney duly licensed to practice law before the courts of the State of California. I am counsel to John Bral, plaintiff herein. The following facts are personally known to me, and if called as a witness I would competently testify to them.

2. Attached hereto as Exhibit "A" is a true and correct copy of an email from the case administrator at ADR Services, Inc., noting the availability of three retired judges. Also included are the resumes for those neutrals.

3. Attached hereto as Exhibit "B" is a true can correct copy of an email from JAMS with a list of eight neutrals and their availability. There resumes are also attached.

4. At a cmc in July, 2015, Mr. Lallas contended that Plaintiff was responsible for organizing arbitration and had not done so. I then attempted to select an arbitrator. Mr. Lallas offered only one arbitrator – Judge Diane Wayne (Ret.) but then promptly rejected her after plaintiff tried to schedule the arbitration. Since July, I have spoken to Mr. Lallas personally at least five times and sent him numerous letters about selecting an arbitrator. Mr. Lallas ignored every letter and verbally stated he would "get back" to me. He has not.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 27th day of December, 2015, at Sherman Oaks, California.

Lloyd K. Chapman

**MOTION TO APPOINT ARBITRATOR AND RECEIVER**

# EXHIBIT A

# EXHIBIT A

## Binding Arbitration Inquiry

**Haward Cho** <haward@adrservices.org>                    Wed, Jan 6, 2016 at 4:55 PM
To: Lloyd Chapman <lkchapmanlaw@gmail.com>

Hi Lloyd,

Pursuant to your request, the availability of the following neutrals have been updated:

| NEUTRAL | AVAILABILITY |
|---|---|
| *Hon. Michael Latin*<br><br>*$650/hour* | *January: not available.*<br><br>*February: not available.*<br><br>*March 1 – 4, 7 – 9, 11, 14* |
| *Hon. Robert Letteau*<br><br>*$600/hour* | *January 18 – 22*<br><br>*February 1 – 5, 8 – 12, 22 – 26*<br><br>*March 7 – 11, 21 - 25* |
| *Hon. George Schiavelli*<br><br>*$600/hour* | *January: not available.*<br><br>*February 8 – 12, 22 – 26*<br><br>*March 1 – 4, 21 -, 25* |

Should you need anything else, please don't hesitate to contact us.

Thank you,

Haward Cho

Gmail - Binding Arbitration Inquiry                          https://mail.google.com/mail/u/0/?ui=2&ik=f43bbc7481&view=pt&q...



**Haward Cho, Manager**

*ADR Services, Inc. - Your Partner in Resolution*
haward@adrservices.org


Haward Cho |  Manager  | ADR SERVICES, INC.


Tel: 213.683.1600 | Fax: 213.683.9797 | 915 Wilshire Boulevard, Suite 1900 | Los Angeles, California | 90017 | www.adrservices.org


SIX OFFICES STATEWIDE: Century City | Downtown Los Angeles | Orange County | San Diego | San Francisco | Silicon Valley

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

**From:** Lloyd Chapman [mailto:lkchapmanlaw@gmail.com]
**Sent:** Wednesday, January 06, 2016 2:18 PM
**To:** Haward Cho <haward@adrservices.org>
**Subject:** Re: Binding Arbitration Inquiry

[Quoted text hidden]


[Quoted text hidden]

[Quoted text hidden]

**Haward Cho, Manager**

*ADR Services, Inc. - Your Partner in Resolution*
haward@adrservices.org


Haward Cho |  Manager  | ADR SERVICES, INC.

Tel: 213.683.1600 | Fax: 213.683.9797 | 915 Wilshire Boulevard, Suite 1900 | Los Angeles, California | 90017 | www.adrservices.org

SIX OFFICES STATEWIDE: Century City | **Downtown Los Angeles** | Orange County | San Diego | San Francisco | Silicon Valley

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

--

LK Chapman

---

Chapman Law Offices
trial attorneys
business, construction,
real estate, insurance
4558 Sherman Oaks Avenue, 2d Floor
Sherman Oaks, California 91403
818 304-8412 (voice)
818 990-1477 (fax)

This transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. Any review, dissemination, distribution or duplication of this communication by anyone other than the named recipient is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**ADR SERVICES, INC.**

# HON. MICHAEL A. LATIN

*Judge of the Superior Court, Retired*

## HONORS AND AWARDS

- 2012 - 2013 *Daily Journal*, "California's Top 50 Neutrals"
- Judge of the Year, Constitutional Rights Foundation, 2012
- Nominee, Civil Trial Judge of the Year, Consumer Attorneys' Association of Los Angeles, 2010
- California Lawyer of the Year, *California Lawyer* Magazine, 2003
- Prosecutor of the Year, Century City Bar Association, 2002
- Southern California Super Lawyer, *Los Angeles* Magazine, 2003
- Special Commendation for the Advancement of Victims' Rights, Los Angeles County Board of Supervisors, 2003
- Featured in Los Angeles Police Historical Society permanent exhibit detailing the history of the Symbionese Liberation Army

## LEGAL & JUDICIAL EXPERIENCE

**2003-2011**   **Superior Court Judge, Los Angeles, California**

**2008-2011**   **Supervising Site Judge**, Van Nuys Superior Civil Courthouse
- Presided over jury and bench trials in an unlimited jurisdiction civil court
- Experienced in areas of professional malpractice, labor and employment, product liability, general business/complex litigation, insurance coverage, real estate, fee disputes, health coverage, entertainment, civil rights, commercial contract, computer fraud, construction defect, eminent domain, family law, governmental liability, bad faith, intellectual property, personal injury, and securities
- Successfully facilitated over 200 settlements
- Supervised 7 Unlimited Jurisdiction Courts, 6 Limited Jurisdiction Courts, as well as Probate, Unlawful Detainer and Family Law Courts

**Assistant Supervising Judge**, Los Angeles Northwest District Courts
- Supervised approximately 40 civil and criminal judges and bench officers assigned to the Northwest District Courts

**2010-2011**   **Elected to Los Angeles Superior Court Executive Committee**

**2009-2011**   **Los Angeles Superior Court ADR Committee**

**1987-2003**   **Trial Attorney,** Los Angeles County District Attorney's Office
- Successfully tried over 150 felony jury trials
- Assigned to the elite Major Crimes Division, responsible for handling the District Attorney's most complex and high profile cases

*1900 Avenue of the Stars, Suite 250 • Los Angeles • CA 90067 • (800) 558-ADRS • Tel (310) 201-0010 • Fax (310) 201-0016*
*www.adrservices.org*

EXHIBIT "2"
Page 181

Hon. Michael A. Latin (Ret.)
Resume, Page 2 of 2

- Notable prosecutions include: Sara Jane Olson, real estate magnate Bruce Koklich, Judge Albert Garcia, and music producer Phil Spector

**1986-1987    Associate Attorney, Littler Mendelson,** Century City Office
- Associate Attorney for the nation's largest labor law firm
- Specialized in wrongful termination, wage & hour, and discrimination claims in State and Federal Courts

## EDUCATION

2011    Advanced Mediation Training, Straus Institute for Dispute Resolution, Pepperdine University School of Law
1985    J.D., Loyola Law School
1981    B.A., University of California at Santa Barbara

## LECTURES AND PRESENTATIONS

- "Handling a Case from Law and Motion to Trial – A Judge's Perspective", County Counsel's Association of California Annual Convention, May 2010
- Invocation and swearing in of new bar admittees, Loyola Law School, May 2010
- LA County Bar Association Litigation Section "Civility in the Civil Courts – How to Kill Your Opponent with Kindness", March 2010
- San Fernando Valley Bar Association Litigation Section "Civility in the Civil Courtroom", February 2010
- "Law and Motion – Seeing The Big Picture", Consumer Attorneys' Association of Los Angeles Annual Convention, September 2009
- "State of the Courts" San Fernando Valley Bar Association Annual Judges' Night, February 2009

## MEDIA APPEARANCES

Judge Latin has appeared on 60 Minutes, Good Morning America, 20/20, The History Channel, and was also featured in the documentary movie *Reckless Indifference*. Additionally, he has been featured in the following publications:

- *Los Angeles Times* feature article, 2002
- *Los Angeles Daily Journal* feature article, 2003
- *California Lawyer Magazine* feature article, 2003
- *San Francisco Chronicle, 2002*
- *Sacramento Bee,* 2002
- *The Sara Jane Olson Story,* book by Sharon Hendry



# HON. ROBERT M. LETTEAU
## Judge, Los Angeles Superior Court
### (Retired)



## EDUCATION

| | |
|---|---|
| 1964-1967: | Hastings College of Law, J.D. |
| 1960-1964: | Stanford University, B.A. in English |

## PROFESSIONAL EXPERIENCE

2002-Present: Mediator and Private Judge

1996-2002: Los Angeles County Superior Court, Department 11

1994-1996: Appointed Supervising Judge for Probate in Los Angeles County Superior Court

1992-1994: Appointed Supervising Judge for the Northwest (Van Nuys) District

1982-1992: Los Angeles Superior Court Judge (Appointed by Governor Brown, January 1982; Elected 1982; Re-elected in 1988 and 1994; Assigned to Northwest District and served at that post from 1982-1994

1968-1982: Practicing Attorney Associated with ROSS PIERSON & LETTEAU, a seven member firm established in Inglewood and later venued in West Los Angeles (Admitted to Practice by State of California, United States Court of Appeals, 9th Circuit; and United States District Court, Central in 1982)

## HONORS AND AWARDS

2013: *Daily Journal* "Top Neutral"

2004: Recognized for outstanding mediation abilities by the Los Angeles Daily Journal

2001: Recipient of Civility Award by American Board of Trial Advocates

1986: Recipient of "Trial Judge of the Year" by a Los Angeles County Trial Lawyers Association

1974: Vice President, N.O.I.S.E. (National Organization to Insure a Sound-Controlled Environment)

1972-1977: Member, Inglewood Housing and Redevelopment Agency

1972, 1976: Elected to Inglewood City Council on two separate occasions

*1900 Avenue of the Stars, Suite 250 • Los Angeles • CA 90067 • (800) 558-ADRS • Tel (310) 201-0010 • Fax (310) 201-0016*
*www.adrservices.org*

EXHIBIT "2"
Page 183

Hon. Robert M. Letteau
Resume – Page 2 of 2

## COMMUNITY SERVICE

1983:        Organizing Founder and First President of Inns of Court (San Fernando Valley Chapter)

1989:        Trustee, Valley Legal Foundation

## MEMBERSHIPS

1995-2002:    Los Angeles Superior Court Technology Committee
1994-2002:    Los Angeles Superior Court Budget and Personnel Committee
1988:         Chairperson, Los Angeles Superior Court Rules Committee
1988:         Los Angeles Superior Court Rules Committee
1984-1987:    Los Angeles Superior Court Arbitration Committee
1983-1991:    Los Angeles Superior Court Benefit Committee
1983-1984:    Los Angeles Superior Court Legislative Committee

## PUBLIC SPEAKING EXPERIENCE

1991:         Northern California Defense Council Symposium
1985, 1989:   Los Angeles Trial Lawyers Association, Los Angeles
1989:         Los Angeles Trial Lawyers Association, Las Vegas
1989:         Continuing Education of the Bar
1989:         San Fernando Bar Litigation Section
1986:         Southern California Defense Council
1975:         American Banking Institute

# Hon. George P. Schiavelli

*United States District Court (Ret.)*
*Los Angeles Superior Court (Ret.)*

**ADR** SERVICES, INC.
www.ADRSERVICES.org

Hon. George P. Schiavelli is a nationally-recognized leader in alternative dispute resolution. His unique experience as an ADR neutral, federal court judge and state court judge as well as his extensive civil trial and appellate experience make him one of the most proficient legal minds in the country.

