1 | William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
2 | Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
3 | Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
4 | **LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
5 | Costa Mesa, California 92626
Telephone    714-966-1000
6 | Facsimile    714-966-1002

7 | Attorneys for Debtor and Debtor-in-Possession
John Jean Bral

8

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SANTA ANA DIVISION**

12 | In re | Case No. 8:17-bk-10706-SC

13 | JOHN JEAN BRAL, | Chapter 11

14 | Debtor and Debtor-in-Possession. | **REPLY TO OPPOSITION TO MOTION SEEKING DISALLOWANCE OF CLAIMS 14 AND 16 ON THE GROUNDS THE SAME WERE FILED BASED UPON FALSIFIED EVIDENCE**

17 | **DATE:   December 14, 2017**
**TIME:    11:00 a.m.**
18 | **CTRM:  5C**

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1144547.1

REPLY

1

## **TABLE OF CONTENTS**

2

**Page**

3  I.   PRELIMINARY STATEMENT............................................................................... 1

4  II.  REPLY........................................................................................................... 8

5  III. CONCLUSION.............................................................................................. 11

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

ABF Freight System, Inc. v. N.L.R.B.,
    510 U.S. 317, 323 (1994) ................................................................. 9

Brown v. Oil States Skagit Smatco,
    664 F.3d 71 (5th Cir. 2011)............................................................. 10

Aoude v. Mobil Oil Corp.,
    892 F.2d 1115, 1118 (1st Cir. 1989) ................................................ 9

Chavez v. City of Albuquerque,
    402 F.3d 1039 (10th Cir. 2005) ....................................................... 10

Combs v. Rockwell Int'l Corp.,
    927 F.2d 486, 488 (9th Cir. 1991) ................................................... 10

Evans v. Nuehring,
    2014 WL 4078251, at *2 (E.D. Cal. 2014), report and
    recommendation adopted, 2014 WL 4748114 (E.D. Cal. 2014) .......................... 10

Fleming v. Escort, Inc.,
    2015 WL 136091, at *2 (D. Idaho 2015) ................................................. 5

Icenhower,
    755 F.3d 1130, 1141 (9th Cir. 2014)................................................... 5

Jimenez v. Madison Area Tech. Coll.,
    321 F.3d 652, 657 (7th Cir. 2003)...................................................... 10

Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin,
    283 U.S. 520, 521-22, 51 S.Ct. 501, 502 (1931) ................................. 11

Onujiogu v. United States,
    817 F.2d 3, 5 (1st Cir. 1987)........................................................... 4

United States v. Brown,
    172 F.3d 59 (9th Cir. 1999)............................................................. 5

United States v. Golden Elevator, Inc.,
    27 F.3d 301, 302 (7th Cir. 1994)....................................................... 9

Lobel Weiland Golden Friedman LLP
660 Town Center Drive, Suite 960
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

1    John J. Bral, the debtor and debtor-in-possession herein ("Bral" or the "Debtor"),

2  hereby submits the within *Reply* to the *Opposition* filed by Barry Beitler ("Beitler") and

3  Betsy Boyd ("Boyd") (together, the "Beitler Parties") to that certain *Motion Seeking*

4  *Disallowance of Claims 14 And 16 On The Grounds The Same Were Filed Based Upon*

5  *Falsified Evidence* (the "Motion").

6  **I.    PRELIMINARY STATEMENT**

7    Despite its numerous protestations to the contrary, the Opposition itself makes it

8  imminently clear, that this is **not** a case of inadvertence, simple oversight or mistake – or,

9  as the Beitler Parties attempt to paint it – an "irrelevant sideshow."  Indeed, the Beitler

10  Parties' refrain that their use of false evidence was a one-time harmless error not only

11  underplays the pervasive reality of the deceit, but denigrates the controls in the justice

12  system expressly designed to curtail fraud on the judiciary and litigation counter-parties.

13    Contrary to the very foundation of Beitler Parties' Opposition, this is not a one-time

14  "slip-up" that should be ignored by this Court.  Rather, the Beitler Parties (and related-

15  entity Beitler & Associates, dba Beitler Commercial Realty Services ("BCRS")),[1] have

16  repeatedly attempted to utilize the falsified evidence to their advantage in no less than five

17  (5) known instances, including the following:

18    • In the underlying state court litigation commenced by Beitler and BCRS against
      Bral, *currently pending* as Los Angeles Superior Court, Case No. BC543410,
19      in which the complaint (the "State Court Complaint")[2] at paragraph 27, cites to
      Section 3.3 of the Altered OPA as follows:
20

21

22
_____

23    [1] For the same reasons as set forth in the Motion and herein, the proof of claim filed by BCRS
   should similarly be stricken as it also utilizes the falsified evidence (which the Debtor discovered
24   as a result of a review of the Beitler Parties' claims in the Opposition that they did not use the
   terms of the Altered OPA in connection with the BCRS claim or otherwise).
25

26    [2] By way of the State Court Complaint, Beitler and BCRS are seeking to recover from the
   Debtor their alleged share of commission and fees based upon the terms of the various operating
   agreements.  Beitler and BCRS are unequivocally using the Altered OPA as a means of asserting
27   enhanced claims against the Debtor.

28

27.   "Section 3.3 of the Westcliff Operating Agreement provides for BCRS to act as broker and for sale and leasing commissions to be split equally between Beitler and Bral:

> At all times, whenever a vacancy in the property becomes available, Beitler Commercial Realty Services shall be hired for the leasing at market commission rates.  Bral and Beitler agreed [sic] to split equally (50%/50%) any and all commissions for leasing paid if any.  The same shall be true of any commission of the future sale of the Property...."

The State Court Complaint (as set forth below), also forms the basis for BCRS' Proof of Claim No. 9 ("Claim No. 9") filed in the Debtor's case.[3]

- In Claim No. 14 filed by Beitler attaching the Altered OPA, which has been amended in response to the Motion in an attempt to rectify the fraud.

- In Claim No. 16 filed by Beitler's sister, Boyd, attaching the Altered OPA, which has also been amended in response to the Motion in an attempt to rectify the fraud.

- In Claim No. 9 filed by Beitler's wholly-owned entity, BCRS, which attaches the State Court Complaint containing the above-quoted language at paragraph 27 as to the fraudulent provisions of the Altered OPA.  Claim No. 9 has not been amended and continues to assert falsified terms from the Altered OPA.[4]

- In connection with the Debtor's deposition during which Beitler and his counsel questioned the Debtor with respect to the terms of the Altered OPA – only some of which questioning was attached to the Lallas Declaration filed in support of the Opposition.  These questions included:

Q. You understood, didn't you, that under Section 4.1, Barry Beitler was the company's managing member?

                    *      *      *

Q.  And do you see the next sentence that says "Bral and Beitler agree to split equally (50 percent/50 percent) any and all commissions for leasing paid, if any"?

The entirety of the questioning by Beitler's counsel is attached hereto as Exhibit "B."  As Exhibit "B" shows, this depth of questioning with respect to the provisions of the

---

[3] A true and correct copy of Claim No. 9 is attached hereto as Exhibit "A."

[4] Presumably, we will see an amendment to Claim No. 9 prior to the hearing on the Motion, as a further attempt by the Beitler Parties to whitewash the fraud committed upon the Court.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-384-1000 · Fax 714-384-1002

1  Altered OPA completely undermines and contradicts the Beitler Parties' current claims of

2  inadvertence and mistaken usage.

3      These numerous instances of relying on the terms of a falsified agreement (some

4  of which remain in place today notwithstanding the Beitler Parties' recent scramble to

5  attempt to "white-wash" their scheme) constitute a fraud on at least two courts presiding

6  over the ongoing disputes between the Beitler Parties and the Debtor – this Court and the

7  state court.  This fraud cannot be undone by a simple amendment of the Beitler and Boyd

8  proofs of claim ("oops, we've been caught, so we'll just amend our documents to cite to

9  the legitimate agreement since our fraud didn't work out the way we hoped...").  This is

10 not the way the system works and Beitler and Boyd (and now BCRS) should not be

11 allowed to "game" the system in this way.[5]

12      Indeed, the deafening silences in the Opposition are as astounding as the Beitler

13 Parties' nonchalance given the admissions in their own pleading.  In this regard, the

14 Debtor would specifically highlight the following: (1) the Opposition acknowledges the

15 fabricated nature of the evidence, but offers no explanation as to who created it or why;

16 (2) the Opposition is silent on the identity of the individual who provided the fabricated

17 evidence to Beitler's counsel; (3) the Opposition fails to explain why Beitler's counsel

18 would have a fabricated piece of evidence in his file alongside the authentic version

19 thereby explaining his "inadvertent" mixing up of the two; and (4) the Opposition is silent

20 as to why Beitler and his counsel attempted to use a document *they knew to be false* in a

21 deposition.  Importantly, the Opposition, in an attempt to mislead the Court and the Debtor

22

23  _____

24  [5] The Beitler Parties' position throughout the Opposition that their fraud is somehow excused
    since the Debtor (and his counsel) only recently discovered it assumes that it is the *Debtor* with
    the onus of ferreting out such fraud – *as opposed to the obligation being on a party not to commit*

25  *fraud in the first place.*   The Beitler Parties' position in this regard is both absurd and
    insupportable.  The Debtor acted immediately upon discovery of the fraud.  The Beitler Parties

26  cannot have it both ways – taking the Debtor to task for acting too slowly to discover the fraud, on
    the one hand; and acting too quickly in setting a hearing to address the now-discovered fraud on

27  him and this Court, on the other.  The matter is ripe for this Court to rectify the fraud at the
    December 14th hearing by striking the proofs of claim relying on fraudulent evidence (including the

28  more recently discovered fraudulent Claim No. 9) as requested by the Motion.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-364-1900 • Fax 714-364-1002

(perhaps hoping that no one would bother checking), insists, in multiple instances that the Altered OPA has **never** been used against the Debtor, including making the following statements:

1.  Neither Beitler nor Boyd gained or attempted to gain any advantage by this inadvertent error (Opposition, page 1);

2.  Beitler and Boyd have not used the Different Version in any of the state court litigation by or against Bral or his affiliated entities (Opposition, page 1);

3.  Bral does not and cannot show that the Opposing Creditors ever used the Different Version against Bral or his entities in any other litigation (Opposition, page 6);

4.  Neither Beitler nor his counsel ever asserted the Different Version against Bral or his entities in the various non-bankruptcy litigation (Opposition, page 6);

5.  [N]othing in the Subject Claims, the narratives attached thereto,…is based on or cites (i) any provision of the Different Version that differs from the Operative Version…. (Opposition, page 6).

As discussed, the Beitler Parties' assertions relative to the use of the Altered OPA are unquestionably and demonstrably false.

The Beitler Parties seem to believe that the courts are in the business of ignoring the obvious. That is, however, not the case. See Onujiogu v. United States, 817 F.2d 3, 5 (1st Cir. 1987) ("Although there was no direct proof of it, any other conclusion flies in the face of common sense – and the law is not so struthious as to require courts to ignore the obvious."). In this case, there is only one party that would gain from the very precise falsifications made to the OPA and the forged initials incorporated therein, only one party submitted this document into evidence, and only one party sought to use this falsified evidence in a deposition and in pending state court litigation – that party is *Barry Beitler*.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

1 | The admission of the Altered OPA's falsehood, coupled with the Beitler Parties' silences

2 | on the crucial issues identified above, constitutes compelling evidence in support of the

3 | Motion. See United States v. Brown, 172 F.3d 59 (9th Cir. 1999) (Court entitled to draw

4 | inferences from circumstantial evidence).

