1   William N. Lobel (CA Bar No. 93202)
    wlobel@pszjlaw.com
2   PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
3   Los Angeles, CA  90067
    Telephone:  (310) 277-6910
4   Facsimile:  (310) 201-0760

5   Special Reorganization Counsel for
    Debtor and Debtor-in-Possession, John Jean Bral
6
7   Alan J. Friedman (CA Bar No. 132580)
    afriedman@shbllp.com
8   SHULMAN HODGES & BASTIAN LLP
    100 Spectrum Center Drive, Suite 600
9   Irvine, California 92618
    Telephone:  (949) 340-3400
10  Facsimile:  (949) 340-3000

11  [Proposed] Attorneys for Debtor and Debtor-in-Possession,
    John Jean Bral

12
13              **UNITED STATES BANKRUPTCY COURT**

14        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

15

16  In re:                              Case No:  8:17-bk-10706 SC

17                                      Chapter 11

18  JOHN JEAN BRAL,                     **SUPPLEMENT TO** *MOTION SEEKING:*
                                        *(1) DISALLOWANCE OF CLAIMS 14 AND 16;*
19          Debtor and Debtor-in-Possession.   *AND (2) STRIKING CLAIMS ALLEGED IN*
                                        *ADVERSARY NOS. 8:17-AP-01094 AND 8:17-*
20                                      *AP-01092 ON THE GROUNDS THE SAME*
                                        *WERE FILED BASED UPON FALSIFIED*
21                                      *EVIDENCE* **[DOCKET NO. 219];**
                                        **DECLARATIONS OF BETH GASCHEN AND**
22                                      **LORI GAUTHIER FILED CONCURRENTLY**
                                        **IN SUPPORT THEREOF**
23

24                                      **DATE: April 18, 2018**
                                        **TIME: 1:30 p.m.**
25                                      **PLACE: Ctrm. 5C**

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................ 2

II.    BACKGROUND ....................................................................................................... 5

III.    SUPPLEMENTAL POINTS AND AUTHORITIES  IN SUPPORT OF MOTION TO

STRIKE ...................................................................................................................... 16

A.    The Doctrine of Unclean Hands Prevents the Beitler Parties From Seeking Relief From This

Court ........................................................................................................................ 16

B.    The Beitler Parties' Claims (and the Nondischargeability Actions Based Thereon) Should Be

Disallowed Pursuant to the Doctrine of Unclean Hands ............................................. 21

C.    The Court Should Award to the Debtor His Attorneys' Fees and Costs as a Sanction Against

the Beitler Parties' Misconduct .................................................................................. 23

IV.    CONCLUSION .......................................................................................................... 25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

i

**CASES**

570 F.2d 187 (7th Cir.),

    *cert. denied,* 439 U.S. 876 (1978 ................................................................................................ 16

Am. Rena Int'l Corp. v. Sis–Joyce Int'l Co., Ltd.,

    No. CV 12-6972, 2015 WL 12732433, at 23 (C.D. Cal. 2015) .................................................. 20

Baek v. Halvorson (In re Halvorson),

    2018 Bankr. LEXIS 413, at *43 (C.D. Cal. February 14, 2018) ................................................ 17

Benninger v. First Colony Life Ins. Co.

    (In re Benninger), 357 B.R. 337, 350-51 (Bankr. W.D. Penn. 2006 ......................................... 18

Benninger,

    357 B.R. at 350-51, 360 ........................................................................................................... 24

Bradford v. C.I.R.,

    796 F.2d 303, 307 (9th Cir. 1986) ............................................................................................ 8

Bullock v. BankChampaign, N.A.,

    133 S. Ct. 1754, 1758-59, 185 L. Ed. 2d 922 (2013) ................................................................ 24

Chambers v. NASCO, Inc.,

    501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ........................................................ 26

Derzack v. Cnty. of Allegheny Children & Youth Servs.,

    118 F.3d 1575 (3d Cir. 1997) .................................................................................................. 20

Derzack v. Cnty. of Allegheny, Pa.,

    173 F.R.D. 400, 412–413 (W.D. Pa. 1996) .............................................................................. 20

Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.,

    890 F.2d 165, 173 (9th Cir. 1989) ........................................................................................... 17

Gugino v. Kerslake (In re Clark),

    543 B.R. 16, 19-20 (Bankr. D. Idaho 2015) ............................................................................. 19

Hall v. Wright,

    240 F.2d 787, 795 (9th Cir. 1957 ............................................................................................ 18

Hall v. Wright,

    240 F.2d at 795) ....................................................................................................................... 19

Halverson,

    2018 Bankr. LEXIS, at *49, n.81 ............................................................................................. 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Halverson, 2018 Bankr. LEXIS,

    at *58 (*emphasis in original*) ................................................................ 19

Halvorson,

    2018 Bankr. LEXIS, at *2 ......................................................................... 24

Halvorson,

    2018 Bankr. LEXIS, at *55-56, 73 ............................................................. 18

Halvorson,

    2018 Bankr. LEXIS, at *56 ......................................................................... 18

Halvorson,

    2018 Bankr. LEXIS, at *58 ......................................................................... 18

Halvorson, 2018 Bankr. LEXIS,

    at 43, 57-58 ............................................................................................... 18

In re Hannon,

    421 B.R. 728, 734 (Bankr. M.D. Pa. 2009) ............................................... 15

In re Luzier,

    2014 WL 12799336, at *3 (Bankr. N.D. Ohio 2014) ................................ 15

In re Mehlhose,

    469 B.R. 694, 708-11 (Bankr. E.D. Mich. 2012) ...................................... 26

In re New Valley Corp.),

    181 F.3d 517, 524-27 (3rd Cir. 1999) ........................................................ 24

In re Still,

    393 B.R. 896, 919 (Bankr. C.D. Cal. 2008) .............................................. 24

In re Woodfield,

    978 F.2d 516, 518 (9th Cir. 1992) ............................................................... 8

John Richards Homes Bldg. Co., L.L.C. v. Adell (In re John Richards Homes Bldg. Co., L.L.C.),

    404 B.R. 220, 227 (E.D. Mich. 2009) ....................................................... 26

Keystone Driller Co. v. General Excavator Co.,

    290 U.S. 240, 54 S. Ct. 146, 78 L.Ed. 293 (1933) .................................... 17

Keystone Driller,

    290 U.S. at 245-46 ..................................................................................... 18

Mas v. Coca-Cola Co.,

    163 F.2d 505, 508 (4th Cir. 1947 ............................................................... 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Mas v. Coca-Cola Co.,
    163 F.2d at 508 ........................................................................................................ 21

McGrath v. Zenith Radio Corp.,
    651 F.2d 458, 468 (7th Cir.), cert. denied, 454 U.S. 835 (1981)..................... 15

Mehlhose,
    469 B.R. at 711 ........................................................................................................ 28

Miller v. Cardinale (In re DeVille)
    361 F.3d 539, 551, 553 (9th Cir. 2004) ............................................................... 27

Northbay Wellness Group v. Beyries,
    759 F.3d 956, 960 (9th Cir. 2015) ......................................................................... 20

Northbay Wellness Group,
    759 F.3d at 959 ....................................................................................................... 24

Plastech Holding Corp. v. WM Greentech Auto. Corp.,
    257 F. Supp. 3d 867 (E.D. Mich. 2017)............................................................... 20

Price v. Lehtinen (In re Lehtinen),
    564 F.3d 1052, 1058-59 (9th Cir. 2009) ............................................................... 27

Republic of Rwanda v. Uwimana
    (In re Uwimana), 274 F.3d 806, 810 (4th Cir. 2001)........................................ 24

Schwartz v. Kujawa
    (In re Kujawa), 256 B.R. 598, 610 (B.A.P. 8th Cir. 2000) ............................... 26

Secrease v. W. & S. Life Ins. Co.,
    800 F.3d 397, 402 (7th Cir. 2015) ......................................................................... 20

Tcherepnin v. Franz,
    393 F.Supp. 1197, 1217 (N.D. Ill.1975 ............................................................... 16
570 F.2d 187 (7th Cir.),
    cert. denied, 439 U.S. 876 (1978)........................................................................... 16

Am. Rena Int'l Corp. v. Sis–Joyce Int'l Co., Ltd.,
    No. CV 12-6972, 2015 WL 12732433, at 23 (C.D. Cal. 2015)....................... 20

Baek v. Halvorson (In re Halvorson),
    2018 Bankr. LEXIS 413, at *43 (C.D. Cal. February 14, 2018) .................... 17

Benninger,
    357 B.R. at 350-51, 360........................................................................................... 24

