William N. Lobel (CA Bar No. 93202)
wlobel@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Special Reorganization Counsel for
Debtor and Debtor-in-Possession, John Jean Bral

Alan J. Friedman (CA Bar No. 132580)
afriedman@shbllp.com
SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000

[Proposed] Attorneys for Debtor and Debtor-in-Possession,
John Jean Bral

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Santa Ana Division**

| | |
|---|---|
| IN RE: | Case No. 8:17-bk-10706-SC |
| JOHN JEAN BRAL, | **Chapter 11 Proceeding** |
| Debtor and Debtor-in-Possession. | |
| | **DEBTOR'S SPECIAL BRIEF RE APPLICATION OF CRIME-FRAUD EXCEPTION TO ALL ATTORNEY-CLIENT COMMUNICATIONS RELATING TO PROOFS OF CLAIM  9, 11, 14 AND 16** |
| | **DATE: April 18, 2018**<br>**TIME: 1:30 p.m.**<br>**PLACE: Courtroom 5C** |

**TABLE OF CONTENTS**

Page

I.    SUMMARY OF MATERIAL FACTS ........................................................................... 2
II.   LEGAL AUTHORITIES ............................................................................................. 7
III.   CONCLUSION ........................................................................................................ 11

**Cases**

570 F.2d 187 (7th Cir.),

   cert. denied, 439 U.S. 876 (1978) ................................................................................. 12

Bradford v. C.I.R.,

   796 F.2d 303, 307 (9th Cir. 1986) ................................................................................... 9

Cox v. Adm'r United States Steel & Carnegie,

   17 F.3d 1386, 1422 (11th Cir.1994), amended by, 30 F.3d 1347 (11th Cir.1994), cert.

   denied, 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995). ................................... 8

In re Duncan,

   562 F.3d 688, 695 (5th Cir. 2009) ................................................................................... 9

In re Grand Jury Proceedings,

   87 F.3d at 381 ................................................................................................................. 7

In re Hannon,

   421 B.R. 728, 734 (Bankr. M.D. Pa. 2009) .................................................................. 11

In re Luzier,

   2014 WL 12799336, at 3 (Bankr. N.D. Ohio 2014) ..................................................... 11

In re National Mortgage Equity Corp. Mortgage Pool Certificates Litigation,

   116 F.R.D. 297, 301 (C.D.Cal.1987) .............................................................................. 8

In re Woodfield,

   978 F.2d 516, 518 (9th Cir. 1992) ................................................................................... 9

McGrath v. Zenith Radio Corp.,

   651 F.2d 458, 468 (7th Cir. ........................................................................................... 11

Plastech Holding Corp. v. WM Greentech Auto. Corp.,

   257 F. Supp. 3d 867 (E.D. Mich. 2017) ........................................................................ 12

Secrease v. W. & S. Life Ins. Co.,

   800 F.3d 397, 402 (7th Cir. 2015) .................................................................................... 12

Tcherepnin v. Franz,

   393 F.Supp. 1197, 1217 (N.D.Ill.1975 ................................................................................ 11

United States v. Calvert,

   523 F.2d 895, 909 (8th Cir.1975) ......................................................................................... 8

United States v. Chen,

   99 F.3d 1495, 1501 (9th Cir.1996), 99 F.3d at 1503 ............................................................ 8

United States v. Laurins,

   857 F.2d 529 (9th Cir.1988) ................................................................................................. 8

United States v. Zolin,

   491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989) .................................... 7

**Statutes**

18 U.S.C. § 152(4) ................................................................................................................... 10

18 U.S.C.A. § 152 .................................................................................................................... 11

Fed. R. Civ. Proc. 11 ................................................................................................................. 7

Fed. R. Coiv. Proc 37 ................................................................................................................ 7

