William N. Lobel (CA Bar No. 93202)
wlobel@pszjlaw.com
**PACHULSKI STANG ZIEHL & JONES LLP**
650 Town Center Drive, Suite 1500
Costa Mesa, CA 92626
Telephone: (714) 384-4740
Facsimile: (714) 384-4741

Special Reorganization Counsel for
Debtor and Debtor-in-Possession, John Jean Bral

Alan J. Friedman (CA Bar No. 132580)
afriedman@shbllp.com
**SHULMAN HODGES & BASTIAN LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000

Attorneys for Debtor and Debtor-in-Possession,
John Jean Bral

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>JOHN JEAN BRAL,<br><br>Debtor and Debtor-in-Possession. | Case No: 8:17-bk-10706-SC<br><br>Chapter 11<br><br>**BRIEF REGARDING FURTHER EVIDENCE IN SUPPORT OF** *MOTION SEEKING: (1) DISALLOWANCE OF CLAIMS 14 AND 16; AND (2) STRIKING CLAIMS ALLEGED IN ADVERSARY NOS. 8:17-AP-01094 AND 8:17-AP-01092 ON THE GROUNDS THE SAME WERE FILED BASED UPON FALSIFIED EVIDENCE* **[DOCKET NO. 219], AS AMENDED AND SUPPLEMENTED [DOCKET NO. 370]; AND REQUEST FOR IMMEDIATE PAYMENT OF THE DEBTOR'S ATTORNEYS' FEES AND COSTS RELATED TO THE MOTION TO STRIKE**<br><br>**[DECLARATIONS OF RONALD T. WILLIAMS, ALAN J. FRIEDMAN, WILLIAM N. LOBEL AND LORI GAUTHIER FILED CONCURRENTLY HEREWITH]**<br><br>DATE: May 31, 2018<br>TIME: 11:00 a.m.<br>PLACE: Courtroom 5C |

5429-000\1226323.1

i.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................3

II. ARGUMENT ..................................................................................................................4

   A. The Evidence Demonstrates That Mr. Beitler Forged Ms. Boyd's Initials On The Altered OPA And Committed Perjury At The Crime-Fraud Hearing ............................................. 4

   B. The Beitler Parties And LSL Should Be Required To Immediately Pay The Debtor's Attorneys' Fees And Costs Related To The Motion To Strike Proceedings ..................................... 9

III. CONCLUSION..............................................................................................................14

5429-000\1226323.1

i.

# **TABLE OF AUTHORITIES**

Chambers v. NASCO, Inc.,
   501 U.S. 32, 45–46, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991) ............................................. 4

Chambers v. NASCO, Inc.,
   501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ............................................................. 10

Everett v. S. Pac. Co.,
   181 F.2d 58, 60 (9th Cir. 1950) ........................................................................................................ 7

In re Mehlhose,
   469 B.R. 694, 708-11 (Bankr. E.D. Mich. 2012) .................................................................... 11, 12

Myers v. Reading Co.,
   331 U.S. 477, 484, 67 S.Ct. 1334, 1339 (1947) ............................................................................... 7

Price v. Lehtinen (In re Lehtinen),
   564 F.3d 1052, 1058-59 (9th Cir. 2009) ......................................................................................... 10

Ramsey v. Countrywide Home Loans, Inc. (In re Ramsey),
   424 B.R. 217, 221 (Bankr. Miss. 2009) ........................................................................................... 8

Salehsari v. Aalam (In re Aalam),
   538 B.R. 812, 829 (Bankr. C.D. Cal. 2015) ..................................................................................... 8

Schwartz v. Kujawa (In re Kujawa),
   256 B.R. 598, 610 (B.A.P. 8th Cir. 2000), *aff'd in part, rev'd in part, on other grounds*, 270 F.3d
   578 (8th Cir. 2000) ................................................................................................................... 10, 12

**Rules**

Fed. R. Evid. 901(b)(3) ........................................................................................................... 5, 7, 8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5429-000\1226323.1

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE AND COUNSEL OF RECORD FOR THE BEITLER PARTIES:** [1]

John Jean Bral, the above-captioned debtor and debtor-in-possession (the "Debtor" or "Mr. Bral"), hereby files this brief (the "Brief") to provide this Court with further evidence in support of the Debtor's *Motion Seeking: (1) Disallowance Of Claims 14 And 16; And (2) Striking Claims Alleged In Adversary Nos. 8:17-ap-01094 And 8:17-ap-01092 On The Grounds The Same Were Filed Based Upon Falsified Evidence* [Docket No. 219] (the "Initial Motion to Strike"), as amended and supplemented by the Debtor's *Supplement To Motion Seeking: (1) Disallowance Of Claims 14 And 16; And (2) Striking Claims Alleged In Adversary Nos. 8:17-ap-01094 And 8:17-ap-01092 On The Grounds The Same Were Filed Based Upon Falsified Evidence [Docket No. 219] To: (A) Include Disallowance Of Claim Nos. 9 And 11 In The Relief Sought By Way Of The Motion To Strike, And (B) Provide Briefing On The Applicability Of The Doctrine Of Unclean Hands To The Issues Raised By Way Of The Motion To Strike And This Supplement And The Appropriate Remedy In Connection With The Motion To Strike* [Docket No. 370] (the "Supplement" and, together with the Initial Motion to Strike, and related supporting declarations and evidence filed in support thereof, [2] the "Motion to Strike"), [3] and to request the immediate payment of the Debtor's attorneys' fees and costs that have been incurred to date in connection with the Motion to Strike. In support of this Brief, the Debtor submits the Declaration of Ronald T. Williams (an expert handwriting specialist), the Declarations of the Debtor's counsel, Alan J. Friedman and William N. Lobel, and the Declaration of Lori Gauthier.

