GARY E. KLAUSNER (SBN 69077)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: gek@lnbyb.com; kjm@lnbyb.com

TOM LALLAS (SBN 66512)
MARK D. HURWITZ (SBN 151159)
LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
815 Moraga Drive
Los Angeles, California 90049-1633
Telephone: (310) 471-3000; Facsimile: (310 471-7990
Email:  tlallas@lsl-la.com; mhurwitz@lsl-la.com

Attorneys for Creditors Barry Beitler; Cannae Financial, LLC;
AFG Investment Fund 7, LLC; BAB 8 LLC; Beitler & Associates, Inc. dba
Beitler Commercial Realty Services; Steward Financial LLC; and Betsy Boyd

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>JOHN JEAN BRAL<br><br>            Debtor and Debtor-<br>            in-Possession. | Case No. 8:17-bk-10706-SC<br><br>Chapter 11<br><br>**BEITLER CREDITORS' OBJECTIONS TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN**<br><br>Disclosure Statement Hearing:<br>Date:       July 19, 2018<br>Time:      11:00 a.m.<br>Courtroom:  5C<br>            411 West Fourth Street<br>            Santa Ana, CA 92701 |

**TABLE OF CONTENTS**

I.       PRELIMINARY STATEMENT ................................................................2

II.      THE BEITLER CREDITORS' CLAIMS....................................................3

III.     THE DEBTOR'S PLANS AND DISCLOSURE STATEMENTS ...........5

         A.      The Original Plan and Disclosure Statement.................................5

         B.      The Second Plan And Second Disclosure Statement .....................5

         C.      The Debtor's Current Plan And Current Disclosure Statement .................6

IV.      THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE
         INFORMATION .........................................................................................7

         A.      A Disclosure Statement Must Provide Creditors With Adequate
                 Information .......................................................................................7

         B.      The Disclosure Statement Uses Unreliable, Unsupportable, And
                 Misleading Assumptions To Create The Illusion That The Debtor's
                 Estate May Have A Surplus ...........................................................8

         C.      The Debtor's Liquidation Analysis And Projections Are Inadequate ........10

V.       THE DISCLOSURE STATEMENT DESCRIBES A PLAN THAT IS
         FACIALLY UNCONFIRMABLE ..............................................................11

         A.      Michelle Easton's Class 3 Claim Has Been Artificially Impaired ..............13

         B.      There Is No Legitimate Or Business Justification For Separately
                 Classifying The Beitler Creditors' Unsecured Claim From All Other
                 Unsecured Claims............................................................................14

VI.      CONCLUSION ..........................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Atlanta West VI*,
    91 B.R. 620 (Bankr. N.D. Ga. 1988) ......................................................................... 11

*In re Brandon Mills Farms, Ltd.*,
    37 B.R. 190 (Bankr. N.D. Ga. 1984) ........................................................................... 7

*In re California Fidelity, Inc.*,
    198 B.R. 567 (9th Cir. BAP 1996) ............................................................................. 7

*In re Cardinal Congregate I*,
    121 B.R. 760 (Bankr. S.D. Ohio 1990) ..................................................................... 7

*Conn. Gen. Life Ins. Co. v. Hotel Assocs. of Tucson (In re Hotel Assocs. of Tucson)*,
    165 B.R. 470 (B.A.P. 9th Cir. 1994) ......................................................................... 13

*In re Curtis Center Ltd. P'ship*,
    195 B.R. 631 (Bankr. E.D. Pa. 1996) ....................................................................... 15

*In re Estate of LaRossa*,
    2009 WL 1172843 (Bankr. N.D. W. Va. March 25, 2009) ....................................... 13

*In re Ferretti*,
    128 B.R. 16 (Bankr. D. N.H. 1991) ........................................................................... 7

*In re Hirt*,
    97 B.R. 981 (Bankr. E.D. Wis. 1989) ....................................................................... 7

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2nd Cir. 1988) ................................................................................... 12

*In re Mastercraft Record Plating, Inc.*,
    32 B.R. 106 ................................................................................................................ 14

*In re Midway Investments, Ltd.*,
    187 B.R. 382 (Bankr. S.D. Fla. 1995) ....................................................................... 15

*In re Paolini*,
    312 B.R. 295 (Bankr. E.D. Va. 2004) ....................................................................... 14

*In re Rexford Properties LLC*,
    558 B.R. 352 (Bankr. C.D. Cal. 2016) ....................................................................... 14

*In re Swartville, LLC,*
    2012 WL 3564171 (Bankr. E.D. N.C., August 17, 2012) ........................................................13

