GARY E. KLAUSNER (SBN 69077)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: gek@lnbyb.com; kjm@lnbyb.com

TOM LALLAS (SBN 66512)
MARK D. HURWITZ (SBN 151159)
LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
815 Moraga Drive
Los Angeles, California 90049-1633
Telephone: (310) 471-3000; Facsimile: (310 471-7990
Email:  tlallas@lsl-la.com; mhurwitz@lsl-la.com

Attorneys for Creditors Barry Beitler; Cannae Financial, LLC;
Beitler & Associates, Inc. dba Beitler Commercial Realty Services;
Steward Financial LLC; and Betsy Boyd

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:17-bk-10706-SC |
| JOHN JEAN BRAL | Chapter 11 |
| Debtor and Debtor-in-Possession. | **BEITLER CREDITORS' OBJECTIONS TO SECOND AMENDED CHAPTER 11 PLAN** |
| | Plan Confirmation Hearing:<br>Date:        October 15, 2018<br>Time:        9:30 a.m.<br>Courtroom:   5C |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................ 2

II.     THE BEITLER CREDITORS' CLAIMS.................................................... 4

III.    THE DEBTOR'S PLANS AND DISCLOSURE STATEMENTS ........................ 9

IV.     THE PLAN IS UNCONFIRMABLE ...................................................... 11

    A.      The Plan Violates Section 1129(a)(3) .......................................... 11

        1.      The Use Of Michelle Easton's Class 3 Claim To Create An
Impaired Consenting Class.................................................... 11

        2.      The "Impairment" of Ms. Easton's Class 3 Secured Claim Is
Not in Good Faith ................................................................ 12

            a.      The Debtor Has Failed to Show That the Plan Treatment
of Ms. Easton's Class 3 Claim Was Necessary Or Even
Negotiated: Indeed It Appears That The Debtor Intends
To Pay Ms. Easton's Class 3 Claim During The First
Year Following The Effective Date Of The Plan ................. 13

    B.      The Plan Fails To Satisfy Section 1129(a)(5)................................... 14

    C.      The Plan Cannot Satisfy Section 1129(a)(10) ................................ 16

    D.      The Plan Fails to Satisfy The Requirements of Section 1129(b)(2)(A) for
Confirmation Over the Rejection of a Classes 5, 6, and 7, Which
Consist of Secured Claims ........................................................ 18

    E.      The Plan Violates Section 1129(b)(2)(B) With Respect to Classes Of
Unsecured Claims.................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Conn. Gen. Life Ins. Co. v. Hotel Assocs. of Tucson (In re Hotel Assocs. of Tucson)*,
    165 B.R. 470 (B.A.P. 9th Cir. 1994) ..................................................................12

*In re Estate of LaRossa*,
    2009 WL 1172843 (Bankr. N.D. W. Va. March 25, 2009)..............................13

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2nd Cir. 1988) ..........................................................................16

*In re Mastercraft Record Plating, Inc.*,
    32 B.R. 106 ......................................................................................................17

*In re Midway Investments, Ltd.*,
    187 B.R. 382 (Bankr. S.D. Fla. 1995) ............................................................17

*In re Paolini*,
    312 B.R. 295 (Bankr. E.D. Va. 2004) .............................................................17

*In re Parks Lumber Co., Inc.*,
    19 B.R. 285 (Bankr. W.D. La. 1982) ..............................................................14

*In re Produce Hawaii, Inc.*,
    41 B.R. 301 (Bankr. D. Hawaii 1984)............................................................14

*In re Rexford Properties LLC*,
    558 B.R. 352 (Bankr. C.D. Cal. 2016) .....................................................16, 17

*In re Swartville, LLC*,
    2012 WL 3564171 (Bankr. E.D. N.C., August 17, 2012).............................13

*In re Tucson Self-Storage, Inc.*,
    166 B.R. 892 (B.A.P. 9th Cir. 1994) ..............................................................17

*In re Weiss-Wolf, Inc.*,
    59 B.R. 653 (Bankr. S.D.N.Y. 1986) .............................................................17

*Zachary v. California Bank & Trust*,
    811 F.3d 1191 (9th Cir. 2016)........................................................................19

**Federal Statutes**

11 U.S.C. § 544 ........................................................................................................5

ii

11 U.S.C. § 547 ...........................................................................................................5

11 U.S.C. § 1115 ........................................................................................................19

11 U.S.C. § 1122 ...................................................................................................16, 17

11 U.S.C. § 1123 ......................................................................................................16

11 U.S.C. § 1126(c) ..................................................................................................16

11 U.S.C. § 1129(a) ...................................................................................................3

11 U.S.C. § 1129(a)(1) ..............................................................................................16

11 U.S.C. § 1129(a)(3) .....................................................................................11, 12, 13

11 U.S.C. § 1129(a)(5) ..............................................................................................14

11 U.S.C. § 1129(a)(10) ...................................................................................13, 16, 17

11 U.S.C. § 1129(b)(2)...................................................................................5, 6, 7, 14, 18, 19

Barry Beitler, Cannae Financial, LLC, Beitler & Associates, Inc. dba Beitler Commercial Realty Services, Steward Financial LLC, and Betsy Boyd (collectively, the "Beitler Creditors") hereby file these Objections to the Second Amended Chapter 11 Plan (the "Plan") [Docket No. 544] proposed by John Jean Bral (the "Debtor").[1]

## I.    PRELIMINARY STATEMENT

The Debtor is an individual, with no business and virtually no income.  During the eighteen months since this case was filed, the Debtor has failed to liquidate a single asset, produce any net revenue or conduct any business.  His Monthly Operating Reports reveal that he is, effectively, living hand to mouth. At the same time, the Debtor has incurred approximately $3 million of professional fees[2], which will substantially reduce the amount of money which will eventually be available for creditors, of which the Beitler Creditors represent approximately ninety percent (90%).

