1   GARY E. KLAUSNER (SBN 69077)
    KRIKOR J. MESHEFEJIAN (SBN 255030)
2   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3   10250 Constellation Boulevard, Suite 1700
    Los Angeles, California 90067
4   Telephone: (310) 229-1234; Facsimile: (310) 229-1244
    Email: gek@lnbyb.com; kjm@lnbyb.com
5

6   TOM LALLAS (SBN 66512)
    MARK D. HURWITZ (SBN 151159)
7   LEVY, SMALL & LALLAS
    A Partnership Including Professional Corporations
8   815 Moraga Drive
    Los Angeles, California 90049-1633
9   Telephone: (310) 471-3000; Facsimile: (310 471-7990
    Email: tlallas@lsl-la.com; mhurwitz@lsl-la.com
10

11  Attorneys for Creditors Barry Beitler,
    Cannae Financial, LLC, Beitler & Associates, Inc.
12  dba Beitler Commercial Realty Services, Steward
     Financial LLC, and Betsy Boyd
13

14                  **UNITED STATES BANKRUPTCY COURT**

15                   **CENTRAL DISTRICT OF CALIFORNIA**

16                        **SANTA ANA DIVISION**

17  In re                                Case No.  8:17-bk-10706-ES

18  JOHN JEAN BRAL,                      Chapter 11

19                Debtor and Debtor-In-  **EVIDENTIARY OBJECTIONS TO
                  Possession.           DECLARATION OF ADAM MEISLIK
20                                        IN SUPPORT OF CONFIRMATION OF
                                         THE DEBTOR'S SECOND AMENDED
21                                        CHAPTER 11 PLAN**

22

23                                       Date:      TBD
                                         Time:      TBD
24                                       Courtroom  5A

25

26          Creditors Barry Beitler, Cannae Financial, LLC, Beitler & Associates, Inc. dba Beitler

27  Commercial Realty Services, Steward Financial LLC, and Betsy Boyd (collectively, the "Beitler

28  Creditors") hereby object to the Declaration of Adam Meislik in Support of Confirmation of the

    Debtor's Second Amended Chapter 11 Plan ("Meislik Decl.") on the following grounds.

