Alan J. Friedman – Bar No. 132580
Ryan D. O'Dea – Bar No. 273478
Ryan Baggs – Bar No. 301240
**SHULMAN HODGES & BASTIAN LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:    (949) 340-3400
Facsimile:    (949) 340-3000
Email:    afriedman@shbllp.com; rodea@shbllp.com; rbaggs@shbllp.com

Attorneys for Debtor and Debtor-in-Possession,
John Jean Bral

William N. Lobel – Bar No. 93202
**PACHULSKI STANG ZIEHL & JONES LLP**
650 Town Center Drive, Suite 1500
Costa Mesa, California 92626
Telephone:    (714) 383-4740
Facsimile:    (714) 383-4741
Email:    wlobel@pszjlaw.com

Special Reorganization Counsel for
Debtor and Debtor-in-Possession, John Jean Bral

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:17-bk-10706-ES |
| **JOHN JEAN BRAL,** | Chapter 11 |
|       Debtor and<br>      Debtor-in-Possession. | **DEBTOR'S MOTION FOR AN ORDER (1) FINDING BARRY BEITLER IN VIOLATION OF THE AUTOMATIC STAY AND IN CONTEMPT OF COURT; (2) ASSESSING ACTUAL AND PUNITIVE DAMAGES AGAINST BARRY BEITLER; (3) DISMISSING OR COMPELLING DISMISSAL OF THE CROSS-COMPLAINT; AND (4) GRANTING RELATED RELIEF** |
| | **[DECLARATIONS OF ALAN J. FRIEDMAN AND JEFFREY ALPERT AND REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]** |
| | **Hearing Date and Time:**<br>Date:     December 6, 2018<br>Time:     10:30 a.m.<br>Ctrm.:    5A<br>Place:    United States Bankruptcy Court<br>         Ronald Reagan Federal Building<br>         411 W. Fourth Street<br>         Santa Ana, CA 92701 |

# **TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | | INTRODUCTION | 2 |
| II. | | FACTUAL BACKGROUND | 4 |
| | A. | Commencement of the Debtor's Case and General Background Regarding Mission. | 4 |
| | B. | The Mission State Court  Action and Mr. Beitler's  Violative Cross-Complaint. | 5 |
| | C. | The Mission Arbitration and Relief From Stay Proceedings. | 7 |
| | D. | The Debtor's (and Mission's) Repeated Demands to Beitler to Dismiss the Cross-Complaint. | 11 |
| III. | | MEMORANDUM OF POINTS AND AUTHORITIES | 12 |
| | A. | The Debtor is Entitled to the Protections of the Automatic Stay. | 12 |
| | B. | The Debtor is Entitled to Actual and Punitive Damages Based on Beitler's Willful and Knowing Violation of the Automatic Stay | 14 |
| | C. | Mr. Beitler Willfully and Knowingly Violated the Automatic Stay in Filing and Pursuing the Cross-Complaint. | 15 |
| | D. | Mr. Beitler's Willful and Knowing Violation of the Automatic Stay Mandates the Imposition of Actual Damages Against Him. | 16 |
| | E. | The Debtor is Also Entitled to Punitive Damages Based on Mr. Beitler's Egregious Behavior in Violating the Automatic Stay and His Contempt of Court. | 17 |
| | F. | All Actions Taken By Mr. Beitler in Pursuing the Cross-Complaint Are Void | 18 |
| IV. | | CONCLUSION | 19 |

**Cases**

*Adelphia Communs. Corp. v. America Channel, LLC (In re Adelphia Communs. Corp.),*
  345 B.R. 69,  (Bankr. S.D.N.Y. 2006) ............................................................ 13

*Beard v. Walsh (In re Walsh),*
  219 B.R. 873,  (9th Cir. B.A.P. 1998) .......................................................... 16

*Capriati Constr. Corp. v. SPER, Inc. (In re Capriati Constr. Corp.),*
  2018 Bankr. LEXIS 818, *21-22 (9th Cir. B.A.P. Mar. 20, 2018) ............................... 14, 19

*Frankford Trust Co. v. Allanoff (In re Dublin Properties),*
  20 B.R. 616, (Bankr. E.D. Pa. 1982) ............................................................. 14

*Goichman v. Bloom (In re Bloom),*
  875 F.2d 224,  (9th Cir. 1989) .................................................................. 17, 18

*In re Black,*
  514 B.R. 605 (Bankr. E.D. Cal. 2014) ........................................................... 13

*In re Campion,*
  294 B.R. 313,  (9th Cir. B.A.P. 2003) .......................................................... 15

*In re Kimball Hill, Inc.,*
  2018 Bankr. LEXIS 3081, *27 (Bankr. N.D. Ill. October 12, 2018) ............................... 18

*In re Mwangi,*
  432 B.R. 812, (9th Cir. B.A.P. 2010) ........................................................... 12

*In re Pace,*
  159 B.R. 890,  (9th Cir. B.A.P. 1993) .......................................................... 17

*In re Sansone,*
  99 B.R. 981,  (Bankr. C.D. Cal. 1989) .......................................................... 16

*In re Schwartz,*
  954 F.2d 569 (9th Cir. 1992) .................................................................... 18

*In re Schwartz-Tallard,*
  803 F.3d 1095,  (9th Cir. 2015) ................................................................. 16

*In re Shamblin,*
  890 F.2d 123,  (9th Cir. 1989) .................................................................. 18

*In re Soares,*
  107 F.3d 969, 977 (1st Cir. 1997) ............................................................... 12

*In re Stringer,*
  847 F.2d 549,  (9th Cir. 1988) .................................................................. 18

*In re Taylor,*
  884 F.2d 478,  (9th Cir. 1989) .................................................................. 16

*MCEG Productions, Inc.,*
  133 B.R. 232,  (Bankr. C.D. Cal. 1991) ......................................................... 14

*McHenry v. Key Bank (In re McHenry),*
  179 B.R. 165,  (9th Cir. B.A.P. 1995) .......................................................... 17

*Ozenne v. Bendon (In re Ozenne),*
  337 B.R. 214,  (9th Cir. B.A.P. 2006) .......................................................... 15

*Ramirez v. Fuselier (In re Ramirez),*
  183 B.R. 583,  (9th Cir. B.A.P. 1995) .......................................................... 16

*Southern Union Co. v. Irvin*,
  563 F.3d 788,  (9th Cir. 2009) ........................................................................ 18

*Stainton v. Lee (In re Stainton)*,
  139 B.R. 232,  (9th Cir. B.A.P. 1992) .............................................................. 16

*Stinson v. Bi-Rite Rest. Supply Inc. (In re Stinson)*,
  295 B.R. 109,  (9th Cir. B.A.P. 2005) .............................................................. 16

*United States v. Gruntz*,
  202 F.3d 1074,  (9th Cir. 2000) ....................................................................... 18

**Statutes**

***11 U.S.C. § 362*** ............................................................3, 7, 8, 12, 13, 14, 15, 16, 17

11 U.S.C. § 523 ..................................................................................................... 6

11 U.S.C. § 541 ................................................................................................... 13

**Other Authorities**

H.R. Rep. No. 595, 95th Cong.,
  1st Sess. 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97 ................................. 12

ii

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, BARRY BEITLER AND CERTAIN OTHER PARTIES-IN-INTEREST:**

John Jean Bral, the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), hereby brings this *Motion for an Order (1) Finding Barry Beitler In Violation Of The Automatic Stay And In Contempt Of Court; (2) Assessing Actual and Punitive Damages Against Barry Beitler; (3) Dismissing or Compelling Dismissal Of The Cross-Complaint; And (4) Granting Related Relief* (the "Motion").   In support of this Motion, the Debtor files concurrently herewith, the Declaration of Alan J. Friedman (the "Friedman Declaration"), the Declaration of Jeffrey Alpert (the "Alpert Declaration") and, for the convenience of the Court, a Request for Judicial Notice attaching certain of the pleadings referenced herein.