With 40 years of experience in the law – 20 years as a litigator and appellate counsel and 20 years as a trial judge and dispute resolution professional – Judge Schiavelli is called upon to resolve cases with sophisticated issues, complex arguments and intricate facts. In addition to his exceptional intelligence and legal experience, attorneys count on his personable approach and problem-solving ability to resolve their most difficult disputes. Judge Schiavelli resolves disputes involving a wide-range of legal issues, including:

- Business & Commercial Contract
- Employment Law
- Entertainment Law
- Insurance
- Intellectual Property
- Mass Tort

Judge Schiavelli is one of the leading neutrals specializing in resolving Patent disputes. Parties have sought his guidance on pre-*Markman* matters and achieved early resolution on claims construction. A representative sample of the judge's Intellectual Property Specialization, including Patents, is on page 2 of this resume.

Additionally, Judge Schiavelli handles class action, construction defect, environmental law, professional liability, medical malpractice, real estate, securities, mediation of appellate disputes, early mock trial and neutral evaluation, personal injury, premises liability and product liability.

## JUDICIAL & LEGAL EXPERTISE
- Private ADR Neutral (2000 – 2004, 2008 – Present)
- United States District Court Judge, Central District of California (2004 – 2008)
- Sat by assignment in Ninth Circuit and California Court of Appeals
- Los Angeles Superior Court Judge (1994 – 2000)
- Appellate Practice, Horvitz & Levy (1986 – 1994)
- Civil Litigation, Ervin Cohen & Jessup (1976 – 1986); O'Melveny & Meyers (1974 – 1976)

## EDUCATION
- UCLA School of Law, 1974 (Graduated first in class of approximately 300)
- Stanford University, 1970

| Los Angeles | Century City | Orange County | San Diego | San Francisco | Silicon Valley |
|---|---|---|---|---|---|

*Hon. George P. Schiavelli*
*Resume - Page 2 of 2*

## PUBLICATIONS & SPEAKING ENGAGEMENTS

- Preserving the Record for Appeal, *California Civil Appellate Practice.* (CEB, 3d ed.) Chapter 2A. Co-author.
- "Technology in the Courtroom." *California Bar Journal.* (February 1999). Author.
- Judicial Perspective Section. *CEB Treatise on Civil Discovery.* Author.
- "Appellate Law." *California State Bar Annual Meeting* (October 2013). Speaker.
- "Primer on Mediation Advocacy." *Mandatory Continuing Legal Education (MCLE).* Speaker.
- "Advanced Mediation Advocacy." *Mandatory Continuing Legal Education (MCLE).* Speaker.
- "Legal Ethics." *Mandatory Continuing Legal Education (MCLE).* Speaker.
- Presented numerous topics on mediation and arbitration to bar associations and law firms.

## PROFESSIONAL ORGANIZATIONS
- Los Angeles County Bar Association
  - Litigation Section – Executive Committee and Executive Board
  - Dispute Resolution Section – Board of Directors (2002)
- Association of Business Trial Lawyers – Executive Board (2004 – 2007)
- American Board of Trial Advocates – Masters of Trial Judge (June 2006)
- State Appellate Judicial Evaluations Committee (1990-1994, 2001-Present)
- California Judges Association (1994 – Present)
- Judicial Council Appellate Advisory Committee and Civil & Small Claims Committee (2000 – 2003)

## INTELLECTUAL PROPERTY SPECIALIZATION
*(Patent, Copyright, Trademark & Trade Secrets)*

Legal Issues
- Antitrust Violations
- Claims Construction
- Cyber Squatting
- Idea Submission
- Lanham Act
- Licensing
- *Markman* hearings
- Misappropriation of Trade Secrets
- Royalty
- Validity Issues

Industries (sample list)
- Computer Software & Gaming
- Energy Industry
- Entertainment Industry – Film, Media and Music
- Fashion & Textiles
- Green Technology
- Health Sciences & Pharmaceuticals
- Manufacturing & Production Methods
- Plastics & Polymers

# EXHIBIT B

# EXHIBIT B

## Beitler, Barry A. vs. Bral, John - Arbitration Inquiry JAMS REF: 1220052447

**Anne Lieu** <alieu@jamsadr.com>                                              Wed, Jan 6, 2016 at 4:57 PM
To: "lkchapmanlaw@gmail.com" <lkchapmanlaw@gmail.com>

Hon. Candace Cooper – January 11-15 February 1-5, 22-26;

Hon. Stephen Haberfeld – January 11-15, 19-22, 25-29; February 8-12, 16-19, 22-26; March 1-4, 7-11, 14-18

Hon. Rex Heeseman – January 11-15, 26, 28, 29; February 1-5, 8-12; March 14-16, 18, 22-22, 28-31

Hon. Ann Kough – January 25-29; February 8-12, 22-26; March 28-April 1

Hon. Charles "Tim" McCoy – February 8-12; March 14-18,

Hon. Margaret Nagle – February 1-5, 8-12, 22-26; February 29-March 4, 14-18, 21-25, 28-April 1

Hon. Coleman Swart – January 11-15; February 8-12, 29-March 4, 7-11, 14-18, 21-25, 28-31

Hon. Diane Wayne – February 22-26, 29-March 4

Regards,

Anne Lieu



**Anne Lieu**

Case Manager

JAMS
555 West 5th Street, 32nd Floor

Los Angeles, CA 90013

E-mail: alieu@jamsadr.com

Phone (213) 253-9706

Fax (213) 620-0100

**Make your case in the JAMS
Courtroom. Visit our Los Angeles location
page for more information**





T: 213-620-1133
F: 213-620-0100

*"I just have the highest,
highest praise for her...
she has an ideal judicial
temperament."*

*"She is extraordinarily
professional and very
competent and
knowledgeable."*

*- Quotes from attorneys
and colleagues*

**Case Manager**
Jason Feazell
JAMS
555 W. 5th St.
32nd Floor
Los Angeles, CA 90013
213-253-9752 Phone
213-620-0100 Fax
Email:
jfeazell@jamsadr.com

**Hon. Candace Cooper (Ret.)**

Hon. Candace Cooper (Ret.) has nearly three decades of judicial experience and has earned a reputation as a highly accomplished judge with a common sense approach to resolving disputes. Justice Cooper brings an ideal temperament and a wealth of legal expertise in handling complex, often highly publicized cases. She served for nine years on the California Court of Appeal, Second District, most recently as Presiding Justice of Division Eight from 2001-2008, and as a Superior and Municipal Court judge prior to that. Justice Cooper has also served on the Los Angeles Superior Court for 12 years, handling a variety of assignments, ranging from court management, civil master calendar and civil trials to felony criminal and death penalty trials to juvenile dependency and delinquency.

During her noteworthy career, Justice Cooper has also made tremendous contributions to the legal community through her dedicated involvement in educational and professional associations. She served as president of the California Judges Association from 1988-1989. She was the second African-American, as well as the second woman, to head the nearly 2,000-member voluntary professional association representing all judicial officers throughout the state from the California Supreme Court to the remaining Justice Courts. Justice Cooper also served as a faculty member for the Continuing Judicial Studies Program, the Judicial College and the New Judges Orientation, teaching courses in evidence, jury selection, fairness and elimination of bias.

**Comments from Counsel**
Read about "What Counsel Say About Justice Cooper's ADR Style and Skills"

**Representative Matters**
**Arbitration**
- Unconscionability
- Required disclosures for binding arbitration agreements
- Scope of arbitrator power
- Action to enforce arbitration award

**Attorney Fees**
- Award of experts witness fees against municipality
- Award of attorney fees against board of homeowners association
- Attorney fees under Intervenor Compensation Provisions
- Determination of prevailing party

**Attorney Malpractice**
- Companion malicious prosecution case

**Construction**
- Construction Services Licensing Law
- Construction defect

**Commercial/Business Litigation**
- Contract interpretation
  - Course of performance
  - Implied-in-fact contracts
    - Ownership of employee inventions
- Contract performance
  - Exclusive distribution rights
- Misappropriation
- Intellectual Property

**CEQA**
**Class Action Litigation**
- Class certification

**Conflict of Laws**
**Discovery Disputes**
- Scope
  - Privacy
  - Trade secrets

Hon. Candace Cooper (Ret.) (General Biography)                                    Page 2 of 4

- o Attorney-client privilege
- o Clergy-penitent privilege
- Sealing and protective orders

**Election Law**
- Compliance with Election Code
  - o Ballot requirements
- Initiative requirements
  - o Revision vs. amendment of State Constitution
  - o "Single Issue" limitation

**Employment**
- FEHA
  - o Wrongful termination/employment discrimination
  - o Attorney fee awards
  - o Expert fee awards
- B&P 1700
- Workers compensation
  - o Unreasonable delay

**Family Law**
- Professional goodwill as community asset
- "In Kind" property division

**Foreign Judgment**
- Uniform Foreign Money Judgments Recognition Act
  - o Finality of foreign judgment
  - o Public policy

**Insurance**
- Coverage
  - o "Duty to defend"
  - o Excess policy coverage
  - o Subrogation
- Liability

**Intellectual Property**
- Unauthorized commercial appropriation of name, photo or likeness
- Right of publicity/right of privacy
- Copyright Act
- Uniform Trade Secrets Act
- Misappropriation of patents/trademarks
- Licensing
- Infringement
- Agreement to disclose abstract idea
- Good will

**Medical Malpractice**
- Standard of care
- Statute of limitations

**Negligence**
- Existence of duty
- Assumption of risk

**Probate**
- Creditor claim vs. will challenge

**Product Liability**
- Design defect/manufacturing defect
- Failure to warn

**Real Property**
- Premises liability
  - o Dangerous condition
- Condominium association
  - o Interpretation of CC&Rs
  - o Liability of homeowners association board
- Escrow
  - o Misappropriation of trust assets by escrow agent officers and employees
- Subdivision and Map Acts
- Landlord-tenant

**Statutes of Limitation**
- Delayed discovery

**Water Law**
- Allocation of storage space in Central Basin water resource

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

EXHIBIT 2
Page 190

Hon. Candace Cooper (Ret.) (General Biography)

**Wrongful Death**
- Responsibility of amusement park as "common carrier"

**Comments from Counsel**
*What Counsel Say About Justice Cooper's ADR Style and Skills*

- "She is very smart and grasps complex issues quickly. She also has an impressive memory and ability to recall which results in very efficient and timely rulings. She requires that the attorneys know their case, their theories and how the discovery/evidence sought and adduced fits within those theories from very early in the case. She also focuses on the practical — particularly when dealing with production of voluminous evidence — which requires independent and creative problem solving in the context of discovery production."
- "Justice Cooper is excellent. She was very instrumental in getting this case settled after the mediation…I will definitely use her again."
- "What most impressed me was that she followed up a couple times on her own and acted as a telephone mediator… that's something no other mediator has done, and I've been doing this for a while."
- "She's a good listener and works hard to understand the positions that various sides have…"
- "I just have the highest regards for Justice Cooper and I know that she was recommended by our lead attorney to be used on an upcoming case…"
- "She does not tend to cut people off, she does not pre-judge. By nature, she's a collaborator, as opposed to an advocate."
- "She was able to express difficult and sensitive issues in a delicate and compassionate way, but she also has steel in her spine. She has a very good sense for when she needs to be blunt."
- "Cooper flawlessly walks the line between tactful and tenacious…"