5 |      The arguments made in the Opposition, summarized below, reek of evasion and

6 | misdirection:

7 |         1.  The attachment of the Altered OPA to the Proofs of Claim (the

8 |           "POCs") was an inadvertent error of counsel;

9 |         2.  Beitler has never filed any other pleading wherein he has sought

10 |           to introduce or use the Altered OPA instead of the Authentic OPA;

11 |           and

12 |         3.  Somehow, all of this is Mr. Bral's fault.

13 |      The first argument, along with every declaration submitted in support of the

14 | Opposition, ignores the eight-hundred-pound gorillas in the room: *Who prepared the*

15 | *Altered OPA – a very carefully fabricated piece of evidence with forged initials on the*

16 | *substituted pages – and who gave it to counsel?* Unless Beitler's counsel fabricated this

17 | document (which Mr. Bral's counsel has confidence is not the case), then there is only

18 | one other party who could have prepared and submitted this fabrication – Beitler or

19 | someone who took the action on his behalf.[6]

20 |      The second argument above is demonstrably and patently false.  Attached hereto

21 | as Exhibit "A" is Claim No. 9.  Claim No. 9 includes, as Exhibit "A" thereto, the State Court

22 | Complaint.  Claim No. 9 is, by its own admission, based on the State Court Complaint that

23 |

24 | _____

25 | [6] The evidence bearing upon this issue is no longer subject to the attorney-client privilege. See In re Icenhower, 755 F.3d 1130, 1141 (9th Cir. 2014) ("Under the crime-fraud exception,

26 | communications are not privileged if the client seeks the advice of counsel to further a criminal or fraudulent scheme and the communications are sufficiently related to and made in furtherance of

27 | that scheme."); Fleming v. Escort, Inc., 2015 WL 136091, at *2 (D. Idaho 2015).  *Bral now has a right to all evidence bearing upon who prepared and who delivered the Altered OPA.*  This would

28 | include all emails between counsel and Beitler that refer or relate to the preparation and delivery of this document.

Beitler (and BCRS) filed in California Superior Court that quotes from false language imported into the Altered OPA.  The sole purpose of quoting the language from the Altered OPA (Paragraph 27 of the State Court Complaint) is to increase Beitler's and BCRS' claims against the Debtor (which purports to change the fee split from 60%/40% to 50%/50%.)  It is difficult to imagine a more clear and purposeful use of the Altered OPA adverse to the Debtor.

This argument also ignores the fact that the Altered OPA was one of the very first documents presented to Mr. Bral during his deposition. *This use was neither inadvertent nor innocent.  In the deposition, Beitler's counsel made a point of directing Bral's attention not just to the fabricated pages, but to the exact location of the falsified language on each of the pages, while Beitler watched.[7]* Respectfully, a bowman who hits the target dead-center on the first try is not at liberty to insist upon his own blindness.

Occam's Razor is not as dull as the Beitler Parties would have this Court believe.  The undisputed facts presented in this case yield only one explanation:  Beitler, or someone in his office, carefully fabricated a piece of evidence to advance his legal position, and then this falsified piece of evidence was used both as an exhibit to the POCs and was referred to and relied upon in the State Court Complaint (and BRCS Claim No. 9). *The use of the falsified evidence under circumstances in which its use could have no other logical purpose than to gain an advantage over Bral in this case, and in at least one other case, was not "inadvertent," it was not a mistake, and it certainly was not a mere "irrelevant sideshow."*  The only question is what is the appropriate sanction for this course of conduct.  Although the Beitler Parties contend that a dismissive judicial "shrug" is the proper response, the case law indicates, and indeed dictates, otherwise.

---

[7] As is evident from Exhibit "B" attached hereto, counsel for the Beitler Parties grilled the Debtor both with respect to the managerial rights of the entity as well as the commission split as contained in the Altered OPA.  For what possible purpose?  To trick or confuse the Debtor into an admission to be used at a later date?  The Opposition also provides no answer to this question.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-836-1000 • Fax 714-836-1002

1    Moreover, the sanction of striking all proofs of claim that have relied on this falsified

2  evidence is properly undertaken by the Court at this (and not some later) juncture.  While

3  the Beitler Parties would obviously prefer that this Court defer consideration of these

4  issues and the imposition of appropriate sanctions for their conduct (and much of the

5  Opposition is either a direct or indirect plea for such relief), the relief sought by the Debtor

6  is procedurally proper under time-frames provided by the Bankruptcy Rules, and the Court

7  should rule on these issues at the December 14th hearing.  In fact, such relief is critical in

8  light of the impact that a ruling on this Motion will have on the other matters currently

9  pending before this Court.

10    Contrary to their intimations, the Beitler Parties were not purposefully "sandbagged"

11  by the Debtor or his counsel.  The Motion was set on 21-days' regular notice in

12  accordance with the applicable rules governing contested matters under Bankruptcy Rule

13  9013.  The Beitler Parties were given appropriate notice of the Motion and had a response

14  time in accordance with the applicable Bankruptcy Rules.  Indeed, the Motion was set for

15  hearing on a date where several matters were already scheduled for hearing, including

16  objections to the Beitler Parties' POCs and the Debtor's motions to dismiss the non-

17  dischargeability actions (which matters were thereafter consensually continued).  While it

18  is always unfortunate when counsel is required to work over a holiday in order to meet a

19  filing deadline, Debtor's counsel did not schedule the hearing on the Motion to

20  intentionally inconvenience counsel (indeed, Debtor's counsel was not specifically aware

21  of the closing of the ECF system requiring a filing earlier in the day than would have

22  otherwise been the case).  Rather, given the gravity of the matters at issue here, the

23  Debtor prepared, filed and set the Motion for hearing at the earliest possible time in

24  accordance with applicable notice requirements.

25    A timely determination on this Motion is essential as such determination will have a

26  direct and immediate impact on both the pending claims objections and the non-

27  dischargeability adversary matters – as these matters will be rendered moot should the

28  proofs of claim based on falsified evidence be stricken as appropriate under governing

Lobel Weiland Golden Friedman LLP
660 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  law.  There is no additional "evidence" or argument that the Beitler Parties could present

2  or make in connection with any continued hearing – all the evidence and argument that

3  this Court needs to make a decision is already in front of this Court.  The Debtor,

4  therefore, requests that the Court rule on the Motion at the December 14th hearing.

5  **II.**    **REPLY**

6  The Opposition does not dispute the following critical facts:

7  A.  The Altered OPA is a fabricated piece of evidence that contains a

8  series of intentionally falsified pages.  To the contrary, these facts are

9  admitted;

10  B.  The false insertions made to the Altered OPA benefit only Beitler, and

11  inure to the detriment of Bral;

12  C.  The Altered OPA was attached to the POCs, and Beitler and Boyd

13  signed the POCs under the penalty of perjury;[8]

14  D.  Beitler, through his counsel, presented the Altered OPA to Bral in a

15  deposition, *specifically referred Bral to the falsified language therein*,

16  and challenged Bral regarding both the managerial control of Westcliff

17  Investors, LLC and the split of commissions arising under the Altered

18  OPA when Beitler, who was both present and participated in the

19  deposition *knew* that these facts were false[9];

20  E.  When queried about the false nature of the Altered OPA, counsel for

21  Beitler alleged that Bral's counsel produced this document when, in

22  fact, what Bral's counsel produced was a copy of Beitler's POC, with

23  this document attached. *Accordingly, prior to the deposition someone*

24

25

26
[8] Similarly, BCRS' Claim No. 9, filed under penalty of perjury, relies on the fabricated terms of

27  the Altered OPA.

[9] Moreover, Beitler allowed the State Court Complaint to be filed, again, knowing that it

28  contained a material and intentionally fabricated falsehood.

Lobel Weiland Golden Friedman LLP
660 Town Center Drive, Suite 960
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  *ripped the POC cover off the Altered OPA so it appeared as though this*

2  *document was produced as a separate document, when it was not*; and

3  F.  The Beitler Parties do not assert that Bral initialed the Altered OPA,

4      instead they condemn Bral for failing to instantly recognize that he was

5      being duped by a very cleverly fabricated piece of evidence.

6      The Beitler Parties' contention that the foregoing sequence was a simple case of

7  "inadvertence" is patently incredible.  Carefully fabricated evidence does not

8  "inadvertently" appear out of thin air.  There must have been a purpose for the

9  manufacture of the false evidence.  When the evidence is then attempted to be used as a

10  weapon in litigation, a justification of the use of the falsified evidence as inadvertent is not

11  credible.  In this case, what happened is not in dispute.  The Altered OPA was

12  manufactured, it was filed under the penalty of perjury as the authentic OPA, and it was

13  introduced to Mr. Bral at his deposition as the "real McCoy."  Moreover, it continues to be

14  used in the State Court Action.  These facts evidence a clearly thought out and

15  intentionally executed plan to gain an advantage through fraud.  The only question is,

16  what is the sanction for this intentional use of falsified evidence?

17      Precedent on the foregoing inquiry is clear:  A court must consider systemic

18  interests in deterring flagrant misconduct by litigants.  See United States v. Golden

19  Elevator, Inc., 27 F.3d 301, 302 (7th Cir. 1994) ("Lawyers and litigants who decide that

20  they will play by rules of their own invention will find that the game cannot be won.");

21  Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989); ABF Freight System, Inc.

22  v. N.L.R.B., 510 U.S. 317, 323 (1994) ("False testimony in a formal proceeding is

23  intolerable.").  Attaching a falsified document to proof of claim and then introducing the

24  same at a deposition as the authentic document is a "classic" fraud on the court.  Aoude,

25  892 F. 2d at 1118-19.  To quote the First Circuit:

26

27      Because corrupt intent knows no stylistic boundaries, fraud on the court
       can take many forms. In our estimation, however, the present case is a
28      near-classic example of the genre.  Appellant's bad faith is manifest.  By

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-665-1000 · Fax 714-665-1002

1  Aoude's own admission, he fabricated the purchase agreement; gave it to
   his lawyer; read the complaint before it was filed; realized that counsel,
2  acting on his behalf, proposed to annex the bogus agreement to the
   complaint (thus representing it to be authentic); and nevertheless
3  authorized the filing.  Thereafter, Aoude and his counsel continued to act
   out the charade until, in the course of pretrial discovery undertaken by
4  Mobil, Monahan revealed a glimmer of the truth.

5

6  Aoude, 892 F.2d at 1118.

7      When false documents have been submitted to the court, dismissal of the claims

8  made on the basis of the same is justified. Jimenez v. Madison Area Tech. Coll., 321

9  F.3d 652, 657 (7th Cir. 2003); Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488 (9th Cir.

10 1991) (affirming dismissal with prejudice where counsel falsified transcript of

11 deposition); Evans v. Nuehring, 2014 WL 4078251, at *2 (E.D. Cal. 2014), report and

12 recommendation adopted, 2014 WL 4748114 (E.D. Cal. 2014); see also Brown v. Oil

13 States Skagit Smatco, 664 F.3d 71 (5th Cir. 2011) (dismissal with prejudice was

14 warranted for plaintiff's perjury at his deposition); Chavez v. City of Albuquerque, 402 F.3d

15 1039 (10th Cir. 2005) (same); Allen v. Chicago Transit Auth., 317 F.3d 696, 703 (7th Cir.

16 2003).

17     In this case, evidence was fabricated.  It was submitted to the court under the

18 penalty of perjury.  It was used at a deposition as a weapon against the other party.  It

19 was used in connection with a pending state court proceeding.  And, when its validity was

20 initially challenged, the response was "*you* produced so it's valid." Yet, the truth was Mr.