Bradford v. C.I.R.,
   796 F.2d 303, 307 (9th Cir. 1986) .................................................................... 8

Bullock v. BankChampaign, N.A.,
   133 S. Ct. 1754, 1758-59, 185 L. Ed. 2d 922 (2013) .............................. 24

Chambers v. NASCO, Inc.,
   501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ..................... 26

Derzack v. Cnty. of Allegheny Children & Youth Servs.,
   118 F.3d 1575 (3d Cir. 1997) ................................................................. 20

Derzack v. Cnty. of Allegheny, Pa.,
   173 F.R.D. 400, 412–413 (W.D. Pa. 1996) ........................................... 20

Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.,
   890 F.2d 165, 173 (9th Cir. 1989) ......................................................... 17

Gugino v. Kerslake (In re Clark),
   543 B.R. 16, 19-20 (Bankr. D. Idaho 2015) .......................................... 19

Hall v. Wright,
   240 F.2d at 795) ..................................................................................... 19

Halverson, 2018 Bankr. LEXIS,
    at *49 .................................................................................................. 19

Halverson, 2018 Bankr. LEXIS,
    at *58 .................................................................................................. 19

Halvorson,
   2018 Bankr. LEXIS, at *2 ...................................................................... 24

Halvorson, 2018 Bankr. LEXIS,
    at *55-56, 73 ...................................................................................... 18

Halvorson, 2018 Bankr. LEXIS,
    at *58 .................................................................................................. 18

Halvorson, 2018 Bankr. LEXIS,
    at 43, 57-58 ....................................................................................... 18

In re Hannon,
   421 B.R. 728, 734 (Bankr. M.D. Pa. 2009) ........................................... 15

In re Luzier,
   2014 WL 12799336, at *3 (Bankr. N.D. Ohio 2014) ............................. 15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In re Mehlhose,
    469 B.R. 694, 708-11 (Bankr. E.D. Mich. 2012)........................................................... 26

In re New Valley Corp.),
    181 F.3d 517, 524-27 (3rd Cir. 1999) ........................................................................ 24

In re Still,
    393 B.R. 896, 919 (Bankr. C.D. Cal. 2008)............................................................... 24

In re Woodfield,
    978 F.2d 516, 518 (9th Cir. 1992) ............................................................................. 8

John Richards Homes Bldg. Co., L.L.C. v. Adell (In re John Richards Homes Bldg. Co., L.L.C.),
    404 B.R. 220, 227 (E.D. Mich. 2009)....................................................................... 26

Keystone Driller Co. v. General Excavator Co.,
    290 U.S. 240, 54 S. Ct. 146, 78 L.Ed. 293 (1933)................................................... 17

Mas v. Coca-Cola Co.,
    163 F.2d at 508 ......................................................................................................... 20

McGrath v. Zenith Radio Corp.,
    651 F.2d 458, 468 (7th Cir.), cert. denied, 454 U.S. 835 (1981)............................. 15

Mehlhose,
    469 B.R. at 711 ......................................................................................................... 28

Miller v. Cardinale (In re DeVille)
    361 F.3d 539, 551, 553 (9th Cir. 2004) .................................................................... 27

Northbay Wellness Group,
    759 F.3d at 959 ......................................................................................................... 24

Plastech Holding Corp. v. WM Greentech Auto. Corp.,
    257 F. Supp. 3d 867 (E.D. Mich. 2017).................................................................... 20

Price v. Lehtinen (In re Lehtinen),
    564 F.3d 1052, 1058-59 (9th Cir. 2009) ................................................................... 27

Republic of Rwanda v. Uwimana
    (In re Uwimana), 274 F.3d 806, 810 (4th Cir. 2001)................................................ 24

Schwartz v. Kujawa
    (In re Kujawa), 256 B.R. 598, 610 (B.A.P. 8th Cir. 2000)....................................... 26

Secrease v. W. & S. Life Ins. Co.,
    800 F.3d 397, 402 (7th Cir. 2015) ............................................................................ 20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

vi

<u>Tcherepnin v. Franz</u>,

    393 F.Supp. 1197, 1217 (N.D. Ill.1975) ................................................................................. 16

**STATUTES**

11 U.S.C. § 105(a) ....................................................................................................................... 24

18 U.S.C §§ 157 ............................................................................................................................. 5

18 U.S.C §§ 3571 ........................................................................................................................... 5

18 U.S.C. §§ 152 ............................................................................................................................ 5

Cal. Civ. Code § 2332 ................................................................................................................... 8

**RULES**

Fed. R. Bankr P. 9013-1 ............................................................................................................... 4

Fed. R. Civ. Proc. 36 .................................................................................................................... 8

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE AND COUNSEL OF RECORD FOR THE BEITLER PARTIES:**

John Jean Bral, the above-captioned debtor and debtor in possession (the "<u>Debtor</u>" or "<u>Bral</u>"), hereby files this supplement (the "<u>Supplement</u>") to that certain *Motion Seeking: (1) Disallowance of Claims 14 and 16; and (2) Striking Claims Alleged in Adversary Nos. 8:17-ap-01094 and 8:17-ap-01092 on the Grounds the Same Were Filed Based Upon Falsified Evidence* [Docket No. 219] (the "<u>Motion to Strike</u>"). This Supplement (a) provides additional evidence in support of the Motion to Strike, (b) an additional prayer seeking an order striking Proof of Claim Nos. 9 and 11, and (c) provides authorities supporting the contention that the relief sought in the Motion to Strike is also justified under the equitable doctrine of unclean hands.

The following declarations are referenced herein: Declarations of John J. Bral (docket 220) ("JB Dec."), Sean A. O'Keefe (docket 221) (the "SO Dec."), Ronald Williams (docket 222) (the "RW Dec.") previously filed in support of the Motion to Strike, and the Declarations of Lori Gauthier (the "LG Dec.") and Beth Gaschen (the "BG Dec.") filed in support of the Supplement.

## I.    <u>INTRODUCTION</u>

The Debtor's Motion to Strike prayed for an order, *inter alia*, striking Proof of Claim No. 14 ("<u>Claim No. 14</u>") and Proof of Claim No. 16 ("<u>Claim No. 16</u>") on the grounds that said claims were supported by the same fabricated piece of evidence—a falsified rendition of that certain "Operating Agreement of Westcliff Investors, LLC" (the "<u>Altered OPA</u>").  Claim No. 14 was filed by Barry Beitler ("<u>Beitler</u>") and Claim No. 16 was filed by Beitler's sister, Betsy Boyd ("<u>Boyd</u>") (Beitler, his related entity, Beitler & Associates, dba Beitler Commercial Realty Services ("<u>BCRS</u>") and Boyd are the "<u>Beitler Parties</u>" herein). (See Ex. 1 & 2, Motion to Strike).

The evidence submitted in connection with the Motion to Strike established that the Altered OPA had been intentionally altered through the insertion of new re-typed pages.  The inserted pages incorporated modified text materially increasing Beitler's rights and powers as a member and co-manager of Westcliff Investors, LLC ("<u>Westcliff</u>"), and that materially reduced the Debtor's rights

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and powers as a member of this entity.  The evidence further established that the Debtor's initials had been forged on the inserted pages in an effort to match the corresponding initials appearing on the original pages. (See RW Dec.).

After the Motion to Strike was filed, the Debtor carefully analyzed two additional Beitler related claims: Proof of Claim No. 9 ("Claim No. 9") filed by BCRS, and Proof of Claim No. 11 ("Claim No. 11") filed by Beitler. (See Ex. 1 & 2, LG Dec.). This analysis revealed that both claims were based upon an attached complaint that BCRS and Beitler had filed in the California Superior Court. This complaint incorporated one of the material falsified provisions of the Altered OPA.

At the initial hearing on the Motion to Strike held on December 14, 2017, the Court advised the parties that the evidence indicated a fraud may have been committed on the Court.[1]  (LG Dec. Ex. 3, P. 126, lines 11-14). Based upon this finding, the Court stayed all other matters in this case,[2] scheduled a status conference on the matter for February 21, 2018, and advised the Debtor that this continuance would allow for further discovery on the issues raised in the motion.[3] (LG Dec. Ex. 3, P. 128, lines 24-25).  In accordance with the latter expectation, the Debtor served focused discovery upon the Beitler Parties and their counsel on December 28, 2018. (See Joint Discovery Stipulation, dkt. Nos. 368 and 369 (hereinafter the "Discovery Stipulation")).  As the Discovery Stipulation makes clear, the Beitler Parties' responses to this discovery were either non-responsive or impermissibly evasive.