Main Document    Page 5 of 16

John J. Bral, the debtor and debtor-in-possession ("Bral" or the "Debtor"), hereby submits the within brief on the application of the crime-fraud exception to the attorney-client and work-product privilege claims asserted by Barry Beitler, Beitler & Associates, Inc., and Betsy Boyd in reference to all documents and communications relating to a) the preparation, filing and use of Proofs of Claims 9, 11, 14 and 16, and b) the use of a fabricated document as an exhibit during the deposition of the Debtor held on November 15, 2017. This brief is filed in support of that certain *Motion Seeking Disallowance of Claims 9, 11, 14 and 16 On The Grounds The Same Were Filed Based Upon Falsified Evidence* (the "Motion to Strike"), as amended and supplemented by the Supplement filed in support of the Motion to Strike (the "Supplement").[1]

This brief is supported by the Declarations of John J. Bral (docket 220) ("JB Dec."), Sean A. O'Keefe (docket 221) (the "SO Dec."), Ronald Williams (docket 222) (the "RW Dec.") previously filed in support of the Motion to Strike, and the Declarations of Lori Gauthier (the "LG Dec.") and Beth Gaschen (the "BG Dec.") filed in support of the Supplement.

## I.   SUMMARY OF MATERIAL FACTS

On June 16, 2017, Barry Beitler ("Beitler") filed Proofs of Claim 9 ("POC 9") (Ex. 1, LG Dec.),[2] 11 ("POC 11") (Ex. 2, LG Dec.) and 14 ("POC 14") (Ex. 1, Motion to Strike), and his sister, Betsy Boyd ("Boyd"), filed Proof of Claim 16 ("POC 16") (Ex. 2, Motion to Strike), in the Debtor's Chapter 11 case (collectively the "POCs"). The POCs were signed under the penalty of perjury.

In POC 14 and POC 16, Beitler and Boyd, respectively, represented that (1) the document attached thereto entitled "OPERATING AGREEMENT OF WESTCLIFF INVESTORS, LLC, a

---

[1] The Debtor is filing that certain "Supplement To *Motion Seeking: (1) Disallowance Of Claims 14 And 16; And (2) Striking Claims Alleged In Adversary Nos. 8:17-ap-01094 And 8:17-ap-01092 On The Grounds The Same Were Filed Based Upon Falsified Evidence* [Docket No. 219] To: (A) Include Disallowance Of Claim Nos. 9 And 11 In The Relief Sought By Way Of The Motion To Strike, And (B) Provide Briefing On The Applicability Of The Doctrine Of Unclean Hands To The Issues Raised By Way Of The Motion To Strike And This Supplement And The Appropriate Remedy In Connection With The Motion To Strike" (the "Supplement") concurrently with the filing of this brief.

[2] POC 9 was filed by Beitler & Associates, Inc., dba Beitler Commercial Real Estate Services ("BCRS"), an entity owned and controlled by Beitler.

2

California Limited Liability Company" (the "Altered OPA") was in fact the operating agreement governing the affairs of Westcliff Investors, LLC ("Westcliff"), and (2) Bral breached the terms of this contract by, <u>inter alia</u>, under-counting Beitler's capital contributions to Westcliff, and over-counting Bral's capital contributions. (Ex. 1 & 2, Motion to Strike).

In the case of POC 9 and POC 11, BCRS and Beitler attached a complaint filed in Los Angeles County Superior Court, Case No. BC 543410 (the "Complaint") (See Ex. 1 & 2, LG Dec.). Although the Altered OPA is not attached to this Complaint, paragraph 27 thereof quotes the text that appears in Section 3.3 from the Altered OPA. As discussed herein, Section 3.3 of the Altered OPA was falsified to alter the percentage split for sales and leasing commissions in favor of Beitler by ten percentage points.