---

[1] Barry Beitler ("Mr. Beitler"), Mr. Beitler's sister, Betsy Boyd ("Ms. Boyd") and Mr. Beitler's related entity, Beitler & Associates, dba Beitler Commercial Realty Services ("BCRS") are the "Beitler Parties" herein.

[2] In addition to the Initial Motion to Strike and the Supplement, the following declarations and pleadings were submitted by the Debtor: Declaration of John Bral [Docket No. 220], Declaration of Sean A. O'Keefe [Docket No. 221], Declaration of Ronald Williams [Docket No. 222], Reply to response to the Initial Motion to Strike [Docket No. 234], Declaration of Beth Gaschen [Docket No. 371], and Declaration of Lori Gauthier [Docket No. 372]. These declarations and pleadings filed by the Debtor in connection with the Motion to Strike (and those filed in connection with the Crime-Fraud Brief (as defined below)) are incorporated by this reference as though fully set forth herein.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion to Strike.

5429-000\1226323.1       2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## I. INTRODUCTION

Concurrently with the filing of the Supplement, the Debtor filed his *Special Brief Re Application Of Crime-Fraud Exception To All Attorney-Client Communications Relating To Proofs Of Claim 9, 11, 14 And 16* [Docket No. 374] (the "Crime-Fraud Brief"). The evidentiary and legal analysis within this brief established that an *in camera* judicial review of certain documents claimed as privileged by the Beitler Parties was justified under the crime-fraud exception to the attorney-client and work-product privileges.  An evidentiary hearing on the matter was held on April 18, 2018 and the parties made their closing arguments on the issues on May 3, 2018 (the "Crime-Fraud Hearing"). [4] At the conclusion of this process, the Court ruled that a sufficient showing had been made to warrant the requested *in camera* review of the allegedly privileged documents [Docket No. 431] and May 31, 2018 was set as the continued hearing on the Motion to Strike.

At the core of the Motion to Strike is the contention that Beitler Parties' submission of intentionally fabricated evidence, and the use of this evidence in discovery to obtain an advantage, constituted a fraud on the Court. As the legal authorities in the motion make clear, the Beitler Parties' actions have consequences: They should be barred from seeking relief from this Court under, inter alia, the doctrine of unclean hands, and they should be compelled to bear the costs imposed upon the estate by their fraud.

The specific purpose of the instant Brief is to present to the Court additional evidence in support of the Motion to Strike derived from the hearing held April 18, 2018. This evidence will establish that Mr. Beitler perjured himself at this hearing when he represented to the Court, under oath, that he did not forge Betsy Boyd's initials on the falsified pages within the Altered OPA.  In fact, Mr. Beitler unquestionably did forge his sister's initials on this fabricated piece of evidence.

Mr. Beitler's unabashed willingness to do whatever is expedient to "win" his war against the Debtor – including perjuring himself on the stand – merits the most severe consequence. The Motion to Strike should be granted and the Beitler Parties' proofs of claim (and related non-dischargeability actions) should be stricken and disallowed, *and* this Court should enter an order requiring Mr.

---

[4] True and correct copies of the April 18, 2018 and May 3, 2018 Hearing Transcripts are attached to the Gauthier Declaration as Exhibits "1" and "2."

5429-000\1226323.1                              3

Beitler and his counsel, Levy, Small & Lallas ("LSL"), jointly and severally, to immediately pay the Debtor's attorneys' fees and costs incurred to date in connection with the Motion to Strike and related proceedings.[5]

## II. ARGUMENT

### A. The Evidence Demonstrates That Mr. Beitler Forged Ms. Boyd's Initials On The Altered OPA And Committed Perjury At The Crime-Fraud Hearing

From the outset of these proceedings, the consistent refrain from the Beitler Parties has been that there is "no evidence" to implicate Mr. Beitler in altering any document or forging signatures or initials. In this regard, counsel to the Beitler Parties, Mr. Lallas, assured the Court as follows:[6]

> There is a lot of bluster and rhetoric and character assassination and accusation about what could, might or did happen, but there's no evidence to support any of it. *There's no evidence to implicate Mr. Beitler in altering any document, **in forging initials on any document**, in forging a signature on any document, or in transmitting any document to counsel,[7] all of which is denied*. So those are undisputed facts and undisputed truths.