*In re Tucson Self-Storage, Inc.,*
    166 B.R. 892 (B.A.P. 9th Cir. 1994) ........................................................................................14

*In re Weiss-Wolf, Inc.,*
    59 B.R. 653 (Bankr. S.D.N.Y. 1986) ........................................................................................15

**Federal Statutes**

11 U.S.C.§ 1122 ........................................................................................................................12, 14

11 U.S.C.§ 1123 ........................................................................................................................12

11 U.S.C.§ 1129(a) ....................................................................................................................12, 13, 14

Barry Beitler, Cannae Financial, LLC, AFG Investment Fund 7, LLC, BAB 8, LLC, Beitler & Associates, Inc. dba Beitler Commercial Realty Services, Steward Financial LLC, and Betsy Boyd (collectively, the "Beitler Creditors") hereby file these Objections to the Second Amended Disclosure Statement (the "Disclosure Statement") [Docket No. 470] describing the Second Amended Chapter 11 Plan (the "Plan") [Docket No. 469] proposed by John Jean Bral (the "Debtor").[1]

## I.    PRELIMINARY STATEMENT

During the fifteen months since this case was filed, the Debtor has failed to liquidate a single asset, produce any net revenue or conduct any business. At the same time, the Debtor has incurred somewhere in excess of $2 million of professional fees, which will substantially reduce the amount of money which will eventually be available for creditors, of which the Beitler Creditors represent approximately ninety percent (90%). The Debtor's proposed Plan is an unnecessary and wasteful attempt to maintain possession, and control the disposition of assets which, as a matter of practical reality and fairness, belong to his creditors.

After over a year in bankruptcy, the Debtor initially proposed a chapter 11 plan of liquidation, which had no definite effective date, and would have allowed the Debtor to delay, indefinitely, the liquidation of the Debtor's assets, while continuing to incur substantial administrative expenses. The Beitler Creditors objected to the first amended disclosure statement [Docket No. 438] for that and additional reasons.

The Debtor's current Plan and Disclosure Statement do not cure all of the flaws in the Debtor's former disclosure statement and plan. The Debtor's new-found belief that this estate can be a surplus estate, in contradiction to his own prior representations, was invented to create a justification for allowing him to remain in control. In truth, this contention is based upon hopelessly unrealistic assumptions, and the hopeless nature of the Debtors' unrealistic assumptions is not adequately disclosed. *Specifically, the Debtor's analysis of his estate as a*

---

[1] Capitalized terms not otherwise defined have the same meaning ascribed to such terms in the Plan.

*surplus estate relies upon ascribing no value whatsoever to any of the Beitler Creditors'*
*unsecured claims.*

The Debtor has no realistic chance of eliminating all of the Beitler Creditors' claims. Nor, are the Debtor's assumptions regarding the value of his interest in two limited liability companies (his most valuable assets) realistic. Accordingly, the Debtor's claim that he will pay creditors in full, pay all of his administrative and professional fees and have a surplus is, at the very least, wishful thinking and, at worst, a knowing misrepresentation of material facts. In reality (as opposed to the fiction which the Debtor would like to perpetuate), this is not a full pay case, and there is no reason why the estate and creditors should be subjected to the additional costs, burdens and uncertainties of the Debtor's Plan and an expensive confirmation trial.

## II.    THE BEITLER CREDITORS' CLAIMS

The Beitler Creditors have filed the following claims against the Debtor:

1.    Claim No. 9, as amended, by Beitler & Associates dba Beitler Commercial Realty Services ("BCRS"), as a general unsecured claim in an amount to be determined[2];

2.    Claim No. 10, by Barry Beitler, as a secured claim, based on a judgment, in the amount of at least $2,589,725.46[3];

3.    Claim No. 11, as amended, by Barry Beitler, as a general unsecured claim in an amount to be determined[4];

4.    Claim No. 12, by Barry Beitler, as a general unsecured claim, based on an attorney fee award, in the amount of at least $71,705.68[5];

5.    Claim No. 13, by Barry Beitler, as a secured claim, based on a judgment, in the amount of at least $788,798.91[6];

6.    Claim No. 14, as amended, by Barry Beitler, as a general unsecured claim in an

---

[2] Designated as a class 13 creditor under the Debtor's Plan.
[3] Designated as a class 6 creditor under the Debtor's Plan.
[4] Designated as a class 13 creditor under the Debtor's Plan.
[5] Appears to be designated as a class 9 creditor and a class 12 creditor under the Debtor's Plan.
[6] Designated as a class 5 creditor under the Debtor's Plan.