The Beitler Creditors did not force the Debtor to file a Chapter 11 case.  The Beitler Creditors were pursuing various claims against the Debtor and his affiliates in state court and had successfully obtained default judgments in three cases, in amounts totaling approximately $3,773,007.49.   The Beitler Creditors had also successfully obtained an attorneys fee award against the Debtor for $71,705.68.  To avoid the Beitler Creditors' collection actions on these judgments and the continuation of pending lawsuits, the Debtor elected to file a Chapter 11 case. Now, as a chapter 11 debtor in possession, and a fiduciary of his bankruptcy estate, the Debtor has an obligation (if he wants to exit chapter 11 and the bankruptcy system) to propose in good faith, and confirm, a chapter 11 plan with the consent of his creditors.

---

[1] Capitalized terms not otherwise defined have the same meaning ascribed to such terms in the Plan.

[2] The Beitler Creditors reserve the right to object to any and all fees and expenses incurred in this case by the Debtor's professionals. The fees and expenses incurred by the Debtor's professionals have been wasteful, have not benefited the estate or creditors, and are the result of the Debtor's animus towards the Beitler Creditors.  The Beitler Creditors believe that the amount of fees and expenses awarded to the Debtor's professionals in this matter should be a small fraction of the amounts claimed by the Debtor's professionals.

Regrettably, the Debtor has failed to fulfill his obligation to propose a plan in good faith. Instead, the Debtor has gerrymandered his creditor classes to disenfranchise the Beitler Creditors, on the unsupportable theory that all but one of their unsecured claims should be classified separately from those of all other unsecured creditors.   According to the Debtor, the Beitler Creditors should be deprived of their right to vote in the class of general unsecured creditors.

The Debtor's failure to fulfill his fiduciary duties to his creditors is also manifested by his attempt to convince them that they could receive full payment of their claims by attributing virtually no value to at least $5.5 Million of the Beitler Creditors' general unsecured claims (Claim Nos. 9, 11, 14, 15, 16, 18, 19, 20, 21 or 23) despite the fact that not one of the claims has been disallowed.

Additionally, in order to obtain an "impaired consenting class", the Debtor has not only placed substantially all of the Beitler Creditors' unsecured claims in their own classes (Classes 10, 11, 12, 13, as opposed to Class 9 which contains the non-Beitler general unsecured claims and one Beitler general unsecured claim), but the Debtor has also "artificially impaired" the $35,000 secured claim of Michelle Easton in Class 3 to assure himself of having an impaired consenting class.

The Debtor's classification schemes are improper and in bad faith.  They are obviously designed to ensure that the Beitler Creditors' claims and votes are effectively nullified despite the fact that they constitute substantially all the claims against the Debtor's estate.   The Beitler Creditors, whose unsecured claims should all be classified in Class 9 of the Plan, have voted to reject the Plan.

If a debtor wishes to proceed by way of a Chapter 11 plan, as opposed to liquidating in Chapter 7, the debtor must satisfy all of the requirements of section 1129(a); one of which is to get his/her creditors to consent (subject to limited exceptions). Torturing creditor classes to deprive the largest creditors of their right to vote to reject a plan that they oppose is contrary to well-established law and policy.  As will be demonstrated below, there is no class of creditors whose claims have been legitimately impaired that has voted to accept the Plan.

The Beitler Creditors understand that the Plan provides for the liquidation of assets and

3

the payment of allowed claims, and that a liquidating plan is permissible in Chapter 11. But, that, in and of itself, is not a basis to allow the Debtor to engage in gerrymandering and maneuvering designed to disenfranchise the Beitler Creditors, or anyone else. The Beitler Creditors, as the Debtor's largest creditors, should have a voice in determining how the Debtor's assets are liquidated and, importantly, by whom. The Beitler Creditors do not consent to the Debtor's continued involvement and management of the estate's assets, or to the Debtor's administration of this estate. Indeed, substantially all of the Beitler Creditors' claims are based upon the Debtor's mismanagement of assets, breaches of fiduciary duties, and dishonesty. As such, it is simply not enough for the Debtor to propose a basic liquidating Plan. Without the involvement of an independent liquidating trustee or estate representative, the Beitler Creditors cannot consent to the Plan. Accordingly, as will be demonstrated herein, the Plan should not be confirmed.[3]

## II.    THE BEITLER CREDITORS' CLAIMS

The Beitler Creditors have filed the following claims against the Debtor:

1.    Claim No. 9, as amended, by Beitler & Associates dba Beitler Commercial Realty Services ("BCRS"), as a general unsecured claim in an amount to be determined.[4] Claim No. 9 is based upon BCRS's claims pending in Los Angeles Superior Court, Case No. BC 543410, as amended to reflect the operative version of the applicable operating agreement. The Debtor should have classified Claim No. 9 in Class 9, the class designated for general unsecured creditors. Claim No. 9 is subject to a pending objection and a Motion to Strike[5], on which the court has not ruled.

2.    Claim No. 10, by Barry Beitler, is a secured claim, based on a judgment in favor of

---

[3] The Beitler Creditors are obtaining additional discovery in connection with the Plan, including from Michelle Easton, and will be noticing further depositions in connection with confirmation of the Plan. The Beitler Creditors also intend to file a response/objections to the Debtor's brief in support of confirmation.
[4] Designated as a Class 13 creditor under the Debtor's Plan.
[5] The term "Motion to Strike" is a reference to the Debtor's *Motion Seeking: (1) Disallowance of Claims 14 And 16, And (2) Striking Claims Alleged In Adversary Nos. 8:17-AP-01094 And 8:17-AP-01092 On The Grounds The Same Were Filed Based Upon Falsified Evidence* (the "Motion to Strike") (Docket No. 219), as supplemented.

Mr. Beitler against the Debtor, in the amount of at least $2,589,725.46[6]. Pre-petition, Mr. Beitler obtained charging liens against the Debtor's interests in two limited liability companies, known as Mission and Westcliff, securing the judgment. The Debtor has appealed the state court's entry of the default judgment and that appeal is pending.