                                        1

**EVIDENTIARY OBJECTIONS TO DECLARATION OF ADAM MEISLIK**

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 1.    "Based upon the Debtor's projections, the proceeds derived from liquidation pursuant to the Plan will be sufficient to pay all Allowed Claims in full, inclusive of interest, and to generate a surplus for the Debtor."<br><br>*(Meislik Decl., ¶ 9, p.3 [4 of 65], lns. 17-20.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 2.    "However, if the liquidation proceeds are not sufficient to achieve this end, then all creditors will receive as much or more than they would receive in a Chapter 7 case, since 100% of the Debtor's non-exempt assets will then be liquidated and distributed to creditors holding Allowed Claims in accordance with the priority system in the Bankruptcy Code, and the costs of a chapter 7 will be avoided."<br><br>*(Meislik Decl., ¶ 9, p.3 [4 of 65], ln. 20 through p. 4 [5 of 65], ln. 2.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]. |
| 3.    "As discussed in further detail below and demonstrated in Exhibit 'A' hereto, I believe that the Distribution Fund will be sufficient to pay Allowed Secured, Administrative, and Priority Claims in full and will either provide a *pro rata* distribution on account of Allowed Unsecured Claims, up to payment in full with interest, or will pay all such claims in full and provide a surplus for the Debtor."<br><br>*(Meislik Decl., ¶ 11, p.4 [5 of 65], lns. 22-26.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 4.    "Indeed, depending on the outcome of the claims objection and lien avoidance process and the amount of proceeds ultimately available to the Debtor from the above-referenced sources, the distribution to holders of Allowed Unsecured Claims is estimated to be between 20% and 100%."<br><br>*(Meislik Decl., ¶ 11, p.4 [5 of 65], ln. 26 through p.5 [6 of 65], ln. 2.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 5.    "As set forth in the Declaration of John Pyster [Dkt. No. 421], the Sandpiper Property has an appraised value of $726,000." <br><br> *(Meislik Decl., ¶ 13, p.5 [6 of 65], lns. 11-13.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; lack of authentication [FRE 901]; hearsay [FRE 802]. |
| 6.    "Based on a value of $726,000, after accounting for the nonjudicial liens (totaling approximately $335,000), the costs of disposition and taxes (totaling approximately $42,794) and the Debtor's homestead exemption (in the amount of $75,000), approximately $273,242 in equity would remain subject to the abstract of judgment related to the Cannae Secured Claim (*i.e.,* approximately $121,758 in exemption impairment which the Debtor may seek to avoid)." <br><br> *(Meislik Decl., ¶ 13, p.5 [6 of 65], ln. 21 through p.6 [7 of 65], ln. 1.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 7.    "By the Objection to the Plan, the Beitler Parties have asserted that the Debtor intends to sell the Sandpiper Property in the first year of the Plan and pay off the claim of Michelle Easton (Class 3). This is false." <br><br> *(Meislik Decl., ¶ 14, p.6 [7 of 65], lns. 5-7.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 8.    "The Debtor does not intend to sell the Sandpiper Property and pay-off the Easton claim in the first year of the Plan. Indeed, the Plan specifically contemplates the retention of the Sandpiper Property (the Debtor's residence) unless and until the sale is necessitated to pay creditor claims under the Plan. The prior version of Exhibit 'B' simply combined housing expenses into one line item after year one. This was not intended in any fashion to indicate a sale of his home." <br><br> *(Meislik Decl., ¶ 15, p.6 [7 of 65], lns. 8-13.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; lack of authentication [FRE 901]; hearsay [FRE 802]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 9.    "As set forth in Exhibit 'B' attached hereto, the Debtor's Projections as to the payment of the expenses related to the Sandpiper Property have been presented in a more specific format to reflect designated line items for such expenses on an ongoing basis. This does not materially change the monthly totals in the Projections (as the majority of these amounts were always included in the totals therein), but Exhibit 'B' has been revised to make it clear that the expenses related to the Sandpiper Property are ongoing expenses, as follows: (a) Exhibit 'B' now reflects the Debtor's SunTrust mortgage payment in the amount of $2,427 per month for the 5-year period and the line item has been renamed 'Mortgage / Rental / Home Ownership Expenses' from 'Rental / Home Ownership Expenses' so it is clear it is his mortgage and not rent; and (b) property tax payments have been extended out from one year to five years beginning at $251 per month, HOA dues at $402 per month, and maintenance and repairs at $100 per month, all escalating at 2% per annum. The resulting change is the Net Present Value is now $37,154, as opposed to the amount of $64,918 previously set forth in the Plan. See Exhibit 'B' hereto."<br><br>*(Meislik Decl., ¶ 16, p.6 [7 of 65], ln. 14 through p.7 [8 of 65], ln. 2 & Ex. B.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; lack of authentication [FRE 901]; hearsay [FRE 802]. |
| 10.    "Notwithstanding, as set forth in Exhibit 'A' hereto, based on the underlying values of the real property holdings of Mission and Westcliff, the respective encumbrances thereon, and based on the Debtor's position as to the percentage interests he holds in connection with these entities (set forth in the Disclosure Statement as sourced from the operating agreements and the Debtor's tax returns), it is my opinion that the Debtor's interest in Mission has a value of approximately  $4,960,441 and the Debtor's interest in Westcliff has a value of approximately $3,175,111, for a total of $8,135,552 (prior to deducting for the capital gains that would be incurred)."<br><br>*(Meislik Decl., ¶ 18, p.7 [8 of 65], ln. 11 through p.8 [9 of 65], ln. 2 [footnotes omitted] & Ex. A.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 11. "As evidenced by the Declaration of Scott Pfyl (the 'Pfyl Declaration') [Dkt. No. 419], and the appraisals of the Mission Medical Building and Mission Land attached thereto as Exhibits 'C' and 'D,' the value of Mission's real property holdings are approximately $21,930,000. As set forth in the Pfyl Declaration and the appraisal attached thereto as Exhibit 'B,' the value of Westcliff's real property holdings is approximately $11,070,000."<br><br>*(Meislik Decl., ¶ 18, p.7 [8 of 65], lns. 18-20.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; lack of authentication [FRE 901]; hearsay [FRE 802]. |