**I.**

**INTRODUCTION**

The Debtor's chapter 11 case was commenced by the filing of a voluntary chapter 11 petition on February 24, 2017 (the "Petition Date").  Since the Petition Date, Barry Beitler (individually and through his controlled persons and entities) has engaged in an unflagging attempt to deprive the Debtor of his interests in two limited liability companies, Mission Medical Investors, LLC ("Mission") and Westcliff Investors, LLC ("Westcliff" and, together with Mission, the "Companies").  The Debtor's membership interests in the Companies – which interests are valued at over $8 million[1] – are the most significant assets of the Debtor's estate and, indeed, the monetization of the Debtor's interests in the Companies will provide most of the "distribution fund" from which the claims against the Debtor will be satisfied under the Debtor's Chapter 11

---

[1] Almost $5 million of this value is ascribed to the Debtor's membership interest in Mission.

1    Plan [Docket No. 544] (the "Plan").[2]  Pursuant to a request made by Mr. Beitler, the Court has

2    ordered that the potential dissolution of the Companies and the economic issues relating thereto

3    (specifically including a determination as to the Debtor's and Mr. Beitler's respective interests in

4    the Companies), be determined *solely and exclusively* by way of pending arbitrations charged

5    specifically with determining these issues (as related to Mission, the "Mission Arbitration"), with

6    the outcome thereof to be implemented by way of the Plan.  Notwithstanding, and despite the

7    Debtor's numerous demands, following the Petition Date, Mr. Beitler commenced and has

8    continued to prosecute (and indeed set for trial) a cross-complaint in Los Angeles Superior Court

9    Case No. BC 564092 (the "Cross-Complaint") that, if allowed to proceed, could serve as a

10    determination of the parties' respective interests in the Mission – ***in direct violation of the***

11    ***automatic stay provisions of 11 U.S.C. § 362(a) and the Court's express order to the contrary***.

12            By this Motion, the Debtor seeks redress for Mr. Beitler's filing and continued unlawful

13    prosecution of the Cross-Complaint.  Continued prosecution of this action would directly and

14    materially affect the Debtor's rights, to the detriment of his estate and all creditors.  While the

15    Cross-Complaint filed by Mr. Beitler does not specifically "name" the Debtor as a party – and

16    indeed acknowledges that the Debtor *cannot* be sued – the relief sought thereby *directly impacts*

17    the Debtor's rights as it seeks determinations as to Mr. Beitler's membership interests in Mission.

18    The relief sought by Mr. Beitler will necessarily impact the Debtor's interest in Mission (*i.e.,* to

19    the extent Mr. Beitler's interests in Mission are fixed by way of the relief sought in the Cross-

20    Complaint, so too would the Debtor's directly corresponding interests).  Not only does the

21    commencement and continued prosecution of this action impact property of the estate in direct

22    violation of the provisions of the automatic stay imposed by 11 U.S.C. § 362(1) and (3), but it is

23    *expressly contrary* to the Court's prior and specific determination that *all* matters relating to the

24    Debtor's and Mr. Beitler's economic interests in Mission be determined in connection the Mission

25    _____

26    [2] By order entered on July 25, 2018, the Court approved the Debtor's Disclosure Statement and scheduled a
     hearing on confirmation of the Plan for October 15, 2018 [Docket No. 541].  Following the transfer of the
27    Debtor's chapter 11 case from Judge Clarkson, this Court continued the hearing on confirmation of the Plan
     until December 11, 2018.  Also pending is a determination on the Debtor's motion seeking to strike, among
28    others, certain claims asserted by Mr. Beitler on the grounds of perjury, use of a falsified document and
     fraud on the Court (referred to in these proceedings as the "Motion to Strike").

1   Arbitration.  Further, Mr. Beitler has failed and refused to remedy this situation, notwithstanding

2   numerous opportunities and demands to do so.

3       Based thereon, the Debtor seeks an order of this Court assessing damages (both actual and

4   punitive) against Mr. Beitler for his willing, knowing and egregious violations of the automatic

5   stay and contempt of court, determining that Mr. Beitler's actions in commencing and pursuing

6   the Cross-Complaint are void, and dismissing or compelling the dismissal of the Cross-Complaint.

7

8                                            **II.**

9                              **FACTUAL BACKGROUND**

10  **A.  Commencement of the Debtor's Case and General Background Regarding Mission.**

11      On February 24, 2017, the Debtor filed a voluntary petition for relief under chapter 11 of the

12  Bankruptcy Code, thereby commencing this chapter 11 case (the "Petition Date").  Since the

13  Petition Date, the Debtor has remained in possession and control of his assets as a debtor-in-

14  possession.

15      The Debtor's primary assets are his membership interest in several limited liability

16  companies formed with Mr. Beitler prior to 2007, to acquire, manage and sell commercial real

17  estate projects in Southern California.  These include his interests in Mission and Westcliff.

18      Mission's sole asset is the Mission medical building and surrounding land located at 27822

19  Forbes Road in Laguna Niguel, California, with a value in excess of $22 million.  The property is

20  subject to a first lien with an approximate balance of $9 million and a disputed lien with an

21  approximate balance of $690,000.  The Debtor contends that he and Mr. Beitler each hold a

22  40.375% (Capital) and 42.30% (Profit and Loss) interest in Mission, and that the Debtor is the sole

23  manager of Mission.[3]  The balance of the ownership interests in Mission are held by third parties.

24

25  _____

26  [3] As set forth in the Cross-Complaint and various other claims asserted in these proceedings, Mr. Beitler
    disputes these contentions and contends that the Debtor holds a lesser percentage related to the Mission
27  capital account and claims that he is co-manager of Mission.  The Debtor disputes Mr. Beitler's contentions
    in this regard.  As discussed herein, pursuant to Mission RFS Order (as herein defined), the Court has
28  ordered that all economic issues relating to the dissolution of Mission (including an accounting as to the
    Debtor's and Mr. Beitler's respective interests in Mission) be determined in the Mission Arbitration.