**Honors, Memberships, and Professional Activities**
- Honoree, National Bar Association Hall of Fame, 2015
- Law360's Minority Powerbrokers Q&A series with Justice Candace Cooper, November 5, 2014
- "Peacekeeping and Persistence," *Daily Journal*, Verdicts & Settlements profile, August 21, 2009
- Roger J. Traynor Memorial Award, Appellate Justice of the Year, Consumer Attorneys Association of Los Angeles, 2003
- Bernard S. Jefferson Judge of the Year Award, California Association of Black Lawyers, 2002
- Crystal Heart Award, Loved Ones of Homicide Victims, 2000
- Justice Joan Dempsey Klein Distinguished Judge Award, California Women Lawyers, 1997
- Alumni Merit Award, University of Southern California, General Alumni Association, 1994
- Outstanding Trial Jurist, Los Angeles County Bar Association, 1992-1993
- Criminal Court Judge of the Year, Century City Bar Association, 1992
- Silver Achievement Award, Los Angeles Y.W.C.A., 1991
- Superior Court Judge of the Year, Los Angeles County Bar Association Criminal Justice Section, 1990
- Ernestine Stalhut Award, Women Lawyers Association of Los Angeles, 1989
- Board of Councilors, University of Southern California Law Center, 1997-present; Chair, 2001–2003; Vice-Chair, 1999-2000; General Alumni Association; Board of Directors, 1995
- Judicial Council Select Committee on Judicial Retirement, 1993
- The State Bar of California: Commission on the Future of the Legal Profession and the State Bar, 1992-1995
- Judicial Council Advisory Committee on Racial and Ethnic Bias in the Courts, 1991-1997
- Judicial Council Advisory Committee on Private Judges, 1989-1990
- ABA Advisory Committee for "Understanding the Courts" Videotape Project, 1988-1990
- President, California Judges Association, 1988-1989; Executive Committee, 1987-1988; Chairperson, Annual Meetings Seminar Committee, 1986
- Municipal Court Judges Association, Planning & Research Advisory Committee, 1984-1987; Marshal's Committee, 1982
- Board Member, LAC/USC Institutional Review Board, 1981-1988
- Life Member, National Bar Association, 1980-present
- Member, Los Angeles County Bar Association, 1974-present
- Panelist, California State Bar Association Annual Meeting, 1998, 2008
- Lecturer, Los Angeles County Bar Association, 2004
- Lecturer, Consumer Attorneys Association of Los Angeles, 2003
- Lecturer, California Statewide Conference on Race and Ethnic Bias in the Court, 2002
- Lecturer, Judicial College, 1981, 1982, 1987, 2002 (Bernard Witkin Lecture)
- Faculty, Continuing Judicial Studies Program (CJSP) 1982, 1984, 1986, 1998
- Lecturer, Continuing Education of the Bar, 1992, 1994, 1996
- Lecturer, Center for Judicial Education and Research (CJER), 1981-1982
- Received comprehensive training in JAMS in-house Entertainment Law workshops including, but

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

Page 191

Hon. Candace Cooper (Ret.) (General Biography)                                              Page 4 of 4

not limited to:
  o  *"Net Profits and New Media: The Future of Entertainment Litigation"*
  o  *"Legal Issues and Developments in Video Game Law"*

**Background and Education**

- Presiding Justice, California Court of Appeal, Second District, Division Eight, 2001-2008
- Associate Justice, California Court of Appeal, Second District, Division Two, 1999-2001
- Judge, Los Angeles County Superior Court, 1987-1998
- Judge, Los Angeles Municipal Court, 1980-1987
- Associate, Gibson, Dunn & Crutcher, 1974-1980
- Summer Associate, O'Melveny & Myers, 1972
- Law Clerk, Occidental Petroleum Oil Company, 1971
- J.D., University of Southern California, Gould School of Law, 1973
- B.A., University of Southern California, 1970

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

Page 192



**JAMS**



T: 213-620-1133
F: 213-620-0100

*Counsel and clients praise Judge Haberfeld for his ability to quickly gain the confidence of all parties and to appreciate the central issues involved; for his creativity when called for in resolving even seemingly intractable and the most contentious disputes; and for his fair, efficient, considered and considerate treatment of all participants and matters.*

**Case Manager**

Jo-El Fequiere
JAMS
555 W. 5th St.
32nd Floor
Los Angeles, CA 90013
213-253-9740 Phone
213-620-0100 Fax
Email:
jfequiere@jamsadr.com

**Hon. Stephen E. Haberfeld (Ret.)**

Hon. Stephen E. Haberfeld (Ret.), widely respected as a charismatic, accomplished, and effective mediator and arbitrator, brings a wealth of talent and three decades of dispute resolution experience to JAMS. Judge Haberfeld is frequently selected to resolve the most complex and contentious disputes.

**ADR Experience and Qualifications**

- Judge Haberfeld has successfully resolved a broad range of complex disputes involving business/commercial, class action, intellectual property, entertainment, insurance, real estate, construction, employment, estates and trusts, insurance, securities, civil rights, and antitrust matters.

**Representative Matters**

- Arbitrator of California statewide wage-and-hour class action
- Arbitrator of "Enron"-type action, based on allegedly false and misleading financial information in connection with "for stock only" sale by seller of closely-held private company to public company
- Arbitrator, consultant, and symposium panel leader concerning the interpretation and application of e-discovery amendments to the California Code of Civil Procedure and Federal Rules of Civil Procedure
- Arbitrator of dispute over allegedly discriminatorily coerced departure of nationally-known attorney from famed international law firm
- Arbitrator of dispute between major studio and author over prominence of placement of claimed "source material" screen credit in motion picture starring Academy award-winning actress and actor and directed by Academy award-winning director
- Arbitrator and mediator of business disputes concerning corporate governance and alleged violations of duties of loyalty and care (e.g., corporate opportunities doctrine, business judgment rule, etc.)
- Arbitrator of business dispute over non-renewal of leading sub-prime unsecured credit card issuer bank's contract for direct marketing services
- Discovery referee of nationally reported dispute over allocation of interests in $107 million court judgment
- Mediator of dispute between well-known actor and production company over co-ownership and value of co-ownership of copyright of hit network TV series
- Chair of three-person panel in mock arbitration in connection with nationwide class action employment sex discrimination litigation
- Mediator of multi-county wage-and-hour class action
- Arbitrator and mediator of business valuation disputes
- Arbitrator and mediator of business disputes concerning whether co-shareholder/ LLC member-employee terminated "for cause" or under "morals clause" or otherwise, as affecting primarily valuation of stock/membership interests and other contractual benefits
- Mediator of nationally reported dispute between East Coast and West Coast organizations bearing similar names, famous for their nationally famous celebrity "roasts"
- Mediator of dispute between premier motion picture creature creator and leading video game publisher over contract provision governing motion picture deal for successful game involving creator's creatures
- Arbitrator and mediator of patent and trade secrets dispute over rights to processes involved in the manufacture of synthetic wood products
- Sole arbitrator in contract dispute involving famous actress's compensation as celebrity spokesperson for brand of beauty products
- Mediator of landmark settlement of denial of "special needs" education claims under the federal Individuals With Disability Education Act and related federal and state law
- Chair of three-person entertainment arbitration panel, contract dispute concerning international pop star's eleventh-hour cancellation of concerts abroad
- Chair of three-person entertainment arbitration panel, contract dispute concerning famous TV comedy star's video distribution rights to favorite skits from famous "Golden Age of Television" shows
- Mediator of entertainment and intellectual property dispute concerning alleged misappropriation of

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

Page 193

Hon. Stephen L. Hausfeld (Ret.) (General Biography)                                    Page 2 of 6

concepts central to internationally famous director's theatrical motion picture production

- Sole arbitrator in "Bond girl" contract dispute
- Mediator of Internet copyright dispute over texts of management and leadership lessons learned from episodes of hit network reality TV show
- Sole arbitrator in contract dispute between suddenly successful actress/screenwriter and her former personal manager
- Mediator of dispute concerning copyright, trademark, and trade dress violations alleged in connection with importation, marketing, and distribution of Chinese "knock-offs" of U.S. IP-protected and manufactured products
- Chair of three-person arbitration panel in contract dispute focusing primarily on alleged violations of non- competition agreements involving major providers of medical imaging services in Southern California
- Member of three-person arbitration panel in dispute concerning contract termination and trademark infringement claims involving former manufacturer and distributor becoming competitors in marketing, distribution, and sale of automotive flushes and lubricants
- Mediator of class action wage and hour dispute and arbitrator of class action antitrust settlement fund allocations
- Chair of three-person commercial panel in dispute concerning responsibility for large insurance deductible in connection with sale of division by one major corporation to another
- Sole arbitrator of entertainment dispute concerning composer's claimed rights to additional compensation for re-released recorded works
- Sole arbitrator concerning insurance coverage issues triggered by title company's material omission in real property title reports
- Mediator in entertainment/sexual harassment dispute; and mediator in landlord-tenant/civil rights discrimination dispute
- Arbitrator of business dispute between competitor/former partners in on-line day trading educational services
- Mediator and referee of highly emotional, contentious intra-familial probate and conservatorship disputes

### Honors, Memberships, and Professional Activities

- Elected Fellow, College of Commercial Arbitrators
- Settlement Judge, Nevada Supreme Court, 2003-present
- Received comprehensive training in JAMS in-house Entertainment Law workshops including, but not limited to:
  - *"Net Projects and New Media: The Future of Entertainment Litigation"*
  - *"Legal Issues and Developments in Video Game Law"*
- Former member, "Blue Ribbon" panels, AAA and NASD
- Former member, National Panel of Arbitrators, AAA, 1972-2004 (AAA Large and Complex Commercial Cases Panel)
- Panel of Arbitrators, Writers Guild of America
- Adjunct Professor, Pepperdine University School of Law, 1979-1986, 1990
- U.S. Postal Service Redress I & II EEO Mediation Panel, 1998-present
- Probate Mediation Panel, Los Angeles Superior Court, 1998-present
- Co-Author, "Evaluating the Pros and Cons of ADR in Patent Claim Construction" (2007)
- Co-Author, "Closing Argument" (segments section), *California Trial Guide* (Matthew Bender 1992)
- Author, Comment, "The Problem of the Faithless Elector," 6 *Harvard Journal on Legislation 254* (1969)

### Background and Education

- U.S. Magistrate Judge, U.S. District Court, Central District of California, 1988-1992
- Partner, Haberfeld & Haberfeld, Los Angeles, 1978-1988; 1992-present
- Partner and Associate, Agnew, Miller & Carlson, Los Angeles, 1975-1978
- Assistant Watergate Special Prosecutor, Watergate Special Prosecution Force, Washington, D.C., 1973-1975
- Associate, Harold E. Kohn, P.A., Philadelphia, 1971-1973
- Law Clerk to Judge Leonard P. Moore, U.S. Court of Appeals, 2d Circuit, New York, NY, 1970-1971
- J.D., Harvard Law School, 1970 (Article Editor, *Harvard Journal on Legislation*)
- Master in Public Affairs, Princeton University, 1967
- B.A., *summa cum laude*, UCLA (Valedictorian, Phi Beta Kappa, Regents Scholar), 1965

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

EXHIBIT "2"
Page 194

Hon. Stephen L. Hasenfeld (Ret.) (General Biography)                                    Page 3 of 3



**Hon. Rex Heeseman (Ret.)**



T: 213-620-1133
F: 213-620-0100

**Case Manager**
Michael Dawson
JAMS
555 W. 5th St.
32nd Floor
Los Angeles, CA 90013
213-253-9776 Phone
213-620-0100 Fax
Email:
mdawson@jamsadr.com

**Hon. Rex Heeseman (Ret.)** has led a distinguished career as a litigator and a judge. Prior to his appointment to the Los Angeles County Superior Court in 2005, he represented clients in a wide variety of civil litigation for more than three decades. Until his retirement in 2014, he presided over 90 jury trials and adjudicated in excess of 100 bench trials. His recent judicial experiences, including with jurors, gives him a unique perspective on likely judicial rulings and verdicts. He is attuned to the vicissitudes of litigation.