21 Bral's counsel produced the proof of claim *filed by Beitler*.  Someone in the Beitler camp

22 intentionally ripped the proof of claim cover off of the falsified document before it was

23 handed to Mr. Bral at his deposition, presumably so this false assertion could be made.

24 Again, these actions were neither inadvertent, nor are they an irrelevant distraction.

25     Beitler's assertion that he never sought to use the Altered OPA to obtain an

26 advantage in the past, and hence this inadvertent "one-off" should be excused, is not only

27 unsupportable, it is false.  As Exhibit "A" indicates, *he did use it before – and he continues*

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Coal Mesa, California 92626
Tel 714-386-1100 Fax 714-386-1002

1   *to use it in connection with BCRS' Claim No. 9, and in the State Court Action*.  Moreover,

2   simply having possession of a fabricated piece of evidence speaks volumes.

3       Beitler's contention that he did not directly rely upon the Altered OPA in the non-

4   dischargeability adversary proceedings is also false.  Page 4 of Exhibit "A" states:  "BCRS'

5   pending adversary action herein, Adversary No. 8:17-ap-01094 is based in part on

6   allegations raised in the foregoing [S]tate [C]ourt [A]ction."  Moreover, the adversary

7   proceedings seek to render non-dischargeable the proofs of claim that did rely upon the

8   Altered OPA.  Disallowance of the proofs of claim renders moot the issue of whether the

9   claims, had they been allowed, would have been non-dischargeable.  Accordingly,

10  disallowance of the POCs (and Claim No. 9) eliminates the adversary proceedings.

11      Beitler's no-harm, no-foul argument is not a basis for avoiding sanctions.

12  <u>Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin</u>, 283 U.S. 520, 521-22, 51

13  S.Ct. 501, 502 (1931) (a litigant who engages in misconduct "will not be permitted the

14  benefit of calculation, which can be little better than speculation, as to the extent of the

15  wrong inflicted upon his opponent").

16      Fraud on a court is a bell that cannot be un-rung.  The Debtor submits that allowing

17  the Beitler Parties to simply "backpedal" out of their fraud is contrary to the system of

18  justice and the judiciary's intolerance of fraud in court proceedings.  Such mockery of the

19  basic tenets of our legal system should be met with appropriate sanction – striking the

20  claims based on such fabrication.

21  **III.**   **CONCLUSION**

22      Claim Nos. 14 and 16 (and, as discovered following the filing of the Opposition,

23  Claim No. 9) were filed on the basis of fabricated evidence, the purpose for the fabrication

24  cannot logically be in dispute, and any contention that these submissions were

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  "inadvertent" evaporated once Beitler attempted to use this same fabricated document to

2  his advantage in Mr. Bral's deposition.  Respectfully, the Motion should be granted.

3                                              Respectfully submitted,

4  Dated:  December 7, 2017                    LOBEL WEILAND GOLDEN FRIEDMAN LLP

5

6                                      By:  /s/ William N. Lobel
                                            WILLIAM N. LOBEL
7                                           ALAN J. FRIEDMAN
                                            BETH E. GASCHEN
8                                           Attorneys for Debtor and Debtor-in-
                                            Possession, John Jean Bral
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# EXHIBIT "A"

**Fill in this information to identify the case:**

Debtor 1   JOHN JEAN BRAL

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   8:17-BK-10706-SC

---

Official Form 410

# Proof of Claim

4/16

**Read the Instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.**

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| 1. Who is the current creditor? | Beitler & Associated, Inc. dba Beitler Commercial Realty Services<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? _____ |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Gary E. Klausner, Esq.<br>Name<br>10250 Constellation Blvd., Suite 1700<br>Number    Street<br>Los Angeles        CA        90067<br>City            State        ZIP Code<br><br>Contact phone (310) 229-1234<br>Contact email GEK@LNBYB.COM | **Where should payments to the creditor be sent? (if different)**<br><br>Beitler & Associates, Inc. c/o Barry Beitler<br>Name<br>825 Barrington Avenue<br>Number    Street<br>Los Angeles        CA        90048<br>City            State        ZIP Code<br><br>Contact phone _____<br>Contact email bbeitler@beitler.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

| | |
| --- | --- |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____     Filed on _____<br>                                                                              MM  /  DD  /  YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**   $ _To be determined_____ . Does this amount include interest or other charges?

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Claims in Case No. BC 543410 in Los Angeles County Superior Court</u>

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $_____

Amount of the claim that is secured:   $_____

Amount of the claim that is unsecured:   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410                                    Proof of Claim                                    page 2

EXHIBIT "A"
Page 15

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No |
|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    06/15/2017
                    MM  /  DD  /  YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Barry Beitler |
|---|---|
| | First name          Middle name          Last name |
| Title | Authorized Agent |
| Company | Beitler & Associates, Inc. dba Beitler Commercial Realty Services |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 825 Barrington Avenue |
| | Number          Street |
| | Los Angeles                          CA          90049 |
| | City                          State          ZIP Code |
| Contact phone | _____          Email bbeitler@beitler.com |

**ATTACHMENT TO PROOF OF CLAIM OF BEITLER & ASSOCIATES, INC. dba
BEITLER COMMERCIAL REALTY SERVICES BASED ON CLAIMS ALLEGED IN
LOS ANGELES COUNTY SUPERIOR COURT CASE NO. BC 543410**

On April 21, 2014, Barry Beitler ("Beitler") and Beitler & Associates, Inc. dba Beitler Commercial Realty Services ("BCRS" or "Claimant") filed an action against, among others, John Bral ("Bral") in Los Angeles County Superior Court, Case No. BC 543410.  A copy of the Complaint that Beitler filed in that action is attached hereto as Exhibit "A".

As set forth in the Complaint, BCRS alleged various claims for damages against Bral for unjust enrichment, intentional misrepresentation, negligent misrepresentation, breach of oral contract and breach of implied contract.  These claims are based on, among other things, allegations that:

- Beitler and Bral formed several specific purpose entities as limited liability companies (collectively, "SPEs") to hold, operate and manage real property investments in which they each held a membership interest.
- The SPEs' operating agreements controlled whether, to whom and under what circumstances the SPEs could pay commissions and property management fees with respect to the real properties.
- Beitler and Bral agreed to form Venture RE Group ("Venture") to act as a development company for the SPEs, with Beitler and Bral holding equal ownership interests in Venture.
- Beitler and Bral also agreed that (i) Venture would provide property management services to the SPEs, (ii) Beitler and Bral would equally divide all of Venture's revenues, (iii) Beitler would place his real estate broker's license with Venture, (iv) Venture would operate as an affiliate of BCRS, which was the authorized broker named in the SPE operating agreements, and (v) while BCRS would remain the broker for the SPEs, commissions from lease and sale transactions brokered by Venture would be split equally between BCRS and Venture.
- Notwithstanding these agreements, Bral, among other things, (a) formed and operated Venture without providing for Beitler to receive his interest therein, (b) failed to share Venture's revenues with Beitler, (c) without Beitler's or the SPEs' authorization, diverted Venture's business to an entity Bral created, Bral Realty Advisors, Inc. ("BRAI"), and (d) retained, directly or through BRAI or Venture, management fees and commissions payable to Beitler and/or BCRS.
- Bral also breached his agreement to reimburse BCRS for advances that BCRS made to or on behalf of Bral, Venture or agents acting under Venture for their expenses, including without limitation payments for errors and omissions insurance.

The case remains pending in Los Angeles County Superior Court but has been stayed as a result of this bankruptcy case.  BCRS' pending adversary action herein, Adversary No. 8:17-ap-01094, is based in part on allegations raised in the foregoing state court action.

The damages and other relief recoverable by BCRS in the state court case remain subject to proof, as Bral, Venture and BRAI control, among other things, the information concerning management fees and commissions they received that were payable to Beitler and BCRS. On February 23, 2017, the day before Bral filed this bankruptcy case, the discovery referee in the state court action issued a Report and Recommendation, a copy of which is attached hereto as Exhibit "B", recommending that the Superior Court order Bral to produce (a) QuickBooks data in native format and (b) tax returns for Venture and BRAI within 10 days, with the Court to consider imposing terminating sanctions if Bral does not timely comply. Due to the bankruptcy stay, the Superior Court has not yet entered an order on the referee's recommendation.

### Reservation of Rights

Claimant reserves the right to (i) amend, update and/or supplement this Proof of Claim at any time and in any respect, (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents or other liability or indebtedness of the Debtor to Claimant (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507.

In addition to the foregoing, Claimant reserves all rights with respect to (a) any indebtedness owed to Claimant by any non-debtor affiliate or other entity related to the Debtor, and (b) any other amounts that may be owing to Claimant in respect of interest, fees, indemnities, costs and expenses to the extent permitted by applicable law.

Nothing contained in this Proof of Claim shall be construed as limiting Claimants rights, remedies and interests.

The filing of this proof of claim is not: (i) a waiver or release of Claimant's rights against any person, entity or property; (ii) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim; (iii) an election of remedy; or (iv) a waiver of any past, present or future defaults or events of default. Claimant specifically preserves all of Claimant's procedural and substantive defenses and rights with respect to any claim that may be asserted against Claimant by the Debtor or any of its debtor or non-debtor affiliates, or by any trustee for this estate.

# EXHIBIT A

1

**LEVY, SMALL & LALLAS**
A Partnership Including Professional Corporations

2

TOM LALLAS (SBN 66512)
815 Moraga Drive

3

Los Angeles, California 90049-1633
Telephone:    (310) 471-3000

4

Facsimile:    (310) 471-7990

5

Attorneys for Plaintiffs
BARRY A. BEITLER and

6

BEITLER & ASSOCIATES, INC.,
doing business as

7

Beitler Commercial Realty Services

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

APR 2 1 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

FOR THE COUNTY OF LOS ANGELES    **FILED BY FAX**

10

11

BARRY A. BEITLER, an individual, and
BEITLER & ASSOCIATES, INC., a California

12

corporation doing business as Beitler Commercial
Realty Services,

13

Plaintiffs,

14

15

vs.

16

JOHN BRAL, an individual; VENTURE RE
GROUP, a California corporation; BRAL

17

REALTY ADVISORS, INC., a California
corporation; and DOES 1 through 50, inclusive,

18

Defendants.

Case No.    **BC543410**

**COMPLAINT FOR:**
1)    BREACH OF FIDUCIARY DUTY
2)    ACCOUNTING
3)    UNJUST ENRICHMENT
4)    INTENTIONAL
        MISREPRESENTATION
5)    NEGLIGENT
        MISREPRESENTATION
6)    BREACH OF ORAL CONTRACT
7)    BREACH OF IMPLIED
        CONTRACT

19

20

21

22

23

24

25

26

27

28

Levy, Small & Lallas
A Partnership Including
Professional Corporations
815 Moraga Drive
Los Angeles, CA 90049

COMPLAINT

1    Plaintiffs Barry A. Beitler, an individual ("Beitler") and Beitler & Associates, Inc., a

2    California corporation doing business as Beitler Commercial Realty Services ("BCRS")

3    [collectively, "Plaintiffs"], allege as follows:

4    **I.        PARTIES AND JURISDICTION.**

5        1.    Beitler is now, and all times material hereto has been, a resident of, and doing

6    business in, the County of Los Angeles, State of California.

7        2.    BCRS is now, and all times material hereto has been, a corporation in good standing

8    formed under the laws of the State of California.  BCRS's principal business office is now, and

9    all times material hereto has been, located in the County of Los Angeles, State of California.

10       3.    Defendant John Bral ("Bral") is now, and at all times material hereto has been, an

11   individual doing business in the County of Los Angeles, State of California.