At the February 21, 2018 status conference, the Debtor advised the Court that the Beitler Parties had, in the main, failed and refused to respond to their discovery.  The Debtor further advised

---

[1] *See* Transcript of December 14, 2017 hearing (the "Transcript") ("It's risen to the level where there is circumstantial evidence of a fraud on the Court.). (LG Dec. Ex. 3, P. 126, lines 11-14).

[2] At a hearing held on March 8, 2018, the Court ruled that the plan of reorganization filed by the Debtor was a liquidating plan.  Accordingly, proceedings related to the Debtor's Plan and Disclosure Statement should proceed, since the resolution of the disputes with the Beitler Parties would only affect the size of the pot being distributed, not necessarily the confirmability of the plan.

[3] Transcript ("Because my thinking is, I'm going to continue this hearing and allow your discovery to provide evidence.  Because a fraud on the Court, even if alleged, is something that I take very seriously.  I also take very seriously the rights of counsels to protect themselves and their clients under operable aspects of the evidence code."). (LG Dec. Ex. 3, P. 128, lines 24-25 and P. 129, lines 1-5).

the Court that the Beitler Parties' discovery stonewalling was designed to cause delay, increase

costs, and to deprive the Debtor of the ability to meet certain hard-and-fast deadlines relating to the

Debtor's reorganization effort.  At the conclusion of this hearing, the Court issued an order setting

discovery deadlines and scheduled an evidentiary hearing on the discovery disputes for April 18,

2018.[4]  The Court advised counsel that it would take live testimony from the relevant witnesses at

this hearing.

At the initial hearing on the Motion to Strike, the Court advised the parties that it wanted to

obtain further clarity regarding certain issues before it ruled.  These issues included where the

Altered OPA came from,[5] whether the Altered OPA was intentionally attached to Claim Nos. 14 and

16, and whether the use of the Altered OPA at the deposition of the Debtor was a calculated attempt

to obtain an advantage.  Notwithstanding the Beitler Parties' refusal to properly respond to the

Debtor's discovery regarding these matters, these questions can now be answered.  The evidence

filed herewith and with the Motion to Strike, along with the analysis herein, establishes that (1)

Beitler's "office" was the source of the Altered OPA, (2) both Beitler and his counsel, Tom Lallas,

were fully aware of the fact that this document was attached to Claim No. 14 (at the very least), and

(3) the use of the Altered OPA at the deposition of the Debtor was in fact a calculated ruse

implemented to obtain an advantage.

At the hearing held on December 12, 2017, the Beitler Parties' counsel represented to the

Court that the fabricated evidence attached to Claim Nos. 14 and 16, the references to this fabricated

evidence in Claim Nos. 9 and 11 (collectively the "POCs"), and the use of the Altered OPA in the

Debtor's deposition were innocent mistakes by counsel. (Ex. 3, P. 96, lines 21-25, and Pgs. 95-97,

LG Dec.). The evidence, however, does not support these contentions.  To the contrary, the evidence

establishes that these were carefully planned, premeditated actions.

---

[4] *See* Scheduling Order on Motion Seeking: (1) Disallowance of Claims 14 and 16; and (2) Striking Claims
Alleged in Adversary Nos. 8:17-ap-01094 and 8:17-ap-01092 on the Grounds the Same Were Filed Based
Upon Falsified Evidence, entered February 27, 2018 [Docket No. 339].  Consistent with Local Bankruptcy
Rule 9013-1, the Debtor has filed this Supplement more than twenty-one (21) days prior to the April 18, 2018
hearing, in order to provide the Beitler Parties with at least the standard motion practice response timeframes
(14 days prior to the hearing) to address any new issues raised by way of this Supplement.

[5] Transcript, LG Dec. Ex. 3, P. 129,  lines 9-10.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Beitler Parties' attempt to escape recourse by attributing the entire matter to a mistake by counsel is also legally unavailing.  Counsel did not sign the POCs—Barry Beitler and Betsy Boyd did.  It was *they*, not counsel, who represented to the Court under penalty of perjury that *they* had "examined" the contents of the POCs.  It was *they*, not counsel who represented, *after this examination*, that they have a "reasonable belief that the information is true and correct."  The Beitler Parties are certainly at liberty to come to Court, take the stand, and admit they committed perjury by not examining the POCs,[6] and by falsely representing that they reasonably believed in the truth of the contents therein.  However, even if the Court accepts this *mea culpa* as true, this merely changes the grounds for striking the POCs, it does not eliminate it.  Four false claims were still filed in this case, and four false claims should still be stricken.

## II.    BACKGROUND

The Beitler Parties filed the following proofs of claim in the Debtor's chapter 11 case: (1) Claim No. 14 (filed by Beitler);[7] (2) Claim No. 16 (filed by Boyd);[8] (3) Claim No. 9 (filed by Beitler);[9] (4) Claim No. 11 (filed by BCRS).[10]  In Claim Nos. 14 and 16, Beitler and Boyd represented under penalty of perjury that (1) the Altered OPA[11] was in fact the operating agreement governing the affairs of Westcliff, and (2) the Debtor breached the terms of this agreement by, *inter*

---

[6] The opposition pleadings that the Beitler Parties filed in response to the Motion to Strike treat the filing of a proof of claim as a matter of no legal significance.  That is not the case.  In the opening paragraphs, the mandatory form advises the party signing the claim: "A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571."  The signing party is further advised that his or her signature constitutes an attestation, under the penalty of perjury, that the signing party examined the claim and its contents and that the signing party believes the information therein is true ("I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.").

[7] Claim No. 14 is attached to the Motion to Strike as Exhibit "1."  Following the filing of the Motion to Strike, Beitler amended Claim No. 14 in an attempt to rectify the fraud.

[8] Claim No. 16 is attached to the Motion to Strike as Exhibit "2."  Following the filing of the Motion to Strike, Boyd amended Claim No. 16 in an attempt to rectify the fraud.

[9] Claim No. 9 is attached as Exhibit "1" to the LG Dec. (and is attached to the Reply to the Motion to Strike as Exhibit "A").

[10] Claim No. 11 is attached as Exhibit "2" to the LG Dec.

[11] See Ex. 1 & 2 Motion to Strike.

5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*alia*, failing to properly account for their capital contributions to Westcliff.[12]  Neither contention was true.  As explained in the Motion to Strike and as further detailed herein, the Altered OPA is not the authentic, duly executed and binding version of Westcliff's operating agreement (the "Authentic OPA").  Rather, it is an intentionally fabricated document with falsified provisions that strip the Debtor of critical rights and transfers those rights to Beitler.

In Claim Nos. 9 and 11,  Beitler and BCRS represented under the penalty of perjury that the information in these claims was true.  (Ex. 1 & 2, LG Dec.).  The primary document attached to both claims is a complaint that Beitler and BCRS filed against the Debtor in the California Superior Court, in 2014.  Id. This filing was signed by Tom Lallas.  Paragraph 27 of this complaint states:

Section 3.3 in the Westcliff Operating Agreement provides for BCRS to act as broker and for sale and leasing commissions to be split equally between Beitler and Bral:

"At all times, whenever a vacancy in the property becomes available, Beitler Commercial Realty Services shall be hired for the leasing at market commission rates.  Bral and Beitler agreed to split equally (50%/50%) any and all commissions for leasing paid if any. The same shall be true of any commission on the future sale of the Property ...."

(See Ex. 1 & 2, LG Dec.).  The foregoing language was taken from the Altered OPA.  In fact, the commission split in the Authentic OPA is 60% to Bral, 40% to Beitler.[13]

After the Beitler Parties filed the POCs, their counsel, Tom Lallas, conducted a deposition of Debtor wherein he used the Altered OPA in the place of the Authentic OPA.  When Debtor's counsel pointed out the falsifications in this document, it was withdrawn. (SO Dec., ¶ 11).

The only real issue in contest is whether the use of the Altered OPA and provisions therefrom as support for the POCs, and in the deposition, was intentional or inadvertent.  The evidence filed

---

[12] Westcliff is owned 47.5% by the Debtor, 47.5% by Beitler, and 5% by Boyd (who received this interest as a gift and did not contribute any capital to Westcliff).

[13] In this same pleading, Beitler and BCRS readily admit that the Debtor is the co-manager with Beitler of three of four Beitler/Bral formed limited liability companies.  However, when it comes to Westcliff, the complaint is silent.  This glaring omission is consistent with an intent by Beitler to use the Altered OPA as a weapon in the future, when the time was deemed right.

6

herewith and in support of the Motion to Strike confirms that these actions were intentional, and consequently the Motion to Strike should be granted.