The evidence filed in support of the Motion to Strike and with the Supplement definitively establishes that the Altered OPA was intentionally falsified in the following respects: It states that all managerial control over Westcliff is vested in Beitler, whereas the original unaltered OPA (the "Authentic OPA") vests such control in Bral and Beitler equally; Bral's commission entitlement from Westcliff is reduced by ten percent and Beitler's entitlement was commensurately increased; Beitler is granted the sole right to issue checks in excess of $10,000; Beitler and his sister, as the majority members of Westcliff, when voting together, controlled distributions; and the provision requiring a member's spouse to sign the agreement was eliminated.[3] (See Ex. 1, pages 65-83). These changes were not only material, they altered contract provisions that are subject of pending litigation, and they did so in a manner that significantly improved Beitler's position.

The pages in the Altered OPA that contain the falsified provisions, 4, 8, 12, 13 and 17 (the "Falsified Pages"), have a different Microsoft Word footer than the footer that appears on the corresponding pages in the Authentic OPA. (See Ex. 1, Motion to Strike). This fact is telling. It means the following sequence was followed by the party or parties who fabricated this document:

---

[3] During the time frame when this occurred Beitler was in the midst of a contentious divorce proceeding, one that ultimately lasted ten years. Accordingly, Beitler clearly had a compelling motivation to exclude the spouse that he was divorcing and any future spouse from prospective involvement in Westcliff.

3

A. The Falsified Pages were retyped as a separate Word document thereby generating the separate footer;

B. The Falsified Pages were converted into PDF form;

C. John Bral's initials were forged on each retyped page so they would appear to be the same as the original pages, which contained his authentic initials; and

D. The Falsified pages were inserted into the Authentic OPA in place of the original pages.

Collectively, the foregoing facts lead to only one conclusion: The creation of the Altered OPA was an intentional scheme, plain and simple. Since the content typed into the Falsified Pages would only benefit one party—Beitler—a second conclusion is compelled: Beitler, or someone acting under his direction and control, created the Altered OPA. This conclusion is further buttressed by the admissions made by Beitler and his counsel more fully addressed below.

On November 15, 2017, *five months after the POCs were filed with the Altered OPA attached thereto*, the Debtor appeared for a deposition at the offices of Levene, Neale, Bender, Yoo & Brill, LLP (the "Levene Firm"). Tom Lallas ("Lallas") of Levy, Small & Lallas, Beitler's co-counsel, along with the Levene Firm, conducted the Debtor's examination. (SO Dec., ¶ 8).

One of the documents that Lallas asked the Debtor to identify in the deposition was the Altered OPA. (Ex. 5, LG Dec.). Since the first three pages of this document are authentic, and the Debtor and his counsel were unaware of the Falsified Pages, the Debtor mistakenly identified the Altered OPA as the Authentic OPA. Id. After securing this admission through deceit, Lallas then attempted to take advantage of the same by specifically directing the Debtor's attention to Section 4.1 of Falsified Page 4. Id. As indicated above, this provision had been falsified to state that Beitler was the sole managing member of Westcliff, when in fact, Bral and Beitler were co-equal managers of this entity as indicated in the Authentic OPA.[4] Id.

When the Debtor expressed disbelief at the veracity of the text in this section, Lallas pointed to the bate-stamped numbers on the document indicating it had been produced by Bral's

---

[4] As indicated in the Supplement, Lallas was very familiar with the actual text of Section 4.1 as it appears in the Authentic OPA.

1  counsel, Lobel, Weiland, Golden & Friedman, LLP ("LWGF"), in response to a request for
2  production of documents propounded by Beitler (the "RFP"). (Ex. 5l LG Dec.). Based upon
3  LWGF's bate-stamp, Lallas insisted that Bral could have no grounds for contesting the veracity of
4  the Altered OPA, since it has been produced by his own counsel. (Ex. 5, LG Dec.).

5       Mr. Lallas then directed the Debtor's attention to Section 3.3 on Falsified Page 4. As
6  indicated above, this section had been fraudulently altered to state that Bral and Beitler shared
7  leasing commissions 50/50 instead of 60% Bral, 40% Beitler. (Ex. 5, LG Dec.). When Lallas was
8  again questioned on the veracity of the document by Bral's counsel, Sean A. O'Keefe ("O'Keefe")
9  from LWGF[5], Lallas once again insisted the document's veracity was beyond question, since it
10 was produced by LWGF (again citing the bate-stamp). (Ex. 5, LG Dec.).