Mr. Lallas' statement could not be further from the truth. Indeed, it is beyond reasonable question that Mr. Beitler, in the course of his testimony to this Court at the Crime-Fraud Hearing, committed perjury when he testified under oath that he did not make Ms. Boyd's initials on the Altered OPA – contributing yet again to the mounting body of evidence establishing that the Beitler Parties committed a fraud on the Court in these proceedings.[8]

---

[5] See Chambers v. NASCO, Inc., 501 U.S. 32, 45–46, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991)("Third, and most relevant here, a court may assess attorney's fees when a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " (citation omitted). …In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party.").

[6] *See* December 14, 2017 Hearing Transcript, p. 12, l. 24 – p. 13, l. 6 [Docket No. 263] (emphasis added).

[7] Of course, we now know that Mr. Beitler's office did in fact transmit the Altered OPA to LSL. *See* Response to Request for Admission No. 26, a true and correct copy of which is attached to the Gauthier Declaration as Exhibit "3."

[8] The issues with respect to the Debtor's forged initials and signature on the Altered OPA, and other aspects of the Beitler Parties' intentional scheme to utilize a fabricated document as a litigation tactic against the Debtor (and the consequences that should flow therefrom), have been briefed in detail in connection with the Motion to Strike and Crime Fraud Brief and are not reiterated here. Rather, this Brief deals solely with the additional evidence adduced at the Crime-Fraud Hearing regarding Ms. Boyd's initials on the Altered OPA, and the submission of expert opinion demonstrating that Mr. Beitler was, in fact, the probable maker of Ms. Boyd's initials. Like the Debtor's forged signature and initials on the Altered OPA, the evidence presented to

This conclusion can be deduced from Mr. Beitler's wholly incredible testimony at the Crime-Fraud Hearing (discussed below) and the expert testimony of Mr. Williams, a handwriting specialist that has examined the Altered OPA, and the initials that appear therein. As set forth in the Williams Declaration (filed concurrently herewith), it is Mr. Williams' expert opinion, based on his review of the Altered OPA, that a) the initials on the Falsified Pages of the Altered OPA are not Ms. Boyd's and b) ***it is highly probable that such initials were in fact made by Mr. Beitler***. [9]

Mr. Williams' expert opinion is wholly consistent with the testimony adduced from the Beitler Parties themselves – and provides the Court with further evidence upon which to find that a fraud on the Court has been committed, and that Mr. Beitler committed perjury as part of this fraudulent effort.

At the Crime-Fraud Hearing, counsel for the Debtor questioned Ms. Boyd about the Altered OPA, specifically asking her whether she recognized her initials that appeared in the document. When Ms. Boyd reviewed the pages that had not been falsified, she recognized and acknowledged that her true initials appeared on these pages, thereby authenticating the same. [*See* April 18, 2018 Hearing Transcript, p. 63, ll. 12-19; p. 64, ll. 4-12]. Of critical importance, however, Ms. Boyd testified that the initials appearing on the Falsified Pages (pages 4, 8, 12 and 17 of the Altered OPA) *were not her initials*. [*See* April 18, 2018 Hearing Transcript, p. 63, ll. 20-25; p. 64, ll. 13-20; p. 65, ll. 6-8]. Ms. Boyd also testified that she did not authorize anyone to put her initials on the Altered OPA. [*See* April 18, 2018 Hearing Transcript, p. 66, ll. 8-10]. This testimony establishes, without a

---

the Court by Ms. Boyd's testimony, established that Ms. Boyd's initials on the Altered OPA were forged. As discussed in detail in the Motion to Strike, Mr. Beitler was the only party with the motivation to create this falsified document and was the only party to benefit from the changes to that document. Mr. Beitler's denials that he had nothing to do with the changes to this document (or the forged initials and signatures thereon) are simply incredible. The consistently false and unbelievable testimony by Mr. Beitler (when considered alongside the testimony of Ms. Boyd and Mr. Williams as to these issues) provides, at a minimum, reasonable grounds for this Court to make the appropriate inferences from the circumstantial evidence that Mr. Beitler perjured himself and continues to perpetrate his fraud on this Court. Moreover, as discussed herein, pursuant to Federal Rule of Evidence ("FRE") 901(b)(3), this Court as the trier of fact, can conduct its own analysis regarding whether Mr. Beitler forged Ms. Boyd's initials on the Altered OPA.

[9] Because the original of the document was not available, Mr. Williams was only able to review copies and his opinion was necessarily restricted to determining that there was a high degree of probability that Mr. Beitler was the person who made Ms. Boyd's forged initials on the Falsified Pages. Mr. Williams previously provided a declaration setting forth his expert opinion that there were material inconsistencies between the Debtor's initials reflected on the Altered OPA, supporting the Debtor's claim that he did not initial the Falsified Pages [Docket No. 222].

doubt, that Ms. Boyd did not initial the Falsified Pages. Someone else forged her initials, without authorization or approval.

There is only one person who stood to benefit from the changes reflected on the Falsified Pages and only one person who had any motive to forge Ms. Boyd's initials on the Altered OPA – Mr. Beitler.