amount to be determined[7];

      7.    Claim No. 15, by Barry Beitler, as a general unsecured claim in the amount of at least $40,663.33[8];

      8.    Claim No. 16, as amended, by Betsy Boyd, as a general unsecured claim in an amount to be determined[9];

      9.    Claim No. 17, by Cannae Financial LLC, as a secured claim based on a judgment, in the amount of at least $394,483.12[10];

      10.    Claim No. 18, by Cannae Financial LLC, as a general unsecured claim in the amount of at least $1,421,510.01[11];

      11.    Claim No. 19, filed by Steward Financial LLC, as a general unsecured claim in the amount of at least $1,100,000[12];

      12.    Claim No. 20, filed by Steward Financial LLC, as a general unsecured claim in the amount of at least $2,593,638.81[13];

      13.    Claim No. 21, filed by Barry Beitler, as a general unsecured claim in the amount of at least $198,065.35[14]; and

      14.    Claim No. 23, filed by BCRS, as a general unsecured claim in an amount to be determined.

**The Beitler Creditors' secured claims total at least $3,773,007.49, and their unsecured claims total at least $5,425,583.18 (not including claims with unliquidated amounts). Thus, the Beitler Creditors' claims that are *not* subject to the Motion to Strike (which are Claims 9, 11, 14 and 16) total at least $9,198,590.67, not including interest, attorneys' fees and costs, and other applicable charges. Claim Nos. 10 and 13 are based on**

---

[7] Designated as a class 13 creditor under the Debtor's Plan.
[8] Designated as a class 12 creditor under the Debtor's Plan.
[9] Designated as a class 13 creditor under the Debtor's Plan.
[10] Designated as a class 7 creditor under the Debtor's Plan.
[11] Designated as a class 11 creditor under the Debtor's Plan.
[12] Designated as a class 10 creditor under the Debtor's Plan.
[13] Designated as a class 10 creditor under the Debtor's Plan.
[14] Designated as a class 12 creditor under the Debtor's Plan.

1  **judgments obtained by Mr. Beitler against the Debtor, Claim No. 12 is based on an attorney**

2  **fee award obtained by Mr. Beitler against the Debtor, and Claim No. 17 is based on a**

3  **judgment obtained by Cannae Financial LLC against the Debtor.**

4      Other than the Beitler Creditors' claims totaling more than $9 million (not including the

5  claims in amounts that are to be determined), the Debtor's estate has secured claims totaling

6  $340,730.06, all of which are secured by the Debtor's home, and approximately eight general

7  unsecured claims totaling $867,665.

8      This entire case has, essentially, involved the Debtor's disputes with the Beitler Creditors.

9          **III.    THE DEBTOR'S PLANS AND DISCLOSURE STATEMENTS**

10  **A.    The Original Plan and Disclosure Statement**

11      The Debtor filed a "Chapter 11 Plan" [Docket No. 86] (the "Original Plan") on June 23,

12  2017.  The Original Plan classified all general unsecured claims (other than a claim based on a

13  vehicle lease) in a single class.  The Beitler Creditors' unsecured claims were properly classified

14  with the other general unsecured creditors.

15  **B.    The Second Plan And Second Disclosure Statement**

16      On April 30, 2017, the Debtor filed his First Amended Plan (the "Second Plan") and First

17  Amended Disclosure Statement [Docket No. 415] (the "Second Disclosure Statement").

18      The Second Disclosure Statement states that "depending on the outcome of the claims

19  objection and lien avoidance process and the amount of proceeds ultimately available to the

20  Debtor….the distribution to holders of Allowed Unsecured Claims is estimated to be between

21  11.2% to 96.2%." *See* Second Disclosure Statement, p. 2, ll. 18 – 21.

22      That is, even under the Debtor's "best-case" scenario, in which virtually all of the Beitler

23  Creditors' unsecured claims were disallowed in their entirety, the Debtor conceded that creditors

24  would still not be paid in full, and that he was "out of the money".  Despite this conclusion, the

25  Debtor's Second Plan indefinitely delayed the liquidation of the Debtor's assets and allowed the

26  Debtor to continue using property that belongs to his creditors.  There were no deadlines or

27  timeframes provided by the Second Plan.  There was no explanation as to how and when the

28  Debtor's assets would be marketed and sold.  The Debtor's own projections were inadequate

1  because they did not take into account the timing of any sales, or the projected value of assets at

2  the actual time of a sale.  Indeed, the Debtor ascribed a value to his interest in the limited liability

3  company known as Mission Medical Investors, LLC ("Mission") which was based on a future

4  development project that had not been approved or financed, and which was subject to a litany of

5  contingencies.