The Debtor brought an adversary proceeding [Case No. 8:17-ap-01071-ES] (the "Preference Action") to avoid the charging order liens, alleging that they were "unperfected" and, therefore, avoidable under section 544(a), and were preferences avoidable under Section 547. The Debtor filed a motion for summary judgment and Judge Clarkson issued a ruling avoiding the charging liens as being "unperfected" under Bankruptcy Code Section 544, but did not decide the preference issue. Because there has not been a decision on the preference issue there is no final order. Accordingly, Judge Clarkson's ruling on the Section 544 issue is not yet ripe for appeal.

The Debtor has placed Claim No. 10 in Class 6, and contends that it is a disputed secured claim. As will be demonstrated below, the Debtor has failed to satisfy the requirements of section 1129(b)(2)(A) for plan confirmation over the objection of a secured creditor.

3.    Claim No. 11, as amended, by Barry Beitler, is a general unsecured claim in an amount to be determined[7]. Claim No. 11, as amended, is based upon Mr. Beitler's claims pending in Los Angeles Superior Court, Case No. BC 543410, as amended to reflect the operative version of an applicable operating agreement. Claim No. 11 is subject to the Debtor's Motion to Strike. The Debtor should have classified Claim No. 9, as amended, in Class 9.

4.    Claim No. 12, by Barry Beitler, is a general unsecured claim, based on an attorney fee award, in the amount of at least $71,705.68[8]. This is an undisputed, allowed, general unsecured claim. The Debtor initially classified Claim No. 12 in a separate class – an indication that the Debtor's classification scheme is intended to disenfranchise the Beitler Creditors. After the Debtor came up with his after-the-fact explanation for why he has separately classified the Beitler Creditors' claims, the Debtor realized that, in order for his explanation to make any sense,

---

[6] Designated as a Class 6 creditor under the Debtor's Plan.
[7] Designated as a Class 13 creditor under the Debtor's Plan.
[8] Designated as a Class 9 creditor under the Debtor's Plan.

he had to re-classify Claim No. 12 in Class 9. However, the fact that the Debtor initially separately classified Claim No. 12 demonstrates that the Debtor's true intention with his classification of claims is to gerrymander votes. Otherwise, the Debtor would have always classified Claim No. 12 in Class 9 (not merely after he realized his explanation for separate classification made no sense).

5.    Claim No. 13, by Barry Beitler, is a secured claim, based on a judgment, in the amount of at least $788,798.91[9]. Pre-petition, Mr. Beitler obtained a judgment against the Debtor, as well as charging liens against the Debtor's interests in Mission and Westcliff securing the judgment. The judgment is final.

The Preference Action applies to the charging liens securing Claim No. 13. The Debtor has placed Claim No. 10 in Class 6, and contends that it is a disputed secured claim. As will be demonstrated below, the Debtor has failed to satisfy the requirements of section 1129(b)(2)(A) for plan confirmation over the objection of a secured creditor.

6.    Claim No. 14, as amended, by Barry Beitler, is a general unsecured claim in an amount to be determined[10]. Claim No. 14 is based on Mr. Beitler's claims against the Debtor in connection with the Debtor's capital contribution and other obligations with respect to Mission and Westcliff. Claim No. 14, amended, is subject to the Debtor's Motion to Strike. The Debtor should have classified Claim No. 14, as amended, in Class 9.

7.    Claim No. 15, by Barry Beitler, is a general unsecured claim in the amount of at least $40,663.33[11]. Claim No. 15 is based on an agreement between the Debtor, Mr. Beitler, and Ocean View Medical Investors, LLC ("Ocean View"), in connection with the payment of certain real property tax and lien obligations of Ocean View. Under the agreement, Mr. Beitler paid certain of those obligations and Mr. Bral was required to reimburse Mr. Beitler for a portion (50%) of the payment under certain conditions. The Debtor filed an objection to this claim on the basis that: (1) Mr. Beitler failed to attach evidence that Mr. Beitler made the payment (Mr. Beitler

[9] Designated as a Class 5 creditor under the Debtor's Plan.
[10] Designated as a Class 13 creditor under the Debtor's Plan.
[11] Designated as a Class 12 creditor under the Debtor's Plan.

did make the payment); (2) the Debtor is "unclear" if the obligations were paid; and (3) the Debtor is not personally liable. These objections can be easily resolved and the disputes are not complicated matters. There is no question that this is a general unsecured claim. The Debtor should have classified Claim No. 15 in Class 9.

8.      Claim No. 16, as amended, by Betsy Boyd, is a general unsecured claim in an amount to be determined[12]. Claim No. 16 is based on Ms. Boyd's claims against the Debtor in connection with the Debtor's capital contribution and other obligations with respect to Westcliff. Claim No. 16, as amended, is subject to the Debtor's Motion to Strike. The Debtor should have classified Claim No. 16, as amended, in Class 9.

9.      Claim No. 17, by Cannae Financial LLC, is a secured claim based on a judgment, in the amount of at least $394,483.12[13]. Cannae Financial LLC and the Debtor are in the process of finalizing a stipulation resolving the Debtor's objection to Claim No. 17, pursuant to which Claim No. 17 will be deemed to be an allowed secured claim. As will be demonstrated below, the Debtor has failed to satisfy the requirements of section 1129(b)(2)(A) for plan confirmation over the objection of a secured creditor.

10.     Claim No. 18, by Cannae Financial LLC, is a general unsecured claim in the amount of at least $1,421,510.01[14]. Claim No. 18 is based upon Cannae Financial LLC's claims asserted in the Orange County Superior Court, in Case No. 30-2015-00764942, based on the Debtor's breach of guaranty obligations. The Debtor has filed an objection to this claim on the basis that the claim is not supported by sufficient evidence and that the claim is unliquidated. This is a basic guarantee obligation claim that is an unsecured claim. The issue of liability is in dispute, and will have to be resolved. However, there is no basis to classify this claim separately. The Debtor should have classified Claim No. 18 in Class 9.