| 12. "As discussed in Section II.B.1. and 2. of the Disclosure Statement, and as reflected in Exhibit 'A' hereto, the encumbrances against Mission total approximately $9,661,795 (including a $690,000 disputed second lien) and against Westcliff total approximately $4,192,545. The Debtor personally guaranteed certain of these loans to Mission and Westcliff. The Debtor has filed amended Schedules to include certain such personal guaranty claims that were not previously provided with notice of the initial Bar Date. Based on the value of the underlying assets of the Companies, which are more than sufficient to satisfy the underlying loans, the Plan does not contemplate any liability by the Debtor in connection with any such personal guaranty claims related to Mission and/or Westcliff."<br><br>*(Meislik Decl., ¶ 18, p.7 [8 of 65], lns.21-24 & Ex. A.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 13 "As discussed in Section II.B.1. and 2. of the Disclosure Statement, the Debtor contends that he holds a 40.375% (capital account) and 42.30% (profit and loss) interest in Mission, and a 47.5% (capital account) interest in Westcliff. Beitler disputes these contentions and contends that the Debtor holds lesser percentages related to the Mission and Westcliff capital accounts. It is my understanding that, as of the date hereof, Beitler has not provided any estimate of what he believes the Debtor's interest to be and has not provided the Debtor with any evidence supporting his contention."<br><br>*(Meislik Decl., ¶ 18, p.7 [8 of 65], lns. 25-28.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 14. "In a dissolution context, the Debtor's interest in the Companies should not be subject to a discount for a lack of control. I am advised that (and have myself reviewed) California Code Section 17707.03 provides that in the event of a dissolution, members who wish to avoid the dissolution (and resulting sale of LLC assets) may purchase the petitioning member's LLC interest by paying the fair market value of the member's LLC interest, which value may ultimately be determined by three court-appointed appraisers. I am aware of the legal authorities which provide in similar circumstances that the economic result of a purchase of the selling member's interest should not differ from the economic result of a dissolution, in which scenario, the Companies' underlying assets would be sold, and the proceeds, after payment of all of the Companies' obligations, would be distributed to the members, in accordance with their respective ownership interests, without any discount." <br><br> *(Meislik Decl., ¶ 19, p.8 [9 of 65], lns. 3-14.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 15. "Based upon information provided to me by the Debtor's tax advisors, in the event of a sale of the Companies' assets resulting in above-stated proceeds to the Debtor on account of his membership interests, such amounts (after accounting for the payment in full of Administrative and Secured Claims as contemplated under the Plan), would be subject to net tax liability in the amount of approximately $1.7 million." <br><br> *(Meislik Decl., ¶ 20, p.8 [9 of 65], lns. 15-19.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; hearsay [FRE 802]. |
| 16. "Any purchase of the Debtor's membership interests by the other members of the Companies would result in proceeds in an amount no less than the amounts set forth above, and could result in a more favorable recovery by the Debtor as such an approach could result in more favorable tax consequences to the Debtor and, thereby, result in a greater distribution to the Debtor's creditors." <br><br> *(Meislik Decl., ¶ 21, p.8 [9 of 65], lns. 20-24.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 17. "As the Plan is a liquidating plan, as discussed hereinbelow, the amount that ultimately flows to the Debtor from the disposition of his interests in the Companies (and thus to the Distribution Fund and to holders of Allowed Claims), does not impact the feasibility of the Plan as such determinations will simply determine how much is available to satisfy Allowed Claims."<br><br>*(Meislik Decl., ¶ 23, p.9 [10 of 65], lns. 3-7.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 18. "If such amounts are insufficient to satisfy Allowed Claims in full, the Plan provides for the liquidation of the Debtor's non-exempt assets with equity to pay such Claims to the fullest extent possible."<br><br>*(Meislik Decl., ¶ 23, p.9 [10 of 65], lns. 7-9.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; irrelevant [FRE 402]; best evidence rule [FRE 1002]. |
| 19. "The Debtor's 100% interest in VDG is valued at $62,282 based on a joint venture agreement with LN Investments, LLC for the development of certain real property located at 27912 Forbes Road, Laguna Niguel, California 92677 and the value of obtaining entitlements for the real property. VDG, as the manager, is entitled to 50% of profits after investment members receive 100% return of capital. It is estimated that the Debtor's efforts at the project located at 27912 Forbes Rd., Laguna Niguel, CA 92677, will result in a profit of approximately $300,000 in five years. Applying VDG's 50% profit interest and discounting at 20% per annum to the present results in net present value is $60,282. The discount rate reflects the inherent risk of the project and required rate of return to an investor."<br><br>*(Meislik Decl., ¶ 26, p.10 [11 of 65], lns. 6-15 [footnote omitted].)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; lack of authentication [FRE 901]; hearsay [FRE 802]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 20. "The Debtor's interest in BRA is valued at $0. BRA employs staff to provide management services and breaks even on these services. These management contracts will most likely terminate upon execution of the Plan and therefore have no intrinsic value. … The Debtor's brokerage services are closely tied to his personal goodwill and therefore have no divisible value with BRA. The Debtor's interest in BRA is therefore valued at $0."<br><br>*(Meislik Decl., ¶ 26, p.10 [11 of 65], lns. 20-25.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]. |