1    The Debtor values his interest in Mission at $4,960,441 (before consideration of the tax

2  implications for the Debtor based upon the sale of Mission's assets and a distribution to the

3  Debtor).

4    The Debtor desires to liquidate the assets of Mission, however, Mr. Beitler has refused to

5  consent to the sale.  As described below, the Debtor commenced litigation to resolve these issues,

6  seeking the dissolution of Mission and monetizing the underlying assets.  The distributions on

7  account of the Debtor's membership interests in Mission (and other interests, including his

8  membership interests in Westcliff) will be used to fund the Debtor's Plan.[4]

9

10   **B.  The Mission State Court  Action and Mr. Beitler's
         Violative Cross-Complaint.**

11   On or about April 16, 2014, Mission (managed by the Debtor) sued Beitler in the Orange

12  County Superior Court (Case No. 30-2014-00717260), which case was subsequently transferred to

13  the Los Angeles County Superior Court (Case No. BC 564092) and, on March 20, 2017, filed a

14  Second Amended Complaint alleging causes against Beitler for breach of fiduciary duty, breach of

15  contract, fraud and concealment (the "Mission Action").  A true and correct copy of the Second

16  Amended Complaint filed in the Mission Action is attached as Exhibit A to the Alpert

17  Declaration.

18   Significantly, on July 31, 2017 (several months subsequent to the Petition Date), Mr.

19  Beitler filed the Cross-Complaint against Mission in the Mission Action.  A true and correct copy

20  of the Cross-Complaint is attached as Exhibit B to the Alpert Declaration.

21   The Cross-Complaint does not "name" the Debtor as a cross-defendant, and specifically

22  acknowledges that the Debtor is in a bankruptcy proceeding and that any action against the Debtor

23  is "automatically stayed."  (See Cross-Complaint, ¶ 3).  In this regard, Paragraph 3 of the Cross-

24  Complaint provides as follows:

25       John Bral ("Bral") is a managing member of Mission and resides in the County of
         Orange, State of California.  Bral filed a petition for Chapter 11 bankruptcy on
26       February 24, 2017 in the United States Bankruptcy Court for the Central District

27  _____

28  [4] Solicitation and voting on the Plan has been completed, and the issues relating to confirmation of the Plan
    have been fully briefed by the parties.

1     of California, Santa Ana Division, Case No. 8:17-bk-10706-SC (the "Bankruptcy

2     Case"). *The Bankruptcy Case remains pending, and accordingly, an action*
*herein against Bral is automatically stayed.*   Beitler reserves the right to amend

3     this Cross-Complaint to assert causes of action against Bral upon termination of
the stay or issuance of an order in the Bankruptcy Case for relief from stay.

4     (Emphasis added).

5        Notwithstanding the express acknowledgement that seeking relief against the Debtor is

6     *barred* against the Debtor by virtue of the pendency of the bankruptcy case,[5] however, the body of

7     the Cross-Complaint itself asserts claims based on the Debtor's alleged misconduct, including,

8     *inter alia,* an alleged failure to account and compensate Beitler for his membership interest, a

9     "secret venture" formed by the Debtor that misused or failed to compensate Mission for use of

10     property, and for allegedly unauthorized transfers authorized by the Debtor.

11        Moreover, the Cross-Complaint seeks an adjudication and a judicial declaration from the

12     Superior Court that, among other requests "(i) Beitler remains a co-manager of Mission,

13     (ii) Beitler is entitled to a Capital Membership interest in Mission greater than Bral's Capital

14     membership interest, and that Beitler's and Bral's Capital Membership interests must be adjusted

15     accordingly, (iii) based on his Capital Membership, Beitler has not been credited with the full

16     amount of his Capital Membership interest in Mission, … (iv) Beitler has not been credited with

17     the full amount of the Capital Membership interest in Mission to which he is entitled." [6]

18        Beitler's pursuit of a determination as to his and the Debtor's respective interests and

19     rights in Mission by way of the Cross-Complaint is not only a flagrant (and acknowledged)

20

21

22     ─────────────────

[5] Mr. Beitler likely included this language in an attempt to mislead the Superior Court into believing that

23     the automatic stay was not otherwise implicated. As discussed, this ruse has been successful, at least until
now.

24     [6] The allegations in the Cross-Complaint also form the basis for Beitler's Claim Nos. 11 and 14, filed in the

25     Debtor's case in connection with Mission (and Westcliff). These allegations also serve as the basis for the
non-dischargeability action filed by Mr. Beitler against the Debtor on June 2, 2017, entitled <u>Beitler v. Bral</u>,

26     Adv. No. 8:17-ap-01092-SC, seeking to hold an unliquidated claim against the Debtor in an amount of no
less than $1,500,000 non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6) (the "<u>Beitler</u>

27     <u>Non-Dischargeability Action</u>"). The Debtor has filed objections to Claim No. 11 and 14 [Docket Nos. 147
and 153] and, by way of the Motion to Strike, the Debtor seeks an order striking or disallowing Claim Nos.

28     11 and 14 and the Beitler Non-Dischargeabilty Action.

1    violation of the automatic stay that is void under Ninth Circuit law,[7] as discussed below, it is

2    expressly contrary to the Court's order that these issues will be determined solely and exclusively

3    by way of the Mission Arbitration.

4       C.  **The Mission Arbitration and Relief From Stay Proceedings.**

5

6           Recognizing that the dissolution of Mission and the monetization of the Debtor's interest

7    therein would require arbitration, on December 19, 2017, the Debtor and certain non-managing

8    members of Mission filed a demand for arbitration with the American Arbitration Association

9    seeking a decree dissolving Mission and ordering the sale of all of its assets based on an

10   irremediable "deadlock" between the members (the "Mission Arbitration").  On December 18,

11   2017, the Debtor filed a similar demand for dissolution with JAMS with respect to Westcliff (the

12   "Westcliff Arbitration" and, together with the Mission Arbitration, the "Arbitrations").

13          On February 15, 2018, Mr. Beitler filed a Motion for Relief From the Automatic Stay

14   seeking to proceed with the Mission Arbitration [Docket No. 308].  A similar motion was filed by

15   Mr. Beitler and his sister, Betsy Boyd, seeking relief from stay to proceed with the Westcliff

16   Arbitration [Docket No. 309] (together, with the Memorandum of Points and Authorities in

17   Support [Docket No. 310], the "Relief From Stay Motions").[8]  On February 22, 2018, the Debtor

18   filed an opposition to the Relief From Stay Motions [Docket No. 320] (the "Relief From Stay

19   Opposition").[9]  On March 1, 2018, Beitler filed a reply to the Debtor's Relief From Stay

20   _____

21   [7] As detailed in the concurrently filed Friedman Declaration, the Debtor has expressly advised Mr. Beitler
     on several occasions that the filing and prosecution of the Cross-Complaint is a violation of 11 U.S.C.