Judge Heeseman has conducted hundreds of mandatory settlement conferences, has chaired the Court's ADR operations, and has a long history of resolving disputes either by settlement or ruling. He co-authors a leading insurance treatise and is an adjunct professor of law, legal commentator and public speaker, bringing an academic, judicial and practical perspective.

**ADR Experience and Qualifications**

- Mandatory Settlement Conference Judge
- 34 years as a civil litigator in numerous courtrooms
- Responsibility over extensive civil court calendars

**Representative Matters**

- **Arbitration**
  - Adjudication of over 100 bench trials as judge
  - Rulings on motions to compel arbitration and to enforce arbitration awards
  - As an attorney, service on tripartite arbitration panels involving: foreign reinsurer's funding of plaintiff's motion pictures, sales of toys, and various claims for insurance coverage
- **Business/Commercial**
  - Dissolution of firms, partnerships, joint ventures or LLCs, including assertions of self-dealing and mismanagement
  - Improper transfers of money or schemes to defraud
  - Agreements to start or to share business
  - Business interruption claims
  - Misuse or taking of corporate assets
  - Mergers and acquisitions, including claims by or against directors and officers
  - Improper activities by agents or brokers
  - Tortious interference with economic relationships or prospective business advantages
- **Construction**
  - Construction defect claims while in practice, as a judge and a neutral
  - Wood change to gym floor
  - Modification of school buildings
  - Converting property to restaurant including impact of delays
  - Conversion of buildings into lofts
  - Shear wall effects on multi-million-dollar residence
  - Water intrusion at high end residences
- **Employment**
  - Supervision of and judicial participation in the CRASH I, II and III settlement weeks of Los Angeles County Superior Court
  - Statutory violations (e.g., FEHA)
  - Wage and hour and related class allegations
  - Failures to accommodate
  - "Whistleblower"
  - Retaliation
  - Disparate treatment
  - Sexual harassment
  - Discrimination due to age, disability, gender, or race
  - Pregnancy claims

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

EXHIBIT 2
Page 196

- o Awards of attorney fees and costs
- **Insurance**
  - o Bad faith litigation and genuine dispute assertions
  - o Extra-contractual damages, including "multiplier" challenges
  - o Property, life, health, disability and fidelity insurance
  - o General liability, CGL, D&O and E&O coverage
  - o Auto, UM and UIM matters
  - o Contribution and/or other claims between insurers
  - o Allocation among primary, excess and umbrella insurers
  - o Duty to defend controversies, including stipulated judgments
  - o Topics related to Cumis counsel, including appropriate fee arrangements
  - o Health insurers' misleading advertisements
  - o Broker malpractice
  - o Agent and agency allegations
  - o Insurers' belated and/or underpayment of claims
  - o Surplus lines disputes
  - o Coverage for extensive petroleum leaks
  - o Vanishing premium policies and similar annuities
- **Personal Injury/Torts**
  - o Children's monetary claims dues to parent's alleged fraud
  - o Personal injuries sustained at home of well-known actress
  - o Medical and legal malpractice
  - o Civil rights violations, including excessive force
  - o Failure to properly train personnel, resulting in sexual abuse
  - o Tire separation, resulting in deaths and major injuries
  - o Lawsuits concerning extent of burn injuries
  - o Matters involving breach of fiduciary duty, defamation, libel and privacy allegations
- **Real Property**
  - o Extensive water damage due to city's negligence
  - o Fraudulent sales, often involving broker misfeasance
  - o Foreclosure and mortgage lawsuits
  - o Partition of real estate
  - o Beachfront disputes regarding rebuilding of residence
  - o Inverse condemnation due to new electrical lines
  - o Improper removal of or failure to trim trees
  - o Real property disputes with related insurance issues

**Honors, Memberships, and Professional Activities**

- Recognized by Best Lawyers in America and as a Super Lawyer of Southern California
- Attorney-Member, State of California's Judicial Council
- Adjunct Professor of Law, Loyola Law School, 2002 to present
- Lecturer, UCLA Law School, 2002
- Member, Ninth Circuit's Advisory Committee
- President, Chancery Club of Los Angeles
- Chair, C.D. Cal. Lawyer Representatives to Ninth Circuit Judicial Conference
- Los Angeles County Bar Association
  - o Chair, Judicial Appointments Committee
  - o Chair, Litigation Section

**Publications**

- Author, "Insurance Litigation," The Rutter Group's California Practice Guide
- Author, "Do You Know If Insurance Covers Employment Claims?" *Daily Journal*, July 15, 2015
- Legal Columnist, Los Angeles Daily Journal
  - o "Business Torts"
  - o "Punitive Damages"
  - o "Insurance Law"
- "Good Faith Duties and Tort Remedies in Lender Liability," 15 W. St. Rev. 617
- "The Special Relationship Requirement for Bad Faith," Los Angeles Lawyer

**Speaking Engagements**

- ABA Litigation Section
  - o "Trial of a Lending Practices Case"
  - o "Appellate Analysis of Emerging Business Torts"
- California Center for Judicial Education and Research (CJER)
  - o "Insurance" (4 times)

Hon. Rex Heeseman (Ret.) (General Biography)

- California Continuing Education of the Bar
  - "Business Practices Litigation"
  - "Recent Developments in Civil Litigation" (8 times)
  - "Evaluating and Proving Damages in Litigation"
  - "Civil Litigation Before Trial" (7 times)
  - "Negotiating Settlements"
- California Judges Association/The Rutter Group
  - "Critical Issues in Insurance Litigation"
  - "Coverage for Employment Matters"
  - "Coverage for Torts"
- Consumer Attorneys Association of Los Angeles (CAALA)
  - "Trial of Bad Faith Case"
  - "Premises Liability"
  - "Government Tort Liability"
- The Rutter Group
  - "Insurance Litigation Update" (annually, since 1991)
  - "Anatomy of an Insurance Policy"
  - "Critical Coverage Topics"
  - "Shernoff Bad Faith Seminar"
- West Coast Casualty (WCC) Seminar
  - "Working Smarter Not Harder"
  - "Coverage for CD Litigation"

**Background and Education**

- Judge, Los Angeles Superior Court, 2005-2014
  - Chair, ADR Committee, 2009-2013
  - Assistant Supervising Judge, Civil, 2007-2009
- Justice Pro-Tem, Second District Court of Appeal (Division 3), 2013
- Partner, Luce Forward Hamilton & Scripps, LLP, 1994-2005
- Partner and Associate, Adams Duque & Hazeltine, 1975-1994
- Assistant and Special Assistant U.S. Attorney, 1971-1975
- J.D., Stanford Law School
- B.A., Claremont McKenna College
- Captain, U.S. Army





T: 213-620-1133
F: 213-620-0100

*"My job as a neutral is to assist the parties in resolving their dispute in the most efficient, cost effective, and fair manner so that they can return to their day-to-day matters."*

**Case Manager**
Geri Yulo
JAMS
555 W. 5th St.
32nd Floor
Los Angeles, CA 90013
213-253-9711 Phone
213-620-0100 Fax
Email:
gyulo@jamsadr.com

**Hon. Ann Kough (Ret.)**

Hon. Ann Kough (Ret.) most recently served in the Los Angeles County Superior Court as one of seven complex litigation judges and earned a reputation for fairness, efficiency, and thoroughness in handling the most difficult and contentious cases. Since joining JAMS, Judge Kough has arbitrated a wide range of disputes that span a broad spectrum of legal issues across several industries. She is able to draw on her experience to craft fair and well-reasoned awards. Judge Kough is also an experienced special master and discovery referee who brings in-depth and hands-on knowledge to managing cases and is able to provide litigators, their clients, and the courts with the expertise needed to quickly and efficiently resolve cases.

**Representative Matters**
- **Arbitration**
  - Experienced handling arbitrations in wide variety of industries and practice areas
- **Business/Commercial**
  - Arbitrator on dozens of disputes involving business and commercial matters, including breach of contract, fee dispute, consumer, partnership dissolution, and other issues
- **Construction Defect**
  - Arbitrated construction defect matter involving 100 homeowner claimants in residential development
- **Employment**
  - Arbitrator on dispute involving individual suing former employer for retaliation after being terminated for allegedly refusing to engage in several unsafe practices
  - Arbitrated discrimination, harassment, and wrongful termination disputes between individuals and former employers
  - Dispute between doctors over contract to develop sleep disorder treatment clinics
- **Environmental**
  - Experience as discovery referee and trial judge on variety of environmental issues, including contaminated groundwater, toxic torts, asbestos, mold, compliance with environmental laws regarding cigar smoke, and transportation, loading, and storage of coal products
- **Health Care**
  - Arbitrator and discovery referee on health care matters that include issues such as insurance coverage, hospital reimbursement, doctor partnership dissolution, and sale of medical equipment and facilities
- **Insurance**
  - Referee on commercial insurance dispute involving bad faith claim
  - Experience as trial judge on complex insurance cases stemming from 1994 Northridge earthquake
- **Personal Injury**
  - Arbitrator for dispute involving claims of alleged injury-causing hazardous conditions at Native American tribal casino
- **Professional Liability**
  - Arbitrated malpractice claims filed against law firm
  - Medical malpractice arbitrations involving large health care provider
- **Special Master/Discovery Referee**
  - Business interference matters involving several large competing shopping centers with e-discovery issues such as metadata, search parameters, shadow hard drives, computer experts, and allocation of costs
  - Experienced with court reference matters that have included product liability, construction, real estate, environmental, entertainment, and general business issues

**Honors, Memberships, and Professional Activities**
- Distinguished Service Award, San Fernando Valley Bar Association, 1997
- Member, Academy of Court Appointed Masters, 2006-present
- Member, California Judges Association (Executive Board Member, 1995-1997), 1989-present
- Member, National Association of Women Judges (Chair, 2000 Annual Conference Committee),

Hon. Ann Kough (Ret.) (General Biography)                                                    Page 2 of 2

1989-present
- Frequent speaker at numerous legal seminars, including:
  - Los Angeles County Bar Environmental Law Super Symposium, 2005
  - ABA Corporate Counsel Section Seminar, 2002
  - West Coast Casualty's Construction Defect Seminar, 2001
  - Women's Forum Focus, 1995 and 2000
  - Consumer Attorneys Association of Los Angeles seminar, 1996 and 1997
  - Barrister's Walk Thru Program, San Fernando Valley Bar Association, 1997
  - California Judges Association Annual Conference, 1993
  - Frequent speaker on ADR issues, California Judges Association's Retired Judges Conference
- Faculty, California Center for Judicial Education and Research, 1992-1998
- Faculty, Continuing Judicial Studies Program, 1992-1996
- Co-author with Judge James Warren (Ret.), "Judicial Reference, A Forgotten Tool," *The Recorder*, October 7, 2013

**Background and Education**

- Judge, Superior Court (Complex Litigation program and "fast track" civil), 1997-2002
- Judge, Municipal Court, Los Angeles Judicial District, 1989-1997
- General Counsel, Pacific Triangle Management Corporation, 1986-1988
- Partner, O'Loughlin, Kough & Katz, 1983-1986
- Associate, Loeb & Loeb LLP, 1982-1983
- Deputy City Attorney, City of Los Angeles, 1979-1982
- J.D., University of California, Los Angeles School of Law
- M.A., Sociology, California State University, Fullerton
- B.A., Sociology, *magna cum laude*, Whitworth College, Spokane, WA

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

EXHIBIT 2
Page 200





T: 213-620-1133
F: 213-620-0100

*"Civility, Candor,
Competence,
Compassion, Courage." -
Hon. Charles "Tim" W.
McCoy, Jr. (Ret.)*

*Outstanding Jurist Award,
Los Angeles County Bar
Association, 2011*

*Trial Judge of the Year
Award, Consumer
Attorneys Association of
Los Angeles, 2008*

**Case Manager**
Geri Yulo
JAMS
555 W. 5th St.
32nd Floor
Los Angeles, CA 90013
213-253-9711 Phone
213-620-0100 Fax
Email:
gyulo@jamsadr.com

### Hon. Charles "Tim" W. McCoy, Jr. (Ret.)

**Hon. Charles "Tim" W. McCoy, Jr. (Ret.)** is a distinguished former Presiding Judge of the Los Angeles Superior Court. As a founder and Supervising Judge of the Complex Litigation Courts in Los Angeles, he has been a steady champion of hands-on case management, early identification of pivotal issues, focused discovery, and rational, informed settlements. Judge McCoy brings many years of diverse litigation experience in complex cases, first as a lawyer and then for 20 years as a judge.