12       4.    Defendant Venture RE Group ("VREG") is now, and all times material hereto has

13   been, a corporation in good standing formed under the laws of the State of California.  Plaintiffs

14   are informed and believe, and based on such information and belief allege, that the Articles of

15   Incorporation for VREG were filed with the Secretary of State of California on or about May 10,

16   2006.  VREG's principal business office is now, and all times material hereto has been, located

17   in the County of Orange, State of California.

18       5.    Defendant Bral Realty Advisors, Inc. ("BRAI") is now, and all times material hereto

19   has been, a corporation in good standing formed under the laws of the State of California.

20   Plaintiffs are informed and believe, and based on such information and belief allege, that the

21   Articles of Incorporation for BRAI were filed with the Secretary of State of California on or

22   about October 8, 2013.  BRAI's principal business office is now, and all times material hereto

23   has been, located in the County of Orange, State of California.

24       6.    Plaintiffs do not know the true names or capacities of the persons or entities sued

25   herein as Does 1 through 50, inclusive, and therefore sue these Defendants by such fictitious

26   names.    Plaintiffs are informed and believe, and upon such information and belief allege, that

27   each of the Doe Defendants was in some manner legally responsible for the damages alleged

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

COMPLAINT

1    below.  Plaintiffs will amend this Complaint to set forth the true names of capacities of these

2    Defendants when they have been ascertained.

3        7.    Bral, VREG, BRAI and Does 1 – 50, inclusive, shall be collectively referred to as

4    "Defendants".

5        8.    Plaintiffs are informed and believes, and based on such information and belief

6    allege, that at all times herein mentioned, each Defendant was the agent, servant, or employee of

7    the other Defendants and in acting or omitting to act as alleged herein did so within the course

8    and scope of that agency or employment. Each Defendant is sued individually and as an agent

9    and representative of each of the Defendants.

10       9.    Plaintiffs are informed and believes, and based on such information and belief

11   allege, that all of the agreements at issue in this Action, whether written or oral, were made and

12   agreed by the respective parties thereto in the County of Los Angeles.

13   **II.    FACTS**

14       10.   Beitler and Bral formed several specific purpose entities as limited liability

15   companies (collectively, "SPEs") to hold, operate and manage real property investments in

16   which they each held a membership interest.

17       11.   The SPEs of Beitler and Bral included, among others, Mission Medical Investors,

18   LLC ("Mission"), Javaher Investors, LLC ("Javaher"), Ocean View Medical Investors, LLC

19   ("Ocean"), Harbor Medical Investors, LLC ("Harbor"), Eyestreet Medical Investors, LLC

20   ("Eye"), and Westcliff Investors, LLC ("Westcliff").

21       12.   Westcliff was formed in February 2003.

22       13.   Mission was formed in December 2003.

23       14.   Javaher was formed in May 2005.

24       15.   Ocean was formed in June 2005.

25       16.   Harbor was formed in May 2006.

26       17.   Eye was formed in October 2006.

27       18.   Plaintiffs are informed and believe, and based on such information and belief

28   allege, that Beitler and Bral have executed the operating agreements of each of the SPEs.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

2

COMPLAINT

1    Plaintiffs are further informed and believe and thereon allege that Bral has in his possession and

2    control all of the executed operating agreements of Mission, Javaher, Ocean, Harbor and Eye.

3          19.    Beitler and Bral are managers of Ocean, Harbor and Mission.

4          20.    Bral and Dr. Hootan Daneshmand are managers of Javaher and Eye.

5          21.    Plaintiffs are informed and believe, and based on such information and belief

6    thereon allege, that in each of the SPEs in which both Beitler and Bral are a manager or a

7    managing member, neither Beitler nor Bral is permitted to act unilaterally or independently of

8    each other as Manager or Managing Member, as the case may be, and that the operating

9    agreements of those SPEs require the mutual consent of each manager or managing member.

10          22.    Section 5.9 C. of the Operating Agreements of Ocean, Mission, Javaher and

11    Harbor provides for payment of property management fees:

12        "There shall be a four percent (4%) of gross income per month fee for property

13    management to a management company chosen by Manager."

14

15          23.    Section 5.9 D. of the Operating Agreements of Ocean, Mission, Javaher, and

16    Harbor provides for payment to BCRS of sale and leasing broker commissions:

17        "There shall be sales commission of four percent (4%) paid to Beitler Commercial Realty

18    Services as a listing Broker upon sale .... and leasing commissions shall be paid to Beitler

19    Commercial Realty Services...."

20

21          24.    Section 5.8 of the Eye Operating Agreement, which was executed after VREG

22    was formed, provides for VREG to act as property manager and sales and leasing broker:

23        " ... The Company specifically acknowledges that JOHN BRAL is a Manager and is

24    affiliated with Venture RE Group. The Company specifically acknowledges and hires Venture

25    RE Group as leasing and/or listing Broker, when necessary to lease or sell the property, and will

26    pay to Venture RE Group the "Sales Commission" and "Lease Commissions" ...  Further, the

27    Company hires Venture RE Group to act as property manager for the Company and its assets and

28    will pay to Venture RE Group the "Property Management Fee"... The Company specifically

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

3

COMPLAINT

1    acknowledges that Manager or Manager's affiliate shall manage and oversee the construction,

2    development and construction of the tenant improvements ... upon the Property, and the

3    Company shall pay to Manager or Manager's affiliate the "Development and Construction

4    Management Fee"..."

5

6       25.     Section 5.9 C of the Eye Operating Agreement provides for payment of property

7    management fees to VREG:

8       "There shall be a four percent (4%) of gross income per month fee ... for property

9    management paid to Venture RE Group...."

10

11       26.     Section 5.9 D of the Eye Operating Agreement provides for payment of sale and

12    leasing broker commissions to VREG:

13       "There shall be sales commission of four percent (4%) paid to Venture RE Group ... as a

14    listing Broker upon sale .... and leasing commissions shall be paid to Venture RE Group ...."

15

16       27.     Section 3.3 in the Westcliff Operating Agreement provides for BCRS to act as

17    broker and for sale and leasing commissions to be split equally between Beitler and Bral:

18       "At all times, whenever a vacancy in the property becomes available, Beitler Commercial

19    Realty Services shall be hired for the leasing at market commission rates. Bral and Beitler agreed

20    to split equally (50%/50%) any and all commissions for leasing paid if any. The same shall be

21    true of any commission on the future sale of the Property...."

22

23       28.     Plaintiffs are informed and believe, and based on such information and belief

24    allege, that the Westcliff Operating Agreement does not provide for the appointment of a

25    property manager.

26       29.     Notwithstanding that an operating agreement of any of the SPEs may have

27    granted to the manager or managing member the authority to select a property manager (Ocean,

28    Mission, Javaher and Harbor), or otherwise provided for the appointment of a property manager

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

4

COMPLAINT

1    (Eye), it was agreed to and understood between Beitler and Bral that in each of the SPEs

2    property management fees would be split between them and that the property management

3    would be conducted through an entity owned and controlled by both of them (the "SPE

4    Management Agreement"). Plaintiffs are informed and believe, and based on such information

5    and belief allege, that the SPE Management Agreement amended each respective SPE operating

6    agreement.

7        30.    In or around May 2006, Beitler and Bral formed VREG. Its business purpose was

8    to serve as a development company for their SPEs and any subsequently acquired real property

9    to be developed.

10        31.    At the time that they formed VREG, Beitler and Bral orally agreed to the

11    following material terms with regard to VREG (collectively, "Initial VREG Agreement"):

12        A.    Each would own an equal stock interest in VREG;

13        B.    There would be no other shareholders in VREG;

14        C.    Beitler and Bral would be the only officers and directors of VREG; and

15        D.    VREG would only be used for its intended business purpose.

16        32.    Subsequently, Beitler and Bral orally agreed to use VREG as a property

17    management company for their SPEs. Beitler and Bral orally agreed to add to their Initial VREG

18    Agreement the following additional terms (collectively, "VREG Property Management

19    Agreement"):

20        A.    Bral shall handle the day to day administrative management related to each of the

21            SPEs, but not supersede, conflict, or be delegated as property manager, any of the

22            authority of a Manager of any of the SPEs;

23        B.    Other than property management services and property development services,

24            VREG shall not provide any other service; and

25        C.    Beitler and Bral are to divide equally between them all revenues earned by

26            VREG.

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

5

COMPLAINT

33.     The VREG Property Management Agreement was an extension of the Initial VREG Agreement, incorporating the terms of the Initial VREG Agreement between Beitler and Bral.

34.     Plaintiffs are informed and believe, and based on such information and belief allege, that Bral was the incorporator, or caused the incorporation, of VREG, and at all times material herein, Bral authored and controlled the corporate books, records, minutes of VREG, and filed with the State of California any compliance documents related to VREG.

35.     Plaintiffs are informed and believe, and based on such information and belief allege, that at no time did Bral issue and deliver to Beitler shares of stock in VREG in Beitler's name.

36.     Plaintiffs are informed and believe, and based on such information and belief allege, that Bral formed a de jure corporation by the filing of Articles of Incorporation for VREG, but failed to document Beitler's rights under VREG as an shareholder, officer and director of VREG as agreed to in the Initial VREG Agreement, including, but not limited to, the execution of bylaws, appointment of directors and officers, first meeting of shareholders and directors, and other corporate formalities establishing Beitler's rights in VRGE.  At all times material hereto Bral failed to disclose to Beitler any of the aforementioned acts or omissions.

37.     Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, without disclosure to and unbeknownst to Beitler, and in violation of the Initial VREG Agreement, prepared corporate documentation that reflected Bral as the sole director, officer and shareholder of VREG.

38.     Plaintiffs are informed and believe, and based on such information and belief allege, that Bral did not disclose or provide to Beitler documentation regarding the formation of VREG or documentation reflecting its annual compliance, if any, with corporate obligations, including meetings of its directors and shareholders.

39.     Sometime after the formation of VREG and after Bral and Beitler entered into the VREG Property Management Agreement, Bral asked Beitler to place Beitler's broker's license with VREG, so that VREG could operate as a corporate real estate brokerage, including handling

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

6

COMPLAINT

EXHIBIT "A"
Page 26

1    the leasing and sales for the SPEs. Beitler agreed to place his real estate broker's license with

2    VREG, subject to the following conditions to which Bral orally agreed ("Brokerage

3    Agreement"):

A.    Observance of the laws of the State of California, including any

administrative regulations or requirements of the California Bureau of

Real Estate ("CBRE"), regarding such real estate brokerage matters;

B.    VREG is to be operated and managed as an affiliate of BCRS and

regulated by BCRS;

C.    All commissions are to be split equally between broker and agent, with the

broker commission to be paid to BCRS for use by VREG of Beitler's real

estate broker's license;

D.    Nothing shall modify or affect the SPEs' respective Operating Agreements

with regard to their provisions appointing BCRS as listing broker of the

SPEs and the commission percentage payable to BCRS as provided

therein;

E.    All leasing and sales transactions are to be managed and administrated by

BCRS as the listing broker, consistent with the SPEs' respective Operating

Agreements;

F.    Any signs or marketing material listing any of the SPEs are to name

BCRS as the listing broker; and

G.    All payments and expenses advanced by BCRS to VREG, Bral or any of

the agents acting under VREG ("Expense Advances"), including, but not

limited to, for errors and omissions insurance, are to be reimbursed to

BCRS.

Levy, Small & Lallas
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 Moraga Drive
Los Angeles, CA 90049

7

COMPLAINT

40.     Notwithstanding that BCRS had maintained an existing office in Orange County, California, VREG also located its office in Orange County, California The co-existence of both offices was not viewed as duplicative or overlapping, because, among other factors, VREG had already existed not as a brokerage but to provide property development and property management services to the SPEs.