A.    <u>The "Where Did It Come From" Inquiry Has Been Answered</u>.

At the initial hearing on the Motion to Strike, the Court posed the following inquiry: "**All I wanted to know was, isn't it important that we know where this document came from.**" (LG Dec., Transcript, Ex. 3, P. 129, ., lines 9-10.).  The answer to the foregoing question has significant evidentiary import due to the nature of the Altered OPA.  *This is a fabricated piece of evidence with a clear target—the Debtor.*  Each falsification in the Altered OPA materially and detrimentally alters the Debtor's rights as a co-manager and member of Westcliff, and correspondingly improves Beitler's rights.  Accordingly, if Beitler was the source of this document, the issue of intent would be transparent—to advance Beitler's legal position through fraud.

Mr. Lallas, counsel to Beitler, in an attempt to preempt the threat posed by the Court's likely "where did this come from" line of inquiry, endeavored to eliminate it by making the following pronouncements at the initial hearing:

> There's no evidence to implicate Mr. Beitler in …transmitting any document to counsel, all of which is denied.  So, those are undisputed facts and undisputed truths.
>
> *See* LG Dec., Transcript, Ex. 3, P 94, lines 2-6.
>
> And the most important aspects of this motion are, it's undisputed that Mr. Beitler did not provide that exhibit, the incorrect operating agreement to our law firm.

*See* LG Dec, Transcript, Ex. 3, P 97, lines 1-3.  In fact, Mr. Lallas' statements were false.  The matter was not "undisputed" at that point in time.  Moreover, post-hearing discovery has revealed that, in fact, Mr. Beitler, or more specifically his "office," was the source of the Altered OPA.[14]

To quote Beitler's response to the Debtor's Request for Admission 28: "**Admitted on information and belief that Beitler's office provided a copy of the Different OPA to LSL.**" (See

---

[14] Mr. Lallas, while declaring with the utmost certainty that Beitler was not the source of the Altered OPA, failed to provide any inkling as to an alternative source of the document, likely because he knew that the Altered OPA had in fact originated from Beitler's office.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LG Dec., Ex. 4).  The reference to the "Different OPA" in this response refers to the Altered OPA, and LSL refers to Levy, Small & Lallas.[15]

Although Beitler will argue that the foregoing admission[16] does not mean that he was the source of the Altered OPA, this argument is untenable for the followings reasons:

1.  Beitler owns and controls Beitler & Associates, Inc. (dba BCRS), the admitted source of the document;

2.  Beitler is deemed to have knowledge of his agent's acts.  Cal. Civ. Code § 2332; and

3.  The admission that the Altered OPA was "provided" to his counsel by his office, without more, is compelling evidence of intent. There would be absolutely no reason for Beitler or his "office" to provide this targeted weapon to his counsel unless he intended counsel to use it, which in fact counsel did.

Inherent in Beitler's "my office did it, not me" argument is the assumption that the Court will accept the following premise: some unknown employee within Beitler's office made the very precise textual falsifications that appear in the Altered OPA, and then sent this document to Beitler's counsel without Beitler's authorization and knowledge.  Respectfully, this position is not just untenable, it is absurd.

Fraudulent intent is invariably proven through circumstantial evidence. *See generally* <u>Bradford v. C.I.R.</u>, 796 F.2d 303, 307 (9th Cir. 1986) ("Circumstantial evidence may be used to prove fraudulent intent."); <u>In re Woodfield</u>, 978 F.2d 516, 518 (9th Cir. 1992) ("We may infer the intent from the circumstances surrounding the transaction."). The answer to the Court's inquiry, to wit, "where" did the document come from, is clear from the direct and circumstantial evidence that is now before the Court—*It came from Beitler*.

**B.**      <u>**The Altered OPA Is Fabricated Evidence Not A "Version" of**</u>

<u>**The Authentic OPA As Suggested By The Beitler Parties**</u>.

---

[15] Beitler testified in the declaration that he provided in opposition to the Motion to Strike that *he* did not provide the Altered OPA to his counsel.  However, he failed to disclose that his "office" did so.

[16] As indicated in the Discovery Stipulation [Docket Nos. 368 and 369] this response does not comply with the requirements of Federal Rule of Civil Procedure 36.

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

At the initial hearing on the Motion to Strike, counsel for the Beitler Parties suggested that the Altered OPA was merely one of many versions of the Authentic OPA, and that his office mistakenly delivered the wrong "version" to bankruptcy counsel as part of the preparation of the POCs.  (LG Dec. Ex. 3, Pgs. 113-114).  This argument not only ignores the obvious, it postulates a document creation methodology that is not only contrary to universal practice, but irrational.

It is certainly true that attorneys often have different versions of a client document on their computers, as drafts.  However, each version is created by making revisions to a prior version via Microsoft Word.  If these changes are saved into the existing document, then the prior version is no more.  The updated version becomes the operative document.  This "saved over" version of the original document does not have a separate Word footer.  However, since "saving over" the original document deprives others of comparing the changes (unless a PDF redline is created before the save-over), it is common practice to save each version of a transactional document as a separate Word document.  The latter practice results in a new separate footer or document name for this new and separate document.

Neither of the foregoing practices were used in the creation of the Altered OPA.  The pages in the Altered OPA that contain the falsified provisions, pages 4, 8, 12, 13 and 17 (the "Falsified Pages"), have a different Microsoft Word footer than the footer that appears on the corresponding pages in the Authentic OPA. (See Ex. 1, Motion to Strike). This means the following sequence was followed by the party or parties who fabricated this document:

1. The Falsified Pages were retyped as a separate Word document thereby generating the separate and identical footer on each of the Falsified Pages;

2. The Falsified Pages were converted into PDF form;

3. Bral's initials were forged on each retyped page so they would appear to be the same as the original pages, which contained his authentic initials; and

4. The Falsified Pages were inserted into the Authentic OPA in place of the original pages, thereby creating the Altered OPA.

Collectively, the foregoing facts lead to only one conclusion:  The creation of the Altered OPA was an intentional scheme.  No other conclusion is possible for a simple reason—A party who intended

to create another "version" of the Authentic OPA could have done so in just minutes on Word, and then presented this updated "version" to the Debtor for signature. But then, therein lies the problem. As previously testified to in connection with the Motion to Strike, the Debtor would never have signed a version of the Authentic OPA that so detrimentally changed his rights. Thus, the creation of a falsified construct of the original was necessary—the Altered OPA.

In closing on this particular topic, the Debtor would note the obvious. Mr. Beitler has admitted that his "office" was the source of the Altered OPA. (LG Dec., Ex. 4). The easy and irrefutable way for him to prove his "it was just another version" argument would be to produce the Word version of the Altered Document as requested in discovery. Not surprisingly, he refused to do so, because it does not exist, and if he attempted to create it, the "date created" data within Word would disclose this fraud.

### C.    The Question of Intent Has Been Answered.

At the initial hearing on the Motion to Strike, Beitler submitted a declaration wherein he testified that he is wholly ignorant of the Altered OPA and therefore blameless. (Dkt. No. 227). Beitler's counsel has attempted to buttress this testimony by representing that all actions cited in the Motion to Strike were attributable to innocent mistakes by counsel. (LG Dec., Ex. 3, P. 96, lines 21-25, and Pgs. 95-97). In the case of the POCs, Mr. Lallas represented to the Court that his partner, Mr. Hurwitz, chose the wrong document folder when assembling the exhibits for the POCs. In the case of the use of the Altered OPA at the deposition, Mr. Lallas, who took the deposition, represented that this too was a mistake. (LG Dec., Ex. 3, Pgs. 95-97). According to Mr. Lallas, he was truly "surprised" when opposing counsel stopped the deposition and pointed out that he was using a falsified version of the Authentic OPA. (LG Dec., Ex. 3, P. 96, lines 6-9).

Neither of the foregoing contentions is credible. Let's start with the largest of the elephants in the room that Beitler and Lallas have studiously ignored—the Altered OPA itself. Beitler has admitted that his "office" was the source of this document (LG Dec., Ex. 4), yet he has made no effort to explain why his "office" was in possession of a fabricated document that purported to convey upon

10

him contract rights he never had.  Beitler has also failed to explain why this document incorporates five separate forged initials (those purporting to be the Debtor's).[17]

The Altered OPA did not create itself, nor, as explained above, was it created for "inadvertent" use.  This document is akin to a guided missile imprinted with a single programed target—the Debtor.  The fact that Beitler had this weapon in his office, under his control, given its nature and content, is compelling, if not dispositive, evidence of his fraudulent intent.