11      After this second exchange, Bral's counsel insisted upon a break in the deposition. During
12 this break, O'Keefe reviewed the files on his own laptop computer and found a pleading that Lallas
13 had filed in the California Superior Court in a case entitled Bral v. Westcliff Investors, LLC. A
14 copy of the Authentic OPA was attached to this filing. (SO Dec., ¶ 11). When counsel for Bral
15 presented this pleading to Lallas, and once against questioned the veracity of the Altered OPA,
16 Lallas set aside the Altered OPA, without further explanation. Id.

17      After the deposition, Bral and O'Keefe contacted Alan Friedman at LWGF to ascertain the
18 facts regarding Lallas' insistence that LWGF was somehow the source of the Altered OPA. This
19 conversation revealed the truth. The RFP propounded by Beitler to Bral included the following
20 request:

21      Any and all DOCUMENTS YOU relied on or referred to in connection with
22      preparing YOUR Chapter 11 Disclosure Statement and Chapter 11 Plan.
23 (BG Dec.). Since the Debtor had "referred" to the POCs in the Disclosure Statement, copies of
24 these documents were included in the five-thousand page bate-stamped production served by the
25 Debtor's counsel in response to the RFP. Id. When counsel produced the bate-stamped copies of
26 Claims 9, 11, 14 and 16, counsel was unware of the fact the Altered OPA had been attached to or

---

[5] Mr. O'Keefe is Of Counsel to Lobel, Weiland, Golden & Friedman, LLP, and he appeared and defended Bral's deposition on November 15, 2018 in this capacity.

5

1  referred to in these claims in the place and stead of the Authentic OPA, or the language therefrom.
2  Id.
3      It is critical for the Court to realize that LWGF produced complete copies of POCs,
4  including Claim 14, which appeared as BRAL0001084 through BRAL0001152 ("Bate-Stamped
5  Claim 14"). (Ex. 1, BG Dec.). Had Lallas handed Bate-Stamped Claim 14, *a document signed and*
6  *filed by Beitler*, instead of just of the Altered OPA (one of the attachments thereto), Lallas' ruse—
7  citing the LWGF bate-stamp as evidence of the documents veracity—would not have succeeded.
8  Counsel for Bral would have simply pointed out the obvious: *Producing a copy of a Beitler court*
9  *filing as a part of a massive document production did not make this document a "LWGF*
10 *document"*. In sum, Lallas' and Beitler's deceit during the deposition succeeded, albeit temporarily,
11 because either Mr. Lallas or someone acting under his direction separated the Altered OPA from
12 POC 14, and then Mr. Lallas presented it to Bral as a stand-alone document.
13     Although Lallas and Beitler have brazenly argued that their attempt to obtain an advantage
14 from the Altered OPA was inadvertent and therefore irrelevant and immune from recourse, they
15 could not be more wrong in this regard. What Beitler and Lallas fail to recognize is that the
16 foregoing course of conduct confirms *they knew* that the Altered OPA was attached to Claim 14.
17 This conclusion is compelled by Lallas' and Beitler's own admissions. As indicated above, LWGF
18 did not produce the Altered OPA as a stand-alone document. It was attached as an integral part of
19 Bate-Stamped Claim 14. Lallas, or someone acting at his direction and control, extracted this
20 attachment from Bate-Stamped Claim 14, in preparation for the deposition, and then, as indicated
21 above, sought to use this falsified evidence to obtain an advantage. These actions confirm that
22 Lallas knew this fabricated evidence was attached to (at least) Claim 14.[6]

---

[6] As discussed in the Motion to Strike, this was also not the first instance of an attempt to mislead the Court regarding the source and potential use of the Altered OPA. Mr. Lallas emphatically denied that Beitler provided the Altered OPA to his firm: "And the most important aspects of this motion are, it's undisputed that Mr. Beitler did not provide that exhibit, the incorrect operating agreement to our law firm." (Ex. 3, P. 97, lines 1-5, LG Dec.). Discovery has proven Mr. Lallas' unequivocal assertion to be false. Beitler has admitted that his office did in fact provide the Altered OPA to Mr. Lallas' firm. See response to request for admission 28. (Ex. 4, P. 146, LG Dec.).