Mr. Beitler's denial of responsibility for the forged initials on the Altered OPA lacks any shred of credibility. At the Crime-Fraud Hearing, counsel for the Debtor questioned Mr. Beitler regarding the initials that appeared on the Altered OPA. Mr. Beitler testified that he had put his initials on each page, thereby authenticating the same. [*See* April 18, 2018 Hearing Transcript, p. 123, ll. 23-25; p. 124, ll. 1-7]. ***Mr. Beitler, however, categorically denied making Ms. Boyd's initials on the Falsified Pages.*** [*See* April 18, 2018 Hearing Transcript, p. 124, ll. 17-21; p. 131, ll. 12-24; p. 133, ll. 15-17]. Mr. Beitler further testified that, while he had no reason to dispute Ms. Boyd's testimony that the initials on the Falsified Pages were not hers [*See* April 18, 2018 Hearing Transcript, p. 128, l. 22 – p. 129, l. 7; p. 133, ll. 6-10], he doggedly continued to assert his "belief" that the initials appearing on the Falsified Pages of the Altered OPA were Ms. Boyd's initials – a stunning position given that Ms. Boyd had testified earlier at the same hearing (at which Mr. Beitler was present) directly to the contrary. [*See* April 18, 2018 Hearing Transcript, p. 126, ll. 11-13; p. 126, l. 19 – p. 127, l. 4].

The foregoing strongly supports a finding that Mr. Beitler not only forged Ms. Boyd's initials – but committed perjury in denying his actions. Indeed, the testimony by Mr. Beitler with respect to Ms. Boyd's initials on the Falsified Pages was so incredible the Court felt compelled to interject, as illustrated by the following excerpt from the Crime-Fraud Hearing: [10]

> COURT: Let me ask you the question. If I put "BB" – if I came over there right now with a pen and wrote "BB," would you think that those are Betsy Boyd's signatures or initials.
> BEITLER: You know, I've seen so many "Bral," "Boyd" signatures, I'm not sure.
> COURT: Okay.
> BEITLER: I mean, if I was blindfolded, maybe.

---

[10] *See* April 18, 2018 Hearing Transcript, p. 127, l. 5 - p. 128, l. 20.

>COURT: If Mr. Klausner came up there and put "BB" on there, would you think that those of Betsy Boyd's initials?
>BEITLER: I guess, your Honor, it would depend on the document to review. I don't know.
>COURT: So any document that Mr. Klausner wrote "BB" on, depending on the document, would mean "Betsy Boyd"?
>BEITLER: No.
>COURT: Well, you see, I'm trying to – and I'm not asking you because of any holographic experience you might have, but if you put side by side page 29 – do that for me. Fold it right over to page 30, and compare and contrast the "BB" and the "BB" that you're saying is Betsy Boyd's initials. As a layman, do you see any significant difference between those signatures?
>BEITLER: Yes.
>COURT: Okay. But your testimony is that they are both Betsy Boyd's?
>BEITLER: I think they are.
>COURT: Why?
>BEITLER: Because, if this was a real document, John and Betsy and I would have signed it.
>COURT: That's one explanation. Another explanation is that somebody might have forged it. Would you agree?
>BEITLER: Perhaps.
>COURT: So somebody could have forged this, too?
>BEITLER: I guess, yes.
>COURT: Okay. So your explanation is just as good as the other, isn't it?
>BEITLER: Yes.

The Court, as the trier of fact, is entitled to make an independent judgment as to the veracity of Mr. Beitler's testimony and to draw inferences from the facts as to the truth of the matter. *See e.g.,* Myers v. Reading Co., 331 U.S. 477, 484, 67 S.Ct. 1334, 1339 (1947); Everett v. S. Pac. Co., 181 F.2d 58, 60 (9th Cir. 1950). The testimony by Mr. Beitler as to Ms. Boyd's initials on the Falsified Pages (and his role in connection therewith) is altogether lacking in credibility, especially when considered with the evidence provided by way of the Williams Declaration. In fact, Mr. Beitler is the forger. His testimony to the contrary is perjury.

Although the Williams Declaration is persuasive, the Court, as the trier of fact, does not need to rely solely on expert testimony to conclude that Mr. Beitler forged Ms. Boyd's initials, and consequently perjured himself when he testified he did not.[11] Federal Rule of Evidence 901(b)(3) specifically authorizes the Court to compare Ms. Boyd's forged initials with Mr. Beitler's

---

[11] There is no dispute that Ms. Boyd did not make the initials on the Falsified Pages (nor authorize anyone to make them on her behalf), nor is there any dispute as to the authenticity of Mr. Beitler's initials on *every page* of the Altered OPA.

5429-000\1226323.1                                7

authenticated initials, and to arrive at its own conclusions. *See e.g.*, Salehsari v. Aalam (In re Aalam), 538 B.R. 812, 829 (Bankr. C.D. Cal. 2015) (Federal Rule of Evidence 901(b)(3) gives the trier of fact the authority to determine the authenticity of signatures by comparing them to an authenticated specimen); Ramsey v. Countrywide Home Loans, Inc. (In re Ramsey), 424 B.R. 217, 221 (Bankr. Miss. 2009) (Federal Rule of Evidence 901(b)(3) allows the trier of fact to compare a controverted signature on an instrument to an authenticated exemplar for the purposes of authenticating the former).