6       Under the Debtor's Second Plan, the Debtor, "in the Debtor's discretion" *(see* Disclosure

7  Statement, p. 61, l. 3), could have decided to delay the monetization of his assets for a number of

8  years.  The Debtor's principal assets are his claimed membership interests in two closely held

9  entities, Westcliff and Mission.  The Second Plan conditioned the liquidation of the Debtor's non-

10  Westcliff/Mission assets, which the Debtor values at over $500,000  *(see* Disclosure Statement, p.

11  60, ll. 25 – 26), as well as his malpractice claims against his former counsel, on first monetizing

12  the Debtor's disputed membership interests in Mission and Westcliff, assets that are much more

13  difficult and complicated to monetize.  Therefore, under the Debtor's Second Plan, there was no

14  way for creditors to know when or if they would ever receive distributions, and no way for

15  creditors to compel the Debtor to liquidate his non-Westcliff/Mission assets.  On these bases, as

16  well as others, the Beitler Creditors filed objections [Docket No. 438] to the adequacy of

17  information set forth in the Disclosure Statement.

18       The Court ordered the Debtor to file an amended plan and disclosure statement.

19  **C.    The Debtor's Current Plan And Current Disclosure Statement**

20       On June 8, 2018, the Debtor filed his current Plan and current Disclosure Statement.

21  Based on the Supplemental Declaration of Adam Meislik, the Disclosure Statement now provides

22  that "depending on the outcome of the claims objection and lien avoidance process and the

23  amounts of proceeds ultimately available to the Debtor from the above-referenced sources, the

24  distribution to holders of Allowed Unsecured Claims is estimated to be between 20% and 100%."

25  *See* Disclosure Statement, p. 10, ll. 25 – 28.  Mr. Meislik's revised analysis was obviously

26  prepared to confront the problem created by his original projection (which he asserted to be true

27  and accurate) which showed the Debtor to be "out of the money" – a position which the Debtor

28  has taken throughout this case.

1    For the reasons set forth herein, the Disclosure Statement still does not contain adequate

2 information and describes an unconfirmable Plan.

3        IV.    **THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE**

4                                **INFORMATION**

5    A.    **A Disclosure Statement Must Provide Creditors With Adequate Information**

6        Section 1125(b) requires that prior to the solicitation of acceptances of a Chapter 11 plan,

7 each impaired claimant and interest holder must receive a disclosure statement that has been

8 previously approved by the court as containing "adequate information" which is:

9            [I]nformation of a kind, and in sufficient detail, as far as is reasonably

10           practicable in light of the nature and history of the debtor and the condition

11           of the debtor's books and records, that would enable a hypothetical investor

12           typical of holders of claims or interests of the relevant class to make an

13           informed judgment about the plan . . . .    11 U.S.C. §1125(a)(1).

14       The Disclosure Statement is the Bankruptcy Code's tool to provide creditors with

15 information to decide how to vote on, and whether to object to, a plan. *See In re California*

16 *Fidelity, Inc.*, 198 B.R. 567, 571 (9th Cir. BAP 1996).  Fundamental to the Chapter 11 process is

17 full and complete disclosure. *In re Brandon Mills Farms, Ltd.*, 37 B.R. 190, 192 (Bankr. N.D. Ga.

18 1984) (stating that the purpose of the disclosure statement is to inform creditors as fully as

19 possible).  In order for creditors to be able to exercise their rights, a disclosure statement must be

20 clear and comprehensible before it can be approved by a court.  *In re Ferretti*, 128 B.R. 16, 19

21 (Bankr. D. N.H. 1991).  "Where inaccuracies are so numerous or significant that creditors or

22 interest holders can no longer make an informed judgment about whether to accept or reject the

23 proposed plan of reorganization, approval of the Disclosure Statement must be denied." *In re*

24 *Cardinal Congregate I*, 121 B.R. 760, 766-767 (Bankr. S.D. Ohio 1990); *see also In re Hirt*, 97

25 B.R. 981, 983 (Bankr. E.D. Wis. 1989) (denying the approval of a disclosure statement where the

26 document contained numerous inaccuracies and because the plan proponent failed to provide

27 detailed financial information).  Without full disclosure of adequate information, creditors and

28 other parties in interest are unable to exercise their voting rights and their rights to object to

confirmation of the Plan.

Because this Plan provides for a liquidation of the Debtor's assets, and not for any type of restructuring, the only choice for creditors is whether to vote for the Plan and allow the Debtor to maintain control of his assets and their disposition, or to reject the Plan and opt for a Chapter 7 liquidation in which a trustee would have that responsibility.