11.     Claim No. 19, filed by Steward Financial LLC, as a general unsecured claim in the

---

[12] Designated as a Class 13 creditor under the Debtor's Plan.
[13] Designated as a Class 7 creditor under the Debtor's Plan.
[14] Designated as a Class 11 creditor under the Debtor's Plan.

amount of at least $1,100,000[15].  Claim No. 19 is based upon Steward Financial LLC's claims asserted in the Orange County Superior Court, in Case No. 30-2016-00834111, based on the Debtor's improper actions and resulting damage to Steward Financial LLC in connection with the two, dismissed, bankruptcy filings of Ocean View.  The issue of liability is in dispute, and will have to be resolved.  However, there is no basis to classify this claim separately.  The Debtor should have classified Claim No. 19 in Class 9.

12.    Claim No. 20, filed by Steward Financial LLC, is a general unsecured claim in the amount of at least $2,593,638.81[16].  Claim No. 20 is based upon Steward Financial LLC's claims asserted in the Los Angeles Superior Court, in Case No. BC 525778, based on the Debtor's breach of guaranty obligations.  The Debtor has filed an objection to this claim on the basis that the guaranty was extinguished, among other reasons.  This is a basic guarantee obligation claim that is an unsecured claim.  The issue of liability is in dispute, and will have to be resolved.  However, there is no basis to classify this claim separately.  The Debtor should have classified Claim No. 20 in Class 9.

13.    Claim No. 21, filed by Barry Beitler, as a general unsecured claim in the amount of at least $198,065.35[17].  Claim No. 21 is based on Mr. Beitler's demand for indemnification/contribution in connection with a ruling in a state court matter between DPI Group, LLC v. Mineral King Investor, LLC, in which Mr. Beitler was held personally liable for certain claims.  The Debtor contends he is not personally liable for such debts.  While the issue of liability is in dispute, and will have to be resolved, there is no basis to classify this claim separately.  The Debtor should have classified Claim No. 21 in Class 9.

14.    Claim No. 23, filed by BCRS, as a general unsecured claim in an amount to be determined.  Claim No. 23 is based on BCRS's demand for indemnification/contribution in connection with a state court matter in which BCRS may be held liable.  The Debtor has not filed an objection to Claim No. 23 but disputes this claim.  While the issue of liability is in dispute, and

---

[15] Designated as a Class 10 creditor under the Debtor's Plan.
[16] Designated as a Class 10 creditor under the Debtor's Plan.
[17] Designated as a Class 12 creditor under the Debtor's Plan.

will have to be resolved, there is no basis to classify this claim separately.  The Debtor should have classified Claim No. 23 in Class 9.

**In summary, the Beitler Creditors' secured claims total at least $3,773,007.49, and their unsecured claims total at least $5,425,583.18 (not including claims with unliquidated amounts).  Thus, the Beitler Creditors' claims that are *not* subject to the Motion to Strike (which are Claims 9, 11, 14 and 16) total at least $9,198,590.67, not including interest, attorneys' fees and costs, and other applicable charges.  Claim Nos. 10 and 13 are based on judgments obtained by Mr. Beitler against the Debtor, Claim No. 12 is based on an attorney fee award obtained by Mr. Beitler against the Debtor, and Claim No. 17 is based on a judgment obtained by Cannae Financial LLC against the Debtor.**

The Debtors have filed concurrently herewith, or as soon as possible thereafter: (1) a motion seeking the temporary allowance of Claim Nos. 10, 15, 18, 19 and 20 for the purpose of accepting or rejecting the Plan; (2) a stipulation temporarily allowing Claim No. 13 for the purpose of accepting or rejecting the Plan; and (3) a stipulation resolving the Debtor's objection to Claim No. 17.

Other than the Beitler Creditors' claims totaling more than $9 million (not including the claims in amounts that are to be determined), the Debtor's estate has secured claims totaling $340,730.06, all of which are secured by the Debtor's home, and approximately eight general unsecured claims totaling $867,665.  This entire case has, essentially, involved the Debtor's disputes with the Beitler Creditors.

### III.    THE DEBTOR'S PLANS AND DISCLOSURE STATEMENTS

The Debtor filed his original "Chapter 11 Plan" [Docket No. 86] (the "Original Plan") on June 23, 2017.  The Original Plan was a placeholder, designed to facially meet the Court's deadline for filing a plan and disclosure statement, and never had any chance of actually being confirmed.

On April 30, 2018, the Debtor filed his First Amended Plan (the "Second Plan") and First Amended Disclosure Statement [Docket No. 415] (the "Second Disclosure Statement").  The Second Disclosure Statement states that "depending on the outcome of the claims objection and

1    lien avoidance process and the amount of proceeds ultimately available to the Debtor….the

2    distribution to holders of Allowed Unsecured Claims is estimated to be between 11.2% to

3    96.2%." *See* Second Disclosure Statement, p. 2, ll. 18 – 21.  That is, even under the Debtor's

4    "best-case" scenario, in which virtually all of the Beitler Creditors' unsecured claims were

5    disallowed in their entirety, the Debtor conceded that creditors would still not be paid in full, and

6    that he was "out of the money".  Despite this conclusion, the Debtor's Second Plan indefinitely

7    delayed the liquidation of the Debtor's assets and allowed the Debtor to continue using property

8    that belongs to his creditors.  There were no deadlines or timeframes provided by the Second

9    Plan.  There was no explanation as to how and when the Debtor's assets would be marketed and

10    sold.  The Debtor's own projections were inadequate because they did not take into account the

11    timing of any sales, or the projected value of assets at the actual time of a sale.  Indeed, the Debtor

12    ascribed a value to his interest in Mission which was based on a future development project that

13    had not been approved or financed, and which was subject to a litany of contingencies.