| 21. "Based on the value of the real property (and a 30% discount for lack of control), the Debtor's interest in Javaher is valued at $130,549."<br><br>*(Meislik Decl., ¶ 26, p.11 [12 of 65], lns. 4-6.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 22. "Based on the value of the real property (and a 30% discount for lack of control), the Debtor's interest in Eye Street is valued at $68,782."<br><br>*(Meislik Decl., ¶ 26, p.11 [12 of 65], lns. 11-13.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 23. "Based on the nature of the Debtor's interest (and a discount for lack of control), the Debtor's interest in Spectrum is valued at $0. If new information comes to light substantiating an alleged transfer of a portion of a Spectrum Class A interest and an accounting of status of the accrued preferred returns due to the Class A interests, it may substantiate a value to the Debtor of up to approximately $30,000."<br><br>*(Meislik Decl., ¶ 26, p.11 [12 of 65], ln. 18 through p.12 [13 of 65], ln. 2.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 24. "The Debtor owns 100% of the company, however, VGC has no assets, liabilities or activity and the Debtor's interest is estimated to have a value of $0."<br><br>*(Meislik Decl., ¶ 26, p.12 [13 of 65], lns. 5-6.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 25. "The Debtor has other miscellaneous personal property that was listed in his Schedules all of which is fully exempt."<br><br>*(Meislik Decl., ¶ 27, p.12 [13 of 65], lns. 7-8.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 26. "As set forth in Exhibit 'A,' the Debtor expects that he would receive approximately $542,856 from the liquidation of his personal property assets, after deducting for taxes and costs of disposition." <br><br> *(Meislik Decl., ¶ 28, p.12 [13 of 65], lns. 10-11.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 27. "The Debtor has a claim for contribution in connection with the Cannae Secured Claim against the other co-guarantors, Beitler and The Beitler Family Trust, estimated to be in amount of $262,989, which is reflected in Exhibit 'A.' In addition, the Debtor seeks a payment by the Beitler Parties and/or their counsel of the Debtor's attorneys' fees and costs incurred in connection with the Motion to Strike, estimated in Exhibit 'A' in the amount of in excess of $400,000." <br><br> *(Meislik Decl., ¶ 30, p.12 [13 of 65], lns. 16-21.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; irrelevant [FRE 402]; best evidence rule [FRE 1002]. |
| 28. "It is likely that once the Motion to Strike proceedings have been completed, the amount of fees and expenses being sought by the Debtor in connection therewith will be in excess of $700,000." <br><br> *(Meislik Decl., ¶ 30, p.12 [13 of 65], ln. 26.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; irrelevant [FRE 402]. |
| 29. "In sum, as set forth in Exhibit 'A,' based on these estimated values, the Debtor believes that the liquidation of his assets will generate a total of approximately $9,341,397…" <br><br> *(Meislik Decl., ¶ 31, p.13 [14 of 65], lns. 3-5.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]. |
| 30. "The following chart lists all Classes of Secured Claims and their treatment under the Plan: [chart]" <br><br> *(Meislik Decl., ¶ 33, p.13 [14 of 65], ln. 22 through p.16 [17 of 65], ln. 24.)* | Lack of foundation or personal knowledge [FRE 602]; best evidence rule [FRE 1002]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 31.  "The values of the Debtor's assets serving as collateral for the above-referenced Secured Claims are discussed hereinabove, and are supported by the appraisals attached to the Pfyl and Pyster Declarations [Dkt Nos. 419 and 521]…"<br><br>*(Meislik Decl., ¶ 34, p.16 [17 of 65], lns. 25-28.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701; best evidence rule [FRE 1002]; lack of authentication [FRE 901]; hearsay [FRE 802]. |
| 32.  "With respect to Secured Creditors, the Plan does not impair the rights of the holders of Allowed Secured Claims in Classes 1, 2 and 4 (Secured Claims of SunTrust, Citibank and Orange County Treasurer-Tax Collector on the Sandpiper Property) and the Class 3 Claim of Michelle Easton voted in favor of the Plan. Accordingly, the Secured Claims subject to the "fair and equitable test" under the Plan are Class 5, Class 6 and Class 7."<br><br>*(Meislik Decl., ¶ 35, p.17 [18 of 65], lns. 3-8.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; irrelevant [FRE 402]. |
| 33.  "The Court has determined, by way of the MSJ Order, that the Charging Liens are unperfected and were avoided, rendering these claims unsecured. Because there is not yet a final order on this matter and the MSJ Order is going to be appealed, however, the Debtor has classified these claims in Class 5 and 6 as disputed secured claims. There is no requirement for interest on these unsecured claims (unless there is a surplus estate, in which case the Plan provides that unsecured claims will be paid interest prior to the Debtor receiving any surplus non-exempt value). This treatment is fair and equitable for purposes of Section 1129(b)(2)(A)."<br><br>*(Meislik Decl., ¶ 36, p.17 [18 of 65], lns. 12-19.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 34. "…the Debtor's membership interests in the Companies, which are more than sufficient to pay the Class 5 and 6 Claims in full. Accordingly, as the Plan provides for payment in full of the Class 5 and Class 6 Secured Claims (if ultimately allowed as secured claims), with interest at the legal rate, from the disposition of their collateral, such treatment reflects fair and equitable treatment that complies with 11 U.S.C. § 1129(b)(2)(A)(i)(II). The Plan further provides that Beitler will retain any valid liens on the collateral pending payment in full under the Plan. As such, the Plan complies with 11 U.S.C. § 1129(b)(2)(A)(i)(I). In addition, when the collateral is liquidated, the Debtor will necessarily have to pay Beitler in full on account of any Allowed Secured Class 5 and Class 6 Claims in satisfaction of 11 U.S.C. § 1129(b)(2)(A)(ii). The Plan, therefore, is fair and equitable in its treatment of Classes 5 and 6." *(Meislik Decl., ¶ 37, p.17 [18 of 65], ln. 22 through p.18 [19 of 65], ln. 7.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 35. "In the Objection, the Beitler Parties assert that the Debtor should be required to segregate or escrow the sale proceeds pending a final determination on the issue of the whether the Class 5 and 6 claims are secured or unsecured in order to be 'fair and equitable' to these claimants. Such a request appears to go far beyond any relief to which these creditors would be entitled, and is an improper collateral attack on the MSJ Order. The Beitler Parties have failed to provide any authority for such extraordinary relief in light of the MSJ Order and the avoidance of the Charging Liens rendering these claims unsecured. Thus, I am aware of no grounds for imposing restrictions on the proceeds of the disposition of the Debtor's assets with respect to these unsecured claims, beyond the protections provided to all unsecured creditors under the Plan regarding payment of creditor's claims in accordance with their respective legal priorities." *(Meislik Decl., ¶ 38, p.18 [19 of 65], lns. 8-18.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; irrelevant [FRE 402]; hearsay [FRE 802]. |