22   § 362(a)(1) and (3) and, if not rectified, would be the subject of a motion under 11 U.S.C. § 362(k).  In
     addition, as set forth in the Alpert Declaration, Mission has also demanded that the Cross-Complaint be

23   dismissed.  Notwithstanding, Mr. Beitler has failed and refused to remedy this transgression (and indeed, as
     set forth in the Alpert Declaration, is attempting to proceed with trial in this matter in February 2019) –

24   necessitating the instant Motion and imposition of sanctions for Mr. Beitler's willing and knowing
     violations of the most basic tenets of the Bankruptcy Code and contempt of court.

25   [8] A true and correct copy of the Docket No. 310 (Memorandum of Points and Authorities) is attached as
     Exhibit 1 to the Request for Judicial Notice.

26
     [9] Notably, in the Relief From Stay Opposition (p. 6, n. 4), the Debtor specifically raised the issue that the

27   pendency of the Cross-Complaint was a violation of the automatic stay – indicating that, unless resolved,
     the Debtor would be forced to bring a motion under 11 U.S.C. § 362(k), as follows:  "*The filing of the*

28   *Cross-Complaint violated 11 U.S.C. § 362(a)(1) and (3) and will be the subject of a separate motion under*

1    Opposition [Docket No. 340] (the "Relief From Stay Reply"). [10]   Mr. Beitler, through the Relief

2    From Stay Motions, not only sought to adjudicate the dissolution and related accounting issues

3    relative to Mission (and Westcliff) but also sought to expand the scope of the arbitrations to

4    include all matters contained in the various proofs of claim filed by the various Beitler parties, as

5    well as the issues raised in the Motion to Strike.  Indeed, Mr. Beitler argued that arbitration was

6    the *only* proper venue to resolve these disputes. [11]   A hearing on the Relief From Stay Motions was

7    held on March 8, 2018.

8        At the March 8th hearing, the Court granted the Relief From Stay Motions with respect to

9    the Arbitrations, *subject to very specific limitations* – limitations that were for the express purpose

10    of qualifying the scope of relief granted so that the relief did not impose on the rights of the Court

11    to adjudicate the bankruptcy related matters, including with respect to the plan process and the

---

[11] *U.S.C. § 362(k).  The filing of the Cross-Complaint is at least the second violation of the automatic stay committed by Beitler during the course of this case.*  The first, the commencement of an appeal against the Debtor, required three written demands before Beitler finally agreed to dismiss the offending action. *The current violation is even more egregious since the Cross-Complaint acknowledges the bankruptcy filing and that the stay is in place.  Yet, incredibly, Beitler is seeking, among other things, a reduction of the Debtor's interest in Mission, all without seeking relief from this Court, despite the clear detrimental impact said relief would have on the Debtor and his estate.*"  A true and correct copy of Docket No. 320 (Relief From Stay Opposition) is attached as Exhibit 2 to the Request for Judicial Notice.

[10] Incredibly, in the Relief From Stay Reply (p. 8, paragraph 5), Mr. Beitler not only acknowledges the pendency of the violative Cross-Compliant, but attempts to blame *the Debtor* for not having discovered and raised the issue prior to the filing of the Relief From Stay Opposition, setting forth as follows:  "Finally, the Debtor's assertion that in July 2017, Beitler violated the automatic stay by filing a cross-complaint against Mission (a non-debtor) in the state court proceeding initiated by the Debtor on behalf of Mission, is irrelevant to the present motion and can only be seen as an attempt, without proper pleadings or evidence, to tarnish Beitler.  Indeed, if the Debtor believed that such a filing violated the automatic stay, presumably, he would not have waited seven months to say something about it."  A true and correct copy of Docket No. 340 (Relief From Stay Reply) is attached as Exhibit 3 to the Request for Judicial Notice.

[11] Just by way of example, as the Relief From Stay Motions and Relief From Stay Reply were replete with statements that the arbitration was the only proper venue to determine all such issues, the Beitler parties set forth:  "In these bankruptcy cases, Beitler and Boyd have asserted claims and filed non-dischargeability actions against the Debtor, in connection with the Debtor's fraud and mismanagement related to Westcliff and Mission and the Debtor has objected to those claims.  The Debtor has also asserted similar claims against Beitler and Boyd in the Westcliff arbitration, the Debtor has sought the dissolution of Mission in the Mission arbitration based on managerial disputes, and the Debtor has sought discovery in the arbitration proceedings that is duplicative of discovery that the Debtor has sought in the bankruptcy case.  The arbitrations, therefore, present not only the required forum within which to litigate the parties' disputes related to Westcliff and Mission, but also the most efficient forum and the one chosen by the Debtor."  *See e.g.,* Docket No. 310, p. 2, ll. 11-20 (Exhibit 1 to Request for Judicial Notice).

pending objections to the Beitler parties' proofs of claim and related matters, such as the Motion to Strike.

Notwithstanding, on March 26, 2018, the Beitler parties submitted proposed orders which went far beyond the relief the Court actually granted – attempting to have the Court sign carte blanche orders that would allow them to resolve _all issues, disputes and claims_ between the Debtor and the Beitler parties in the context of the Arbitrations. [Docket Nos. 365 (Mission), 366 (Westcliff) and 367 (Memorandum in Support of Entry of the Form of Relief From Stay Orders)]. As this was not what the Court ordered, on March 30, 2018, the Debtor filed an objection to the Beitler Parties' proposed orders, and submitted alternative forms of orders [Docket No. 376].[12]

---

[12] Beitler's proposed order related to Mission provided: "Movant shall be and is hereby granted relief from the automatic stay to adjudicate, in the Mission Arbitration Proceeding, Case Number 01-17-0007-6593, _all issues, disputes and claims which are subject to arbitration_ pursuant to the Mission Operating Agreement and applicable California state law." (emphasis added). "All issues, disputes and claims which are subject to arbitration," however, would have included all of the substantive matters within Beitler's proofs of claim and all of the substantive matters within the Mission Dissolution Action, including of the fraud and mismanagement issues – which went far beyond the Court's ruling. True and correct copies of the Docket Nos. 365 (Beitler's proposed order regarding Mission) and 376 (Debtor's objection to form of orders and alternative forms of orders) are attached as Exhibit 4 and Exhibit 5 to the Request for Judicial Notice.

Indeed, as set forth in the Debtor's opposition, Beitler's proposed order was contrary to the Court's statement that: "I just want to make sure that the bankruptcy process somehow doesn't get pulled into the arbitration process and – and invoke issues that are transential (sic) [tangential] to the liquid -- not liquidation, the – the dissolution process. I don't want people to try to say, "_Well, I'm going to get the arbitrator to make a decision that's going to impact this plan of reorganization or plan of liquidation_," because I won't -- _I won't stand for that_." [Transcript, p. 75, ll. 10-18 (emphasis added)].