Judge McCoy has led hundreds of successful settlement conferences in cases across a broad span of practice areas from the most complex, with hundreds of millions at stake, to less complicated, yet still important matters. While serving as the Supervising Judge of the civil trial courts in Los Angeles, and even in his role as Assistant Presiding Judge, he continued to serve as settlement judge in major, high profile civil cases. During this time, Judge McCoy also taught courses to judges on settlement techniques and processes.

Judge McCoy's recognized leadership skills, coupled with his personal civility and proven mediation expertise, greatly enhance the likelihood of settlement in even the most difficult cases.

Read "What Counsel Say About Hon. Charles "Tim" W. McCoy (Ret.)".

**ADR Experience and Qualifications**

- Skilled settlement judge and mediator with many years of experience managing and resolving complex, multi-party matters, mass torts, insurance, high-stakes business and commercial litigation, construction defect, environmental, class actions, and employment matters, including wage and hour actions
- Highest settlement to date over $700 million in a coordinated and consolidated action involving over 750 claimants
- Responsible for leading the successful settlement of hundreds of clergy abuse cases (in both individual and coordinated proceedings) in Los Angeles, Orange County, and Northern and Central California
- Taught multiple courses on effective settlement techniques to judges of the Los Angeles Superior Court, and honored as the 2010 recipient of the Emil Gumpert Award as the Outstanding Jurist in the Field of Alternative Dispute Resolution
- Completed his judicial career serving in 2013 as a full-time settlement judge. Successfully resolved numerous cases, many of which had previously not settled through mediation in other venues

**Representative Matters**

- **Antitrust**
  - Vertical price fixing, unfair competition, and dealership termination in connection with the distribution and sale of consumer products
  - Bundling of "choice of service provider" rights with eligibility for rebates in connection with the purchase of cellular phones
- **Business/Commercial**
  - Nationwide cases against major retailers and a credit card company involving misapplication of payments made for goods and services purchased on credit
  - Dispute involving extended holdback periods for new products sold through independent dealers of a major telecommunications provider
  - Cases against entities whose conduct led, in part, to the adoption of Proposition 64 which substantially revised the ways in which unfair business practice claims may be pursued in California
  - Nationwide class action against major computer manufacturers for alleged false advertising relating to computer hard drives
  - Actions involving the dissolution of business organizations, including law firms
- **Civil Rights**
  - Series of class actions alleging discriminatory practices in the treatment of customers by a major Southern California theme park
- **Construction Defect**

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

EXHIBIT 2
Page 201

Hon. Charles "Tim" (Tim McCoy) W. McCoy , Jr. (Ret.) (General Biography)    Page 2 of 4

- o  Numerous construction defect disputes, both commercial and residential, involving developments, large and small, and high-value individual properties and residences
  - o  One of the few judges who has actually tried a complex construction defect case to a jury and who understands, from firsthand experience, the risks confronting all sides in such proceedings
- **Employment**
  - o  Numerous wage and hour class action cases, including actions that were among the first such precedent-setting cases litigated in the California state courts
  - o  Numerous employment cases involving a wide range of issues, from wrongful termination, to discrimination, sexual harassment, and disability discrimination, among others
  - o  Action arising out of the termination of the Superintendent of a major Southern California school district
- **Entertainment and Sports**
  - o  An action claiming the publication of false movie reviews published by major movie producers/distributors
  - o  Litigation asserting age discrimination brought by TV writers against major networks, production studios, and talent agents
  - o  Alleged endorsement misrepresentation by a national celebrity
  - o  Introduction of major motion picture exhibitor into the United States
  - o  Purchasing, distribution, exhibition of first-run films throughout United States
- **Environmental**
  - o  Complicated disputes involving groundwater contamination and clean-up issues, including a full panoply of insurance disputes that typically arise in such cases
- **Governmental/Public Agency**
  - o  Cases alleging the use of long-term, but temporary, workers to avoid incurring certain costly statutory public employment benefit obligations
  - o  Case involving alleged misallocation of revenues collected by a large metropolitan city in Southern California
- **Healthcare**
  - o  Litigation relating to claims of overcharging patients for prescription drugs, medical procedures, and medical products by a major healthcare provider operating in California and elsewhere
- **Insurance**
  - o  Over 1000 individual earthquake-related damage and insurance coverage cases involving both commercial and residential properties
  - o  Cases involving reinsurance and excess insurance for property and bodily injury claims
  - o  Breach of contract, bad faith policy cancellation and unfair business practices involving thousands of business interruption and property claims, including subsidence, arising out of a major public transit rail construction project
- **Intellectual Property**
  - o  Cases involving alleged misappropriation of trade secrets
- **Mass Torts**
  - o  Refinery fire giving rise to hundreds of individual personal injury claims
  - o  Tort and damage claims arising out of the construction of a major underground rapid transit system in Los Angeles
- **Personal Injury/Torts**
  - o  Managed and led ultimate settlement of major clergy abuse litigations (involving many hundreds of individual lawsuits) in California and nationally
  - o  Numerous asbestos exposure cases, including both personal injury actions and/or wrongful death actions
  - o  As Supervising Judge of the Civil Departments in Los Angeles, Judge McCoy led the discussions involving lawyers representing both the plaintiffs' and defense bars, that produced many of the procedures presently followed by the Los Angeles Superior Court for the resolution of complex asbestos cases (procedures that have subsequently been adopted by courts in other jurisdictions as well)
- **Professional Liability**
  - o  A variety of legal and medical malpractice cases
- **Real Property**
  - o  Eminent domain cases
  - o  Actions involving title disputes, boundary controversies, easements, drainage issues, incursion, inverse condemnation and/or nuisance, among others issues
- **Securities**
  - o  Securities litigation seeking the ultimate dissolution and distribution of the assets of a high-profile intellectual property development company
  - o  Handled the California state court litigation portion of dispute regarding artificial price inflation

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

Page 202

and violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5

- **Special Master/Discovery Referee**
  - o Extensive experience in managing and negotiating discovery, including e-discovery
  - o While serving as a Complex Litigation Judge and as Supervising Judge of the Complex Litigation Program in Los Angeles, Judge McCoy and his colleagues developed and implemented many innovative cost and time-saving techniques for the management and resolution of discovery disputes in complex cases

## Honors, Memberships, and Professional Activities

- **Honors**
  - o Outstanding Jurist Award, Los Angeles County Bar Association, 2011
  - o Golden Mike Freedom of Information Award, Radio and Television News Association of Los Angeles, 2011
  - o Emil Gumpert Award for Outstanding Jurist in the Field of Alternative Dispute Resolution, Center for Civic Mediation, Los Angeles, 2010
  - o Hon. Tom C. Clark Award, National Conference of Metropolitan Courts, 2010
  - o Pearl F. Vogel President's Award, Valley Community Legal Foundation, 2010
  - o Person of the Year Award, Los Angeles Metropolitan News, 2009
  - o Trial Judge of the Year Award, Consumer Attorneys Association of Los Angeles, 2008
- **Memberships and Professional Activities**
  - o Member, Chancery Club, Present
  - o Elected Member, Executive Board of the California Judges Association, 1996-1999, 2010-2013
  - o President, National Conference of Metropolitan Courts, 2009 and 2010
  - o Judicial Member, Executive Committee, Litigation Section of the Los Angeles County Bar Association, 2004-2010
  - o Chair, Litigation Management Committee of the California Judicial Council, 2006-2008
  - o Judicial Representative to the Board of Governors, Association of Business Trial Lawyers, Los Angeles Chapter, 1998-1999, 2008-2009
  - o Member, Judicial Council of California, 2005-2008
  - o Member, Governing Committee, California Center for Judicial Education and Research, 2001-2005
  - o Judicial Member, Executive Committee, Antitrust and Unfair Competition Law Section of the Los Angeles County Bar Association, 2002
- **Faculty**
  - o Adjunct Professor of Law (throughout the years 1995-2013), Pepperdine University School of Law and Southwestern University School of Law (teaching clinical courses in Trial Advocacy and Pre-Trial Preparation and Procedure)
  - o Faculty for numerous and varied courses on litigation and settlement subjects taught to judges and lawyers locally and statewide
  - o Creator and faculty for a judicial course on Settling Litigated Cases
  - o Faculty for Rutter Group Employment Law Seminars
  - o Co-creator and faculty for a course on leadership taught many times to judicial leaders in Los Angeles and in other California Superior Courts
- **Publications**
  - o Author, "Integrity Is Everything," *Los Angeles Lawyer*, Fall 2011
  - o Contributing Member, California Civil Jury Instructions (CACI), Member, Judicial Council Advisory Committee responsible for drafting California's statewide civil jury instructions, 2003-2005
  - o Author, *Why Didn't I Think of That? Think the Unthinkable and Achieve Creative Greatness* (Prentice Hall, 2002) (Published in English, Japanese, Mandarin Chinese, and Polish)
  - o Author, "Moncharsh and Armendariz Didn't Address Standard of Review Issue," *Los Angeles Daily Journal*, May 9, 2002
  - o Co-Author, "Representing the Aerospace Client," *The Air and Space Lawyer*, Winter, 1987

## Background and Education

- Judge of the Los Angeles Superior Court, 1993-2013
  - o Mandatory Settlement Conference Judge, 2013
  - o Supervising Judge, Juvenile Delinquency Courts, East District, 2011 and 2012
  - o Presiding Judge, Los Angeles Superior Court, 2009 and 2010
  - o Assistant Presiding Judge, Los Angeles Superior Court, 2007 and 2008
  - o Supervising Judge of all Civil Trial Courts, Los Angeles Superior Court, 2005 and 2006
  - o Supervising Judge of the Complex Litigation Courts of Los Angeles, 2004 and 2005 (Founding Bench Officer and Trial Judge of the Complex Courts, 2000-2005)

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

Page 203

- Partner, Sheppard, Mullin, Richter & Hampton, LLP specializing in complex commercial litigation (emphasis on antitrust and securities, with major clients in the aerospace, high technology, and entertainment business sectors), 1975-1993
- Chief of Staff for Hon. Matthew K. Fong (later elected California Treasurer), California State Board of Equalization, 1991 and 1992
- J.D., *with Honors*, University of Texas School of Law at Austin, Texas,
- United States Naval Justice School, Short Course (Distinguished Graduate)
- Decorated Marine Corps Officer and combat veteran
- B.S., Industrial Management, Purdue University, West Lafayette, Indiana



**Hon. Margaret A. Nagle (Ret.)**



T: 213-620-1133
F: 213-620-0100

*"She listens to both sides equally. And she'll spend as much time as it takes so the parties feel comfortable." – Defense Attorney*

*"She will work until midnight and expect you to stay that late. She just doesn't give up, even after the mediation, she kept calling." – Plaintiff Attorney*

**Case Manager**
Geri Yulo
JAMS
555 W. 5th St.
32nd Floor
Los Angeles, CA 90013
213-253-9711 Phone
213-620-0100 Fax
Email:
gyulo@jamsadr.com

**Hon. Margaret A. Nagle (Ret.)** joins JAMS following an 18-year career as United States Magistrate Judge in the high-volume Central District of California. Here, she served as a settlement judge and presided over hundreds of diverse matters. Before serving on the bench, Judge Nagle was a trial lawyer for more than 20 years during which she litigated product liability, intellectual property, employment, insurance, environmental, antitrust, malpractice, and business/commercial matters.