41.     Subsequent to the formation of VREG, Bral indicated that he required the money earned from the SPEs, including, but not limited to, the property management fees and any commissions, for both the continued operation and management of VREG and his personal use. Bral orally proposed, and Beitler orally agreed, to defer receiving any money from VREG that would otherwise be distributed to Beitler and BCRS, and that Bral would subsequently account for, allocate and pay to Beitler and BCRS the excess money received by Bral that would otherwise have been paid to Beitler and/or BCRS ("Deferral Agreement").    Plaintiffs are informed and believe, and based on such information and belief allege, that the Deferral Agreement was restated and ratified periodically and annually by Beitler and Bral each year after the VREG Property Management Agreement, including calendar year 2013.

42.     The Initial VREG Agreement, the VREG Property Management Agreement, the Brokerage Agreement and the Deferral Agreement are hereinafter referred to collectively as the "VREG Agreements".

43.     At all times herein mentioned, Beitler was licensed by CBRE as a real estate broker.

44.     At all times herein mentioned, VREG listed Beitler as the "Licensed Officer". CBRE License Page – VREG it states Beitler as the Licensed Officer and listing Mariko C. Beaver ("Beaver") and Jon Capristo ("Capristo") as sales persons.    Bral is not named as a salesperson under VREG.    Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, prior to January 18, 2014, was not listed as salesperson under the VREG.

45.     Beaver and Capristo were individuals hired directly by Bral to work with Bral at VREG.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

8

COMPLAINT

46.    Plaintiffs are informed and believe, and based on such information and belief thereon allege, that at all times herein mentioned prior to June 5, 2013, Bral was licensed by the CBRE as a real estate agent.

47.    In or about June 5, 2013, Bral was licensed by the CBRE as a real estate broker.

48.    Bral, on or about October 8, 2013, formed BRAI; however, Plaintiffs are informed and believe, and based on such information and belief allege, that BRAI did not commence operations concurrent with its formation.

49.    On January 9, 2014, Beitler sent Bral an email ("January 9th Email"). The January 9th Email related, among other things, Beitler's requests and demands for: (i) an accounting of VREG management fees earned by VREG and particularly with regard to the SPEs; (ii) payment of BCRS's share of the management fees; (iii) an accounting of all brokerage fees earned by VREG and payment to BCRS of any brokerage fees; (iv) removal of signs posted on the SPE properties that stated VREG as the broker or representative of the SPEs and replacement of those signs with BCRS signs; (v) repayment of any money advanced by BCRS on behalf of VREG, including, but not limited to, premiums related to VREG for errors and omissions insurance; and (vi) the cessation of the continued use of BCRS's broker's license.

50.    Neither Bral nor VREG responded to the January 8th Email.

51.    On January 24, 2014, as a follow-up to the January 9th Email, Beitler sent Bral an email ("January 24th Email") that related and reiterated, among other things, Beitler's requests and demands for: (i) an accounting and tender of payment for management fees VREG received from the SPEs; (ii) an accounting of commissions VREG received through the use of BCRS's California real estate broker license; (iii) the removal of VREG broker signs and the replacement of such signs with BCRS signs as required under the SPE operating agreements; (iv) the cessation of VREG's use of BCRS's California real estate broker license; and (v) the repayment of fees and expenses that BCRS advanced for VREG.

52.    Bral did not respond to the January 24th Email.

53.    The license page for BRAI listed on the CBRE website, as of January 28, 2014, set forth Bral as the Licensed Officer and provided that the corporate license was issued on

Levy, Small & Lallas
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

9

COMPLAINT

EXHIBIT "A"
Page 29

1  January 28, 2014.  The CBRE web page for BRAI does not list any salespersons.  Plaintiffs are

2  informed and believe, and based on such information and belief allege, that BRAI commenced

3  business in or about January 2014 and that both Capristo and Beaver then started doing work for

4  BRAI.

5        54.    BRAI's own web page states that:

6        "BRAI offers services to cover all Commercial Real Estate, with a specialty in Medical

7  and Office.  With over 25 years of experience in the industry and an inventory exceeding $100

8  million dollars ..."

9

10        55.    At no time did Bral announce his resignation, separation or disassociation from

11  VREG, or the formation of BRAI.  On or about January 12, 2014, Plaintiffs discovered the

12  formation of BRAI through an internet search.

13        56.    At no time did Bral announce the termination or cessation of work by VREG.

14        57.    Plaintiffs are informed and believe, and based on such information and belief

15  allege, that BRAI now occupies the same business office as VREG and utilizes the same

16  telephone numbers.

17        58.    Plaintiffs are informed and believe, and based on such information and belief

18  allege, that Bral transferred to BRAI all of the business of VREG, including the brokerage,

19  property development, and property management.

20        59.    Plaintiffs are informed and believe, and based on such information and belief

21  allege, that Bral, Capristo and/or Beaver have ceased working for VREG.

22        60.    At no time did Bral, Capristo and/or Beaver indicate they resigned, terminated or

23  ceased doing work for VREG.

24        61.    At no time did Bral communicate to Beitler the status of VREG as an ongoing

25  operating entity, as it relates to BRAI and/or as it relates to the SPEs.

26        62.    Plaintiffs are informed and believe, and based on such information and belief

27  allege, that there is no agreement between VREG and BRAI regarding a transfer of business by

28  VREG to BRAI or the assumption by BRAI of VREG's work.  Plaintiffs are further informed

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

10

COMPLAINT

EXHIBIT "A"
Page 30

1   and believe, and based on such information and belief allege, that all such actions by Bral with

2   regard to the transfer of VREG assets were done without the required corporate approval,

3   including Beitler's approval as a putative shareholder of VREG pursuant to the Initial VREG

4   Agreement.

5   **FIRST CAUSE OF ACTION**

6   **FOR BREACH OF FIDUCIARY DUTY**

7   **(By Beitler Against Bral and Does 1 through 50)**

8   63.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to

9   62, inclusive, of this Complaint, and the same are incorporated herein by this reference as though

10   set forth in full herein.

11   64.    Beitler is informed and believes, and based on such information and belief

12   alleges, that at all times material hereto, Bral was a shareholder, corporate officer, and director of

13   VREG.

14   65.    Beitler is informed and believes, and based on such information and belief

15   alleges, that a fiduciary relationship existed between Beitler and Bral, which Bral established

16   through the following: (A) the formation of VREG, in accordance with the Initial VREG

17   Agreement; (B) each of the agreements, as herein alleged, that Bral entered into with Beitler in

18   which he promised to faithfully and in good faith perform and in which as an officer and director

19   of VREG he was obligated to perform in the best interests of VREG, including, but not limited

20   to, the VREG Agreements; and (C) Bral's position as a director and corporate officer of VREG.

21   66.    Beitler is informed and believes, and based on such information and belief

22   alleges, that Bral breached his fiduciary duties to Beitler by, among other things, the following:

23   (A) failing to issue shares in VREG to Beitler; (B) failing to properly document VREG's

24   corporate documents consistent with each of the VREG Agreements; (C) failing to account for

25   VREG revenue; (D) failing to distribute VREG revenue; (E) failing to pay money owed to

26   Beitler and/or to BCRS for Beitler's benefit; (F) misappropriating VREG revenue otherwise to

27   be allocated to Beitler or to BCRS for Beitler's benefit; (G) failing to act in accordance with the

28   State of California and CBRE laws and regulations regarding a California corporate real estate

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

11

COMPLAINT

1   brokerage; (H) failure to act in the best interests of and in loyalty to the SPEs and VREG and

2   failure to place those interests before his own self-interest; (I) diverting and misappropriating

3   VREG business and assets to BRAI in breach of the VREG Agreements, without authority as

4   provided in the SPEs' operating agreements and without consideration or value; and (J) failing to

5   act in accordance with his duties and obligations as a corporate officer and director of VREG.

6       67.    As a proximate results of Bral's breach of fiduciary duty as herein alleged, Beitler

7   has suffered damage in amount to be determined according to proof at the time of trial, but in no

8   event less than this Court's minimum amount for unlimited civil jurisdiction.

9       68.    Bral's breaches of his fiduciary duty to Beitler are continuing, willful and

10   wrongful, and malicious, and done in conscious disregard for Beitler's rights.  Beitler is therefore

11   entitled to an award of punitive damages against Bral in amount according to proof.

12   **SECOND CAUSE OF ACTION**

13   **FOR ACCOUNTING**

14   **(By Plaintiffs Against Bral, VREG, BRAI and Does 1 through 50)**

15       69.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to

16   68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though

17   set forth in full herein.

18       70.    The amount of money due to Plaintiffs as result of Defendants' conduct as

19   aforesaid is not fully known to Plaintiffs, and cannot be precisely ascertained without an

20   accounting of the money and assets used and/or received by Defendants with regard to Plaintiffs,

21   and each of them.

22       71.    By reason of the facts herein alleged, Defendants have a duty to account to

23   Plaintiffs, among other things, for all money used and/or received by VREG, all money paid or

24   distributed to Bral by VREG, all assets and business diverted by VREG to BRAI, and all money

25   paid or distributed to Bral by BRAI that would otherwise be received or paid to VREG.

26

27

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

12

COMPLAINT

1                 **THIRD CAUSE OF ACTION**

2                 **FOR UNJUST ENRICHMENT**

3       **(By Plaintiffs Against Bral, VREG and BRAI and Does 1 – 50)**

4      72.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to

5 62, inclusive, of this Complaint, and the same are incorporated herein by this reference as though

6 set forth in full herein.

7      73.     By reason of the acts and conduct of Defendants as alleged herein, Defendants

8 received a benefit and unjustly retained that benefit at the expense of Plaintiffs, and as a result

9 thereof, Defendants have been unjustly enriched in an amount to be determined according to

10 proof, together with interest thereon at the maximum legal rate, but in no event less than this

11 Court's minimum amount for unlimited civil jurisdiction.

12                **FOURTH CAUSE OF ACTION**

13        **FOR INTENTIONAL MISREPRESENTATION**

14          **(By Plaintiffs Against Bral and Does 1 – 50)**

15      74.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to

16 62, inclusive, of this Complaint, and the same are incorporated herein by reference as though set

17 forth in full herein.

18      75.     At all times material hereto, Bral made a series of representations to Plaintiffs.

19 Plaintiffs are informed and believe, and based on such information and belief allege, that the

20 purpose of such representations was to induce Plaintiffs to enter into the VREG Agreements with

21 Bral.

22      76.     The representations made by Bral, included, among others, the following: (A) the

23 VREG Agreements, and each of them, were binding, ongoing and would be faithfully performed

24 by Bral; (B) VREG would equally divide the revenue between Beitler and Bral from the property

25 management fees paid by the SPEs to VREG, and that Bral would not interfere with BCRS's

26 right to be the real estate broker for the SPEs and its right to commissions therefrom; (C) Bral

27 would not undertake any action with regard to the SPEs either as a manager, managing member

28 or member without Beitler's agreement; (D) Bral would not do, or cause anything to be done,

Levy, Small & Lallas
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 Moraga Drive
Los Angeles, CA 90049

13

COMPLAINT

EXHIBIT "A"
Page 33

1    that was in conflict with the requirement of prior approval of Beitler as broker of VREG and as

2    otherwise required by CBRE and the laws and regulations of the State of California for corporate

3    real estate brokerages; (E) Bral would not do, or cause anything to be done, whether directly or

4    indirectly, that would interfere with BCRS's rights of broker representation and to commissions

5    relative to any of the SPEs; (F) Bral would repay any money received by Bral in excess of his

6    equal share; and (G) BCRS would receive its broker commission from any commission

7    appropriately earned by VREG (collectively, the "Representations").