A second elephant that neither Beitler nor Lallas has addressed is the rationale underlying *the delivery* of Altered OPA—*a delivery that Beitler has admitted his office made* (despite Mr. Lallas' assertions in Court to the contrary).  (LG Dec., Ex. 4).  Delivering a fabricated piece of evidence to the law firm representing you in a case is an intentional act, not an "inadvertent" one.  When that fabricated piece of evidence incorporates falsified text materially detrimental to the rights of your opponent in this same litigation case, the *mens rea* of the delivering party is not inadvertence.  The act is intentional, and the objective is transparent:  To obtain an unfair litigation advantage by deceiving the Court.

Lallas' insistence that he was unaware of the fact that the Altered OPA was a fabricated piece of evidence when he used the same during the Debtor's deposition ignores a third elephant.  *As of the date that the deposition occurred, Lallas had been continuously representing Beitler and Boyd in California Superior Court case* Bral v. Westcliff Investors, LLC, *BC 553693—since 2013* (the "Dissolution Case").  (See Ex. 2, SO Dec.).  This is the same case now being arbitrated before the Judicial Arbitration and Mediation Service.

One of the central issues in the Dissolution Case is whether the managerial deadlock existing at Westcliff *arising from the co-equal managerial relationship of Beitler and Bral provided for in Section 4.1 of the Authentic OPA* justifies the dissolution of this limited liability company.[18]

---

[17] As noted in the Discovery Stipulation, the interrogatories posed to Mr. Beitler and BCRS imposed upon them a duty to investigate. Presumably Mr. Beitler will explain to the Court when he takes the stand how it came to pass that his investigations never revealed the identification of the allegedly unknown person in his office who had the skills, motivation and mendacity needed to create the Altered OPA.

[18] Notably, the co-managerial relationship that exists between Beitler and Bral in the Westcliff relationship is not the outlier, it is a fixture in every case where Beitler and Bral hold membership interests in limited liability

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In sum, when Mr. Lallas deposed the Debtor on November 15, 2017 and directed Mr. Bral's attention to the falsified language in Section 4.1 of the Altered OPA, he knew this text was false.[19]

The manner in which Lallas focused his questions regarding the Altered OPA is also telling. The Altered OPA is eighteen (18) pages in length and it has over sixty (60) separately numbered and lettered paragraphs. Yet, Lallas' first question in reference to the Altered OPA focused on Section 4.1, a section that falsely stated Beitler was the sole manager of Westcliff, when in fact Beitler and Bral are the co-managers of this entity. (LG Dec., Ex. 5, Pgs. 154-155). Lallas made a point of asking the Debtor to read this section and then stated: "You understood, didn't you, that under Section 4.1, Barry Beitler was the company's managing member?" (LG Dec., Ex. 5, Pgs. 154-155, lines 19-20, ). The Debtor then responded, "Until now, I did not, no." (LG Dec., Ex. 5, Pgs. 154-155, line 22). This was an obvious set-up. It was not a mistake. Again, Lallas knew this provision was false.

In the very next series of deposition questions, Mr. Lallas focused like a laser beam on a second falsified provision within the Altered OPA, Section 3.3. (LG Dec., Ex. 5, Pgs. 155, lines 7-20). Whereas the Authentic OPA states that the Debtor was entitled to 60% of Westcliff's leasing commissions and Beitler 40%, the falsified text in the Altered OPA changed these percentages to

---

companies together. Mr. Lallas is, again, uniquely well aware of this fact because he has pursued litigation on behalf of Mr. Beitler against Mr. Bral in all of these business relationships in an effort to undo this very equal co-managerial structure.

[19] Q: Would you please refer to page 4, Section 4.1.
    A: Okay.
    Q: Let's start with who had management powers. Would you read Section 4.1 silently to yourself.
    A: Okay.
    Q: You understood, didn't you, that under Section 4.1, Barry Beitler was the company's managing member?
    A: No. Until now, I did not, no.
    Q: Do you see the language that says that?
      A: I see it, yes.
      Q: And you see the language that says "Unless otherwise limited by the articles or this agreement, Barry Beitler shall have full, complete, and exclusive authority, power, and discretion to manage and control the business, property, and affairs of the company?
      A: I see that.

(LG Dec., Ex. 5, Pgs. 154-155, lines 19-20, ).

50%/50%.  Id.  Here again, this was an obvious and intentional set up.  Again, Mr.  Lallas knew this language was false when he posed his questions.

Mr. Lallas' subsequent actions during this proceeding provide further compelling evidence of the scheme in play at the deposition.  When Debtor's counsel questioned Mr. Lallas regarding where this falsified document came from, Mr. Lallas stated "It was produced by you." (LG Dec., Ex. 5, Pgs. 155, lines 21-25).  When counsel advised Mr. Lallas that the copy that he had in his possession had different text, he stated "I can't speak to that," and then pointed to the bate-stamped numbers on the document indicating it had been produced by Bral's counsel, Lobel, Weiland, Golden & Friedman, LLP ("LWGF"). (LG Dec., Ex. 5, Pgs. 156, lines 1-6).  *In essence, Mr. Lallas was attempting to persuade opposing counsel that the appearance of LWGF's bate-stamp on the Altered OPA necessarily eliminated any dispute regarding veracity of the Altered OPA.*  In fact, Mr. Lallas could "speak to" the Altered OPA's lack of veracity, since he knew this to be the case.  He just declined to do so.

After this second exchange, Bral's counsel insisted upon a break in the deposition.  During this break, the Debtor's counsel reviewed the files on his own laptop computer and found a pleading that Mr. Lallas had filed in the Dissolution Case.  A copy of the Authentic OPA was attached to this filing.  When counsel for Bral presented this pleading to Mr. Lallas and his co-counsel, Gary Klausner, and once against questioned the veracity of the Altered OPA, Mr. Lallas set aside the Altered OPA, without further explanation *and without any dispute*. (SO Dec., ¶ 11).

Respectfully, the Court has overseen the litigation raging in this case for over a year.  *Does the Court believe for an instant that Mr. Lallas would quietly set aside the Altered OPA at the request of opposing counsel, without any protest whatsoever, if he had believed for an instant that it was anything other than a fabrication?*

After the deposition, Bral and Sean A. O'Keefe, the attorney who was attending the deposition as the Debtor's defense counsel, contacted Alan Friedman at LWGF to ascertain the facts regarding Mr. Lallas' insistence that LWGF was somehow the source of the Altered OPA.  This conversation revealed the truth.  The request for production of documents (the "RFP") propounded by Beitler to Bral included the following request:

13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

> Any and all DOCUMENTS YOU relied on or referred to in connection with preparing YOUR Chapter 11 Disclosure Statement and Chapter 11 Plan.

(RFP, Request No. 8).  Since the Debtor had "referred" to the POCs in the Disclosure Statement, copies of these documents were included in the five-thousand page bate-stamped production served by the Debtor's counsel in response to the RFP.  (See,  BG Dec.).  When LWGF produced the bate-stamped copies of Claim Nos. 9, 11, 14 and 16, counsel was unaware of the fact that a falsified construct, the Altered OPA, had been either attached, or referred to in the POCs. Id.

It is critical for the Court to realize that LWGF produced complete copies of POCs, including Claim No. 14, which appeared as BRAL0001084 through BRAL0001152 (the "Bate-Stamped Claim No. 14").  (BG Dec.).  Had Mr. Lallas handed Bate-Stamped Claim No. 14, *a document signed and filed by Beitler*, instead of just the Altered OPA (one of the attachments thereto), Mr. Lallas' ruse—citing the LWGF bate-stamp as evidence of the document's veracity—would not have succeeded.  Counsel for Bral would have simply pointed out the obvious: *Producing a copy of a Beitler court filing as a part of a massive document production did not make this document a "LWGF document."*  In sum, Mr. Lallas' and Mr. Beitler's deceit during the deposition, an intentional course of conduct, succeeded, albeit temporarily, because either Mr. Lallas or someone acting under his direction separated the Altered OPA from POC 14, and presented it to Bral as a stand-alone document.

When the Court questioned Mr. Lallas about the use of the Altered OPA during the deposition, his explanation was the following:

> One of my practices is not to mark duplicates of operating agreements as -- at a deposition which could bear different Bates stamps. So, when I saw that we had an index that said, same date, same operating agreement, different Bates stamps, I just picked up the low number Bates stamp.

(LG Dec., Ex. 3, P. 117, lines 11-16).  In sum, Mr. Lallas represented to the Court that he just happened upon the Altered OPA by chance, and he was wholly unaware of the falsifications therein.  As the above analysis establishes, Mr. Lallas' claims of ignorance are incredible.  Moreover, *the Altered OPA that Mr. Lallas used as an exhibit during the deposition was stripped out of Claim No. 14, again, a document that LWGF produced as a singular document*.  LWGF never created an index

listing the Altered OPA as a separate document, and it would make no sense for Mr. Lallas' office to create an index identifying a document individually that was just one part of another document.