In sum, Lallas' conduct at the deposition eliminates any contention that the attachment of the Altered OPA to Claim 14 was a mistake. Moreover, if the act of attaching this document (or referring to provisions therein) to Claims 9, 11, 14 and 16 was in fact a mistake, then Lallas and Beitler were duty bound under Federal Rules of Civil Procedure 11 and 37 to immediately withdraw these claims. As indicated above, they not only failed to do so, they doubled down on their initial fraud and attempted to use one of these false filings (a part of Claim 14) to obtain an advantage in the ongoing litigation against Bral. As the within legal analysis establishes, on these facts, the crime-fraud exception to the attorney-client privilege allows Bral access to all communications that refer or relate to the Altered OPA, or to the use of this document in Beitler's litigation against Bral.

## II.    LEGAL AUTHORITIES

The purpose of the crime-fraud exception is "to assure that the 'seal of secrecy' between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." United States v. Zolin, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989); Clark v. United States, 289 U.S. 1, 15 (1932) ("The [attorney-client] privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.").

"The test for invoking the crime-fraud exception to the attorney-client privilege is whether there is 'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme." In re Grand Jury Proceedings, 87 F.3d at 381 (quoting in In re Grand Jury Proceedings, 867 F.2d 539, 541 (9th Cir. 1989)). The party asserting the exception must make "a prima facie showing that the communications were in furtherance of an intended or present illegality and that there is some relationship between the communications and the illegality." United States v. Chen, 99 F.3d 1495, 1501 (9th Cir.1996), 99 F.3d at 1503 (quotation omitted).

The exception applies "even where the attorney is unaware that his advice may further an illegal purpose." United States v. Laurins, 857 F.2d 529 (9th Cir.1988). The intent of the client, as opposed to that of the attorney representing the client, is the focus when applying the exception. United States v. Calvert, 523 F.2d 895, 909 (8th Cir.1975) (explaining that "[i]t is the client's

purpose which is controlling, and it matters not that the attorney was ignorant of the client's purpose"). "The crime-fraud exception may be used to abrogate work product protection as well as the attorney-client privilege." In re National Mortgage Equity Corp. Mortgage Pool Certificates Litigation, 116 F.R.D. 297, 301 (C.D.Cal.1987); Cox v. Adm'r United States Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir.1994), amended by, 30 F.3d 1347 (11th Cir.1994), cert. denied, 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995).

Since fraudulent intent is rarely established by direct evidence, the courts are compelled to rely upon circumstantial evidence[7]. See generally Bradford v. C.I.R., 796 F.2d 303, 307 (9th Cir. 1986)("Circumstantial evidence may be used to prove fraudulent intent."); In re Woodfield, 978 F.2d 516, 518 (9th Cir. 1992) ("We may infer the intent from the circumstances surrounding the transaction."); In re Duncan, 562 F.3d 688, 695 (5th Cir. 2009). The evidence in this case establishing an intent to utilize an attorney's services "in furtherance of an "illegality" is the following:

A. The Altered OPA is a carefully fabricated piece of evidence that was designed to convey legal rights upon Beitler, to the determent of Bral, by fraud;

B. Beitler has admitted that his office delivered the Altered OPA to Lallas;

C. The Altered OPA or a provision therefrom was attached to or referenced in not one, but four proofs of claim (Claims 9, 11, 14 and Claim 16), these claims were signed under the penalty of perjury by Beitler (Claims 9, 11 and 14) and his sister Boyd (Claim 16), and they were filed in Bral's bankruptcy case;