To assist the Court in this comparative analysis, the Debtor prepared Exhibit "A" hereto. The initials on the left side of this document are those of Mr. Beitler. They were taken from the pages of both the Altered OPA and the Mission Medical Investors, LLC operating agreement, both of which were attached to Proof of Claim 14. The initials in the right-hand column are Ms. Boyd's forged initials from the Altered OPA (pages 4, 8 and 12).

When the Court looks at Mr. Beitler's initials, it will note that the "B" has a unique flourish on top that ends in a downward ninety-degree angle. Every Beitler initial inscribed on the pages of the Altered OPA has this same distinctive flourish. Every Mr. Beitler initial in the Mission Medical Investors, LLC operating agreement (which was also attached to Proof of Claim 14) also includes this same flourish, with the ninety-degree bend at the end. *Notably, every forged Ms. Boyd initial carries this same flourish.*

The Debtor would invite the Court to pick up a pen and to attempt to replicate Mr. Beitler's flourish, and in particular the angle at the end, when making the letter "B". This requires an effort. It is not a movement that comes naturally. In sum, this flourish is not only very distinctive, it requires a distinctive movement. Respectfully, this aspect of Mr. Beitler's initials, an aspect that was replicated on Ms. Boyd's forged initials is so distinctive, even unique, that it compels a finding that Mr. Beitler was indeed the person who forged Ms. Boyd's initials on pages 4, 8 and 12 of the Altered OPA.

The Debtor would also invite the Court to compare the "outer" loops of the two "Bs" that appear in the box on the top left, Mr. Beitler's page 4 initials, to the forged initial that appears in the second box on the left side, Ms. Boyd's forged initial from page 8. The curves on the outside loops are also exactly the same. Finally, the Debtor would also ask the Court to note the sweeping line at

5429-000\1226323.1                                      8

the bottom of each letter "B" made by Mr. Beitler. This same sweeping line appears under each of Ms. Boyd's forged letter "B".

The striking similarities between Mr. Beitler's initials and Ms. Boyd's forged initials, coupled with the fact that 1) Mr. Beitler admitted his office was the source of the Altered OPA, 2) Mr. Beitler's office sent the Altered OPA to counsel, knowingly; and 3) Mr. Beitler was the only person who had a reason to falsify the Altered OPA in the manner that it was, since only he benefitted from the changes, is compelling evidence.  In sum, when Mr. Beitler testified that he did not forge Ms. Boyd's signature, he lied. In fact, he did forge Ms. Boyd's initials.

The Debtor would submit that the evidence filed herewith and with the Motion to Strike, along with the testimony elicited at the hearing on April 18, 2018, substantially exceeds a preponderance.  In contrast, Mr. Beitler's "it was just a series of unfortunate mistakes" assertion is incredible.

The Beitler Parties didn't just file four false proofs of claims. The evidence attached to these claims was intentionally and carefully falsified in a manner that points the finger at one person – Mr. Beitler. After these filings, Mr. Beitler and his counsel compounded these wrongs by attempting to exploit these very falsehoods during a deposition through a calculated ruse. This was not a series of unfortunate events. It was an intentional course of conduct. Accordingly, Proofs of Claim 9, 11, 14 and 16 should be stricken, along with the non-dischargeability actions filed on the basis of the same for the reasons stated herein, and in the Motion to Strike. [12]

### B. The Beitler Parties And LSL Should Be Required To Immediately Pay The Debtor's Attorneys' Fees And Costs Related To The Motion To Strike Proceedings

In addition, the Debtor requests that the Court enter an order directing the Beitler Parties and LSL, jointly and severally, to immediately pay to the Debtor's estate all of the attorneys' fees and costs that have been incurred to date in connection with the Motion to Strike.  This is a necessary and appropriate consequence of the fraud (and perjury), harm and delay that has been visited on the Court and these proceedings, and is a sanction expressly authorized by the United States Supreme

---

[12] *See* Initial Motion to Strike, Section III; Reply, Section II; Supplement, Sections III for discussion of these legal principles as applied to the issues here [Docket Nos.  219, 234 and 370].

Court, the Ninth Circuit and under other caselaw cited to and discussed in Section III.C. of the Supplement. *See e.g.,* Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058-59 (9th Cir. 2009); Schwartz v. Kujawa (In re Kujawa), 256 B.R. 598, 610 (B.A.P. 8th Cir. 2000), *aff'd in part, rev'd in part, on other grounds*, 270 F.3d 578 (8th Cir. 2000); In re Mehlhose, 469 B.R. 694, 708-11 (Bankr. E.D. Mich. 2012). These lengthy and involved proceedings (which have now spanned well over 6 months and have involved hundreds of hours of professional time), have been the direct result of the Beitler Parties' use of fabricated evidence and untruthful testimony in this case. The significant expense necessitated by such wrongdoing should properly be borne by those responsible for such transgressions – not by the Debtor's estate generally. As set forth in the Friedman and Lobel Declarations filed concurrently herewith, counsel for the Debtor has incurred no less than the aggregate amount of $470,000 in professional fees and expenses through April 2018, in connection with matters related to the Motion to Strike.[13]