**B.      The Disclosure Statement Uses Unreliable, Unsupportable, And Misleading Assumptions To Create The Illusion That The Debtor's Estate May Have A Surplus.**

There are four scenarios presented by the Disclosure Statement, as set forth in Exhibit A to the Disclosure Statement.[15]   In two of those scenarios, there is no surplus estate, and general unsecured creditors are projected to recover approximately 48.1% of their claims (scenario 1) or 20.3% of their claims (scenario 2).   The other two scenarios (scenario 3 and scenario 4), in which Mr. Meislik predicts a surplus estate, rely upon the following absurd and contrived assumptions, among others:

**Assumption 1:**   The court will shift the burden of paying $470,000 of the estate's professional fees from the estate to the Beitler Creditors and their counsel.   There is no basis for that assumption.

**Assumption 2:**   Nearly $5.5 million of the Beitler Creditors' general unsecured claims (Claim Nos. 15, 18, 19, 20, and 21), not including the claims that are subject to the Motion to Strike (Claim Nos. 9, 11, 14, and 16), will be disallowed in their entirety.   In other words, in scenarios 3 and 4, Mr. Meislik fails to ascribe any value whatsoever to almost $5.5 million of general unsecured claims. There is no basis for that assumption.

**Assumption 3:**   The Beitler Creditors' claims that have been filed in amounts to be determined (Claim Nos. 9, 11, 14, 16, and 23[16]) have no value whatsoever based, presumably, on the Motion to Strike.

---

[15] A true and correct copy of Exhibit A to the Supplemental Declaration is attached as Exhibit 1 to the annexed Declaration of Gary E. Klausner.

[16] Claim No. 23 was filed on May 24, 2018, so it is understandable that Claim No. 23 is not considered in the Supplemental Declaration.   But there is no reason to ascribe no value whatsoever to all of the other claims that have been filed in undetermined amounts.

**Assumption 4:** The Debtor will receive cash proceeds of $1,263,755 from the sale of the *unimproved* land owned by Mission. *See Declaration of Adam Meislik In Support Of Approval Of First Amended Disclosure Statement Describing First Amended Chapter 11 Plan And Confirmation Of First Amended Chapter 11 Plan* [Docket No. 417], Exhibit A, page 5 of 7.

That estimate is based on the assumption that the *unimproved* land is, can be, and eventually will be, improved as a hotel building, but fails to consider *any* of the impediments to improving that property. The impediments include those discussed by the Debtor's own appraiser, Scott Pfyl, that "the hotel land value is hypothetical because the required lot split subdivision has not been recorded as of the appraisal date", and the estimate of "the cost to entitle the allocated portion of the site to be developed with a hotel…is an extraordinary assumption." *See Declaration Of Scott Pfyl, MAI, Of BBG, Inc., Regarding Appraisals Of: (1) Westcliff Medical Building; (2) Mission Medical Building et al.* [Docket No. 419], Exhibit D.

The development of Mission's unimproved land will require, among other things, the following events, none of which are likely to occur and the uncertainty of which has not been disclosed or considered by the Debtor or Mr. Meislik:

(1) an agreement with the adjacent landowner;

(2) consent by the existing lender as to a reduction of collateral and a modification of the loan, which is unlikely to be obtained;

(3) confirmation that entitlement and other pre-development work can be funded and obtained to establish additional value;

(4) any change to the existing loan will require the consent of guarantors or a new loan, for which the Debtor will likely not qualify;

(5) modification of Mission's operating agreement regarding the scope and purpose of the Mission investment; and

(6) the stability of property values in an economic environment where interest rates are increasing.

Only under the improbable assumptions utilized by the Debtor will the Debtor's "surplus estate" scenario ever have a chance of being realized, and that is only if all of the Debtor's

1    assumptions regarding the value of his interests in Mission and Westcliff, with which the Beitler

2    Creditors disagree, are correct.  If there is no surplus in this case, or if it is highly unlikely for

3    there to be a surplus in this case, then: (1) creditors should know that when determining whether

4    to vote for or against the Plan; and (2) why should creditors agree to any plan when that is not

5    what 90% of the creditor body wants? It is only in the untenable and unsupportable scenario

6    where more than $5 million of claims are disallowed, that the Debtor may have even a remote

7    chance of seeing any surplus in this case.  However, the Disclosure Statement does not disclose

8    the remote and unrealistic nature of the "surplus estate" scenarios being peddled by the Debtor.