14        Under the Debtor's Second Plan, the Debtor, "in the Debtor's discretion" *(see* Second

15    Disclosure Statement, p. 61, l. 3), could have decided to delay the monetization of his assets for a

16    number of years.  Therefore, under the Debtor's Second Plan, there was no way for creditors to

17    know when they would ever receive distributions, and no way for creditors to compel the Debtor

18    to liquidate his non-Westcliff/Mission assets.  On these bases, as well as others, the Beitler

19    Creditors filed objections [Docket No. 438] to the adequacy of information set forth in the

20    Disclosure Statement.  The Court ordered the Debtor to file an amended plan and disclosure

21    statement.

22        On June 8, 2018, the Debtor filed his Second Amended Plan (the "Plan") [Docket Nos.

23    469 and 544] and Second Amended Disclosure Statement (the "Disclosure Statement") [Docket

24    Nos. 470 and 545].

25        The Disclosure Statement provides that "depending on the outcome of the claims

26    objection and lien avoidance process and the amounts of proceeds ultimately available to the

27    Debtor from the above-referenced sources, the distribution to holders of Allowed Unsecured

28    Claims is estimated to be between 20% and 100%." *See* Disclosure Statement, p. 10, ll. 25 – 28.

1   The Debtor's revised analysis was obviously prepared to confront the problem created by his

2   original projection (which he asserted to be true and accurate) which showed the Debtor to be

3   "out of the money" – a position which the Debtor has taken throughout this case.

4       However, the Plan fails to remedy the myriad problems with the Original Plan and the

5   Second Plan, including the Debtor's impermissible classification schemes, and the Debtor's

6   unsubstantiated and absurd assumptions regarding asset values and the allowed amount of his

7   creditors' claims.

8                        IV.    **THE PLAN IS UNCONFIRMABLE**

9   **A.    The Plan Violates Section 1129(a)(3).**

10      **1.    The Use Of Michelle Easton's Class 3 Claim To Create An Impaired**

11              **Consenting Class.**

12      Class 3 contains the secured claim of Michelle Easton.  Ms. Easton did not file a proof of

13  claim.  Her claim was scheduled on Schedule D of the Debtor's Schedules of Assets and

14  Liabilities in the amount of $35,000, secured by the Sandpiper Property (the Debtor's residence)

15  and "100% of the stocks of Venture Development".  *See* Docket No. 21.  This secured obligation

16  was incurred by the Debtor on February 10, 2017, fourteen days prior to his bankruptcy filing. *See*

17  "Promissory Note Secured By Deed Of Trust" (the "Easton Promissory Note") attached as

18  Exhibit C to the *Supplemental Declaration Of Adam Meislik In Support Of Approval Of First*

19  *Amended Disclosure Statement Describing First Amended Chapter 11 Plan And Confirmation Of*

20  *First Amended Chapter 11 Plan* [Docket No. 452] (the "Supplemental Meislik Declaration").

21      The original terms of repayment of the Easton Promissory Note provide, among other

22  things, for the principal payment of Thirty Five Thousand Dollars ($35,000.00) plus interest at the

23  Maturity Date of December 31, 2019.  Oddly, notwithstanding the Debtor's contemplated

24  bankruptcy filing, which took place on February 24, 2017, the Promissory Note provides for

25  monthly payments of interest commencing in March, 2017. *See* Easton Promissory Note, at page

26  1 of 3.  Thus, the Note does not appear to be an "arm's length" transaction.

27      The Plan provides that "[t]he Allowed amount of Class 3 shall be due and payable four (4)

28  years after the Effective Date.  All other provisions of the loan documents evidencing the Class 3

1   Claim shall remain unaltered under the Plan, including the interest rate of 6%. [Ms. Easton] shall

2   retain her liens until the Claim is paid in full." *See* Plan, p. 13. Thus, the only "impairment" of

3   Ms. Easton's Class 3 claim, is the extension of the Maturity Date from December 31, 2019 to four

4   years after the Effective Date of the Plan.

5        Assuming that at least $600,000 of the Beitler Creditors' unsecured claims are properly

6   included in Class 9, and in light of their vote to reject the Plan, Class 3, containing Ms. Easton's

7   $35,000 secured claim, would constitute the only impaired consenting class under the Plan. Thus,

8   a $35,000 fully secured claim, which has been very slightly tweaked (and, as demonstrated below,

9   artificially impaired), would dictate the outcome of the Plan process for $11 Million of secured

10  and unsecured claims. This is not the outcome which the drafters of the Bankruptcy Code had in

11  mind when they created a process that required creditor consent for confirmation of a Chapter 11

12  plan.

13       The Beitler Creditors subpoenaed Ms. Easton to appear for a deposition and produce

14  documents in connection with her claim. Ms. Easton did not appear for her deposition, claiming,

15  through her counsel, that she is out of the country and not available until mid-September.

16  However, this claim is suspect. When the process server first attempted to serve the subpoena at

17  her office, her husband claimed that she was out of the country for three weeks. However, when

18  the process server made another attempt to serve her at her office four days later, she was present

19  and properly served. Thus, she appears to be avoiding having her deposition taken. To the extent

20  necessary, the Beitler Creditors will request an order compelling her appearance at her deposition

21  and seeking other remedies, including an order to show cause for contempt due to failure to

22  appear for her deposition. The Beitler Creditors expect that they will have additional information

23  regarding the "impairment" of Ms. Easton's claim after she is deposed.

24       **2.    The "Impairment" of Ms. Easton's Class 3 Secured Claim Is Not in Good**

25            **Faith.**

26       "The creation of an impaired class in 'an attempt to gerrymander a voting class of

27  creditors is indicative of 'bad faith' for the purposes of § 1129(a)(3)." *See Conn. Gen. Life Ins.*

28  *Co. v. Hotel Assocs. of Tucson (In re Hotel Assocs. of Tucson),* 165 B.R. 470, 475 (B.A.P. 9th Cir.