| Matter Objected To | Grounds For Objection |
|---|---|
| 36. "…consisting of the Debtor's distribution rights in Westcliff, which is more than sufficient to pay the Class 7 Claim in full with interest. The Cannae Secured Claim is also secured by the Sandpiper Property (to the extent such security interest does not impair the Debtor's homestead exemption) …. Accordingly, as the Plan provides for payment in full of the Cannae Secured Claim, with interest at the legal rate, from the disposition of its collateral, such treatment reflects fair and equitable treatment that complies with 11 U.S.C. § 1129(b)(2)(A)(i)(II). The Plan further provides that Cannae will retain its liens on its collateral pending payment in full under the Plan. As such, the Plan complies with 11 U.S.C. § 1129(b)(2)(A)(i)(I). In addition, when the collateral is liquidated, the Debtor will necessarily have to pay Cannae in full on account of its liens in satisfaction of 11 U.S.C. § 1129(b)(2)(A)(ii). The Plan, therefore, is fair and equitable in its treatment of Class 7. To the extent such Claim is paid, however, the Debtor will recoup 2/3 of this amount from the co-guarantors (Mr. Beitler and a related trust). I do not believe there is a requirement for the payment of interest, as opposed to the accrual of interest, on account of this undisputedly highly oversecured claim, and that the treatment of the Class 7 Claim is fair and equitable for purposes of Section 1129(b)(2)(A)." *(Meislik Decl., ¶ 39, p.18 [19 of 65], ln. 21 through p.19 [20 of 65], ln. 11 [footnotes omitted].)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 37. "It is my understanding that the Beitler Parties have never, during the entirety of this chapter 11 case, submitted any competent evidence regarding what they believe the Debtor's interest in Westcliff is worth, nor have they ever contested or countered the Debtor's evidence on this issue with competent evidence of their own." *(Meislik Decl., ¶ 39, p.19 [20 of 65], lns. 24-26.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; irrelevant [FRE 402]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 38.  "In fact, pursuant to a stipulation and related order between the Debtor and Cannae, substantial payments (in excess of $100,000) on this Class 7 Claim have already commenced, and will continue until such time as this claim has been paid in full." <br><br> *(Meislik Decl., ¶ 39, p.19 [20 of 65], lns. 26-28.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 39.  "As described in Section III.B.1.a. of the Disclosure Statement, the Debtor may need to pay an estimated $2.5 million in Administrative Claims…" <br><br> *(Meislik Decl., ¶ 41, p.19 [20 of 65], lns. 15-16.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 40.  "Such Disputed Claims, as described in detail in the Disclosure Statement, are subject to claims objections, the Motion to Strike and/or motions to dismiss non-dischargeabilty [sic] actions. The outcome of these pending matters will have a significant impact on the amount of Claims that are ultimately Allowed Claims in the Case, as set forth in Exhibit 'A.'" <br><br> *(Meislik Decl., ¶ 42, p.20 [21 of 65], lns. 14-18.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 41.  "The following identifies the Plan's treatment of Unsecured Claims:  [chart]" <br><br> *(Meislik Decl., ¶ 43, p.20 [21 of 65], ln. 19 through p.24 [25 of 65], ln. 7.)* | Lack of foundation or personal knowledge [FRE 602]; best evidence rule [FRE 1002]. |
| 42.  "Exhibit 'A' sets forth the estimated distributions to the holders of Allowed Claims and the assumptions underlying such projections, including four scenarios which contemplate that the Charging Liens are either avoidable or unavoidable, and further contemplate whether the disputed claims against the Debtor are allowed or disallowed." <br><br> *(Meislik Decl., ¶ 44, p.24 [25 of 65], lns. 8-11 & Ex. A.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 43.   "As set forth therein, if the Charging Liens remain avoided as set forth in the MSJ Order, all Allowed Administrative, Priority and Secured Creditors will be paid in full, and the Debtor estimates a distribution to Unsecured Creditors (depending on the allowance of disputed claims) up to 100% plus interest, with approximately $335,604 in surplus funds being retained by the Debtor."<br><br>*(Meislik Decl., ¶ 45, p.24 [25 of 65], lns. 12-16.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 44.   "The scenarios also contemplate a circumstance where the Charging Liens are held to be unavoidable (contrary to the Court's MSJ Order). In such event, Priority, Secured and Administrative Creditors will be paid in full and there would be at least a 20% distribution on account of Unsecured Claims (depending on the allowance of disputed claims)."<br><br>*(Meislik Decl., ¶ 46, p.24 [25 of 65], lns. 17-21.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 45.   "Distributions to holders of Allowed Unsecured Claims, therefore, are estimated to range from 20% to 100%, depending on the monies flowing to the Distribution Fund from the disposition of the Debtor's assets, whether the Charging Liens are determined to be avoidable or not, and the amount of Claims that are ultimately Allowed."<br><br>*(Meislik Decl., ¶ 47, p.24 [25 of 65], lns. 22-26.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 46.  "In reaching this determination, I included the Debtor's claim for contribution in connection with the Cannae Secured Claim against the other co-guarantors, Beitler and The Beitler Family Trust. … there is a high certainty of payment on account of this claim by the Debtor (and, in fact, payments are currently being made on account of this claim). Assuming payment by the Debtor in the amount of $394,483, the Debtor's claim against the other two co-guarantors would be in amount of $262,989. This highly probable outcome, in and of itself, provides sufficient value to demonstrate that, in the high-end scenario, creditors would recover 100% of their claims. In addition, Exhibit 'A' accounts for the payment by the Beitler Parties and/or their counsel of the Debtor's attorneys' fees and costs incurred in connection with the Motion to Strike, in the amount of $400,000 (although the amount requested exceeds this figure). Exhibit 'A' does not include figures for … other contingent assets set forth in the Asset Value Schedule (including claims of contribution against several of the Beitler Parties), but any recovery on account of such contingency claims would add to the surplus flowing to the Debtor. *See* Asset Value Schedule attached hereto as Exhibit 'C.'" <br><br> *(Meislik Decl., ¶ 48, p.25 [26 of 65], lns. 1-17 & Exs. A, C.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]. |
| 47.  "The Beitler Parties' assertion in the Objection that the Debtor has failed to account for the allowance of their unsecured claims is simply untrue. … This assumption was made notwithstanding that, in the event that the Debtor's appeal of the Default Judgment is successful, this $2.6 million claim will be determined on the merits and, the Debtor believes, subject to material reduction. In such event, the 'differential' would then be available to be 'allocated' to any other unsecured claim(s) of the Beitler Parties that are ultimately allowed, or to the surplus available to the Debtor." <br><br> *(Meislik Decl., ¶ 49, p.25 [26 of 65], lns. 18-27.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; hearsay [FRE 802]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 48.  "… as are the unsecured claims of Steward which are asserted in the amount of approximately $3.7 million – and that the Debtor will have no liability on account of such claims. Further, it is assumed that the $1.42 million Cannae unsecured claim (based on the Cannae Default Judgment) will be materially reduced upon consideration of the merits."<br><br>*(Meislik Decl., ¶ 50, p.26 [27 of 65], lns. 4-8.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 49.  "As demonstrated by Exhibit 'A,' even in the unlikely event that the Beitler Parties' claims are ultimately allowed in full, the Plan is still confirmable. The difference simply boils down to whether or not the Debtor will be in a position to retain estate assets after payment of claims. If there is a surplus, he will, if there is not, he will not. That is the nature of a partially (*i.e.*, trickle-down) liquidating chapter 11 plan that provides for a liquidation of assets to the extent necessary to pay creditor claims in accordance with their bankruptcy priorities."<br><br>*(Meislik Decl., ¶ 52, p.26 [27 of 65], lns. 14-20.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]. |