As the Court held: "I am going to grant relief from stay to allow for the judicial arbitration for the dissolution of the two LLCs," and that "_the arbitrations will go no further than the decision process of the interest_." [Transcript, p. 64, ll. 16-18 through p. 65, ll. 9-10 (emphasis added)].

In addressing the scope of the issues to be determined in the Arbitrations, the Court noted: "but an arbitration proceeding on the dissolution of an LLC, there isn't a winner or a loser. There is -- there are findings. _There is a determination, determination of the value of members' interest, a determination of the value of the business. You know, that's -- that value is not a real big deal because whatever it is, whatever you decide it is, you're going to get your percentage, and Mr. Bral will get his percentage, and in the plan you turn it over to the unsecured creditors_." [Transcript, p. 84, ll. 18-25 through p. 85, ll. 1 (emphasis added)].

1    On April 2, 2018, the Court entered the Debtor's alternative forms of orders [Docket Nos.

2  381 (Mission) and 380 (Westcliff)].[13]

3    The Mission RFS Order entered by the Court provides (with emphasis added), as follows:

4          1.   The arbitration pending before the American Arbitration Association relating to the
              dissolution of [Mission] (the "Arbitration" herein) is hereby stayed pending the
5              earlier to occur of: (a) the entry of an order in this case confirming a plan of
              reorganization or a plan of liquidation; (2) the entry of an order approving a
6              stipulation between the Debtor and [Mr. Beitler] acceptable to the Court modifying
              the automatic stay to allow the Arbitration to proceed; or (c) further order of this
7              Court.

8          2.   As and when the Arbitration proceeds pursuant to this Order, *said Arbitration will
9              be limited to the dissolution of Mission pursuant to applicable California law. As
              part of the foregoing determination, the Arbitration shall determine the economic
10             issues necessary under applicable California law regarding such dissolution of
              Mission (and the capital account balances of any other members as the arbitrator
11             deems necessary) and the value of the Debtor's interest in Mission.*

12         3.   *The Arbitration is not authorized to, nor shall it, resolve the merits of any of the
13             claims filed against the Debtor's bankruptcy estate or the claims alleged in
              adversary proceedings pending in this chapter 11 case, or any issues raised therein
14             except as stated above.*

15         4.   Upon a determination in the Arbitration on the issues delineated herein, the parties
16             may submit such determination to the California Superior Court for an order
              confirming the determination; however, no enforcement of any such judgment shall
17             be permitted without further order of this Court.

18    The Mission RFS Order, therefore, specifically provides that all determinations relative to

19  the economic issues relating to the dissolution of Mission – specifically including the Debtor's and

20  Mr. Beitler's respective ownership interests in Mission – will be determined, *solely and exclusively*,

21  by the arbiter in the Mission Arbitration.  There is no basis for the pursuit of such claims in any

22  other forum or context.

23    Thus, in addition to being filed and pursued in violation of the automatic stay, the

24  prosecution of the Cross-Complaint by Mr. Beitler – which he seeks to take to trial in February

25  2019 – is in flagrant disregard of the express terms of the Mission RFS Order.  Such blatant

26

27  _____

[13] The Court's order granting relief from stay with respect to the Mission Arbitration (the "Mission RFS
28  Order") is attached as Exhibit 6 to the Request for Judicial Notice.  The Westcliff order contains the same
substantive provisions as the Mission RFS Order.

1   disregard of an express and clear order of the Court should not be countenanced – especially in

2   light of the Debtor's (and Mission's) repeated demands to comply with the provisions of such

3   order and the automatic stay protections of the Bankruptcy Code.

4

5   **D.**   **The Debtor's (and Mission's) Repeated Demands to Beitler to Dismiss the Cross-Complaint.**

6        As set forth in the Friedman Declaration, since at least February 2018, the Debtor has

7   made repeated demands to Mr. Beitler and his counsel to dismiss the Cross-Complaint, putting

8   Mr. Beitler on notice that the filing and prosecution of the Cross-Complaint is not only a violation

9   of the automatic stay, but that the relief sought thereby is expressly contrary to the terms of the

10   Mission RFS Order.[14]  In addition, as set forth in the Alpert Declaration, Mission has also

11   demanded the dismissal of the Cross-Complaint.[15]

12        Notwithstanding these repeated requests – and contrary to Mr. Beitler's independent duty

13   to not take such actions in light of binding Ninth Circuit law and the Court's order – Mr. Beitler

14   has failed and refused to dismiss the Cross-Complaint (and has failed to even respond to the

15

16

---

17   [14] As detailed in the Friedman Declaration, such demands have been made not only by way of the Debtor's

18   Relief From Stay Opposition [Docket No. 320, attached as Exhibit 2 to the Request for Judicial Notice], which was filed on February 22, 2018 (as acknowledged by Mr. Beitler by way of the Relief From Stay

19   Reply [Docket No. 340, attached as Exhibit 3 to the Request for Judicial Notice], but by express written demand on September 26, 2018 to resolve this issue without the necessity of Court intervention. *See*

20   Friedman Declaration and Exhibit A thereto.  Moreover, based on his direct involvement in bringing the Relief From Stay Motions and argument over the scope of the orders thereon, Mr. Beitler is clearly aware

21   of the terms of the Mission RFS Order and the impact thereof (and such determination has been discussed in detail in the Debtor's Plan and Disclosure Statement).  In addition, Mission made written demand on Mr.

22   Beitler to dismiss the Cross-Complaint on June 15, 2018.  *See* Alpert Declaration and Exhibit E thereto. Notwithstanding, there has been no response to these demands, necessitating the filing of this Motion and,

23   the Debtor submits, necessitating the imposition of damages against Mr. Beitler based on his baseless pursuit of the Cross-Complaint under the circumstances.

24   [15] Indeed, in the Mission Action, Mission sought bifurcation of the Second Amended Complaint from the

25   Cross-Complaint on the grounds that the Cross-Complaint was, in reality, an action against the Debtor that was subject to the automatic stay.  *See* Alpert Declaration and Exhibit C thereto.  Mr. Beitler filed a

26   response to Mission's bifurcation request, expressly conditioning his consent to the bifurcation only "so long as all pretrial dates and deadlines pertinent to Beitler's Cross-Complaint, including without limitation

27   the discovery cutoff, expert disclosure and expert discovery cutoff dates, are continued in accordance with the new date for trial of Beitler's Cross-Complaint." *See* Alpert Declaration and Exhibit D thereto.  After

28   bifurcation was denied by the Superior Court, on June 15, 2018, Mission sent a written demand to Mr. Beitler's counsel to dismiss the offending Cross-Complaint.  *See* Alpert Declaration and Exhibit E thereto.

1  requests) and, even more unbelievably, is moving forward on resolution of these issues at trial

2  (which the Debtor has recently discovered is scheduled for February 2019).