As a mediator, Judge Nagle approaches every matter fully prepared, and with patience and persistence. Her experience as a trial lawyer combined with her bench experience enable her to relay to parties how a judge or jury will react to their case. Judge Nagle's reputation as an effective settlement judge stems from her ability to quickly grasp complex issues and settle cases even when dealing with emotionally charged parties and intractable positions. She is evaluative, candid, and tough when needed. As an arbitrator, she is thorough, organized, and managerial. Her firm grasp of the law leads to timely, well-reasoned decisions.

**ADR Experience and Qualifications**
- Served 18 years as a federal magistrate judge, presiding over trials and evidentiary hearings, hearing a full range of motions, and managing discovery
- Mediated hundreds of cases as a settlement judge involving a wide range of civil disputes including entertainment, employment, intellectual property, civil rights, business, and tort matters
- Extensive experience handling discovery issues in vigorously litigated commercial, pharmaceutical, and product liability actions including products subject to FDA jurisdiction
- Former litigator for more than 20 years
- Degree in mathematics and economics, giving her keen perspective in business disputes

**Representative Settled Matters**
- **Business/Commercial**
  - Case asserting claims of fraud, breach of contract, and violations of civil RICO and unfair business practices statutes of California, Oregon, and Washington, involving sales of vending machines and highly caffeinated product
  - Breach of contract, false advertising, fraud, and Cal. B&P Code §17200 case related to emergency medical transport services for travelers, which involved substantial damages and the negotiation of revised advertising
  - Case alleging breach of fiduciary duties, fraud, and unjust enrichment against, and seeking millions of dollars from, officers and directors of a major credit union that failed in the wake of the sub-prime mortgage market collapse
  - Suit brought by vendor of customized and highly sophisticated software programs alleging tortious interference with contractual relations, trade libel, interference with prospective economic advantage, and Cal. B&P Code §17200 claims against competitor whose actions were alleged to have resulted in the loss of a $25,000,000 contract; counterclaims alleged theft of trade secrets and patent infringement by plaintiffs
  - Breach of contract claim by major United States (U.S.) Internet vendor against German Internet service provider for failure to comply with exclusivity and compensation provisions of contract
  - Action seeking damages in excess of $15,000,000 for alleged breach of "teaming" contract to provide recruitment, training of personnel, technical assistance, and logistics field work in connection with U.S. government operations in high threat international locations
  - Suit to recover Picasso's "Femme en Blanc", a Nazi looted painting, acquired through a New York art gallery to which it had been consigned by a French gallery; the suit and settlement negotiations focused on a complex conflict of laws issue related to whether title to the painting passed in the U.S. or France and the vigorously disputed value of the painting
  - Several cases involving dissolutions of joint ventures and partnerships
- **Civil Rights**
  - Numerous cases involving alleged uses of excessive force by various police departments and law enforcement agencies that caused minor to significant injuries to plaintiffs or death to plaintiff's decedent

Hon. Margaret A. Nagle (Ret.) (General Biography)                                                                  Page 2 of 4

- Four related and vigorously fought cases, pending in three courts, all arising out of disputes between dog owners and animal control officers regarding the constitutionality and propriety of various animal control regulations and enforcement policies; in addition to monetary compensation, the negotiation of myriad terms, including significant revisions to the local animal control laws, was essential to the settlement
- Suit alleging violation of First Amendment rights brought by protestor ejected from public meeting of a city commission for wearing a Ku Klux Klan hood and T-shirt with profane, racist message
- First Amendment case seeking substantial damages arising from a municipality's refusal to permit operation of an art studio/gallery offering tattoo services anywhere within its boundaries
- Action asserting failure by prison authorities to protect 19-year-old inmate from capture and nearly fatal beating during an allegedly foreseeable race-based riot; plaintiff sustained brain injuries that rendered him a mentally-disabled quadriplegic without the ability to speak
- Numerous cases involving alleged failures by hotels, restaurants, and other establishments to comply with ADA access requirements
- Numerous cases against various school districts brought by parents alleging failures by the districts to provide special needs students with a free and appropriate public education and seeking reimbursement for extracurricular educational support services paid for by parents
- Numerous housing discrimination cases involving refusals to rent to, or threats to evict, individuals with children or emotional support animals, or based on racial, ethnic, or national origin bias
- **Employment**
  - Multi-plaintiff action against bank for failure to pay millions of dollars in promised incentive and retention bonuses
  - Action by EEOC alleging that defendant employer, an adult toys manufacturer, subjected female employees to a pervasive atmosphere of sexual harassment in the workplace
  - Suit by a highly compensated, former female executive for a biosciences company, alleging gender and age discrimination, failure to accommodate under the ADA, and whistle-blower claims
  - Case brought by physician's assistant, who is an African American male, alleging discrimination, harassment, and wrongful termination in violation of Title VII and FEHA
  - Discrimination/wrongful termination case alleging denial of tenure to university professor based on race
  - Suit by EEOC alleging that hotel engaged in discriminatory hiring practices by favoring Chinese applicants
  - Action against federal agency by female employee claiming sexual harassment by her supervisor; settlement involved monetary compensation and workplace oversight to guard against future harassment
  - Numerous ERISA cases involving alleged failures by employers to pay required contributions to benefit plans or by plan administrators to pay proper medical and disability claims of employees, including disputes over level of care to be provided for behavioral disorders such as anorexia
  - Numerous trade secrets/unfair competition disputes asserting violations of employment agreements
- **Entertainment**
  - Case brought by international movie star involving claims of libel per se, false light, invasion of privacy, and intentional and negligent interference with prospective economic advantage
  - Copyright matter regarding a television series that was alledgedly pitched to a premier producer by screenwriters and later produced without credits
  - Consolidated copyright infringement cases, seeking multi-million damages awards, brought by major foreign television company against leading international producer and U.S. network broadcaster of long-running, non-scripted game show
  - Trademark infringement action brought by U.S. motion picture studio against prominent Canadian film distributor for infringing on the trademarked name and logo of award-winning and high-grossing animated feature film
  - Case asserting violation of copyright laws by the producer, broadcaster, and video distributor of a hit television show that used a several-second segment of the theme song for a classic program from the early days of television
  - Trademark cases involving the rights of former band members to perform under the name of a legendary Motown group and damages arising from alleged trademark infringement
  - Suit brought against Canadian creator/producer of film (awarded the Academy Award in the documentary feature category) concerning the career of a prominent big band leader and jazz clarinetist for violation of bandleader's copyrights
  - Damages and declaratory relief action brought by hit songwriter and judge on European

Hon. Margaret A. Nagle (Ret.) (General Biography)                                                                Page 3 of 4

singing competition television show against American writer to determine copyright
ownership to various written works; suit involved resolution of complicated crediting,
licensing, and royalty issues for uses in myriad media
- o Action involving conflict between California community property law and U.S. copyright law
  regarding the recapture of exclusive copyrights by the songwriter of a multimillion-dollar
  popular portfolio to which former spouse had obtained rights in a divorce settlement
- **Environmental**
  - o Private CERCLA case brought by purchaser of large commercial property against former
    owner/operator for multimillion-dollar remediation costs
  - o Series of actions brought by oil companies for contribution to multi-million dollar remediation
    costs of an Environmental Protection Agency (EPA) Superfund site polluted not only by oil
    refinery operation but also by waste disposal over a period of decades by over 30 cities, a
    county, and a waste disposal company
  - o CERCLA contribution action brought by EPA against an owner and lessor of properties within
    an EPA Superfund site
- **Insurance**
  - o Declaratory relief and indemnity action brought by title insurer against "hard money" lender
    and real estate broker involving allegedly fraudulent real estate transactions on multiple
    properties
  - o Suit against insurer for failure to pay substantial claim for fire damage to production studio
    and inventory of adult entertainment company based on suspicion of arson by the insured
  - o Action by vessels operator and its insurer against the lead underwriter on a maritime
    insurance policy covering the owner/operator of offshore oil platforms regarding coverage for
    personal injuries to workers disembarking from plaintiff's vessel onto oil platform
- **Intellectual Property**
  - o Numerous trade secrets and unfair competition matters
  - o Copyright case concerning educational programs marketed in the U.S. and internationally
  - o Trademark infringement action brought by U.S.-based permanent makeup company against
    one of the world's largest hair care products companies; settlement involved monetary
    compensation, agreement to a run-off period for sales of infringing products within the U.S.,
    and transfer of the trademark at issue to the defendant for use in global hair care markets
    outside the U.S.
  - o Declaratory judgment action brought under the Lanham Act and the Paris Convention by a
    large Mexican store chain against San Diego store owners who used the same name and
    had priority of use in the U.S.; the case presented an issue on which no circuit authority then
    existed regarding the application of the famous-mark exception to the territoriality principle of
    trademark law
  - o Action for injunctive relief and damages for trademark infringement brought by luxury brands
    holding company against international company advertising and selling counterfeit goods in
    the U.S.
  - o Suit by surfer/artist alleging infringement of his copyrighted surfboard artworks by U.S.
    clothing company
  - o Numerous suits involving alleged infringement of copyrighted fabric designs
  - o Numerous patent cases involving design features in a variety of products, including medical
    devices, food display systems for restaurants, bicycle repair tools and protective packaging
    for electronics and computer parts
- **Product Liability/Torts**
  - o Separately settled four cases brought in nationwide litigation involving serious kidney injuries
    and death related to physician-directed use of an over-the-counter pharmaceutical product
  - o Collectively settled two consolidated cases, brought as class actions, arising from skin
    irritation allegedly caused by chemicals in tag-less labels for children's clothing
  - o Spilled coffee case, seeking substantial damages for burn injuries, brought against a major
    U.S. airline
  - o Numerous cases alleging medical malpractice and negligence against the U.S. Veterans
    Health Administration and state and federal prisons
- **Real Estate**
  - o Multimillion-dollar real estate dispute involving 20 parties, including a foreign investor, a
    prominent developer, and partners in a law firm, asserting breach of contract,
    misrepresentation, and indemnity claims related to the purchase of, and leasing of space in,
    a San Diego high-rise office building
  - o Four related lawsuits, pending in federal court and state courts in Texas and California,
    arising from the transfer of ownership of a premiere Los Angeles hotel property, related
    financing issues, and early termination of a hotel management contract involving millions of
    dollars in claims and complex settlement terms
  - o Action by City of Rancho Mirage against luxury resort complex involving alleged zoning

Hon. Margaret A. Nagle (Ret.) (General Biography)                                    Page 4 of 4

violations

## Honors, Memberships, and Professional Activities

- Speaks frequently on mediation-related topics
- Member, American Bar Association
- Member, Los Angeles County Bar Association
- Former Board Member, Women Lawyers Association of Los Angeles
- Former Board Member, Association of Business Trial Lawyers of Los Angeles
- Former Member, Los Angeles County Bar Association Executive Committee for the Litigation Section
- Member, Council of Women of Boston College

## Background and Education

- U.S. Magistrate Judge, U.S. District Court, Central District of California, 1997-2015
- Partner and Associate, Stroock & Stroock & Lavan LLP, 1978-1997
- Associate, Goodwin Procter LLP, 1975-1978
- J.D., Columbia University School of Law, 1975
- B.A. in Mathematics and Economics, *Summa Cum Laude* and *Phi Beta Kappa*, Boston College, 1972

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

Page 208



**Hon. Coleman A. Swart (Ret.)**



T: 213-620-1133
F: 213-620-0100

*Recognized as a
"settlement guru" by the
Los Angeles Daily
Journal*

**Case Manager**
Reggie Joseph
JAMS
555 W. 5th St.
32nd Floor
Los Angeles, CA 90013
213-253-9704 Phone
213-620-0100 Fax
Email:
rjoseph@jamsadr.com

**Hon. Coleman A. Swart (Ret.)** is a skilled mediator and arbitrator who brings to JAMS 25 years of experience as a Los Angeles County Superior Court judge. During his time on the bench, attorneys hailed his knack for resolving cases early in the process, the result of an innovative and hands-on approach that included mandatory settlement conferences and pretrial evaluations. Experienced in resolving cases involving medical malpractice, personal injury, employment, business, and construction disputes, Judge Swart is lauded for his fair-mindedness and firm grasp on complex legal issues.