8        77.    Each of the Representations made by Bral was in fact false.

9        78.    Plaintiffs are informed and believe, and based on such information and belief

10   allege, that Bral did not intend to, among other things: (A) divide the revenue from property

11   management and commissions with Beitler, individually and on behalf of BCRS; (B) faithfully

12   perform each of the VREG Agreements; (C) properly pay to Beitler his broker share of any

13   commission related to non-BCRS commission matters; and (D) not interfere with BCRS's rights

14   with regard to any of the SPEs, including the payment of any commissions.

15       79.    Plaintiffs are informed and believe, and based on such information and belief

16   allege, that Bral's real intent was to use the revenue received by VREG to develop the

17   infrastructure of VREG for his singular benefit as an ongoing real estate commercial brokerage

18   without being licensed as a broker under the laws of California and without allocating to Beitler,

19   whether individually or on behalf of BCRS, an equal distribution and/or other payments.

20       80.    Plaintiffs are informed and believe, and based on such information and belief

21   allege, that Bral breached his duty in making the Representations, since Bral did not intend to

22   reasonably perform under the terms of any of the VREG Agreements.  Plaintiffs are further

23   informed and believe, and based on such information and belief allege, that Bral was aware that

24   he acted contrary and/or in breach of the VREG Agreements notwithstanding that Bral

25   reaffirmed and ratified each of the VREG Agreements and related to Plaintiffs his purported

26   intent to faithfully perform of each of the VREG Agreements and did so affirm and ratify each

27   calendar year, through and including 2013.

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

14

COMPLAINT

1       81.    Plaintiffs, and each of them, reasonably relied on Bral's Representations and such

2  reliance was both reasonable and justified, since Bral was both a long standing business associate

3  and friend of Beitler prior to the formation of VREG and, therefore, Plaintiffs had no reason to

4  doubt Bral's Representations based on their past history of performance.  Plaintiffs had a pre-

5  existing relationship with Bral that on its face and from past practice validated trust.  In addition,

6  Bral reaffirmed at all times material hereto each of the VREG Agreements.

7       82.    Had Plaintiffs known the truth of Bral's Representations and his real intent they

8  would not have entered into the VREG Agreements, Beitler would not have placed his real estate

9  broker license with VREG for VREG's use, and BCRS would not have made Expense Advances

10  for VREG or deferred collection of such advances.

11       83.    Plaintiffs did not discover, and were not on notice of, the falsity of Bral's

12  Representations until in or about October 2013.

13       84.    Plaintiffs have been damaged by Bral's failure to perform under each of the

14  VREG Agreements and his misuse of Beitler's real estate broker license.

15       85.    Plaintiffs' reliance on Bral's Representations was a substantial factor in and

16  proximate cause of harm and damage to Plaintiffs.

17       86.    Plaintiffs seeks both general and special damages, including interest at the

18  maximum legal rate, in an amount according to proof at time of trial, but in no event less than

19  this Court's minimum amount for unlimited civil jurisdiction.

20       87.    Bral's Representations were false, willful and malicious, and done in conscious

21  disregard for Plaintiffs' rights.  Plaintiffs are therefore entitled to an award of punitive damages

22  against Bral in amount according to proof.

23                  **FIFTH CAUSE OF ACTION**

24           **FOR NEGLIGENT MISREPRESENTATION**

25          **(By Plaintiffs Against Bral and Does 1 – 50)**

26       88.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to

27  62, inclusive, and paragraphs 74 to 77, inclusive, and paragraphs 81 to 86, inclusive of this

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORACA DRIVE
LOS ANGELES, CA 90049

15

COMPLAINT

1  Complaint, and the same are incorporated herein by this reference as though set forth in full

2  herein.

3      89.    In making the Representations to Beitler, Bral had a duty to not make any

4  Representations that were false and did not reflect anything other than his real intent.

5      90.    Plaintiffs are informed and believe, and based on such information and belief

6  allege, that Bral made the Representations without any reasonable grounds or basis for believing

7  them to be true.

8      91.    As a direct and proximate result of Bral's Representations and Plaintiffs'

9  justifiable reliance thereon, Plaintiffs suffered general and special damages, including interest at

10  the maximum legal rate, in an amount according to proof at time of trial, but in no event less than

11  this Court's minimum amount for unlimited civil jurisdiction.

12  **SIXTH CAUSE OF ACTION**

13  **FOR BREACH OF ORAL CONTRACT**

14  **(By Plaintiffs Against Bral and Does 1 – 50)**

15      92.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to

16  68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though

17  set forth in full herein.

18      93.    Each of the VREG Agreements is an oral contract.

19      94.    Plaintiffs have performed all of their obligations under the VREG Agreements

20  except those excused, waived, or discharged by Defendants' conduct.

21      95.    In or about November 2013, Bral breached the VREG Agreements, by among

22  other things, failing to perform those promises and undertake those actions as set forth in

23  paragraphs 31, 32, 39, 41, 75 and 76 herein.

24      96.    As a result of Bral's breach of the VREG Agreements, Plaintiffs have suffered

25  general and compensatory damages, and incidental and consequential damages, in an amount

26  according to proof, including interest at the maximum legal rate, but in no event less than this

27  Court's minimum amount for unlimited civil jurisdiction.

28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

16
COMPLAINT

## SEVENTH CAUSE OF ACTION

## FOR BREACH OF ORAL CONTRACT

### (By BCRS Against Bral, VREG and Does 1 – 50)

97.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

98.     BCRS orally agreed to make Expense Advances on behalf of Bral, VREG and each of the agents acting under VREG, including, but not limited to, errors and omissions coverage, and Bral and VREG orally agreed to reimburse BCRS for all Expense Advances ("Expense Advance Agreement").    The Expense Advance Agreement is part of the Brokerage Agreement.

99.     BCRS made Expense Advances on behalf of Bral, VREG and each of the agents acting under VREG, and BCRS has performed all of its obligations under the Expense Advance Agreement except those excused, waived, or discharged by Defendants' conduct.

100.     Bral and VREG requested that BCRS defer collection of their repayment of the Expense Advances to a later date, since neither Bral nor VREG purportedly could afford to absorb such costs.    BCRS agreed to defer collection of repayment of the Expense Advances.

101.     Notwithstanding that Bral and VREG did not pay BCRS for such Expense Advances, Bral and VREG, for each calendar year in which Expense Advances were made, ratified and affirmed their obligations to BCRS under the Expense Advance Agreement to repay all outstanding Expense Advances, including those from prior years.    Bral and VREG in calendar year 2013 again ratified and reaffirmed their obligations to BCRS under the Expense Advance Agreement to repay all outstanding Expense Advances.

102.     In or about November 2013, Bral and VREG breached the Expense Advance Agreement by failing to repay to BCRS outstanding Expense Advances.

103.     As a result of Bral's and VREG's breach of the Expense Advance Agreement, BCRS has suffered general and compensatory damages, and incidental and consequential

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

17

COMPLAINT

1  damages, in an amount according to proof, including interest at the maximum legal rate, but in

2  no event less than this Court's minimum amount for unlimited civil jurisdiction.

3  ## EIGHTH CAUSE OF ACTION

4  ## FOR BREACH OF IMPLIED CONTRACT

5  **(By Plaintiffs Against Bral and Does 1 – 50)**

6  104.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1

7  to 68, inclusive, paragraphs 75 and 76, and paragraphs 97 to 103, inclusive of this Complaint,

8  and the same are incorporated herein by this reference as though set forth in full herein.

9  105.    In doing the acts and things hereinabove alleged, Plaintiffs and Bral entered into

10  an implied contract ("Implied Agreement"), on the terms and conditions as alleged herein,

11  pursuant to which, among other things, (i) Beitler and Bral would equally share in the

12  management fees from the SPEs, (ii) BCRS would receive its equal share of brokerage

13  commissions from any non-SPE transactions by or through VREG, (iii) BCRS would be

14  reimbursed by Bral for any fees, costs and other Expense Advances on behalf of VREG and Bral,

15  and (iv) Plaintiffs and Bral would equally share in the commissions earned from the leasing and

16  sale of the SPEs' properties.

17  106.    Plaintiffs performed all of their obligations under the Implied Agreement except

18  those excused, waived, or discharged by Defendants' conduct.

19  107.    In or about November 2013, Bral breached the Implied Agreement by, among

20  other things, failing to perform those promises and undertake those actions as set forth in

21  paragraphs 31, 32, 39, 41, 75, 76, and 98 herein.

22  108.    As a result of Bral's breach of the Implied Agreement, Plaintiffs have suffered

23  general and compensatory damages, and incidental and consequential damages, in an amount

24  according to proof, including interest at the maximum legal rate, but in no event less than this

25  Court's minimum amount for unlimited civil jurisdiction.

26

27

28

1      WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

2 follows:

    1.    <u>FIRST CAUSE OF ACTION</u>

3

4        a)     General and special damages in an amount according to proof;

5        b)     Interest at the maximum legal rate; and

6        c)     Punitive damages according to proof.

7     2.    <u>SECOND CAUSE OF ACTION</u>

8        a)     For an accounting.

9

10     3.    <u>THIRD CAUSE OF ACTION</u>

11        a)     General and compensatory damages in an amount according to proof;

12        b)     Incidental and consequential damages according to proof; and

13        c)     Interest at the maximum legal rate.

14     4.    <u>FOURTH CAUSE OF ACTION</u>

15        a)     General and special damages in an amount according to proof;

16        b)     Interest at the maximum legal rate; and

17

18        c)     Punitive damages according to proof.

19     5.    <u>FIFTH CAUSE OF ACTION</u>

20        a)     General and special damages in an amount according to proof; and

21        b)     Interest at the maximum legal rate.

22     6.    <u>SIXTH, SEVENTH and EIGHTH CAUSES OF ACTION</u>

23        a) General and special damages in an amount according to proof; and

24        b)     Incidental and consequential damages in an amount according to proof; and

25        c)     Interest at the maximum legal rate.

26

27     7.    <u>ALL CAUSES OF ACTION</u>

28        a)     For costs of suit incurred herein; and

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

19

COMPLAINT

1    b)    For such other and further relief as the court deems just and appropriate.

2    DATED:  April _2_, 2014

                LEVY, SMALL & LALLAS
                A Partnership Including Professional Corporations
3                    TOM LALLAS

4

5                    By: _____

6                          TOM LALLAS
                Attorneys for Plaintiffs
7                    BARRY A. BEITLER and
                BEITLER & ASSOCIATES, INC., doing
8                    business as Beitler Commercial Realty Services

9

10    30488

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                          20
                   COMPLAINT

# EXHIBIT B

1  Honorable Stephen M. Lachs (Ret.)
   ADR SERVICES, INC.
2  1900 Avenue of the Stars, Suite 250
   Los Angeles, California 90067
3  (310) 201-0010 PH
   (310) 201-0016 FAX
4

5

6

7                              ADR SERVICES, INC.

8

| | |
|---|---|
| BARRY A. BEITLER and BEITLER & ASSOCIATES INC. dba BEITLER COMMERCIAL REALTY SERVICES, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN BRAL; VENTURE REAL ESTATE GROUP, a California Corporation; and BRAL REALTY ADVISORS, INC., <br><br> Defendants. | ADRS Case No. 16-6581-SML <br> LASC Case No. BC 543410 <br><br> **CORRECTED** <br> **REPORT AND RECOMMENDATION** <br> **ON MOTIONS 101, 201-207** <br><br> Stephen M. Lachs, <br> Judge of the Superior Court (Ret.) <br><br> Hon. Maureen Duff-Lewis <br> Dept. 38 |

19  On October 5, 2016, you appointed me to be a discovery referee in the above-entitled case.

20  Since that time I have had two conference calls with counsel – one to discuss the case and set up

21  a plan for the filing of various motions, and the second was the call that allowed counsel to

22  argue their motions. In the end, Plaintiff filed one motion and Defendants filed three motions,

23  though one of them consisted of four separate motions. However, we all treated it as one

24  motion.