What Mr. Beitler and Mr. Lallas fail to recognize is that the foregoing course of conduct in the deposition confirms *they knew* that the Altered OPA was attached to Claim No. 14, since it was extracted from this document in preparation for the deposition.  This knowledge would have been extant at least by early November, since the deposition occurred on November 15, 2017.  If the act of attaching this document (or referring to provisions therein) to Claims Nos. 9, 11, 14 and 16 was in fact a mistake as represented, then Mr. Lallas and Mr. Beitler were duty bound under Federal Rules of Civil Procedure 11 and 37 to *immediately* withdraw or amend these claims.  *See* In re Luzier, 2014 WL 12799336, at *3 (Bankr. N.D. Ohio 2014); In re Hannon, 421 B.R. 728, 734 (Bankr. M.D. Pa. 2009) ("In addition, having stipulated that Countrywide has no procedure to adjust Proofs of Claim to reflect a refund of a sheriff's deposit (Doc. # 74, ¶ 27), the Court concludes that Countrywide knowingly allowed the inaccurate Proof of Claim to be treated by the parties as accurate to the detriment of others.  The Court is compelled to forward this Opinion to the United States Attorney as well as the United States Trustee for their determination as to whether a violation of 18 U.S.C. § 152(4) has occurred."); *see also* McGrath v. Zenith Radio Corp., 651 F.2d 458, 468 (7th Cir.), *cert. denied,* 454 U.S. 835 (1981); Tcherepnin v. Franz, 393 F.Supp. 1197, 1217 (N.D. Ill.1975 (failure to correct a misapprehension is fraud), *aff'd.,* 570 F.2d 187 (7th Cir.), *cert. denied,* 439 U.S. 876 (1978.  They did not do so until after the deposition, and in fact, not until after the Motion to Strike had been filed, and then only because the Altered OPA had been discovered.

To summarize, the evidence establishes that the Beitler Parties did *not* act with inadvertence in submitting, relying on and utilizing a fabricated piece of evidence in the POCs and later in the deposition.  The evidence establishes these were intentional acts, and in the case of the use of the Altered OPA at the deposition, carefully scripted intentional acts.  This abuse of the system should not be allowed to stand.  The Motion should be granted.

### III.   SUPPLEMENTAL POINTS AND AUTHORITIES
### IN SUPPORT OF MOTION TO STRIKE

The Debtor hereby provides the following legal authorities to supplement those authorities submitted in connection with the Motion to Strike and the Reply (which authorities are incorporated as though fully set forth herein)[20] to address the doctrine of unclean hands, and the remedies that this Court should apply as a consequence of the Beitler Parties' use of falsified evidence to gain a litigation advantage against the Debtor in court proceedings, as well as other abuses of the bankruptcy system.

#### A.   The Doctrine of Unclean Hands Prevents the Beitler Parties From Seeking Relief From This Court

One of the central tenets of a court of equity is that – no matter what rights a person may have and what he or she may make of them in a court of law, such person ***must*** come to the court with clean hands (and must keep them clean).  If a person comes to court with unclean hands, that person "will be held remediless in a court of equity."  *See e.g.,* Baek v. Halvorson (In re Halvorson), 2018 Bankr. LEXIS 413, at *43 (C.D. Cal. February 14, 2018) (*citing* Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S. Ct. 146, 78 L.Ed. 293 (1933)).  As set forth by the United States Supreme Court in the seminal case of Keystone Driller:

> It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show not only that he has a good and meritorious cause of action, but he must come into court with clean hands . . . The governing principle is "that whenever a party who, as *actor*, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right or to award him any remedy" . . . "A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

_____

[20] The legal authorities set forth in the Motion to Strike and the Reply, and application of the law to the factual circumstances present in this case, also establish that the appropriate sanction for the Beitler Parties utilization of falsified evidence is disallowance/striking of the POCs and the dismissal of the related nondischargeability actions.  (Motion to Strike, pages 10-13; Reply, pages 8-11).  This relief is fully consistent with the relief that could and should be granted by the Court under the doctrine of unclean hands.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Id. at 244-45 (*italics in original*).  *See also* <u>Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.</u>, 890 F.2d 165, 173 (9th Cir. 1989) (the unclean hands doctrine "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct.").

The overriding purpose of the unclean hands doctrine is to protect the court.  It is "a concept designed to protect the court from becoming a party to the transgressor's misconduct" and was developed by courts of equity to protect the court itself (as distinguished from the litigants before it) from becoming an "aider and abettor of litigants' bad conduct."  *See* <u>Halvorson</u>, 2018 Bankr. LEXIS, at 43, 57-58 (*citing, inter alia,* <u>Hall v. Wright</u>, 240 F.2d 787, 795 (9th Cir. 1957 ("In applying the unclean hands maxim, the court is 'concerned primarily with protecting its own integrity from improper action by a party.").  Indeed, the party invoking the doctrine need not be damaged, and the court may even raise it *sua sponte*.  *See e.g.*, <u>Halvorson</u>, 2018 Bankr. LEXIS, at *58; <u>Benninger v. First Colony Life Ins. Co.</u> (<u>In re Benninger</u>), 357 B.R. 337, 350-51 (Bankr. W.D. Penn. 2006 (*citations omitted*).

The doctrine of unclean hands is a flexible concept, and a court of equity is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of its discretion.  <u>Halvorson</u>, 2018 Bankr. LEXIS, at *55-56, 73 (*citing, inter alia,* <u>Keystone Driller</u>, 290 U.S. at 245-46.  "Time and time again the courts have emphasized that the unclean hands doctrine is wide-ranging and unconfined."  <u>Halvorson</u>, 2018 Bankr. LEXIS, at *56 (*citations omitted*).

The application of the unclean hands doctrine requires that there be a direct relationship between the misconduct of a party (or parties) to the litigation and the matters at issue in the litigation.  <u>Id.</u> at *44-45.  In other words, the misconduct and the matters at issue in the litigation cannot be unconnected.  <u>Id.</u>  *<u>Where the alleged misconduct occurred during the very course of the litigation between the parties, as in this case, the direct relationship requirement is satisfied – and recovery by, or relief to, the offending party is barred</u>*.  <u>Id.</u> at *45-47, 56-57 (rejecting an argument that bad acts occurring after the filing of a complaint or a bankruptcy petition cannot be taken into account by a court of equity as completely inconsistent with centuries of equity jurisprudence).  "It is well settled that one who comes into equity must come with clean hands *<u>and keep those hands clean throughout the litigation</u>*."  <u>Id.</u> at *46-48 (*emphasis added*) (*citing, inter alia,* <u>Hall v. Wright</u>, 240

F.2d at 795). "[T]he misconduct need not be a crime or an actionable tort … Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine."  *See* Gugino v. Kerslake (In re Clark), 543 B.R. 16, 19-20 (Bankr. D. Idaho 2015) (*citations omitted*).  Notably, and directly applicable to the case at bar, "[i]t is sufficient to bar relief that plaintiff has been guilty of unconscionable conduct directly related to the cause of action, *such as the fabrication of testimony, subornation of perjury or other like attempt to perpetrate a fraud upon the court or take an unconscionable advantage of his adversary*."  Halverson, 2018 Bankr. LEXIS, at *49, n.81 (*emphasis added*) (*citing* Mas v. Coca-Cola Co., 163 F.2d 505, 508 (4th Cir. 1947

The application of the doctrine of unclean hands doctrine is especially appropriate if such application "furthers and advances the public interest." *See e.g.,* Halverson, 2018 Bankr. LEXIS, at *58 (*emphasis in original*); Northbay Wellness Group v. Beyries, 759 F.3d 956, 960 (9th Cir. 2015). With respect to the public interest consideration, there is nothing more sacrosanct than protecting against the utilization of fabricated evidence by a litigant in court proceedings – and this consideration weighs heavily toward applying the doctrine of unclean hands to sanction the Beitler Parties for their utilization of fabricated evidence in these, and related state court, proceedings.  As the Seventh Circuit stated in Secrease v. W. & S. Life Ins. Co., 800 F.3d 397, 402 (7th Cir. 2015), "falsifying evidence to secure a court victory undermines the most basic foundation of our judicial system."  Indeed, falsification of evidence is deemed a fraud upon the court.  Plastech Holding Corp. v. WM Greentech Auto. Corp., 257 F. Supp. 3d 867 (E.D. Mich. 2017).  *See also* Derzack v. Cnty. of Allegheny, Pa., 173 F.R.D. 400, 412–413 (W.D. Pa. 1996) (collecting cases and holding that evidence fabrication constitutes a fraud upon on the court), *aff'd sub nom.* Derzack v. Cnty. of Allegheny Children & Youth Servs., 118 F.3d 1575 (3rd Cir. 1997) (same); Am. Rena Int'l Corp. v. Sis–Joyce Int'l Co., Ltd., 2015 U.S. Dist. LEXIS 189271, at *71 (C.D. Cal. 2015) ("[I]t is well-settled that fabricating and submitting knowingly false evidence amounts to willful and bad faith conduct.")).  Application of the unclean hands doctrine to bar recovery by a litigant that has utilized fabricated testimony to take advantage of an adversary, therefore, is necessary and appropriate.  *See e.g.*, Mas v. Coca-Cola Co., 163 F.2d at 508.