D. Lallas and Beitler *knew* the Altered OPA was attached to Claim 14, at the very least, since 1) Lallas extracted this document from bate-stamped Claim 14 and attempted, at the deposition, to deceive Bral into believing that the Altered OPA was the Authentic OPA, and 2) specifically referenced the falsified provisions in this document in the deposition and attempted, again, to force Bral to admit that they were valid;

---

[7] This Court has already found that: "…there's enough circumstantial evidence here to demonstrate, to make me believe that there was a fraud on this Court." (Ex. 4, P. 136, lines 6-8, LG Dec.).

  E. Beitler attended Bral's deposition and watched Lallas' use of the Altered OPA during this deposition, and yet he never objected when Lallas insisted that Bral read the falsified language in this document and then demanded that he admit Bral stipulate that this false language was valid; and

  F. Lallas, Beitler and Boyd did not seek to amend the false POCs by removing the Altered OPA attached thereto until after Bral had filed a motion seeking to strike these false claims based upon this attachment.

The creation of the Altered OPA, without more, is compelling evidence of an intent to engage in fraudulent conduct. There is simply no other rational explanation for this calculated unilateral alteration of a binding contract. Beitler's claim to be ignorant of the origins of this fabrication rings hollow for the following reasons: a) Every change made to this document benefits only one party—Beitler; b) Beitler has admitted that this document was located in his office, since it was his office that sent it to Lallas; c) Beitler has admitted that his office sent this document to Lallas—a client who sends a fabricated document to his attorney and watches his attorney use that fabricated document to obtain an advantage cannot contend that he is ignorant of its fraudulent nature; and d) this document or a provision therefrom was attached to or referenced in three proof of claims that Beitler signed under the penalty of perjury and then caused to be filed in Bral's bankruptcy case. In sum, all of the circumstantial evidence indicates that Beitler was the source of the Altered OPA and that he knew it was going to be used by his counsel to obtain an litigation advantage.

As indicated above, Beitler's and Lallas' contentions that the Altered OPA was attached to or provisions therefrom referenced in Claims 9, 11, 14 and 16 by mistake is patently untenable. Lallas not only extracted this exhibit from Bate-Stamped Claim 14 and used this fabricated item of evidence in Bral's deposition, he insisted that Bral read the falsified provisions aloud, and demanded that Bral stipulate to the truth of these falsified positions. Beitler attended this deposition, along with his in-house counsel, and watched this entire fraudulent performance without saying a word. His silence confirms that he not only knew the Altered OPA had been

attached to Claim 14, it confirms that he fully expected his counsel proceed with the foregoing subterfuge.

Beitler's and Lallas' claims of ignorance fail for another reason. Claim 14 was filed in June of 2017. Mr. Bral's deposition was taken on November 15, 2017. Lallas came to this deposition with dozens of exhibits, the most important of which was the Altered OPA. Even if Beitler and Lallas had inadvertently caused the Altered OPA to be attached to Claim 14, both he and Beitler were aware of this fact at least by the date of the deposition. Yet, they did nothing to correct this false representation to the Court. To the contrary, as indicated above they sought to exploit this false claim. This, without more, establishes the requisite unlawful act necessary for the application of the crime-fraud exception. See In re Luzier, 2014 WL 12799336, at 3 (Bankr. N.D. Ohio 2014); In re Hannon, 421 B.R. 728, 734 (Bankr. M.D. Pa. 2009) ("In addition, having stipulated that Countrywide has no procedure to adjust Proofs of Claim to reflect a refund of a sheriff's deposit (Doc. # 74, ¶ 27), the Court concludes that Countrywide knowingly allowed the inaccurate Proof of Claim to be treated by the parties as accurate to the detriment of others. The Court is compelled to forward this Opinion to the United States Attorney as well as the United States Trustee for their determination as to whether a violation of 18 U.S.C. § 152(4) has occurred."); see also McGrath v. Zenith Radio Corp., 651 F.2d 458, 468 (7th Cir.), cert. denied, 454 U.S. 835 (1981); Tcherepnin v. Franz, 393 F.Supp. 1197, 1217 (N.D.Ill.1975) (failure to correct a misapprehension is fraud), aff'd, 570 F.2d 187 (7th Cir.), cert. denied, 439 U.S. 876 (1978).