Such fees and costs are not only properly assessed against the Beitler Parties as transgressors, but also against their counsel, LSL– counsel who has asserted (in an obvious effort to protect Mr. Beitler), on countless occasions in these proceedings, that utilizing the fabricated evidence in support of the Beitler Parties' proofs of claims was their "error," their "mistake." Even if the Court accepts LSL's effort to fall on its proverbial sword, assessing the resulting fees and costs against counsel as well is especially appropriate under the circumstances here for a plethora of reasons, including the following: a) LSL's alleges it failed to make inquiry regarding the provenance of the Authentic OPA when it was received in 2014, notwithstanding the fact that the Altered OPA was materially different (and materially more favorable to Mr. Beitler and less favorable to the Debtor) than the Authentic OPA; b) counsel attempted to use the Altered OPA that was attached to Claim 14 to obtain an advantage in a deposition, months after this false claims was filed; and c) notwithstanding LSL's

---

[13] To the extent that the Court requires additional detail or other information regarding the fees and costs that have been incurred in connection with the Motion to Strike, counsel for the Debtor will provide any such detail and/or other information. In addition, as these proceedings remain unresolved to date, the Debtor continues to incur significant additional professional fees and costs. The Debtor also requests payment of such additional accruing amounts, subject to further proof as to amount.

5429-000\1226323.1          10

obligation to do so, counsel failed to amend the proofs of claim that relied on the Altered OPA until *after* the Debtor discovered the fraudulent usage and filed the Motion to Strike (and have still failed to remedy this error in the pending state court action – which relies on the Altered OPA to this day). Such conduct – in conjunction with their client's perjurious and fallacious testimony – necessitated the Motion to Strike and caused inexcusable harm and delay in these proceedings. [14] The fees and expenses related to the Motion to Strike, therefore, are properly assessed jointly and severally against those who created (and claimed ownership of) these unfortunate circumstances.

Such accountability is a just and appropriate sanction for LSL's admitted "errors," which have been acknowledged repeatedly by counsel to the Beitler Parties since the outset of these proceedings (and have been recognized as causing harm by the Court), including in the following instances:

---

[14] The Debtor disputes that the utilization of the Altered OPA was the result of inadvertent attorney error or even gross negligence; rather its use was calculated and intentional. Regardless, LSL's errors and conduct, and attendant delay caused thereby, are sufficient under the circumstances to warrant the award of attorneys' fees and costs against LSL. *See e.g.,* Kujawa, 256 B.R. 598 at 610 (courts have inherent authority to impose sanctions, including awards of attorneys' fees, for improper conduct of the attorneys who appear before them); Mehlhose, 469 B.R. at 711 (Where a party unreasonably prolongs litigation, it is within the court's inherent equitable authority to require that party to pay attorneys' fees).

| **Admission / Statement Regarding Counsel's Error (*emphasis added*)** | **Source of Statement** |
|---|---|
| As a result of an inadvertent *error by counsel*, the exhibits to Claim 14 filed by [Beitler] and Claim 16 filed by [Boyd] included a different version, rather than the operative version, of the [Westcliff] Operating Agreement…Neither Beitler, Boyd, nor BCRS gained or attempted to gain any advantage by this inadvertent *error*.  Nevertheless, Bral seeks to escalate inadvertent *attorney error* … | Response to Initial Motion to Strike, p. 1, ll. 14-16 [Docket No. 226] |
| The attachment of the wrong version of the Westcliff Operating Agreement … as an exhibit to Claims 14 and 16 … was entirely inadvertent and *resulted from counsel's error* … | Response to Initial Motion to Strike, p. 1, ll. 3-9 [Docket No. 226] |
| Beitler and Boyd will [amend their proofs of claim]…to correct the inadvertent *attorney error* by replacing the [Altered OPA]… | Response to Initial Motion to Strike, p. 1, ll. 20-21 [Docket No. 226] |
| …as the appearance of the [Altered OPA] in the attachments to the Subject Claims was the result of *counsel's inadvertent error*… this inadvertent and immaterial *error of counsel*… | Response to Initial Motion to Strike, p. 4, ll. 1-4 [Docket No. 226] |
| Whether or not *counsel's inadvertent error* should have occurred, the *erroneous* attachment of the [Altered OPA]…  As the Hurwitz Declaration explains, the inadvertent attachment of the [Altered OPA] to the Subject Claims result from one of the [Beitler Parties]' attorneys *mistakenly* and unintentionally sending the [Altered OPA], rather than the Operative Version, to his co-counsel in the course of gathering exhibits to be attached to the [Beitler Parties]' various proofs of claims. | Response to Initial Motion to Strike, p. 5, ll. 21-23 [Docket No. 226]<br><br>Declaration of Mark Hurwitz, ¶ 8, ll.12-14 [Docket No. 229] |
| As a result of an inadvertent *mistake by counsel*, … | Response to Initial Motion to Strike, p. 7, ll. 4-5 [Docket No. 226] |
| LALLAS:  But Mr. Hurwitz, my colleague and partner, has taken *complete ownership* of the inadvertent *attorney error*. He attached – he sent the wrong exhibit to our colleague, Mr. Klausner, and his colleague, to be attached to the proof of claim. | December 14, 2017 Hearing Transcript, p. 15, l. 21 – p. 16, l. 12 [Docket No. 263] |
| LALLAS:  The only admissible evidence is there's an inadvertent *attorney error* here, and that's undisputed. | December 14, 2017 Hearing Transcript, p. 22, ll. 2-3 [Docket No. 263] |
| LALLAS:  Here we have no comparable acts or omissions other than providing the wrong exhibit for a proof of claim.  Completely innocent, and for which Mr. Hurwitz and our colleagues have taken *complete ownership*. | December 14, 2017 Hearing Transcript, p. 27, l. 25 – p. 28, l. 3 [Docket No. 263] |
| COURT:  Do you think that it is important for the Court to understand in determining this [Motion to Strike] the providence of [the Altered OPA]?<br>LALLAS:  I do not.<br>COURT:  Okay.  Why not?<br>LALLAS:  Because to the extent it was provided, the undisputed facts are it was provided as a result of *attorney error*. Inadvertent *attorney error*. | December 14, 2017 Hearing Transcript, p. 27, l. 25 – p. 28, l. 3 [Docket No. 263]<br><br>Declaration of Tom Lallas, ¶ 75, ll. 12-16 [Docket No. 385] |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5429-000\1226323.1           12