9         The Debtor's contention that "there is *more than a distinct possibility* that the Debtor's

10    estate will be a surplus estate" (*see* Supplemental Declaration, p. 2, ll. 23 – 24 (emphasis added)),

11    is meaningless.  The term "distinct possibility" is a vague and ambiguous term that could mean

12    virtually anything, and it is meaningless in this context because it fails to provide any

13    understanding of the actual *probability* of the Debtor's estate being a solvent estate.  A "distinct

14    possibility" could mean anything greater than 0%, including a less than 1% chance.  "More than

15    an unmistakeable possibility" could also mean virtually anything.   Notably, the Disclosure

16    Statement fails to provide any analysis of the actual *likelihood* or *probability* of achieving a

17    surplus estate in this case.  The Debtor's and Mr. Meislik's "distinct possibility" that $5 million in

18    claims will disappear is unsupported both legally and factually.

19    **C.    The Debtor's Liquidation Analysis And Projections Are Inadequate**

20         The Debtor's liquidation analysis and projections are inadequate for, at least, the

21    following reasons:

22         1.    The liquidation analysis includes as a chapter 7 expense, chapter 11 administrative

23    expenses in the amount of $2.5 million, despite the fact that those expenses, presumably, include

24    the expense of confirming a plan, which expenses could be wholly avoided if this case were

25    converted to chapter 7 now.  The Debtor's inclusion of chapter 11 plan confirmation expenses in

26    his analysis of what creditors would receive in a chapter 7 is misleading and does not accurately

27    depict what would occur if this case is converted to chapter 7 now.

28         2.    As discussed above, the Debtor's assumptions regarding the value of Mission's

unimproved land are not feasible, and the Debtor has failed to disclose what would occur if his assumptions are wrong.

3.    Another consideration which the Debtor ignores, when comparing his Plan to a Chapter 7 liquidation, is the Debtor's continued wasting of estate assets on his unnecessary litigation with the Beitler Creditors, which has already cost the estate millions of dollars.  The Beitler Creditors did not force the Debtor to file bankruptcy; he chose to do so in the face of mounting judgments entered against him in state court litigation.  The Beitler Creditors did not force the Debtor to object to all but one of the Beitler Creditors' claims, or to bring a Motion to Strike four of the Beitler Creditors' claims, based on the inadvertent attachment of an incorrect operating agreement for Westcliff, and to risk hundreds of thousands of dollars on a preposterous "crime-fraud" allegation.  The Debtor has not shown a willingness to protect his creditors from such unnecessary expense; but his doing so suggests that he has recognized that he has no financial stake in this case and would prefer to self-immolate his assets than have the Beitler Creditors share in them. These facts should be shared with the non-Beitler Creditors so that they can make an informed decision as to whether to vote to allow the Debtor to continue to control the disposition of the assets of the estate and to use his independent judgment in deciding how to allocate estate assets.

## V.    THE DISCLOSURE STATEMENT DESCRIBES A PLAN THAT IS FACIALLY UNCONFIRMABLE

To the extent that a disclosure statement describes a plan that is unconfirmable, it should not be approved. *See In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988) (denying approval of disclosure statement describing unconfirmable plan "to avoid . . . a wasteful and fruitless exercise" that would "further delay a debtor's attempts to reorganize").

The Beitler Creditors understood from the Court's comments at the hearing on the Debtor's Second Disclosure Statement that confirmation issues would be addressed at a plan confirmation hearing.  Therefore, the Beitler Creditors have not addressed in this pleading all of the issues with confirmation of the Plan, and reserve all of their rights in connection with arguing that the Plan is unconfirmable.

Nevertheless, the Beitler Creditors would like to highlight the following critical issue regarding the Plan's classification of claims, which is impermissible and which should be addressed now, in order to avoid having the Debtor sending out the ballots, and litigating all the other Plan confirmation issues, only to have the Court deny confirmation because of the Plan's improper classification of claims. The Plan violates, among other provisions of the Bankruptcy Code: section 1129(a)(3), which requires that a plan be proposed in good faith; and section 1129(a)(10), which provides a plan cannot be confirmed unless, "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."[17]

The Debtor has artificially impaired the class 3 claim of Michelle Easton, and impermissibly "gerrymandered" the claims of general unsecured creditors, for the sole purpose of satisfying the accepting impaired class requirement of Section 1129(a)(10). There are nine purportedly impaired classes of creditors under the Plan. Seven of those nine classes are comprised of the claims of the Beitler Creditors. The other two classes are comprised of: (1) the secured claim of Michelle Easton, designated as class 3, in the amount of $35,000, which claim apparently arose a few weeks prior to the Debtor's bankruptcy filing, likely in order to pay a retainer to the Debtor's bankruptcy counsel; and (2) all general unsecured claims other than the general unsecured claims of the Beitler Creditors.[18]