1  1994); *see also In re Swartville, LLC*, 2012 WL 3564171, at *6 (Bankr. E.D. N.C., August 17,

2  2012) (impairment of general unsecured creditor class by virtue of delaying payment to class left

3  court with the inescapable conclusion that impairment indicated bad faith, thereby necessitating

4  denial of plan confirmation); *In re Estate of LaRossa*, 2009 WL 1172843, at * 3 (Bankr. N.D. W.

5  Va. March 25, 2009) ("Even when a court does not recognize the concept of an artificial

6  impairment under § 1129(a)(10), however, confirmation may still be denied based on a lack of

7  good faith under § 1129(a)(3) when a debtor proposes some insignificant impairment to a class of

8  creditors in effort to obtain a cramdown plan of reorganization over the objection of truly

9  impaired creditors in an attempt to circumvent the purpose of § 1129(a)(10)").

10      **a.      The Debtor Has Failed to Show That the Plan Treatment of Ms.**

11      **Easton's Class 3 Claim Was Necessary Or Even Negotiated: Indeed It**

12      **Appears That The Debtor Intends To Pay Ms. Easton's Class 3 Claim During**

13      **The First Year Following The Effective Date Of The Plan.**

14      The Debtor's income and expense projections (the "Projections"), which are attached as

15  Exhibit B to the Disclosure Statement, evidence the Debtor's intent to pay Ms. Easton's Class 3

16  claim during the first year following the Plan's Effective Date.  Given the Debtor's intention to

17  pay Ms. Easton's Class 3 claim, which does not mature until December 31, 2019, within the first

18  year of the Plan, there is no legitimate basis for the Debtor to impair the claim in the form of a

19  multi-year extension of the maturity date.

20      The Projections provide that during "Year 1" of the Plan, the Debtor will pay

21  "Rental/Home Ownership Expenses", "Real Estate Taxes", "Maintenance & Repairs", and "HOA

22  Dues."  Presumably, since the Debtor owns no real property other than his residence, these

23  expenses are all related to his residence, and demonstrate that the Debtor will continue to reside in

24  his primary residence, the Sandpiper Property during "Year 1".  During "Year 2" of the Plan,

25  however, the Debtor is projected to have "Rental/Home Ownership Expenses" but not expenses

26  for "Real Estate Taxes", "Maintenance & Repairs", or "HOA Dues".  Since these expenses all

27  relate to the Debtor's ownership of the Sandpiper property, their absence from his projections

28  after Year 1, demonstrate that he intends to sell the Sandpiper Property in Year 1. Therefore,

1   Easton's Class 3 claim will be paid prior to its December 31, 2019 maturity, and the four year

2   extension is completely unnecessary.  Why else would the Debtor not have any real estate tax,

3   maintenance, or homeowner association obligations starting in Year 2 of the Plan?

4       The Debtor's apparent intent to sell the Sandpiper Property during Year 1 of the Plan

5   renders his purported rationale for impairing Ms. Easton's claim completely disingenuous.  The

6   Debtor cannot credibly argue that the reason he impaired Ms. Easton's claim is due to his

7   liquidity and financial issues, when in fact he intends to sell the property securing the Class 3

8   claim prior to its original maturity date and pay the claim, in full, from the proceeds of the sale.[18]

9   In reality, the Class 3 claim has been impaired, artificially and in bad faith, solely for the purpose

10  of creating an impaired consenting class to disenfranchise the Beitler Creditors.

11  **B.    The Plan Fails To Satisfy Section 1129(a)(5)**

12      Section 1129(a)(5)(A)(i) of the Bankruptcy Code provides that a court may confirm a

13  plan only if the plan proponent discloses "the identity and affiliations of any individual proposed

14  to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor . . . or

15  a successor to the debtor under the plan", and Section 1129(a)(5)(A)(ii) requires that the

16  appointment to, or continuance in such office of such individual be "consistent with the best

17  interests of creditors and equity holders and with public policy."  *In re Produce Hawaii, Inc.*, 41

18  B.R. 301, 304 (Bankr. D. Hawaii 1984); *In re Parks Lumber Co., Inc.*, 19 B.R. 285, 291 (Bankr.

19  W.D. La. 1982).  The Beitler Creditors submit that allowing the Debtor to remain in charge of

20  monetizing estate assets and liquidating disputed claims, is not consistent with the best interests

21  of creditors nor consistent with public policy.

22      There is no reason to allow the Debtor to remain in charge of property of the estate,

23  particularly considering his unwillingness and inability to effectively market and sell his assets,

24  and his incentive not to do so.  Nor, is the Debtor's participation in this process necessary.  A

25

26  _____

27  [18] *See* Disclosure Statement, p. 88, ll. 22 – 24 ("Accordingly, as the Plan provides for payment in full of the Class 3 Claim, with interest at the contract rate, from the disposition of her collateral,

28  such treatment reflects fair and equitable treatment that complies with 11 U.S.C. § 1129(b)(2)(A)(i)(II).").

neutral, independent liquidating trustee or other estate representative would expeditiously liquidate all property of the estate, not merely pick and choose which assets to sell at some unspecified future date, in some unspecified manner.

More importantly, this Debtor, in particular, cannot be trusted with this process. The Debtor misused the bankruptcy court's jurisdiction in the Ocean View bankruptcy cases in which the Debtor filed or caused to be filed two cases which Bankruptcy Judge Clarkson found to have been filed improperly and in bad faith, and, in one of the two cases, expressly found the Debtor to have filed false declarations and suborned perjury.[19] Those improper filings resulted in at least $1.1 million of damages to Steward, which damages constitute a claim against the Debtor's estate (Claim No. 19).

Additionally, substantially all of the Beitler Creditors' claims are based upon the Debtor's mismanagement of assets, breaches of fiduciary duties, and dishonesty. *See*, *e.g.*, the three nondischargeability proceedings pending against the Debtor based on the Debtor's fraud amd breaches of fiduciary duty [Case Nos. 8:17-ap-01092-ES, 8:17-ap-01094-ES, and 8:17-ap-01095-ES].

Finally, there have been approximately thirty (30) events of default committed by the Debtor and/or his former counsel in pre-petition litigation pending between the Debtor and certain of the Beitler Creditors.