| 50.  "Thus, even if the value of the Debtor's assets is not sufficient to satisfy all Allowed Claims in full, the Plan still satisfies § 1129(b)(2)(B)(ii) (commonly known as the 'absolute priority rule'), as the Debtor will not receive or retain under the Plan any amounts except those expressly provided for by § 1129(b)(2)(B)(ii) (including any postpetition assets and earnings, and any exempt property)."<br><br>*(Meislik Decl., ¶ 53, p.26 [27 of 65], lns. 21-25.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 51. "As demonstrated by the Liquidation Analysis attached as Exhibit 'A,' the Plan satisfies the 'best interests of creditors test,' as all claimants receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. Indeed, this requirement is met in the Debtor's case as the Plan is a liquidating 'pot' plan and the Debtor, to the extent necessary to pay all Allowed Claims in full with interest, is liquidating all of the assets that would otherwise be available to the hypothetical chapter 7 trustee for liquidation. However, the Debtor in this case is reasonably expected to procure a much higher value for those assets than a chapter 7 trustee based upon his knowledge of the assets, their valuation and his experience in the industry, as well as his participation in the Arbitrations pursuant to which, among other economic determinations, the Debtor's interests in the Companies will be valued. The liquidating plan also avoids the incurrence of both the trustee and the trustee's professionals' fees thereby providing additional funds for creditors." <br><br> *(Meislik Decl., ¶ 54, p.27 [28 of 65], lns. 3-16.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 52.  "In this regard, as set forth in Exhibits 'A' and 'D,' the estimated chapter 7 administrative expenses that would be incurred in a hypothetical chapter 7 liquidation are in the total amount of $403,492. This figure reflects chapter 7 trustee fees in the amount of $303,492, calculated based on 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such monies in excess of $1,000,000, upon all monies disbursed or turned over in the case by the trustee to parties in interest, excluding the Debtor, but including holders of secured claims, and an estimated additional amount of $100,000 for counsel for a chapter 7 trustee. Based on my significant experience in chapter 11 and chapter 7 cases, including providing testimony with respect to the 'best interests of creditors' test and undertaking a comparison of chapter 11 and chapter 7 expenses (including professional and statutory fees), it is my opinion that the professional fees in connection with a chapter 7 case are generally in the same range as the professional fees in a comparison chapter 11 case (*i.e.,* that a similar amount of fees would be incurred to address the matters at issue in both contexts). In this case, it is my opinion that it is unlikely that the estimate of administrative claims in the amount of $2.5 million in the Debtor's chapter 11 case (a significant portion of which has already been incurred) would not [sic] be materially less in a chapter 7 context. Indeed, as reflected in my analysis, it is likely that, when the chapter 7 statutory fees are considered and the employment of coordinating legal counsel to the chapter 7 trustee, the chapter 7 would be less favorable. An analysis that sets forth the impact of the $403,492 in chapter 7 administrative expenses on creditors under the various scenarios is attached as Exhibit 'D' hereto."<br><br>*(Meislik Decl.,  ¶ 55, p.27 [28 of 65], ln. 17 through p.28 [29 of 65], ln. 12 & Exs. A, D.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 53.  "Based on my experience, in a chapter 7 context, a trustee would undertake a review of, or pursue and address the issues being addressed by the Debtor in the chapter 11 – *e.g.*, the monetization of the estate assets by way of the Arbitrations and resolution of claims pursuant to the claims objections and Motion to Strike."<br><br>*(Meislik Decl., ¶ 56, p.28 [29 of 65], lns. 13-16.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 54.  "Based on my experience, and based on the comparison above, conversion to a chapter 7 would, in fact, not only require the same ongoing expenditures of time and resources as will be incurred in the chapter 11, but would also require additional, and unnecessary, expense and delay as a chapter 7 trustee and his or her professionals would need to 'come up to speed' on the numerous complicated and involved issues and proceedings, and would otherwise burden the estate with uniquely chapter 7 administrative costs. On the other hand, allowing the Debtor to remain in control of this process will avoid the costs and delay of a chapter 7 trustee and new professionals familiarizing themselves with the numerous, involved issues which are well-underway at this junction, as well as avoiding the incurrence of fees unique to a chapter 7 case."<br><br>*(Meislik Decl., ¶ 57, p.28 [29 of 65], lns. 17-26.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 55.  "Thus, as demonstrated by the Liquidation Analysis, the Plan complies with Section 1129(a)(7) of the Bankruptcy Code."<br><br>*(Meislik Decl., ¶ 58, p.29 [30 of 65], lns. 1-2.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; hearsay [FRE 802]. |
| 56.  "The Plan also meets the feasibility requirements of the Bankruptcy Code. In this regard, and as set forth herein and in Exhibit 'A,' payments will be paid from the Distribution Fund which is estimated to be in an amount of approximately $9,341,397 (including the monetization of the Companies, and other real and personal property)."<br><br>*(Meislik Decl., ¶ 59, p.29 [30 of 65], lns. 3-6.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 57. "Tax obligations arising from such dispositions are estimated at approximately $1.7 million. Professional Fee Claims are expected to be approximately $2.5 million. …If the Sandpiper Property is sold, the Claims in these Classes will be paid in full from the sale proceeds (with the exception of the Class 7 Claim which will be paid first from the proceeds from the dissolution of Westcliff). … to the extent that the Charging Liens related to such Class 5 and 6 Claims are held to be avoidable (pursuant to the MSJ Order or otherwise), the Debtor will not have to pay Classes 5 and 6 as secured claims. … In sum, as set forth in Exhibit 'A' hereto, the Debtor is contemplated to have sufficient cash on hand to fund all Effective Date Payments and to make the other required payments under the Plan." *(Meislik Decl., ¶ 60, p.29 [30 of 65], ln. 7 through p.30 [31 of 65], ln. 7.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]. |
| 58    "As a licensed real estate broker, the Debtor has continually generated, and is projected to continue to generate, income in his individual professional capacity sufficient to pay his living expenses and debt service obligations. (*See* Monthly Operating Reports, and Exhibit 'B' hereto, which sets forth the Debtor's projected post-confirmation income over a 5-year period)." *(Meislik Decl., ¶ 62, p.30 [31 of 65], lns. 16-20 [footnote omitted].)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]; best evidence rule [FRE 1002]; lack of authentication [FRE 901]; hearsay [FRE 802]. |