3        Such blatant disregard of the most basic protections of the Bankruptcy Code and the

4  Court's order should not be countenanced.  Based on the circumstances, this Court should enter an

5  order assessing damages (both compensatory and punitive) against Mr. Beitler for his willing and

6  knowing violations of the automatic stay and contempt of court, determining that Mr. Beitler's

7  actions in commencing and pursuing the Cross-Complaint are void, and dismissing or compelling

8  dismissal of the Cross-Complaint.

9

10
### III.

### MEMORANDUM OF POINTS AND AUTHORITIES

11

12
**A.  The Debtor is Entitled to the Protections of the Automatic Stay.**

13        Section 362 (a)(1) of the Bankruptcy Code stays the "commencement or continuation … of

14  a judicial, administrative, or other action or proceeding against the debtor that was or could have

15  been commenced before the commencement of the case under this title, or to recover a claim

16  against the debtor that arose before the commencement of the case under this title …" 11 U.S.C.

17  § 362(a)(1).  Similarly, section 362(a)(3) of the Bankruptcy Code expressly prevents any creditor

18  or entity from undertaking "any act to obtain possession of property of the estate or of property

19  from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

20        "The stay of § 362(a) arises automatically when a bankruptcy case is filed." *In re Mwangi*,

21  432 B.R. 812, 823 (9th Cir. B.A.P. 2010).  The automatic stay is one of the fundamental debtor

22  protections provided by the bankruptcy laws.  It gives the debtor a breathing spell from his

23  creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the

24  debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial

25  pressures that drove him into bankruptcy.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340

26  (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97; *see also In re Soares,* 107 F.3d 969, 977

27  (1st Cir. 1997) ("[t]he automatic stay is among the most basic of debtor protections under

28

1   bankruptcy law."). Mr. Beitler's actions in filing and pursuing the relief in the Cross-Complaint

2   expressly violates both the letter and spirit of Sections 362(a)(1) and (3).

3        In this regard, by the Cross-Complaint, Mr. Beitler seeks a determination as to his interest

4   in Mission that, if indeed determined in that action, would *necessarily* have a direct and negative

5   impact on the Debtor's interests in Mission. Attempting to "game" the system by purposefully not

6   naming the Debtor does not take Mr. Beitler out of the applicability of the automatic stay. *See*

7   *e.g., Adelphia Communs. Corp. v. America Channel, LLC (In re Adelphia Communs. Corp.),* 345

8   B.R. 69, 76 (Bankr. S.D.N.Y. 2006) ("Bankruptcy Code section 362(a)(3) protects the in rem

9   jurisdiction of the Court, and prohibits interference with the disposition of the assets that are under

10  the Court's wing – *whether or not the Debtor is named as a defendant as part of the effort*. And

11  that is so without distinction as to the form the interference takes.") (emphasis added).

12       The Debtor and Mr. Beitler have been members in Mission since approximately 2004 and

13  disputes as to their respective interests have been ongoing since at least 2014. Thus, any dispute

14  as to their respective interests is undeniably an action that could have been brought prior to the

15  Petition Date and the post-petition filing, and continued prosecution, of the Cross-Complaint is a

16  flagrant violation of the automatic stay under section 362(a)(1).

17       Likewise, it is incontrovertible that the Debtor's membership interest in Mission is

18  property of the estate entitled to the protections of the automatic stay under section 362(a)(3). *See*

19  *e.g., In re Black,* 514 B.R. 605 (Bankr. E.D. Cal. 2014) (to determine whether an act against a

20  debtor's property violates the automatic stay of section 362(a)(3), "the court must first consider

21  whether that property belongs to the estate. Property of the estate is broadly defined to encompass

22  'all legal or equitable interests of the debtor in property as of the commencement of the case,'

23  wherever located and by whomever held. § 541(a)(1)." By way of the Cross-Complaint, Mr.

24  Beitler attempts to augment his interest in Mission at the expense of the Debtor's interest. Like

25  any "zero-sum game," Mr. Beitler's "win," means the Debtor's "loss." The relief sought in the

26  Cross-Complaint, therefore, is an act by Beitler to take ownership and/or control of property of the

27  Debtor's estate prohibited by the automatic stay provisions of section 362(a)(3) of the Bankruptcy

28  Code.

1    As set forth by the court in *Dublin Properties*, and cited with approval in *MCEG*

2    *Productions*, "we find it inconceivable to imagine that anyone familiar with the Bankruptcy Code

3    could, in good faith, believe that the automatic stay provisions of the Code do not prohibit a

4    person from taking action in another court to eliminate a property interest held by the estate." *See*

5    *e.g., Frankford Trust Co. v. Allanoff (In re Dublin Properties)*, 20 B.R. 616, 620 (Bankr. E.D. Pa.

6    1982), *rev'd in part on other grounds*, 29 B.R. 407 (E.D. Pa. 1983); *In re MCEG Productions,*

7    *Inc.,* 133 B.R. 232, 234-35 (Bankr. C.D. Cal. 1991) (attempt to enjoin a sale counterparty's

8    contract rights in the sale "necessarily implicated" the debtor's rights in the same agreement;

9    "§ 362(a)(3) protects against such acts to exercise control over property of the estate without

10    distinction as to the form such interference takes.  Accordingly, the filing of the injunctive action

11    was a violation of § 362(a)(3).").  *See also Capriati Constr. Corp. v. SPER, Inc. (In re Capriati*

12    *Constr. Corp.)*, 2018 Bankr. LEXIS 818, *21-22 (9th Cir. B.A.P. Mar. 20, 2018) ("SPER has

13    never claimed that it did not receive notice of Capriati's bankruptcy filing.  Indeed, it was careful

14    not to include Capriati as a defendant in the state court action, filed just one week after Capriati

15    filed its chapter 11 case.  Further, Frankewich, a bankruptcy attorney of over 30 years, is certainly

16    familiar with the rules of the automatic stay and knew or should have known that usurping

17    property of the bankruptcy estate is a willful violation of the automatic stay.  Her subjective belief

18    that the claims in the state court action were against Rocchio only and not Capriati makes no

19    difference for purposes here, despite the bankruptcy court's ruling to the contrary.  Because the

20    court applied an incorrect legal standard, its finding that SPER had not willfully violated the

21    automatic stay is clearly erroneous.").

22    Likewise, Mr. Beitler's actions in filing and pursuing the Cross-Complaint fly in the face

23    of the fundamental protections provided by 11 U.S.C. § 362(a)(1) and (3).

24

25    **B.    The Debtor is Entitled to Actual and Punitive Damages Based on Beitler's Willful and
    Knowing Violation of the Automatic Stay**

26    Section 362(k) of the Bankruptcy Code provides for the imposition of damages against a

27    party for violations of the automatic stay.  Section 362(k)(1) provides, in relevant part, as follows:

28    "[A]n individual injured by any willful violation of a stay provided by this section ***shall*** recover

14

1   actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

2   recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). In this case, not only is the

3   Debtor entitled to the mandatory redress of his actual damages (including costs and attorneys'

4   fees), but is entitled to the imposition of punitive damages based on Mr. Beitler's willing and

5   knowing contempt of a court order and violation of the automatic stay in pursuing the relief sought

6   by way of the Cross-Complaint. The imposition of such damages is especially appropriate in that

7   Mr. Beitler is clearly aware of his violative actions and, notwithstanding, has continued to pursue

8   the Cross-Complaint (despite being offered numerous opportunities to resolve this matter

9   consensually), necessitating the expenditure of significant time and resources by the Debtor and

10  his counsel.