**ADR Experience and Qualifications**
- In his first year on the Superior Court bench, Judge Swart reduced the backlog of criminal cases using pretrial evaluations that often led to settlements
- As a civil trial judge, he required mandatory settlement conferences and was widely known for quickly resolving cases
- Called a "settlement guru" by the *Los Angeles Daily Journal*, Judge Swart is experienced in mediating and arbitrating cases involving a wide range of legal matters

**Representative Matters**
- **Aviation**
  - Trial case involving wrongful death claims stemming from helicopter crash
- **Business/Commercial**
  - Presided over several trials involving business and commercial disputes
  - Settled breach of contract dispute involving construction company that defaulted on payments for loans used to finance large machinery
- **Class Actions/Mass Torts**
  - Numerous class action and mass tort issues, including cases involving federal preemption and governmental immunity issues stemming from major railroad crash
- **Construction**
- **Construction Defect**
  - Trials involving construction defect cases
- **Employment**
  - Settled several employment and labor cases as settlement judge
- **Estates/Probates/Trusts**
  - Mediated and resolved hundreds of contested probate, trust, and conservatorship disputes
  - Resolved breach of fiduciary duty claims against trustee for allegedly borrowing trust money without authorization
  - Resolved matter involving distribution of popular musician's trust to illegitimate children
  - Successfully mediated dispute between siblings over mother's survivor's trust that involved accounting and disbursement issues
- **Family Law**
- **Personal Injury**
  - Settled numerous disputes involving liability of owner, workers compensation, premises liability, elder abuse, product liability, toxic tort, general personal injury, libel, defamation, and malicious prosecution matters
- **Professional Liability**
  - Presided over trials and settled disputes involving malpractice or professional liability claims in medical, legal, and architectural industries, as well as hundreds of professional liability claims involving trust and probate accounting issues
- **Real Property**
  - Tried and settled several real estate cases, including those involving homeowners associations, eminent domain, and landlord/tenant issues

**Honors, Memberships, and Professional Activities**
- Judge of the Year, Pasadena Bar Association, 2001
- Chair, Los Angeles County Superior Court Personnel and Budget Committee, 1995-1996, 2006-

555 West Fifth Street (Gas Company Tower) • 32nd Floor • Los Angeles, CA 90013 • Tel 213-620-1133 • Fax 213-620-0100 • www.jamsadr.com

Page 209

Hon. Coleman A. Swart (Ret.) (General Biography)

2008

- Los Angeles County Superior Court Executive Committee, 1993-1994, 2002-2003
- California Trial Court Budget Commission, 1993-1998
- Former member, Pasadena Tournament of Roses Association
- Former Trustee, Occidental College
- Past President, Occidental College Alumni Association
- "Spinning Others' Tales," ADR Profile, *Daily Journal*, June 8, 2012

**Background and Education**

- Judge, Los Angeles County Superior Court, 1983-2008
  - Supervising Judge, North Central and Northeast Districts, 2004-2008
  - Independent Civil Calendar Court and Probate Judge, 1995-2003
  - Supervising Judge, Pasadena Courthouse, 1993-1994
  - Civil Trial Court Judge, 1991-1992
  - Fast Track Civil Court Judge, Central District, 1989-1990
  - Criminal Trial Judge, 1983-1988
- Los Angeles County District Attorney's Office, 1967-1982
- J.D., Golden Gate University School of Law, 1967
- Retired Commander, U.S. Naval Reserve
- U.S. Naval Reserve, 1966-1983
- Active duty, U.S. Navy, 1961-1966
- B.A., Occidental College, 1961

**EXHIBIT 12**

# EXHIBIT 12

# EXHIBIT C

# EXHIBIT C

# John Bral

| | |
|---|---|
| **From:** | Barry Beitler <bbeitler@beitler.com> |
| **Sent:** | Thursday, October 24, 2013 10:26 AM |
| **To:** | John Bral; 'Donald Rezak' |
| **Subject:** | Westcliff |

John and Donald –

Burnham is extremely motivated due to their short fuse to identify a trade.  Please do not delay in responding as I am a Seller under the following terms:

**Price**:     $9,000,000 net of <u>any</u> fees

**TIC**:      Prior to final Purchase & Sale - I want to TIC my interest

**Betsy's Interest**:     Betsy can decide if she wants to cash out or roll with

**Your Proceeds**:     I would expect you to pay back all loans to me thru your proceeds and such would be put into Escrow

**Closing**:     By December 15, 2013

Please advise and <u>do not delay</u>.  The trade sounds time sensitive.

Thank you,

Barry

Barry Beitler
Beitler Commercial Realty Services
825 S. Barrington Avenue
Los Angeles, CA  90049
Phone (310) 820-2955
Fax  (310) 820-7224
Broker # 00808850
License # 00499329

1

## FW: Sale of Westcliff

**John Bral** <john@bralrealtyadvisors.com>                                    Mon, Nov 30, 2015 at 4:33 PM

Hi Lloyd, please review and let me know.


Barry,


Just received an email from Doug Killian (see below) stating; "*Burnham needs to close year end on a*
*$8-15m 1031. Any chances for Westcliff*"?  As you are fully aware that Gelsebach and other loans coming
due soon; this is an opportunity to sell at lucrative price and Buyer (Burnham) will work with us to give tax and
other benefits; Burnham has until end of the year to find exchange property and will have little interest in
Westcliff after end of year.


I am resending the Offer again and I need an immediate answer.


John


**From:** Doug Killian [mailto:DKillian@voitco.com]
**Sent:** Monday, November 30, 2015 1:52 PM
**To:** John Bral
**Subject:**


Burnham needs to close year end on a $8-15m 1031. Any chances for Westcliff. What is judge saying on
timing? Seems like can is being kicked down the road.

**Douglas L. Killian**

Senior Vice President

***Voit* Real Estate Services**

2020 Main Street, Suite 100 | Irvine, CA 92614

**T** (949) 851-5100 | **F** (949) 261-9092

dkillian@voitco.com | www.voitco.com

License #00887784

CORFAC International

---

**Burnham Family Trust AIR PSA 3.9.15 .pdf**
1296K

## FW: Purchase Offer Westcliff Investors, LLC

Thu, Dec 3, 2015 at 4:17 PM

Donald,

The PSA was prepared by the Burnham's Agent Doug Killian and was sent to me.  Apparently you have not read Paragraph 27.2 correctly; the commission is to the Buyer's Broker only which is Doug Killian. Any discussions of commission need to be between Barry and me.

Best Regards,

John J. Bral

President



Bral Realty Advisors Inc.

BRE Broker #01035461

2601 Main Street, Suite 960

Irvine, CA 92614

949.721.8600 main office line

949.752.2583 direct fax

714.719.8577 mobile
john@bralrealtyadvisors.com

www.bralrealtyadvisors.com

Bral Realty Advisors Inc. Confidentiality Statement: The information contained in this transmission is privileged and confidential. It is intended only for the recipient(s) named above. If you are not the intended recipient, please forward this to the intended recipient immediately. Anyone other than the intended recipient is strictly prohibited from any dissemination, distribution or copying of this transmission. If you have received this in error, please contact the sender immediately and destroy the transmission.

**From:** donald rezak [mailto:donald.rezak@gmail.com]
**Sent:** Wednesday, December 02, 2015 5:04 PM
**To:** John Bral
**Cc:** Barry Beitler; Donald Rezak
**Subject:** Fwd: Purchase Offer Westcliff Investors, LLC


John:


I just wanted to note that the PSA you sent with regard to the Killian offer was dated March 2015.   Did you draft the PSA?  Also, Paragraph 27.2 provides for a brokerage fee.  As previously stated, Barry will not consent to the issuance of a commission.  Moreover, this raises the issue previously noted with regard to the payment of a commission to an insider and the required approval by disinterested members.


Donald


**From:** donald rezak [mailto:donald.rezak@gmail.com]
**Sent:** Tuesday, December 01, 2015 3:56 PM
**To:** John Bral
**Cc:** Barry Beitler; Donald Rezak
**Subject:** Purchase Offer Westcliff Investors, LLC


John:


Barry provided me with a copy of the purchase offer.  Apparently, Doug Killian has previously approached Barry about selling the Westcliff property (the "Property").  As you know, neither Barry nor Betsy are interested in a sale of the Property and if any sale is considered, it must be subject to a 1031 exchange.  Moreover, there is the present concern that the market place will not afford viable replacement property as part of the exchange.  Barry's (and Betsy's) reluctance to sell has been well documented in past email correspondence.

Separate from the sale, Barry and you are in litigation regarding money loaned to you by Barry in 2010 and 2011, which remain outstanding.  Nothing in your email addresses any of these matters, which includes

Westcliff. I am not keen on the prospect of reaching an agreement on these matters, since neither you nor any of your attorneys have responded to numerous requests these many months for settlement proposals in response to our desire to reach an accord on these matters. You have not been served well by this approach.

Notwithstanding the reluctance of Barry (and Betsy) to sell, I do not see how you can conduct a sale affording you access to proceeds unless there is an understanding regarding the allocation of your share of Westcliff proceeds. If you are serious regarding this purchase offer, I suggest you consider the following:

1. a purchase offer of $9.2mm;

2. a structure to any sale allowing for a 1031 exchange for Barry and Betsy; and

3. allocating your share of proceeds in a blocked account pending the outcome of existing litigation.


Within the context of Westcliff alone, in addition to the money loaned to you and among other things, the following issues remain:

A. the percentage of membership interest owned by the members;

B. distributions to members based on corrected membership interest;

C. allocation of sale proceeds based on corrected membership interest;

D. payments received for property management and brokerage commission in breach of the operating agreement;

E. accounting; and

F. attorneys' fees.


Please advise.


Regards,



Donald

# EXHIBIT D

# EXHIBIT D

RECORDING REQUESTED BY:

George Gelsebach

AND WHEN RECORDED MAIL TO:

George Gelsebach
15426 Briarwood Drive
Los Angeles,
California 91403

---

## DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS

THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS (hereinafter the "Deed of Trust") made this 21st day of July, 2015, by and among WESTCLIFF INVESTORS, LLC, a California limited liability company ("Trustor"), and NORTH AMERICAN TITLE COMPANY ("Trustee"), for the benefit of GEORGE GELESEBACH, a married man as his sole and separate property, ("Beneficiary"), whose address is 15426 Briarwood Drive, Los Angeles, California 91403.

This Deed of Trust is given for purpose of securing the following:

(1)    Performance of all obligations of Trustor under any agreements of Trustor incorporated by reference or contained herein.

(2)    Payment of indebtedness in the total principal amount of Four Hundred Thousand Dollars ($400,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note dated July 21, 2015, executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions and renewals thereof.

(3)    Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.

(4)    Payment of all sums advanced or paid out by the Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

1

EXHIBIT "2"
Page 224

# EXHIBIT E

# EXHIBIT E

Exhibit A

1. Promissory Note dated February 25, 2013 in the principal amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) ("Note").

2. Disbursement Request and Authorization dated February 25, 2013.

2. Business Loan Agreement dated February 25, 2013 ("Loan Agreement").

3. Deed of Trust dated February 25, 2013, recorded on February 28, 2013 as Instrument No. 2013000125781 in the Official Records of the County of Orange, State of California ("Deed of Trust").