25

26  As you may remember, this case is one of a series of cases litigated between these parties. Mr.

27  Beitler and Mr. Bral were once partners in various real estate businesses and have had a falling

28  out, leading to this litigation.

1

1   The briefs and exhibits that I reviewed for these motions filled a bankers box. There are
2   references by both sides as to comments made by judges in the other cases, and actions taken by
3   other judges in those cases. I will spare you all of this since they are not really relevant to these
4   discovery motions. Either the parties are doing what they are required to do in this case, or they
5   are not.

6
7   The parties numbered their motions to make things easier. The plaintiff used the 100 series and
8   the defendants used the 200 series.

9
10   The second conference call, in which the motions were argued, occurred on December 15, 2016.
11   Messrs Lallas and Jordan appeared for the Plaintiff and Messrs Chapman and Hoesly appeared
12   for Defendants. Plaintiff had a court reporter present.

13
14   We began our conference call with argument concerning **Plaintiff's** motion, which was **Motion**
15   **#101.**

16
17   This motion seeks an order to compel Defendant Bral to produce certain documents, the
18   imposition of monetary sanctions, and an order that would lead to terminating sanctions as to all
19   defendants if there was a further failure to comply with discovery obligations.

20
21   This case involves allegations that Bral transferred money to entities which he controlled, which
22   money should have been shared with Beitler. Bral used QuickBooks for his basic accounting.
23   The information which you enter into QuickBooks and which shows up on your computer, is
24   called either raw data or native files. From that data, a person can produce various reports.
25   While Bral has produced reports for Beitler, he, Beitler, is seeking the raw data from the
26   computer. At this point there is no question that the raw data exists and that it is able be
27   produced.
28   ///

2

1    Bral has taken the position that Beitler never requested the raw data in his discovery motions

2    and that the Court never ordered that they be produced.

3

4    On July 14, 2016, this Court ordered as follows:

5

6        "The court is informed that parties meet (sic) and conferred and agreed after deposition

7    of defendant John Bral that the following documents would be produced as reflected in exhibit

8    8 of declaration of Christian Jordan which is dated June 02, 2016 letter addressed to Mr.

9    Chapman.

10

11       Court orders compliance with production as reflected in exhibit 8 without objection by

12    July 26, 2016."

13

14    Thus we should look at the letter of June 2nd, which was Exhibit 8, to see what was ordered

15    produced by the Court.

16

17    In that exhibit, at the bottom of the first page, you find Request for Production No. 1. The

18    status, which is what the parties agreed to and which was ordered produced by the Court, says,

19    "Bral will produce all responsive documents not already produced, including, by way of

20    example and without limitation, general ledgers, QuickBooks reports, check registers, and cash

21    receipts and disbursement ledgers."

22

23    The language was clear – Bral was to produce all responsive documents and the brief list gave

24    examples but did not limit what was to be turned over to just those items. Clearly The

25    QuickBook native files would fall under this request.

26

27    At the July 14th hearing, the Court ordered Plaintiff to give notice.  Notice was personally

28    served and faxed on July 21, 2016. In addition, Plaintiff e-mailed a letter to counsel for

3

1   Defendants in which Plaintiff took pains to point out that the raw data, or native files, were
2   required to be produced. Obviously Mr. Jordan, for Plaintiff, had no obligation to spell out for
3   Defendant just what "all responsive documents" might include, but he did. And, in this letter, he
4   states that, "QuickBook files, including native files, were also repeatedly referenced in the
5   Application the Court granted today and in the Jordan Declaration in support thereof."

6

7   There is no evidence that at any time after receipt of that letter, Defendant ever contended that
8   Jordan was wrong, and that native files were not required to be produced. That is, until
9   Defendant filed his opposition to Motion 101 in which he states on page 8, **"Importantly, there**
10  **was no mention of the raw data!** (his emphasis). It simply was never discussed or there would
11  have been a reference to it. Because it was not discussed, it need not be produced. Even the
12  Court noted that, including in the October 4 minute order "The 'issue' of "raw" QuickBooks
13  data appears to be new and not argued before."

14

15  I do not know the context of the Court's comment, but it was certainly not a statement that
16  Defendant need not produce the raw data. Had Defendant wanted to, in the discussions that
17  resulted in Exhibit 8, he could have insisted that production be limited to only those documents
18  listed. Instead, he agreed that the list was just a list of examples and that he was required to
19  produce everything, whether in the list of examples or not. And he certainly knew for months
20  that Plaintiff was seeking the raw data. At the least, after Mr. Jordan's August 12th e-mail, he
21  could have cleared this up with Mr. Jordan, or, at the most, sought the Court's ruling as to
22  whether it was required to be produced.

23

24  I would recommend that the Court order Mr. Bral to produce the raw data from QuickBooks.

25

26  In addition, as a safety precaution, Defendant should be ordered to provide a copy of the same
27  raw data under seal to the Court. That way there will be a copy available in the future if either
28  side contends that the other side manipulated the data.

4

1   Both the copy of the data for Plaintiff and that for the Court should be produced within 10 days
2   of the Court's order.
3
4   Plaintiff also requested tax returns for VREG and BRAI for the years 2012, 2013, 2014 and
5   2015. Defendant's position apparently is that he need only turn over documents that are
6   physically in his possession. The tax returns appear to be in the possession of his accountant.
7   Defendant need only instruct his accountant to provide those returns. He should be ordered to
8   produce the returns within 10 days of the date of the Court's order.
9
10  Plaintiff requests a triggering provision that would state that if Defendant failed to comply with
11  the Court's order, terminating sanctions would be imposed. Unfortunately too much can happen
12  in the world for this type of order. Rather, if Plaintiff feels there has been noncompliance, he
13  should be able to seek a date for a hearing on an ex parte motion and Defendant should be given
14  an opportunity at that hearing to explain why he has not complied with the Court's order. If the
15  Court is satisfied that there was noncompliance and there was no valid reason for it, then
16  terminating sanctions will be imposed.
17
18  Finally Plaintiff requests an award of monetary sanctions. It is my recommendation that the
19  Court award monetary sanctions to Plaintiff. This motion, in my opinion, was unnecessary and
20  Plaintiff should not have to pay his attorneys for all of the work involved.
21
22  **Defendant's Motion #201**
23
24  This is Defendant's motion to compel the deposition of Plaintiff along with documents
25  requested in the notice.
26
27  Plaintiff suspended the deposition of Defendant because of Defendant's failure to produce
28  documents that were requested of him. The deposition of Plaintiff was noticed after that

5

1  suspension. It is simply a matter of fairness that a party should not be able to depose the other

2  party while his own deposition has been suspended as the result of his failure to produce

3  documents.

4

5  I recommend that the Court deny Defendant's Motion #201. Further, within 10 days after

6  completion of Defendant's deposition, the parties shall mutually agree to a date for the

7  deposition of Plaintiff. If they cannot agree, Defendant will be able to give notice of an ex parte

8  hearing with the Court in order to set the date.

9

10  **Defendant's Motion #202 through #206**

11

12  These motions were handled as one motion.

13

14  Plaintiff had subpoenaed documents from various third parties who are accountants. These were

15  motions by Defendant to quash each of these document requests and/or for a protective order.

16

17  Defendant's position was that the parties had agreed to limit the production of these documents

18  to a certain year. Yet it is clear that while certain items were limited to a year, the bulk were not.

19  The motions to quash should be denied as to every category unless there was a written

20  agreement to limit a particular category to one year.

21

22  **Defendant's Motion #207**

23

24  This motion deals with amended responses to written discovery that was to be provided by

25  Plaintiff. Defendant says that Plaintiff refused to inform Defendant as to when the responses

26  would be provided and that Defendant was forced to file this motion to compel.

27  ///

28  ///

6

1   It is agreed by the parties that Plaintiff provided the amended responses three weeks before this
2   motion was heard, and so it is now just Defendant's request for sanctions that needs be
3   considered.

4

5   Apparently Plaintiff provided certain amended responses prior to the filing of this motion, but
6   some were not provided. As indicated, the parties agree that all amended responses were
7   provided three weeks prior to the hearing of this motion, but this was a date after the motion
8   was filed.  I accept that Plaintiff's attorney sought to reassure counsel for Defendant that the
9   remainder of the amended responses would be provided, but no specific date was ever given.
10  And it should be pointed out that counsel for Plaintiff kept in touch with Defendant during this
11  time.

12

13  These parties are involved in some terribly contentious litigation. In such a case, it behooves
14  counsel to be specific about such things as dates when discovery responses will be provided
15  since counsel will be aware that the other side will jump on any opportunity to file a motion. In
16  this instance, there was no way for Defendant to know when he would receive the amended
17  responses that he was entitled to. It was Plaintiff's burden to provide a specific date and live up
18  to that date, in order to prevent this very motion.

19

20  At the same time, it appears that this delay has in no way prejudiced Defendant except for
21  having prepared the motion.

22

23  I would recommend that sanctions be awarded to Defendant in a sum to compensate for the
24  preparation of this motion.
25  ///
26  ///
27  ///
28  ///

7

**In summary, I recommend to the Court as follows:**

As to Motion #101

1. Defendant Bral be ordered to produce to the Plaintiff, the raw data from QuickBooks within 10 days of the date of the Court's order.

2. Further, at the same time, Defendant is to provide the same raw data to the Court under seal.

3. Defendant shall produce tax returns for Defendant VREG and Defendant BRAI for the years 2012, 2013, 2014 and 2015 within 10 days of the Court's order.

4. The Court should order that at such time as Plaintiff believes that these orders have not been complied with, he may set a hearing on ex parte motion so that the Court can consider terminating sanctions if the Court finds that these orders have not been complied with.

5. The Court should order monetary sanctions against Defendant.

As to Motion #201

1. Defendant's motion should be denied.

2. Within 10 days of the completion of Defendant's deposition, the parties shall mutually agree to a date for Plaintiff's deposition. If they cannot, Defendant may request a hearing upon ex parte notice, in order to have the Court set the date.

8

As to Motions #202 through #206:

1. The Defendant's motion to quash should be denied as to every category except those in which there was a written agreement to limit the discovery to one year.

As to Motion #207:

1. The only part of the motion that remains is the request for sanctions and sanctions should be awarded to Defendant to compensate for the cost of preparing the motion.

Counsel for Plaintiff should be ordered to prepare an order for the Court that encompasses these rulings.

RESPECTFULLY,

Hon. Stephen M. Lachs, Referee

Judge of the Superior Court, Ret.

Dated: 2/22/17

9

# PROOF OF SERVICE

State of California
County of Los Angeles

I certify that I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 250, Los Angeles, California 90067.