18

In this case, each of the foregoing considerations support the application of the unclean hands doctrine to the Beitler Parties' actions in this case.[21]  Indeed, there can be no reasonable dispute that the submission of falsified evidence by the Beitler Parties in these proceedings is directly related to their claims against the Debtor and that the public interest weighs heavily in favor of protecting the integrity of the court system by disallowing claims brought by a transgressor utilizing fabricated evidence in a court proceeding.

The Beitler Parties' actions and wrongdoing include, among other things to be established in connection with the hearing on the Motion to Strike, the following:

- Beitler reviewed, executed and filed, under penalty of perjury, Claim No. 14, referencing and attaching the Altered OPA.[22]

- Boyd reviewed, executed and filed, under penalty of perjury, Claim No. 16, referencing and attaching the Altered OPA.[23]

- Beitler and BCRS filed the State Court Complaint in the State Court Action, referencing the terms of the Altered OPA, and continue to rely on such falsified document.

- Beitler reviewed, executed and filed, under penalty of perjury, Claim No. 11, referencing the State Court Complaint and the terms of the Altered OPA, and continues to rely on such false documents.

- Beitler filed a nondischargeability action against the Debtor, referencing Claim No. 11, the State Court Complaint and the terms of the Altered OPA, and continues to rely on such false documents.

---

[21] The doctrine of unclean hands also requires a balancing of the parties' respective wrongdoing.  This aspect, however, is not an issue in the present case.  At issue here is the falsification of evidence *by the Beitler Parties,* and the recurring violations of the automatic stay.  There has been no such wrongdoing by the Debtor in this regard.  Moreover, to the extent the Beitler Parties were to somehow attempt to argue that the Debtor's acts that resulted in their underlying claims are based on some "wrongdoing" by the Debtor, such argument would fail as such claims are disputed and the merits thereof have not been established.  Moreover, these types of business disputes between partners would not outweigh the gravity of a litigant's submitting falsified evidence in a court proceeding.

[22] As noted above, the amendment of Claim No. 14 by Beitler, after discovery of the fraud, does not eliminate the underlying fraud.

[23] As noted above, the amendment of Claim No. 16 by Boyd, after discovery of the fraud, does not eliminate the underlying fraud.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

- BCRS reviewed, executed and filed, under penalty of perjury, Claim No. 9, referencing the State Court Complaint and the terms of the Altered OPA, and continues to rely on such false documents.

- BCRS filed a nondischargeability action against the Debtor, referencing Claim No. 9, the State Court Complaint and the terms of the Altered OPA, and continues to rely on such false documents.

- Counsel to the Beitler Parties – with Beitler present and participating – utilized the Altered OPA at the Debtor's deposition in an attempt to prejudice the Debtor.

- In addition, as discussed in detail the Discovery Stipulation filed concurrently herewith and in support hereof, in what could presumably only be an attempt to avoid the discovery of evidence relevant to the present issues (including with respect to, *inter alia*, the genesis of the fraud), the Beitler Parties have repeatedly stonewalled the Debtor's efforts to obtain discovery in connection with the hearing on the Motion to Strike.  The Beitler Parties' non-compliance and failure to provide relevant evidence speaks volumes, but it cannot be a basis for avoiding this Court's review or avoiding the imposition of appropriate sanctions for their improper conduct.

- Moreover, the Beitler Parties have repeatedly demonstrated their disregard for the integrity of this Court, its orders and the protections of chapter 11 proceedings.  This disregard has been made clear not only through their submission of falsified documents under penalty of perjury and by refusing to abide by this legally-imposed discovery mandates, but by violating the protections of the automatic stay imposed by Section 362(a) of the Bankruptcy Code in at least two instances.  The first, the post-petition commencement of an appeal against the Debtor, required three written demands before Beitler finally agreed to dismiss the offending action.  The second, the post-petition filing of a cross-complaint in connection with a pre-petition action filed by Mission

Medical Investors, LLC ("<u>Mission</u>") against Beitler for breach of fiduciary duty,[24] is a clear violation of the automatic stay, made even more egregious as it acknowledges the Debtor's bankruptcy filing and that a stay is in place.  Yet, incredibly, by the cross-complaint, Beitler seeks, among other things, a reduction of the Debtor's interest in Mission, all without seeking relief from this Court, despite the clear detrimental impact said relief would have on the Debtor and his estate.[25]  These flagrant, repeated, and knowing violations of one of the most basic tenets of bankruptcy law serve to highlight the Beitler Parties' contempt for the protections of chapter 11, its processes and procedures, and the Court that oversees such matters.

There is no logical or legitimate way to "explain" away the existence of the Altered OPA by the Beitler Parties.  This falsified document did not just appear out of thin air.  To the contrary, the Altered OPA was expressly and carefully crafted – and was utilized by the Beitler Parties in numerous judicial contexts – for the express purpose of gaining a litigation advantage against the Debtor.  The Beitler Parties' attempt to avoid this Court's imposition of sanctions for such conduct by dodging their discovery obligations and by failing to abide by the rules of this Court simply magnifies their transgressions.  Such abusive practices should not be countenanced by the Court.

Under the circumstances, the application of the unclean hands doctrine is clearly appropriate in order to protect this Court (and the Debtor) from the Beitler Parties' abuse of the judicial system and its governing principles.

**B. <u>The Beitler Parties' Claims (and the Nondischargeability Actions Based Thereon) Should Be Disallowed Pursuant to the Doctrine of Unclean Hands</u>**

Where the unclean hands doctrine is applicable, the Court should "shut its doors against the guilty parties, and to refuse to interfere on their behalf, to acknowledge their right or to award them

---

[24] As the Court is aware, the issues between the Debtor and the Beitler Parties relate primarily to the disputes over the dissolution of two liability companies holding the Debtor's primary assets, Westcliff and Mission. The Debtor has been seeking to sell those assets while market conditions are favorable and use his share of the proceeds to fund his plan of reorganization.  The Beitler Parties do not need the funds, and have refused to consent to the Debtor's monetization of these assets.

[25] See, the Declaration of Jeffrey Alpert In Support of Opposition to Motion for Relief From the Automatic Stay (Docket No. 321].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

any remedy in these adversary proceedings." Halvorson, 2018 Bankr. LEXIS, at *2; In re Still, 393

B.R. 896, 919 (Bankr. C.D. Cal. 2008) (application of the unclean hands doctrine "provides a

complete defense to the plaintiff's action.").  In the bankruptcy context, disallowance of proofs of

claim filed by a claimant found to have unclean hands, has been found to be a proper remedy. *See*

*e.g.*, Benninger, 357 B.R. at 350-51, 360 (striking claimant's nine (9) proofs of claims based on,

among other things, the unclean hands of the claimant); New Valley Corp. v. Corp. Prop. Assocs. 2

and 3 (In re New Valley Corp.), 181 F.3d 517, 524-27 (3rd Cir. 1999) (discussing the applicability of

the unclean hands doctrine in the context of disallowance of bankruptcy claims but finding that the

unclean doctrine was not applicable under the facts of that case because, contrary to the instant case,

there was no direct relationship between the wrongdoing and the claims asserted by way of the proof

of claim).  Likewise, a plaintiff deemed to have unclean hands cannot obtain a judgment of

nondischargeability.  *See e.g.,* Northbay Wellness Group, 759 F.3d at 959; Republic of Rwanda v.

Uwimana (In re Uwimana), 274 F.3d 806, 810 (4th Cir. 2001) ("A plaintiff with unclean hands is not

entitled to relief from a court of equity in the form of an order denying the dischargeability of debt."

(*internal quotation marks omitted*), *abrogated on other grounds by* Bullock v. BankChampaign,

N.A., 133 S. Ct. 1754, 1758-59, 185 L. Ed. 2d 922 (2013)).