In addition to common-law fraud, the foregoing course of conduct violates Title 18 of the U.S. Code. The relevant section states:

> A person who--
> **(1)** knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor;
> **(2)** knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;
> **(3)** knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;

**(4)** knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney;

...

shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C.A. § 152. Subsection 4 is clearly applicable on the facts. False claims were presented against the estate of the debtor—Claims 9, 11, 14 and 16, and "such claims" were used in a "case under title 11" by presenting the Altered OPA from Claim 14 to Bral in his deposition and representing that it was the Authentic OPA.

## III

## **CONCLUSION**

As the Seventh Circuit stated in Secrease v. W. & S. Life Ins. Co., 800 F.3d 397, 402 (7th Cir. 2015), "falsifying evidence to secure a court victory undermines the most basic foundation of our judicial system." It is deemed a fraud upon the court. Plastech Holding Corp. v. WM Greentech Auto. Corp., 257 F. Supp. 3d 867 (E.D. Mich. 2017). The crime-fraud exception bars Beitler and/or his attorneys from using either the attorney-client or the attorney-work product privileges to protect any document or communication that was generated or exchanged in connection with or in furtherance of this unlawful endeavor.

DATED: March 26, 2018

PACHULSKI, STANG, ZIEHL & JONES, LLP

By: /s/ William N. Lobel
William N. Lobel
Attorneys for Debtor and
Debtor-in-Possession John J. Bral

DATED: March 26, 2018

SHULMAN, HODGES & BASTIAN, LLP

By: [signature]
Alan J. Friedman
Attorneys for Debtor and
[Proposed] Counsel for Debtor-in-Possession John J. Bral

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 1500, Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled **DEBTOR'S SPECIAL BRIEF RE APPLICATION OF CRIME-FRAUD EXCEPTION TO ALL ATTORNEY-CLIENT COMMUNICATIONS RELATING TO PROOFS OF CLAIM  9, 11, 14 AND 16** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **3/26/2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **3/26/2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **3/26/2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/26/2018 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                        **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Thomas H Casey**     kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@shbllp.com, lgauthier@shbllp.com
- **Daniel K Fujimoto**   wdk@wolffirm.com
- **Beth Gaschen**    bgaschen@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cyoshonis@lwgfllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner**    gek@lnbyb.com
- **William N Lobel**    wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Kathleen J McCarthy**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Babak Samini**    saminicourtnotice@gmail.com, bsamini@saminilaw.com;nprado@saminilaw.com;lnavarro@saminilaw.com;swatts@saminilaw.com
- **Edward G Schloss**    egs2@ix.netcom.com
- **Valerie Smith**    claims@recoverycorp.com
- **Daniel B Spitzer**    dspitzer@spitzeresq.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**    ecfnotices@ascensioncapitalgroup.com

2. **SERVED BY UNITED STATES MAIL**:

Tom Lallas
Mark D. Hurwitz
LAW OFFICES OF LEVY, SMALL & LALLAS
815 Moraga Drive
Los Angeles, CA  90049-1633

3. **SERVED BY OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:

Via Overnight Mail:
The Honorable Scott C. Clarkson, United States Bankruptcy Court,
Central District of California, Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 (courtesy bin)
Santa Ana, CA 92701-4593

Via Email:
Tom Lallas:  tlallas@lsl-la.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          **F 9013-3.1.PROOF.SERVICE**