| | |
|---|---|
| COURT: If Mr. O'Keefe had not discovered the *error*, what would you have done in that deposition? | December 14, 2017 Hearing Transcript, p. 35, ll. 9-10 [Docket No. 263]<br><br>Declaration of Tom Lallas, ¶ 77, ll. 7-8 [Docket No. 385] |
| LALLAS: I want it to be unambiguously clear in this record, that *the incorrect operating agreement came from my law firm* through Mr. Hurwitz, to Mr. Klausner's law firm, because they were preparing the proofs of claim. So, that is not intended to be an implication of any act or omission by M. Klausner's law firm. | December 14, 2017 Hearing Transcript, p. 42, ll. 15-20 [Docket No. 263] |
| COURT: *It was, according to Mr. Lallas and Mr. Klausner, attorney inadvertence. Okay. That inadvertence itself still caused harm, right?* Not – again, with no bad act, not malice, no malicious intent. It was inadvertence. Okay. … I'm going to say that because of attorney inadvertence, and Judge Clarkson's now concerned of possible fraud on the Court, that we are stayed. We are in a holding pattern until we resolve this. | December 14, 2017 Hearing Transcript, p. 51, ll. 12-15; p. 52, ll. 11-15 [Docket No. 263] |
| COURT: *And, again, I am so unhappy – no, that's not the right – disappointed that this incident has stopped the forward progress of the overall case at this point. I'm just – because of attorney inadvertence.* But it happens. Things like this happen. And I regret it. I'm disappointed. I like things to move on. But when you get to a level of this concern, I think it's worthwhile. | December 14, 2017 Hearing Transcript, p. 57, ll. 19-23 [Docket No. 263] |
| As a result of an inadvertent *error by counsel*, the exhibits to Claim 14 filed by Beitler and Claim 16 filed by Boyd included a different version, rather than the operative version, of the Operating Agreement of Westcliff Investors, LLC ("Westcliff") [fn omitted]. Neither Beitler, Boyd, nor BCRS gained or attempted to gain any advantage by this inadvertent *error*. Nevertheless, . Bral seeks to escalate inadvertent *attorney error* … | Crime-Fraud Reply, p. 1, ll. 7-14 [Docket No. 384] |
| The actual evidence demonstrates that the inclusion of a different version of the [OPA] was caused by *mistake* and inadvertence … | Crime-Fraud Reply, p. 8, ll. 16-18 [Docket No. 384] |
| …the usage of the [Altered OPA] was a *mistake* … | Crime-Fraud Reply, p. 9, ll. 17-18 [Docket No. 384] |
| … the use of the [Altered OPA] in this case was a *mistake*. | Crime-Fraud Reply, p. 9, ll. 24-25 [Docket No. 384] |
| The only, inescapable, and inevitable conclusion is that the use of [the Altered OPA] in the deposition and as an attachment to Proofs of Claim was the result of *mistake* and attorney inadvertence. | Declaration of Tom Lallas, ¶ 10, ll. 16-18] [Docket No. 385] |
| But Hurwitz, my colleague and partner, has taken *complete ownership* of the inadvertent *attorney error*. He sent the wrong exhibit to our colleague, Klausner, and his colleague, to be attached to the proof of claim.. | Declaration of Tom Lallas, ¶ 31, ll. 22-24] [Docket No. 385] |
| The only admissible evidence is there's an inadvertent *attorney error* here, and that's undisputed. | Declaration of Tom Lallas, ¶ 53, ll. 26-27 [Docket No. 385] |
| And I looked at what [Debtor's counsel] presented to me [the Altered OPA] and I agreed, this is a *mistake*. | Declaration of Tom Lallas, ¶ 56, ll. 10-11] [Docket No. 385] |
| Here we have no comparable acts or omissions other than providing the wrong exhibit for a Proof of Claim….for which Hurwitz and our colleagues have taken *complete ownership*. | Declaration of Tom Lallas, ¶ 70, ll. 12-14] [Docket No. 385] |