## A.    Michelle Easton's Class 3 Claim Has Been Artificially Impaired

**First**, the Debtor has artificially impaired Michelle Easton's claim, solely for the purpose of creating a potential impaired consenting class. Indeed, Ms. Easton made a $35,000 loan to the

---

[17] The Plan also violates Section 1129(a)(1) of the Bankruptcy Code, which provides that a court may confirm a plan of reorganization only if "the plan complies with the applicable provisions of this title." The phrase "applicable provisions" has been interpreted to mean Section 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a plan of reorganization. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-9 (2nd Cir. 1988); 5 *Collier on Bankruptcy* 1129.02 (15th ed. 1986).

[18] It is unclear whether the undisputed general unsecured claim of Barry Beitler, registered as Claim No. 12 on the Court's claim register, is a class 9 claim or a class 12 claim, because the Disclosure Statement provides that it is both. *See* Disclosure Statement, p. 58, summary of classes.

Debtor on February 10, 2017, a few weeks prior to the Debtors' bankruptcy filing, and that loan is purportedly secured by a lien against the Sandpiper Property, and the Debtor's stock in Venture Development Group, Inc. *See* Supplemental Meislik Declaration, Exhibit B and Exhibit C.  The maturity date of the loan is December 31, 2019, and the rate of interest under the loan is six percent annually. *Id.*

Under the Plan, Ms. Easton's claim is classified as a class 3 claim, and the Debtor proposes merely to extend the maturity date of the loan while "all other provisions of the loan documents evidencing the Class 3 Claim shall remain unaltered under the Plan."

The Beitler Creditors cannot understand why the Debtor's Plan would propose to extend the term of a $35,000 loan from the existing December 31, 2019 maturity date to four years after the Effective Date of the Plan, other than to artificially impair this claim.  Indeed, the Debtor has failed to explain the necessity of impairing what is relatively a *de minimis* claim.

This constitutes bad faith and violates § 1129(a)(3). *See Conn. Gen. Life Ins. Co. v. Hotel Assocs. of Tucson (In re Hotel Assocs. of Tucson),* 165 B.R. 470, 475 (B.A.P. 9th Cir. 1994) ("The creation of an impaired class in 'an attempt to gerrymander a voting class of creditors is indicative of bad faith' for purposes of § 1129(a)(3)."); *see also In re Swartville, LLC*, 2012 WL 3564171, at *6 (Bankr. E.D. N.C., August 17, 2012) (impairment of general unsecured creditor class by virtue of delaying payment to class left court with the inescapable conclusion that impairment indicated bad faith, thereby necessitating denial of plan confirmation); *In re Estate of LaRossa*, 2009 WL 1172843, at * 3 (Bankr. N.D. W. Va. March 25, 2009) ("Even when a court does not recognize the concept of an artificial impairment under § 1129(a)(10), however, confirmation may still be denied based on a lack of good faith under § 1129(a)(3) when a debtor proposes some insignificant impairment to a class of creditors in effort to obtain a cramdown plan of reorganization over the objection of truly impaired creditors in an attempt to circumvent the purpose of § 1129(a)(10)").

**B.    There Is No Legitimate Or Business Justification For Separately Classifying The Beitler Creditors' Unsecured Claim From All Other Unsecured Claims**

No legitimate or business justification has been offered for separately classifying the

Beitler Creditors' unsecured claims from all other unsecured claims. *See In re Rexford Properties LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) ("Substantially similar claims may be classified separately if there is a 'legitimate business or economic justification' for doing so. *Id.* at 1526. Separate classification for the sole purpose of obtaining acceptance of a class of creditors under the plan constitutes 'gerrymandering' and is not permitted. *Id.*").

First, separate classification of the Beitler Creditors' general unsecured claims is not required under 11 U.S.C. § 1122(a), which provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Here, the Beitler Creditors' general unsecured claims are substantially similar to all other general unsecured claims, in that, they are entitled to the identical level of priority in relation to the estate's assets. *See In re Tucson Self-Storage, Inc.*, 166 B.R. 892, (B.A.P. 9th Cir. 1994) (no legal distinction between unsecured claims that would justify separate classification).