As such, it is simply not enough for the Debtor to propose a basic liquidating Plan. Without the involvement of an independent liquidating trustee or estate representative, the Beitler Creditors cannot consent to the Plan. Accordingly, as will be demonstrated herein, the Plan

---

[19] Judge Clarkson found during the first Ocean View bankruptcy case that "Mr. Bral on several occasions swore under penalty of perjury that Mr. Beitler is a member and co-manager even after the time he believed he says now that there was a resolution of some other mechanism to remove Mr. Beitler as a member…." And "there is evidence of backdating and the evidence is that [the Debtor's] pleadings in state court reference [Beitler] as the member." Then, on February 9, 2015, while the ink was still drying on the order dismissing the first bankruptcy, a purported involuntary bankruptcy case was filed for Ocean View. In that case, Judge Clarkson found that "it was demonstrated that Mr. Bral had perhaps fabricated documents to demonstrate that [Beitler] had been removed and…he created documents after the fact….and…swore to it under penalty of perjury in state court actions to try to get receivers."

1  should not be confirmed.[20]

2      The creditors should not have to allow their assets to remain in such a Debtor's hands.

3  **C.    The Plan Cannot Satisfy Section 1129(a)(10)**

4      Section 1129(a)(10) provides a plan cannot be confirmed unless, "[i]f a class of claims is

5  impaired under the plan, at least one class of claims that is impaired under the plan has accepted

6  the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C. §

7  1129(a)(10).[21]  Section 1126(c) provides "[a] class of claims has accepted a plan if such plan has

8  been accepted by creditors, other than any entity designated under subsection (e) of this section,

9  that hold at least two-thirds in amount and more than one-half in number of the allowed claims of

10  such class held by creditors, other than any entity designated under subsection (e) of this section,

11  that have accepted or rejected such plan." 11 U.S.C. § 1126(c).

12      The Debtor has impermissibly "gerrymandered" claims for the sole purpose of satisfying

13  the accepting impaired class requirement of Section 1129(a)(10).   There are nine purportedly

14  impaired classes of creditors under the Plan.   Seven of those nine classes are comprised of the

15  claims of the Beitler Creditors.   The other two classes are comprised of: (1) the purported secured

16  claim of Michelle Easton, designated as Class 3, which, as discussed above, has been artificially

17  impaired in bad faith, and (2) all general unsecured claims other than the general unsecured

18  claims of the Beitler Creditors which are disputed by the Debtor.

19      No legitimate or business justification has been offered for separately classifying the

20  Beitler Creditors' unsecured claims from all other unsecured claims. *See In re Rexford Properties*

21  *LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) ("Substantially similar claims may be classified

22

---

23  [20] The Beitler Creditors are obtaining additional discovery in connection with the Plan, including
from Michelle Easton, and will be noticing further depositions in connection with confirmation of
24  the Plan.  The Beitler Creditors also intend to file a response/objections to the Debtor's brief in
support of confirmation.
25  [21] The Plan also violates Section 1129(a)(1) of the Bankruptcy Code, which provides that a court
may confirm a plan of reorganization only if "the plan complies with the applicable provisions of
26  this title."  The phrase "applicable provisions" has been interpreted to mean Section 1122 and
1123 of the Bankruptcy Code which govern the classification of claims and interests and the
27  contents of a plan of reorganization.  *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-9 (2nd
Cir. 1988); 5 *Collier on Bankruptcy* 1129.02 (15th ed. 1986).
28

1 separately if there is a 'legitimate business or economic justification' for doing so. *Id.* at 1526.

2 Separate classification for the sole purpose of obtaining acceptance of a class of creditors under

3 the plan constitutes 'gerrymandering' and is not permitted. *Id.*").

4         Separate classification of the Beitler Creditors' general unsecured claims is not required

5 under 11 U.S.C. § 1122(a), which provides that "a plan may place a claim or an interest in a

6 particular class only if such claim or interest is substantially similar to the other claims or interests

7 of such class." Here, the Beitler Creditors' general unsecured claims are substantially similar to

8 all other general unsecured claims, in that, they are entitled to the identical level of priority in

9 relation to the estate's assets. *See In re Tucson Self-Storage, Inc.*, 166 B.R. 892, (B.A.P. 9th Cir.

10 1994) (no legal distinction between unsecured claims that would justify separate classification).

11         Second, the only justification provided by the Debtor for separately classifying the Beitler

12 Creditors' claims is because their claims are purportedly disputed.  However, courts have

13 consistently rejected that argument. *See In re Paolini*, 312 B.R. 295, (Bankr. E.D. Va. 2004)

14 (existence of a dispute over claim validity does not support a separate classification), citing *In re*

15 *ARN LTD. Limited P'ship*, 140 B.R. 5, 13-14 (Bankr. D. D.C. 1992) ("[t]hat the claims are

16 disputed, however, is not a justification for the discriminatory treatment"); *In re Mastercraft*

17 *Record Plating, Inc.*, 32 B.R. 106, 108 (Bankr. S.D.N.Y. 1983, rev'd on other grounds, 39 B.R.

18 654 (S.D.N.Y. 1984) ("[g]eneral unsecured claims are alike, whether they are disputed or not,

19 whether over or under $20,000"); *In re Midway Investments, Ltd.*, 187 B.R. 382, 392 (Bankr. S.D.

20 Fla. 1995) ("[the debtor's] separate classification of disputed unsecured claims is an attempt to

21 gerrymander the voting process to facilitate the affirmative vote of an impaired class of claims

22 and thereby satisfy Section 1129(a)(10)"); *In re Weiss-Wolf, Inc.*, 59 B.R. 653, 655 (Bankr.

23 S.D.N.Y. 1986).

24         Moreover, the Debtor's unfounded justification appears to be an "after the fact" rationale

25 developed by the Debtor for purposes of securing a consenting class of unsecured creditors, as

26 evidenced by the following facts:

27         1.     When the Debtor proposed his Original Plan, he classified (correctly) all general

28 unsecured claims in a single class, despite the fact that, even then, some of the Beitler Creditors'

general unsecured claims were disputed by the Debtor.