| MATTER OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 59. "However, there can be no reasonable dispute (especially from the Beitler Parties who are heavily embroiled in litigation with the Debtor over the disposition of his assets and who even acknowledge his financial straits in the Objection) that the Debtor's material assets are currently unliquidated and that it is unlikely that the Debtor will have liquid assets sufficient to pay the Class 3 Claim in full by the current December 2019 maturity date. While the Beitler Parties may have unlimited resources – this Debtor does not. Thirty-five thousand dollars ($35,000) is not an insignificant sum, and in my opinion, a 4-year extension of the maturity date is reasonable and warranted."<br><br>*(Meislik Decl., ¶ 62, p.30 [31 of 65], ln. 20 through p.31 [32 of 65], ln. 4.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |
| 60. "Based upon the projections of the Debtor's disposable income as set forth in Exhibit 'B' hereto (which projections include information regarding the actual income and expenses projected, and the methodology utilized to determine these projections and value), because the Debtor has limited projected disposable income (the net present value of which is estimated at $37,154 at 5-years), as compared to the amounts projected to be distributed under the Plan (over $9 million), and the Debtor's projected disposable income is unlikely to vary materially from the amounts set forth in Exhibit 'B,' it is my opinion that the Plan satisfies the requirements of Section 1129(1)(15)(B), and would satisfy this requirement regardless of the length of the plan term. To demonstrate this, by way of example, even assuming a plan term of 20-years, the amounts projected to be distributed under the Plan far exceed the Debtor's projected disposable income (the net present value of which is estimated at less than $285,000 at 20-years). Indeed, the break-even point would well exceed the Debtor's life expectancy. Thus, as the value of the property to be distributed under the Plan exceeds the Debtor's projected disposable income during the plan period, the Plan satisfies Section 1129(a)(15)(B) of the Bankruptcy Code."<br><br>*(Meislik Decl., ¶ 63, p.31 [32 of 65], lns. 5-20.)* | Lack of foundation or personal knowledge [FRE 602]; improper opinion, conclusion, speculation or argument [FRE 701]. |