11

12  **C. Mr. Beitler Willfully and Knowingly Violated the Automatic Stay in Filing and Pursuing the Cross-Complaint.**

13          Unquestionably, as established above, the filing and pursuit of the Cross-Complaint by Mr.

14  Beitler is subject to the automatic stay provisions of 11 U.S.C. § 362(a)(1) and (3). Once the

15  applicability of the automatic stay has been established, the "willfulness test" "for automatic stay

16  violations merely requires that: (1) the creditor know of the automatic stay; and (2) the actions that

17  violate the stay be intentional." *See e.g., Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 220 (9th

18  Cir. B.A.P. 2006) (citations omitted). "[W]hether [the stay violating party] believed in good faith

19  that it had a right to the Property is irrelevant: No specific intent is required; a good faith belief

20  that the stay is not being violated 'is not relevant to whether the act was 'willful' or whether

21  compensation *must* be awarded' . . . nor is good faith reliance on the advice of counsel a defense . .

22  . nor is reliance on a state court's determination." *Id.* at 221 (citations omitted) (emphasis added);

23  *see also In re Campion*, 294 B.R. 313, 318 (9th Cir. B.A.P. 2003) ("Once a creditor knows that the

24  automatic stay exists, the creditor bears the risk of all intentional acts that violate the automatic

25  stay regardless of whether the creditor means to violate the automatic stay.").

26          There is no question in this case that Mr. Beitler's acts in filing and pursuing the Cross-

27  Complaint were with knowledge of the applicability of the stay, and were intentional. Indeed, the

28  Cross-Complaint itself does not directly "name" the Debtor as a party, *specifically acknowledging*

1  *the pendency of the Debtor's bankruptcy case and the applicability of the automatic stay.* (*See*

2  Cross-Complaint, at ¶ 3).  Notwithstanding, the relief sought by way of the substance of the Cross-

3  Complaint clearly, directly and negatively impacts the Debtor and his estate – seeking to augment

4  Mr. Beitler's interests in Mission at the expense of the Debtor.  Mr. Beitler's attempt to "end-run"

5  the provisions of the Bankruptcy Code (and, incredibly, to attempt to take these matters to trial in

6  the Superior Court) is outrageous – especially given the Debtor's (and Mission's) demands to

7  remedy these violations of the automatic stay and Mr. Beitler's acknowledgement of such

8  demands (as well as the Court's express order to the contrary mandating that these issues be

9  determined by way of the Mission Arbitration).  There could be no clearer evidence of a willful,

10  knowing and intentional violation of the stay warranting the imposition of damages under section

11  362(k).

12

13  **D.  Mr. Beitler's Willful and Knowing Violation of the Automatic Stay Mandates the Imposition of Actual Damages Against Him.**

14  Where there is a willful and knowing violation of the automatic stay, the imposition of

15  actual damages under 11 U.S.C. § 362(k)(1) is *mandatory*.  "The words 'shall recover' [in section

16  362(k)] indicate that Congress intended that the award of actual damages, costs and attorney's fees

17  be *mandatory* upon a finding of a willful violation of the stay." *Ramirez v. Fuselier (In re*

18  *Ramirez)*, 183 B.R. 583, 589 (9th Cir. B.A.P. 1995) (emphasis added) (*citing In re Taylor*, 884

19  F.2d 478, 483 (9th Cir. 1989) and *In re Sansone*, 99 B.R. 981, 987 (Bankr. C.D. Cal. 1989)); *see*

20  *also Stinson v. Bi-Rite Rest. Supply Inc. (In re Stinson)*, 295 B.R. 109, 118 (9th Cir. B.A.P. 2005)

21  ("Under the plain language of § 362(k), the injured party *must* be awarded the entire amount of

22  actual damages 'reasonably incurred as a result of a violation' of the automatic stay.") (emphasis

23  added) (*citing Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 876 (9th Cir. B.A.P. 1998); *Stainton v.*

24  *Lee (In re Stainton)*, 139 B.R. 232, 235 (9th Cir. B.A.P. 1992)).

25  Such mandatory damage award includes an entitlement to attorneys' fees incurred in the

26  pursuit of such damages.  *See In re Schwartz-Tallard*, 803 F.3d 1095, 1099-1101 (9th Cir. 2015)

27  (holding that attorneys' fees are recoverable not only to end the stay violation but also to recover

28  damages for such a pursuit, stating "[f]or these reasons, § 362(k) is best read as authorizing an

16

1  award of attorney's fees incurred in prosecuting an action for damages under the statute."); *see*

2  *also In re Pace,* 159 B.R. 890, 901 (9th Cir. B.A.P. 1993) ("Additionally, an award of attorneys'

3  fees is appropriate where an initial violation of the stay is followed by [the aggrieved party] having

4  to resort to the courts to enforce his rights.").

5      In this case, as set forth in the Friedman Declaration, the Debtor has, and will to continue

6  to incur, significant attorney's fees and costs in his attempt to protect the Debtor and his estate

7  from Mr. Beitler's willful and intentional violation of the automatic stay in filing and pursuing the

8  Cross-Compliant.  As the party that has intentionally and willfully violated the automatic stay in

9  this case, section 362(k) mandates that Mr. Beitler be held responsible for the Debtor's actual

10  damages, including all attorneys' fees and other associated costs related to this matter.

11

12  **E.  The Debtor is Also Entitled to Punitive Damages Based on Mr. Beitler's Egregious Behavior in Violating the Automatic Stay and His Contempt of Court.**

13      In addition to the mandated imposition of actual damages against Mr. Beitler and in favor

14  of the Debtor, section 362(k)(1) of the Bankruptcy Code also provides that the Debtor "... *may*

15  recover punitive damages" in scenarios such as this, where the perpetrator of the automatic stay

16  has acted willfully and egregiously.  *See* 11 U.S.C. § 362(k).  The standard for imposition of

17  punitive damages for violation of the automatic stay is slightly heightened from actual damages to

18  whether the violator engaged in "egregious, intentional misconduct."  *See McHenry v. Key Bank*

19  *(In re McHenry)*, 179 B.R. 165, 168 (9th Cir. B.A.P. 1995) (citations omitted).  Although punitive

20  damages are not mandatory like actual damages, they are recoverable upon ". . . some showing of

21  reckless or callous disregard for the law or rights of others."  *Goichman v. Bloom (In re Bloom)*,

22  875 F.2d 224, 228 (9th Cir. 1989).