5. Assignments of Rents dated February 25, 2013, recorded on February 28, 2013 as Instrument No. 2013000125782 in the Official Records of the County of Orange, State of California ("Assignments of Rents").

6. Commercial Guaranty executed by Beiller Family Living Trust dated September 19, 2008.

7. Commercial Guaranty executed by John J. Bral dated February 25, 2013.

8. Commercial Guaranty executed by Barry Beiller dated February 25, 2013.

9. Limited Liability Company Resolution to Borrow / Grant Collateral for Ocean View Medical Investors, LLC, a limited liability company, dated February 25, 2013.

10. Limited Liability Company Resolution to Borrow / Grant Collateral for Westcliff Investors, LLC, a California limited liability company, dated February 25, 2013.

11. Trust Certificate executed by Beiller Family Living Trust dated February 25, 2013.

12. Hazard Insurance Disclosure dated February 25, 2013.

13. Agreement to Provide Insurance dated February 25, 2013.

14. Notice of Insurance Requirements dated February 25, 2013.

15. Notice of Final Agreement dated February 25, 2013.

16. Chicago Title Insurance Company Policy No.: #CA-FLAC-IMP-72307-1-13-001146790.

12

EXHIBIT "2"
Page 226

## ALLONGE

THIS ALLONGE is attached to that certain Promissory Note for the principal sum of Two
Hundred Fifty Thousand Dollars ($250,000) dated February 25, 2013 executed by Ocean
View Medical Investors, LLC ("Borrower"), in favor of Premier Business Bank
("Assignor").

Pay to the order of Cannae Financial LLC

Dated: February 27, 2014

ASSIGNOR:

PREMIER BUSINESS BANK

By: _____

Name: JOHN R. POLEN

Its: CEO

State of California
County of Los Angeles
On February 27, 2014 before me, (here insert name and title of the officer), personally
appeared John Polen , who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf on which the
person(s) acted, executed the instrument.
I certify under PENALTY of PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____                    (Seal)

SHARON FAMORCA
Commission # 1946654
Notary Public - California
Los Angeles County
My Comm. Expires Aug. 4, 2015

EXHIBIT 8

EXHIBIT 13


*000000000101270000009660225201 3*

PREMIER
BUSINESS BANK

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $260,000.00 | 02-25-2013 | 08-26-2013 | 4012700000 | | | 0042 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** OCEAN VIEW MEDICAL INVESTORS LLC
825 S. BARRINGTON AVENUE
LOS ANGELES, CA 90049

**Lender:** PREMIER BUSINESS BANK
700 S. FLOWER STREET, SUITE 2000
LOS ANGELES, CA 90017
(213) 689-4800

**Principal Amount: $260,000.00** **Date of Note: February 26, 2013**

**PROMISE TO PAY.** OCEAN VIEW MEDICAL INVESTORS LLC ("Borrower") promises to pay to PREMIER BUSINESS BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Fifty Thousand & 00/100 Dollars ($260,000.00), together with interest on the unpaid principal balance from February 26, 2013, until paid in full.

**PAYMENT.** Borrower will pay this loan in one principal payment of $260,000.00 plus interest on August 26, 2013. This payment due on August 26, 2013, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning March 26, 2013, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any late charges; then to principal; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Western Edition Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.250%. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: PREMIER BUSINESS BANK, 700 S. FLOWER STREET, SUITE 2000 LOS ANGELES, CA 90017.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 6.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

Environmental Default. Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from

PROMISSORY NOTE
(Continued)

Loan No: 4012700000

Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of LOS ANGELES County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated February 26, 2013, to a trustee in favor of Lender on real property located in ORANGE County, State of California. That agreement contains the following rights and provisions. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of all rents to Lender on real property located in ORANGE County, State of California.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Premier Business Bank 700 S. FLOWER STREET, SUITE 2650 LOS ANGELES, CA 90017.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

44 of 45

EXHIBIT "2"
Page 229

PROMISSORY NOTE
(Continued)

Loan No: 4012700000                                                                                Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

OCEAN VIEW MEDICAL INVESTORS LLC

By: _____          By: _____
    HANIY NGUYEN, Managing Member of OCEAN        JOHN J. BRAL, Managing Member of OCEAN VIEW
    VIEW MEDICAL INVESTORS LLC                    MEDICAL INVESTORS LLC

LENDER:

PREMIER BUSINESS BANK

X _____
    Authorized Officer

45 of 45

# EXHIBIT F

# EXHIBIT F

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange
09/08/2015 at 11:22:29 AM
Clerk of the Superior Court
By eClerk, Deputy Clerk

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 07 2015

1   LEVY, SMALL & LALLAS
    A Partnership Including Professional Corporations
2   TOM LALLAS (SBN: 66512)
    815 Moraga Drive
3   Los Angeles, California 90049-1633
    Telephone:   (310) 471-3000
4   Facsimile:   (310) 471-7990

5   Attorneys for Plaintiff and Judgment Creditor
    Cannae Financial, LLC

6

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF ORANGE, CENTRAL DISTRICT

10

11  CANNAE FINANCIAL, LLC,                CASE NO.   30-2014-00733044-CU-BC-CJC
    a California limited liability company,   [Hon. Gregory H. Lewis; Dept. "C26"]
12
                Plaintiff,                [~~PROPOSED~~] CHARGING ORDER
13
        v.
14                                        Date:    November 2, 2015
    JOHN BRAL, an individual, and DOES    Time:    10:30 a.m.
15  1 through 20, inclusive,              Dept.:   C26

16              Defendants.              [Reservation No. 72229380]

17                                        Judgment Entered:    July 16, 2015

18

19

20

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

              [~~PROPOSED~~] CHARGING ORDER

1    The Court having considered the Motion for Charging Order filed by Plaintiff and

2  Judgment Creditor Cannae Financial, LLC ("Cannae"), and good cause appearing therefor,

3    IT IS HEREBY ORDERED as follows:

4    1.    The interest of judgment debtor John Bral ("Bral") in the limited liability

5  company known as Westcliff Investors, LLC ("Westcliff"), whose address is 2610 Main Street,

6  Suite 960, Irvine, California 92614, is hereby charged with the unpaid balance of the Judgment

7  entered in favor of Cannae and against Bral on July 16, 2015 in the sum (including prejudgment

8  interest) of $316,635.67, plus interest thereon at the rate of 10% per annum from and after July

9  16, 2015, plus costs and attorney's fees as may be awarded..

10    2.    Westcliff and its members, including Bral, Barry Beitler and Betsy Boyd, shall

11  pay directly to Cannae any money or property due or to become due to Bral, until the amount

12  remaining on the Judgment, plus all accrued interest and costs thereon, is paid in full.

13    3.    Cannae is hereby entitled to foreclose upon and sell Bral's membership interest in

14  Westcliff on or after _____, 2015

15

16  DATED: ⎯12 - 7 -⎯, 2015

17    **GREGORY H. LEWIS**
    JUDGE OF THE SUPERIOR COURT

18

19  31644

20

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS
A LAW FIRM INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

[PROPOSED] CHARGING ORDER

EXHIBIT "2"
Page 233

1

## PROOF OF SERVICE

2

*John Bral v. Westcliff Investors, LLC, etc., et al.*
**Los Angeles County Superior Court Central District; Case, No. BC 553693**
[Formerly OCSC, Complex, Case No. 30-2013-00688658-CU-MC-CJC]

3

4

I am employed in the County of Los Angeles, State of California.  I am over the age of 18
and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles,
California 90049.

5

6

On February 11, 2016, I served the foregoing document(s) described as:

7

**DECLARATION OF TOM LALLAS IN OPPOSITION TO MOTION FOR ORDERS: (1)
APPOINTING ARBITRATOR AND ORDERING COMPLETION OF ARBITRATION
BY MARCH 15, 2016, OR, IN THE ALTERNATIVE, TO VACATE THE ORDER TO
ARBITRATE AND SET FOR IMMEDIATE TRIAL FOR DEFENDANTS' FAILURE TO
PROCEED WITH ARBITRATION; AND (2) APPOINTING RECEIVER TO SELL
REAL PROPERTY PENDING ARBITRATION AND DISSOLUTION OF THE LLC** on
all interested parties in this action ☒ by placing a true copy ☐ by placing true copies thereof
enclosed in sealed envelopes addressed as shown on the attached service/mailing list in the
manner indicated below:

8

9

10

11

12

☒    **(BY ELECTRONIC MAIL):** Based on an agreement or an agreement of the parties to
accept electronic service, I caused said document(s) to be transmitted by electronic mail
to the person(s) listed on the attached service/mailing list.  No system administrator error
message(s) were returned or received after said transmission(s).

13

14

15

☒    **(STATE)** I declare under penalty of perjury under the laws of the State of California that
the above is true and correct.

16

17

Executed on February 11, 2016, at Los Angeles, California.

18

*Katie Finn*
Katie Finn

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

1

## SERVICE/MAILING LIST

2

*John Bral v. Westcliff Investors, LLC, etc., et al.*
**Los Angeles County Superior Court, Case, No. BC 553693**
*[Formerly OCSC, Complex, Case No. 30-2013-00688658-CU-MC-CJC]*

3

4

5   Babak (Bobby) Samini, Esq.          Attorneys for Plaintiff
    SAMINI SCHEINBERG, PC             **JOHN BRAL**

6   840 Newport Center Drive, Suite 700
    Newport Beach, CA 92660

7   Tel:   (949) 724-0900
    Fax:   (949) 724-0901

8   Email: bsamini@saminilaw.com

9

10  Lloyd K. Chapman, Esq.            Co-Counsel for Plaintiff
    LAW OFFICE OF LLOYD K. CHAPMAN    **JOHN BRAL**

11  4558 Sherman Oaks Avenue, Second Floor
    Sherman Oaks, CA 91403

12  Tel:   (818) 304-8412
    Fax:   (818) 990-1477

13  Email: lkchapmanlaw@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE/MAILING LIST**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF SEAN A. O'KEEFE IN SUPPORT OF MOTION SEEKING: (1) DISALLOWANCE OF CLAIMS 14 AND 16; AND (2) STRIKING CLAIMS ALLEGED IN ADVERSARY NOS. 8:17-AP-01094 AND 8:17-AP-01092 ON THE GROUNDS THE SAME WERE FILED BASED UPON FALSIFIED EVIDENCE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 22, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) November 22, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Office of the United States Trustee
411 W. Fourth Street
Suite 7160
Santa Ana, CA 927601-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 22, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
SERVED VIA PERSONAL DELIVERY/ATTORNEY SERVICE:
The Honorable Scott C. Clarkson, United States Bankruptcy Court, Central District of California, Ronald Reagan Federal Building and Courthouse, 411 West Fourth Street, Suite 5130/Courtesy Bin, Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/22/2017 | Lori Gauthier | /s/ Lori Gauthier |
| *Date* | *Printed Name* | *Signature* |
| #1140591 | | |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Thomas H Casey**   kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**   afriedman@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@lwgfllp.com;lgauthier@lwgfllp.com
- **Daniel K Fujimoto**   wdk@wolffirm.com
- **Beth Gaschen**   bgaschen@wgllp.com,
  kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com
- **Michael J Hauser**   michael.hauser@usdoj.gov
- **Mark D Hurwitz**   mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner**   gek@lnbyb.com
- **William N Lobel**   wlobel@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Kathleen J McCarthy**   kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**   Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**   kjm@lnbrb.com
- **Edward G Schloss**   egs2@ix.netcom.com
- **Valerie Smith**   claims@recoverycorp.com
- **Daniel B Spitzer**   dspitzer@spitzeresq.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**   ecfnotices@ascensioncapitalgroup.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**