On February 23, 2017, I served the foregoing document described as the **CORRECTED REPORT AND RECOMMENDATION ON MOTIONS 101, 201-207** on the interested parties in this action as follows:

Tom P. Lallas, Esq.
Mark D. Hurwitz, Esq.
Christian A. Jordan, Esq.
LEVY SMALL & LALLAS
815 Moraga Drive
Los Angeles, California 90049
tlallas@lsl-la.com
mhurwitz@lsl-la.com
cjordan@lsl-la.com
cc: kfinn@lsl-la.com
(310) 471-3000
**VIA U.S. MAIL AND E-MAIL ONLY**

John M. Whelan, Esq.
Matthew M. Hoesly, Esq.
SAMINI SCHEINBERG
840 Newport Center Drive, Suite 700
Newport Beach, California 92660
jwhelan@saminilaw.com
mhoesly@saminilaw.com
cc: cthornton@saminilaw.com
(949) 724-0900
**VIA U.S. MAIL AND E-MAIL ONLY**

LLOYD K. CHAPMAN, ESQ.
4558 Sherman Oaks Avenue, 2nd Floor
Sherman Oaks, California 91403
(818) 304-8412
**VIA U.S. MAIL ONLY**

Hon. Maureen Duffy-Lewis
Dept. 38
LOS ANGELES SUPERIOR COURT
OF CALIFORNIA
111 North Hill Street
Los Angeles, California 90012
**VIA U.S. MAIL ONLY**

|   |   |
|---|---|
| X | **BY U.S. MAIL,** I placed a true copy of the document described above in a sealed envelope and caused such envelope with postage thereon to be placed in the United States mail at Los Angeles, California. |
| X | **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address *lara@adrservices.org* to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |
| X | **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |

Executed on February 23, 2017 at Los Angeles, California

_____
Lara Weiss

*Proof of Service 2 – 9/17/13*

# EXHIBIT "B"

1     A   There was nothing to repay.  It was my money

2   that was being put in.

3     Q   I'll move to strike.  I'm just asking a simple

4   question.

5         Did you ever repay to Mr. Beitler any of the

6   amounts he funded on your behalf to Westcliff?

7     A   There was nothing that he funded on my behalf.

8   There was money that he was holding in company account,

9   my commissions that was due me, and that's what came to

10   pay this.

11     Q   And you have -- so when the escrow was closed

12   for Westcliff, isn't it true that you did not deposit

13   to Fidelity National Title Company any of the money

14   that was used to fund the escrow?  Yes or no?

15     A   I personally, I did not, no.

16         MR. LALLAS:  I'm handing to you a document I'm

17   marking as Exhibit 15.  This document is entitled

18   "Operating Agreement of Westcliff Investors, LLC."

19         (Exhibit 15 was marked for

20         identification by the court reporter.)

21   BY MR. LALLAS:

22     Q   Do you recognize Exhibit 15?

23     A   Yes, I do.

24     Q   What is it?

25     A   It's the executed -- copy of the executed

Page 55

1    operating agreement for Westcliff.

2        Q    And are there initials on the bottom of each

3    page?

4        A    That's correct.

5        Q    And are any of the initials your initials?

6        A    The ones on the left side of the page.

7        Q    Have you read Exhibit 15 before?

8        A    Yes, I have.

9        Q    And does Exhibit 15 contain language regarding

10   property management fees and brokerage commissions?

11       A    I think so.  I have to look at it.

12       Q    Maybe I can be helpful to you.

13       A    Yes.

14       Q    Would you please refer to page 4, Section 4.1.

15       A    Okay.

16       Q    Let's start with who had management powers.

17   Would you read Section 4.1 silently to yourself.

18       A    Okay.

19       Q    You understood, didn't you, that under

20   Section 4.1, Barry Beitler was the company's managing

21   member?

22       A    No.  Until now, I did not, no.

23       Q    Do you see the language that says that?

24       A    I see it, yes.

25       Q    And you see the language that says "Unless

                                                Page 56

```
 1    otherwise limited by the articles or this agreement,

 2    Barry Beitler shall have full, complete, and exclusive

 3    authority, power, and discretion to manage and control

 4    the business, property, and affairs of the company"?

 5    Do you see that?

 6         A    I see that.

 7         Q    And now, would you please read silently to

 8    yourself Section 3.3 above that.

 9         A    Okay.

10         Q    Do you see the language in Section 3.3 that

11    says "At all times, whenever a vacancy in the property

12    becomes available, Beitler Commercial Realty Services

13    shall be hired for the leasing at market commission

14    rates."  Do you see that?

15         A    Yes.

16         Q    And do you see the next sentence that says

17    "Bral and Beitler agree to split equally

18    (50 percent/50 percent) any and all commissions for

19    leasing paid, if any"?

20         A    That's correct.

21         MR. O'KEEFE:  Counsel, where did this document

22    come from?

23         MR. LALLAS:  It was produced by you.

24         MR. O'KEEFE:  It was, really.

25         MR. LALLAS:  Yes.
```

Page 57

1          MR. O'KEEFE:  I'll just note for the record

2     that I have a different copy that's also signed by both

3     parties which has different information.

4          MR. LALLAS:  Well, I can't speak to that.  I'm

5     just talking about what was produced by you.  This is

6     Bates stamped with your --

7          MR. O'KEEFE:  I understand that.  It's clear

8     to me there's going to be an issue whether or not this

9     is the original and final document.

10         MR. LALLAS:  Well, we'll deal with that.

11    Q    Looking at page 4, Bates stamped Bral 1137, is

12    that your set of initials on the lower left corner?

13    A    Looks like it, yes.

14    Q    All right.  So let me continue to read.

15    A    Because these numbers --

16    Q    Do you see the language "Bral and Beitler

17    agree to split equally (50 percent/50 percent) any and

18    all commissions for leasing paid, if any"?  Do you see

19    that language?

20    A    Yes, I do.

21    Q    That's on the page you initialled; correct?

22    A    That seems to be, yes.

23    Q    Then do you see the language "The same shall

24    be true of any commission on the future sale of the

25    property"?  Do you see that language?

                                                  Page 58

1    A    Yes, I do.

2    Q    That's on the page you initialled; correct?

3    A    That's correct.

4    Q    Now, when Chapman told you that you could

5    divert leasing and sales commissions to Bral Realty

6    Advisors, Inc., and away from BCRS under the Westcliff

7    operating agreement, did you and he discuss this

8    Section 3.3 of Exhibit 15?

9         MR. O'KEEFE:  You're instructed not to answer.

10        You're asking for attorney/client privilege.

11   BY MR. LALLAS:

12   Q    When Chapman told you that you could divert

13   leasing commissions and sales commissions away from

14   BCRS and to Bral Realty Advisors for Westcliff, were

15   you aware of this language in Section 3.3 of the

16   operating agreement, Exhibit 15?

17        Look, Mr. Bral, I want you to concentrate on

18   the question.

19        MR. O'KEEFE:  I'm going to have to interrupt

20   here.

21        MR. LALLAS:  I'm going to have the question

22   read back to Mr. Bral.

23        MR. O'KEEFE:  The statement you made, Counsel,

24   was that there was an attorney/client communication you

25   somehow came into possession of?

Page 59

1        MR. LALLAS:  He testified this morning without

2    objection.

3        MR. O'KEEFE:  He testified this morning as to

4    that?

5        MR. LALLAS:  Yes.

6        MR. O'KEEFE:  I don't recall that at all.

7        THE WITNESS:  No.

8        MR. LALLAS:  That Chapman said that --

9        Let's do a quick search.  Would you, please.

10       MR. O'KEEFE:  Let's do that.

11       (Record read.)

12       MR. LALLAS:  We'll come back to this issue.

13   Mark this question.  We'll come back to the issue over

14   the lunch hour.

15       THE WITNESS:  This operating agreement is

16   different than what I have.

17   BY MR. LALLAS:

18       Q    Well, Mr. Bral, this operating agreement was

19   produced by you.

20       A    I'm telling you it's not.

21       Q    I'm not going to argue with you.

22       A    Okay.  I'm not going to argue with you either,

23   but I'm stating it is not the same one.

24       Q    You've already -- let's make sure.

25       A    Because I know for a fact --

                                        Page 60

1      Q   Excuse me, Mr. Bral.  I'm asking the

2  questions.  Now, if you look at page -- the page that's

3  Bates stamped Bral 1151, you see signatures of Barry

4  Beitler, John Bral, and Betsy Boyd.  Do you see that?

5      A   I see the signatures.

6      Q   And isn't it true that the signature on

7  page 1151 of Exhibit 15 above the words "John Bral" is

8  your signature?

9      A   It looks that way, but I'm referring to

10  Section 4.2.  It doesn't match what I have.

11      Q   Well, I'm not asking you about that.  But in

12  any case, when you refer to Section 4.2, that has a

13  page that contains your initials; isn't that right?

14      A   It seems to be, yes, but it's not -- okay.

15      MR. O'KEEFE:  Are you saying it's not the

16  original?

17      THE WITNESS:  No, it's not.

18  BY MR. LALLAS:

19      Q   In what respect is section 4.2 on Exhibit 15

20  different than any other copy of Exhibit 15 that was

21  signed by the parties?

22      MR. O'KEEFE:  Well, if you speak from your

23  recollection.  I don't want to --

24      THE WITNESS:  Yeah.  There was a cross out.

25  It was an "and" or "or," and there was a cross out

Page 61

1    on -- that word is missing, the "and."

2    BY MR. LALLAS:

3        Q    Okay.  Was there any other -- was there any --

4        A    Well, I would have to go line by line to see

5    from my recollection, but I know it's different.

6        Q    Okay.  And can you tell me why there would be

7    two different versions of an operating agreement, each

8    signed and initialed by you and Mr. Beitler?

9        A    I wouldn't know.

10       Q    Now, do you see anything in Exhibit 15 that

11   pertains to the payment of management fees?

12       A    Unless you have a section you want me to look

13   at.

14       Q    No.  I'm asking you because I thought you told

15   me that you understood from the operating agreement

16   that management fees would be payable to VREG.

17       A    No.  What I said was the management fees were

18   being paid to VREG from the inception of VREG, Venture

19   RE Group.

20       Q    But I asked you then is it your understanding

21   that that's what the operating agreement provides?

22       A    My understanding of the operating agreement

23   was that the management fee would be paid to

24   Venture RE Group.

25       Q    Okay.  Where is that language in Exhibit 15?

                                              Page  62

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **REPLY TO OPPOSITION TO MOTION SEEKING DISALLOWANCE OF CLAIMS 14 AND 16 ON THE GROUNDS THE SAME WERE FILED BASED UPON FALSIFIED EVIDENCE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 7, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) December 7, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Office of the United States Trustee
411 W. Fourth Street
Suite 7160
Santa Ana, CA 927601-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 7, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
SERVED VIA PERSONAL DELIVERY/ATTORNEY SERVICE:
The Honorable Scott C. Clarkson, United States Bankruptcy Court, Central District of California, Ronald Reagan Federal Building and Courthouse, 411 West Fourth Street, Suite 5130/Courtesy Bin, Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/7/2017 | Lori Gauthier | /s/ Lori Gauthier |
|-----------|---------------|-------------------|
| Date | Printed Name | Signature |
| #1144263 | | |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                    EXHIBIT "B"           **F 9013-3.1.PROOF.SERVICE**
                             Page 61

**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Thomas H Casey**     kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@lwgfllp.com;lgauthier@lwgfllp.c
  om
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **Beth Gaschen**     bgaschen@wgllp.com,
  kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com
- **Michael J Hauser**     michael.hauser@usdoj.gov
- **Mark D Hurwitz**     mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner**     gek@lnbyb.com
- **William N Lobel**     wlobel@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Kathleen J McCarthy**     kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**     Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**     kjm@lnbrb.com
- **Edward G Schloss**     egs2@ix.netcom.com
- **Valerie Smith**     claims@recoverycorp.com
- **Daniel B Spitzer**     dspitzer@spitzeresq.com
- **United States Trustee (SA)**     ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**     ecfnotices@ascensioncapitalgroup.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**