 Indeed, the gravity of utilizing falsified evidence is highlighted in the Halvorson decision

itself, wherein the bankruptcy court detailed the underlying state court's imposition of "harsh but

just sanctions" against Mr. Halvorson for his utilization of a forged document (which falsification

was accomplished through some sort of electronic cutting and pasting) at a deposition,

notwithstanding Mr. Halvorson's attempt (following discovery of the use of the false document) to

"make everything right" through the submission of an errata sheet to the deposition testimony.

Halvorson, at *4-5.  The consequence of Mr. Halvorson's use of the falsified document at the

deposition was dismissal by the state court of all of his affirmative claims and counterclaims,

dismissal of his defenses to the claims asserted against him and an award of $750,000 in attorneys'

fees (as well as later criminal prosecution).  Id.  As in the Halvorson case, this case involves a

similar use of a forged document at a deposition.  This case, however, is even more egregious

because the fabricated evidence here was also utilized in numerous court filings (including in the

POCs that were reviewed, signed and filed by the Beitler Parties' under penalty of perjury).[26]  In accordance with the authorities discussed above, therefore, dismissal of the Beitler Parties' POCs and related nondischargeability actions against the Debtor in this case is an appropriate and justified consequence for their utilization of falsified evidence.

### C. The Court Should Award to the Debtor His Attorneys' Fees and Costs as a Sanction Against the Beitler Parties'  Misconduct

In addition, like the state court did in Halvorson, the Court should award to the Debtor the attorneys' fees and costs that have been incurred in connection with this matter as an appropriate sanction against the Beitler Parties for the use of falsified evidence and the failure to rectify the wrongdoing.  This is especially appropriate where these fees and costs have been incurred as a direct result of the Beitler Parties'  continuous abuse of the bankruptcy process, and where such fees and costs would otherwise need to be borne by the Debtor, to his detriment and the detriment of the other creditors of his estate.

It is beyond dispute that federal courts, including bankruptcy courts, have the discretion to award attorney's fees and expenses as a sanction for misconduct based on their inherent authority, as well as under, *inter alia*, Section 105(a) of the Bankruptcy Code.  *See e.g.*, John Richards Homes Bldg. Co., L.L.C. v. Adell (In re John Richards Homes Bldg. Co., L.L.C.), 404 B.R. 220, 227 (E.D. Mich. 2009) ("bankruptcy courts have both an inherent and a statutory power to issue sanctions … [which] can be applied to all instances of 'conduct which abuses the judicial process …"); In re Mehlhose, 469 B.R. 694, 708-11 (Bankr. E.D. Mich. 2012) (discussing a bankruptcy court's inherent and statutory authority under Section 105(a) to impose sanctions in the form of attorney's fees and costs); Schwartz v. Kujawa (In re Kujawa), 256 B.R. 598, 610 (B.A.P. 8th Cir. 2000), *aff'd in part, rev'd in part, on other grounds*, 270 F.3d 578 (8th Cir. 2001) ("Bankruptcy court had inherent power, as well as power under [Rule 9011] to award sanctions").

As set forth by the United States Supreme Court in Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), "[w]hen there is bad-faith conduct in the course of

---

[26] As in Halvorson, the Beitler Parties cannot "make everything right" by subsequent amendment to some (but, notably in this case, not all) instances of the fraudulent usage.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.  But if in the informed discretion of the court, neither the statute or the Rules are up to the task, the court may safely rely on its inherent power.").  With respect to a court's inherent power to impose sanctions, the U.S. Supreme Court has stated:

> [A] court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  In this regard, _if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible part_y, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order[.]"  The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

Id. at 42 (emphasis added).

Likewise, the Ninth Circuit Court of Appeals recognizes a bankruptcy court's inherent authority to issue sanctions for misconduct.  _See_ Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058-59 (9th Cir. 2009) (A bankruptcy court's inherent power allows it to sanction "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so.  It also "allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics.").  _See also_ Miller v. Cardinale (In re DeVille), 361 F.3d 539, 551, 553 (9th Cir. 2004) (affirming the decision of the Bankruptcy Appellate Panel for the Ninth Circuit, which affirmed a bankruptcy court's award of all reasonable attorneys' fees and costs as a sanction under the bankruptcy court's inherent authority).

In addition to this Court's inherent authority to sanction the Beitler Parties for their misconduct, 11 U.S.C. § 105(a)[27] provides it with statutory authority to do so.  Section 105(a) provides bankruptcy courts with authority to award attorneys' fees as a sanction for misconduct,

---

[27] Section 105(a) of the Bankruptcy Code provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).

including where a litigant intentionally abuses the judicial process in an unreasonable and vexatious manner. *See e.g.,* <u>Mehlhose</u>, 469 B.R. at 711 (discussing cases applying sanctions pursuant to Section 105(a)) ("Sanctions are justified under § 105(a) where the sanctioning court has clearly found that a litigant intentionally abused the judicial process in an unreasonable and vexatious manner. Where a party unreasonably prolongs litigation, it is within the court's inherent equitable authority to require that party to pay attorneys' fees.") (*citations omitted*).

The Beitler Parties' bad faith and abuse of the bankruptcy system have caused the Debtor to unnecessarily incur a significant amount of attorneys' fees and expenses in connection with the claims asserted by the Beitler Parties based on falsified evidence and in connection with the Motion to Strike. Accordingly, the Debtor requests that the Court award such fees and expenses to the Debtor as a sanction under its inherent power and/or under Rule 105(a).

### IV.    <u>CONCLUSION</u>

Based on the foregoing, and for the reasons previously set forth in the Motion to Strike and the Reply, the Debtor respectfully requests that the Court strike and disallow Claim Nos. 14, 16, 9 and 11, and strike the related nondischargeability actions, as a sanction for the Beitler Parties' wrongdoing. In addition, the Debtor requests that the Court order that the Beitler Parties pay to the Debtor his attorneys' fees and costs (in an amount to be established by proof) incurred in connection with all disputes related to the Motion to Strike.

Dated: March 26, 2018

Respectfully submitted,
PACHULSKI STANG ZIEHL & JONES LLP

aby: _____/s/ William N. Lobel_____
William N. Lobel
Special Reorganization Counsel for John J.
Bral, Debtor and Debtor-in-Possession

Dated: March 26, 2018

SHULMAN HODGES & BASTIAN LLP

By: _____
Alan J. Friedman
[Proposed] Attorneys for John J. Bral, Debtor
and Debtor-in-Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 1500, Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled **SUPPLEMENT TO** *MOTION SEEKING: (1) DISALLOWANCE OF CLAIMS 14 AND 16; AND (2) STRIKING CLAIMS ALLEGED IN ADVERSARY NOS. 8:17-AP-01094 AND 8:17-AP-01092 ON THE GROUNDS THE SAME WERE FILED BASED UPON FALSIFIED EVIDENCE* **[DOCKET NO. 219] TO: (A) INCLUDE DISALLOWANCE OF CLAIM NOS. 9 AND 11 IN THE RELIEF SOUGHT BY WAY OF THE MOTION TO STRIKE, AND (B) PROVIDE BRIEFING ON THE APPLICABILITY OF THE DOCTRINE OF UNCLEAN HANDS TO THE ISSUES RAISED BY WAY OF THE MOTION TO STRIKE AND THIS SUPPLEMENT AND THE APPROPRIATE REMEDY IN CONNECTION WITH THE MOTION TO STRIKE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **3/26/2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On **3/26/2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **3/26/2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/26/2018 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Thomas H Casey**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@shbllp.com, lgauthier@shbllp.com
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **Beth Gaschen**    bgaschen@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cyoshonis@lwgfllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner**    gek@lnbyb.com
- **William N Lobel**    wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Kathleen J McCarthy**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Babak Samini**    saminicourtnotice@gmail.com,
  bsamini@saminilaw.com;nprado@saminilaw.com;lnavarro@saminilaw.com;swatts@saminilaw.com
- **Edward G Schloss**    egs2@ix.netcom.com
- **Valerie Smith**    claims@recoverycorp.com
- **Daniel B Spitzer**    dspitzer@spitzeresq.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**    ecfnotices@ascensioncapitalgroup.com

2. **SERVED BY UNITED STATES MAIL**:

Tom Lallas
Mark D. Hurwitz
LAW OFFICES OF LEVY, SMALL & LALLAS
815 Moraga Drive
Los Angeles, CA  90049-1633

3. **SERVED BY OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:**

Via Overnight Mail:
The Honorable Scott C. Clarkson, United States Bankruptcy Court,
Central District of California, Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 (courtesy bin)
Santa Ana, CA 92701-4593

Via Email:
Tom Lallas:  tlallas@lsl-la.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**