| | |
|---|---|
| There is no evidence that anyone at LNBYB has anything at all to do with the [Altered OPA], other than attaching it to Claims 14 and 16 after LSL *inadvertently transmitted* the [Altered OPA] rather than the operative version for use as an Exhibit to Claims 14 and 16. | Declaration of Tom Lallas, ¶ 81, ll. 25-26 [Docket No. 385] |
| LALLAS:  Yes.  They were *erroneously attached* to a proof of claim, and my partner, Mr. Hurwitz, has acknowledged that that was his *mistake*. | April 18, 2018 Hearing Transcript, p. 195, ll. 12-14 [Gauthier Dec. Exhibit "1"] |
| LALLAS:  And you have in the record Mr. Hurwitz's declaration that the inauthentic operating agreement was *inadvertently attached* to the proof of claim. | April 18, 2018 Hearing Transcript, p. 213, ll. 22-25 [Gauthier Dec. Exhibit "1"] |
| LALLAS:  Now, Mr. Hurwitz's testimony is undisputed, uncontradicted, undenied and unimpeached.  He did not intend to attach the wrong Westcliff operating agreement to the proofs of claim.  It was a *mistake*. | May 3, 2018 Hearing Transcript, p. 70, ll. 2-5 [Gauthier Dec. Exhibit "2"] |

The Beitler Parties and their counsel must take ownership of the consequences flowing from their actions, including the financial burden that their actions have created.  It would be highly inequitable to allow such costs to be shouldered singularly by the Debtor and his estate.  The Debtor – as the prevailing party in connection with the Crime-Fraud issues and the aggrieved party herein – is properly awarded his fees and costs, jointly and severally against the Beitler Parties and LSL as a sanction for the submission and use of fabricated evidence and as a consequence of the ongoing fraud on the Court.

### III.    CONCLUSION

Based on the foregoing, and for the reasons previously set forth in the Motion to Strike and in connection with the Crime-Fraud Hearing, the Debtor respectfully requests that the Court strike and disallow Claim Nos. 14, 16, 9 and 11, and the related nondischargeability actions, as a sanction for the Beitler Parties' wrongdoing.  In addition, the Debtor requests that the Court order that the Beitler

/ / /

/ / /

Parties and LSL, jointly and severally, pay to the Debtor's estate the attorneys' fees and costs incurred in connection with all disputes related to the Motion to Strike.

Respectfully submitted,

Dated: May 24, 2018    PACHULSKI STANG ZIEHL & JONES LLP

By:    */s/ William N. Lobel*
William N. Lobel
Special Reorganization Counsel for John J. Bral, Debtor and Debtor-in-Possession

Dated: May 24, 2018    SHULMAN HODGES & BASTIAN LLP

By:    */s/ Alan J. Friedman*
Alan J. Friedman
Attorneys for John J. Bral, Debtor and Debtor-in-Possession

5429-000\1226323.1    15

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 650 Town Center Drive, Suite 1500, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **BRIEF REGARDING FURTHER EVIDENCE IN SUPPORT OF** *MOTION SEEKING: (1) DISALLOWANCE OF CLAIMS 14 AND 16; AND (2) STRIKING CLAIMS ALLEGED IN ADVERSARY NOS. 8:17-AP-01094 AND 8:17-AP-01092 ON THE GROUNDS THE SAME WERE FILED BASED UPON FALSIFIED EVIDENCE* **[DOCKET NO. 219], AS AMENDED AND SUPPLEMENTED [DOCKET NO. 370]; AND REQUEST FOR IMMEDIATE PAYMENT OF THE DEBTOR'S ATTORNEYS' FEES AND COSTS RELATED TO THE MOTION TO STRIKE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On May 24, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) May 24, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/24/2018 | Jennifer O'Keefe | /s/ Jennifer O'Keefe |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

## SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

- **Thomas H Casey**  kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**  afriedman@shbllp.com, lgauthier@shbllp.com
- **Daniel K Fujimoto**  wdk@wolffirm.com
- **Beth Gaschen**  bgaschen@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- **Michael J Hauser**  michael.hauser@usdoj.gov
- **Mark D Hurwitz**  mhurwitz@lsl-la.com, dsmall@lsl-la.com,kfinn@lsl-la.com
- **Gary E Klausner**  gek@lnbyb.com
- **William N Lobel**  wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Kathleen J McCarthy**  kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**  Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**  kjm@lnbrb.com
- **Babak Samini**  saminicourtnotice@gmail.com, bsamini@saminilaw.com;nprado@saminilaw.com;lnavarro@saminilaw.com;swatts@saminilaw.com
- **Edward G Schloss**  egs2@ix.netcom.com
- **Valerie Smith**  claims@recoverycorp.com
- **Daniel B Spitzer**  dspitzer@spitzeresq.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**  ecfnotices@ascensioncapitalgroup.com

## SERVED VIA FIRST CLASS MAIL:

The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

Office of the United States Trustee
411 W. Fourth Street, Suite 7160
Santa Ana, CA 92701-4593