Second, the only justification provided by the Debtor for separately classifying the Beitler Creditors' claims is because their claims are purportedly disputed. *See In re Paolini*, 312 B.R. 295, (Bankr. E.D. Va. 2004) (existence of a dispute over claim validity does not support a separate classification), citing *In re ARN LTD. Limited P'ship*, 140 B.R. 5, 13-14 (Bankr. D. D.C. 1992) ("[t]hat the claims are disputed, however, is not a justification for the discriminatory treatment"); *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106, 108 (Bankr. S.D.N.Y. 1983, rev'd on other grounds, 39 B.R. 654 (S.D.N.Y. 1984) ("[g]eneral unsecured claims are alike, whether they are disputed or not, whether over or under $20,000"); *In re Midway Investments, Ltd.*, 187 B.R. 382, 392 (Bankr. S.D. Fla. 1995) ("[the debtor's] separate classification of disputed unsecured claims is an attempt to gerrymander the voting process to facilitate the affirmative vote of an impaired class of claims and thereby satisfy Section 1129(a)(10)"); *In re Weiss-Wolf, Inc.*, 59 B.R. 653, 655 (Bankr. S.D.N.Y. 1986); *In re Curtis Center Ltd. P'ship*, 195 B.R. 631, 642 (Bankr. E.D. Pa. 1996) (debtor's separate classification of disputed unsecured deficiency claim from other undisputed unsecured claims was improper as "there is no difference between the legal characteristics of [the creditor's] unsecured deficiency claim and the claims of the Debtor's other

1  unsecured creditors, simply because [the creditor's] unsecured deficiency claim is the subject of

2  pending litigation" as "[u]nsecured claims are basically all alike, whether they are disputed or

3  not").

4          Moreover, the Debtor's unfounded justification appears to be an "after the fact" rationale

5  developed by the Debtor.  This is evidenced by the Debtor's Second Disclosure Statement, which

6  separately classified Mr. Beitler's *undisputed* general unsecured Claim No. 12.  If, indeed, the

7  Debtor's justification for separately classifying the Beitler Creditors' claims is because they are

8  disputed, then the Debtor would not have separately classified an undisputed claim held by Mr.

9  Beitler in his prior version of the Disclosure Statement.  That is not what the Debtor did, until the

10 most recent version of the Disclosure Statement was filed (where there appears to be

11 inconsistency regarding the treatment of Mr. Beitler's Claim No. 12).  However, the Debtor's

12 classification of Mr. Beitler's undisputed general unsecured claim in its own, separate class,

13 evidences the Debtor's actual intent, which is to gerrymander the Beitler Creditors' claims in

14 order to ensure that a general unsecured class exists which is not controlled by the Beitler

15 Creditors.

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1

## VI.    CONCLUSION

2      For the reasons set forth herein, the Disclosure Statement does not contain adequate

3  information and should not be approved.  This case should be converted to chapter 7.

4  Dated: June 28, 2018                    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

5

6                                          By:    /s/ Gary E. Klausner
                                                  GARY E. KLAUSNER
7                                                 KRIKOR J. MESHEFEJIAN

8  Dated:  June 28, 2018                   LEVY, SMALL & LALLAS
                                           A Partnership Including Professional Corporations
9

10

11                                         By:
                                                  TOM LALLAS
12                                                MARK D. HURWITZ

13                                         Attorneys for Creditors Barry Beitler, Cannae Financial,
                                           LLC, AFG Investment Fund 7, LLC, BAB, 8 LLC, Beitler
14                                         & Associates, Inc. dba Beitler Commercial Realty Services,
                                           Steward Financial LLC, and Betsy Boyd
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **BEITLER CREDITORS' OBJECTIONS TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 28, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Thomas H Casey**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@shbllp.com, lgauthier@shbllp.com
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **Beth Gaschen**    bgaschen@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com;cyoshonis@lwgfllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com,kfinn@lsl-la.com
- **Gary E Klausner**    gek@lnbyb.com
- **William N Lobel**    wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Kathleen J McCarthy**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Babak Samini**    saminicourtnotice@gmail.com, bsamini@saminilaw.com;nprado@saminilaw.com;lnavarro@saminilaw.com;swatts@saminilaw.com
- **Edward G Schloss**    egs2@ix.netcom.com
- **Valerie Smith**    claims@recoverycorp.com
- **Daniel B Spitzer**    dspitzer@spitzeresq.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**    ecfnotices@ascensioncapitalgroup.com

**2. SERVED BY UNITED STATES MAIL**: On **June 28, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 28, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served via Attorney Service***
Hon. Scott C. Clarkson
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| June 28, 2018 | Stephanie Reichert | /s/ Stephanie Reichert |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    **F 9013-3.1.PROOF.SERVICE**