2.      The Second Plan separately classified Mr. Beitler's *undisputed* general unsecured Claim No. 12.    If, indeed, the Debtor's justification for separately classifying the Beitler Creditors' claims is because they are disputed, then the Debtor would not have separately classified in his Second Plan an undisputed claim held by Mr. Beitler.    The Debtor's prior classification of Mr. Beitler's undisputed general unsecured claim in its own, separate class, evidences the Debtor's actual intent, which is to gerrymander the Beitler Creditors' claims in order to ensure that a general unsecured class exists which is not controlled by the Beitler Creditors.

**D.    The Plan Fails to Satisfy The Requirements of Section 1129(b)(2)(A) for Confirmation Over the Rejection of a Classes 5, 6, and 7, Which Consist of Secured Claims**.

Claim No. 10, Claim No. 13, and Claim No. 17, which have been placed in Classes 6, 5, and 7, respectively, are secured claims.    Neither of the holders of these claims will have accepted the Plan and, therefore, the Debtor must satisfy the "cramdown" requirements of section 1129(b)(2)(A) as to each of these classes.

The Debtor has not provided fair and equitable treatment as is required for confirmation. Although, on its face, the Plan provides for each of these claims to be paid the "Allowed Amount" of the claims, in full, from the proceeds of sale of the Debtor's LLC interests in which the claimants assert liens, the Plan does not provide for the segregation or escrowing of such sale proceeds, pending a final judgment or consensual resolution as to the validity of their liens and claims.    Nor, does the Plan provide any other mechanism to protect the claimants' rights and interests as secured creditors, pending the resolution of the disputes regarding their claims.    At this time it is unknown whether the sales proceeds from the Debtor's LLC interests will be sufficient to pay the Class 5, 6, and 7 secured claims in full, if allowed.    Accordingly, the Plan must provide for the segregation of all sales proceeds in an interest bearing account, not to be disbursed, until there is a final judgment or consensual resolution of the disputes regarding these claims.

Additionally, the Plan merely provides that such secured claims will be paid "prior to payment of any Allowed Professional Fee Claims or Allowed Unsecured Claims" but the Plan does not specify, as it should, that such secured claims must be, and will be, paid ahead of all Allowed Administrative Claims (not just Allowed Professional Fee Claims). The Plan must provide that such secured claims, if allowed, are paid prior to all Allowed Administrative Claims, all Allowed Professional Fee Claims, and all Allowed Unsecured Claims.

**E.**    **The Plan Violates Section 1129(b)(2)(B) With Respect to Classes Of Unsecured Claims**

Section 1129(b)(2)(B) provides that the condition that a plan be fair and equitable with respect to a class of unsecured claims includes the requirement that "(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section." 11 U.S.C. § 1129(b)(2)(B). *See Zachary v. California Bank & Trust*, 811 F.3d 1191 (9th Cir. 2016) (adopting the "narrow" view and holding that the absolute priority rule applies in individual chapter 11 cases).

The Debtor proposes to retain property that he claims to be exempt. However, such retention may be a violation of the absolute priority rule. Based on the plain meaning of Section 1129(b)(2)(B), the junior interest holder (here, the debtor) may not "retain…*any* property….".[22] The Code does not say: "except for property that is exempt". Thus, the Debtor's intention to retain his exempt property makes the Plan unconfirmable.

### III.    CONCLUSION

For the reasons set forth herein, and as will be provided in the Beitler Creditors' opposition to the Debtor's confirmation brief, the Plan should not be confirmed.

---

[22] If this court adopted the viewpoint that exempt property is not exempt from the absolute priority rule, then chapter 7 would provide a benefit for the Debtor that is not otherwise available to the Debtor under the Plan.

Dated: August 29, 2018    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


By: _____ /s/ Gary E. Klausner _____
    GARY E. KLAUSNER
    KRIKOR J. MESHEFEJIAN

Dated: August 29, 2018    LEVY, SMALL & LALLAS
    A Partnership Including Professional Corporations
    TOM LALLAS
    MARK D. HURWITZ

By:_____
    TOM LALLAS

    Attorneys for Creditors Barry Beitler, Cannae Financial,
    LLC, Beitler & Associates, Inc. dba Beitler Commercial
    Realty Services, Steward Financial LLC, and Betsy Boyd

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **BEITLER CREDITORS' OBJECTIONS TO SECOND AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:   Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 29, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Thomas H Casey**     kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**     afriedman@shbllp.com, lgauthier@shbllp.com
- **Daniel K Fujimoto**     wdk@wolffirm.com
- **Beth Gaschen**     bgaschen@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- **Michael J Hauser**     michael.hauser@usdoj.gov
- **Mark D Hurwitz**     mhurwitz@lsl-la.com, dsmall@lsl-la.com,kfinn@lsl-la.com
- **Gary E Klausner**     gek@lnbyb.com
- **William N Lobel**     wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Kathleen J McCarthy**     kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**     Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**     kjm@lnbrb.com
- **Dipika Parmar**     dipika.parmar@aissolution.com
- **Babak Samini**     saminicourtnotice@gmail.com, bsamini@saminilaw.com;nprado@saminilaw.com;lnavarro@saminilaw.com;swatts@saminilaw.com
- **Edward G Schloss**     egs2@ix.netcom.com
- **Valerie Smith**     claims@recoverycorp.com
- **Daniel B Spitzer**     dspitzer@spitzeresq.com
- **United States Trustee (SA)**     ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**     ecfnotices@ascensioncapitalgroup.com
- **Dean A Ziehl**     dziehl@pszjlaw.com, dziehl@pszjlaw.com

**2. SERVED BY UNITED STATES MAIL**: On **August 29, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 29, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served via Attorney Service***
Hon. Erithe A. Smith
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 29, 2018 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**