1

2    Dated: September 19, 2018              LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

3

4                                          By:   _/s/ Gary E. Klausner_____
                                                 GARY E. KLAUSNER
5                                                KRIKOR J. MESHEFEJIAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **EVIDENTIARY OBJECTIONS TO DECLARATION OF ADAM MEISLIK IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 19, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Thomas H Casey**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@shbllp.com, lgauthier@shbllp.com
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **Beth Gaschen**    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com,kfinn@lsl-la.com
- **Gary E Klausner**    gek@lnbyb.com
- **William N Lobel**    wlobel@pszjlaw.com,
  nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Kathleen J McCarthy**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Dipika Parmar**    dipika.parmar@aissolution.com
- **Bobby Samini**    saminicourtnotice@gmail.com,
  bsamini@saminilaw.com;nprado@saminilaw.com;lnavarro@saminilaw.com;swatts@saminilaw.com
- **Edward G Schloss**    egs2@ix.netcom.com
- **Valerie Smith**    claims@recoverycorp.com
- **Daniel B Spitzer**    dspitzer@spitzeresq.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**    ecfnotices@ascensioncapitalgroup.com
- **Dean A Ziehl**    dziehl@pszjlaw.com, dziehl@pszjlaw.com

**2.  SERVED BY UNITED STATES MAIL**: On **September 19, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1

2  **3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR
EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR,

3  on **September 19, 2018**, I served the following persons and/or entities by personal delivery, overnight
mail service, or (for those who consented in writing to such service method), by facsimile transmission

4  and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or
overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

5  ***Served via Overnight Mail***
Hon. Erithe A. Smith

6  United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse

7  411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

8
I declare under penalty of perjury under the laws of the United States of America that the foregoing is

9  true and correct.

10  _____  _____  _____
September 19, 2018                 Stephanie Reichert                   /s/ Stephanie Reichert

11  *Date*                                       *Type Name*                             *Signature*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                   **F 9013-3.1.PROOF.SERVICE**