23      In *Bloom*, the Ninth Circuit awarded punitive damages on the grounds that the party

24  violating the automatic stay had taken several steps and actions after receiving formal notice from

25  the debtor of its violations of the stay, finding the party had "blatantly attempted to circumvent the

26  jurisdiction of the bankruptcy court by filing an [unjustified] motion to withdraw the reference."

27  *Id.*

28

1    In this case, Mr. Beitler has – unequivocally – intentionally violated the automatic stay.

2    Indeed, he had admitted as much from the very outset by acknowledging the pendency of the

3    Debtor's bankruptcy case and applicability of the stay in the Cross-Complaint itself, and in

4    pleadings filed in this Court and the Superior Court.  In seeking relief against the Debtor without

5    nominally bringing the Debtor into the suit, Mr. Beitler has misled the Superior Court as to its

6    right and ability to adjudicate the relief requested by way of the Cross-Complaint.  Moreover, Mr.

7    Beitler's pursuit of such determination in the Superior Court is directly contrary to the Mission

8    RFS Order, and is in contempt thereof.  Mr. Beitler is aware of, and has been advised by the

9    Debtor and Mission on numerous occasions, of his violations of the stay and of the Court's order.

10   Mr. Beitler has ignored these entreaties.  Mr. Beitler's blatant attempt to circumvent the

11   protections of the Bankruptcy Code and the provisions of a binding Court order demonstrate, as in

12   *Bloom*, "a reckless or callous disregard for the law or rights of others," justifying the imposition of

13   punitive damages.

14       As set forth by the Ninth Circuit, ". . . the Constitution permits a three to one ratio of

15   punitive to compensatory [actual] damages . . ." *Southern Union Co. v. Irvin*, 563 F.3d 788, 792

16   (9th Cir. 2009).  Thus, based on the egregious conduct of Mr. Beitler in filing and pursuing the

17   Cross-Complaint, the Debtor is entitled to an award of three times his actual damages as a punitive

18   damage award.

19

20   **F.  All Actions Taken By Mr. Beitler in Pursuing the Cross-Complaint Are Void**

21       In addition, Mr. Beitler's actions in pursuing the Cross-Complaint in violation of the

22   automatic stay are void as a matter of law.  Ninth Circuit law is clear in this regard:  All "actions

23   taken in violation of the automatic stay are void," not simply voidable.  *See United States v.*

24   *Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000); *In re Schwartz*, 954 F.2d 569 (9th Cir. 1992).

25   Further, "judicial proceedings in violation of the automatic stay are void," and not simply

26   voidable.  *See Id.* (*citing In re Shamblin*, 890 F.2d 123, 125-26 (9th Cir. 1989); *see also In re*

27   *Stringer*, 847 F.2d 549, 551 (9th Cir. 1988).  *See also In re Kimball Hill, Inc.*, 2018 Bankr. LEXIS

28   3081, *27 (Bankr. N.D. Ill. October 12, 2018) ("A party may not pursue litigation remedies in

1  violation of a stay or injunction and then seek to amend that suit until it finds a path that does not

2  so offend.  The Ninth Circuit has addressed such actions fully in *Capriati Constr. Corp.*, …

3  [where] the Ninth Circuit found that a state court action filed in violation of a stay was void and

4  that the party filing the action could not 'rely on those claims for relief either as initially pled or as

5  amended.'") (citations omitted).

6  Based on clear Ninth Circuit law rendering Mr. Beitler's actions void, the Debtor requests

7  that the Court dismiss, or compel dismissal, of the Cross-Complaint.

8

9  **IV.**

10  **CONCLUSION**

11  Mr. Beitler, having being given numerous opportunities to rectify his knowing

12  transgressions, has failed and refused to cease his prosecution of the Cross-Complaint.  His actions

13  in this regard – unlawfully seeking, among other things, a determination as to the parties'

14  respective membership interests in Mission (and allowing this matter to be set for trial in the

15  Superior Court in February 2019) – are not only violative of the automatic stay, but are in

16  contempt of the Mission RFS Order.  Mr. Beitler's pursuit of relief against the Debtor and his

17  estate by way of the Cross-Complaint is intentional, willful and knowing and is an egregious

18  disregard of, and contempt for, the sanctity of the Bankruptcy Code and the Bankruptcy Court.

19  Based thereon, the Debtor is entitled to an award of actual damages in an amount of not

20  less than $18,500 and punitive damages totaling three times this award, pursuant to section 362(k)

21  of the Bankruptcy Code and based on his contempt of court, as well as order dismissing or

22  mandating the dismissal of the Cross-Complaint, and such other and further relief as is just and

23  proper under the circumstances.

24

25

26

27

28

Respectfully submitted,

SHULMAN HODGES & BASTIAN LLP

DATED:  October 30, 2018          By: _____
                                  Alan J. Friedman
                                  Attorneys for Debtor and Debtor-in-Possession, John
                                      Jean Bral

PACHULSKI STANG ZIEHL & JONES LLP

DATED:  October 30, 2018          By: _____
                                  William N. Lobel
                                  Special Reorganization Counsel for Debtor and Debtor-
                                      in-Possession, John Jean Bral

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR AN ORDER (1) FINDING BARRY BEITLER IN VIOLATION OF THE AUTOMATIC STAY AND IN CONTEMPT OF COURT; (2) ASSESSING ACTUAL AND PUNITIVE DAMAGES AGAINST BARRY BEITLER; (3) DISMISSING OR COMPELLING DISMISSAL OF THE CROSS-COMPLAINT; AND (4) GRANTING RELATED RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On October 30, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On October 30, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

⊠  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/ 30 /18 | Lori Gauthier | /s/ Lori Gauthier |
|:---:|:---:|:---:|
| *Date* | *Printed Name* | *Signature* |

**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Thomas H Casey**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **Alan J Friedman**    afriedman@shbllp.com, lgauthier@shbllp.com
- **Daniel K Fujimoto**    wdk@wolfffirm.com
- **Beth Gaschen**    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com,kfinn@lsl-la.com
- **Gary E Klausner**    gek@lnbyb.com
- **William N Lobel**    wlobel@pszjlaw.com,
  nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Kathleen J McCarthy**    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- **William F McDonald**    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Dipika Parmar**    dipika.parmar@aissolution.com
- **Bobby Samini**    saminicourtnotice@gmail.com,
  bobby.samini@saminicohen.com;nicoleprado@saminicohen.com
- **Edward G Schloss**    egs2@ix.netcom.com
- **Valerie Smith**    claims@recoverycorp.com
- **Daniel B Spitzer**    dspitzer@spitzeresq.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Zann R Welch**    ecfnotices@ascensioncapitalgroup.com
- **Dean A Ziehl**    dziehl@pszjlaw.com, dziehl@pszjlaw.com

**SERVED VIA FIRST CLASS MAIL:**

The Honorable Erithe A. Smith
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040
Santa Ana, CA 92701-4593

Office of the United States Trustee
411 W. Fourth Street, Suite 7160
Santa Ana, CA 92701-4593